

Advocates for Workplace Fairness

Cara E. Greene, Esq.
ceg@outtengolden.com

November 27, 2019

**By ECF:**
The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
500 Pearl Street, Chambers 1350
New York, New York 10007

Re: <u>Ulku Rowe v. Google LLC, Case No. 1:19-cv-08655-LGS</u>

Dear Judge Schofield:

Plaintiff Ulku Rowe ("Plaintiff") and Defendant Google LLC ("Defendant"), jointly submit this letter in advance of the Initial Conference scheduled for December 5, 2019 at 10:40 a.m., pursuant to the Court's Order. The Parties' proposed Civil Case Management Plan and Scheduling Order is attached hereto as Exhibit A.

1. **A brief statement of the nature of the case, the principal claims and defenses, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement or dispositive motion;**

    a. **Plaintiff's Statement of Claim**

    Ulku Rowe ("Ms. Rowe" or "Plaintiff") claims that Defendant violated Title VII, the Equal Pay Act, New York Equal Pay Law, N.Y. Labor L. § 194 ("EPL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq.,("NYCHRL") by hiring her at a lower level and paying her less than her male peers, denying her additional earned compensation, and denying her a promotion for which she was the most qualified – instead hiring a less qualified man for the role. Further, Google retaliated against Plaintiff by demoting her after she complained about the Company's discriminatory actions.

    Ms. Rowe joined Google in March 2017 as the Technical Director of Financial Services at the Cloud, reporting to the Managing Director, Cloud CTO Office. Google hired her as a Level 8 Director, even though her background and experience was commensurate to at least a Level 9. After she raised these concerns, the hiring manager told her that all individuals hired for the Technical Director positions were joining at Level 8. After she was hired, however, Ms. Rowe learned that Google had hired similarly situated male Technical Directors at Level 9, a level that pays hundreds of thousands of dollars more in total annual compensation than Level 8. Ms. Rowe was equally or more qualified than the men who were hired at Level 9.

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington DC  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410
www.outtengolden.com

The Honorable Lorna Schofield
November 27, 2019
Page 2 of 5

Google also denied Ms. Rowe her annual equity refreshes that it promised to her. At the time of her hire, Google told her it would award her that her annual equity refreshes, such that she would exceed her annual compensation from JPMorgan, her previous employer. However, Google only awarded her small equity awards that left her with a significant shortfall in total annual compensation and was hundreds of thousands of dollars less than the equity awards Google made to similarly-situated males.

Google also denied Ms. Rowe a promotion into a position for which she was the most-qualified candidate. In June 2018, Ms. Rowe undertook a search for the role of Vice President, Financial Services, a Level 10 position. Ms. Rowe soon learned that two, less qualified external finalists were being considered for the position. Ms. Rowe expressed concern that she was not being meaningfully considered for the role and that Google's initial hiring discrimination would impact Google's consideration of her for the role. In response, Human Resources told her that her level and title would not change if she were to be selected for the position. While Ms. Rowe spoke to the CTO and Google Cloud's CEO about the hiring discrimination that had taken place, Human Resources conducted a cursory investigation and concluded that they didn't believe the Company had committed any wrongdoing with respect to Plaintiff. Despite the fact that Ms. Rowe had undergone multiple interviews for the position, Google instead selected a less-qualified man via a "tap on the shoulder" who did not have to interview for the position.

Google then retaliated against Ms. Rowe by demoting her after she complained about the Company's discriminatory actions. In April 2019, Google informed Ms. Rowe that her role would be changed and provided her with three options that are all essentially demotions as they are less prestigious, have less responsibility, less opportunity for upward advancement, and less compensation potential.

**b.  Defendant's Statement**

Google hired Ms. Rowe into the Office of the CTO at Google Cloud Platform ("Office of the CTO") as a Level 8 Technical Director and she started in that role in March 2017.  Ms. Rowe's Level 8 placement was consistent with her qualifications and experience *and* consistent with the leveling of similarly situated males who were hired at or around the same time in the Office of the CTO.  Google denies (a) that Ms. Rowe's background and experience was commensurate with at least a Level 9; (b) that she was told that all Technical Directors hired in the Office of the CTO were placed at Level 8; and (c) that Ms. Rowe was promised any particular future remuneration.  Ms. Rowe received an extremely generous compensation package upon hire, and has been generously compensated since that time, without regard to her sex.

Google began a search to fill a new senior Financial Services position at Google Cloud.  That search was suspended, however, due to senior leadership changes in the Google Cloud business.  In any case, prior to the suspension of that process in late 2018, Google already determined that two women (an internal candidate (not Ms. Rowe) and an external candidate) were the leading contenders for the new position.  When the process

for filling the new position was suspended, an existing employee in the organization was asked to take on some of the responsibilities that would have been placed with this new position.

Ms. Rowe has never been demoted during her time at Google. Following the aforementioned leadership change in Google Cloud, which affected the reporting lines of numerous employees, Ms. Rowe was given a choice of (a) remaining in her current role, which would involve a change in reporting line, (b) returning to a role in the Office of the CTO,[1] or (c) suggesting another role she could take on. Ms. Rowe elected to return to a role in the Office of the CTO. During the entire period of her employment, Ms. Rowe has been paid consistent with her qualifications, experience, contributions, and other business-related factors.

2. **A brief statement by plaintiff as to the basis of subject matter jurisdiction and venue, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction and venue.**

   a. **Plaintiff's Statement**

   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the case arises, in part, under federal statute, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq*., ("Title VII"), and the Equal Pay Act, as amended, 29 U.S.C. § 206(d). Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions in this action occurred within the Southern District of New York.

   b. **Defendant's Statement**

   Google agrees that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and that venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

3. **A brief description of any (i) motions that any party seeks or intends to file, including the principal legal and other grounds in support of and opposition to the motion, (ii) pending motions and (iii) other applications that are expected to be made at the status conference;**

Neither Plaintiff nor Defendant intend to file any motions at this time.

---

[1] While Ms. Rowe started in the Office of the CTO, she subsequently transferred and began reporting to a new manager in mid-2018.

The Honorable Lorna Schofield
November 27, 2019
Page 4 of 5

4. **A brief description of any discovery that has already taken place, and any discovery that is likely to be admissible under the Federal Rules of Evidence and material to proof of claims and defenses raised in the pleadings. (This is narrower than the general scope of discovery stated in Rule 26(b)(1));**

   No discovery has yet to be undertaken, as Defendant has yet to file its Answer. In addition to initial discovery under the Discovery Protocols, the Parties plan to conduct discovery through depositions, requests for production of documents, requests for admissions, and interrogatories. The Parties will make best efforts to tailor such discovery requests so as to identify and obtain material proof under the Federal Rules of Evidence.

5. **A computation of each category of damages claimed, see Fed. R. Civ. P.26(a)(1)(A)(iii);**

   Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff seeks the relief set out in Plaintiff's Complaint (ECF No. 1), specifically: back and front pay damages, liquidated damages, emotional distress damages, punitive damages, attorneys' fees, and all other make-whole relief. Plaintiff is unable, without the aid of discovery, to fully calculate the extent of pay disparity between her and her male colleagues (including salary, bonus, and equity awards), nor the economic losses stemming from the denial of promotion, because she does not yet have the information from Defendant on which the computation of her lost compensation and benefits would be based. Accordingly, Plaintiff asserts that computation of damages should be deferred to a later stage of the litigation when the information necessary to make full and accurate calculations of damages has been obtained through discovery. Further, Plaintiff's damages are ongoing. Pursuant to Fed. R. Civ. P. 26(e), Plaintiff will supplement this response when she obtains such information.

6. **A statement describing the status of any settlement discussions and whether the parties would like a settlement conference;**

   The parties sought to resolve this matter prior to the filing of this action, but were not successful. At this time, there are no ongoing settlement discussions, but the Parties are prepared to engage in mediation pursuant to the Second Amended Standing Administrative Order, 11-MISC-003 (Oct. 1, 2015).

7. **Any other information that the parties believe may assist this Court in resolving the action.**

   None at this time.

\*   \*   \*   \*   \*

The Honorable Lorna Schofield
November 27, 2019
Page 5 of 5

Thank you for your consideration and attention to this matter.

Respectfully submitted,

_____   _____
Kenneth W. Gage             Cara E. Greene
Paul Hastings LLP           Outten & Golden LLP
200 Park Avenue             685 Third Avenue, 25th Floor
New York, NY 10166          New York, NY 10017
*Counsel for the Defendant*    *Counsel for the Plaintiff*

cc: All parties (via ECF)