**PAUL HASTINGS**

April 27, 2020

**By ECF:**
The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
500 Pearl Street, Chambers 1350
New York, New York 10007

Re: *Ulku Rowe v. Google LLC*, Case No. 1:19-cv-08655 (LGS)(GWG)

Dear Judge Schofield,

We represent Defendant Google LLC in the above-referenced matter and write in response to Plaintiff's April 21st letter. (Dkt. 28 (hereinafter, "Pl. Sub.").)

Significant discovery has already taken place in this matter, as the parties were required to produce relevant documents by January 7, 2020, under the Initial Discovery Protocols[1] and the Standing Order[2] applicable to employment cases. Still, Plaintiff denied that the Initial Discovery Protocols applied to her until the Court ordered her compliance on February 2, 2020. (Dkt. 24.) Google had already produced tens of thousands of pages of responsive documents.

The parties served written requests for the production of documents on January 21, 2020, and exchanged written responses on February 11. Responsive documents have been produced on a rolling basis. (Dkt. 18, ¶ 8(c).)  The parties met and conferred by phone on March 3, 2020 but only discussed *Defendant's* issues with *Plaintiff's* production. Not until March 25th did Plaintiff raise the issues she now brings to the Court, only *then* serving her proposed ESI search protocol—months after Defendant had produced hundreds of responsive emails and other documents.

During the parties' meet and confer call on April 20, Defendant described how it had located responsive documents, including questioning numerous custodians *and* running search terms on custodians' emails. Google should not have proceeded with a "unilateral" email search protocol, according to Plaintiff, but should have waited to negotiate search terms with Plaintiff (presumably until late March, when Plaintiff's search protocol was served). That evening, Defendant informed Plaintiff that it would provide "further information on the email searches that have been conducted," and followed up the next day—prior to Plaintiff's filing—requesting a "time for a call to discuss Defendant's ESI search protocol."

Still, Plaintiff incorrectly tells this Court, "Defendant has thus far refused to conduct an ESI search of custodians." (Pl. Sub. at 3.) Defendant has engaged in a thorough search—both manually and with search terms—to identify relevant and responsive documents. Plaintiff now insists that Defendant conduct a second, inefficient search, and produce other documents unrelated to the claims asserted. The Court should reject Plaintiff's request.

I.   **Google Conducted a Thorough Search for Responsive Documents, Both Manually *and* Using Email Search Terms**

Defendant employed a multi-pronged approach to discovery: it developed reasonable and thorough email search terms for relevant custodians, followed by interviews and targeted collections based on those discussions.[3] Google ran searches on the emails of fourteen custodians, including Plaintiff, her two managers, employees involved in the investigation of Plaintiff's complaint, the in-house recruiter assigned to the Financial Services Vertical Lead role Plaintiff wanted, and the individuals who interviewed Plaintiff for that position.[4] Google reviewed over 8,750 emails as a result of these searches,[5] and spent over 160

---

[1] The Pilot Project Regarding Initial Discovery Protocols for Employment Cases Alleging Adverse Action.
[2] Second Amended Standing Administrative Order for Counseled Employment Discrimination Cases, M10-468.
[3] Defendant has shared these terms with Plaintiff, and will provide them for the Court's review, upon request.
[4] Contrary to Plaintiff's assertion, Defendant ran searches related to Plaintiff's consideration for the Financial Services Vertical Lead role (a.k.a. Head of Financial Services), and transfer to OCTO in April 2019. *See* Pl. Sub., Ex. 6 at 9.
[5] To expedite review of search results, Google identifies and reviews the "last-in-time" email in a chain, reflecting all

hours identifying, collecting, searching and reviewing ESI, exceeding the requirements of Your Honor's Individual Rule II.A.1.[6] The Court should not require Google to run *another* ESI search after conducting such an exhaustive review simply because Plaintiff waited until late March to propose one.

Plaintiff maligns Defendant's search protocol as failing to search for documents regarding the commencement of Plaintiff's employment. (Pl. Sub. at 3.) As explained to Plaintiff several times,[7] however, Plaintiff's 2016 recruitment falls well outside Google's standard 18-month email retention policy, so an email search for that period makes no sense.[8] Similarly, Defendant has not produced documents regarding its pay studies; Plaintiff's job code was not analyzed in those studies[9] and further, the vast majority of documents relating to those studies are privileged. Plaintiff also claims that Google did not produce information regarding a broad scope of alleged comparators and possible complaints of discrimination against other managers due to a faulty ESI search. (Pl. Sub. at 3.) However, as described below, this information was not produced because it is irrelevant to Plaintiff's claims. Aside from these alleged omissions, Plaintiff has failed to provide detail as to why any additional ESI review is needed.

II.     **Plaintiff's Request for Broad Comparator Data is Unsupported by Her Own Allegations**

In Plaintiff's Amended Complaint, she clearly identified her alleged equal pay comparators as "men who were hired as Level 9 Technical Directors" who "were hired within weeks of [Plaintiff], using the same position description." (Dkt. 12, ¶¶ 27-28.) Plaintiff initially identified these individuals as Nicholas Harteau, Evren Eryurek and Benjamin Wilson,[10] later adding one other meeting these parameters, Jonathan Donaldson. Each held job code 5578, corresponding to Level 9 on the Technical Solutions Consultant job ladder (often referenced as Distinguished Technical Solutions Consultant). Plaintiff also identified one man who she asserts received preferential treatment by allegedly receiving the Financial Services Vertical Lead role, Stuart Breslow.[11] Defendant agreed to produce significant discovery regarding these individuals and their positions, though not conceding that even they are proper comparators.[12]

Plaintiff now seeks discovery far beyond the alleged comparators identified in her Amended Complaint, including in depth discovery regarding all U.S. Google Cloud employees across three levels (including their qualifications and compensation, regardless of position (Req. 6)), documents regarding the compensation, duties and responsibilities of all Vice President and Head of Industry employees under the supervision of Tariq Shaukat (Req. 12-13), and all documents describing the duties and responsibilities of all Directors within Google Cloud New York. (Req. 14).[13]

The Amended Complaint alleges no facts suggesting that this scope of individuals may be her proper comparators, and this discovery does not relate to the comparators Plaintiff *actually* identified in her complaint. As this Court has held, "[a]t the pleading stage . . . a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal." *Brailsford v. Zara USA, Inc.*, 14 Civ. 6999 (LGS), 2015 WL 1608214 (S.D.N.Y. 2015) (J. Schofield) (dismissing EPA claim that "include[d] no factual allegations to support the inference that Plaintiff performed substantially equal work" to alleged comparators) (quoting *EEOC v. Port*

---

prior emails exchanged. Therefore, while the number of individual "files" reviewed is lower, these files reflect over 8,750 emails exchanged. Google also reviewed hundreds of additional documents were collected manually.
[6] Records of this time are available upon request.
[7] *See* Pl. Sub., Ex. 6 at 6 (Def.'s letter explaining 18-month retention policy and referencing prior meet and confer.)
[8] Defendant has produced the text of 195 emails exchanged with Plaintiff during her recruitment that were retained by Google's gHire system, which is specifically designed to store data regarding recruitment and hiring. *See* Pl. Sub., Ex. 6 at 6 (describing the documents produced in response to Plaintiff's Request No. 1).
[9] Due to the need for sufficient sample size, Google's pay equity studies only analyze job codes that include at least 30 employees. Plaintiff's job code has not passed this bar.
[10] Dkt. 12, ¶ 28; *see* Pl. Sub., Ex. 6 at 1-2 (explaining Plaintiff's prior identification of these individuals by name).
[11] Dkt. 12, ¶¶ 41-43; *see* Pl. Sub., Ex. 6 at 3, fn. 3 (explaining Plaintiff's identification of Mr. Breslow).
[12] For these individuals, Defendant agreed to produce documents regarding their age, gender, qualifications, interview feedback, compensation and performance in the roles at issue, their job history, location and reporting lines. Defendant also agreed to produce job descriptions for Plaintiff's position, for job code 5578, and for the Financial Services Vertical Lead role, and policies regarding compensation, performance, promotion and equity awards applicable to Plaintiff and job code 5578 in the U.S.
[13] Defendant believes its production as described in footnote 12 satisfies Plaintiff's Req. Nos. 11 and 17, but to the extent Plaintiff seeks additional documents, these too fall outside the bounds of her Amended Complaint.

*Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014)). It cannot be the case that a Plaintiff can identify a narrow set of comparators in her complaint, then obtain burdensome and invasive discovery regarding a far broader population without any factual basis for the request. Indeed, under this Court's case law, had Plaintiff included such an unsubstantiated allegation in her complaint, it would have been dismissed.

While Plaintiff cites *Vuona v. Merrill Lynch & Co.*, No. 10 Civ. 6529, 2011 WL 5553709, at *4 (S.D.N.Y. Nov. 15, 2011) to assert entitlement to unlimited discovery untethered to her claims, the Court in *Vuona* granted plaintiffs discovery *only* with respect to employees in plaintiffs' same position—FA Trainees—in the same office at the same time as plaintiffs. Defendant has provided discovery regarding the alleged comparators Plaintiff identified. Her baseless request for more should be denied.

### III. Other Employees' Complaints Against Other Managers are Irrelevant to Plaintiff's Claims

Though Google notified Plaintiff that employee relations has no record of discrimination or retaliation complaints against Will Grannis or Tariq Shaukat—Plaintiff's only two managers at Google, Plaintiff still seeks all documents regarding any internal or external complaints of gender discrimination in Google's New York office. (Req. 19.) Others' complaints against other managers are irrelevant to the claims here.

Plaintiff claims that complaints against other managers are relevant to whether the individuals involved in Plaintiff's leveling, hiring and promotion decisions possessed discriminatory intent. However, in a single plaintiff case where the plaintiff has not asserted a pattern and practice of discrimination[14]—like here—this argument *only* holds if the complaints of discrimination were against the managers *making those decisions for Plaintiff.* Accordingly, "[t]he critical question is whether the same decisionmaker was involved in both the prior discriminatory acts and in the adverse employment action taken against the plaintiff." *Rivera v. Baccarat, Inc.*, No. 95 CIV. 9478 MBM JCF, 1997 WL 777887, at *2 (S.D.N.Y. Dec. 15, 1997); *Syrkin v. State Univ. of N.Y.*, No. 04-CV-4336(FB)(RML), 2008 WL 4179690, at *7 (E.D.N.Y. Sept. 10, 2008) (acts of other supervisors not at issue in the lawsuit were "too attenuated" from the challenged adverse action to allow a reasonable inference of discrimination), *aff'd*, 370 F. App'x 150 (2d Cir. 2010).

Further, complaints by *other* employees are not probative of willfulness under the EPA, as such a finding is based on the employer's knowledge of a violation *with respect to Plaintiff*, not others. Indeed, in *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 120 (2d Cir. 1997), cited by Plaintiff, the court found willfulness only because "the New School knew that [plaintiff] was paid less than comparable males, but did not rectify the situation." The *plaintiff's* complaints, not the complaints of others, supported this finding.

As complaints against other managers have no bearing on whether *Plaintiff's* managers possessed discriminatory intent, or whether Defendant was aware of an Equal Pay violation with respect to *Plaintiff,* the Court should deny Plaintiff's motion for additional discovery in this area.

Respectfully submitted,

Kenneth W. Gage
of PAUL HASTINGS LLP
200 Park Avenue, New York, New York 10166
Telephone: (212) 318-6046 || kennethgage@paulhastings.com

---

[14] Plaintiff's cases, in contrast, involve class actions or pattern and practice theories of discrimination, a theory which is no longer valid for single-plaintiff disparate treatment cases after *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012). *See Vuona v. Merrill Lynch & Co., Inc.*, 2011 WL 5553709, at *1 (S.D.N.Y. 2011) ("Plaintiffs claim that Merrill Lynch had a practice of routinely favoring male FA trainees over female FA trainees."); *Louison v. Blue Cross Blue Shield of Greater New York*, 1990 WL 108347, (S.D.N.Y. 1990) (other complaints were "relevant since plaintiff is alleging that he was a victim of a pattern and practice of discriminatory treatment"); *Ri Sau Chan v. N.Y. Downtown Hosp.*, No. 03 Civ. 3003, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004) (permitting burden shifting based on disparate treatment of plaintiff's fellow employees, no longer permitted after *Chin*). The court in *Sasikumar v. Brooklyn Hosp. Center*, 2011 WL 1642585 (E.D.N.Y. 2011), similarly, limited discovery to managers who would have had interactions with plaintiff. *Chambers v. TRM Copy Ctrs Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) does not support Plaintiff's argument, in fact it does not even discuss complaints of other employees.