May 28, 2020

**Via ECF:**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *Ulku Rowe v. Google LLC*, **Case No. 19-cv-08655 (LGS)(GWG)**

Dear Judge Schofield:

    Plaintiff Ulku Rowe ("Plaintiff") and Defendant Google, LLC ("Defendant") (collectively, the "Parties") jointly submit this status report pursuant to the Court's May 14, 2020 Order, ECF No. 39.

**I.**    **Progress Made on Discovery Disputes Since the May 14, 2020 Conference**

    On May 14, 2020, the Court ordered that "no later than **May 28, 2020**, Defendant shall provide to Plaintiff the names, job titles and job codes for individuals who held engineering roles at Levels 8 and 9 in Defendant's offices in the United States at an agreed-upon point in time," "conduct additional, proportionate searches of ESI," after the parties "meet and confer to determine the manner and scope of any additional searches," and "produce to Plaintiff complaints of gender discrimination that related to compensation, promotion or retaliation made within the last five years at Defendant's New York office" after the parties "meet and confer regarding the scope of this production and how responsive complaints will be identified for production." *See* ECF No. 39. The Court further ordered the Parties to meet and confer regarding the proposed compromise referenced by Plaintiff at the conference as to possible comparators at Level 10. *Id.*

    **a.**    **Information Regarding Level 8 and Level 9 Employees**

    Following the Court's Order requiring the production of names, job titles and job codes for certain L8 and L9 employees "at an agreed-upon point in time," on Thursday, May 21, Defendant proposed providing a snapshot of this information as of November 20, 2017. On May 26, Plaintiff responded by requesting snapshots as of November 20, 2017, 2018, and 2019. That same day, Defendant responded that the Court's language of "at an agreed upon point in time" can only be read to require only one snapshot of this information to be produced. On May 27, due to the May 28 deadline, Plaintiff agreed to receipt of the November 2017 snapshot without waiving her objection to the sufficiency of the information provided and reserving Plaintiff's ability to raise concerns to the Court regarding the scope of information provided should the November 20, 2017 snapshot reveal insufficient information necessary to accurately identify potential comparators. On May 28, Defendant produced the names, job titles, and job codes for 296 individuals, as ordered, but did not indicate each employee's Level.

    **b.**    **Additional ESI Searches**

    Following the discovery conference, the Parties exchanged correspondence to begin the meet and confer process. On May 14, 2020, Defendant requested that Plaintiff provide a revised ESI proposal for Defendant's consideration, noting the Court's acknowledgement of Google's 18-month retention

Policy, and because it believed some of the Court's rulings had rendered certain of Plaintiff's proposed searches moot. In response, Plaintiff noted that Defendant had yet to respond substantively to Plaintiff's March 25 ESI Search Term Proposal, though Defendant had described why it thought Plaintiff's proposal was unnecessary and overbroad in its April 16 letter to Plaintiff, and noted in its April 27 letter to the Court that Plaintiff had yet to provide detail on why her additional ESI searches were necessary. On May 15, Defendant further explained its objections to Plaintiff's March 25 proposal, including Plaintiff's selection of the same custodians and same multi-year time frame for every search. Defendant further explained why it believed each search was unnecessary or why certain search terms, custodians and time frames were inappropriate. As Defendant was unsure what Plaintiff seeks to discover, Defendant did not provide a counter-proposal. On May 20, Defendant provided Plaintiff with hit counts for each search she proposed, totaling over 60,000 hits with families.

The Parties continued to exchange email correspondence regarding their respective positions on the scope of Plaintiff's proposal. On May 22, the Parties conferred telephonically and although Plaintiff believed that the information sought by the searches was evidenced by the terms of the searches themselves, Plaintiff explained the intent of each of her searches and thereafter provided a list of the searches and their corresponding Requests for Production of Documents. Plaintiff also agreed to narrow the number of custodians and the time frames for a number of search terms and further revised some of the search terms themselves. Plaintiff's revised search included an initial list of sixteen custodians, and Defendant objected because Your Honor's Individual Rule II.A.1 limits the search to ten custodians. Plaintiff requested that Defendant run a hit report on each search term for each custodian proposed to inform the Parties' discussions regarding relevant ESI possessed by these custodians in order to further narrow their searches. As this would require that Defendant draft and run thousands of searches, Defendant declined, and asked that Plaintiff provide a proposal with ten custodians compliant with the Court's rules. It is Plaintiff's understanding that running a hit report to include custodian and search term information would not unduly burden Defendant and would take less than one hour. Defendant disagrees, as the combination of terms and connectors Plaintiff proposes results in thousands of possible combinations, each of which would need to be run for every individual custodian.

On May 28, Plaintiff provided Defendant with a third proposal, further narrowing the relevant custodians. This search included twelve custodians. On May 28, Defendant provided Plaintiff with a counter-proposal. The Parties continue to meet and confer in an effort to reach agreement on the scope and manner with which any additional searches will be conducted.

### c. **Complaints of Discrimination**

In response to the Court's Order requiring Defendant to "produce to Plaintiff complaints of gender discrimination that related to compensation, promotion or retaliation made within the last five years at Defendant's New York office," after the parties "meet and confer regarding the scope of this production and how responsive complaints will be identified for production," the Parties met and conferred on May 22 to discuss Defendant's plan for obtaining and producing the relevant information. Defendant is in the process of acquiring information from Google's internal complaint system, Case360, to identify complaints that are responsive to the Court's Order. Defendant agreed to provide Plaintiff with information from this system regarding responsive complaints, to inform further negotiations between the Parties regarding the scope of future productions. Without waiving any rights, Plaintiff agreed to review this information. Defendant is in the process of collecting this information to provide to Plaintiff.

## II.   Remaining Discovery Disputes

### a. Level 8 and Level 9 Comparator Information

<u>Plaintiff's Position</u>

On May 28, Defendant produced to Plaintiff a list of 298 names, job titles, and job codes associated with individuals employed in Level 8 and Level 9 in the relevant departments in Google Cloud U.S. as of November 20, 2017. However, Defendant omitted the respective levels of each individual. Plaintiff believes that this information is implicit in the Court's Order and is needed to enable Plaintiff to accurately ascertain, among other things, whether similar jobs are coded differently or given different titles at depending on the level and whether roles are recoded/releveled even when duties have not substantively changed, and thus it is Plaintiff's position that a single 2017 snapshot is insufficient for these purposes. Plaintiff requests that the Court order Defendant to produce snapshots for 2018 and 2019 and to include on all lists the level of each individual.

<u>Defendant's Position</u>

Defendant believes that the Court's Order requiring production of certain employee data "at an agreed-upon point in time" is clear that Defendant is only required to provide one snapshot of employee names, job codes and job titles, which Defendant has done. This information was produced so that Plaintiff could identify job titles which she believed were comparable to her own—Plaintiff does not need snapshots from multiple years in order to do so. When Plaintiff requested identification of every employee's level Defendant responded that it would provide this information for individuals in roles that Plaintiff identifies as comparable. Plaintiff does not need this information to narrow the scope of individuals at issue by determining that, for example, individuals with job titles of "Director, Operations" or "Director, Data Science" are not her comparators. Defendant asks that the Court direct Plaintiff to identify her alleged comparators from the information Defendant has provided.

### b. Level 10 Comparators

<u>Plaintiff's Position</u>

On May 14, the Court ordered that "the parties shall also meet and confer regarding the proposed compromise referenced by Plaintiff at the conference as to possible comparators at Level 10," and the proposed compromise was comparator information regarding L10 employees within Tariq Shaukat's organizational unit. This request is sufficiently tailored as Ms. Rowe applied for the Financial Services Vertical Lead position, one of six VP roles/Heads of Industry under Mr. Shaukat. Rather than meet and confer on this issue, as the Court ordered, Defendant informed Plaintiff that it declines to provide any information regarding Level 10 employees as Plaintiff was hired at a Level 8 and alleges that she should have been hired as a Level 9. With respect to the Financial Services Vertical Lead position, Defendant stated that it has produced qualification, compensation, and position information regarding Mr. Breslow, who was a Level 9. Plaintiff argued, and still maintains, that the Financial Services Vertical Lead Role, like the other VP Heads of Industry roles under Tariq Shaukat, was intended to be a VP, L10 position, based on Google's own documents and emails from its internal recruiter and that discovery into other L10 comparators is relevant both with respect to liability (*e.g.* qualifications) and damages.

<u>Defendant's Position</u>

Plaintiff is seeking broad discovery regarding all Level 10 employees within Mr. Shaukat's organizational unit, including documents regarding the name, gender, age, position, title, level, reporting line, location, and qualifications of those individuals, and all documents regarding their duties,

responsibilities, and compensation. (Dkt. No. 28-1, Pl. Req. 6 , 12 and 13.)  However, none of these individuals can possibly be a comparator to Plaintiff.  Plaintiff alleges that Mr. Breslow received preferential treatment as compared to Plaintiff because of his gender, as she alleges he was selected for the Financial Services Vertical Lead role. (Dkt. 12, ¶¶ 41-43.)

As Defendant has explained to Plaintiff, and the documents produced demonstrate, *no one* was selected for this role because the search was suspended, though Mr. Breslow did take on some of the responsibilities intended for the position on an interim basis.  As Plaintiff alleges Mr. Breslow received preferential treatment, Defendant has produced detailed discovery regarding Mr. Breslow's qualifications, job history, compensation, and performance.  However, Mr. Breslow was, and remained, a Level 9.  Plaintiff's assertions regarding the intended level of a position that never materialized are irrelevant.  Plaintiff's requests for searching discovery regarding individuals in jobs she never applied for, at a level that neither she nor her asserted comparator ever held, have nothing to do with her claims.

   c.  **Additional ESI Searches**

<u>Plaintiff's Position</u>

As outlined, above, Plaintiff has undertaken significant efforts to reach agreement on a proportionate ESI search. Nevertheless, as it did before the May 14 conference, Defendant initially refused to provide Plaintiff with a counter-proposal. After Plaintiff unilaterally revised her search terms further, Defendant did provide Plaintiff with an initial hit count, but it was general in nature (by search, not by term), had not been deduplicated, and identified 60,000 hits with families. To ensure that the Parties could conduct a meaningful negotiation regarding Plaintiff's proposal, Plaintiff then requested that Defendant provide hit counts for each search *by custodian* to determine if the proposed list of custodians could be narrowed further. On May 27, Defendant refused to do so and further refused to respond to the other revisions made in Plaintiff's May 25 Revised proposal. To avoid an unnecessary stalemate involving the number of custodians for which Defendant would re-run the search terms *solely* for purposes of the Parties' ESI negotiation, Plaintiff provided Defendant with a third ESI Search Term Proposal earlier today. This afternoon, Defendant, for the first time, provided Plaintiff with a counter-proposal. Given the late hour at which Defendant's counter-proposal was provided, Plaintiff has been unable to meaningfully review it. The Parties continue to meet and confer on a reasonable and proportional proposal to guide Defendant in complying with the Court's Order requiring that "additional, proportionate searches of ESI" be conducted.  *See* ECF No. 39. To further this effort, Plaintiff respectfully requests that the Court order Defendant to provide a deduplicated hit count by term and custodian for Plaintiff's third ESI proposal, so that the Parties may ascertain what false hits or inexact terms are impacting the hit count.

<u>Defendant's Position</u>

As described above, despite Defendant's repeated requests, Plaintiff refused to identify what documents her ESI searches were actually seeking until May 22, over a week after the discovery conference. Without knowing what Plaintiff was trying to locate, it was impossible for Defendant to prepare a counter-proposal to Plaintiff's search.  On May 22, Plaintiff agreed to revise her search to provide tailored custodians and time periods related to the topic of each search, as compared to her initial search which failed to do so.  However, while Plaintiff's first proposal included searches of eleven custodians, Plaintiff's new "tailored" search included sixteen.  Plaintiff then demanded that Defendant produce hit counts for each individual term, for each of the sixteen custodians (later revised to twelve). However, because Plaintiff's proposal includes so many search terms, including multiple connectors, and sixteen custodians, this would require that Defendant draft and run *thousands* of individual ESI

searches. This is unduly burdensome and disproportionate to the needs of this case. While Defendant is willing to run additional hit reports for each of Plaintiff's ten searches, Plaintiff must produce a proposal that complies with this Court's individual rules.

### d. Redaction Log

<u>Plaintiff's Position</u>

On May 4, 2020, Plaintiff challenged Defendant's improper redactions to a number of responsive and relevant documents. Plaintiff noted that "relevance" redactions within a document are improper and requested a reproduction of all improperly redacted documents and as to any redactions based on privilege, a redaction log outlining the basis for each redaction pursuant to Federal Rule of Civil Procedure 26 (b)(5)(A). Defendant has since maintained that it is not required to produce a redaction log under the Federal Rules of Civil Procedure as these portions of redacted documents are "unresponsive and irrelevant." Plaintiff disagrees with Defendant's blanket assertions that it is permitted to redact within documents for what it unilaterally deems "unresponsive and irrelevant" information. *See Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. Oct. 12, 2018) (collecting cases) ("The weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy."). Moreover, to the extent that Google attempts to withhold non-relevant information in otherwise relevant documents, this Circuit has routinely rejected this approach finding that "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information," *Toussie v. Allstate Ins. Co.*, No. 14 Civ. 2705, 2017 WL 4773374, at *4 (E.D.N.Y. Oct. 20, 2017), and unnecessary redactions could render the relevant portions of such documents incomprehensible. Because Defendant refuses to produce unredacted documents and also refuses to provide a log outlining its basis for redactions, Plaintiff is prepared to move generally to compel production of these documents. Plaintiff is amenable to submitting a pre-motion letter per the Judge's Individual rules if the Court would like further briefing on this issue.

<u>Defendant's Position</u>

On May 13, Defendant produced to Plaintiff a privilege log identifying documents withheld or redacted on the basis of attorney-client privilege or work product protections, as required by Federal Rule of Civil Procedure 26 (b)(5)(A). However, Plaintiff now seeks to impose an additional obligation on Defendant beyond the requirements of the Federal Rules, requesting that Defendant produce a log describing any non-responsive information that Defendant has redacted from documents produced.

Defendant's redaction of non-responsive, sensitive information is appropriate. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93CIV.5298(LMM)(RLE), 1997 WL 563792, at *1 (S.D.N.Y. Sept. 10, 1997) (redaction is appropriate where "[t]he information is non-responsive."); *The New York Times Co. v. Gonzales*, 459 F.3d 160, 170 (2006) ("Redactions of documents are commonplace where sensitive and irrelevant materials are mixed with highly relevant information," and it is appropriate to redact matters that are "not relevant to the case"); *Millenium Health, LLC v. Gerlach*, No. 15CV7235WHPJLC, 2015 WL 9257444, at *3 (S.D.N.Y. Dec. 18, 2015) (redactions were appropriate because the information was "not responsive . . . ."); *Schiller v. City of New York*, No. 04CIV.7921(KMK)(JCF), 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) (permitting redaction of portions of documents which

May 28, 2020
Page 6 of 6

were "irrelevant.").

Further, Defendant offered to meet and confer with Plaintiff regarding any redaction she identified. Defendant did so with respect to three documents, describing the nature of those redactions, which included recruiting for positions not at issue in this case, and information about a medical appointment of an employee's family member. If Plaintiff actually believed that any redactions "render[ed] the relevant portions of [any] documents incomprehensible," she could confer with Defendant to resolve any issues. Instead, Plaintiff refuses to engage with Defendant, but demands a log of each and every redaction, including every social security number or account number redacted. This seeks to impose an unnecessary burden on Defendant, where it has already offered to meet and confer in good faith.

### III. Proposed Deadlines for Extension of Discovery Schedule

The Parties have conferred and renew their request for an extension of the discovery deadlines due to the impact of the current COVID-19 pandemic and in light of outstanding discovery disputes. This is the second request for an extension and as it affects the remaining deadlines of the scheduling order. The Parties have attached a proposed Amended Schedule for the Court's consideration. *See* Exhibit 1.

### IV. Telephonic Conference Dial-in Information

The Parties will host the June 4, 2020 Conference, at 10:40 a.m., on the following conference line: Dial-in Number: (888) 240-2560; Meeting ID: 194 206 971; Code: 1909.

Respectfully submitted,

By: _____   By: _____

*Attorneys for Defendant*    *Attorneys for Plaintiff*

**PAUL HASTINGS LLP**    **OUTTEN & GOLDEN LLP**
Kenneth W. Gage    Cara E. Greene
Caitlin D. Brown    Shira Z. Gelfand
200 Park Avenue    Maya S. Jumper
New York, NY 10178-0600    685 Third Avenue, 25th Floor
Phone: (212) 318-6046    New York, New York 10017
    Telephone: (212) 245-1000