K5E5rowC                          telephonic proceeding

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ULKU ROWE,

              Plaintiff,                New York, N.Y.

         v.                             19 Civ. 8655 (LGS)

GOOGLE, LLC,

              Defendant.

------------------------------x
                                        May 14, 2020
                                        10:48 a.m.
Before:

                HON. LORNA G. SCHOFIELD,

                                        District Judge


                      APPEARANCES


OUTTEN & GOLDEN, LLP
     Attorneys for Plaintiff
BY:  CARA GREENE


PAUL HASTINGS, LLP
     Attorneys for Defendant
BY:  KENNETH W. GAGE
BY:  CAITLIN D. BROWN
```

1               (Case called)

2               THE COURT:  Good morning.  This is Judge Schofield.

3               THE DEPUTY CLERK:  Counsel's appearance has been noted
4    for the record.  Before we begin, I would like to remind the
5    parties of several rules and restrictions that are in effect
6    due to the Novel Coronavirus.

7               First, while members of the public and press have a
8    presumptive access to this proceeding, either live or
9    telephonically, recording or broadcasting of this proceeding is
10   still prohibited by the policy of the Judicial Conference of
11   the United States.  Violation of these prohibitions may result
12   in sanctions.

13              Second, as we have a court reporter present today, I
14   am going to ask counsel to please state your name before you
15   speak, each time you speak.

16              We are here before the honorable Lorna G. Schofield.

17              THE COURT:  Okay, good morning.

18              Could you tell me who will be speaking on behalf of
19   the plaintiff?

20              MS. GREENE:  On behalf of the plaintiff it will be
21   Cara Greene from Outten & Golden.

22              THE COURT:  Okay.  Thank you, Ms. Greene.

23              And who on behalf of Google?

24              MR. GAGE:  Your Honor, this is Ken Gage from Paul
25   Hastings.  I will divide this between myself and Caitlin Brown

1   who is also on, depending on the issue.

2           Okay.

3           THE COURT:  Okay, thank you.  Let me amplify, since we
4   have two female voices speaking, please, identify yourself
5   before you speak.  I think Mr. Gage you don't have to since you
6   are the only male person who is speaking.

7           We are here for two reasons.  One is there are a
8   number of discovery disputes that I would like to try to
9   resolve, and the other is I have a joint request to extend fact
10  discovery so I would like to turn directly to the discovery
11  dispute.  The first one deals with production of documents
12  relating to comparators and, as I understand it, plaintiff was
13  hired as a level 8 technical director, she asserts that she
14  should have been hired as a level 9, and also she asserts that
15  she should have been promoted to a level 10 vice president of
16  financial services vertical.

17          As I understand it, Google has produced documents
18  relating to three men who were hired around the same time as
19  plaintiff as level 9 technical directors, in other words the
20  level that she said she should have been hired at, and as well
21  as the man who was hired into the vice president position that
22  is at issue.  Plaintiff's position is that this information is
23  in insufficient and she wants information about more people.

24          Let me ask questions first and I guess it makes most
25  sense to ask the defendant these questions, just so I

1    understand the facts a little more.  So, what do these levels

2    signify?  Are they pay levels?  What are they?

3             MR. GAGE:  That's essentially it, your Honor.  They

4    are sort of the company classifies jobs according to levels

5    similar to a grade structure but it is across all parts of the

6    business and so jobs are leveled based upon scope of

7    responsibility, experience, what people bring to the table when

8    they are hired and placed into the job.

9             THE COURT:  And their pay is based on the level that

10   they're at?

11            MR. GAGE:  Yes, there is a correlation between pay and

12   level; yes, there is.

13            THE COURT:  Okay.  So I gather from that that even

14   though the position that we are talking about for plaintiff as

15   technical director, there are levels 8, 9 and 10 all over the

16   company in all sorts of positions.  Is that right?

17            MR. GAGE:  That's correct, your Honor.  There are,

18   across levels 8, 9, and 10, there are well over 500 people

19   across 62 different job codes across 48 different job titles

20   across 115 different cost centers in the company.

21            THE COURT:  Okay.  So, how many -- and I am not sure I

22   understand the distinction between job codes, job titles, and

23   cost centers, but for technical director at levels 8, 9, and

24   10, how many people are there?

25            MR. GAGE:  I am going to ask my colleague Caitlin

1   Brown.

2         Caitlin, do we have that information?

3         I don't believe we have any 10 in that job title.

4         THE COURT:  So, it would be just levels 8 and 9.  How
5   many people are technical director at levels 8 and 9?

6         MS. BROWN:  I am look being at our data, your Honor.
7   Just one moment?

8         THE COURT:  And is technical director a job code or a
9   job title?

10        MR. GAGE:  Job title, your Honor.

11        MS. BROWN:  Your Honor, actually a slight distinction
12  because the exact job title, it corresponds to a job code.  It
13  also changes based on level.

14        And, this is Caitlin Brown for defendant speaking.

15        And so, Ms. Rowe's job title was a principal technical
16  solutions consultant and the level 9s were at a distinguished
17  technical solutions consultant and so those each correspond to
18  different job codes.

19        THE COURT:  How many were there at level 8 and then
20  how many were there at level 9?

21        MS. BROWN:  So, we would have to take a snapshot at a
22  specific point in time.

23        THE COURT:  Right.

24        MS. BROWN:  If we look at a snapshot as of November
25  2019 we have 25 individuals across those two roles and so in

1      level 8 we have 19, there would be 19 individuals in the level
2      8 principal technical solutions consultant role, and then there
3      will be six individuals in the level 9.
4               THE COURT:  And are people both hired into those
5      levels and promoted into those levels?
6               MR. GAGE:  Yes, your Honor.
7               MS. BROWN:  Yes, they are.
8               THE COURT:  So, what plaintiff is saying here is that
9      she was hired into level 8 and that she should have been hired
10     into level 9, right?
11              MS. BROWN:  That's our understanding, your Honor.
12              THE COURT:  Do you have any idea of the gender
13     breakdown, so these 19 people at level 8, how many were male?
14              MS. BROWN:  The data that I have does not provide a
15     gender, however if I am making assumptions based on the
16     individuals' names then it looks like there might have been two
17     or three as of November 2019 who were women and the other 16
18     would have been male.  But, it is assumptions based on
19     individuals' first names.
20              THE COURT:  Of the six people who were at level 9, how
21     many of those were women versus men?
22              MS. BROWN:  So, I would say there are five who I know
23     are male, another individual I am not sure of their gender
24     based on that person's first name.
25              THE COURT:  Okay, so, either five or all of the six at

1  level 9 were male.

2           MS. BROWN:  Yes, your Honor; as of November 2019.

3           THE COURT:  So, it seems to me that at least those men
4  out of the 25 are reasonably considered comparators.  I don't
5  agree with the argument that plaintiff is restricted to the
6  comparators at, that she has made and identified in the
7  complaint as I agree with the legal proposition that part of
8  the purpose of discovery is to identify comparators so that is
9  what I am inclined to order.

10          But, let me ask the plaintiff why you wanted more than
11 that.

12          MS. GREENE:  Thank you, your Honor.  This is Cara
13 Greene.

14          While technical director may have some value in terms
15 of assessing the comparability of individuals, in and of itself
16 it is not determinative.  What we know is that plaintiff was in
17 an engineering role.  What we have indicated to defendant is
18 that we are not interested in the level 8 or level 9s in an
19 unrelated role so things like marketing or operations or other
20 types of non-engineering roles.  But, as to engineering roles,
21 the plaintiff was told repeatedly that -- in Google speak they
22 refer to it as eng roles -- level 8 eng role is the same.  To
23 be able to assess comparability under the differing standards
24 of the equal pay law claims and the anti-discrimination claims
25 either we -- we don't believe that the starting point should be

1   simply the title of technical director.  We have noticed a
2   30(b)(6) deposition where we will be able to understand more
3   definitively how Google assigns titles, roles, leveling
4   associated with those titles and roles, etc., but to be able to
5   have that 30(b)(6) deposition to be able to explore and then be
6   able to narrow for purposes of summary judgment and ultimately
7   trial, the correct pool of comparators, we have to start with
8   that broader pool.
9           THE COURT:  So let me just interrupt there and make
10  sure I understand.
11          So, in other words you are saying that you would like
12  to draw comparators from all of the people who were in an "eng
13  role," meaning in an engineering role, and that you are not
14  exactly sure what all of those positions are but that you have.
15  That is something you want to cover in your 30(b)(6)
16  deposition; is that right?
17          MS. GREENE:  That's right.  And this information, and
18  just to be clear as well, we are looking within the United
19  States, not outside of the U.S.  This information is widely
20  available.  Our client is able to use Google systems to search
21  herself for either the names of individuals who are in an
22  engineering level role at level 8 or 9.  So, it is not
23  difficult information to gather.  However, that doesn't provide
24  the information with respect to the other components including
25  compensation that would also be relevant both for purposes of

1  establishing comparability as well as for establishing
2  disparate treatment.
3          So, either given how easily accessible this
4  information is and how probative it potentially could be in
5  this case, that's the distinction we are drawing, the eng role
6  to level 8 or 9.  We have also ordered a compromise with
7  respect to level 10 positions but I understand right now they
8  are just talking about level 8 and level 9.
9          THE COURT:  So, in other words, you would be satisfied
10 with the eng roles for levels 8 and 9 and it sounds like you
11 are saying they are readily identifiable so I could order that
12 and we wouldn't need a 30(b)(6) deposition to know who that
13 was.  You might be more informed about these various roles from
14 your 30(b)(6) deposition but just in terms of ordering
15 comparator information you don't need the 30(b)(6).  Is that
16 right?
17         MS. GREENE:  That's right.  What we would anticipate
18 is that once we have those roles, that information, then in the
19 30(b)(6) deposition we could explore what is the difference
20 between a technical -- between two people who are both in
21 engineering at level 8, one has this title and one has that
22 title and we could explore, in a 30(b)(6) deposition, to
23 determine whether those roles are in fact comparable for
24 purposes of the equal pay law in Title 7 and New York City
25 Human Rights Law claims.  But, from a foundational point, the

1  engineering level 8 or level 9 comparators are the right group
2  to make that decision.
3              THE COURT:  So, it sounds, though, like you are saying
4  that, and maybe in the interest of efficiency what makes the
5  most sense is for you, for me to say that, or for me to rule
6  that comparator information has to be provided for level 8 and
7  level 9 in an engineering roles that are comparable and what if
8  comparable is subject to negotiation between you and the
9  defendant following your 30(b)(6) deposition.
10             Does that make sense?
11             MS. GREENE:  This is Ms. Greene again.
12             Yes, it makes sense with one point of clarification.
13 I think that initially we need more information in terms of the
14 engineering roles to be able to assess comparability so, at a
15 minimum, the titles that are associated -- and I understand
16 there is job codes, job titles -- but understanding and having
17 those job codes and job titles prior to the 30(b)(6) deposition
18 so that we can explore in that context to be able to make the
19 assessment then and discuss and try to reach compromise with
20 opposing counsel as to who the right group of comparators are
21 then.
22             THE COURT:  Okay.  Let me hear from the defendant.  I
23 think you can tell where I am going but I want to get input
24 from you as well.
25             MR. GAGE:  Sure.  Thank you, your Honor.  And this is

1   Ken Gage.

2          If I understand what your Honor is suggesting
3   correctly, I want to make sure that I know whether the chicken
4   or the egg is coming first here.  If your Honor is suggesting
5   that there be a 30(b)(6) deposition focused on this topic to
6   then facilitate negotiations around what those comparable roles
7   would be within L8, L9 engineering roles, I think that would
8   make some sense.  If, on the other hand, the egg is coming
9   before the chicken, so to speak, and we are being, you are
10  inclined to order us to respond to all of the discovery
11  requests on this point for L8, L9 engineering roles that, I
12  think, would be a real problem and I think overly broad
13  because --

14         THE COURT:  You can stop right there because I was
15  contemplating the former and not the latter.

16         MR. GAGE:  Okay.

17         THE COURT:  What it really requires is for rather than
18  me micro managing how you and the plaintiff figure out who is
19  comparable, you all need to assess that between yourselves,
20  negotiate, do a 30(b)(6) if necessary, and then go forward on
21  that basis.  The basic concept is that the comparator would be
22  men in engineering roles at level 8 and 9 provided the
23  engineering roles are comparable as you all negotiate and
24  figure out.

25         MR. GAGE:  Okay, your Honor.  I think that path

1  forward makes sense and Ms. Greene has proposed to us certain
2  parameters and we are in the process of trying to get our arms
3  wrapped around what that universe would look like and are
4  hoping would get that information soon so that we can share
5  some more information with opposing counsel to facilitate these
6  discussions.
7              THE COURT:  Okay.  That sounds good.
8              So let's move to the next issue which is -- let me
9  find the next issue -- complaints about discrimination.
10             So, I reject the defendant's position that the only
11 complaints that are relevant are complaints about the two
12 managers.  I think that that is not consistent with the case
13 law, at least as I read it most.  That doesn't mean, of course,
14 that other information and other complaints are necessarily
15 ultimately admissible but I think that they are within the
16 scope of proper scope of discovery.  So the question is, as I
17 understand it, the plaintiff is looking for all of the
18 complaints about discrimination, meaning pay or promotion or
19 retaliation from Google's New York office in the last five
20 years.
21             Is that right?
22             MS. GREENE:  Yes, your Honor.
23             THE COURT:  Let me hear from the defendant.  I am
24 rejecting your proposition that it should be limited to two.
25 If you want to make any remarks about the breadth of the

1  request of the New York office in the last five years?

2          MR. GAGE:  Sure, your Honor.  Again, this is Ken Gage.

3          Part of the challenge here is Google has a robust

4  internal complaint process.  People raise all sorts of issues

5  and part of the challenge would be in identifying what would

6  qualify as the type of complaint that the plaintiff is looking

7  for here in the first instance and then collecting all

8  responsive documents relating to that complaint or those

9  complaints thereafter.  To say complaints of discrimination,

10  that doesn't really give us a precise way of finding things.

11  If an employee raises an internal complaint that her or his

12  boss didn't provide him or her with certain tools that they

13  needed, that arguably could be construed as a complaint of

14  discrimination so it is hard to --

15          THE COURT:  Let me stop you right there.

16          I understand your concern.  I think the plaintiff was

17  pretty precise.  I understand that having precise principles is

18  one thing and applying them is another, but what I am going to

19  do is ask you to meet and confer about the scope of the

20  production and specifically how you will identify what is

21  responsive and not and then come back to me if there are any

22  remaining issues to be resolved.  But, it sounds to me like you

23  need to talk to each other first.

24          But, in general, what I am ruling is that complaints

25  of gender discrimination specifically relating to pay or

1  promotion or retaliation should be provided if they were
2  complaints within the New York office in the last five years.
3          The next issue I believe has to do with the ESI
4  searches.  I am not exactly sure I understand what happened
5  here.  It sounds to me like Google fashioned its word searches
6  and then also followed up with the various custodians but that
7  there was no agreement either as to search terms or custodians.
8  Is that right?
9          MS. BROWN:  That's correct, your Honor.  This is
10 Caitlin Brown on behalf of Google.
11         THE COURT:  Okay.  Let me hear from Google because
12 that seems -- well, I mean on the one hand I commend you for
13 trying to meet the discovery schedule and get this thing going.
14 On the other hand, I would just say you must have known that
15 there was some risk involved if the plaintiffs hadn't agreed to
16 the search terms and the custodians.  On the other hand, I
17 would also say that the plaintiff is certainly within her right
18 to ask about that, although coming late given the schedule.
19         So, given all of that, what exactly is it that the
20 plaintiff -- I mean, as I understand it, the document retention
21 policy says there is only an 18-month retention period and in
22 this case there was, I presume, a discovery hold but that still
23 wouldn't change the fact that at least as of the date of the
24 hold there was only an 18-month retention period.  So, what
25 exactly is it that the plaintiff needs that hasn't been

1    produced that should be the subject of ESI?

2             MS. GREENE:  Thank you, your Honor.  This is Cara
3    Greene.

4             Just to step back for a moment, I think what happened
5    was because of the early discovery protocols people fashioned a
6    search, conducted that search before plaintiff's discovery
7    requests had even been served.  In plaintiff's discovery
8    request there was a section specifically related to ESI that
9    requests that the parties meet and confer and come to an
10   agreement as to how ESI would be conducted, how ESI searches
11   would be conducted.

12            So, from the time we first served our discovery
13   request we asked for the opportunity to meet and confer and
14   come to an agreement.  Since that time -- that was in
15   January -- we have repeatedly tried to engage on this issue and
16   didn't have the full information.  It was only after we filed
17   our request with the Court that we were even provided with the
18   search terms that Google had run previously.

19            In assessing those search terms and compared to the
20   search terms that we had composed this is very, very little
21   overlap.  The Google searches are very narrow in their scope,
22   they're very narrow in terms of their custodians.  Just by way
23   of example, there is no search with respect to Diane Greene who
24   is someone who, at various points of time, was involved in
25   decisions related to Ms. Rowe.  She is no longer with Google.

1   But, as of the time we appeared in this case, prior to the
2   commencement of litigation and asked for a litigation hold to
3   be put in place it should have, you know, resulted in those
4   e-mails and electronically stored information being captured
5   and preserved such that a search could be conducted in the
6   discovery stages.
7           So, we have proposed ESI search terms that we believe
8   are tailored to our discovery requests.  We have also asked
9   that Google run those searches and provide us with hit counts
10  so that we could assess if they were inadvertently overbroad
11  and work together to properly tailor and narrow them so that
12  both sides are getting the documents that they actually want.
13  And, in our experience, that is typically how ESI is conducted
14  in a litigation.
15          THE COURT:  So let me just stop there.
16          So, is it that Google has refused to meet and confer
17  at all on search terms and wants to rest on its prior searches?
18  Is that it?
19          MS. GREENE:  That's our understanding, your Honor.
20  Again, this is Cara Greene.
21          THE COURT:  Okay.  Could I hear from someone from
22  Google, please?
23          MS. BROWN:  Your Honor, this is Caitlin Brown for
24  Google.
25          Just to -- if you would like me to address some of the

prior points that Ms. Greene raised there are several that we do disagree with.

We provided plaintiff with our ESI search protocol. Since we provided plaintiff with that several weeks ago we have not heard back from plaintiff on any revised or reduced scope of searches that they might be willing to consider. If they were to propose a narrower search we would certainly consider that and go back to our client to discuss that but we haven't heard anything new from plaintiff aside from her original proposal which we think is exactly overbroad.

THE COURT: I am going to stop you there partly because I have conferences piling up after you. It sounds to me like it is premature for me to be addressing this issue. You all need to meet and confer. Clearly, some further ESI is appropriate here, but it needs to be proportional and we also need to have some end in sight. The point of the discovery is not to go on for months and months in the future, we need to get the additional documents and then get on with depositions. And then I think with respect to the Google issue that was just raised in a letter asking for the relevant time period for comparators, I think that's kind of putting the cart before the horse. I agree that plaintiff should have to disclose that at some point. It sounds like her identification as comparator so far was admittedly overbroad and they need further discovery along the lines we have already talked about in order to

1  actually identify who they think are comparators and then you
2  can talk about what the relevant time period is.
3           So, what I would like you to do is I would like you to
4  take the next two weeks to talk to each other and try and
5  resolve as many of these issues as possible and then, once you
6  have done that, write me a letter, tell me what the resolution
7  is, tell me what any open issues are, and then if you -- and
8  then at that point make a specific proposal as to an extension
9  for discovery.  In other words, by when the documents will be
10 produced, by when depositions will be taken, whether or not you
11 are planning to do expert discovery.  If so, look at my case
12 management plan but normally it contemplates that sometime
13 during fact discovery you would give each other notice and
14 agree on your expert discovery schedule.  Please do all of that
15 and then write me this letter in two weeks and I will schedule
16 a conference, why don't we just schedule it now, to take place
17 a week after I receive your letter but I will cancel the
18 conference if all have resolved your differences and I
19 encourage you to do that.
20          So, let's leave it at that I will issue an order today
21 that makes all of that clear, and then we can take it from
22 there.  Okay?
23          MS. GREENE:  Thank you, your Honor.
24          MR. GAGE:  Thank you, your Honor.
25          THE COURT:  All right.  Thank you.  We are adjourned.

K5E5rowC                    telephonic proceeding

1                                   o0o