

Advocates for Workplace Fairness

Cara E. Greene, Esq.
ceg@outtengolden.com

August 18, 2020

<u>Via ECF:</u>
The Honorable Gabriel W. Gorenstein
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     <u>*Ulku Rowe v. Google LLC*, Case No. 19-cv-08655 (LGS)(GWG)</u>

Dear Judge Gorenstein:

We represent Plaintiff Ulku Rowe in the above-referenced matter.  We write pursuant to Section 2.A. of Your Honor's Individual Practices and Local Rule 37.2 to request a pre-motion conference in anticipation of Plaintiff's motion to compel the production of discovery relating to (1) electronically stored information ("ESI"); and (2) comparator evidence.

Plaintiff served requests for production of documents ("RFPs") on January 21, 2020 and Defendant served its Objections and Responses to Plaintiff's discovery requests on February 28, 2020. The Parties met and conferred regarding outstanding discovery issues via telephone throughout March and April 2020. Plaintiff filed a letter motion on April 21, 2020 regarding, in part, several discovery disputes relating to ESI, comparator evidence, and complaints of discrimination. Defendant filed its letter response on April 27, 2020 and following a discovery conference on May 14, 2020, the Court ordered production of certain comparator information, internal complaints of discrimination, and that Defendant conduct additional, proportionate searches of ESI. This letter concerns disputes surrounding two of these categories: ESI searches and comparator information. Although under Court order to do so, Defendant has failed to fully produce responsive information and Plaintiff hereby seeks an order from the Court compelling complete production of discoverable information.

**Electronically Stored Information**

As is typical in cases involving discrimination and retaliation in the workplace, Plaintiff sought discovery of ESI relating to hiring, leveling, pay, promotion, and other central aspects of her claims and Google's defenses. Following the Court's order that Defendant "conduct additional, proportionate searches of ESI," (Dkt. 39), on June 15, the Parties agreed on 11 search terms and 10 custodians, a copy of which are attached hereto as Exhibit 1. The agreement on search terms and custodians followed several rounds of negotiations between the Parties, and the searches were thoughtfully tailored by Plaintiff to capture relevant information pertaining to Plaintiff's claims and Google's

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One Embarcadero Center  38th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington, DC  601 Massachusetts Ave NW  Second Floor West Suite  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

The Honorable Gabriel W. Gorenstein
August 18, 2020
Page 2 of 5

defenses. On July 10, Defendant produced 302 documents, of which 38 previously had been produced. On August 3, Defendant produced 182 documents and informed Plaintiff that its production was complete. Defendant's ESI production represents less than 1% of the initial hits resulting from the applied search terms.

The Parties met and conferred via telephonic conference on July 30 at 4:00 p.m. to discuss Defendant's production, comparator evidence, and deposition scheduling. The call was approximately 55 minutes and in attendance were Maya Jumper and Shira Gelfand of Outten & Golden LLP, and Kenneth Gage and Sara Tomezsko of Paul Hastings LLP.  During the call, counsel for Plaintiff expressed concern about the proportionality and thoroughness of Defendant's ESI production based on the number of initial hits as compared to the number of documents Defendant produced. Defendant's counsel responded that they had determined that the documents were not relevant. Counsel for Plaintiff reiterated its prior request for a final hit report in order to fully assess the rate and proportion of production. Plaintiff's counsel also sought Defendant's justification for withholding on the basis of relevancy approximately 99% of the documents identified by the searches. In response, Defendant simply asserted that it was not obligated to produce all of the documents identified by the search terms, despite the fact that search terms had been agreed to by the Parties and were narrowly tailored, and Defendant would not describe the criteria by which it assessed relevance. Following their phone call, the Parties continued the discussion by email, and on August 6, Defendant stated that it would not provide a hit report. In response, Plaintiff informed Defendant on August 10, 2020 that she believed the Parties to be at an impasse and that she would be requesting a conference with the Court. The Parties subsequently exchanged email correspondence with respect to the issues Plaintiff would be raising with the Court and potential revisions to the Scheduling Order in light of this dispute. Plaintiff now seeks intervention from the Court to compel the production of documents identified as a result of the Court-ordered ESI searches.

Even without the aid of a final hit report to assess the completeness of Defendant's production, the small fraction of documents Defendant has produced suggests that Defendant's exclusion of documents on the basis of relevance was overly broad. Based on initial hit counts, it appears that Defendant produced only 6% of documents identified by searches #3 and #6, 1% of documents identified by search #10, and 0% of documents identified by search #9. For example, Defendant produced fewer than 30 documents (of 3,039 initial hits) in response to search term #10, which included, in close proximity with the names of a subset of Plaintiff's comparators, key terms like "bonus", "compensat*", "equity", "evaluat*", "level*", and "pay*." As further example, of the 12 individuals' names that were included as elements of search terms, no documents at all were produced for seven of them, and for two of the remaining five individuals, less than 10 emails were produced.

To date, Defendant has failed to offer any particularized justification for withholding the vast majority of identified documents, other than a vague relevancy objection, which contravenes the directives of Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 26(b)(1) (a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"); *see also In re Penthouse Exec. Club Comp. Litig*., No. 10 Civ. 1145, 2012 WL 1511772, at *1 (S.D.N.Y. Apr. 30, 2012) ("Relevant information need not be admissible at the trial if the discovery appears reasonably

The Honorable Gabriel W. Gorenstein
August 18, 2020
Page 3 of 5

calculated to lead to the discovery of admissible evidence.").[1]  Here, the ESI search terms were narrowly tailored to capture relevant information based on specific names, keywords, and custodians identified from Plaintiff's review of the documentary evidence. Defendant has not, nor can it, support its assertion that the thousands of documents withheld on the basis of "relevancy" are not reasonably calculated "to lead to other matter that could bear on any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016). This is not the first time that Defendant has attempted to use "relevancy" as a basis to improperly withhold discovery in this matter, which the Court ruled was improper. (*See* Dkt. 43).

Having demonstrated an "adequate factual basis" on which to dispute Defendant's withholdings of the majority of documents resulting from the Court-ordered ESI searches, it is Defendant's burden to now "justify withholding relevant information [by] [a] show[ing] of 'good cause,' the standard for issuance of a protective order under Rule 26(c)." *See Winfield v. City of New York*, No. 15 Civ. 5236, 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018). Defendant has not done so, and we respectfully request that the Court order Defendant to produce, within two weeks, the ESI identified by the Parties' agreed-to searches, with the exception of attorney-client privileged materials.

### Comparator Evidence

As is also typical in discrimination, retaliation, and equal pay cases, Plaintiff has sought comparator discovery, including discovery related to the jobs performed by comparators. By letter motion on April 21, Plaintiff requested that the Court compel discovery that will enable her to properly identify comparators and establish her equal pay, discrimination, and retaliation claims. (Dkt. 28). On May 14, the Court ordered Defendant to produce comparator information of "men in comparable engineering roles at Levels 8 and 9 in Defendant's offices in the United States, subject to negotiation between the parties and the noticed Rule 30(b)(6) deposition regarding the definition of "comparable."" (Dkt. 39). The Court also ordered the Parties to reach an agreement as to production of information as to "possible comparators at Level 10." *Id.*  During a May 14 discovery conference with the Court, the Parties agreed that once Defendant produced the initial comparator information, Plaintiff would explore the titles, roles, and leveling of these positions to assess the scope and universe of her comparators at the 30(b)(6) deposition. The Court then directed the Parties to engage in further discussions on discovery relating to the universe of proper comparators following the 30(b)(6) deposition.

Following a joint status letter submitted by the Parties and further meet and confer efforts, the Court ordered Defendant to produce "snapshots" for possible comparators for 2017, 2018, and 2019. (Dkt. 43). These snapshots included names of individuals, their level, job code, and job title. Following

---

[1]     To the extent that Defendant has insisted on withholding information related to other incidents of gender discrimination, or evidence related to the challenged practices, despite the Court's ruling that such evidence is relevant to Plaintiff's claims, Plaintiff again asserts that withholding on this basis is improper. *See Mitchell v. Fishbein*, 227 F.R.D. 239, 249 (S.D.N.Y. 2005) ("While evidence establishing a general pattern of discriminatory treatment by an employer will not be determinative of the discrimination issue, it is nevertheless relevant and therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(1).").

The Honorable Gabriel W. Gorenstein
August 18, 2020
Page 4 of 5

the production of the snapshots, on June 15, Plaintiff requested that Defendant supplement its prior production of job descriptions for job titles identified on the L8-9 snapshots before the 30(b)(6) deposition. Defendant agreed to produce job descriptions and job titles for fourteen of 54 job titles reflected in the snapshots. On June 18, Plaintiff noted that the job description information should include the job ladders and families associated with each role – information that had already been produced with respect to Plaintiff's position. (*See* Exhibit 2, GOOG-ROWE-00017717.) Job ladders show, within a position, the progression to higher levels of pay, skill, responsibility, or authority. Job families reflect the groups of positions that involve work in the same functional occupation and have related core knowledge and background requirements. This information is responsive to Plaintiff's RFP No. 5 and related to the noticed 30(b)(6) topics, and is necessary for Plaintiff to ascertain the comparability of positions.

The Parties met and conferred via telephonic conference on July 30 at 4:00 p.m., as described above. During that call, Defendant stated that it would produce job titles and descriptions for the fourteen positions, but would not include job ladders and job families. After Defendant produced job titles and descriptions on August 3, Plaintiff again requested a list of the job ladders and families associated with these roles. Defendant responded on August 6, stating that Plaintiff's request is premature and that it will only produce information relating to relevant comparators *after* the 30(b)(6) depositions. It is Plaintiff's position that job ladders and families associated with these roles are relevant, responsive and necessary for Plaintiff to move forward with the 30(b)(6) depositions. Given that Defendant has produced a job ladder and job family for Plaintiff's position, doing so would not be overly burdensome with respect to the other relevant job titles. Plaintiff informed Defendant on August 10, 2020 that she believed the Parties to be at an impasse and now seeks intervention from the Court to resolve this issue.

Further, the job description information Defendant did produce was incomplete and was not produced as it is kept in the usual course of business, in the form ordinarily maintained, nor in a form which is reasonably useable. *See* Fed. R. Civ. P. 34(b)(2)(E). Rather, it appears that Google's counsel created and compiled a spreadsheet, which Plaintiff has no way of authenticating or verifying its accuracy. Google indicated that "[t]hese data were pulled from two places, Google's current gHire database and the legacy system that predated gHire, and they were compiled into a single spreadsheet for ease of reference." The spreadsheet, however, appears to be missing several fields related to these jobs descriptions. Moreover, another spreadsheet is missing data regarding Level 9 positions entirely.

On August 5, Plaintiff requested the original documents containing the names, job titles, and job codes used for individuals who held engineering roles at Level 8 and 9 in Defendant's offices in the United States. Plaintiff also requested this same job description data with respect to the six Level 10 positions identified by the Court. Notably, Defendant previously produced job title, job description, job family, and job ladder for Plaintiff's position in the manner kept in the usual course of business. (*See* Exhibit 2). Defendant has stated that the information provided in the spreadsheet is the available data that constitutes descriptions of the positions at issue but a defendant must not "convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the

The Honorable Gabriel W. Gorenstein
August 18, 2020
Page 5 of 5

requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34(b), Advisory Committee's note, 2006 amendment.

       Accordingly, we request that the Court order Defendant to produce, within two weeks, complete job description information for the fourteen Level 8 and 9 positions, and the six Level 10 positions, including job titles, descriptions, ladders, and families, and to produce it in the manner kept in the usual course of business (i.e., the same format in which Exhibit 2 was produced).

### Impact of Delay on Discovery Schedule

       Given the current deadline of September 21, 2020 for depositions to be completed, Plaintiff anticipates that the deadline for depositions and Requests for Admission may need to be adjusted to allow for supplemental production and adequate review of documents. As a result of the delay occasioned by the incompleteness of Defendant's production, two 30(b)(6) depositions have had to be postponed.[2] Further, fact witness depositions, which are anticipated to number ten in total, will not be able to commence until document discovery is complete. Plaintiff has conferred with Defendant, who is not opposed to an extension of deadlines, and the Parties request that following the Court's ruling in this matter, they be given the opportunity to meet and confer about the appropriate length of an extension and submit such a request to the Court consistent with the Court's Individual Practices.

                              Respectfully submitted,

                              Cara E. Greene

c:      All counsel of record via ECF

---

[2]    A third 30(b)(6) deposition related to internal complaints of discrimination is scheduled for August 25. Defendant is in the process of producing policy documents and other complaint documents in accordance with the Court's May 14, 2020 order requiring Defendant to produce "complaints of gender discrimination specifically relating to pay or promotion or retaliation . . . in the New York offices in the last five years." *See* 5/14/20 Tr. 13:24-14:2. If Defendant does not timely complete this production, the Parties will need to reschedule this 30(b)(6) deposition as well.