

Advocates for Workplace Fairness

Cara E. Greene, Esq.
ceg@outtengolden.com

December 1, 2020

**Via ECF:**
The Honorable Gabriel W. Gorenstein
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Ulku Rowe v. Google LLC*, Case No. 19-cv-08655 (LGS)(GWG)

Dear Judge Gorenstein:

We represent Plaintiff Ulku Rowe in the above-referenced matter. We write in opposition to Defendant Google LLC's motion for a protective order and, in the alternative, motion to quash the subpoena of Diane Greene. Defendant's recitation of the meet and confer efforts of the Parties accurately and clearly reflects that fact that Defendant has been on notice of Plaintiff's intent to depose Diane Greene since October 7, 2020, when pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Plaintiff provided counsel for Defendant notice and a copy of the subpoena. *See* Defendant's Motion for Protective Order ("Def.'s Opp."), ECF No. 62, ¶ 1. Service of the subpoena was effectuated on October 13, 2020. *Id.* Now, despite Plaintiff's repeated reiterations of her intent to proceed with Ms. Greene's deposition, Defendant seeks intervention from the Court to prohibit Plaintiff from deposing Ms. Greene, just eight business days before the parties' deadline to complete depositions in this matter. Defendant's opening letter is devoid of any explanation for such a delay, which has now affected subsequent discovery and briefing deadlines.

Notwithstanding Defendant's delay in seeking court intervention in this matter, Defendant has not established its burden of showing that the deposition of Ms. Greene is improper and beyond the scope of discovery routinely and appropriately granted under Rule 26. Therefore, Defendant's motion for a protective order and, in the alternative, to quash the subpoena of Diane Greene should be denied, because Plaintiff seeks tailored, and independently held information relevant to the claims and defenses of the Parties.

**LEGAL STANDARD**

Fed. R. Civ. P. 26 places the burden on the party seeking a protective order to demonstrate "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," as it would otherwise inhibit the exchange of discovery permitted under Rule 26, which encompasses "any nonprivileged matter that is relevant to any party's claim or defense."

New York   685 Third Avenue   25th Floor   New York, NY 10017   Tel (212) 245-1000   Fax (646) 509-2060
Chicago   161 N Clark Street   Suite 1600   Chicago, IL 60601   Tel (312) 809-7010   Fax (312) 809-7011
San Francisco   One Embarcadero Center   38th Floor   San Francisco, CA 94111   Tel (415) 638-8800   Fax (415) 638-8810
Washington, DC   601 Massachusetts Ave NW   Second Floor West Suite   Washington, DC 20001   Tel (202) 847-4400   Fax (202) 847-4410
www.outtengolden.com

The Honorable Gabriel W. Gorenstein
December 1, 2020
Page 2 of 7

Fed. R. Civ. P. 26. Accordingly, "[i]n light of the broad scope of pre-trial discovery, the Second Circuit has held that 'an order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable.'" *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82 (S.D.N.Y. 2002) (Gorenstein, J.) (quoting *Investment Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir. 1972) (citation omitted). Indeed, "[a]n order barring a litigant from taking a deposition is most extraordinary relief." *In re Garlock*, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006); *see also Burnett v. Wahlburgers Franchising LLC*, No. 16 Civ. 4602 (WFK), 2018 WL 8367463, at *3 (E.D.N.Y. July 10, 2018). Accordingly, "it is the party seeking such an order that bears the burden of proving that the proposed deponent has nothing to contribute." *Id; see also Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant.").

## I.   **Defendant Cannot Meet Its Burden as Ms. Greene Possesses Relevant, Uniquely Held Information Pertinent to the Parties' Claims and Defenses.**

Defendant's assertion that Ms. Greene lacks relevant knowledge is clearly belied by the record evidence and the very declarations offered in support of Defendant's motion. Among other things, Ms. Greene was (i) the head of Plaintiff's direct reporting line and involved in decisions relating to Plaintiff's job, (ii) a decision maker in the selection process for the VP/Head of Financial Services, Vertical Lead role, (iii) someone to whom Plaintiff complained of discrimination, and (iv) someone who discussed the allegations undergirding Plaintiff's complaint of unfair leveling based on her gender. While Plaintiff shoulders no burden to show that the deponent has any relevant knowledge, *see Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015), Plaintiff sets forth the following, as a sample of evidence[1] it highlighted for Defendant prior to its filing of this instant motion, which establishes Ms. Greene's relevancy to this lawsuit.

### a.   *Ms. Greene Supervised and Oversaw Plaintiff's Direct Managers and Was Involved in Decisions Related to Plaintiff and Plaintiff's Comparators.*

As CEO of Google Cloud, Ms. Greene supervised, advised, and gave final approval to Plaintiff's managers with respect to decisions implicated in this matter. *See* Exhibit 5, Decl. of Diane Greene, ¶¶ 3-5 ("Both Brian Stevens . . . and Tariq Shaukat . . . reported to me in my role as CEO of [Google] Cloud."). Ms. Greene admits that she was involved in the hiring processes and decision-making deliberations regarding candidates hired into various roles within the Office of the Chief Technology Officer ("OCTO"), including Nicholas Harteau, one of Plaintiff's comparators. *Id*, ¶6. Ms. Greene's knowledge of the hiring processes, including leveling of individuals in OCTO, is relevant to Plaintiff's equal pay and discrimination claims. Although Ms. Greene states in her declaration that she had no involvement in the hiring of Plaintiff, the documentary evidence reflects that Ms. Greene offered feedback regarding Plaintiff's candidacy for her role in OCTO at hire, *see* Exhibit 6, GOOG-ROWE-00017998. Moreover, Mr. Shaukat testified at his deposition that he had been surprised Plaintiff

---

[1]      Plaintiff submits the exhibits cited herein by bates number under separate cover to the Court, as they have been marked by Defendant as confidential pursuant to the Protective Order in this case. Plaintiff has provided Defendant with a copy of the documents and Defendant has indicated that it will be filing a motion to seal.

The Honorable Gabriel W. Gorenstein
December 1, 2020
Page 3 of 7

was hired into her position as a "verticals specialist" in financial services when he had previously discussed hiring individuals with "vertical resources" into his own team. Exhibit 2, Shaukat Tr. 59:5-60:10.

Ms. Greene also was directly involved in hiring Stuart Breslow, *see* Def.'s Opp., at 5, ¶ B, Plaintiff's comparator, and ultimately the man Google tapped on the shoulder for the Head of Financial Services role – the promotion Plaintiff was denied. Ms. Greene's involvement, the criteria she used to evaluate Mr. Breslow's qualifications, and Ms. Greene's general perception of Mr. Breslow's background and experience are relevant to Plaintiff's equal pay claims and discrimination claims. Previous depositions, including those of Brian Stevens, Will Grannis, or Tariq Shaukat, do not replace Ms. Greene's independent assessment of comparators, insight regarding applicable policies, or her involvement and role in these decision-making processes. *See Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y. 1984) ("The mere possibility of repetition of testimony is not by itself sufficient to justify a protective order."). While Defendant asserts that Mr. Shaukat did not directly seek approval from Ms. Greene regarding the selection of Stuart Breslow for the interim Vertical Lead role, Plaintiff notes that Ms. Greene declined to adopt the representations of Mr. Shaukat's declaration regarding her involvement in the Vertical Lead selection and assessment process. *See* Exhibit 5, Decl. of Diane Greene, ¶13-14 ("I have reviewed the Declaration of Tariq Shaukat . . . specifically paragraphs 11 through 13 … [and] 14 through 16").

Further, as the CEO of Google Cloud, Ms. Greene was responsible for reviewing and approving certain business decisions relevant to this case, including decisions related to organization restructuring, staffing, hiring, the creation of new roles, and the verticalization of industry specific initiatives within Google Cloud.  For example, the documentary evidence reflects that Ms. Greene was involved in and approved of moving individuals employed in OCTO, including Plaintiff, to Mr. Shaukat's organization. *See* Exhibit 12, GOOG-ROWE-00017412. Ms. Greene's knowledge of the reorganization of these roles under Mr. Shaukat are relevant to Plaintiff's claims of discriminatory treatment.

      **b.**   ***Ms. Greene Was Directly Involved in the Search and Interview Processes for the VP/ Head of Financial Services Vertical Lead Role Sought by Plaintiff.***

Ms. Greene was CEO of Google Cloud when the executive search for a VP/Head of Financial Services, Vertical Lead, and other verticals were underway. *See* Exhibit 3, Decl. of Tariq Shaukat, ¶5. In her role, and as direct supervisor of Mr. Shaukat, *id.* at 3, Ms. Greene oversaw hiring for these vertical roles. In fact, Mr. Shaukat testified at his deposition that the Financial Services vertical was a priority for Ms. Greene, *see* Exhibit 2, Shaukat Tr. 53:5-20, and the documentary record reflects that Ms. Greene personally interviewed all candidates for the VP/Head of Financial Services, Vertical Lead role, except Plaintiff. *See* Exhibit 3, Decl. of Tariq Shaukat, ¶ 12. Mr. Shaukat also testified that Ms. Greene was required to sign off on VP level and senior level positions. *See* Exhibit 2, Shaukat Tr. 78:3-10.

Not only was Ms. Greene informed about the search's progress, she engaged in multiple daily briefings concerning the status of the search for a Financial Services vertical, including emails acknowledging Plaintiff's candidacy. *See, e.g.,* Exhibits 7-9, GOOG-ROWE-00056521; GOOG-ROWE-00059596; GOOG-ROWE-00059853. Further, Mr. Shaukat admits, that "[his]

The Honorable Gabriel W. Gorenstein
December 1, 2020
Page 4 of 7

decision [regarding] which candidate to hire for the role, [was] subject Ms. Greene's sign-off
and, ultimately, approval from the hiring committee." Exhibit 3, Decl. of Tariq Shaukat, ¶ 11,
Exhibit 2, Shaukat Tr. 78:3-10. Thus, information regarding Ms. Greene's guidance and her
perspective regarding the search/hiring processes' compliance with that guidance and Google
policy is relevant to Plaintiff's claims and Defendant's defenses. Where, as here, the potential
deponent was directly involved in business decisions which gave rise to Plaintiff's complaint,
courts in this circuit have found protective orders to be improper. *See AngioDynamics, Inc. v.
Biolitec, Inc*., No. 08 Civ. 004, 2010 WL 11541925, at *4 (N.D.N.Y. Sept. 17, 2010) ("Protective
orders are also inappropriate where a party furnishes evidence showing an executive's hands-on
involvement with projects and decisions.").

Specifically, with respect to Plaintiff's individual consideration for the Vertical Lead role, to
date, no evidence exists in the record reflecting Ms. Greene's personal reason for agreeing to meet with
Plaintiff after Mr. Shaukat had already decided that Plaintiff would not be a final candidate for
consideration or Ms. Greene's reason for canceling the meeting with Plaintiff. Mr. Shaukat's surmising
of Ms. Greene's reasoning for agreeing to the meeting or her reason for later canceling does not take the
place of direct questioning of Ms. Greene during a deposition on this issue. Finally, the Employee
Relations notes from its interview with Tariq Shaukat reflect that Ms. Greene was directly consulted and
involved in crafting the messaging to Plaintiff regarding her prospects for the VP/Head of Financial
Services role. *See* Exhibit 10, GOOG-ROWE-56990. Mr. Shaukat also testified that he was "under
very clear direction from Diane" to open the search to individuals at the director level and not limit it to
the "VP level." Exhibit 2, Shaukat Tr. 110:18-111:18.

c. *Plaintiff Complained Directly to Ms. Greene about Discriminatory Leveling and
     Her Consideration for the Vertical Lead Role.*

Finally, Ms. Greene was a direct recipient of Plaintiff's discrimination complaint
regarding the VP/Head of Financial Services, Vertical Lead role selection process (in which she
was directly involved) and Plaintiff's leveling at hire. *See* Exhibits 13-14, GOOG-ROWE-
00017589; GOOG-ROWE-P-00001737. Information regarding her handling of the complaint
and Google's policy regarding her role in communicating these complaints to Human Resources
are relevant to the Parties' claims and defenses. For the reasons previously stated, a declaration
stating her lack of recollection does not obviate Plaintiff's right to depose her and present her
with information that may refresh her recollection. Further, as a member of the diversity and
gender equity council, *see* Exhibit 15, GOOG-ROWE-P-00004553, Ms. Greene may possess
knowledge regarding other complaints of gender discrimination in compensation, leveling and
hiring, within Google Cloud and what efforts, if any, Google took to ensure that its
compensation, leveling and hiring decisions were monitored for gender disparities, which this
Court has previously found to be relevant and discoverable in this matter. *See* Exhibit 11, May
14 Order, at ECF No. 41.

## II.   The Testimony of Ms. Greene Is Not Cumulative or Duplicative of Other Testimony
         Currently in the Record.

Further and contrary to Defendant's assertion, the information sought is not cumulative, but

The Honorable Gabriel W. Gorenstein
December 1, 2020
Page 5 of 7

uniquely possessed by Ms. Greene, and the information has not been (and could not be) offered by any other deponent previously deposed or scheduled to be deposed in the future. Thus, Defendant has failed to establish any valid, let alone "good cause" to warrant court intervention to prevent Plaintiff from seeking information through Diane Greene that is relevant to her claims and Defendant's defenses, other than mere inconveniences.

Defendant makes much of the fact that Plaintiff has conducted the depositions of other individuals, including several of Plaintiff's supervisors in Google Cloud –Tariq Shaukat, Will Grannis and Brian Stevens. However, none of these individuals possess Ms. Greene's unique and personal knowledge. Indeed, Ms. Greene is the sole possessor of her individual thoughts, opinions, and professional positions taken on relevant business decisions, including any guidance provided to Plaintiff's direct supervisors regarding decisions made with respect to Plaintiff's hiring and leveling, and the hiring or leveling of Plaintiff's comparators.

Having now conducted the depositions of Mr. Shaukat, Mr. Grannis, Mr. Stevens, and Stuart Vardaman (Google Recruiter), Plaintiff asserts with increased certainty that none of these individuals have provided testimony (nor could they) regarding Ms. Greene's personal assessment of the potential candidates whom she interviewed for the VP/Head of Financial Services, Vertical Lead role, her personal assessment of Ms. Rowe's viability for the same Vertical Lead role, the timeline and practicality of "verticalization" as the Head of Google Cloud, and her assessment regarding Defendant's compliance with Google policies with respect to Ms. Rowe's consideration for the Vertical Lead role, and Ms. Rowe's hiring, leveling and compensation setting processes (whether directly involved or not), and those of her comparators. Further, as the direct recipient of Plaintiff's complaint of unfair leveling in Google Cloud based on her gender, Ms. Greene has direct knowledge of the allegations undergirding Plaintiff's claims and her personal knowledge of the state of gender equity within Google Cloud or similar complaints of gender discrimination in hiring, leveling, or compensation within Google Cloud in New York.

Further, Plaintiff is entitled to inquire of the relevant decision makers to ascertain where their testimony is inconsistent or contradictory. *See Mikorenda v. Town of Brookhaven*, No. Civ. 041857, 2005 WL 8160874, at *2 (E.D.N.Y. May 23, 2005) (permitting the deposition of a head supervisor involved in the challenged decision-making processes). Mr. Shaukat's declaration is not a replacement for Ms. Greene's own testimony and should be given no weight considering that Mr. Shaukat's declaration contradicts his own deposition testimony. For example, in his deposition on October 15, 2020, Mr. Shaukat was directly asked if he had "any other conversations regarding Ms. Rowe and the VP of financial services position prior to the time it was communicated to her that she would not be getting the position?" to which he answered, "I don't recall any additional specific conversations." *See* Shaukat Tr. 167:16 -168:3. However, weeks later, in his declaration submitted in support of Defendant's pending motion, Mr. Shaukat declares that he spoke directly with Ms. Greene via telephone to discuss Plaintiff's allegations of unfair leveling at hire and her concern regarding her equitable consideration for the VP/Head of Financial Services, Vertical Lead role – a conversation he did not recall during his deposition. *See* Exhibit 3, Decl. of Tariq Shaukat, ECF No. 62-2 at ¶ 11-16.

Additionally, documentary evidence and testimony confirm that Mr. Shaukat discussed Plaintiff's candidacy with Ms. Greene on multiple occasions. Mr. Shaukat wrote to Ms. Greene in June 2018 that, "Ulku from OCTO is also very interested.  I don't think she's likely right, but I told her I would formally interview her for the role." Exhibit 2, Shaukat Tr. 129:2-14. Mr. Shaukat later testified that Plaintiff was scheduled to meet with Ms. Greene as a "retention" exercise. *See id.*, Shaukat Tr. 163:19. Elsewhere, documents suggest that Ms. Greene was going to meet with Plaintiff in order to ensure that she had fair consideration for the role. *See* Exhibit 4, GOOG-ROWE-00017583. Ms. Greene's recollection these conversation and communications and any details regarding the statements Mr. Shaukat made to her or statements she made to Mr. Shaukat or others, regardless of how limited, are relevant and well within the scope of discoverable information in this case.

## III. There Is No Improper Motive or Purpose for Seeking the Deposition Testimony of Diane Greene.

Defendant has failed to set forth any evidence demonstrating any impropriety in Plaintiff's intent to depose Ms. Greene, and indeed, none exists. As this Court has previously noted, a moving party's "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See Duling v. Gristede's Operating Corp.*, 266 F.R.P. 66, 71 (S.D.N.Y.2010).  For the same reasons, Defendant's alternative request for relief pursuant to Rule 45 fails, where Defendant has failed to demonstrate that Ms. Greene has been subjected to "undue burden" of any sort as a result of the subpoena issued by Plaintiff.

Contrary to Defendant's assertion, the testimony sought from Ms. Greene is neither "redundant" nor sought to harass Ms. Greene due to her former executive position. This Court has made clear that "[h]ighly-placed executives are not immune from discovery" simply due to the nature of their title within the company. *Scott v. Chipotle Mexican Grill, Inc*., 306 F.R.D. at 122. In this case, Plaintiff's subpoena was reasonably narrow and tailored to topics regarding Ms. Greene's involvement in the hiring, interviewing, selection, and approval processes for the Technical Solutions Consultant and Head/VP of Financial Services job positions, and her role as the Head of Google Cloud/OCTO.  Plaintiff has made every effort to meet and confer with opposing counsel on this topic, including even engaging Defendant in discussion regarding a limitation on the time frame for the deposition, in an effort to alleviate any perceived burden for Ms. Greene.

In furtherance of its attempt to prevent this deposition, Defendant offers the declaration of Ms. Greene to support its proposition that she lacks knowledge of any relevant information, despite her direct involvement in events related to and occasioning Plaintiff's complaint. *See* Exhibit 5, Decl. of Diane Greene, ¶ 5-15. Plaintiff notes that when read closely, the language of Ms. Greene's declaration does not indicate a lack of knowledge of relevant information pertinent to the claims and defenses, but instead sets forth her "belief" that she does not possess "any unique knowledge beyond what [Brian] Stevens or [Will Grannis] *could* provide regarding the process for hiring individuals into OCTO," among other information. *See* Exhibit 5, Decl. of Diane Greene, at 11. Further, Ms. Greene's declaration specifically limits her adoption of certain statements offered by other witnesses, like Mr. Shaukat reflecting the events in which she was

The Honorable Gabriel W. Gorenstein
December 1, 2020
Page 7 of 7

involved. *See id.* ¶ 13-14.

While Defendant attempts to convince the Court that Ms. Greene's recollection is beyond repair, Defendant's reassurances and strategically crafted declaration are not a substitute for a thorough examination conducted by opposing counsel, supported by documentary evidence to refresh the witness's recollection. Courts in this circuit, for the reasons posited above, have declined to give credence to declarations or affidavits of a potential deponent denying their possession of relevant knowledge, finding that such statements do not satisfy the moving party's burden to demonstrate good cause warranting a protective order. *See Less v. Taber Instrument Corp.*, 53 F.R.D. 645, 647 (W.D.N.Y. 1971) ("A claim that [the potential deponent] has no knowledge of any relevant facts should not be allowed to prevent his examination, since plaintiff is entitled to test his lack of knowledge."); *see also In re Garlock*, 463 F. Supp. 2d at 481; *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 4927 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (establishing that "a claim that the witness lacks knowledge is subject to testing by the examining party").

Based on this information, among other documentary evidence, Defendant is simply unable to satisfy its burden that there is any "likelihood of harassment" or "that the information sought is fully irrelevant" to warrant to denial of Plaintiff's right to proceed with this deposition. *See Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90 Civ. 7811, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993). Accordingly, Plaintiff respectfully requests that Defendant's motion for a protective order and to quash the subpoena of Diane Greene be denied and the deposition be ordered to proceed.

Respectfully submitted,

Cara E. Greene

c:      All counsel of record via ECF