# Exhibit 1



1(212) 318-6046
kennethgage@paulhastings.com

November 23, 2020                                                                                              59605.00060

**VIA ECF**

The Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *Ulku Rowe v. Google LLC*, Case No. 19-cv-08655 (LGS)(GWG)

Dear Judge Gorenstein:

We represent Defendant Google LLC in the above-referenced matter and write pursuant to Your Honor's
Individual Practices, Rule 2.A. to request a pre-motion conference on Google's anticipated motion to
preclude the deposition of former Chief Executive Officer of Google Cloud, Diane Greene. Ms. Greene has
not been a Google employee for nearly two years, and has little – if any – unique knowledge of the events
giving rise to Plaintiff's claims in this matter. Plaintiff has already had, and will have, the opportunity to
depose fact witnesses directly involved in the events at issue. Ms. Greene's deposition is a classic
example of a fishing expedition at the highest echelons of the company.  Defendant therefore requests this
Court issue a protective order and order to quash the subpoena for Ms. Greene's testimony pursuant to
the Federal Rules of Civil Procedure, Rules 26 and 45, respectively.

**1.      The Parties' Meet and Confer Efforts**

Plaintiff served a subpoena on Ms. Greene on or about October 7, 2020, for a deposition on November 23,
2020.[1]  (Declaration of Sara B. Tomezsko Decl. Exh. 1.)  On October 19, 2020, Kenneth W. Gage and
Sara B. Tomezsko, counsel for Google, discussed this topic with Maya S. Jumper, counsel for Plaintiff, via
telephone conference for seven minutes.[2]  Google stated that Ms. Greene was too far removed from the
relevant events and that relevant testimony could be ascertained from other witnesses.  Plaintiff stated that
Ms. Greene's testimony was relevant because she was the CEO of Google Cloud, had allegedly been
"deeply involved" in the hiring process for the Head of Financial Services role within Tariq Shaukat's
organization in Google Cloud, and had been copied on Plaintiff's November 7, 2018, email alleging
misleveling upon hire.

On October 29, 2020, Mr. Gage and Ms. Tomezsko met and conferred with Cara E. Greene, counsel for
Plaintiff, and Ms. Jumper via telephone conference for approximately 20 minutes.  Plaintiff believed Ms.
Greene had knowledge of Plaintiff's unsuccessful candidacy for the Head of Financial Services role and
had been scheduled to meet with Plaintiff in connection with this search.  Google responded that Ms.
Greene possessed no unique knowledge with respect to Plaintiff's candidacy, had cancelled that meeting
after announcing her planned departure from Google, and therefore did not evaluate Plaintiff as a
candidate for the role. Plaintiff indicated a willingness to review any declarations to that effect, but would
not take Ms. Greene's deposition off-calendar at the time.  Google suggested the parties revisit the issue
after the upcoming depositions of Brian Stevens on November 13, 2020 (a former Vice President in
Google Cloud and one of Ms. Greene's direct reports) and Stuart Vardaman on November 17, 2020 (the

[1] Ms. Greene did not consent to have Google's counsel represent her for purposes of the deposition until
November 19, 2020, but from the outset Google communicated its position that Ms. Greene's testimony
was unnecessary and duplicative.  Plaintiff has repeatedly stated her desire to depose Ms. Greene
throughout discovery, yet waited until October 7, 2020, to subpoena her testimony.
[2] The entire call, which covered other topics, lasted approximately 45 minutes.



Hon. Gabriel W. Gorenstein
November 23, 2020
Page 2

recruiter who worked with Mr. Shaukat to staff the Head of Financial Services role).

The parties again conferred via telephone conference for approximately five minutes[3] on October 13, 2020, following Mr. Stevens' deposition.  Mr. Gage and Ms. Tomezsko attended on behalf of Google, and Cara Greene, Ms. Jumper, and Shira Z. Gelfand attended on behalf of Plaintiff.  Google stated that Mr. Stevens – who arguably had more direct involvement in the underlying events – had just testified to the limited role he played in those decisions, and it stood to reason that Ms. Greene – as his supervisor and one step further removed from the process – would possess even less first-hand knowledge, if any. Plaintiff indicated willingness to limit the deposition to less than seven hours to cover what she believed were the relevant topics: Plaintiff's November 7, 2020, email complaint to Ms. Greene and Mr. Shaukat, and Ms. Greene's conversations with Mr. Shaukat about the Head of Financial Services role.  Google stated it was preparing a declaration from Mr. Shaukat that would address those topics and would share it with Plaintiff before seeking court intervention.  Google emailed that declaration to Plaintiff on November 17, 2020, after Mr. Vardaman's deposition, and stated it would seek court intervention if Plaintiff would not take Ms. Greene's deposition off-calendar.

Plaintiff refused Google's request via email on November 19, 2020, and insisted the deposition proceed on November 23, 2020, because she believed Ms. Greene possessed the following relevant information:

> Ms. Greene, as the former CEO of Google Cloud, supervised and had oversight over Ms. Rowe's direct managers, and has information related to and/or directly participated in the hiring process for Stuart Breslow, the hiring process for the Head of Financial Services role, and the hiring process for other roles in [Google's Office of the CTO].  Additionally, Ms. Greene has direct knowledge of Ms. Rowe's complaints of discrimination and served on the gender equity and diversity council with Ms. Rowe.

(Tomezsko Decl., Exh. 2.) Google responded that it would file this letter seeking a protective order.  Later that day, Ms. Green consented to have Google's counsel represent her for purposes of the deposition. Google promptly informed Plaintiff of that fact and requested that the November 23, 2020, deposition be postponed due to Ms. Greene's pre-existing conflicts.  Google shared Ms. Greene's declaration with Plaintiff on November 22, 2020, and asked if she would reconsider her position in light of its contents. Plaintiff wrote Google on November 23, 2020, stating her position remained unchanged.

**2.      A Motion for Protective Order Or, Alternatively, A Motion To Quash Ms. Greene's Deposition Is Warranted Because Ms. Greene Is A Senior Executive With No Unique Knowledge Relevant To The Issues In The Case.**

Discovery available under Rule 26 has its limits.  Courts may prohibit discovery when, *inter alia*, "(1) the discovery is unreasonably cumulative or duplicative; (2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweigh its likely benefit."  *Guzman v. News Corp.*, No. 09 Civ. 9323(BSJ)(RLE), 2012 WL 2511436, at *1–2 (S.D.N.Y. June 29, 2012) (granting protective order preventing deposition of senior executive in employment discrimination action where plaintiff failed to produce any evidence that senior executive had special or unique knowledge that could not be obtained from elsewhere).

The law affords additional protections to senior executives, who are often noticed for deposition with the intent to harass.  *Diesel Props. S.R.L. v. Greystone Business Credit II LLC*, No. 07 Civ. 9580(HB), 2008 WL 5099957, at *1–2 (S.D.N.Y. Dec. 3, 2008) (law with respect to senior executive depositions makes clear that "courts should not allow litigants to manipulate the federal judicial system's liberal deposition procedures to harass their adversaries").  "[R]edundant depositions should be avoided, and senior executives should be deposed only if they possess unique personal knowledge related to the relevant

---

[3] The entire call, which covered other topics, lasted approximately 20 minutes.



Hon. Gabriel W. Gorenstein
November 23, 2020
Page 3

issues in the case." *Id.* (protective order to prevent deposition of senior officer granted; other depositions and sworn affidavits showed senior officer's testimony would be neither "relevant and non-duplicative") (citations omitted). Courts "routinely" preclude depositions of high-ranking corporate officials with no personal or unique knowledge of relevant facts. *Roberts v. Los Alamos Nat'l Sec., LLC*, No. 11-CV-6206, 2015 WL 7444636, at *2 (W.D.N.Y. Nov. 23, 2015) (collecting Second Circuit precedent); *Guzman*, 2012 WL 2511436, at *1 ("unless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a [ ] deposition of a highly-placed executive' while allowing other witnesses with the same knowledge to be questioned") (alterations in original) (citations omitted).

Additionally, courts must quash a subpoena under Rule 45(d)(3)(A) if it "subjects a person to undue burden." *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23, 2020 WL 4700910, at *2 (S.D.N.Y. Aug. 13, 2020). The interests furthered by quashing a subpoena outweigh the interests served by enforcing it if the information sought is merely duplicative of information available from other sources. *See id.* at *3 (quashing subpoena as unduly burdensome because "it is unnecessary, duplicative, and seeks information readily available from other sources"; topics designated in subpoena were "substantially similar" to information sought from other sources). Moreover, "Court[s] note[] that the [2015] amendments to Rule 26 of the Federal Rules of Civil Procedure were enacted to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information, including deposition testimony." *Homeward Residential Inc. v. Sand Canyon Corp.*, No. 12-CV-5067(AT)(JLC), 2016 WL 11662178, at *3 (S.D.N.Y. Feb. 3, 2016) (finding attempt to depose employee, "even if found to seek relevant information, is not proportional to the discovery needs of the case, any more than the deposition of any other [ ] employee" who was directly involved with issues in case") (alterations in original) (citing Rule 26(b)(1) 2015 Advisory Committee Notes).

Ms. Greene is the former CEO of Google Cloud. (Declaration of Diane Greene, ¶ 1.) In that role, she oversaw an organization of approximately 25,000 employees and had 18 direct reports. (*Id.*, ¶ 2.) She cannot recall specific conversations she had with or about Plaintiff, or having ever met Plaintiff, (*id.*, ¶¶ 8–10), and Plaintiff herself testified that she has never had a conversation with Ms. Greene or interacted with her beyond sitting in the same meeting. (Tomezsko Decl., Exh. 3 [Rowe Trans.], 282:5-283:25.) As one might expect for someone of Ms. Greene's seniority, she does not recall participating in or having decision-making authority with respect to any hiring or promotion decisions impacting Plaintiff. (Greene Decl., ¶¶ 7, 12–13.) She recalls that other individuals, those who have already been or will be deposed, were closer to the challenged decisions that give rise to Plaintiff's claims. (*Id.*, ¶¶ 3–5, 13.) Ms. Greene has no knowledge of the relevant facts or decisions impacting Plaintiff, and Plaintiff has not identified any communications or adduced evidence of any decisions in which Ms. Greene participated independent of any other deponent in this case. Every single one of the topics designated for Ms. Greene's deposition is either entirely irrelevant to Plaintiff's discrimination and pay equity claims, or has already been or will be addressed by these other witnesses.

A. *Ms. Greene's role as former supervisor of Plaintiff's direct managers*

Plaintiff does not assert claims for negligent supervision, and Ms. Greene's role in supervising Plaintiff's direct managers is irrelevant to the issues in this case. *See Guzman*, 2012 WL 2511436, at *2 (precluding deposition of senior executive where plaintiff sought to depose him as the "ultimate supervisor" of the individuals accused of discriminatory harassment; senior executive's "association with [alleged harasser], even as direct supervisor, does not immediately confer 'unique knowledge' of [alleged harasser's] relationship with … employees"). In any event, Plaintiff has already deposed both of Plaintiff's direct supervisors and one of Plaintiff's skip-level managers. Plaintiff deposed Will Grannis, Managing Director and the individual who hired Plaintiff and directly supervised her in her role in the Office of the CTO on October 29, 2020; Brian Stevens, Vice President and CTO, Mr. Grannis' supervisor, and one of Ms.



Hon. Gabriel W. Gorenstein
November 23, 2020
Page 4

Greene's direct reports on November 13, 2020; and Tariq Shaukat, Vice President and one of Ms. Greene's direct reports, Plaintiff's supervisor for a portion of the time at issue, and hiring manager for the Head of Financial Services role, on October 15, 2020. (Tomezsko Decl., ¶¶ 5, 7, 8; Declaration of Tariq Shaukat, ¶¶ 1, 4, 5–6; Greene Decl., ¶¶ 3–5.) Plaintiff had ample opportunity to elicit any relevant information about these individuals' reporting relationship with Ms. Greene during their depositions.

B. *Information related to and/or direct participation in the hiring process for Stuart Breslow*

Mr. Breslow's hire is not at issue in this case, and his involvement is limited only to Plaintiff's allegation that Mr. Breslow was later promoted to the Head of Financial Services role for which Plaintiff believes she was the most qualified candidate. (ECF 12, ¶¶ 41–43.) The record is clear that Mr. Shaukat paused and eventually cancelled the search for this role in light of leadership changes within the organization, and that he appointed Mr. Breslow to lead the Financial Services vertical on an interim basis only. (Shaukat Decl., ¶¶ 19–23 & Exh. 2.) But even if Plaintiff's allegations were true, Plaintiff has already deposed individuals who were directly involved in Mr. Breslow's hire: Mr. Shaukat and Stuart Vardaman (the recruiter responsible for staffing the role into which Mr. Breslow was hired). (Tomezsko Decl., Exh. 4 [Shaukat Trans.], 68:19-21, 72:2-19; *id.*, Exh. 5 [Vardaman Rough Trans.], at 22:22-24, 115:18-25.) To the extent Ms. Greene has any knowledge of Mr. Breslow's hiring process, it would be cumulative of the testimony of others directly involved. Further, Ms. Greene's alleged participation in initially hiring Mr. Breslow for a <u>different</u> role in Google, if any, is irrelevant to Mr. Shaukat's decision to appoint him as interim lead of the Financial Services vertical in his organization several months later. It is undisputed that Mr. Shaukat did not consult Ms. Greene about his decision, as Ms. Greene had already announced her departure from Google by that time. (Shaukat Decl., ¶¶ 17, 22.)

C. *The hiring process for the Head of Financial Services role*

Plaintiff has already deposed both Mr. Shaukat (the hiring manager for the position), and Mr. Vardaman (the recruiter who worked with Mr. Shaukat to staff the role). (Tomezsko Decl., ¶¶ 5, 6; Shaukat Decl., ¶¶ 5–7; Vardaman Rough Trans., 33:13-20 (confirming that general hiring process about which he was deposed was the same process he followed with respect to Head of Financial Services position in Mr. Shaukat's organization.) Mr. Shaukat was clear that, as the hiring manager, it was ultimately his decision who to hire into the Head of Financial Services role, and that Ms. Greene's role was limited to merely approving the finalist candidate(s). (Shaukat Decl., ¶ 11.) When it became clear to him that Plaintiff would likely not get the role, he asked Ms. Greene to meet with her to help retain Plaintiff at Google and prevent her from leaving, something she had threatened to do if she did not get the role. (*Id.*, ¶¶ 8, 12–13.) It is undisputed that Plaintiff was scheduled to meet with Ms. Greene at Mr. Shaukat's request, but Ms. Greene announced her departure from Google and cancelled the meeting before it could happen. (*Id.*, ¶¶17–18; Rowe Trans., 283:21-25.) Plaintiff asked Mr. Shaukat about the hiring process for this role at length at his deposition, and had every opportunity to explore his conversations with Ms. Greene on this topic at that time. Mr. Shaukat has detailed the extent of his conversations with Ms. Greene about the search for a candidate and Plaintiff's candidacy in his declaration. (Shaukat Decl., ¶¶ 11–13.) Ms. Greene has reviewed that declaration and provided a sworn declaration of her own testifying that she cannot recall anything about these discussions beyond Mr. Shaukat's testimony. (Green Decl., ¶¶ 12–13.) To the extent Plaintiff intends to depose Ms. Greene about the two finalist candidates she did meet with – both women – Ms. Greene's opinion of them is entirely irrelevant because the position was never filled, and the decision about whom to hire was ultimately Mr. Shaukat's. (Shaukat Decl., ¶¶ 6, 19.) Ms. Greene was not involved in Mr. Shaukat's decision to appoint Mr. Breslow as interim lead of the Financial Services vertical within Mr. Shaukat's organization because she had already announced she would be leaving Google. (*Id.*, at ¶ 19–22.) Ms. Greene therefore has no unique knowledge on this topic, which Plaintiff has already explored at length with Mr. Shaukat and Mr. Vardaman.



   D.  *The hiring process for other roles in OCTO [Google's Office of the CTO]*

Ms. Greene was not responsible for hiring Plaintiff or any alleged comparator into Google's Office of the CTO, nor does she have any recollection of discussing or reviewing these hiring decisions, save one unique circumstance.[4]  (Greene Decl., ¶ 4–7, 11.)  Plaintiff has already deposed the individuals who were involved in these decisions, Mr. Grannis and Mr. Stevens. (*See* Tomezsko Decl., Exh. 6 [Stevens Trans.], 60:25–61:24 (stating he was the "final approver" of leveling decisions made by Mr. Grannis and others; *id.*, Exh. 7 [Grannis Trans.], 29:14-20 (identifying himself as Plaintiff's hiring manager); Green Decl., ¶ 5.)  Mr. Stevens does not recall having any conversations with Ms. Greene about Ms. Rowe, and Plaintiff has adduced no evidence of such conversations between Mr. Grannis and Ms. Greene. (*See* Stevens Trans., 58:25–59:13.) Plaintiff is also scheduled to depose Jennifer Burdis, the recruiter who worked directly with Mr. Grannis and Mr. Stevens to staff Plaintiff and others into this role. (Tomezsko Decl., ¶ 9.)  Ms. Greene lacks unique knowledge of this process, which can and has been readily adduced from other fact witnesses.

   E.  *Ms. Rowe's alleged complaints of discrimination*

Ms. Greene has no unique knowledge about Plaintiff's alleged complaints of discrimination. (Greene Decl., ¶ 14–15.)  Mr. Shaukat has testified that he was copied on the November 7, 2020, email from Plaintiff to Ms. Greene alleging concerns that she was underleveled at hire compared to her peers.  (Shaukat Decl., ¶ 14 & Exh. 1.)  Mr. Shaukat forwarded the email to Human Resources, who indicated they were looking into the concerns.  (*Id.*, ¶ 15.)  Mr. Shaukat had a brief conversation with Ms. Greene about the email and told her that she need not take further action because he already escalated it to Human Resources.  (*Id.*, ¶ 16.)  Ms. Greene has reviewed this portion of Mr. Shaukat's declaration and has testified under oath that she cannot recall additional details about these events. (Greene Decl., ¶¶ 14–15.)  Even after reviewing the November 7, 2020 email, Ms. Greene cannot recall either receiving it or speaking with Mr. Shaukat about it. (*Id.*)  She has no unique information about this topic beyond what Mr. Shaukat has already supplied.

   F.  *Service on the gender equity and diversity council with Ms. Rowe*

The connection between Ms. Greene's participation on the gender equity and diversity council and Plaintiff's individual discrimination claims is tenuous at best.  They never participated in a conversation with one another, let alone one about gender equity and diversity issues. (Greene Decl., ¶¶ 8, 10; Rowe Trans., 282:19–283:15.)  If Plaintiff is seeking information about issues discussed among council members generally, Plaintiff may introduce such evidence based on her own first-hand knowledge as a member of that council.  Her attempts to conduct a fishing expedition about unrelated gender equity and diversity issues at Google's and Ms. Greene's expense is unwarranted, unnecessary, and should be denied.

For the foregoing reasons, Google respectfully requests a protective order precluding the unnecessary and duplicative deposition of Ms. Greene or, in the alternative, an order quashing the subpoena on the grounds that it seeks testimony duplicative of information available from other readily-available sources and is therefore unduly burdensome.  Should additional submissions aid the Court in its resolution of the dispute, Google welcomes the opportunity to fully brief the issues and submit additional record evidence demonstrating the length at which these topics were explored with other fact witnesses.

---

[4] Ms. Greene and Mr. Stevens were asked to approve the decision to hire a senior engineer from one of Google's key customers and partners in the industry because of the potential conflict associated with hiring him from a customer.  (Greene Decl., ¶ 6.)  Ms. Greene does not recall having any input into his compensation or level upon hire.  (*Id.*)



Hon. Gabriel W. Gorenstein
November 23, 2020
Page 6

Sincerely,

Kenneth W. Gage

of PAUL HASTINGS LLP


cc:        All counsel of record (via ECF)




LEGAL_US_W # 105820496.5