# Exhibit 5

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE,<br><br>        Plaintiff,<br><br>-against-<br><br>GOOGLE LLC,<br><br>        Defendant. | No. 1:19-cv-08655 (LGS)(GWG)<br><br>**DECLARATION OF DIANE GREENE IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA** |

I, DIANE GREENE, subject to the penalties by law for perjury, do hereby declare the following to be true and correct on the basis of my personal knowledge. If called upon to do so, I would be competent to testify to the matters set forth in this declaration.

1. From 2015 through approximately January 2019, I was a Senior Vice President and the Chief Executive Officer of Google's Cloud organization.

2. In my role as CEO of Cloud, I oversaw an organization of approximately 25,000 employees, and had approximately 18 direct reports.

3. Both Brian Stevens, Vice President and Chief Technology Officer of Google Cloud, and Tariq Shaukat, Vice President overseeing industry products and solutions, reported to me in my role as CEO of Cloud.

4. Mr. Stevens and his direct report, Will Grannis, were responsible for running the Office of the CTO ("OCTO") within Google Cloud beginning in or around 2016.

5. Mr. Stevens and Mr. Grannis were responsible for building the OCTO team. I was aware they were hiring candidates into various OCTO roles, but my recollection is that Mr. Stevens and Mr. Grannis were primarily responsible for this process in

1

LEGAL_US_W # 105844516.1

consultation with Human Resources. They may have asked me for my input on candidates from time to time, but I do not recall ever weighing in on those candidates' compensation or level; my recollection is that those decisions were made by the compensation team and Human Resources, respectively.

6. I have no recollection of approving hiring packets (Google's term for proposals to hire a candidate into a specific role at a specific level) for anyone hired into OCTO, except for one senior engineer from one of Google's key customers and partners in the industry. I recall that Mr. Stevens and I were involved in approving his hire into OCTO because of the potential conflict associated with hiring him from a customer. I do not recall having any input into his compensation or level upon hire.

7. I have no specific recollection of being involved in any decision as it relates to plaintiff Ulku Rowe's hire in late 2016, her compensation, or her level.

8. I do not recall ever having a conversation with Ms. Rowe.

9. I do not recall any specific conversations about Ms. Rowe.

10. I do not recall ever meeting with Ms. Rowe.

11. I do not believe I have any unique knowledge beyond what Mr. Stevens or Mr. Grannis could provide regarding the process for hiring individuals into OCTO.

12. In 2018, I was aware that Mr. Shaukat was leading the search for a Head of Financial Services within his organization in Cloud. To the best of my recollection, there were two female candidates who were considered finalists for the role, one internal to Google and one external. I do not recall whether Ms. Rowe was a candidate for the Head

LEGAL_US_W # 105844516.1

of Financial Services role. I have no recollection of having any conversations with Mr. Shaukat about Ms. Rowe or her candidacy for the role.

13. I have reviewed the Declaration of Tariq Shaukat dated November 16, 2020, specifically paragraphs 11 through 13 that describe Mr. Shaukat's recollection of conversations with me about the Head of Financial Services candidates and Ms. Rowe. My review of Mr. Shaukat's declaration did not refresh my recollection of the conversations described. Though I recall speaking with Mr. Shaukat on many occasions, I have no independent recollection of the specific conversations referenced in his declaration. I have no reason to doubt the accuracy of Mr. Shaukat's recollection, nor do I have any additive or unique knowledge regarding the search for a Head of Financial Services within his organization in Cloud.

14. I also reviewed paragraphs 14 through 16 and Exhibit 1 of Mr. Shaukat's declaration concerning an email Ms. Rowe sent to Mr. Shaukat and me on November 7, 2018. My review of Mr. Shaukat's declaration and Exhibit 1 did not refresh my recollection of having received this email from Ms. Rowe. By November 7, 2018, I knew that I would be leaving Google, though I did not publicly announce my departure until later in November 2018. In November 2018 and through my departure from Google, I was extremely focused on preparing a strong budget proposal for Cloud, a task I felt was important to compete prior to my departure. If at the time I had received a communication from an employee about how he or she would have been leveled or whether he or she would be promoted, I would have asked another manager to handle it while I remained focused on my transition. This would have been especially true if, as

3

appears to be the case with Exhibit 1 to Mr. Shaukat's declaration, another manager was copied on the email and I knew I could trust that individual to escalate the concerns appropriately.

15. I have no independent recollection of a conversation with Mr. Shaukat about his having forwarded Ms. Rowe's email to Human Resources. I have no reason to doubt the accuracy of Mr. Shaukat's recollection, nor do I have any unique knowledge of Ms. Rowe's November 7, 2018 email or the resulting conversation with Mr. Shaukat described in his declaration.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed on the 20th day of November, 2020 in Stanford, California.

_____
Diane Greene

Case 1:19-cv-08655-JHR Document 65-42 Filed 12/01/20 Page 5 of 5

4