**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULKU ROWE,<br><br>    Plaintiff,<br><br> -against-<br><br>GOOGLE LLC,<br><br>    Defendant. | No. 1:19-cv-08655 (LGS)(GWG) |

# DEFENDANT GOOGLE LLC'S
# MOTION TO RETAIN DOCUMENTS UNDER SEAL

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS .................................................................................................. 1
II. LEGAL ARGUMENT ....................................................................................................... 3
    A. Legal Standard ....................................................................................................... 3
    B. Good Cause Exists to Retain Notes of Internal Investigations Into Potential Discrimination Under Seal. .................................................................... 6
    C. Good Cause Exists to Retain Information About Google's Clients, Business Initiatives, And Organizational Changes Under Seal. ............................ 9
    D. Good Cause Exists to Retain The Identity of Candidates Seeking Executive Positions At Google And The Executive Recruiting Process Under Seal. ........................................................................................................... 11
    E. Good Cause Exists To Retain Personal, Irrelevant Information Concerning An Executive's Daily Activities (Both Personal and Professional) Under Seal. ...................................................................................................................... 12
III. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                         **Page(s)**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
  No. 12 Civ. 6608(PKC)(JCF), 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ............................7

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  119 F. Supp. 3d 152 (S.D.N.Y. 2015)........................................................................................9

*Gambale v. Deutsche Bank AG*,
  No. 02 Civ. 4791 HB, 2003 WL 21511851 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004).................................................................................7

*GoSMiLE, Inc. v. Levine*,
  769 F. Supp. 2d 630 (S.D.N.Y. 2011)........................................................................................8

*Estate of Jackson v. Cty. of Suffolk*,
  No. 2:12-CV-1455, 2019 WL 3253063 (E.D.N.Y. July 19, 2019).............................................9

*Laura Laaman & Assocs., LLC v. Davis*,
  No. 3:16-CV-00594 (MPS), 2019 WL 3716512 (D. Conn. Aug. 7, 2019) ................................6

*Lugosh v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006).................................................................................................6, 7

*New York v. Actavis, PLC*,
  No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) ..............................................8

*Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*,
  347 F. App'x. 615 (2d Cir. 2009) .........................................................................................7, 8

*Stern v. Cosby*,
  529 F. Supp. 2d 417 (S.D.N.Y. 2007).......................................................................................7

*Tomassini v. FCA US LLC*,
  No. 3:14-cv-1226, 2017 WL 9400672 (N.D.N.Y. Jan. 6, 2017) ...............................................8

*Tropical Sails Corp. v. Yext, Inc.*,
  No 14 Civ. 7582, 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016).........................................6, 8

*United States Sec. & Exchange Comm. v. Ahmed*,
  No. 3:15-cv-675 (JBA), 2018 WL 4266079 (D. Conn. Sept. 6, 2018).....................................9

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995).......................................................................................................9

LEGAL_US_W # 105991019.2

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and the Stipulated Protective Order for the Treatment of Confidential Information dated February 4, 2020 (ECF 23) (the "Protective Order"), defendant Google LLC hereby moves this Court for an order permitting certain documents submitted in connection with plaintiff Ulku Rowe's opposition to Google's Motion for Protective Order and Motion to Quash (ECF 65) be kept under seal, as they contain: (1) non-public, confidential and sensitive business information concerning Google's operations and customers; (2) private and personal information about its former and current employees, the disclosure of which would result an unwarranted invasion of privacy; (3) sensitive and confidential information concerning Google's investigations into complaints of alleged discrimination; and (4) personal information of non-parties to this action.

I.      **STATEMENT OF FACTS**

On November 23, 2020, Google filed a letter seeking leave to file a motion for a protective order or, alternatively, a motion to quash the subpoena for deposition testimony of one of Google's former senior executives.  (ECF 62.)  Per the court's November 24, 2020 order, (ECF 63), the parties submitted a stipulated briefing schedule to address the discovery issue raised in Google's November 23, 2020, letter.  (ECF 64.)  Plaintiff's opposition was due on December 1, 2020.  (*Id.*)

At 6:40 p.m. on December 1, 2020, Plaintiff emailed Google asking if Google would be willing to waive the confidentiality designations for documents plaintiff intended to submit with her opposition.  (Declaration of Sara B. Tomezsko, ¶ 2 & Ex. A (identifying documents Bates stamped GOOG-ROWE-00017583, 17998, 56521, 59596, 59853, 56990).)  Google was unwilling to waive the confidentiality of the identified documents, and asked that Plaintiff follow the procedure for submitting confidential documents in support of a discovery motion outlined in

1

the Protective Order.  (*Id.*)  Plaintiff filed her opposition later that evening, and indicated that unredacted copies of documents marked confidential were being submitted separately to Chambers to provide Google the opportunity to file a motion to retain confidential documents under seal.  (ECF 65 at 2 n.1.)

The documents ultimately submitted to Chambers with Plaintiff's deposition included documents not disclosed to Google prior to filing.  (*Compare* Tomezsko Decl., ¶ 2, Ex A *with id.* ¶¶ 3-11.)  Google was not given advance notice of and the opportunity to review documents Bates labeled GOOG-ROWE-00017412 and 17589, and GOOG-ROWE-P-00001737 and 4553.  (*Id.*)  Had Plaintiff asked, Google would have consented—and now hereby consents—to waive confidentiality designations for Plaintiff's Exhibits 13 and 14, GOOG-ROWE-00017589 and GOOG-ROWE-P-00001737, respectively.[1]

Google hereby requests an order from the Court permitting portions of the following documents submitted in connection with Plaintiff's opposition, (ECF 65), to remain under seal (collectively, the "Confidential Documents"):[2]

- Plaintiff's Exhibit 4 (GOOG-ROWE-00017583)
- Plaintiff's Exhibit 6 (GOOG-ROWE-00017998)
- Plaintiff's Exhibit 7 (GOOG-ROWE-00056521)

---

[1] Plaintiff's Exhibit 13 (GOOG-ROWE-00017589) was publicly filed as Exhibit 1 to the Declaration of Tariq Shaukat (ECF 62-3) in support of Google's letter requesting leave to file a motion for a protective order.

[2] Google is filing redacted copies of those documents with this motion, attached to the Declaration of Sara B. Tomezsko as Exhibits B through I, pursuant to Your Honor's Individual Practices, Rule 2.E.  Unredacted courtesy copies of these documents will be submitted to Chambers via e-mail, with the information Google proposes remain under seal so-indicated in those documents.  Google has tailored its redaction requests to disclose information sufficient for the Court to resolve the instant dispute, while still protecting the sensitive, confidential information upon which neither party relies.

- Plaintiff's Exhibit 8 (GOOG-ROWE-00059596)

- Plaintiff's Exhibit 9 (GOOG-ROWE-00059853)

- Plaintiff's Exhibit 10 (GOOG-ROWE-00056990)

- Plaintiff's Exhibit 12 (GOOG-ROWE-00017412)

- Plaintiff's Exhibit 15 (GOOG-ROWE-P-00004553)

## II.    LEGAL ARGUMENT

As set forth in the accompanying declarations of Bernita Jamison ("Jamison Decl."), Brian Ong ("Ong Decl."), Kevin Lucas ("Lucas Dec."), and Sara Tomezsko ("Tomezsko Decl."), the redacted information Google seeks to retain under seal reveal: Portions of these documents contain (1) non-public, confidential and sensitive business information concerning Google's operations and customers; (2) private and personal information about its former and current employees, the disclosure of which would result an unwarranted invasion of privacy; (3) sensitive and confidential information concerning Google's investigations into complaints of alleged discrimination; and (4) personal information of non-parties to this action.

### A.    Legal Standard

To retain a document under seal, a party must show that good cause exists to shield the document from public view. *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-CV-00594 (MPS), 2019 WL 3716512, at *1 (D. Conn. Aug. 7, 2019); *accord Tropical Sails Corp. v. Yext, Inc.*, No 14 Civ. 7582, 2016 WL 1451548, at *1 (S.D.N.Y. Apr. 12, 2016) ("The proponent of the protective order bears the burden of demonstrating good cause for the closure.") (citation omitted). Courts must first ascertain whether the document in question is a "judicial document," which is a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosh v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)

(internal citation omitted).  If the document is a judicial document, a common law presumption of access attaches.  Here, Google acknowledges that at least portions of the Confidential Documents are "judicial documents" for the limited purpose of resolving this discovery dispute.

Even in the case of judicial documents, however, courts must still examine the *strength* of the presumption of access, based on the weight accorded to the document and the importance of the decision to be made, as "[t]he public's right to access of judicial records, while presumed, is not unlimited." *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791 HB, 2003 WL 21511851, at *2 (S.D.N.Y. July 2, 2003) (internal citation omitted), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004).  Courts in this Circuit have opined that the presumption of public access to discovery materials submitted in connection with a discovery dispute is minimal. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608(PKC)(JCF), 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (weight of public presumption for disclosure of discovery materials "not particularly great" where "documents are not to be submitted in connection with a dispositive motion, but merely a motion to compel further discovery from a party"); *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (public right of access to discovery materials, even if filed in connection with a motion to compel, is low where court will not make decision on the merits of the case, but merely review materials in connection with discovery dispute).

Documents should be sealed if "countervailing factors" demand confidentiality.  *Lugosh*, 435 F.3d at 120.  Where the public's qualified right to access certain documents is implicated, the court must determine if "higher values" allow for sealing.  *Id.*  Such "higher values" may include, for instance, a party's "interest in protecting confidential business information [that] outweighs the qualified First Amendment presumption of public access." *Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x. 615, 617 (2d Cir. 2009)

(affirming district court's holding where "disclosure could cause [party] significant competitive disadvantage.") (citation omitted).

An entity's interest in protecting proprietary or sensitive business information outweighs the public's interest in accessing such materials, and serves as good cause supporting a motion to seal. *See, e.g.*, *Tropical Sails Corp.*, 2016 WL 1451548, at *4 (granting motion to seal "documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" as higher values overcoming the presumption of public access under the qualified First Amendment right to access test because company would suffer competitive harm if made publicly available); *Tomassini v. FCA US LLC*, No. 3:14-cv-1226 (MAD/DEP), 2017 WL 9400672, at *4 (N.D.N.Y. Jan. 6, 2017) (noting that "higher values" may include "[a] business's sensitive information that could harm a litigant's competitive standing"); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (granting motion to seal certain exhibits to reply declaration "contain[ing] highly proprietary material" concerning defendant's business because "the privacy interests of the defendants outweigh the presumption of public access").

This is particularly true where disclosure may result in competitive or financial harm, as is the case here. *Standard Inv. Chartered, Inc*, 347 F. App'x at 617 (affirming district court finding that party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access," where disclosure of the information would subject the party to "financial harm") (citation omitted); *New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (holding that documents that "contain non-public strategies and financial information constitute 'confidential commercial information' under Federal Rule 26(c)(1)(g), particularly where the disclosing company is

5

engaged in a highly competitive industry and deliberately has shielded such information from its competitors").

Likewise, courts regularly protect from disclosure personal information contained within judicial documents. *Estate of Jackson v. Cty. of Suffolk*, No. 2:12-CV-1455, 2019 WL 3253063, at *8 (E.D.N.Y. July 19, 2019) (ordering redaction of portion of summary judgment record "contain[ing] sensitive, personal information about parties and nonparties.") (citing *Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (2d Cir. 2019) (redacting summary judgment record "to protect personally identifying information such as personal phone numbers [and] contact lists")); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (finding that redactions of current and former employees' "sensitive personal information," "including home addresses, biographical information, telephone numbers and compensation" in summary judgment record overcame right of public access). Similarly, if disclosure of information will compromise a third-party's privacy interests, courts have considered this factor when deciding whether to retain information under seal. *United States Sec. & Exchange Comm. v. Ahmed*, No. 3:15-cv-675 (JBA), 2018 WL 4266079, at *2 (D. Conn. Sept. 6, 2018) (granting request to seal personal financial and familial information, personal contact information, and information regarding the location and value of personal and real property); *accord United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) (on motion to retain documents under seal, stating that "privacy interests of innocent third parties" should weigh heavily in court's decision of whether to hold information confidential)).

> **B.   Good Cause Exists to Retain Notes of Internal Investigations Into Potential Discrimination Under Seal.**

Google has marked Plaintiff's Exhibits 6 and 10 "Confidential" under the Protective Order because they contain notes taken by a member of Google's Employee Relations

department during the confidential investigation into concerns raised by a Google employee. (Jamison Decl., ¶ 3.) It is critically important that Google maintain the confidentiality of its workplace investigations to the extent possible, consistent with the need to conduct a full and thorough investigation. (*Id.*, ¶ 4.) Google employees must feel comfortable raising their concerns and participating in the investigation in order for the process to work as intended. (*Id.*) Confidentiality is a key component of that process. (*Id.*) Without it, Google employees may not feel comfortable fully disclosing their concerns to Employee Relations, and may feel exposed to the threat of retaliation. (*Id.*) It is not uncommon for complainants to seek assurances from an investigator that his or her complaint will be treated confidentially during the course of the investigation, and that his or her privacy interests will not be compromised by virtue of having come forward with a complaint. (*Id.*)

Confidentiality of the investigation also protects the privacy of third-party witnesses who participate in Google's investigation process. (*Id.*, ¶ 5.) Employee Relations investigations often require interviews of other employees with knowledge of the complained-of events, and it is important for Employee Relations to interview those individuals to get a full and complete understanding of what occurred and assess whether the conduct amounts to a violation of Google's policies against discrimination, harassment, retaliation, and bullying. (*Id.*) Assurance of confidentiality (again, to the extent possible to permit a complete and thorough investigation), allows these witnesses to provide candid and complete information necessary to fully investigate a complaint. (*Id.*) Without it, individuals may be discouraged from participating in the process and providing investigators with a complete understanding of the relevant facts. (*Id.*)

Confidentiality also protects the privacy of individuals wrongfully or mistakenly accused of violating Google's policies against discrimination, harassment, retaliation and bullying. (*Id.*, ¶


6.) Not every complaint investigated by Employee Relations is substantiated. (*Id.*) Confidentiality assures that individuals accused of wrongdoing are not harmed by unsubstantiated accusations. If individuals accused of wrongdoing are found to have violated Google policy, however, Employee Relations recommends appropriate discipline up to and including termination to address those violations. (*Id.*)

Finally, confidentiality protects the privacy interests of third parties whose names are mentioned during the course of an investigation but who otherwise did not participate in any of the complained-of events. (*Id.*, ¶ 7.) Often during an investigation, the employee raising complaints will refer to one or more peers they believe were treated differently, and the Employee Relations investigator may ask questions about those Google employees to assess whether the complainant had been treated less favorably than his or her peers. (*Id.*) Confidentiality of the investigation process is critical to ensure that personal and/or personnel information for those innocent third-parties is not widely disclosed. (*Id.*)

Google takes appropriate steps to maintain the confidentiality of Employee Relations investigation notes to prevent the harm described above. Google's Head of Employee Relations and others on her team instruct investigators to maintain the confidentiality of an investigation and documents created during the investigation process. (*Id.*, ¶ 8.) Access to documents containing the substance of a complaint and the investigator's notes are restricted to certain individuals within Google. (*Id.*) Those documents are also labeled "Confidential" in the ordinary course. (*Id.*) Investigators are instructed to, and do, remind employees at the start or end of every investigation interview that the process is intended to be confidential, and are careful to reveal only as much information about the complaint as is necessary to conduct a complete and thorough investigation. (*Id.*) An investigator's notes are not shared with

interviewees (although interviewees are permitted to take their own notes if they wish). (*Id.*) Generally, only complainants themselves or those accused of policy violations are provided with the Employee Relations investigator's findings or conclusions at the close of an investigation, and even then, the details of those findings are limited to only what the individual needs to know. (*Id.*)

Employee Relations also instructs managers who may receive employee complaints to assure the complaining employee that his or her concerns will be handled confidentially to the extent possible. (*Id.*, ¶ 9.) Employee Relations publishes manager information sheets about the investigation process and how to escalate employee complaints that explicitly cover confidentiality. (*Id.*) In sum, retaining Plaintiff's Exhibits 6 and 10 under seal serves the higher purpose of ensuring that Google has an effective and robust internal investigation process in which employees feel comfortable participating without fear of their names, information, or complaints being disclosed in a public record.

      **C.    Good Cause Exists to Retain Information About Google's Clients, Business Initiatives, And Organizational Changes Under Seal.**

Plaintiff's Exhibits 7, 8, 9, 12, and 15 identify Google customers, clients, and other sensitive, commercial information, as well as proposals to re-organize one area of Google Cloud's business, the Office of the CTO. Google has marked these documents either "Confidential" or "Attorneys' Eyes Only" under the Protective Order. (Lucas Decl., ¶ 3.) Google takes steps to prevent the disclosure of this information and resulting competitive harm to the company. Identification of Google's Cloud customers and clients is generally not disseminated outside of Google without permission from the customer or client. (*Id.*, ¶ 4.) For example, if Google Cloud organizes panel discussions with customers, the company seeks written agreement from the customer to record the conversation if it will disclose details about

the relationship with Google.  (*Id.*)  Contact information for individuals at the customer or client company, the substance of their communication with Cloud executives, and the cadence at which they communicate with Google are not disclosed without a compelling business justification for doing so.  (*Id.*, ¶ 5.)  Information of this type appears in Plaintiff's Exhibits 7, 8 and 9.

Details about the company's strategies to grow its Cloud business are also closely guarded at Google.  (*Id.*, ¶ 6.)  Lists of Google Cloud's top priority clients are not disseminated outside of Google. (*Id.*)  Projects or products on which Googlers are working to advance Cloud's business objectives, or key relationships Google employees are working to build in furtherance of those objectives, are not widely disclosed outside the business, especially during initial planning or exploratory phases of those projects, products, or initiatives.  (*Id.*)  Information of this nature appears in Plaintiff's Exhibits 7, 8, 9, and 15.

Disclosure of this information in a public filing would put Google at a competitive disadvantage in the highly competitive cloud marketplace. (*Id.*, ¶ 7.)  Google's Cloud product competes with only a few other offerings from a small number of competitors in the industry.  (*Id.*)  Disclosure of the specific clients the Cloud business is targeting, the types of businesses or entities with which it is seeking to build relationships, the individuals at those companies who are in contact with Google Cloud's executives (former or otherwise), and the initiatives on which its employees are working would, among other things, provide those competitors with insights into Google's commercial strategies for attracting business and remaining competitive in the marketplace.  (*Id.*)

In addition, Google generally does not disseminate outside the company information about its organizational structure in various areas of the business, or changes thereto. (*Id.*, ¶ 8.)  Within the company, unless or until the changes are actually implemented, information of the

type that appears in Plaintiff's Exhibit 12 is restricted to those on a need-to-know basis, usually consisting of the managers whose organizations will be impacted, Human Resources, and (potentially) Google's legal department. (*Id.*) Disclosure of this information in a public filing would put Google at a competitive disadvantage because it would provide its competitors with a blueprint of how to model parts of its organization and allocate resources in the same manner as Google. (*Id.*, ¶ 9.) Google has expended considerable time, effort, and resources to organize its Cloud business in a manner to best achieve operational efficiency, and any competitive advantage gained through these efforts would be lost if disclosed to its competitors. (*Id.*) In addition, the information that appears in Plaintiff's Exhibit 12 contains the names and reporting structure for employees not a party to this lawsuit. Disclosure of their information and their place within Google's organizational structure would result in an unwarranted invasion of their personal privacy. (*Id.*)

        **D.    Good Cause Exists to Retain The Identity of Candidates Seeking Executive Positions At Google And The Executive Recruiting Process Under Seal.**

Plaintiff's Exhibits 4, 7, 8, and 9 contain identifying information for individuals under consideration for several executive-level roles within the Google Cloud organization. Google has marked these documents either "Confidential" or "Attorneys' Eyes Only" under the Protective Order. (Ong Decl., ¶ 3.) Google takes steps to preserve the confidential nature of the recruiting and hiring process for executive-level candidates in the United States. (*Id.*, ¶ 4.) Google does not disclose the names of individuals in consideration for executive-level roles outside of a group of employees with a need to know this information, which generally includes the recruiters assigned to staff the position for which the candidates are being considered, the hiring manager, and others (*e.g.*, interviewers, schedulers) directly involved in the hiring process. (*Id.*) Recruiters for leadership positions are expected to limit access to documents

detailing who is under consideration for an executive-level role.  (*Id.*, ¶ 7.)  Information about those candidates in gHire and Thrive, Google's systems for storing data relevant to executive recruitment, is not widely accessible within Google. (Declaration of Sara Tomezsko, ¶ 13, Exh. J ("Transcript of Stuart Vardaman Deposition"), 17:4-14, 29:4-22 (discussing limited access of information stored in gHire and Thrive).)

Disclosure of a candidates' name and identity would constitute an unwarranted invasion of the affected individual's right to privacy and would result in undue harm.  (*Id.*, ¶ 5.)  Typically, these individuals have not disclosed to their current employer (or, in the case of a Google employee seeking another executive-level position within Google, their current manager) that they are seeking another role or exploring alternative career opportunities.  (*Id.*)  Disclosure of their names as part of the recruiting process, especially if Google declines to extend an offer, could result in harm to a candidate's career or professional opportunities with their current employer or manager.  (*Id.*)  Disclosure of candidates' names in the public record could also result in harm to Google.  (*Id.*, ¶ 6.)  Google's ability to attract top talent is dependent, at least in part, on the confidential nature of the recruiting process.  (*Id.*)  External candidates applying for senior Google roles who may be concerned about the optics of exploring opportunities outside their current employer or role must be able to rely on the confidential nature of the process to feel comfortable participating in it in the first instance.  (*Id.*)  Even the threat of disclosure of candidates' names in a public filing could discourage highly sought-after executives from considering a role with Google. (*Id.*)

    **E. Good Cause Exists To Retain Personal, Irrelevant Information Concerning An Executive's Daily Activities (Both Personal and Professional) Under Seal.**

In addition to the confidential information set forth above, Plaintiff's Exhibits 7, 8, and 9 contain information about a former Google executive's personal daily activities.  On its face, this

information is highly personal in nature. It includes such details as travel plans, contact information for personal and professional acquaintances, workout schedules, and similar information. Disclosure of such information of a non-party to this lawsuit—particularly where it bears no relevance to the discovery dispute, let alone the issues in the case—would result in an unwarranted invasion of personal privacy to that individual and other third-party individuals identified throughout the documents.

### III. CONCLUSION

As documents offered in support of a non-dispositive discovery motion, the presumption of public access to the documents Google seeks to retain under seal is low. To the extent information relied upon by either party can be shared publicly, Google has tailored its redaction requests to provide as much access to that information, consistent with the need to maintain the confidentiality of sensitive information that truly is confidential. This confidential information, which is unrelated to the disputed discovery issue and, in most cases, to the ultimate issues in the case, has little probative value and higher values weigh in favor of maintaining this information under seal.

Google therefore respectfully requests that the Court retain the redacted information in the Confidential Documents under seal so that the Court may consider its contents to resolve the instant discovery dispute without compromising the sensitive and confidential nature of those documents.

Dated: New Canaan, Connecticut
      December 4, 2020

PAUL HASTINGS LLP

By:    Kenneth W. Gage
        Sara Tomezsko

200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
Fax: (212) 319-4090
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant*
GOOGLE LLC

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 4th day of December, 2020, I caused a true and exact copy of the foregoing DEFENDANT GOOGLE LLC'S MOTION TO RETAIN DOCUMENTS UNDER SEAL and all supporting documents to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Jersey City, New Jersey
       December 4, 2020

_____
Sara B. Tomezsko