

Cara E. Greene, Esq.
ceg@outtengolden.com

December 17, 2020

**Via ECF:**
The Honorable Gabriel W. Gorenstein
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>*Ulku Rowe v. Google LLC*, Case No. 19-cv-08655 (LGS)(GWG)</u>

Dear Judge Gorenstein:

      We represent Plaintiff Ulku Rowe in the above-referenced matter.  We write pursuant to Rule Section 2.A. of Your Honor's Individual Practices and Local Rule 37.2 to request a pre-motion conference in anticipation of Plaintiff's motion to compel the production of discovery relating to comparator evidence.[1]

## BACKGROUND

      On September 17, 2019, Plaintiff filed a complaint asserting claims of unequal pay, gender discrimination, and retaliation. On April 21, 2020, Plaintiff filed a letter motion regarding several discovery disputes, including a dispute related to comparator evidence. Specifically, Plaintiff sought discovery that would enable her to properly identify comparators and establish her equal pay, discrimination, and retaliation claims. Following a discovery conference on May 14, 2020, the Court ordered Defendant to produce snapshots regarding L8 and L9 engineering employees in Google Cloud U.S. for 2017, 2018, and 2019 (the "Snapshots") in connection with upcoming 30(b)(6) depositions. The Court further stated that following the 30(b)(6) depositions, the Parties would further meet and confer regarding the scope of comparators and Defendant's production of additional information responsive to Plaintiff's discovery requests as to those individuals. (ECF No. 41, Transcript of May 14, 2020 Hearing at 11:2-24).

      The Snapshots included individuals across fifty-four (54) job codes. On October 2, 2020 and October 27, 2020, Plaintiff deposed two 30(b)(6) designees, Adam Lief and Kevin Lucas. In addition, Plaintiff has taken the depositions of nine fact witnesses, including members of Google's recruitment group, high level managers within the organization, and individuals who were in the same Technical Director position as Plaintiff.

---

[1] Plaintiff submits a number of the exhibits cited herein under separate cover to the Court, as they have been marked by Defendant as confidential pursuant to the Protective Order in this case. Plaintiff has conferred with Defendant and provided Defendant with a copy of these documents. Defendant has indicated that it intends to move to seal some of these documents and that it continues to assess its position regarding the confidentiality of other documents.

New York   685 Third Avenue  25th Floor   New York, NY 10017   Tel (212) 245-1000   Fax (646) 509-2060
San Francisco  One California Street  12th Floor   San Francisco, CA 94111   Tel (415) 638-8800   Fax (415) 638-8810
Washington DC  601 Massachusetts Ave NW  Suite 200W   Washington, DC 20001   Tel (202) 847-4400   Fax (202) 847-4410

www.outtengolden.com

By letter dated November 23, 2020, Plaintiff requested that Defendant produce comparator information for individuals in four roles (8 job codes) at levels 8 and 9 (the "Eng Director" roles), outlining the evidence to date that supported her position that these roles were comparable. In addition, Plaintiff identified another job for which comparator information should be produced: the Global Client Lead role ("GCL"). In summary, Plaintiff has sought discovery with respect to the following roles[2]: (1) Application Engineer I & II (Job codes: 3948, 3949); (2) Director, SWE (Job codes: 8317, 8319); (3) Director, Product Management ("PM") (Job codes: 5007, 5013); (4) DNU- Director, Software Engineering (Job codes: 3412, 3414); and (5) Global Client Lead Role.

The Parties met and conferred regarding Plaintiff's request for comparator evidence via telephonic conference on December 3, 2020[3]. During the call, Plaintiff reiterated the evidentiary basis for her position, and also noted that since sending her letter, two additional deponents had testified and their testimony further supported her position. Both individuals, Benjamin Wilson and Evren Eryurek, had moved from Technical Director into one of the identified Eng Director roles, and both testified to the comparability of the GCL role to the Technical Director role. Defendant asserted that discovery is not warranted as the aforementioned roles were not comparable to Plaintiff's, and that the testimony and documents to date supported its position. The Parties agreed they were at impasse and Plaintiff informed Defendant of her intention to seek court intervention to resolve this issue in advance of discovery deadline on December 18.

Plaintiff now seeks to file a motion to compel Defendant to produce the following discovery for the aforementioned roles at Levels 8 and 9[4]: compensation data, resumes, offer letters, gHire feedback, offer packets, gComp data, and performance reviews (in color). These requests are responsive to Plaintiff's Document Requests Nos. 6, 10-14, 17, 19, and 21.

## ARGUMENT

Plaintiff requests that the Court compel Defendant to identify and produce responsive information for *all* potential comparators. Defendant misunderstands the purpose of discovery: "the purpose of discovery here is, in part, to help identify the universe of proper comparators." *Vuona v. Merrill Lynch & Co.*, No. 10 Civ. 6529, 2011 WL 5553709, at *4 (S.D.N.Y. Nov. 15, 2011). As the District Court noted in at the May 14, 2020 discovery conference on this issue, "I agree with the legal proposition that part of the purpose of discovery is to identify comparators." (Transcript of May 14, 2020 Hearing at 7:7-9).

---

[2] Defendant has produced or is producing discovery related to (i) individuals in the Technical Director role; the Global Client Technical Lead role; or in the Director, Technical Solutions Consultant roles (Job codes 5565, 5566); and (ii) an individual comparator, Stuart Breslow.

[3] The call took place from approximately 4:30 p.m. to 5:13 p.m. In attendance were Kenneth Gage and Sara Tomezsko of Paul Hastings LLC and Cara Greene, Maya Jumper, and Shira Gelfand of Outten & Golden LLP.

[4] Plaintiff alleges that Defendant unlawfully leveled her as an 8, while leveling her male peers at 9. Defendant asserts that Plaintiff was properly leveled at 8. Thus, individuals at both Levels 8 and 9 are relevant comparators for purposes of the claims and defenses in this matter.

In connection with her New York Equal Pay Law claims, Plaintiff is entitled to discovery related to men who performed (1) equal work requiring equal skill, effort, and responsibility, and performed under similar working condition or (2) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions. *See* N.Y. Labor Law § 194 (1). The 2019 amendments to New York Equal Pay Law made clear that individuals need not hold the same position or role to be comparators for purposes of the law. *See* S.B. 5248-B, 2019 Sess., 242nd Leg. (N.Y. 2019). Nor is the fact that comparators of the opposite sex have different job titles dispositive for purposes of a federal equal pay claim. *See*, *e.g.*, *Moccio v. Cornell Univ.*, 889 F.Supp.2d 539, 569 (S.D.N.Y. 2012) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 WL 1758128, at *3 (S.D.N.Y. May 17, 2012)) ("In determining whether two positions are substantially equal in skill, superficial comparisons based on job title or code are insufficient." (internal quotation marks omitted)); *see also* 29 CFR § 1620.13(e) ("[a]pplication of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance."). If positions require the same duties and involve the same content, any differences in title are immaterial to the inquiry. *See Corpes v. Walsh Construction Co.*, 2015 WL 5331725, at *5 (D. Conn. Sept. 14, 2015). Further, resumes and past experiences of comparators are not dispositive on the question of whether a job has common duties or content. *Id.* (denying summary judgment for employer who argued that differing job titles, resumes, and past experiences of plaintiff and her male comparators evidenced that work was not substantially equal).

With respect to her Title VII and New York City Human Rights Law claims, Plaintiff is entitled to comparator information to establish whether she was "paid less than non-members of her class for work requiring substantially the same responsibility." *Belfi v. Prendergast*, 191 F.3d 129, 139–40 (2d Cir. 1999); *See Husser v. N.Y.C. Dept. of Educ.*, 137 F.Supp.3d 253, 271 (plaintiff asserting claim for pay discrimination under the NYCHRL "must show only that she was treated less well than other employees because of her sex."). Further, in the anti-discrimination law context, employees "need not be identical to that of another for the two to be similarly situated" and "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee.") (emphasis in original).

**The Eng Director Roles**

As the District Court noted at the May 14, 2020 conference relating to Plaintiff's request for comparator information: "The basic concept is that the comparator would be men in engineering roles at level 8 and 9 provided the engineering roles are comparable as you all negotiate and figure out." (Transcript of May 14, 2020 Hearing at 11:21-24). Discovery thus far supports that individuals in the Eng Director roles are comparable, as they performed either (1) equal work requiring equal skill, effort, and responsibility, and performed under similar working conditions, or (2) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions to Plaintiff. Among other evidence supporting this conclusion is the following:

The Honorable Gabriel W. Gorenstein
December 17, 2020
Page 4 of 6

- Google referenced the same Engineering-wide Leveling Guide and Leadership Rubrics when discussing the Technical Director and Eng Director roles. (Lucas Tr. 42:21-44:8). Mr. Lief. testified that the Engineering-wide Leveling guide accurately reflected the skills and expectations across Eng Director roles, regardless of job ladder. (Lief Tr. 111:9-12).
- Mr. Lief, Mr. Wilson, and Tariq Shaukat, Plaintiff's former supervisor, testified that it was common for individuals in Eng Director roles to move into other ladders and that Eng Directors had transferable skills that facilitated internal mobility. (Shaukat Tr. 87:19-90:5, Lief Tr. 110:22-111:12, Wilson Tr. 145:10-14).
- Mr. Lief, who himself is an Application Engineer, testified that the skills and experience required for the Technical Director role overlapped with the Application Engineer role. Specifically, both roles required working directly with customers and stakeholders, engaging in whiteboarding sessions, identifying friction points in design, development, and deployment from stakeholders' perspectives, and collaborating across functional and product area boundaries within Google (Lief Tr. 50:11-63:3).
- Mr. Wilson, who transferred from the Technical Director role to the PM role, testified that every single job responsibility listed for the Technical Director role overlapped with the PM role and that there were many transferable skills and overlapping responsibilities between the roles. (Wilson Tr. 154:25-159:8).
- Mr. Eryurek, another Technical Director who later transferred to a PM role, testified that his skill set was transferrable from the Technical Director role into the PM role, and that his experience applied to both roles. Mr. Eryurek further testified that the day-to-day duties and responsibilities associated with the Technical Director role overlapped with the PM role. (Eryurek Tr. 116:2-120:16).
- Mr. Grannis, Plaintiff's supervisor, testified that he viewed at least some of skills in the Technical Director role as transferrable to the PM and SWE roles. (Grannis Tr. 115:15-18, 122:7-13). Nicholas Harteau, another individual in the Technical Director role, later transferred to the SWE role, *see* GOOG-ROWE-00059686, GOOG-ROWE-00060436), which human resources supported without him interviewing for the role. (GOOG-ROWE-00058806). Moreover, at the Eng Director level, the distinctions between job titles were vague, as they are not "hands-on" roles. (Eryurek Tr. 116:15-17).

While Defendant produced "job description data" for the Eng Director positions, the vast majority of the cells under the "preferred qualifications," "minimum qualifications," "requirements," and "description details" contain the word "null." Defendant's confirmation that no additional job description data exists for these positions further supports Plaintiff's request, as it is necessary to establishing comparators. *See Bobo v. United Parcel Serv., Inc*., 665 F.3d 741, 753 (6th Cir. 2012) ("The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine.").

**Global Client Lead ("GCL") Role**

Plaintiff also seeks discovery related to the Global Client Lead role. In or around June 2018, Plaintiff, along with Mr. Wilson and Mr. Eryurek, transferred out of the Technical Director

role and into the Global Client Technical Lead ("GCTL"[5]). Discovery supports that the GCL role is comparable to the GCTL role for purposes of discovery. Among other evidence supporting this conclusion is the following:

- Mr. Shaukat testified he met with Plaintiff to discuss the GCTL role, explaining that the GCTL's "would be peers of the GCL's, as we referred to them Global Client Lead." (Shaukat Tr. 95:3-12). Mr. Shaukat further explained to Ms. Rowe that he was "expecting her to come in and build a team and lead a team of global client leads." (Shaukat Tr. 98:2-4).
- In an email, Mr. Shaukat explained that "[e]very Global Client will be assigned a Global Client Lead and a Global Client Technical Lead, both with vertical expertise. This team will complement the sales team, and will be responsible for the agenda, key transformation relationships, and end-to-end success at each Global Client." (GOOG-ROWE-00017439).
- In his interview with Employee Relations on April 9, 2020, Mr. Shaukat indicated that the GCTL was the "technical peer" of the GCL role. (GOOG-ROWE-00056990).
- Mr. Wilson testified that he was not aware of any distinction between the GCTL and GCL role and that his supervisor, Darryl Willis, told him the roles were "overlapping" and that the GCTL's and the GCL's would "work together" to serve customers. (Wilson Tr. 119:3-19).
- Mr. Eyurek testified that "Global client leads versus global client technical leads was definitely an ambiguity at best." (Eryurek Tr. 86:4-6).

It is clear that the GCT and GCTL roles were substantially similar, and accordingly, Plaintiff is entitled to comparator information for individuals who held the GCL role. *See Husser,* 137 F.Supp.3d at 267 (holding that factors to consider include whether the plaintiff and comparator work in the same division, have the same supervisor, have similar responsibilities, and are required to devote the same effort.).

While Defendant argues that it would be overly burdensome to identify individuals in the GCL role as the role may no longer exist, the argument is belied by the fact that Mr. Shaukat identified at least seven individuals who were or are in the GCL role. (Shaukat Tr. 204:17-205:20). Furthermore, to the extent that other individuals were placed in the role before or after Plaintiff was moved into the related GCTL role, Defendant must produce that information as well. *See* 29 C.F.R. § 1620.13(b)(4) ("If a person of one sex succeeds a person of the opposite sex on a job at a higher rate of pay than the predecessor, and there is no reason for the higher rate other than difference in gender, a violation as to the predecessor is established . . .")

Accordingly, Plaintiff requests that the Court order Defendant to produce responsive information for individuals in the aforementioned positions, in both Level 8 and Level 9, including, but not limited to compensation data, resumes, offer letters, gHire feedback, offer packets, gComp data, and performance reviews (in color).

Respectfully submitted,

---

[5] Defendant has agreed to discovery related to the GCTL position.

The Honorable Gabriel W. Gorenstein
December 17, 2020
Page 6 of 6

                                                    Cara E. Greene

c:       All counsel of record via ECF