# EXHIBIT 7

Page 1

1

2      IN THE UNITED STATES DISTRICT COURT

3      FOR THE SOUTHERN DISTRICT OF NEW YORK

4      Civil No.: 19 Civ. 08655 (LGS)(GWG)

5      ----------------------------------x
       ULKU ROWE,

6
                   Plaintiff,

7

8
           - against -

9

10

       GOOGLE LLC,

11
                   Defendant.

12     ----------------------------------x
                    October 14, 2020

13                  9:39 a.m.

14

15         Videotaped Deposition of ULKU ROWE,

16     taken by Defendant, pursuant to Notice,

17     held via Google Hangouts videoconference,

18     before Todd DeSimone, a Registered

19     Professional Reporter and Notary Public of

20     the States of New York and New Jersey.

21

22

23

24

25

Page 99

                              U. ROWE

1

2    you know, someone that provides thought

3    leadership, so, you know, a leadership role

4    outside of OCTO.

5        Q.      But when he left OCTO, he also

6    took on responsibility for managing a team

7    of people, correct?

8        A.      Correct.  That's my

9    understanding.

10       Q.      When he was in OCTO, was he

11   managing other people?

12       A.      I don't remember if -- I don't

13   remember if he did.

14       Q.      Have you at any point in time

15   since you have been at Google managed other

16   people?

17       A.      I have not.

18       Q.      Is that sometimes referred

19   to --

20       A.      Well, other than my executive

21   assistant.

22       Q.      Is that sometimes referred to

23   as an individual contributor?

24       A.      Yes.

25       Q.      So you have been an individual

```
 1                        U. ROWE
 2    contributor your entire time at Google,
 3    correct?
 4         A.      Correct.
 5         Q.      Was Mr. Harteau an individual
 6    contributor when he first joined the
 7    company in OCTO?
 8         A.      Yes.
 9         Q.      But he was not when he left
10    OCTO and joined engineering, he was no
11    longer an individual contributor, right?
12         A.      That's my understanding.
13         Q.      Is Royal Hansen an individual
14    contributor?
15         A.      I don't believe so.
16         Q.      He manages other people, right?
17         A.      Yes.
18         Q.      What about Jonathan Donaldson,
19    is he an individual contributor?
20         A.      He was an individual
21    contributor when we were first hired into
22    OCTO.  I think today he does manage people.
23         Q.      Do you know at what point in
24    between him joining OCTO and today he
25    stopped being an individual contributor and
```

```
 1                    U. ROWE
 2    responsibilities.  The same as whom?
 3         A.     So the same -- so everyone in
 4    OCTO has similar.
 5         Q.     So it is similar to what you
 6    do?
 7         A.     Correct.
 8         Q.     Do you know what his experience
 9    was before coming to Google?
10         A.     I don't remember right now.
11         Q.     Did you ever know?
12         A.     I think he worked for a
13    consulting company, but I can't remember
14    right now.
15         Q.     Do you know what his
16    educational background is?
17         A.     I believe he has a Ph.D., but I
18    may be wrong.
19         Q.     Do you have a Ph.D.?
20         A.     I don't have a Ph.D.
21         Q.     Do you know what his Ph.D. is
22    in?
23         A.     I don't.
24         Q.     But you and Mr. Penberthy do
25    the same thing, is that fair to say?
```

1                    U. ROWE

2        A.       We have similar

3    responsibilities.

4        Q.       Sufficient for you to consider

5    Mr. Penberthy to be similarly situated to

6    you, correct?

7        A.       So I have since learned that,

8    you know, Scott is at level 8, but I think,

9    what I believe, is my experience and my

10   qualifications are in line with the level 9

11   men in OCTO.

12       Q.       But he is similarly situated to

13   you, correct, Mr. Penberthy?

14       A.       Incorrect.

15       Q.       You gave an answer under the

16   penalty of perjury in your interrogatory

17   response that Scott Penberthy is similarly

18   situated to you, right?

19       A.       Well, at that time, you know, I

20   thought he was a level 9, and through

21   discovery I learned that he was a level 8.

22       Q.       So that changes your answer,

23   right?

24       A.       So, look, I don't know every

25   single qualification and everything that

Page 110

1                    U. ROWE

2    Scott does.  I do know we're both members

3    of OCTO, but, you know, I am comparing

4    myself to the level 9 men in OCTO, and I'm

5    claiming that, you know, we are similarly

6    situated.

7         Q.     So do you want to change your

8    interrogatory answer?  You are here

9    testifying under oath.  So is it your

10   testimony now today on October 14th of 2020

11   that Scott Penberthy is not similarly

12   situated to you because he is a level 8; is

13   that your testimony?

14               MS. GREENE:  Objection.

15        Q.     Is that your testimony?

16        A.     Look, I'm just saying, you

17   know, what I'm comparing myself is to L9

18   men.

19        Q.     I understand that is your

20   claim, Ms. Rowe, but this interrogatory

21   didn't ask you that question.  This

22   interrogatory asked you who was similarly

23   situated.

24               You testified earlier today

25   that you knew what that term meant and you

```
 1                    U. ROWE
 2   testified that these answers were true and
 3   correct.  And so I'm asking you now, do you
 4   want to change -- do you want to change
 5   your answer and say that Scott Penberthy is
 6   not similarly situated to you; is that your
 7   answer?
 8                MS. GREENE:  Objection.
 9        A.    I don't know how to answer that
10   question.  I guess --
11        Q.    Let me ask a simpler question.
12        A.    What I'm saying is --
13        Q.    I'm going to ask a simpler
14   question, Ms. Rowe.
15        A.    Fine.
16        Q.    You are under oath today,
17   right?
18        A.    Yes.
19        Q.    Is, using your definition of
20   similarly situated, is Scott Penberthy
21   similarly situated to you?
22        A.    No.
23        Q.    And is that because he is a
24   level 8?
25        A.    Well, it is because that, you
```

```
 1                    U. ROWE
 2   know, I am comparing myself to the level 9
 3   men and their skill sets and their
 4   experiences versus mine.  You know, and
 5   that's the reason I'm including the level 9
 6   men.  So if I was putting this response
 7   into Interrogatory No. 5 today, I would not
 8   include Scott Penberthy.
 9        Q.     Is there anyone else you want
10   to strike from the list?
11               MS. GREENE:  Objection.
12        Q.     You can answer.
13        A.     No, I can't think of any
14   others, no.
15        Q.     When did you learn that Scott
16   Penberthy was a level 8?
17        A.     Through discovery.  I don't
18   remember the exact time.
19        Q.     And at the point you learned he
20   was a level 8, is that when you no longer
21   considered him to be similarly situated to
22   you?
23        A.     Yes.
24        Q.     I'm sorry, was your answer yes?
25        A.     So, look, I don't know
```

Page 113

                         U. ROWE
1
2      everything about Scott, and I don't know
3      about his qualifications, and I'm not
4      comparing my qualifications to his.  I am
5      comparing my qualifications to the men at
6      level 9 at Google Cloud eng, and so I
7      learned that Scott was at a level 8, so I
8      don't compare myself to him.
9           Q.     But I'm asking you to compare
10     yourself to him right now, okay?  So let me
11     ask you a few questions about that.
12                 Do you and Mr. Penberthy do the
13     same job?
14          A.     No.
15          Q.     You don't?  What's different
16     about the job that you do in contrast to
17     the job that Mr. Penberthy does?
18          A.     Our jobs are similar, they are
19     not exactly the same.
20          Q.     Tell me how they are different.
21          A.     Look, I don't know everything
22     that Scott does on a day-to-day basis.  I
23     don't have insight into, you know, his day
24     or exactly what he does.  I think in
25     general we do, you know, similar things,

```
                                       Page 114
 1                    U. ROWE
 2    like everybody in OCTO, but I don't know --
 3    I don't know how to compare myself to him.
 4         Q.     Well, you certainly know more
 5    about what Mr. Penberthy does than you know
 6    about what Royal Hansen does, right?
 7         A.     I have better -- I have better
 8    insight into it.
 9         Q.     Into what Mr. Penberthy does,
10    right?
11         A.     Yes.
12         Q.     Well, you quite confidently
13    said you were similarly situated to Royal
14    Hansen, and you know more about what
15    Mr. Penberthy does.  So my question to you
16    is, is Scott Penberthy similarly situated
17    to you?
18              MS. GREENE:  Objection.
19         A.     No.
20         Q.     Why not?
21         A.     Look, I don't know.  Maybe the
22    better answer is to say I don't know,
23    because what I do know is I compare myself
24    to level 9's and I believe we are similarly
25    situated.  With Scott, I don't know.
```

```
 1                    U. ROWE
 2      Q.      It's because you found out he
 3  is a level 8 and you don't want him to be
 4  similarly situated, right?
 5              MS. GREENE:  Objection.
 6      A.      No.
 7      Q.      Then why?
 8      A.      Because I'm not comparing
 9  myself to him.
10      Q.      So is it fair to say, then,
11  Ms. Rowe, that you identified people in
12  response to Interrogatory 5 who you are
13  comparing yourself to?
14              MS. GREENE:  Objection.
15      A.      No.
16              MR. GAGE:  Could you reread
17  that answer.  I didn't hear it.
18              (The record was read.)
19      Q.      What about Jon Saxe, what does
20  Jon Saxe do at Google?
21      A.      I believe he is an eng director
22  at Google.  Sorry, to be honest, sorry, I
23  don't know if he is still doing that.  You
24  know, at the time he did.
25      Q.      You said to be honest.  We do
```

1                    U. ROWE

2    want you to be honest, okay?

3                    Do you know what Jon Saxe does

4    currently at Google?

5         A.     I don't.

6         Q.     Was there a point in time when

7    you did know what Jon Saxe does?

8         A.     I did.

9         Q.     What level is he?

10        A.     I don't know.

11        Q.     Do you think he is a level 8?

12        A.     I think he is either a level 9

13   or a level 10.

14        Q.     If he were a level 8, would he

15   be similarly situated to you?

16                MS. GREENE:  Objection.

17        A.     That's not who I'm comparing

18   myself to.

19        Q.     So you're not comparing

20   yourself to Jon Saxe?

21        A.     Sorry, I'm not comparing myself

22   to level 8's.

23        Q.     But you don't know what level

24   Mr. Saxe is, right?

25        A.     So right now I can't recall.

Page 117

U. ROWE

1
2      Q.      And if Mr. Saxe were a level 8,
3  would he be similarly situated to you?
4      A.      I don't know.
5      Q.      Earlier you said you understood
6  Interrogatory No. 5 and that you answered
7  it under oath.  So are you changing your
8  testimony, do you not understand
9  Interrogatory No. 5?
10              MS. GREENE:  Objection.
11      A.      No, I understand -- I
12  understand it.
13      Q.      So you understand Interrogatory
14  No. 5.  You previously said under oath that
15  Scott Penberthy is similarly situated,
16  right?
17      A.      Correct.
18      Q.      But then today, because you now
19  know Scott Penberthy is a level 8, and
20  you're not comparing yourself to level 8's,
21  you have changed your answer and said that
22  he, Scott Penberthy, is not similarly
23  situated, right?
24              MS. GREENE:  Objection.
25      A.      All I'm saying -- no, that's

Page 118

```
 1                      U. ROWE
 2   not what I'm saying.
 3        Q.     So I have no idea what you're
 4   saying, Ms. Rowe.  I want to know, today,
 5   sitting here right now, you tell me, is
 6   Scott Penberthy similarly situated to you?
 7        A.     I don't know.
 8        Q.     When you signed and verified
 9   these interrogatories under oath, did you
10   know whether Scott Penberthy was similarly
11   situated?
12                MS. GREENE:  Objection.
13        A.     I thought he was similarly
14   situated.
15        Q.     And what's changed since then?
16        A.     Because at the time I wasn't
17   sure 100 percent either, and now I'm not --
18   I'm not sure.  That was my belief at the
19   time, right.
20        Q.     What has changed since then
21   besides you finding out that Mr. Penberthy
22   is a level 8?
23        A.     I don't know.
24        Q.     Nothing else has changed, has
25   it?  Right?
```

```
 1                    U. ROWE
 2        A.      Well, nothing has changed.  I'm
 3   still saying I know my qualifications.  I
 4   know everyone else's qualifications.
 5        Q.      Ms. Rowe, I'm not asking you to
 6   argue your case.  That's up to your lawyer,
 7   that is your lawyer's job, they are very
 8   capable lawyers, you have hired very
 9   capable lawyers and they will argue your
10   case.  I am asking you for your knowledge.
11   I'm asking you about your interrogatory
12   responses.
13              And you identified Scott
14   Penberthy as someone who you believed was
15   similarly situated in your interrogatory
16   response.  Today you have changed that
17   answer and said he is not similarly
18   situated.  And I'm asking you what, other
19   than finding out that he is a level 8, has
20   changed since then?
21              MS. GREENE:  Objection.
22        A.      So I'm saying at the time I
23   thought he was similarly situated, and
24   right now I'm not sure if he is similarly
25   situated.
```

                          U. ROWE

1

2       Q.       But that wasn't my question.

3    My question was, what has changed since you

4    signed your interrogatory responses other

5    than you finding out that he is a level 8?

6       A.       I don't know.

7       Q.       Nothing else has changed, has

8    it?

9       A.       I don't know.

10      Q.       Why not?  Why don't you know?

11               MS. GREENE:  Objection.

12      A.       I don't know.

13      Q.       So is it your testimony right

14   now that Scott Penberthy is not similarly

15   situated to you; is that your testimony?

16      A.       My testimony right now is I am

17   not sure.

18      Q.       So are you sure that Royal

19   Hansen is similarly situated to you?

20      A.       To the best of my

21   understanding.

22      Q.       Why are you sure that Royal

23   Hansen is similarly situated to you and

24   you're not sure one way or the other about

25   Scott Penberthy?

Page 121

U. ROWE

2              MS. GREENE:  Objection.

3       A.     I didn't say I was sure.  I was
4  saying to the best of my knowledge.

5       Q.     Are you sure about any of these
6  answers to Interrogatory No. 5?

7              MS. GREENE:  Objection.

8       A.     Lock, these are -- these are --
9  is it 100 percent?  No.  Do I believe that
10  they are right?  Yes.

11      Q.     So is Scott Penberthy 100
12  percent wrong, is that answer 100 percent
13  wrong?

14             MS. GREENE:  Objection.

15      A.     Sorry, ask the question again.

16      Q.     You just said I believe that
17  you don't know whether your answer to
18  Interrogatory No. 5 is 100 percent correct.
19  Did I hear that correctly?

20      A.     I'm saying that these are my
21  best understanding.  I believe them to be
22  correct, but am I 100 percent sure that
23  they are correct?  No.

24      Q.     And for Scott Penberthy, you
25  have learned that he is a level 8 and now

```
 1                    U. ROWE
 2   you don't think he is similarly situated,
 3   correct?
 4        A.    So I learned that he is level 8
 5   and it makes me question whether he is.
 6        Q.    So did you just put people on
 7   here who you believed to be at a higher
 8   level than you?
 9             MS. GREENE:  Objection.
10        A.    No.
11        Q.    So do you believe that Royal
12   Hansen is similarly situated to you?
13             MS. GREENE:  Objection, asked
14   and answered.
15        A.    Yes.
16        Q.    Do you believe that Scott
17   Penberthy is similarly situated to you?
18             MS. GREENE:  Objection.
19        A.    I don't know.
20        Q.    Why do you know -- why do you
21   have an answer for Royal Hansen and not for
22   Scott Penberthy?
23        A.    Look, I know my own
24   qualifications.  I know --
25        Q.    I'm not asking you about your
```

Page 327

```
 1                    U. ROWE
 2   comparable.
 3        Q.      How are they different?
 4        A.      I don't know what he does on a
 5   day-to-day basis, so I don't know, you
 6   know, what he does that might be different,
 7   but what I do know is that, you know, he
 8   does provide, you know, product and
 9   engineering guidance.  He does provide
10   thought leadership.  He works across the
11   organization.  And he does have -- he does
12   have, you know, client facing, and
13   understanding his clients and building
14   product type responsibilities.
15        Q.      Does he write code as part of
16   his job?
17        A.      I don't know.
18        Q.      Do you?
19        A.      I don't, not production code.
20        Q.      Have you ever, since you have
21   been at Google?
22        A.      So I have written code, but I
23   have not contributed code to Google's
24   products, if that's what you are asking.
25        Q.      Do you know anyone else who is
```