UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE,<br><br>              Plaintiff,<br><br>-against-<br><br>GOOGLE LLC,<br><br>              Defendant. | No. 1:19-cv-08655 (LGS)(GWG)<br><br>**DECLARATION** OF **BRIAN ONG** IN SUPPORT OF MOTION **TO RETAIN DOCUMENTS UNDER SEAL** |

I, BRIAN ONG, declare:

1. I am a Director, Google People Services, StratOps for Defendant Google. I have personal knowledge of the facts set forth in this declaration, or know them to be true in my capacity as an employee for Google based on records that Google keeps in the regular course of business. I could and would competently testify to these facts under oath if called as a witness.

2. I have held my current position at Google since January of 2018, and have worked for Google's People Operations organization (which covers Google's hiring and staffing processes) since October 2008. Currently, I lead the strategy and operations team for the People Operations Staffing organization, which includes managing the candidate evaluation process at Google.

3. I am familiar with the steps Google takes to preserve the confidential nature of the recruiting and hiring process for executive-level candidates in the United States. Google does not disclose the names of individuals in consideration for executive-level roles outside of a group of employees with a need to know this information, which generally includes the recruiters

assigned to staff the position for which the candidates are being considered, the hiring manager, and others (e.g., interviewers, schedulers) directly involved in the hiring process.

4. Recruiters for leadership positions are expected to limit access to documents detailing who is under consideration for an executive-level role. In addition, information about an individual's candidacy—for example, the identity of their interviewers, the feedback they received, and the roles for which the candidate was considered—is not shared widely within Google and is limited to those individuals involved in the recruiting process for the position at issue.

5. Google uses two systems for storing and tracking data relevant to executive recruiting: gHire (Google's internal proprietary system) and Thrive (a third-party application). Access to candidate data in gHire is restricted to individuals within the People Operations organization (e.g., recruiters and those assisting them to schedule interviews), and access to information in Thrive is further restricted to those who are aligned to recruiting directors and above for Google.

6. Google maintains the confidentiality of candidate data in both gHire and Thrive for several reasons. First, Disclosure of a candidates' name and identity would constitute an unwarranted invasion of the affected individual's right to privacy and would result in undue harm. Typically, these individuals have not disclosed to their current employer (or, in the case of a Google employee seeking another executive-level position within Google, their current manager) that they are seeking another role or exploring alternative career opportunities. Disclosure of their names as part of the recruiting process, especially if Google declines to extend an offer, could result in harm to a candidate's career or professional opportunities with their current employer or manager.

7. Second, Disclosure of candidates' names in the public record could also result in harm to Google. Google's ability to attract top talent is dependent, at least in part, on the confidential nature of the recruiting process. External candidates applying for senior Google roles who may be concerned about the optics of exploring opportunities outside their current employer or role must be able to rely on the confidential nature of the process to feel comfortable participating in it in the first instance. Even the threat of disclosure of candidates' names in a public filing could discourage highly sought-after executives from even considering a role with Google.

8. Third, an individual's Thrive profile contains information about the positions for which the individual may have been considered and, if he or she applied and ultimately did not get the position, what qualities or experience that individual was lacking. Public disclosure of this information could result in competitive harm to Google, as other companies in the highly competitive cloud computing space would be privy to the type of individuals Google considers for certain executive-level positions (along with the background, experience, and profile associated with that individual) and the qualities Google is looking for in someone to fill the role.

9. Fourth and finally, public disclosure of the Thrive profile could result in competitive harm to Google because competitors would be able to see what roles Google was looking to fill (which may not have been posted externally) and when Google was hiring into those positions to fill a business need, and how long the search was held open. Disclosure of these details would allow competitors to mirror aspects of their recruiting efforts on Google's processes, and undermine the time, effort, and expense Google expended to develop its confidential recruiting processes in the first instance.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed on the 17th day of December, 2020 at Los Gatos, CA.

*Brian Ong*
36D152EBD9F8445...
Brian Ong