UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,

        Plaintiff,

   -against-

GOOGLE LLC,

        Defendant.

No. 1:19-cv-08655 (LGS)(GWG)

**OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO SUPPLEMENT PLEADINGS**

**I.       INTRODUCTION**

Plaintiff offers no plausible explanation for waiting ten months to seek leave to supplement her Amended Complaint to assert a claim based upon events known to her in February 2020. Plaintiff did not need discovery to "learn" that she filed the complaint in this case in September 2019 and then, five months later, was not considered for a VP Sales role she wanted but for which she never applied.  She pressed on with discovery, conducting over ten depositions of Google witnesses based on the allegations in her operative Amended Complaint, which says nothing about the VP Sales role.  She finally revealed her intention to supplement her complaint within days of the parties' deadline to submit pre-motion letters seeking leave to file summary judgment motions. Her conduct has resulted in prejudice to Google and its ability to fully and fairly explore this retaliation claim and any defenses through discovery.  This Court should not condone such litigation tactics by permitting her to now supplement her complaint with facts known to her as early as February 2020.

**II.      PLAINTIFF HAS ENGAGED IN UNDUE DELAY IN SEEKING TO SUPPLEMENT, WHICH WILL PREJUDICE GOOGLE IF GRANTED.**

    **A.      Plaintiff Offers No Justification For Her Gross Delay In Seeking To Supplement.**

Plaintiff is aware of her obligations to promptly amend or supplement her pleadings to put Google on notice of the claims against it, and she is fully capable of doing so if wants to litigate this case in good faith.  She filed her original complaint on September 17, 2019, (ECF 1),  and amended her complaint to assert discrimination and retaliation claims under Title VII on November 25, 2019, approximately one month after receiving notice of her right to sue from the EEOC.  (ECF 12, ¶ 6.)  Her current request, however, was not so prompt and smacks of gamesmanship.  If she genuinely and in good faith believed that not being considered for a VP Sales role for which she never applied was retaliatory, she should have sought permission to

1

supplement before the parties conducted substantial discovery.

Plaintiff mainly relies on four documents in her Motion to Supplement: (1) the February 2020 email correspondence between her and the executive recruiter, Stuart Vardaman, about a VP Sales role for which Plaintiff now claims she was not "meaningful[ly] consider[ed]" because of her September 2019 complaint, (Pl.'s Mot. to Supp. 4–5; Pl.'s Exh. 8 [ECF 77-5]); (2) Plaintiff's profile in Thrive, one of Google's candidate tracking systems, reflecting feedback about Plaintiff's candidacy for the Head of Financial Services position, the position Plaintiff alleges was given to a "less-qualified man" in early 2019, (Pl.'s Mot. to Supp. 3, Pl.'s Exh. 5; *see also* Amended Complaint [ECF 12], ¶ 41); (3) an email from Mr. Vardaman to one of the individuals interviewing Plaintiff for the Head of Financial Services position, (Pl.'s Mot. to Supp. 3; Pl.'s Exh. 4 [ECF 77-2]); and (4) notes indicating that Employee Relations interviewed Mr. Vardaman in January 2020 concerning Plaintiff's complaint filed in September 2019. (Pl.'s Mot. to Supp. 2–3, Pl.'s Exh. 2.)[1]

As a participant in the communication, Plaintiff was aware of her correspondence with Mr. Vardaman in February 2020, before the parties engaged in discovery. If the Court accepts the facts in her proposed supplemental complaint as true, she knew as early as February 25, 2020, that she would not be considered for the VP Sales role. (Pl.'s Exh. 1 [ECF 77-1], ¶ 12.) She could have supplemented her complaint that very day or shortly thereafter, but did not.

Plaintiff includes the remaining documents in her Motion to Supplement for the pretextual purpose of justifying her delay. Mr. Vardaman's 2018 email to one of Plaintiff's interviewers for the Head of Financial Services position and Plaintiff's Thrive profile were produced to Plaintiff on January 7, 2020, and June 3, 2020, respectively. (Declaration of Sara B. Tomezsko, ¶¶ 3, 4.)

---

[1] Plaintiff submitted Exhibits 2 and 5 to the Court via email on December 16, 2020. (Tomezsko Decl. ¶ 7.) Google moved to retain the documents or portions thereof under seal on December 23, 2020. (ECF 85.)

2

To the extent they add any value to Plaintiff's current submission or actually informed her decision to supplement, which is doubtful, she could have done so at least six months ago, before depositions proceeded in the case.

Plaintiff's supplemented allegations, however, make no reference to the Thrive profile or the 2018 email, which suggests they are not at all material to her motion. (*Compare* Pl.'s Mot. to Supp. 3 *with* Pl.'s Exh. 1.)  These documents relate to Plaintiff's candidacy for the Head of Financial Services role, not the role Plaintiff now claims she was denied in 2020.  They were created or updated in August 2018 and January 2019, respectively. (*See* Pl.'s Exh. 5, 8.)  They are immaterial to and temporally far removed from the alleged retaliatory act in February 2020.

Plaintiff knows that these documents reveal nothing of relevance to the newfound retaliation claim.  She deposed the executive recruiter about their contents on November 17, 2020. (*See generally* Exh. 1, Deposition of Stuart Vardaman ["Vardaman Dep."].)[2]  As he explained, the email to the interviewer (Pl.'s Exh. 8) was a routine communication "to help the candidates put their best foot forward so that a panel member could read some of this and say okay, I am – I am interested in meeting this candidate. . . ." (Vardaman Dep., 65:3–67:6.)  The fact that the Thrive profile (Pl.'s Exh. 5) identified a lack of "Googleyness"[3] as the reason she was not selected for the Head of Financial Services role is equally insignificant; this rationale is one selection in a drop-down menu in the Thrive system, and Plaintiff's status as "Rejected" reflects the fact that the search was cancelled with no incumbent selected. (*Id.*, 116:6–118:4.)  Neither of these documents

---

[2] Plaintiff also submitted to the Court via email on December 16, 2020, excepts of Mr. Vardaman's deposition as Exhibit 3 to her Motion to Supplement. (Tomezsko Decl., ¶ 7.) As Google explained in its December 23, 2020, Motion to Retain Documents Under Seal, Google had previously agreed to waive confidentiality of the pages of the Vardaman deposition it had the opportunity to review before Plaintiff filed her motion, and does not seek to retain the excerpts submitted by Plaintiff under seal. (ECF 86 at 5.)

[3] "Googleyness" reflects a willingness and ability "openly and actively work[] across the organization regardless of level [of seniority]." (Vardaman Dep., 70:8–22.)

even remotely suggests discriminatory or retaliatory animus, nor could they. Mr. Vardaman was unaware that Plaintiff had engaged in protected activity during or following her candidacy for the Head of Financial Services role.[4]  (Vardaman Dep., 108:16–109:17 (Mr. Vardaman was unaware that Plaintiff had raised a complaint of discrimination or a concern about being hired at a lower level as compared to her male peers, or that Employee Relations was investigating Plaintiff's concerns).)

There is another obvious reason why Plaintiff's supplemental pleading includes nothing about the Thrive profile and the comments therein: it undermines her allegations that Mr. Vardaman was motivated by retaliatory animus when he made similar statements to Employee Relations in January 2020.  Assuming Mr. Vardaman described Plaintiff as "abrasive," "cantankerous," and "bristly" in his January 2020 interview with Employee Relations (Mr. Vardaman does not recall using those words), (Vardaman Dep., 111:6–112:6; Pl.'s Exh. 2), those entered feedback in Thrive referring to Plaintiff as "overly self-oriented" and having "ego concerns."  (Pl.'s Mot. to Supp. 3; Pl's Exh. 5.)  Mr. Vardaman's opinions of Plaintiff in January 2019—before he learned that she engaged in protected activity—and in January 2020—when he was interviewed by Employee Relations—were consistent, and not motivated by any protected activity that occurred in the interim.

Plaintiff also knows exactly why Mr. Vardaman described her in this manner, although she does not bother to include this portion of his testimony in her submission.  Plaintiff spoke down and condescended to Mr. Vardaman during their interactions in 2018, when he was working with

---

[4] Portions of the Vardaman transcript cited for the proposition that "Mr. Vardaman was aware that the ER investigation related to Ms. Rowe and her consideration for the VP Financial Services role," (Pl.'s Mot. to Supp. 3), makes clear that he is referring to his interview with Employee Relations in January 2020, at which time he surmised that the discussion was <u>about Plaintiff</u>, not necessarily that she had made a complaint of discrimination.  (Vardaman Dep., 46:15–24; Pl.'s Exh. 2 (reflecting January 2020 dates for the interviews of Mr. Vardaman).)

Tariq Shaukat to staff the Head of Financial Services role. (Vardaman Dep., 68:23–70:25.) Mr. Vardaman felt "dismissed" by Plaintiff in their interactions. (*Id.*) She is fully aware that this is what Mr. Vardaman was alluding to in his interview with Employee Relations in January 2020. (*Id.*, 68:23–70:25; 110:19–22.)

Even if Plaintiff believes that the terms "abrasive" and "bristly" reflect Mr. Vardaman's gender or retaliatory animus towards her,[5] it still does not explain why she waited so long to seek leave to supplement her complaint. These Employee Relations investigation notes were produced to Plaintiff on July 10, 2020. (Tomezsko Decl., ¶ 2.) She could have sought to supplement her complaint based on this document months ago, before the parties engaged in depositions, to allow Google to fully and fairly explore the substance of this claim.

The content of Plaintiff's proposed supplemented complaint is taken directly from documents that were either in Plaintiff's possession since February 2020 or were produced to Plaintiff at least five months ago. Plaintiff did not need to depose Mr. Vardaman about any of these documents to seek leave to supplement.[6] Accordingly, her alleged need to conduct additional discovery through and including Mr. Vardaman's deposition on November 17, 2020, cannot justify her delay in seeking to supplement her complaint.

### B. Google Has Been And Will Be Prejudiced If Plaintiff's Request Is Granted.

The manner in which Plaintiff has conducted this litigation, lying in wait to supplement her

---

[5] It defies reason to conclude, as Plaintiff has, that Mr. Vardaman harbored a bias against women. He helped hire a woman into the same VP Sales role Plaintiff claims she was denied. (Vardaman Dep., 140:14–19; Rowe Dep., 289:24–292:10.)

[6] To be sure, Plaintiff includes an allegation that Mr. Vardaman "understood that he was being interviewed in connection with claims of discrimination that Plaintiff had asserted," (Pl.'s Exh. 1 [ECF 77-1], ¶ 7), but certainly the substance and subject matter of the questions posed by Employee Relations was sufficient for Plaintiff to make such an assertion on "information and belief" only. Plaintiff alleges Google's and Mr. Vardaman's perceived retaliatory intentions on information and belief; she could have just as easily made a similar allegation with respect to what Mr. Vardaman understood the January 2020 interviews with Employee Relations to be about.

5

complaint until the parties were approaching the close of discovery, has resulted in prejudice to Google. The first time Plaintiff even mentioned the VP Sales position was around 3:45 p.m. on October 13, 2020, when Google was busy preparing for Plaintiff's deposition the following morning. (Tomezsko Decl., ¶ 8, Exh. A.) Plaintiff requested that Google produce "gHire feedback and information relating to those who applied, interviewed, and ultimately were selected for the [VP Sales] role," along with several other discovery items.[7] (*Id.*)

In her deposition on October 14, 2020, Plaintiff mentioned in passing that she "raised her hand" for the VP Sales role and was not considered. (Exh. 2, Deposition of Ulku Rowe ["Rowe Dep."], 161:2–162:21.) Google briefly questioned Plaintiff about the VP Sales role based on the limited information about the position adduced through discovery. (*Id.*, 289:24–296:22 (together with 161:2–162:21 representing the entirety of examination on the topic).) Plaintiff admitted that after speaking with Mr. Vardaman about the position in February 2020, she took no further action and did not follow up with the hiring manager who had made her aware of the open role in the first instance. (*Id.*, 291:24–292:2.)

Google responded to Plaintiff's October 13, 2020, email on October 16, 2020, after Plaintiff's and Tariq Shaukat's depositions were completed. (Tomezsko Decl., ¶ 8, Exh. A.) Defendant noted that Plaintiff testified a few days prior that she did not apply for the VP Sales role, was never formally interviewed, and therefore could not demonstrate she was denied the role because of her sex. (*Id.*) If Plaintiff were to assert a retaliation claim based on those events (which, at that point, she had not done), Defendant would be willing to discuss a more limited production of relevant documents. (*Id.*) Plaintiff did not respond to this offer in the weeks that followed.

---

[7] Plaintiff identified for production a portion of the email thread submitted as Plaintiff's Exh. 8, through the communication on February 5, 2020, on May 15, 2020. (Tomezsko Decl. ¶ 6.) She made no mention of the document's significant until October 2020. Google produced the full mail communication thread on September 16, 2020, in response to an unrelated discovery request. (*Id.*)

6

Given the promptness with which Plaintiff amended her original complaint in November 2019, it was not unreasonable for Google to assume that she would act with similar diligence again if she were going to supplement at all. She did not, nor did she give any indication she was planning to.

It was not until after Mr. Vardaman's November 17, 2020, deposition, at around 6:00 p.m. the evening before Thanksgiving that Plaintiff resurrected her discovery request for documents concerning the individuals considered for and hired into the VP Sales role. (Tomezsko Decl., ¶ 9, Exh. B.) The parties met and conferred about the disputes raised in Plaintiff's November 25, 2020, correspondence, including the request related to the VP Sales role. (*Id.*, ¶ 10.) When Defendant noted the absence of allegations in the Amended Complaint to support her discovery request, Plaintiff indicated—for the first time—that she intended to supplement her complaint with additional facts. (*Id.*) On December 10, 2020, Plaintiff finally filed her letter requesting a pre-motion conference seeking leave to supplement, just 13 days before the parties' deadline to submit pre-motion letters requesting leave to file motions for summary judgment. (ECF 73; *see also* Memorandum Endorsement Setting Deadlines To Complete Discovery [ECF 61] (identifying December 23, 2020, as the deadline to submit letters requesting leave to file motions for summary judgment).)[8]

Had Defendant been given meaningful notice of Plaintiff's newfound retaliation claim, it would have explored that allegation at Plaintiff's deposition more fully. Given the seemingly minimal importance placed on the relevant documents and events up to that date, it is not surprising that Plaintiff's testimony about the subject spanned less than 10 pages of transcript. Defendant should have had the opportunity to request further discovery from Plaintiff concerning the allegations in her proposed supplemented complaint, either at deposition or through other

---

[8] The deadline to submit letters requesting leave to file motions for summary judgment has since been stayed pending the resolution of this and other pending motions. (ECF 83.)

discovery, including: Plaintiff's conversations with the hiring manager about the VP Sales role, (Pl.'s Exh. 1 [ECF 77-1], ¶ 8); what other conversations she may have had with individuals other than Mr. Vardaman or the hiring manager about the role; why she believed she was qualified for the role, (*id.*, ¶ 13); what steps she took, if any, to apply for the position both before and after her discussions with Mr. Vardaman in February 2020; why, if she believed the failure to consider her for the role was retaliatory, she did not raise a complaint to Employee Relations or anyone else at Google about this conduct.  If Plaintiff's request to supplement is granted, Google will have missed the opportunity to fully and fairly explore her retaliation claim and develop its defenses.

### C. Plaintiff's Amendment Is Futile Because She Does Not Allege She Actually Applied for the Position.

Nowhere in Plaintiff's proposed supplemented complaint does she assert that she applied for the VP Sales role or put herself under formal consideration.  (*See generally* Pl.'s Exh. 1.) According to Mr. Vardaman, as a Google employee Plaintiff should have known that she could apply for the position on GRO, Google's intranet site where employees may apply for internal job postings.  (Vardaman Dep., 20:7–10, 138:14–25.)  Regardless of the statute under which Plaintiff asserts retaliation claims, she must establish some causal connection between the alleged adverse employment action and her engagement in protected activity.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60, 133 S. Ct. 2517, 2532-33 (2013) (Title VII retaliation claims require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 246-47 (E.D.N.Y. 2014) (same but-for standard applies to NYSHRL retaliation claim); *Krasner v. City of New York*, 580 F. App'x 1, 3–4 (2d Cir. 2014) (summary order) ("[A] defendant is not liable [under the NYCHRL] if the plaintiff fails to prove the conduct is caused at least in part by … retaliatory motives.") (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.* 715 F.3d 102, 113 (2d Cir.

2013)); *Pfeiffer v. Lewis Cty.*, 308 F. Supp. 2d 88, 106–07 (N.D.N.Y. 2004) (causal connection between protected activity and adverse employment action required to state *prima facie* claim of retaliation under Equal Pay Act).

If Plaintiff never applied, however, she cannot possibly prove that her September 2019 complaint was the but-for or even a motivating factor in her failure to secure the role. An employee cannot claim she was harmed by an employer's failure to hire her into a role for which she does not apply. *Accord Gupta v. New York City Sch. Const. Auth.*, No. 04 CV 2896 NGG LB, 2007 WL 1827418, at *7 (E.D.N.Y. June 25, 2007), *aff'd*, 305 F. App'x 687 (2d Cir. 2008) (granting summary judgment for employer on plaintiff's retaliation claim where plaintiff failed to apply for the role he claims he was denied on the basis of his protected activity; "[q]uite simply, plaintiff cannot claim retaliation based on defendant's failure to rehire him for a position he admits he did not apply for") (citations omitted); *Easterling v. Connecticut*, 356 F. Supp. 2d 103, 107 (D. Conn. 2005) (granting summary judgment for employer on plaintiff's Title VII retaliation claim; plaintiff could not be rejected from a position for which she did not apply). Plaintiff cannot cure this deficiency in her complaint by pleading that she did apply, because she admitted under oath she did not. (Rowe Dep., 289:24–292:2.) Plaintiff's failure to allege this fact in her proposed supplemented complaint is fatal to her claim; it would not withstand a motion to dismiss, and her proposed supplement would be futile.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's request for leave to supplement her complaint, made months after she became aware of the facts underlying that claim and after Google's opportunity to meaningfully explore that potential claim through discovery had elapsed, should be denied.

Dated:  Jersey City, New Jersey
       December 29, 2020

PAUL HASTINGS LLP

By:  *(signature)*
    Kenneth W. Gage
    Sara Tomezsko

200 Park Avenue
New York, NY  10166
Tel:  (212) 318-6000
Fax:  (212) 319-4090
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant*
GOOGLE LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 29th day of December, 2020, I caused a true and exact copy of the foregoing DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT PLEADINGS and all supporting documents thereto to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Jersey City, New Jersey
December 29, 2020

_____
Sara B. Tomezsko