# Exhibit 2



Advocates for Workplace Fairness

Cara E. Greene, Esq.
CEG@outtengolden.com

November 25, 2020

**Via Email: kennethgage@paulhastings.com**
Kenneth D. Gage, Esq.
Paul Hastings LLP
200 Park Ave.
New York, New York 10007

Re:   *Rowe v. Google LLC*, Case No. 19-cv-08655 (LGS)(GWG)

Dear Mr. Gage:

We write to address two related topics concerning the parties' outstanding discovery issues: Defendant's Objections and Responses ("Responses") to Plaintiff's Second Set of Interrogatories ("Interrogatories") and Plaintiff's identification of comparators following the depositions of Google's 30(b)(6) designees. Plaintiff seeks supplementation of Defendant's Responses to Plaintiff's Interrogatories and supplemental production of comparator information and data in accordance with the Court's May 14, 2020 guidance, *see* ECF No. 39.

### I.    Plaintiff's Identified Comparators

Plaintiff filed a letter motion on April 21, 2020 regarding several discovery disputes relating to ESI, comparator evidence, and complaints of discrimination. Following a discovery conference on May 14, 2020, the Court ordered Defendant to produce snapshots regarding L8 and L9 employees in Eng/Ops in Google Cloud U.S. for 2017, 2018, and 2019. The Court further stated that following the 30(b)(6) depositions, the parties would further meet and confer regarding the scope of additional comparators and Defendant's production of additional information responsive to Plaintiff's discovery requests as to those individuals. (ECF No. 41, Transcript of May 14, 2020 Hearing at 11:2-24). Counsel for Plaintiff has now completed the depositions of Google's two 30(b)(6) designees, Adam Leif and Kevin Lucas, regarding the comparability of certain Engineering job positions in Google Cloud.

Following Plaintiff's review of the documentary evidence and deposition testimony offered to date, Plaintiff confirms her identification of the twelve Engineering ("Eng") positions previously identified, with the addition of two roles, the Global Client Lead, and Global Client Technical Lead, as comparators. Specifically, Plaintiff identifies all Directors (levels 8 and 9) employed by Google in one or more of the following positions within Google Cloud:

New York   685 Third Avenue   25th Floor   New York, NY 10017   Tel (212) 245-1000   Fax (646) 509-2060
Chicago   161 N Clark Street   Suite 1600   Chicago, IL 60601   Tel (312) 809-7010   Fax (312) 809-7011
San Francisco   One Embarcadero Center   38th Floor   San Francisco, CA 94111   Tel (415) 638-8800   Fax (415) 638-8810
Washington, DC   601 Massachusetts Ave NW   Second Floor West Suite   Washington, DC 20001   Tel (202) 847-4400   Fax (202) 847-4410

www.outtengolden.com

Kenneth Gage, Esq.
November 25, 2020
Page 2 of 8

- Application Engineer I
- Application Engineer II
- Director, SWE
- Director, Product Management
- Director, Technical Solutions Consultant
- DNU – Director, Software Engineering
- Principal Software Engineer
- Director, SWE (8319)
- Director, Product Management (5013)
- Director, Technical Solutions Consultant (5566)
- Distinguished Software Engineer
- DNU – Director, Software Engineering (3414)
- Global Client Technical Lead
- Global Client Lead

A.  **Eng Comparator Roles**

The documents and testimony support that the twelve Eng positions are comparable to Plaintiff's positions and are relevant to Plaintiff's equal pay and/or discrimination claims. These positions entailed equal work requiring equal skill, effort, and responsibility, and performed under similar working condition. *See* N.Y. Labor Law § 194 (1). The fact that individuals in these positions have different job titles or are in different families is irrelevant for determining whether these positions are "substantially similar" under New York's Equal Pay Law. *Id.*; *see also*, *e.g.*, *Moccio v. Cornell Univ.,* 889 F.Supp.2d 539, 569 (S.D.N.Y. 2012) (quoting *EEOC v. Port Auth. of N.Y. & N.J.,* 2012 WL 1758128, at *3 (S.D.N.Y. May 17, 2012)) ("In determining whether two positions are substantially equal in skill, superficial comparisons based on job title or code are insufficient.") (internal quotation marks omitted); *see also Corpes v. Walsh Construction Co.*, 2015 WL 5331725, at *5 (D. Conn. Sept. 14, 2015) (denying summary judgment for employer who argued that differing job titles, resumes, and past experiences of plaintiff and her male comparators evidenced that work was not substantially equal).

Following is just some of the evidence supporting Plaintiff's position:

- Google did not differentiate between these roles in its hiring rubrics, and used the Engineering-wide Leveling Guide (Pl. Ex. 6), as well as the Google Leadership rubrics (Pl. Ex. 11) for hiring into these positions.
- Mr. Lief testified that the Engineering-wide Leveling guide accurately reflected the skills and expectations across all Eng roles, regardless of ladder. (Lief Tr. 94:2-5). Mr. Lucas similarly testified that he was not aware of any differences in leveling guidelines that applied to the other Eng roles above. (Rough Lucas Tr. 41:23-42:2).
- Mr. Shaukat testified that it was "normal course of business within Google" for individuals in Eng Director roles to move into other ladders and that Eng directors had transferable skills that facilitated internal mobility. (Shaukat Tr. 87:19-90:5).

Kenneth Gage, Esq.
November 25, 2020
Page 3 of 8

- Mr. Grannis testified that it was critical for those in the TSC role to have engineering skills, that the role required a heavy emphasis on engineering, and that the TSC role participated in the larger engineering organization. (Grannis Tr. 25:2-16)
- Mr. Lief testified that every single skills and experience requirement listed for the TSC role was also applicable to another Eng role, AE I and II (Pl. Ex. 61). Mr. Lief similarly testified as to overlap in job responsibilities between the TSC role and the AE role, such as working directly with customers and stakeholders, engaging in whiteboarding sessions, identifying friction points in design, development, and deployment from stakeholders' perspectives, and collaborating across functional and product area boundaries within Google. (Rough Lief Tr. 56:8).
- Mr. Lief testified that it was common for individuals to move across ladders within Eng, (Rough Lief Tr. 106:11-108:17) and stated that different job ladders within Eng had transferable skills (Rough Lief Tr. 109:2-4). Mr. Lief also stated that employees across Eng would serve on hiring committees and promotion committees for all Eng roles above Level 8 (Rough Lief Tr. 120:24-121:4). Mr. Lief himself had served on hiring panels and promotion committees for other Eng roles, such as SWE Director, Program Managers, and Technical Program Managers. (Rough Lief Tr. 128:20-129:6).
- Three individuals in the TSC ladder – Evren Eryurek, Ben Wilson, and Nicholas Harteau – subsequently transferred into other ladders, such as Product Management (PM) and Software Engineering (SWE). (*See, e.g.,* GOOG-ROWE-00059686, GOOG-ROWE-00060436). Melissa Lawrence supported Mr. Harteau's transfer without having him interview for the role (GOOG-ROWE-58806). Mr. Grannis testified that he had viewed at least some of Mr. Harteau's skills in TSC as transferrable to the SWE role. (Grannis Tr. 115:15-18) and Mr. Eryurek's skills transferrable from the TSC to PM role (Grannis Tr. 122:7-13).

  **B.** **Global Client Technical Lead & Global Client Lead**

In addition to the twelve Eng roles, the Global Client Technical Lead ("GCTL") and Global Client Lead ("GCL") positions are also comparable to Ms. Rowe's positions for purposes of equal pay and/or discrimination claims. Following is just some of the evidence supporting Plaintiff's position:

- After Ms. Rowe transferred out of OCTO and into Tariq Shaukat's organization in or around June 2018, Google communicated that she would "continue doing the role you're doing" as a Global Client Technical Lead (Pl. Ex. 29, 31).
- Mr. Shaukat testified that he met with Ms. Rowe to discuss the new role, explaining that the GCTL's on his team "would be peers of the GCL's, as we referred to them Global Client Lead." (Shaukat Tr. 95:10-11). Mr. Shaukat further explained to Ms. Rowe that he was "expecting her to come in and build a team and lead a team of global client leads." (Shaukat Tr. 98:2-4). In addition to managing the GCLs, she also had "a certain number of accounts she was personally responsible and accountable for." (Shaukat Tr. 98:5-8).
- Ms. Rowe was moved into the GTCL role alongside Evren Eryurek, Ben Wilson, and Jeff Kember, and Mr. Shaukat represented that at least two individuals,

- Carlos (last name unknown) and Kanai (last name unknown) were later moved into the GCTL role. (Shaukat Tr. 204:3-9). The GCLs consisted of Anil Jain, Caleb Weinstein, Paul Torrey, Amy Waldron, Shweta Maniar, Dominick We, and Tais O'Dwyer. (Shaukat Tr. 204:17- 205:20).
- In his interview with Employee Relations, Mr. Shaukat indicated that the GCTL was the technical peer of the GCL role. (Pl. Ex. 51).

It is clear that the GCT and GCTL roles were substantially similar, as Mr. Shaukat testified that the only difference between the two was that the GCTL role was "a more technical version versus the business version." (Shaukat Tr. 202:17-19). Accordingly, Plaintiff is entitled to comparator information for the above individuals and any others who held the GCTL and GCL roles during the time Ms. Rowe worked in that role under Mr. Shaukat. *See Akinyemi v. Chertoff*, No. 07 Civ. 4048, 2008 WL 1849002, at *5 (S.D.N.Y. Apr. 25, 2008) ("Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated.").

Accordingly, Plaintiff seeks the supplementation of Defendant's prior discovery responses as they pertain to these fourteen positions. Specifically, Plaintiff requests that Defendant produce responsive information for individuals in these positions, in both Level 8 and Level 9, including, but not limited to compensation data, resumes, offer letters, gHire feedback, offer packets, gComp data, and performance reviews (in color).

## II. Defendant's September 23 and November 4 Objections and Responses to Plaintiff's Second Set of Interrogatories

In addition, we wish to raise several deficiencies in Defendant's Responses to Interrogatories, as well as categories of discovery that must be supplemented in light of the above comparator list. On August 17, 2020, Plaintiff served her Second Set of Interrogatories. On September 23, Defendant provided its Responses to Plaintiff's Second Set of Interrogatories. On October 19, the parties met and conferred regarding a number of upcoming discovery deadlines and Plaintiff's intent to proceed with the deposition of Diane Greene. On this call, counsel for Plaintiff informed Defendant of their intent to proceed with the deposition of Diane Greene and raised a number of initial deficiencies with Defendant's Responses, including the lack of verification for those Responses. Additionally, counsel for Plaintiff previewed their intent to request revised responses and supplemental production with respect to certain categories of information. On November 23, Defendant circulated a second version of its prior Responses with additional verifications, but failed to amend or supplement its prior responses as required by the Federal Rules.[1] Plaintiff now writes address these outstanding deficiencies.

### A. Interrogatories Seeking Information and Documentation Related to Comparators

---

[1] To date, Defendant has not provided verification for Interrogatory Response No. 19. Accordingly, Plaintiff requests that Defendant submit the appropriate verification, promptly.

Plaintiff propounded several requests in her Second Set of Interrogatories seeking information and documentation related to the issue of Plaintiff's comparators. On September 23, and again on November 4, in response, Defendant "object[ed] to Interrogatories that call for information concerning alleged 'Comparators' . . . because the parties have not yet completed the process outlined by the Court to identify Plaintiff's alleged comparators, if any." To avoid this type of overbroad categorical objection from Defendant regarding comparator-related information, Plaintiff included a footnote in her Interrogatories to acknowledge that comparator "had not yet *fully* [been] determined . . . which will be established following the 30(b)(6) deposition," but proceeded to request relevant information to enable her to make that final determination. Contrary to Defendant's representation, the footnote was not an "admission" that such requests were propounded prematurely, but instead, an acknowledgment that Plaintiff's comparator analysis was still on-going as Defendant continued to provide relevant information to inform Plaintiff's determination. Nothing in the Court's Order prohibited Plaintiff from seeking relevant comparator information throughout the process once in receipt of sufficient evidentiary support to her identification of a job position and/or individual as comparable. Surely by November 4, 2020, Defendant could not have meaningfully asserted that Plaintiff's request for comparator-related information was still improper, knowing that the deposition of Google's last 30(b)(6) designee occurred six days prior. Nevertheless, to avoid any further uncertainty regarding the propriety of Plaintiff's requests for comparator information, Plaintiff herein provides Defendant with a list of comparators.[2]

### i. Requests for Policies, Rubrics and Guidelines Related to Comparator Positions

Among other categories of information withheld by Defendant on this basis, Plaintiff requests that Defendant amend its Responses to Interrogatory 15 (seeking compensation policies, guidelines and rubrics) and Interrogatory 17 (seeking leveling policies, guidelines and rubrics) and produce all related documentary evidence not yet produced. While Plaintiff acknowledges receipt of some rubrics or guidelines applied to Google's compensation and leveling processes, Plaintiff calls for the production of all compensation and leveling rubrics used in the compensation setting process and leveling at hire process for Plaintiff's identified comparators.

With respect to Interrogatory No. 17, Defendant asserts that "this information is more appropriately obtained through deposition." However, Plaintiff's Request No. 17, and others which instruct Google to identify and produce relevant documentation, falls squarely within the parameters of Local Rule 33.3(a) as a request for a "general description of relevant documents." Compliance with this request requires minimal effort by Defendant to identify and describe the requested policies, guidelines, and rubrics, should they exist, which are clearly relevant to Plaintiff's comparator analysis and essential to her claims. Moreover, the requested information is not readily attainable through deposition testimony, given the detail and specification of each rubric or guideline. The inefficiency of a deposition to gather this information was exemplified during the deposition of Kevin Lucas, who struggled to recall with accuracy the details of

---

[2] Plaintiff reserves the right to amend or supplement the aforementioned list of comparators before the close of discovery.

Kenneth Gage, Esq.
November 25, 2020
Page 6 of 8

relevant hiring rubrics or guidelines and their use across L8/L9 Eng positions. Therefore, Plaintiff requests that Defendant revise its Responses to provide a description of Google's guidelines or rubrics used during the leveling process at hire and produce any related documentation. Plaintiff notes that, production of this information, if it exists, is not overly burdensome to Defendant, as prior deponents report that internal leveling rubrics are readily obtainable and frequently provided to individuals involved in the initial leveling process. Further, this information is relevant and pertinent to *this* stage of the discovery process to enable Plaintiff to finalize her comparator analysis prior to the close of fact discovery.

### ii. Request for Information Regarding Qualifications at Hire

Interrogatory No. 19 seeks information related to an applicant's qualifications at hire for the identified comparators, with the exception of the Global Lead and Global Technical Lead position, which Plaintiff has now confirmed following the 30(b)(6) depositions. In response, Defendant raises a number of objections and refuses to provide any additional information regarding the job qualifications for this position.

Defendant reasserts its objection regarding the "premature" nature of the request, but as previously addressed, Plaintiff's request is appropriate at this stage of the discovery proceedings. Having confirmed the list of comparators, Defendant's objection regarding the prematurity of the request is no longer applicable. Second, Defendant argues that the information sought is most appropriately obtained through deposition, however, Google's 30(b)(6) designees were unable to speak to the qualification for each job position with specificity, therefore, Plaintiff's interrogatory request and related request for production of documents demonstrating those qualifications is appropriate here. Lastly, Defendant objects to the scope of the request, but similarly, this objection is no longer applicable where Plaintiff's list of comparators has been confirmed.

In response, Defendant points Plaintiff to the previously produced snapshot (GOOG-ROWE-00058501), which purports to contain some information related to the qualifications of certain job positions within Plaintiff's confirmed comparator list. However, this information contained in this document is wholly deficient. The vast majority of the cells under the "ghire_preferred_qualifications_concat" and "ghire_minimum_qualifications_concat" contain the term "null" and do no provide Plaintiff with any information regarding the qualification for these positions. Accordingly, Defendant must produce what documentation exist, if any, that reflects the job qualifications for the comparator positions listed above. If none exist, please confirm Defendant's admission that it does not maintain a list of job qualifications that are used in the hiring process for the aforementioned comparator positions.[3]

### B. Information Related to Manager and Employee Training

---

[3] Interrogatories 18 and 20, which also related to comparator information will be addressed in Plaintiff's response to Defendant's objection to contention interrogatories.

Kenneth Gage, Esq.
November 25, 2020
Page 7 of 8

   Plaintiff, in Interrogatory No. 16, seeks information related to the training of individuals who were involved in the compensation, leveling, hiring processes of Ms. Rowe and Plaintiff's comparators, identified by Defendant in its Responses to Interrogatories No. 2, 3, and 8. As Defendant acknowledges, its Response to Interrogatory No. 16 is incomplete, as Tariq Shaukat and Will Grannis were not the only individuals identified by Google in Response to Interrogatories 2, 3, and 8. On the parties' October 19 meet and confer call, counsel for Plaintiff previewed this issue with opposing counsel, however no revisions were made in Defendant's November 4 Responses to address this shortfall. As a compromise, Plaintiff will revise her request to include all information related to the training completed by the following individuals, due to their involvement in Plaintiff's hiring, leveling and compensation determinations: (1) Melissa Lawrence; (2) Brian Stevens; (3) Chris Humez; (4) Jenny (Burdis) Anderton; (5) Jason Martin; (6) Vats Srivatsan; (7) Sebastian Marotte; (8) Darryl Willis; (9) Stuart Vardaman; (10) Kevin Lucas; and (11) Diane Greene.

   **C.**  **Objection to Contention Interrogatories Under Discovery Schedule**

   Local Civil Rule 33.3(b) provides that contention interrogatories, like those served on Defendant in Plaintiff's Second Set of Interrogatories, are appropriate where "they are a more practical method of obtaining the information sought than a request for production of deposition." Here, in Interrogatory Nos. 10, 11, 12, 13, 18, and 20, Plaintiff sought information pertaining to Defendant's evidentiary basis for certain assertions related to Plaintiff's claims and her identification of certain comparators. Based on Defendant's production and its prior representation regarding the nature of documentation maintained by Google, the information sought is not maintained in a form that would make a request for production more practical, nor do any of the Google's 30(b)(6) designees possess sufficient knowledge to respond to these requests in their totality, with respect to each of the comparator positions. Thus, the use of a contention interrogatory is appropriate as the most practical means of obtaining the information requested.

   Further, Defendant's argument regarding the propriety of contention interrogatories at this stage of the proceedings is also unpersuasive, given that the parties have substantially completed discovery in the matter at the time of issuance. Defendant argues that contention interrogatories are improperly issued here pursuant to Local Civil Rule 33.3(c), where "the parties have represented to the Court that an extension of the deadline to complete discovery is warranted, and the discovery cut-off is not currently ascertainable."

   However, Defendant's position is clearly belied by the record. At the time Plaintiff's contention interrogatories were initially served, the parties had substantially completed fact discovery. As of November 4, 2020, when Defendant reasserted this position in response to that aforementioned interrogatories, the parties had conducted seven depositions, including both of Google's 30(b)(6) designees, completed fact discovery on September 4, 2020, and the extension request referenced in Defendant's objection had been made and granted a month prior to

Defendant's November 4 submission.[4] Therefore, Plaintiff's request is clearly within the time frame outlined under Local Civil Rule 33.3(c) as the parties has substantially completed initial stages of discovery and the discovery cut off has been clearly set forth in the Court's October 1, 2020 Order granting the parties' requested for an extension of the discovery schedule.

Accordingly, Plaintiff reasserts its request for the information sought in Interrogatory Nos. 10-13, 18 and 19.

### III. Other Outstanding Discovery

Plaintiff reiterates her request for all documentation, including but not limited to compensation data, resumes, offer letters, gHire feedback, offer packets, gComp data, and performance reviews, related to the hiring, leveling, and compensation setting processes for those individuals considered for and selected for the Financial Services, Vertical Lead – Sales position, for which Plaintiff was qualified and sought consideration.

\*   \*   \*

Please let us know your availability for a call next week for a meet and confer on the above topics, as instructed by the Court's May 14 Order.

Sincerely,

Cara E. Greene

Enclosures

cc: Maya S. Jumper, Esq.
Shira Z. Gelfand, Esq

---

[4] On October 1, Judge Gorenstein approved the parties' modified schedule which clearly set out a final date for the conclusion of fact discovery. *See* ECF No. 60.