```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                          :
                                    Docket #1:19-cv-08655-
 ROWE, ULKU,                    : LGS-GWG

                Plaintiff,      :

  - against -                   :

 GOOGLE LLC,                    : New York, New York
                                  January 5, 2021
                Defendant.      :
                                  TELEPHONE CONFERENCE
------------------------------------ :


                   PROCEEDINGS BEFORE
           THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          OUTTEN & GOLDEN, LLP
                        BY:  CARA ELIZABETH GREENE, ESQ.
                             MAYA JUMPER, ESQ.
                             SHIRA GELFAND, ESQ.
                        685 Third Avenue, 25th Floor
                        New York, New York 10017
                        212-245-1000


For Defendant:          PAUL HASTINGS LLP
                        BY:  SARA BRADY TOMEZSKO, ESQ.
                        200 Park Avenue
                        New York, New York 10166
                        212-318-6000



Transcription Service: Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES CONTINUED:

For Defendant:             PAUL HASTINGS LLP
                           BY:  KENNETH WILLIAM GAGE, ESQ.
                           191 North Wacker Drive 30th Floor
                           Chicago, Illinois 60606
                           312-499-6046

## **INDEX**

### **E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### **E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    4

 2             THE CLERK:  In the matter of Rowe v. Google, LLC,

 3   docket number 19-cv-8655.

 4             Counsel, please state your appearances, starting

 5   with the plaintiff.

 6             MS. CARA GREENE:  Cara Greene of Outten & Golden

 7   for the plaintiff. And with me today is Maya Jumper and

 8   Shira Gelfand.

 9             MS. SARA TOMEZSKO:  And for Google this is Sara

10   Tomezsko of Paul Hastings.  And I'm joined by Ken Gage of

11   Paul Hastings, as well.

12             HONORABLE GABRIEL W. GORESNSTEIN (THE COURT):

13   I'm sorry, what's your name?

14             MS. TOMEZSKO:  Sara Tomezsko from Paul Hastings on

15   behalf of Google.

16             THE COURT:  Okay. I didn't see your name in the

17   letter, so spell your last name, please?

18             MS. TOMEZSKO:  Sure. It's T as in Tom, o-m, as in

19   Mary, e as in Edward, Z as in Zulu, S as in Sam, K as in

20   kangaroo, o.

21             THE COURT:  Okay. And you'll be speaking for the

22   defendant?

23             MS. TOMEZSKO:  Yes, your Honor.

24             THE COURT:  And the subpoenaed person. Okay.

25             All right, so we're being recorded. If anyone is
```

| | |
|---|---|
| 1 | PROCEEDINGS                          5 |

2  not actually speaking, they should have their phone on

3  mute, and any recording of this proceeding or dissemination

4  by anyone else is strictly prohibited.

5       All right, we're here based on a letter from

6  Google, I guess on behalf of themselves and Ms. Greene, and

7  a responsive letter from the plaintiff and reply letter,

8  Dockets 62, 65 and 66.

9       I guess we'll -- I know the burden is on the

10  defendants, but you know, this is a Rule 45 subpoena.  And

11  so we're in a slightly different situation, and I have to

12  assure myself there's no undue burden on the person being

13  subpoenaed. And I know they have the burden on it, but I

14  think I probably have more questions right now for the

15  plaintiffs.  So why don't we just start with them, and then

16  I'll hear from the defendants?

17       MS. GREENE:  Yes, your Honor. This is Cara Greene

18  if Outten & Golden again for the plaintiff. I think, you

19  know, what we have here is someone who is a former

20  employee.  And during the time she was employed by Google,

21  she was in a high leadership position. That is not and

22  should not be the, you know, be-all/end-all of the inquiry.

23  The cases that defendant cited in its reply letter are

24  supportive of the fact that highly-placed executives are

25  not immune from discovery, that they're not high-ranking

```
 1                        PROCEEDINGS                    6
```

corporate executives, they're not automatically given

special treatment to excuse them from being deposed.  And

the real inquiry is whether an individual possess relevant

knowledge and whether there's any potential possibility of

harassment or potential disruption of business.

          The case that defendants cite, *Hallmark Licensing*

*LLC v. Dickens* --

          THE COURT:  If I can just take you on another

track --

          MS. GREENE:  Sure.

          THE COURT:  -- I'm not worried about the case law.

The cases are all very fact specific. I'm really trying to

figure out what she has to contribute, and it almost

doesn't matter that she was a high-level executive; I would

do this for any deponent. If they don't have anything to

contribute to a deposition, then I'm unlikely to cause that

deposition to occur. So I think I'd really like to focus on

what her -- what can rationally be expected from the

deposition from her and whether it has anything to do with,

you know, your efforts to pursue your claims in this case.

          So why don't you start with your best-case

scenario in terms of what you have reason to believe she

knows and could offer a deposition that would make it more

likely than not that, you know, your case is the way you

```
 1                          PROCEEDINGS                      7
 2   say it is?
 3            MS. GREENE:  Thank you, your Honor. There is
 4   actually three different buckets of relevant information
 5   that Ms. Greene possesses. The first is relevant to the
 6   hiring and the role of our plaintiff and her comparators in
 7   the --
 8            THE COURT:  Are you talking about her initial
 9   hiring?
10            MS. GREENE:  Correct. And the hiring of the
11   comparators into --
12            THE COURT:  Wait. I've got to do this one piece at
13   a time. So I assume you're starting with your best case,
14   not your chronologically most early case. So if this is
15   your best case, I really want to give you, you know, all
16   the buckets. Let's start with that. So what is it?
17            MS. GREENE:  Well, I'm not sure, then, if we're
18   not going chronologically, let's start with a different
19   bucket.  And that relates to the hiring of the financial
20   services position and Ms. Rowe's complaints related to
21   that, because those two really go together. Ms. Greene was
22   involved in, first of all, setting the priority for the
23   financial services vertical and the hiring for that
24   position. She --
25            THE COURT:  Okay, and you know that --
```

```
 1                         PROCEEDINGS                8

 2           MS. GREENE:  -- interviewed --

 3           THE COURT:  You know that because --

 4           MS. GREENE:  We know that because of --

 5           THE COURT:  -- [indiscernible] testified to it?

 6           MS. GREENE:  -- I'm sorry. Yes, your Honor. I'm

 7  sorry, I don't mean to speak over you. It's hard on the

 8  phone to know --

 9           THE COURT:  Yes, unfortunately, I can't control

10  the phones in my office, so you just have to keep going.

11           MS. GREENE:  Sure. So Mr. Shaukat, who directly

12  reported to Ms. Greene, testified at his deposition that

13  Ms. Greene -- that the financial services vertical was a

14  priority for Ms. Greene, first of all.  Both the testimony

15  of Ms. Greene through her deposition -- through her

16  declaration, as well as Mr. Shaukat testimony, supports

17  that she interviewed the final candidates.  So the VP had a

18  financial services position.  There are documents in the

19  record that evidence that Mr. Shaukat discussed Ms. Rowe

20  with Ms. Greene in connection with the head of financial

21  services position, as well as other candidates for that

22  position.  And again --

23           THE COURT:  Okay, so let's -- you know, I've read

24  the letters very carefully; I've read the declaration

25  several times.  And you're really going to have to make a
```

```
 1                          PROCEEDINGS              9
 2  better case for me, because the mere fact that she, you
 3  know, let's just start with what you started with, you
 4  know, talked about what had to be in the role of the
 5  director of this vertical whatever it is; that's not
 6  terribly convincing to me that she has to be deposed on it
 7  because it doesn't seem like this is an issue that you need
 8  her specific testimony on and that it has any great bearing
 9  on your ability to prove your case. So you need to dig a
10  little into the weeds here, explaining why -- like, what is
11  it she's going to testify that you could reasonably think
12  might be different from what you've already gotten in
13  deposition testimony. Be very specific; like, what -- I
14  know you can only speculate, but at least talk about the
15  areas of knowledge that she's going to have that will, you
16  know, make it easier for you to prove your case.
17          THE COURT:  You're correct that it's without
18  testi -- and deposing her, it's hard to know, but one would
19  assume that what qualifications were relevant to the role,
20  how she was --
21          THE COURT:  Okay, stop, stop, stop, stop. I'm
22  going to do this one piece at a time.  So the
23  qualifications for this position, you think that you have
24  not gotten the full answer from Shaukat as to what the
25  actual qualifications were; there aren't documents on this?
```

```
 1                    PROCEEDINGS                10
 2  They're things that only she would know?
 3              MS. GREENE:  As a decision-maker, as someone who
 4  was devising the strategies for the financial services
 5  vertical, her perception specifically and her unique
 6  viewpoint as to what made a candidate desirable and
 7  qualified is relevant. You know, this is not a situation
 8  where this is a, you know, low-level position that's
 9  being --
10              THE COURT:  Okay, but let's talk about -- I want
11  to ask you why it's relevant because, presumably, whatever
12  she -- she was not -- never in fact made the final decision
13  about this because she left by the time it happened.  So
14  we're talking about something that she was involved in only
15  up to a point, that she communicated to the person who was
16  responsible for, you know, making enormous amounts of
17  judgments about who was going to be a finalist; in fact,
18  the only person [indiscernible] she was responsible in any
19  way for that.  Why does it matter what her vision was?
20              MS. GREENE:  As the person who was making, you
21  know, giving the final sign-off and interviewing the
22  candidates, the final candidates -- and that's an important
23  point -- what the qualifications were matter because, to
24  the extent there's an argument that our client, that
25  defendants have asserted she wasn't qualified, that she was
```

```
 1                            PROCEEDINGS              11
 2   a Level 8, that she didn't have it, if Ms. Greene were to
 3   testify, you know, these are the things that I considered
 4   important:  years of experience and performing in this
 5   financial services industry, connections, whatever those
 6   criteria might be that Ms. Greene was evaluating personally
 7   in reaching a decision about whether someone was a good
 8   candidate for the position.  That provides, then, you know,
 9   criteria against which Ms. Rowe can be measured.  And
10   that's important for purposes of establishing her
11   qualifications, both with respect to the financial services
12   vertical, but also with respect to whether she was
13   operating as someone who was at a Level 9, or perhaps even
14   higher, versus a Level 8.  These claims are all --
15           THE COURT:  Hold on, hold on, hold on. I didn't
16   under the Level 8 [indiscernible]. Tell me about that
17   again.
18           MS. GREENE:  Sure. If I can just back up for a
19   moment, because I think there's some context that will help
20   in this conversation. When it came -- initially Ms. Rowe
21   has challenged the leveling that -- decisions that were
22   made at the time of hire, i.e., that she should have been
23   hired as a Level 9 comparable to the men in the Level 9
24   position, as opposed to the Level 8.  At the time then when
25   the financial services vertical head position was being
```

```
 1                        PROCEEDINGS                    12
 2   hired or recruited, interviewed, etc., Ms. Rowe became
 3   concerned that her leveling as an eight was unfairly
 4   torpedoing her chances for that position; that she was not
 5   being considered based on her true qualifications but on a
 6   level that had been assigned to her improperly --
 7            THE COURT:  Okay.  I do recall this; I just didn't
 8   recall the Level 8 and 9 piece.  That's how I got confused.
 9   Okay, so I remember there were complaints in the email
10   about the initial hiring about the Level 8 or 9. So how
11   does that relate to what you were just talking about?
12            MS. GREENE:  So with respect to the criteria that
13   Ms. Greene was applying or considering in connection with
14   candidates for the head of financial services vertical,
15   that puts out a criteria that's independent of the levels
16   potentially, but also relates to the levels in terms of how
17   Google assessed what level someone was operating at or was
18   working in.  And so here it relates both to Ms. Rowe's
19   qualifications for the head of financial services vertical,
20   whether she was being adequately considered, whether she
21   was the most qualified individual for the position, as well
22   as whether she was properly leveled in the first place.
23   And then Ms. Greene did raise a complaint directly -- I'm
24   sorry, Ms. Rowe did raise a complaint directly to
25   Ms. Greene that she had been improperly leveled and that it
```

 2   was impacting her consideration for the VP of financial

 3   services vertical --

 4              THE COURT:  What does that have to do -- I thought

 5   we were onto something, and now I've lost you. You know,

 6   people complain to higher level people all the time; and

 7   that doesn't mean they have knowledge of anything. So tell

 8   me why that complaint, which I think Greene said she didn't

 9   specifically remember. I don't remember that. But what does

10   that have to do with what we were just talking about?

11              MS. GREENE:  That -- it relates to two things. One

12   is the issue again of the qualifications for the role and

13   whether Ms. Greene or Ms. Rowe met those qualifications and

14   whether Ms. Greene understood her to meet the

15   qualifications. Separately it also relates to what

16   Ms. Greene --

17              THE COURT:  What does it matter if she thought she

18   met the qualifications if she's not the one who made the

19   ultimate decision to fill that position, it happened after

20   she left?

21              MS. GREENE:  At the time -- it goes to whether

22   Mr. Shaukat was operating in a discriminatory fashion in

23   his consideration of Ms. Rowe. Because if you have someone

24   senior to him saying these are the qualifications and

25   objectively Ms. Rowe meets those qualifications and you

```
 1                        PROCEEDINGS              14
```

 2   have Mr. Shaukat saying something different, that

 3   contradictory testimony is evidence of pretext. It

 4   undermines Mr. Shaukat's --

 5         THE COURT:  Okay. So if the Shaukat --

 6         MS. GREENE:  -- testimony on this point.

 7         THE COURT:  Okay. So your hope would -- again,

 8   putting it in the way -- the first hope that would happen,

 9   your hope is that if Rowe testifies, it might be that she

10   will contradict what Shaukat said at his deposition

11   testimony as to what she was expecting for a successful

12   candidate in this position, is that right?

13         MS. GREENE:  Yes, your Honor. And now I understand

14   what you're asking. Yes, Ms. Greene's testimony we hope

15   will provide testimony that contradicts Mr. Shaukat's

16   testimony, creating contradictions that are suggestive

17   pretext, as well as support certain assertions we've made

18   with respect to Ms. Rowe's qualifications for the position.

19         THE COURT:  Okay.  And what about the fact that in

20   her affidavit she says she has no recollection of

21   [indiscernible]?

22         MS. GREENE:  Well, here I think that the case law

23   is important because it supports that someone's

24   statements -- and I'm again looking at the *Hallmark* case --

25   that they don't have unique knowledge of relevant facts or

PROCEEDINGS                15

in this case don't remember that that's subject to testing

by the examining parties. The substitution of a declaration

for deposition testimony without the benefit of the

documents, first of all, that might refresh her

recollection  and, you know, artful questioning that might

solicit testimony that wouldn't be, you know, provided in

the context of a declaration prepared by her own counsel is

supportive of her deposition moving forward.

THE COURT:  Right. I mean, the problem is there's

also case law that talks about, you know, how declarations

disclaiming knowledge in fact are effective, and there's

case law saying that's the sine qua non of winning such a

motion, and motions have been won on that basis.  So it

can't be that it's useless, right? I guess I have to make

some judgment call on it.  But the case law can't be that

it's meaningless to have such a declaration, is it?

MS. GREENE:  I don't think that it's meaningless,

your Honor; but here the declaration outlines and supports

that we're saying with respect to the fact that she does

have relevant knowledge. She's saying I don't remember;

it's not that she's saying I had no connection to these

things.  She's saying she doesn't remember. Here we have

documents that may be helpful in refreshing her

recollection, both with respect to the initial hiring

PROCEEDINGS                    16

1

2  decisions in OCTO as well as with respect to the financial

3  services vertical position as well as Ms. Rowe's complaint

4  of discrimination.  And, you know, we should be able to

5  present her with those documents, ask questions that may

6  refresh her recollection and get her full testimony on

7  these subjects.

8              THE COURT:  Okay. Are you ready to go to another

9  bucket, or is there more in this one?

10             MS. GREENE:  Again, looking at the exhibits that

11  we submitted in connection, there are documents that

12  support our position, so I would just note that for your

13  Honor's consideration.

14             THE COURT:  Are you talking about Exhibits 7, 8

15  and 9?

16             MS. GREENE:  As well as Exhibit 6, your Honor,

17  which is the recruiters --

18             THE COURT:  But, you know, I looked at the -- I

19  saw you cited to 7, 8 and 9, and I was very interested in

20  what they might say.  And I know they're -- I mean,

21  temporarily retrieving them is futile -- but I didn't

22  know -- you didn't cite me -- they're many pages long, and

23  you didn't cite me -- it seems to me you cited me to the

24  first page of each. Is that where I was supposed to be

25  looking?

```
1                          PROCEEDINGS                    17

2             MS. GREENE:  No, I apologize, your Honor, that we

3   didn't --

4             THE COURT:  I didn't see anything there.  So let's

5   just take Exhibit 7. What page should I look at in

6   Exhibit 7, what you were talking about?

7             MS. GREENE:  Yes, your Honor, give me one moment

8   to direct you to that specific page.

9             So with respect to Exhibit 7, if you look at the

10  page Bates stamped GoogRowe0056523.

11            THE COURT:  Okay.  There's a bunch of rows.  What

12  row number should I look at?

13            MS. GREENE:  The final row, dealing with --

14            THE COURT:  Okay. Dealing with -- yes, yes, that's

15  there. Hold on. Hold on. Okay, well, this is one of those

16  two finalists, right?

17            MS. GREENE:  Correct.  And then the next page is

18  another finalist.

19            THE COURT:  So what is this going to -- I mean,

20  what is this going to -- this is already laid out in the

21  letters and I think, conceivably in the declaration of

22  Shaukat, was it not, that these interviews were taking

23  place?

24            MS. GREENE:  Correct.  But this demonstrates that

25  Ms. Greene was really involved in this process, right? The
```

1                           PROCEEDINGS                    18

2  interview request, understanding of the candidates, she did

3  indeed interview them.

4            THE COURT:  No, no, no, I'm asking what this

5  exhibit adds to what was already in the letters and in

6  Shaukat's declaration. That's what I thought you were

7  telling me, was that somehow what we see in here is either

8  going to refresh her in some way that these don't or that

9  it's going to provide additional information that's not

10 already subsumed in Shaukat's declaration. Is there

11 something like that in these exhibits?

12           MS. GREENE:  So, for instance, at Ms. Greene's

13 deposition, asking her -- again, this is a document

14 received, Diana Mayfield, "She was a no quantity.  What

15 does that mean? What did you -- we're very high on her

16 candidacy.  What was your understanding of why they were

17 high on her candidacy?  What were the qualifications that

18 made her, you know, an excellent candidate?  What was

19 communicated to you from Mr. Shaukat about why she was an

20 excellent candidate or why you're high on her candidacy?"

21 Then --

22           THE COURT:  Did you ever ask Shaukat as to how

23 that particular box got worded; was that something he

24 worked or that someone else worded that -- I mean, is there

25 any evidence Greene wrote that?

```
 1                        PROCEEDINGS                 19

 2              MS. GREENE:  Greene did not write this.  This is a

 3    document that was provided to Greene --

 4              THE COURT:  Right. So that's what I'm trying to

 5    understand.

 6              MS. GREENE:  -- from Julie Wong.

 7              THE COURT:  I understand that --

 8              MS. GREENE:  But this is not.

 9              THE COURT:  That's why I'm trying to figure out

10    why this -- it's one thing to ask someone about something

11    they wrote, but it's quite different to ask something about

12    something someone wrote to them. And it's -- what this is

13    something that someone whom you deposed wrote, and that's

14    the person who would know what this meant.

15              MS. GREENE:  Well, that's -- I'm sorry, that's not

16    actually the case. This is an email from Julie Wong, who is

17    not someone we deposed, but she --

18              THE COURT:  Well, okay, we can talk about that.

19    The question is does Ms. Wong, who does she get that from;

20    does she write it herself.  And that, maybe you're telling

21    me that Wong needs to be deposed. That may be a case for

22    Wong. I don't have to worry about that now, but it's not

23    much of a case for Greene.

24              MS. GREENE:  Your Honor, respectfully, the issue

25    with Ms. Greene is to what her understanding was with
```

```
 1                        PROCEEDINGS                  20

 2   respect to why Diane Mayfield was a likely finalist for the

 3   position, what made her qualified.  And, again, I'm

 4   interested in particular in Ms. Greene's understanding,

 5   Ms. Greene's knowledge.

 6             THE COURT:  I understand that. And it would be one

 7   thing if we were in a vacuum of facts here, but I thought

 8   that it had been established that Shaukat chose these

 9   finalists and asked Rowe to interview them.  Was that not

10   established in Shaukat's deposition?

11             MS. GREENE:  Shaukat did ask Ms. Greene to

12   interview these candidates; but, for instance, asking

13   Ms. Greene what Mr. Shaukat communicated to her in

14   connection with that, because they did have conversations

15   around this. My point with respect to this document was

16   that, while Ms. Greene says she may not recollect, when

17   presented with a document like this, do you recall

18   receiving this document? Do you recall that there was an

19   interview request for you to interview Ms. Mayfield? Does

20   that refresh your recollection about why you were asked to

21   interview her?  What was communicated to you at the time

22   you were asked to interview her?

23             THE COURT:  Okay, let's talk about --

24             MS. GREENE:  That's the benefit of this document.

25             THE COURT:  Let's talk about those two things, why
```

```
1                        PROCEEDINGS              21
2    you were asked and what was communicated to you.  The
3    second one perhaps I understand.  Why you were asked, I
4    don't understand, because only Shaukat knows why she was
5    asked. Now, what Shaukat then said to her about Mayfield,
6    obviously, you asked Shaukat or you had the opportunity to
7    ask that. And then in terms of, you know, what he said, now
8    we're back to this hope that, you know, what she remembers
9    may be different from what he recollects.  And I understand
10   that, and I'm still a little concerned about the fact that
11   she said, you know, "I don't have any memory." And it's
12   hard to know why something like this is going to jog her
13   memory when she's already been shown Shaukat's deposition
14   about this sequence of events and it hasn't. I mean, I'm
15   not saying it's impossible, but do you see my problem?
16             MS. GREENE:  Uh --
17             THE COURT:  And can you alleviate it?
18             MS. GREENE:  Your Honor, I would say that there
19   are other documents, as well, including one where
20   Mr. Shaukat communicates to Ms. Greene particularly with
21   respect to Ms. Rowe and her consideration for the role that
22   may -- I think the cumulative impact of these documents may
23   trigger Ms. Greene's memory to the extent that she doesn't
24   independently recall facts between now and the deposition.
25   I've, you know, taken enough depositions to know that when
```

```
 1                        PROCEEDINGS              22
```

 2   someone is sitting there being deposed by the other side,

 3   they sometimes, you know, recollect things that they

 4   independently wouldn't have recollected.

 5            This is -- the prejudice here is very small where

 6   we're talking about a remote deposition that can be

 7   scheduled around Ms. Greene's schedule. It's not a full-day

 8   deposition. I think we've indicated as much to the other

 9   side; and given, you know, that there are discrete buckets

10   of information that she possesses here.  And so, you know,

11   under the circumstances where there are, again, multiple

12   areas of inquiry of which she possesses unique and

13   independent knowledge, where that knowledge may serve to

14   contradict the testimony of Mr. Shaukat and support

15   Ms. Rowe's testimony, the -- I think the balance weighs in

16   favor of the deposition moving forward.

17            THE COURT:  Okay. I haven't finished with the

18   buckets yet. Are we finished with the search for the VP?

19            MS. GREENE:  Again --

20            THE COURT:  Should we --

21            MS. GREENE:  -- beyond what's in the exhibits that

22   are cited in the letter, yes, your Honor.

23            THE COURT:  Okay. So we talked about what's your

24   next best bucket?

25            MS. GREENE:  The next bucket would be with respect

```
 1                          PROCEEDINGS              23
 2   to the hiring of individuals into the OCTO position,
 3   Ms. Greene -- I'm sorry, Ms. Rowe and her comparators.
 4   Ms. Greene concedes that she was involved in the hiring --
 5              THE COURT:  So this goes to Greene's initial hire?
 6              MS. GREENE:  Rowe's initial hire, yes, your Honor.
 7              THE COURT:  I'm sorry, Rowe's initial hire. Okay.
 8   So this is the start of the leveling issue, is that it?
 9              MS. GREENE:  Correct, your Honor.
10              THE COURT:  Okay. Give me a second to look at my
11   notes.
12         Okay, yes, so we had another problem here. You
13   cite to Exhibit 6, and I didn't know what page you were
14   citing to.
15              MS. GREENE:  If your Honor gives me one moment, I
16   can direct to the specific --
17              THE COURT:  Take your time.
18              MS. GREENE:  So, your Honor, if you turn to the
19   page Bates stamped GoogRowe00018000 --
20              THE COURT:  Okay, hold on. Okay.  And where on
21   that page should I look, the one at the bottom?
22              MS. GREENE:  The last bullet, your Honor.
23              THE COURT:  [indiscernible]?
24              MS. GREENE:  Yes, the sub-bullet under that. So
25   just as context, this is notes from an HR interview with
```

```
 1                        PROCEEDINGS              24
 2   Jenny Burgess, who was the recruiter involved in the OCTO
 3   hiring. And the bottom bullet notes, "Leadership candidates
 4   don't go to HC."
 5            THE COURT:  Let me just read it.
 6            MS. GREENE:  Sure.
 7            THE COURT:  What's Urs?
 8            MS. GREENE:  Urs is a senior member of Google's
 9   leadership team.
10            THE COURT:  Okay. So my recollection on this was
11   that you had -- there was testimony from others about this
12   process.  And I don't remember now who that is. Maybe I
13   should hear from the defendants. But you might as well
14   address it, too.
15            MS. GREENE:  Yes, your Honor.  There has been
16   multiple and sometimes conflicting testimony about the
17   approval process for hiring levels. Mr. Graniss presented a
18   pocket that included a level designated for the proposed
19   candidate. There has been testimony that that packet went
20   to a hiring committee.  Ms. Burgess indicated that for
21   leadership candidates like Ms. Rowe, it didn't go to a
22   hiring committee for approval and for ultimate decision-
23   making as to the level; it went straight to Diane.  And
24   Diane inserted herself to review and approve and then pass
25   up to Urs for final approval. And so that's -- you know,
```

```
 1                         PROCEEDINGS                    25
 2   not consistent with the hiring committee approach that
 3   others testified to.  But Ms. Burgess would, as a
 4   recruiter, have the most direct knowledge, and her
 5   indication to HR and she at her deposition said that these
 6   were accurate notes, was that Diane was the who reviewed
 7   the packets with respect to the OCTO candidates and
 8   approved them for Urs's final approval.
 9             THE COURT:  Okay.  And, of course, we have
10   Ms. Greene's statement she has no recollection of the 2016
11   hiring or compensation at her level.
12             MS. GREENE:  So here, your Honor, is where
13   actually showing those hiring packets that she would have
14   reviewed to Ms. Greene may refresh her recollection as to
15   those hiring packets, as to the candidates and as to the
16   prospective levels and things that she considered or did
17   not consider in approving the leveling recommendations.
18             THE COURT:  Okay.  Anything else on the OCTO hire?
19             MS. GREENE:  Ms. Greene herself acknowledges that
20   she was involved in at least the hiring of at least one of
21   Ms. Rowe's comparators.
22             THE COURT:  You're talking about --
23             MS. GREENE:  And so that is someone --
24             THE COURT:  -- a senior engineer?
25             MS. GREENE:  Yes, your Honor.  So that is someone
```

```
 1                        PROCEEDINGS              26
 2  to whom she has personal knowledge as to whether -- and ask
 3  her questions that would relate to whether or not he is a
 4  comparator and is performing work of a similar nature to
 5  Ms. Rowe would be relevant for purposes of establishing the
 6  equal pay claims. It also is relevant with respect to
 7  Google's defenses on the equal pay claims and whether in
 8  fact they were following in a bona fide process or
 9  considering bona fide defenses in making those leveling
10  decisions.
11            THE COURT:  Okay, do you want to do the remaining
12  bucket?
13            MS. GREENE:  The remaining bucket relates to
14  Ms. Greene's complaint of discrimination -- I'm sorry --
15  Ms. Rowe's complaint of discrimination to Ms. Greene.  And
16  to your Honor's point earlier that, you know, people can go
17  to the highest levels.  And that's true, but here there's a
18  distinction in that Ms. Greene was Ms. Rowe's skip level
19  manager, meaning that it was her manager's reporting
20  manager.  And so here a complaint of discrimination is not
21  simply to, you know, the CEO; it's to her skip level
22  manager.  And what her skip level manager did in response
23  to that complaint of discrimination goes to any defenses
24  that Google may assert. It goes to things like an
25  assessment for punitive damages. If the skip level manager
```

PROCEEDINGS                27

did not take the steps that she should have taken in

responding to that complaint of discrimination, that's

relevant for purposes of those claims and potential

assessment of punitive damages.

THE COURT:  Okay. I'll hear from the defendant.

MS. TOMEZSKO:  Thank you, your Honor. This is Sara

Tomezsko from Paul Hastings.

If I may, I would like to address the buckets in

the same order as Ms. Greene has addressed them. And so

we'll start with the hiring of the head of financial

services. Plaintiff is speculating that Mr. Shaukat, who

was the hiring manager for the role and has testified under

oath that he was the ultimate decision-maker for the role,

there's no evidence that he applied any different criteria

than Ms. Greene would have applied. So the fact that he

might or that she might provide conflicting testimony, as

you indicated before, is purely speculative; and plaintiff

can only speculate to that. She can't point to any evidence

that there are different criteria applied.

But even so, let's just assume for argument's sake

that she had in her mind a different set of criteria that

she would have preferred the ultimate candidate for the

role to possess, I still don't see how that advances either

plaintiff's claim or our defenses because she did not

1                            PROCEEDINGS                    28

2   participate in the decision as to whether Ms. Rowe, the

3   plaintiff, would get this role. That was Tariq's decision

4   that made after --

5            THE COURT:  I think I -- I mean, I remember

6   pointing that out, but I think the plaintiff's answer is,

7   well, I want to know if Shaukat is honestly telling me

8   this.  And if it turns out Greene communicated something

9   else to him, then that would suggest that what he's saying

10  is untrue and he was applying, you know, some other

11  criteria. I think that's the point, not -- they admit that

12  she said that Greene is not the final, you know, decision-

13  maker on the hire.

14           MS. TOMEZSKO:  So for argument's sake, your Honor,

15  let's assume that she did have different criteria, I still

16  don't see what that shows to advance plaintiff's claim.

17  She claims that it might indicate that Tariq Shaukat was

18  acting with some sort of discriminatory animus, but

19  discrimination on what basis.  She's claiming here that

20  there's discrimination on the basis of her gender.  So if

21  he was applying different criteria but he still identified

22  two women finalists to be interviewed and potentially take

23  the role over Ms. Rowe, then whatever criteria she was

24  applying in the world wouldn't suggest that Tariq made his

25  decision based on Ulku's gender. It just doesn't make sense

1                         PROCEEDINGS                    29

2  in that regard.

3              THE COURT:  Okay. Keep going.

4              MS. TOMEZSKO:  And she mentioned that, you know,

5  whether there are qualifications that Ms. Greene might have

6  had in mind for someone who was the head of financial

7  services.  That's a different position that plaintiff

8  sought but never had.  And so whether plaintiff was

9  qualified for that role has no bearing on whether she was

10 appropriately leveled as a Level 8 or a Level 9 for the

11 role she had. I'm not seeing a connection between the

12 criteria that Diane Greene might have had in her mind, to

13 the extent that it was even different from what Mr. Shaukat

14 had in mind, for a different role has any relevance to

15 whether the initial hiring determination made about two

16 years earlier was well-founded. I don't think there's a

17 connection there, and I don't think that deposing

18 Ms. Greene on that issue is going to shed light on the

19 leveling decision separate and apart from the hiring of the

20 head of financial services role.

21             And to the extent that she would like to ask, you

22 know, and understand what Mr. Shaukat told Ms. Greene about

23 Ms. Rowe, the plaintiff's, candidacy, she should ask and

24 has asked Mr. Shaukat, not to the extent, as you point out,

25 that Ms. Greene recalls something different. Number one, I

 2  would say that's a low probability because she reviewed

 3  Tariq's declaration basically stating, you know, what he

 4  discussed with Ms. Rowe and the hiring process for that

 5  role, that she reviewed that and says she has nothing more

 6  to add and no unique knowledge beyond that. But even if she

 7  did have different criteria, again, it does not suggest

 8  that Mr. Shaukat acted with discriminatory animus, and it

 9  doesn't advance Ms. Rowe's claim on any of the causes of

10  action that she put forward.

11          We have completely covered this in depositions

12  with Mr. Shaukat, Mr. Stuart Vardaman, who was the

13  executive recruiter working with Mr. Shaukat for the role,

14  to fill the role.  And it's laid out in Ms. Greene's

15  deposition that she just simply doesn't recall, even when

16  presented with the information that Mr. Shaukat put into

17  the record about his involvement, his role, and his

18  discussions with Ms. Greene about the topic.

19          Unless you have further questions about that

20  bucket, your Honor, I'd like to move onto the leveling

21  decision.

22          THE COURT:  Keep going, yes.

23          MS. TOMEZSKO:  Sure. So plaintiff has reviewed

24  Jenny Burgess, who, as Ms. Cara Greene has indicated was

25  the recruiter who worked with the hiring manager and others

PROCEEDINGS                    31

to fill the role of the director of the Office of the CTO.

So this is the role that plaintiff was initially hired into

and that some of the men who performed the role under a

similar title were hired into, as well. There's no evidence

that Diane Greene actually made any determinations with

respect to their compensation or their level for either

plaintiff or any of her comparators. She clearly was not a

decision-maker because there is no testimony showing that

she was nor any documents showing that she was a final

decision-maker as to levels. And even when asked about it

in preparation for her declaration, she doesn't recall

weighing in on anyone's level or anyone's compensation and

believes those decisions were made by others. Jenny

Burgess, in her deposition, testified that Diane Greene had

access to hiring packets, but there's no evidence that she

actually reviewed them; and there's certainly no evidence

that she actually reviewed the hiring packet of the

plaintiff here, which is the decision that we need to focus

on in order to prove a discrimination claim.

        Now, yes, she was tangentially involved in the

decision to hire one of the senior engineers that Ms. Rowe

claims is a comparator, but if you read her declaration, it

shows that she was involved in a very specific and very

narrow piece of that one decision, and it had to do with

1                          PROCEEDINGS                    32

2    the fact that he was being hired from a customer.  So the

3    only involvement that she had was making sure from a

4    business perspective this would be an appropriate action

5    for Google to take, to essentially hire away the senior

6    engineer from one of their customers, who was an early

7    adopter of Google Cloud. But even there she says she

8    doesn't recall having any input into that senior engineer's

9    compensation or level upon hire; it was more along the

10   lines of is it okay to hire him away from a customer. And I

11   don't think, now that that is in the record, there's any

12   additive value in deposing Ms. Greene about that decision

13   because she's already laid out everything she knows about

14   it here.

15            And, finally, to the -- address the fact that

16   Ms. Rowe had in an email raised concerns about her initial

17   leveling decision -- this was on November 17, 2018 --

18   there's -- we have already showed her that email. It was an

19   exhibit to Tariq's declaration submitted in support of this

20   motion.  She reviewed it.  She said she doesn't recall

21   receiving it.  And what she does recall is at the time that

22   that email was sent to her and Mr. Shaukat, that she had

23   announced her departure from Google Cloud and was busy

24   making preparations to exit the company.  So it doesn't

25   follow that she would have necessarily been, number one,

2  super focused on this email and would have done anything

3  about it, given that she knew that, number one, Mr. Shaukat

4  was also copied on it and as plaintiff's direct manager

5  would have been in a better position to deal with it; and

6  also, the fact that it had already been raised to HR and HR

7  was investigating it.

8           What more does plaintiff think that Ms. Greene

9  will say or could possibly say to advance an argument for

10 punitive damages? She was preparing to leave the company;

11 someone else was copied on the email, someone in a better

12 position to handle it; and HR was in the process of

13 investigating. There's nothing more that deposing

14 Ms. Greene is going to add here.

15          And so, with all of that, I think the evidence is

16 clear that we have the benefit of a fulsome discovery

17 record here. Plaintiff has deposed nine people, nine fact

18 witnesses who were intimately involved in the decisions at

19 issue here. They have testified to various extents that

20 they did not have any communications with Ms. Greene about

21 these decisions. And to the extent that information about

22 the decisions was made available to her as a senior

23 executive doesn't suggest that she has anything unique to

24 add to this case that's going to advance the ball one way

25 or the other for plaintiff or defendant. And given all that

1

2  and the fact that so much discovery has taken place that

3  the limited value of any deposition testimony that

4  Ms. Greene can offer is far outweighed by the

5  disproportionate impact that another deposition will have

6  on this case, particularly where she has already said under

7  oath she doesn't recall anything about these decisions that

8  happened years ago.

9        THE COURT:  Okay. You know, there's the fact that

10 she's now a third-party witness, which brings in a Rule 45

11 standard.  But there's also the fact that the sort of

12 theory of the case law in terms of high-level depositions

13 is that the person is too busy to be deposed.  And you've

14 given us nothing on that. I assume that was intentional.

15 But you would have to admit that that detracts from the

16 principle in many of the cases, which is these executives

17 have other things they have to focus on. I don't have that

18 here.

19       MS. TOMEZSKO:  I would disagree, your Honor. I

20 think the cases are clear that being busy alone is in

21 itself not enough to justify not taking a deposition,

22 right? So it can't be the case just that being busy is the

23 gravamen of the reason why a senior executive would not be

24 deposed.  And even if she is not busy with Google matters

25 presently, she is still a well-known name in the industry,

1

2  and she does have another position with MIT at the moment.

3  So clearly, she is busy but maybe not on Google efforts.

4          But more importantly than that, the fact that she

5  is so far removed from these decisions, at least one level

6  in each case, and she doesn't have additional relevant

7  testimony to add, I think that is really where the case is

8  centered, on the fact that you have to, if you're in a

9  position, a senior executive position, which by virtue of

10 just being a senior executive would suggest that you are

11 not intimately involved in these decisions, that you have

12 delegated and relied upon your subordinates, who are

13 themselves executives, to actually implement and undertake,

14 that if you don't have unique knowledge, the deposition is

15 unwarranted.  And we just don't think that she's presented

16 any evidence that Diane Greene is going to have unique

17 knowledge here that would warrant the deposition, so we

18 don't think she's entitled to it.

19          THE COURT:  All right, Ms. Greene?

20          MS. GREENE:  Yes, your Honor. If we look at

21 Ms. Greene's declaration, I think it's very important to

22 note how it's been crafted. For instance, in paragraph six

23 she says, "I have no recollection of approving hiring

24 packets."  She doesn't say, "I did not approve hiring

25 packets," or, "I was not involved in that."  She's saying,

1

2   you know, I have no recollection, except for one senior

3   engineer. Right? So she recalls with specificity one.  We

4   should be able to test her on that.

5           In seven she says, "I have no specific

6   recollection of being involved in any decision as it

7   relates to plaintiff, Ulku Rowe's hire." That suggests she

8   may have a general recollection, and that's a general

9   recollection we should be able to question her about.

10          With respect to the leveling decision, I think it

11  very much matters if she disputes or disavows that she

12  had -- that she was the one who approved the leveling

13  decision, that is absolutely relevant to the defenses that

14  Google might assert with respect to the leveling decisions,

15  because it throws into question whether there was a

16  process, in fact, that they were following; whether it was

17  a subjective decision that was outside of their ordinary

18  processes. And so given that Jenny Burgess has pointed to

19  Ms. Greene as the decision-maker with respect to this

20  process outside of what would ordinarily be in the hiring

21  committee, we should be able to test her.  And whatever her

22  testimony is, whether it's, "I don't recollect," whether

23  it's, "No, I was not involved," or, "Yes, I was involved,"

24  is going to be relevant to the claims and defenses in this

25  matter.

```
1                            PROCEEDINGS                    37

2              THE COURT:  Well, I mean, you have the testimony

3     that she doesn't have those recollections, right?

4              MS. GREENE:  Well, we have the testimony that she

5     doesn't have a specific recollection.  We don't know what

6     her general recollection is, and we don't know what her

7     recollection may be when actually presented with the

8     documents that Ms. Burgess said she reviewed.  Actually

9     looking at the hiring packets may very well trigger and

10    refresh her recollection. We know that, you know, memories

11    are not exact.  For instance, Mr. Shaukat at his deposition

12    did not recall the conversation that he later mentioned in

13    his declaration that he had with Ms. Greene.  So, you know,

14    memories are subject to revision and recollection and

15    refreshing of that recollection.  And that's why there are

16    depositions. It's why there's not simply each side doesn't

17    put forward declarations from their witnesses and why the

18    other side has an opportunity to test, to probe, to present

19    documents that may change, alter or refresh the

20    recollection.

21              THE COURT:  Okay.

22              MS. TOMEZSKO:  May I respond, your Honor, to that

23    point?

24              THE COURT:  Sure. Go ahead.

25              MS. TOMEZSKO:  I don't think there's any testimony
```

```
 1                       PROCEEDINGS                38
```

 2   in Jenny Burgess's deposition that she was a decision-

 3   maker.  The only thing that Jenny says or Ms. Burgess says

 4   is that she had access to the information. She then goes on

 5   to say in her deposition that Will Graniss as the hiring

 6   manager made the final leveling recommendation.

 7           And so let's assume that Diane Greene did look at

 8   the packet and she accepted someone else's recommendation,

 9   okay, you've already had the opportunity to depose the

10   individual who made the recommendation in the first place,

11   and there's really nothing to suggest that she did get

12   involved in plaintiff's hiring recommendation at all. You

13   do have both her general and her specific testimony on this

14   point. Paragraph six is that she has no recollection of

15   approving hiring packets for anyone hired into OCTO except

16   for one senior engineer.  That is a general understanding

17   of what she remembers, which is to say nothing about being

18   involved in this process.  Then you have her specific

19   testimony that she has no specific recollection of being

20   involved in any decision as it relates to plaintiff, Ulku

21   Rose's hire.

22           So I don't hear anything from plaintiff suggesting

23   that a deposition of Diane Greene is going to give us more

24   information than what has already been in the record

25   through her declaration.

```
 1                       PROCEEDINGS                    39

 2              THE COURT:  I'll give Ms. Greene another chance to

 3    respond, if she wants.

 4              MS. GREENE:  I would just note, your Honor, that,

 5    again, Ms. Burgess, in communicating to HR, indicated that

 6    it was Ms. Greene who made the signoffs.  What --

 7              THE COURT:  Did you --

 8              MS. GREENE:  -- independent factors she

 9    considered --

10              THE COURT:  -- did you depose Ms. Burgess?

11              MS. GREENE:  We did.

12              THE COURT:  Did you ask her about what Greene's

13    involvement was?

14              MS. GREENE:  We -- your Honor, I don't have that

15    deposition in front of me. I do know, though, that she -- I

16    recall asking her with respect to her indication to HR that

17    it was Ms. Greene, whether that -- what she said to HR was

18    accurate. I do recall her saying that, yes, that was

19    accurate.  And so it would have been Ms. Greene who

20    reviewed and approved the recommendation.

21              On that point with respect to the recommendation,

22    it was simply a recommendation. Ms. Greene would have had

23    to make an assessment whether to accept that recommendation

24    or not, and what factors she considered in evaluating

25    whether the recommendation was appropriate with respect to
```

```
 1                        PROCEEDINGS              40
```

```
 2   the leveling is relevant with respect to the affirmative

 3   defenses that Google might assert and has asserted, in

 4   fact, in their answer.

 5            THE COURT:  I'm trying to follow this last point.

 6   So you're saying she approved the packet; is that what this

 7   person testified to, that Greene was approving these

 8   packets?

 9            MS. GREENE:  The recommendation that she reviewed

10   them, approved them, and passed them onto Urs.

11            THE COURT:  Okay. And you said that's going to --

12   the part you said at the end, that that's going to affect

13   their defenses --

14            MS. GREENE:  The affirmative defenses --

15            THE COURT:  -- what were you referring to?

16            MS. GREENE:  -- yes, your Honor. So with respect

17   to equal-pay claims, the affirmative defenses that the

18   decision -- that the inequity between the compensation is

19   the result of a seniority-based system, a production-based

20   system, a performance-based system or any other factor

21   that's relevant to the job.  And that's a very loose

22   statement of the affirmative defenses. But Ms. Greene as

23   the decision-maker will have testimony about whether she

24   was considering in fact any of those things in approving

25   the leveling decision or not. If she says, you know, "I was
```

1

2   not considering that; I was not given, you know, any

3   specific criteria with respect to why this leveling

4   recommendation was made," than as the person who made the

5   decision with respect to leveling, she won't be able to

6   assert that it was based on a performance-based system, for

7   instance. These are affirmative defenses, and the decision-

8   maker with respect to leveling is in a unique position to

9   know what factors they considered in making that final

10   decision with respect to leveling.

11        THE COURT:  Ms. Tomezsko, do you -- I know you say

12   she doesn't recollect it, but is there some other response

13   to that point?

14        MS. TOMEZSKO:  Yes, your Honor. I actually do have

15   Jenny Burgess's deposition in front of me, and nowhere does

16   she say that Diane Greene was a decision-maker in the

17   process. I can tell you what she does say. She does say

18   that she doesn't know if Ms. Greene reviewed all the

19   packets for the technical director candidates, just that

20   she had access to them.  And she identifies that there were

21   others who may have made the leveling decision. But she

22   never names Ms. Diane Greene as the person who did. She

23   said that the decision -- when asked was the decision about

24   the level approval documented anywhere, Ms. Burgess replied

25   under oath, yes, in G-Hire. Plaintiff already has the G-

```
 1                        PROCEEDINGS                    42

 2  Hire documents that Ms. Burgess was referring to there. And

 3  Ms. Greene's name as a decision-maker appears nowhere in

 4  those documents.

 5          So she already has said that she does not have a

 6  recollection of any of the specific items that plaintiff

 7  just raised. I don't see why we would make her sit for a

 8  deposition to just repeat that, and I don't think that

 9  putting hiring packets in front of her that she simply

10  doesn't recall is going to do anything but waste the

11  parties' time here.

12          THE COURT:  Ms. Tomezsko, just quickly, if you

13  want to say anything else? If you've said it all, you don't

14  have to say anything.

15          MS. TOMEZSKO:  I'm fine, your Honor. Thank you.

16          THE COURT:  Folks, give me just one minute, all

17  right?

18          MS. GREENE:  Yes, your Honor.

19          (Brief silence.)

20          THE COURT:  All right, everybody. You know, this

21  is a very fact-specific determination, and I'm not going to

22  go over all the facts, because they've been articulated by

23  the parties.  But I've made my judgment, and I'm going to

24  grant the application for a Protective Order and deny

25  plaintiff's request to take this deposition. I'm doing this
```

```
 1                          PROCEEDINGS              43
 2  on the basis of the fact that this is, you know, now a
 3  person who's no longer associated with Google, she's a
 4  recipient of a third-party subpoena.  There's a special
 5  level of solicitude that goes along with that. I've
 6  evaluated the importance of the discovery and also
 7  evaluated her declaration regarding her lack of knowledge,
 8  considering the burden, and I don't think that the benefit
 9  of this potential discovery, I find it to be very minimal.
10  And it doesn't outweigh the burden on Ms. Greene.
11          So that's my ruling, everyone.  Anything else we
12  need to do during this conference? Anything from
13  plaintiff's side?
14          MS. GREENE:  Your Honor, I would just note that we
15  filed a pre-motion letter on another topic, which is
16  awaiting your Honor's direction with respect to whether
17  there will be a full briefing on that motion.  And --
18          THE COURT:  Hold on, hold on, hold on.  Give me a
19  second or tell me what it is.
20          MS. GREENE:  This is with respect to discovery
21  related to comparators and --
22          THE COURT:  Was there a response yet, or have I
23  just missed it --
24          MS. GREENE:  There has been a response.  The
25  initial docket number I believe is Docket 79, and the
```

```
 1                        PROCEEDINGS                    44
 2   response is Docket 84. And this was just before the
 3   holidays, so --
 4            THE COURT:  Okay. All right. So I guess we'll --
 5   I'll probably set up a call on that unless I can do it on
 6   the papers. Thank you for reminding me.
 7            MS. GREENE:  And then, as well, we have another
 8   motion to supplement the pleadings, which will be fully
 9   briefed today. I believe our reply is due today. And so if
10   your Honor desires oral arguments, it may be possible to
11   combine those two, the two pending motions.
12            THE COURT:  Okay, I'll look into that, as well.
13            Anything else from plaintiff's side?
14            MS. GREENE:  Nothing else from plaintiff. Thank
15   you, your Honor.
16            THE COURT:  From defendant?
17            MS. TOMEZSKO:  Nothing further from defendant.
18   Thank you, your Honor.
19            THE COURT:  All right. Thank you. Good-bye.
20            (Whereupon, the matter is adjourned.)
21
22
23
24
25
```

45

# C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Rowe v. Google

LLC, Docket #19-cv-08655-LGS-GWG, was prepared using

digital transcription software and is a true and accurate

record of the proceedings.

Signature_____

Carole Ludwig

Date:    January 18, 2021