OUTTEN & GOLDEN LLP
Cara E. Greene
Maya S. Jumper
Shira Z. Gelfand
685 Third Avenue
25th Floor
New York, NY 10017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE,<br><br>                           Plaintiff,<br><br>           v.<br><br>GOOGLE LLC,<br><br>                           Defendant. | Case No. 19-cv-8655 (LGS)(GWG)<br><br>**SECOND<br>AMENDED COMPLAINT**<br><br>**Demand for Trial by Jury** |

## NATURE OF THE ACTION

1.      Plaintiff Ulku Rowe ("Plaintiff"), by and through her attorneys Outten & Golden LLP, brings this action against Defendant Google ("Defendant" or "Google" or the "Company") for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e *et seq.*, the Equal Pay Act of 1963 (the "EPA"), 29 U.S.C. §§ 206(d), 215; New York's Equal Pay Law, as amended, N.Y. Lab. L. Art. 6 ("NYLL"), §§ 194, 215; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

2.      Google has discriminated against Plaintiff by hiring her at a lower level and paying her less compensation than her similarly situated male peers, denying her additional earned compensation, and denying her a promotion for which she was the most qualified – instead hiring a less qualified man for the role. Further, Google retaliated against Plaintiff by demoting her after she complained about the Company's discriminatory actions.

1

## JURISDICTION AND VENUE

3. This case arises, in part, under federal statute, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, and the Equal Pay Act, as amended, 29 U.S.C. § 206(d). Therefore, this court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

4. The claims Plaintiff brings under New York's Equal Pay Law, as amended, N.Y. Lab. L. Art. 6, § 194, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, arise out of the same events or omissions as the federal claims that are properly before this Court. Therefore, the Court properly exercises pendent jurisdiction over the New York Equal Pay Law and New York City Human Rights Law claims.

5. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions in this action occurred within the Southern District of New York.

6. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") to exhaust her administrative remedies and comply with all statutory prerequisites related to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq. and received a Notice of Right to Sue on October 22, 2019.

## PARTIES

Ulku Rowe

7. Plaintiff, Ulku Rowe, is a woman and an employee of Google within the meaning of all applicable statutes.

8. Plaintiff is currently a Director of Engineering at Google Cloud, and she is based in New York, New York, where she resides.

Google

9. Defendant Google is a global technology company.

10. Defendant is a Delaware corporation with its principal place of business in Mountain View, CA.

11. During all relevant times, Defendant was Plaintiff's employer within the meaning of all applicable statutes.

12. During all relevant times, Defendant employed Plaintiff in New York, New York.

13. Throughout the relevant period, Defendant had more than four (4) employees.

## FACTUAL ALLEGATIONS

**Background**

14. Plaintiff is a highly-qualified technology executive with over twenty years of experience in the financial services industry. She holds a Master of Science ("MS") in Computer Science from the University of Illinois at Urbana-Champaign, where she was a Fulbright Scholar, and has a Bachelor of Science ("BS") degree in Computer Engineering.

15. Prior to joining Google, Plaintiff was a Managing Director at JPMorgan Chase, where she was the Global Head and Chief Technical Officer of Credit Risk Technology for JPMorgan. Before that, Plaintiff was a Managing Director at Bank of America Merrill Lynch, where she was the Global Head of Market Risk Technology. Earlier in her career, Plaintiff held a variety of technology leadership positions at UBS building trading and analytics systems. In over two decades in the financial services industry, Plaintiff has built technology platforms for trading and analytics, middle and back-office, risk management, and finance, and has built and led global teams in more than ten countries, supporting business in more than 60 countries.

16. While at Google, Plaintiff has played a critical leadership role in building Google Cloud's offering in Financial Services. She became the point person for financial services related product direction and recommendations, marketing plans, regulatory relationships and CXO-level customer engagements. She has represented the technical voice of Google Cloud in the

market, which requires her to spearhead financial services regulatory engagement programs, travel around the world establishing important relationships with top companies and local financial regulators, provide recommendations to the technical C-suite, and meet with hundreds of customers at the C-suite level, as the Google Cloud Executive sponsor.

17. Plaintiff's financial services expertise is recognized inside and outside of Google. She has delivered keynotes in multiple countries on behalf of Google Cloud, and she keynoted multiple Google Cloud Summits in many countries across the globe. Plaintiff has presented at financial services related sessions at Google's flagship conference, Google Cloud Next, and at international financial services conferences, including Payments Canada in Toronto, TradeTech in Paris, Sibos in Sydney, and Fortune Brainstorm Finance in New York, among others. She frequently serves as a Google Cloud spokesperson, speaking to the press on financial services and technology topics, and also represents Google at the Federal Reserve Bank of New York's advisory group on Financial Technology.

18. Since joining Google, Plaintiff has received "exceeds expectations" on all her performance reviews.

19. Despite Plaintiff's exceptional performance and Google's recognition of her contributions, the Company has discriminated against her on the basis of her gender by hiring her at a lower level than similarly situated men, paying her less than her male counterparts, and failing to promote her to a role for which she was the most-qualified candidate.

**Google Has Discriminated Against Plaintiff in the Terms and Conditions of Her Employment**

20. Though Google considers Plaintiff a key employee with subject-matter expertise in several of its technologies and applications, upon information and belief, Google pays her less than her male colleagues for performing substantially similar work and having equal or better qualifications.

21. In March 2017, Plaintiff joined Google as the Technical Director of Financial Services at the Cloud, reporting to the Managing Director, Cloud CTO Office.

22. At the time she joined Google, Google was building out its Cloud platform. As part of that effort, Google hired Technical Directors for several different verticals and each Technical Director was responsible for similar tasks and performed substantially similar work. Further, each Technical Director position required substantially similar skills and experience and was performed under substantially similar conditions.

23. Google hired Plaintiff as a Level 8 Director, although her background and experience was commensurate to at least a Level 9. When Plaintiff noted that the Level 8 position might not be the right level, considering her experience and compensation expectations, the hiring manager told her that all individuals hired for the Technical Director positions were joining at Level 8.

24. Plaintiff was concerned that a Level 8 position would impact her long-term compensation, but her hiring manager, as well as the Google's Human Resources representative, indicated that she would receive an equity refresh award each year, situating her to exceed her prior compensation at JPMorgan.

25. Plaintiff's hiring manager also indicated that once Google Cloud verticalized, she would lead the Financial Services vertical, positioning her for long term advancement within Google. Based in part on those representations, Plaintiff accepted the position.

26. After accepting the position, Plaintiff learned that Google had hired similarly situated male Technical Directors at Level 9, a level that pays hundreds of thousands of dollars more in total annual compensation than Level 8.

27. Plaintiff and the male comparators were hired within weeks of each other, using the same position description.

28. Plaintiff was equally or more qualified than the men who were hired as Level 9 Technical Directors. For example, one male colleague had only nineteen years of industry experience, while Plaintiff had twenty-two years of experience at time of hire. Another male colleague's background was in physics, not engineering, and he did not satisfy the requirement that candidates have an MS in Computer Engineering or demonstrated leadership in this area. Similarly, another man had no academic background in technology. Plaintiff, in contrast, has a MS in Computer Science and a BS in Computer Engineering, as well as demonstrated leadership in the field.

29. Further, Google has exacerbated the pay differential by denying Plaintiff the equity refreshes that it promised to her at the time of hire. While she had been told that Google would award her annual equity refreshes, such that she would be well positioned to exceed her annual JPMorgan compensation on a going forward basis, Google instead awarded her only small equity awards that have left her with a significant shortfall in total annual compensation and will significantly impact her compensation on a going forward basis. On information and belief, the equity awards Google awarded her are hundreds of thousands of dollars less than the equity awards Google made to her similarly-situated male comparators.

30. The pay disparity between Plaintiff and her male comparators is not based on a seniority system, a merit system, or a system which measures earnings by quantity or quality of production.

31. The pay disparity between Plaintiff and her male comparators is not based on any factors that are job-related and consistent with a business necessity.

32. On several occasions, Plaintiff has complained to Human Resources that her Level 8 title is a result of initial hiring discrimination and has noted the ways it impacts her compensation and advancement within the Company.

**Google Discriminatorily Denies Plaintiff a Promotion and Retaliates Against Her for Opposing Discrimination.**

33. Not only did Google discriminate against Plaintiff in hiring and compensation, Google denied her a promotion into a position for which she was the most-qualified candidate and instead promoted a less-qualified man.

34. In June 2018, Google changed Plaintiff's reporting structure and she began reporting to the Vice President of Partners and Industry Platforms (the "VP"). The VP treated Plaintiff, one of his only female direct reports, much differently than his male subordinates. The VP told Plaintiff that he envisioned her as a Global Client Technical Lead, a demotion given her background and seniority. He did not actively manage her; indeed, he only met with her approximately five times in the ten months he supervised her, despite her frequent requests for meetings. He frequently ignored her emails, and he excluded her from the development of the Financial Services vertical. The VP also regularly excluded Plaintiff, but not her male colleagues, from staff meetings, email distribution lists, team offsites, and one-on-one meetings.

35. When Google began to move forward with verticalizing the different industries, Google undertook a search for the role of Vice President, Financial Services, a Level 10 position. Even though Plaintiff was amply qualified for the position and previously had been told by both her hiring manager and Google Cloud's Chief Technology Officer ("CTO") that she was expected to move into that role, the VP failed to meaningfully consider Plaintiff for position.

36. When Plaintiff learned that two, less qualified, external finalists were being considered for the position instead, she insisted that she be considered as well. Plaintiff also expressed concerns that the initial hiring discrimination – leveling her at Level 8 – would impact Google's consideration of her and that she was not being fairly considered for the Vice President of Financial Services Vertical position as a result.

37. In response to her concerns regarding leveling, Human Resources responded that

7

even if she were selected for the position, her level and title would not change.

38. Plaintiff spoke with the CTO regarding the Vice President position and her concerns that she was not being fairly considered for the role. He confirmed that he considered her to be the most qualified candidate but indicated that, because he had been involved in hiring her, he was excluded from the group considering her application for the Vice President position.

39. Plaintiff also raised concerns with Google Cloud's Chief Executive Officer that the initial hiring discrimination was impacting Google's consideration of her for the Vice President Financial Services position.

40. After her repeated complaints, Human Resources eventually conducted a cursory investigation and in November 2018, ignoring the plain facts, communicated that they did not believe that the Company had committed any wrongdoing with respect to Plaintiff.

41. Despite Plaintiff's background, qualifications, and Google's previous representations that she would lead the Financial Services Vertical once Google Cloud verticalized, the Company did not select Plaintiff for the position of Vice President of Financial Services Vertical. Instead, on or about February 2019, Google selected a less-qualified man, who had only been with the Company for approximately six months, for the position of Head of Financial Services Vertical.

42. On information and belief, Google did not follow its normal processes for filling the position and did not interview the man in connection with considering him for the position, even though Plaintiff had been forced to undergo additional interviews to be considered for the role. Instead, he was selected via a "tap on the shoulder."

43. Unlike Plaintiff, the new Head of Financial Services Vertical has limited demonstrated leadership or experience in technology, let alone Google Cloud technology or customer engagement. His background primarily is in compliance and he is an attorney by

8

training. He does not satisfy the position description requirements for the Head of Financial Services Vertical position.

44. Google's denial of promotion materially impacted Plaintiff's total annual compensation; Vice Presidents at Google are paid hundreds of thousands of dollars more than Directors and, on information and belief, Google is paying the man it selected to head the financial services vertical thousands of dollars more in compensation each year than Plaintiff.

45. Plaintiff objected to the promotion of a less-qualified man over her and complained again about Google's discriminatory pay and promotion practices.

46. On April 2019, the Company communicated to Plaintiff that they were changing her role and provided her with three undesirable options: to work on a discrete project reporting to the new Head of Financial Services Vertical; to return to the Office of the CTO as an individual contributor; or to look for a different role within Google, during which time she would be reporting directly to the new Head of Financial Services Vertical.

47. All three positions are reasonably perceived as demotions as they are less prestigious and have less responsibility, less opportunity for upward advancement, and less compensation potential.

**Google Further Retaliates Against Plaintiff for Opposing Discrimination**

48. On September 17, 2019, Plaintiff Ulku Rowe filed her initial Complaint alleging claims of unequal pay, sex and gender discrimination, and retaliation, pursuant to the EPA, NYLL, and NYCHRL.

49. On November 22, 2019, after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission, Plaintiff amended her initial Complaint to include sex discrimination and retaliation claims pursuant to Title VII.

50. Following the commencement of this case, in October 2019, Defendant initiated

an investigation into Plaintiff's complaints of unequal pay, discrimination, and bias, which was conducted by Defendant's Employee Relations ("ER") department.

51. As part of the ER investigation, Defendant interviewed the executive recruiter involved in the recruitment and selection process for the Vice President of Financial Services role (the "Executive Recruiter").

52. On January 22 and 29, 2020, the Executive Recruiter discussed with ER his involvement in the recruitment process for the Vice President of Financial Services role, the position Plaintiff alleged she had been unlawfully denied. During that interview, the Executive Recruiter described Plaintiff in gendered terms, including "abrasive," "cantankerous," and "bristly."

53. The Executive Recruiter understood that he was being interviewed in connection with claims of discrimination that Plaintiff had asserted.

54. In February 2020, Plaintiff learned from the hiring manager of another Vice President role for which Defendant was hiring –the Vice President of Sales for Financial Services (the "VP Sales" role). Plaintiff expressed to the hiring manager that she was interested in the VP Sales role.

55. On February 4, 2020, Plaintiff sent correspondence to the Executive Recruiter seeking further information regarding the VP Sales role. The Executive Recruiter acknowledged Plaintiff's interest in the role and forwarded the job description to her.

56. On February 5, 2020, Plaintiff reiterated to the Executive Recruiter her desire to be considered for the VP Sales role and requested that the Executive Recruiter provide her with guidance on the next steps.

57. The Executive Recruiter failed to respond to Plaintiff's emails or provide Plaintiff the additional information she requested. Days later, after being unresponsive to Plaintiff's

emails requesting follow-up information on the application process, the Executive Recruiter told Plaintiff that he would schedule a meeting to discuss an "update" with her.

58.   On February 25, 2020, the Executive Recruiter scheduled a meeting with Plaintiff and informed her that she would not be considered for the VP Sales role at all.

59.   Plaintiff was qualified for the VP Sales role.

60.   Defendant never interviewed or meaningfully considered Plaintiff for the VP Sales role.

61.   On information and belief, Defendant's refusal to meaningfully consider Plaintiff for the VP Sales role was retaliation for Plaintiff's protected complaints.

\*   \*   \*

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Sex Discrimination in Violation of Title VII of the
### Civil Rights Act of 1964 (42 U.S.C. § 2000e-2)

62.   Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

63.   Defendant violated Title VII by discriminating against Plaintiff in the terms and conditions of her employment, including but not limited to her compensation and equity awards, because of her sex.

64.   Defendant violated Title VII by failing to promote Plaintiff because of her sex.

65.   Plaintiff is entitled to damages as a result of Defendant's unlawful acts, including, but not limited to, past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## SECOND CAUSE OF ACTION
**Retaliation in Violation of Title VII of the
Civil Rights Act of 1964 (42 U.S.C. § 2000e-3)**

66.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

67.     Plaintiff engaged in protected activities under Title VII, including opposing discrimination.

68.     Defendant violated Title VII when it treated Plaintiff less well because she opposed discrimination.

69.     Plaintiff is entitled to damages as a result of Defendant's unlawful acts, including, but not limited to, past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## THIRD CAUSE OF ACTION
**Sex-Based Pay Discrimination in Violation of
the Equal Pay Act of 1963 (29 U.S.C. § 206(d))**

70.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

71.     Defendant violated the Equal Pay Act by paying Plaintiff less than her male counterparts for substantially equivalent work that required substantially equal skill, effort, and responsibility, and was performed under similar working conditions.

72.     The differential in pay between Plaintiff and her male colleagues was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

73.     As a consequence of Defendant's unlawful acts, Plaintiff has been deprived of

compensation and is entitled to recovery of such amounts plus liquidated damages for all willful violations, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### Sex-Based Pay Discrimination in Violation of New York Labor Law (N.Y. Lab. L. Art. 6, § 194)

74. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

75. Defendant violated the Equal Pay Act provisions of New York Labor Law ("NYLL") by paying Plaintiff less than her male counterparts for substantially equivalent work that required substantially equal skill, effort, and responsibility, and was performed under similar working conditions.

76. Defendant's violation of NYLL, as described in this Complaint, was willful and intentional. Defendant did not make a good faith effort to comply with NYLL with respect to its compensation of Plaintiff.

77. As a consequence of Defendant's unlawful acts, Plaintiff has been deprived of compensation and is entitled to recovery of such amounts plus liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. L. § 194.

## FIFTH CAUSE OF ACTION
### Gender Discrimination in Violation of New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*)

78. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

79. Defendant violated the New York City Human Rights Law ("NYCHRL") by discriminating against Plaintiff in the terms and conditions of her employment, including but not limited to her compensation and equity awards, because of her gender.

80. Defendant violated the NYCHRL by failing to promote Plaintiff because of her gender.

81. Plaintiff is entitled to damages as a result of Defendant's unlawful acts, including past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of**
**New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*)**

82. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

83. Plaintiff engaged in protected activities under the NYCHRL, including opposing discrimination pursuant to Section 8-107(7).

84. Defendant violated the NYCHRL when it treated Plaintiff less well because she opposed discrimination.

85. Plaintiff is entitled to damages as a result of Defendant's unlawful acts, including, but not limited to, past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of**
**the Equal Pay Act of 1963 (29 U.S.C. § 206(d))**

86. Plaintiff realleges and incorporates by reference all allegations in the preceding

paragraphs.

87. Plaintiff engaged in protected activities under the Equal Pay Act by, among other things, commencing this action and opposing unlawful pay practices.

88. Defendant violated the Equal Pay Act when it treated Plaintiff less well because she commenced this action and opposed unlawful pay practices.

89. As a consequence of Defendant's unlawful acts, Plaintiff has been deprived of compensation and is entitled to recovery of such amounts plus liquidated damages for all willful violations, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 206(d), 215.

### EIGHTH CAUSE OF ACTION
### Retaliation in Violation of
### New York Labor Law (N.Y. Lab. L. Art. 6, § 194)

90. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

91. Plaintiff engaged in protected activities under New York Labor Law by, among other things, commencing this action and opposing unlawful pay practices.

92. Defendant violated the New York Labor Law when it treated Plaintiff less well because she commenced this action and opposed unlawful pay practices.

93. As a consequence of Defendant's unlawful acts, Plaintiff has been deprived of compensation and is entitled to recovery of such amounts plus liquidated damages for all willful violations, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. L. Art. 6 §§ 194, 215.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Declare the acts and practices complained of herein to be violations of Title VII,

the EPA, NYLL, and the NYCHRL;

  B. Enjoin and permanently restrain these violations of Title VII, the EPA, NYLL, and the NYCHRL;

  C. Direct Defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

  D. Direct Defendant to instate Plaintiff into the position(s) she was denied or a comparable position, or in the alternative, set Plaintiff's compensation and benefits at a comparable level to that position(s);

  E. Award Plaintiff damages to make her whole for all earnings she would have received but for Defendant's unlawful treatment, including, but not limited to, wages, bonuses, equity awards, pension and retirement benefits, health care coverage, and other lost benefits, including future lost wages and benefits;

  F. Direct Defendant to pay liquated damages of one hundred percent under the EPA and three hundred percent under NYLL;

  G. Direct Defendant to pay punitive damages under the NYCHRL and Title VII in an amount to be determined by the jury;

  H. Award Plaintiff damages to compensate for any adverse tax consequences;

  I. Award pre-judgment interest at the statutory rate of 9%;

  J. Award Plaintiff attorneys' fees, costs, and disbursements pursuant to applicable law.; and

  K. Award such other legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: New York, New York
February 12, 2021

Respectfully submitted,

Cara E. Greene
Maya S. Jumper
Shira Z. Gelfand
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2071
ceg@outtengolden.com
mjumper@outtengolden.com
sgelfand@outtengolden.com

*Attorneys for Plaintiff*