

1(212) 318-6046
kennethgage@paulhastings.com

May 5, 2021 59605.00060

**VIA ECF**

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Ulku Rowe v. Google LLC*, 1:19-cv-08655(LGS)(GWG)

Your Honor:

Pursuant to Your Honor's Individual Rules and Procedures, Rule III.A.1, we write on behalf of Google LLC in response to Plaintiff's April 28, 2021 letter seeking leave to file a motion for partial summary judgment. (ECF 112.) This case can be decided on summary judgment, for the reasons outlined in Google's letter dated April 28, 2021. (ECF 113.) Plaintiff, however, has no basis for seeking that relief on her discrimination or equal pay claims, or on Google's affirmative defenses, as described below.

1. **Plaintiff Cannot Seek "Judgment" As To Some Of The Prima Facie Elements Of Her Title VII or NYCHRL Compensation Discrimination Claims.**

The *McDonnell-Douglas* burden-shifting framework is merely "*a tool for assessing [discrimination] claims*, typically at summary judgment, . . .". *Comcast Corp. v. National Ass'n of African American-Owned Media*, --U.S.--, 140 S. Ct. 1009, 1019 (2020) (emphasis supplied). Plaintiff cites no authority, however, for her argument that summary judgment can be entered on some elements of the first step of that framework.

Even if the Court were to agree that Plaintiff can establish some (or even all) of the elements of her prima facie case under Title VII and the New York City Human Rights Law ("NYCHRL"), judgment still could not issue as a matter of law in Plaintiff's favor. That merely shifts the burden of production to Google to articulate a legitimate, non-discriminatory reason for the adverse employment action (which it can). *Hudson v. Merrill Lynch & Co.*, 138 A.D.3d 511, 514–15, 31 N.Y.S.3d 3, 7 (1st Dep't 2016) (employer has the opportunity to produce "evidence of a legitimate reason for the challenged action," which shifts the ultimate burden back to Plaintiff to "rais[e] an issue as to whether the [adverse employment] action was motivated as least in part by . . . discrimination.") (citations omitted) (second alteration and ellipsis in original). The ultimate burden of persuasion still rests with Plaintiff to prove that Google's articulated reason is pretext for discrimination, or at least motivated in part by discrimination (which she cannot). *See Lam v. Sephora USA Inc.*, 488 F. App'x 487, 489 (2d Cir. 2012); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127, 946 N.Y.S.2d 27, 41 (1st Dep't 2012).

As outlined in our letter dated April 28, 2021 the undisputed material facts demonstrate legitimate non-discriminatory reasons for paying and leveling other individuals hired into OCTO differently than Plaintiff. (ECF 113 at 1.) Therefore, even assuming that Plaintiff can establish a prima facie case of discrimination under Title VII and the NYCHRL, the evidence will show that no reasonable fact-finder could conclude that pay or leveling decisions affecting Plaintiff were motivated by sex.

2. **The Parties Agree That Summary Judgment Is Proper On Plaintiff's Federal And State Equal Pay Claims.**

There are no material issues of fact on Plaintiff's federal and state equal pay claims; apparently the parties agree on this much. (ECF 112 at 2 (Plaintiff's NYEPL and EPA claims are "well-suited for summary disposition"); ECF 113 at 3.) Given that the threshold issue is whether Plaintiff's alleged comparators are performing "equal" or "substantially similar" work at the same establishment, this is unsurprising. Discovery revealed clearly the nature of the work performed by over 50 alleged comparators, some who worked in OCTO like Plaintiff and others who did not. So the Court can rule as a matter of law whether the work performed by these employees is equal or





(after October 2019)[1] substantially similar to Plaintiff's work. One question remains, however; who does she allege are her comparators, now? Evidently, Plaintiff only compares herself to Nicholas Harteau for purposes of seeking summary judgment, while reserving her rights to argue differently for other alleged comparators. (ECF 112 at 2, n.2.)

Mr. Harteau worked as an L9 Technical Solutions Consultant ("TSC") in OCTO starting in May 2017. His L9 role had a broader scope of responsibility than Plaintiff's; the work he was given leveraged his greater skills and experience in Cloud technology; and the work he performed had broader impact within Google than Plaintiff's L8 TSC role. Google agrees that the undisputed facts will permit Your Honor to decide as a matter of law whether Mr. Harteau and Plaintiff performed equal work; they did not.[2]

In September 2018, Mr. Harteau transferred out of OCTO to the Google Cloud Platform ("GCP") Engineering organization. There, he worked for a different supervisor, and he lead an organization of approximately 200 engineers responsible for end-to-end development and support of Stackdriver, a key operations management platform within GCP. Plaintiff never led such an organization (let alone supervised any employees), and she never was responsible for performing this type of work. She says nothing in her April 28th letter regarding Mr. Harteau's work in GCP, so presumably she will not argue that he remained a proper comparator after that move. The undisputed evidence will show that his work in this new role was not equal to the work Plaintiff performed during that period. Nor was it substantially similar to the work Plaintiff performed after October 2019.

Plaintiff's letter is silent on the more than 50 other potential comparators outside of OCTO for whom she sought discovery, some of whom did not work in the same establishment (therefore making them improper comparators under either statute). Like Mr. Harteau after September 2018, all of them worked in different organizations within Google, reported to different supervisors, and had vastly different job duties than Plaintiff. Many of them too, like Mr. Harteau, supervised other employees. Therefore, unlike the facts before the court in *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 269 (E.D.N.Y. 2015), cited by Plaintiff, the evidence here will permit Your Honor to determine as a matter of law that these other employees are not proper comparators.

**3. Plaintiff's Challenge To Google's Affirmative Defenses Will Fail.**

Google assumes, for purposes of this letter that Plaintiff intends to seek partial summary judgment as to Google's *third* and fourth affirmative defenses, as those are directed towards Plaintiff's EPA and NYEPL claims.[3] What relief Plaintiff seeks as to Google's affirmative defenses is entirely unclear, in part because the evidence on those affirmative defenses will vary depending upon whom she claims is a comparator. And for now, she seems to limit that assertion to Mr. Harteau. (*See* ECF 112 at 3 ("While Google does have a performance evaluation system, the undisputed facts establish that the performance review system has no bearing on initial leaving or compensation decisions, and once at Google, Ms. Rowe either outperformed or equally performed *to Mr. Harteau* as measured by the performance evaluation system.") (emphasis supplied).) Google respectfully requests that Plaintiff be asked to clarify the basis for her forthcoming motion at a pre-motion conference.

In any event, Google's affirmative defenses will withstand summary judgment. Two things are worth noting at the outset. First, Plaintiff appears to conflate her "leveling" claims which she challenges under Title VII and the NYCHRL, and her compensation claims challenged pursuant to the EPA and NYEPL. While compensation generally increases with one's level within a role, whether someone is hired at level 8 or level 9 is not subject to challenge under the EPA or NYEPL; only the *compensation* paid to them in those roles may be. Google need not establish that the criteria used to make leveling decisions fits within one of the four affirmative defenses available under the EPA or NYEPL. Second, although this is principally an equal pay case, Plaintiff decided *not* to depose one of Google's compensation analysts. Plaintiff noticed the deposition of one such compensation analyst, Chris

---

[1] Plaintiff ignores in her letter that the broader scope of the New York statute did not go into effect until October 18, 2019.

[2] Plaintiff misrepresents the record when she claims Mr. Harteau undisputedly earned more than Plaintiff. Not only did Plaintiff receive additional sign-on compensation that Mr. Harteau did not, but their December 2017 compensation letters indicate that Mr. Harteau's 2018 total compensation award was $76,000 *less* than Plaintiff's.

[3] Google's fifth affirmative defense asserts that Google did not commit the acts or omissions alleged for discriminatory or retaliatory reasons, which is irrelevant to Plaintiff's EPA or NYEPL claims.





Humez, but decided to depose Plaintiff's skip-level manager, Brian Stevens, instead. Had she deposed Mr. Humez, it would be clear to Plaintiff that Google's modeled compensation recommendations issued at each compensation planning cycle do account for time in role (seniority) and performance. Google will readily establish these facts on summary judgment.

As to the "bona fide factor" other than sex affirmative defense, it is impossible for Google to articulate here—and equally impossible for Plaintiff to categorically challenge—its bases for any pay differential that may exist without knowing whose compensation is at issue. If Plaintiff is limiting her affirmative defense arguments to Mr. Harteau only, her motion will fail for at least two reasons.

First, Google can readily establish that Mr. Harteau's greater knowledge of cloud technology and prior experience working directly with the Google Cloud team as a Vice President of Engineering at a key Google client were both "bona fide factors" other than sex to support his compensation upon hire, and factors actually relied upon when making initial compensation decisions. These factors were well documented in his interview feedback, with one interviewer remarking that Mr. Harteau's "leadership circle talk in March of 2016 was one of the best talks I've seen on transformation and migration to the cloud. It seems almost a coup to get him as a candidate in the OCTO." Another interviewer and the hiring manager for the position, Will Grannis, also remarked:

> Candidate knows Google platform extensively, has been a top voice in the market for public cloud adoption at scale, and has extremely high credibility in the engineering community outside and inside of Google based on his direct, no nonsense and practical approach to cloud adoption. This candidate immediately raises the capability of OCTO significantly.

There can be no doubt that Mr. Harteau's *immediate capability to perform the job at a high level given his background and experience* is a job-related factor other than his sex.

Second, Plaintiff claims that "Ms. Rowe either outperformed or equally performed to Mr. Harteau as measured by the performance evaluation system." (ECF 112 at 3.) Not so. Mr. Harteau was an L9 TSC while in OCTO, and Plaintiff was an L8. Employees are evaluated against the requirements of their position at their particular level. An "Exceeds Expectations" rating at level 8 is not equivalent to an "Exceeds Expectations" or even "Consistently Meets Expectations" rating at level 9, because the expectations increase with level. Further, Plaintiff's manager, Will Grannis, testified that Plaintiff consistently failed to deliver meaningful impact in engineering, a critical "pillar" of the role she held. There is nothing in the record to suggest that Plaintiff "outperformed" Mr. Harteau in any respect.

Google looks forward to responding to Your Honor's questions at the pre-motion conference on May 27th.

Respectfully submitted,

Kenneth W. Gage
of PAUL HASTINGS LLP

cc: All counsel of record (via ECF)

LEGAL_US_W # 107970946.4