```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ULKU ROWE,

                Plaintiff,

          v.                           19-cv-8655 (LGS)

GOOGLE LLC,

                Defendant.             Conference
------------------------------x
                                       New York, N.Y.
                                       (remote)

                                       May 27, 2021
                                       11:00 a.m.

Before:

                 HON. LORNA G. SCHOFIELD

                                       District Judge

                        APPEARANCES

OUTTEN & GOLDEN LLP
     Attorneys for Plaintiff
BY:  CARA E. GREENE

PAUL HASTINGS LLP
     Attorneys for Defendant
BY:  KENNETH W. GAGE
     SARA B. TOMEZSKO
```

1             (Remote)

2             (Case called)

3             THE CLERK:  The parties' appearances have been noticed
4    for the record.  Before we begin, I'd like to remind the
5    parties and anyone else listening that recording or
6    rebroadcasting of this proceeding is prohibited.  Violation of
7    this prohibition may result in sanctions.  I'm also going to
8    ask counsel to please state your name before you speak, each
9    time you speak, as we have a court reporter present.

10            We are here before the Honorable Lorna G. Schofield.

11            THE COURT:  Good morning.  And thank you for waiting.
12   I know we're a little bit behind schedule.  There seems to be
13   the morning for discrimination cases.  So this is the second
14   one we're discussing today.  And this is a pre-motion
15   conference, so both parties propose motions for summary
16   judgment.  The plaintiff proposes bringing a partial motion.
17   The defendant proposes bringing a full motion.  And I have read
18   your letters, and I think the way to just cut through this is
19   to give you a sense of what I think.  First of all, I don't
20   want to hear argument.  I have looked at your letters.  And I
21   know that you have claims for gender discrimination and
22   retaliation, under Title VII, the Equal Pay Act, and the
23   NYCHRL.  And it seems pretty clear to me that there are
24   questions of fact as to whether the defendant had
25   discriminatory or retaliatory intent, and that it is a virtual

1   certainty that we would go to trial in this case if it were not
2   resolved.  As you know, it can get fact-intensive.  It appears
3   that if there are questions of fact and that at least some
4   questions will survive.  And so even if the plaintiff is
5   successful, she can only recover damages lost.  And it's not
6   really that helpful to dispose of some claims where there's
7   basically one, one set of facts and one set of damages but just
8   different ways of getting at it.
9           And I know I have experienced counsel on both sides
10  here, so I'll tell you what I typically do or what I would do
11  down the road if this case were to go to trial.  And that is
12  that I would make a proposal to the plaintiff to pick a claim
13  that essentially is easy to prove, and if it were, for example,
14  the city claim, the NYCHRL claim, which is mainly because the
15  law is more lenient, as you know, around the NYCHRL, what I
16  typically would do is essentially promise the parties that I
17  would agree to retain supplemental jurisdiction because it's so
18  late in the case and adjudicate the case, and, to simplify the
19  trial for the jury as well as the parties, to just go with the
20  simplest claim or the easiest claim for the plaintiff to prove,
21  assuming the measure of damages is the same.  And that
22  simplifies things.  But it also illustrates that it's sort of
23  pointless to try to whittle away at the claims at the summary
24  judgment stage.  I just think it's not productive in this kind
25  of setting.

1    And so first of all, I'm, you know, you should know, I
2  can't forbid you from filing a summary judgment motion.  So,
3  you know, you don't have to respond by telling me that.  I
4  understand that.  But talk to me a little bit about why it
5  seems to make sense to you, given what I've just said, if it
6  does, to continue in that way, or perhaps we should think about
7  how else to proceed.
8    I'll hear from the plaintiff first.
9    MS. GREENE:  This is Cara Greene.  Thank you, your
10 Honor.
11    I think from plaintiff's perspective we agree that one
12 path could be to forgo summary judgment motion practice
13 altogether and proceed to a trial.  And we would be prepared to
14 do that.  If we are going the path of summary judgment, then we
15 have tried to consider what issues could be resolved that could
16 really simplify for the jury what their role would be.  And so
17 with respect to the equal pay claims, we think that those are
18 claims that could be resolved entirely, since there is no issue
19 of intent that's required, or no demonstration of intent or
20 bias that's required with respect to equal pay claims.
21    On the discrimination claims, it's focusing --
22    THE COURT:  Although -- if I could just interrupt for
23 a second and say two things.  One is, I think there may well be
24 a question of fact as to the comparators and whether they're
25 really appropriate, the comparators, and that would be enough

1  to get the claim to trial as well.

2  And the other thing that I would say -- and I'll let
3  you continue then; I just don't want to lose my thought -- and
4  that is that I think there probably are issues here.  I mean,
5  even based on your letters, it seems like there are issues that
6  are not in dispute.  But I typically do not grant summary
7  judgment on elements of claims.  I don't think that's
8  appropriate or a really good use of time.  But obviously if the
9  parties want to narrow the scope of the trial and can agree to
10 stipulate before trial as to certain issues or as to what
11 evidence would be or testimony would be to try to make it more
12 focused for the jury, that is the way I would typically handle
13 that.

14 But anyway, I interrupted you.  Apologies for that.
15 So go ahead.

16 MS. GREENE:  No problem.  Thank you.

17 Again, though, we, I think our preference would be to
18 forgo summary judgment altogether.  If defendants were to
19 pursue their right to file for summary judgment, then I think,
20 at least as to certain aspects around the equal pay claim in
21 their affirmative defense, we would ask for the ability at
22 least to raise those issues.

23 THE COURT:  Understood.

24 MS. GREENE:  I think with respect to comparators,
25 certain comparators may present an issue of disputed fact.

1   Other comparators, I think there are no issues of disputed
2   fact.  And I'm referring specifically to her comparators within
3   OCTO.
4             The other just one point I wanted to make with respect
5   to looking ahead to trial is that I appreciate the judge's
6   offer to allow us to focus the trial on particular claims
7   without worrying about jurisdictional issues.
8             The equal pay claims and the discrimination claims do
9   have different damages with respect to liquidated damages that
10  are available under New York Labor Law that are not available
11  under New York City Human Rights Law.
12            THE COURT:  OK.  Fair enough.  And we could figure out
13  a way to try to make the trial efficient and still take that
14  into account.
15            Let me ask this as long as you are speaking.  The
16  other option, of course, would be to try to resolve the case
17  short of trial, and I'm wondering, I think this is a case where
18  you had a mediation but it was very early on.  And if you were
19  to try again, I could either get you a different magistrate
20  judge from Judge Gorenstein, since I know he basically presided
21  over the discovery proceedings, or I could send you to a
22  court-appointed mediator, or you could hire your own mediator.
23  Have you had recent settlement discussions and is that
24  something that you would agree to?
25            Ms. Greene?

           MS. GREENE:  Again, Cara Greene.  No, we've not had
recent discussions, but we're always amenable to seeing if
there's a resolution that could be to the benefit of both
parties.
           THE COURT:  OK.  Let me hear from the defendant.
           MR. GAGE:  Sure, your Honor.  This is Ken Gage.  I
guess I would start with just a general reaction that the thing
that we struggle with on -- one of the things we struggle with
on the defense side here is the scattershot breadth of the
plaintiff's claims, in part -- well, let's just focus on the
equal pay claims and why we think that they are susceptible to
summary judgment.  For example, she has through discovery
argued that there are comparators in a variety of positions but
also including people who are not even in New York, for
example.  There, we think as a matter of law, those folks are
not comparators, under either of the statutes.
           And we also think that, as I think Ms. Greene would
concede, there are no genuine issues of fact as to the work
performed by many of these folks, particularly the folks that
are outside of the OCTO organization.  And we think that those
are legal questions that the Court can and should decide, and
would certainly, even if -- and I heard your Honor loud and
clear, at the top of your remarks -- even assuming summary
judgment were denied, we would like to believe that the case
could be meaningfully narrowed so that the trial would be

manageable, because currently, there are some, I think it's 75-plus alleged comparators on the board here, and right now, we don't really know, beyond the mention of Mr. Harteau in the plaintiff's pre-motion letters, which of those folks the plaintiff is actually intending to pursue as comparators for purposes of her discrimination claims.  So that, I would say, is one of our principal frustrations and challenges here, because we think the whole case could be decided as a matter of law, but at a minimum it could be substantially narrowed before trial.

THE COURT:  If I could just interrupt, I suspect that the plaintiff, as much as you, if that's possible, has little interest in pursuing all those comparators except, of course, they have better insight into their intentions, but you both have equal insight now into what the evidence is.  And my guess is that if you sat down with the appropriate preparation, you could find out from the plaintiff which comparators they plan to pursue and which once they don't, and that would substantially narrow the case and could be done in an afternoon.

Go ahead.

MR. GAGE:  Certainly, your Honor, if we had an indication that Ms. Rowe was prepared to do that, that would be useful.

THE COURT:  Ms. Rowe and Ms. Greene, would that be

1  something that you would be able to do in anticipation of
2  trial, if that's where we were going?
3              MS. GREENE:  Absolutely, your Honor.  As a practical
4  matter, we don't -- we know that there is absolutely no way to,
5  you know, present that number of comparators to a jury in any
6  effective way, and the benefit of discovery is to focus the
7  conversation on who are the proper comparators.  That is a
8  conversation that we would be prepared to have, and also
9  because we know that if we don't have that conversation, then
10 we're looking at motions in limine on these issues, and it's
11 better for the parties to consult together to try to move that
12 issue forward.
13             THE COURT:  OK.  Mr. Gage, did you want to react to
14 the other issues that we've talked about?
15             MR. GAGE:  I guess I will only briefly.  Again, your
16 Honor, we disagree with your comments.  We don't think that
17 there would be any genuine issues of fact for a jury to decide
18 even on the intent question.  And, you know, if that were
19 always an issue for the jury, then there would never be summary
20 judgment employment discrimination cases, and we know that's
21 not true.  And, here, for example, one of the discrimination
22 claims is a claim for an alleged promotion for a job that was
23 never filled.  And the facts are undisputed on that.
24             And so it goes to my earlier point about the
25 plaintiff's claims here covering a very broad spectrum.  And

1   even accepting that not only your Honor has a different view of
2   the world than I do but many other people may, that there may
3   be questions of fact on some of her claims, it still presents
4   us with a situation where what I'm hearing you say is, unless I
5   can get Ms. Greene to negotiate down the scope of her case,
6   we've got to try the whole thing even if we think that there
7   are no genuine issues of fact across the board.
8             THE COURT:  I'm not prejudging the motion, because I
9   haven't read your motion papers; they don't exist yet.  But
10  based on what I've read, it just seems highly likely to me that
11  we're looking at a trial here.  So perhaps -- I mean, it sounds
12  like one of the benefits of settlement discussion might be that
13  you could have some fruitful discussion about narrowing the
14  case or at least understanding how the plaintiff currently
15  views the case in light of discovery, and try to resolve the
16  case on those terms.  And hopefully you would be successful in
17  doing that.  But even if you weren't, you would be ahead of the
18  game in terms of understanding what, you know, what the scope
19  of the current case is that's going to trial.  And it sounds
20  like the plaintiff is in a position to do that now and likely
21  amenable.
22            MR. GAGE:  Well, your Honor, we certainly -- I'm
23  sorry.  This is Ken Gage again.  We certainly would be amenable
24  to having those discussions and seeing how they proceed.
25            THE COURT:  So here's the question.  Would you like a

1    referral to a court-appointed mediator, to a magistrate judge,
2    whose name would be picked out of the wheel -- and it would not
3    be Judge Gorenstein -- or do you want to find your own
4    mediator?
5            Let's start with Mr. Gage.
6            MR. GAGE:  I'm sorry, your Honor.  This is Ken Gage.
7            THE COURT:  No.  I was just -- I was waiting for
8    whoever would speak to speak.  Go ahead.
9            MR. GAGE:  OK.  Again, this is Ken Gage for the
10   record.
11           Your Honor, I -- my own personal preference is just to
12   find a private mediator, because I think some folks are better
13   at dealing with cases like this than others, and rather than
14   taking a random selection -- nothing critical of any of our
15   magistrate judges or mediators, but that's certainly been my
16   preference over time.
17           THE COURT:  OK.  Let me ask the plaintiff, would you
18   be amenable to doing that, assuming I presume that the cost of
19   a mediator would be split between the two sides?
20           MS. GREENE:  Yes.  We would be agreeable.
21           THE COURT:  OK.  So why don't we do this.  Why don't
22   we come up with a schedule for you to try to get the case
23   resolved.  If that is unsuccessful, then you can file your
24   motion for summary judgment, but perhaps in the course of
25   mediation discussions, you can agree to understand and narrow

1    the claims better between yourselves.  And then you can give me
2    a report on what happened in the mediation and also tell me how
3    we should proceed.
4            So let let's do this.  Why don't I give you a week to
5    talk to each other and try to find a mediator that you agree
6    on.  I suspect you both know folks.  I will throw out a couple
7    names, only -- and I have no interest in whether you pick these
8    people or anyone else, but just in case you don't have people
9    at hand who you're thinking about: Judge Scheindlin from this
10   district, recently retired, highly respected, is now doing
11   mediations and arbitrations.  Another former judge, former
12   chief judge from New Jersey, is Faith Hochberg.  She's also
13   doing mediation.  And what I would suggest, if you are
14   interested in either of those people, is just to Google them.
15   They're easy to find.  And of course if you have someone else
16   who you like to work with, that would be great too.
17           So why don't I give you a week for you to tell me that
18   you have agreed on a mediator and tell me when you're meeting
19   with the mediator and what you propose as far as a date for
20   getting back to me, because different people have different
21   schedules in terms of mediators.
22           All right.  And then we'll take it from there.  And if
23   you're unsuccessful, then you can make a proposal about summary
24   judgment or not, going straight to trial; that's possible too.
25   But let's take one step at a time.  And I'll issue an order

L5RAROWCps

| | |
|---|---|
| 1 | today so that it's all clear. |
| 2 | Any questions or anything else you want to talk about? |
| 3 | MR. GAGE:  This is Ken Gage, your Honor.  Just one |
| 4 | question.  Given the holiday weekend, could we have until the |
| 5 | 8th to report back to you? |
| 6 | THE COURT:  Of course. |
| 7 | MR. GAGE:  OK.  Thank you. |
| 8 | THE COURT:  Anything else? |
| 9 | MR. GAGE:  Nothing. |
| 10 | MS. GREENE:  Nothing from plaintiff. |
| 11 | THE COURT:  All right.  Thank you, counsel. |
| 12 | MR. GAGE:  Thank you, your Honor. |
| 13 | MS. GREENE:  Thank you. |
| 14 | MS. TOMEZSKO:  Thank you. |
| 15 | (Adjourned) |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |