**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ULKU ROWE,

                    Plaintiff,

          -against-

GOOGLE LLC,

                    Defendant.

No. 1:19-cv-08655 (LGS)(GWG)

## DEFENDANT GOOGLE LLC'S
## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION TO RETAIN DOCUMENTS UNDER SEAL</u>

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF FACTS ................................................................................................. 1

II.    LEGAL ARGUMENT ...................................................................................................... 4

    A.    Legal Standard ..................................................................................................... 4

    B.    Good Cause Exists to Retain Under Seal Information About Google's Clients and Business Initiatives ............................................................................ 7

    C.    Good Cause Exists to Retain The Identify of Candidates Seeking Executive Positions At Google And The Executive Recruiting Process Under Seal............................................................................................................ 8

    D.    Good Cause Exists to Retain Terms of Google's Compensation Processes and Individual Compensation of Innocent Third-Parties' Employment Under Seal............................................................................................................ 9

    E.    Good Cause Exists to Retain Information About Google's Job Ladders Under Seal.......................................................................................................... 11

    F.    Good Cause Exists to Retain Personal Information Concerning Google's Current and Former Employees Under Seal ....................................................... 12

III.    CONCLUSION ............................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andreu v. Hewlett-Packard Co.*,
No. 15-23270-CIV-MORE, 2016 U.S. Dist. LEXIS 59970 (S.D. Fla. Apr. 28, 2016) ...............................................................................................................7, 11, 12

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019)...........................................................................................6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
119 F. Supp. 3d 152 (S.D.N.Y. 2015)..........................................................................6

*Gambale v. Deutsche Bank AG*,
No. 02 Civ. 4791 HB, 2003 WL 21511851 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004)...........................................................................5

*GoSMiLE, Inc. v. Levine*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011)...........................................................................5

*Estate of Jackson v. Cty. of Suffolk*,
No. 2:12-CV-1455, 2019 WL 3253063 (E.D.N.Y. July 19, 2019) (unpublished) ...................................................................................................................6

*Laura Laaman & Assocs., LLC v. Davis*,
No. 3:16-CV-00594 (MPS), 2019 WL 3716512 (D. Conn. Aug. 7, 2019) ...............4

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006)......................................................................................4, 5

*New York v. Actavis, PLC*,
No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) ..............................6

*Rogers v. Bank of N.Y. Mellon*,
2017 U.S. Dist. LEXIS 152130 (S.D.N.Y. Sep. 19, 2017)...................................7, 11

*Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*,
347 F. App'x. 615 (2d Cir. 2009) .............................................................................5, 6

*Tomassini v. FCA US LLC*,
No. 3:14-cv-1226, 2017 WL 9400672 (N.D.N.Y. Jan. 6, 2017) ..............................5

*Tropical Sails Corp. v. Yext, Inc.*,
No 14 Civ. 7582, 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016)............................4, 5

*United States Sec. & Exchange Comm'n v. Ahmed*,
    No. 3:15-cv-675 (JBA), 2018 WL 4266079 (D. Conn. Sept. 6, 2018)....................................7

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)...........................................................................................................7

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Stipulated Protective Order for the Treatment of Confidential Information dated February 4, 2020, (ECF 23) (the "Protective Order"), and the Court's Individual Rules and Procedures for Civil Cases, Rule I.D, defendant Google LLC hereby moves this Court for an order permitting it to retain under seal certain documents or portions thereof submitted in connection with defendant Google LLC's Motion for Summary Judgment dated November 1, 2021, (ECF 137), as it contains: (1) non-public, confidential and sensitive business information concerning Google's operations, business strategies, and personnel processes, the disclosure of which would result in competitive harm; (2) Google's compensation processes and compensation information for innocent third-parties, the disclosure of which would result in competitive harm to Google and unwarranted invasion of privacy for those third parties; (3) private and personal information about its former and current employees, the disclosure of which would result an unwarranted invasion of privacy; and (4) identifying information for candidates who applied for positions at Google, the disclosure of which would result in unwarranted invasion of privacy.

## I.   STATEMENT OF FACTS

On August 9, 2021, Judge Schofield granted the parties' respective requests for leave to file cross-motions for summary judgment. (ECF 128.) On October 20, 2021, defendant wrote to the Court, pursuant to the Court's Individual Rules and Procedures, Rule III.B.3, to request certain specific relief from the limitation on number of and page limits for exhibits defendant planned to offer in support of its forthcoming motion for summary judgment. (ECF 134.)  On October 22, 2021, the Court granted, in part, defendant's requested relief to file certain declarations and exhibits in support of its motion for summary judgment. (ECF 136).

Google now respectfully requests an order to retain under seal the following documents or

portions thereof submitted in connection with the Motion for Summary Judgment dated November 1, 2021, in the above-referenced matter, (ECF 137), for the reasons set forth below:

- Portions of the deposition transcript of Plaintiff Ulku Rowe, filed as Exhibit 1 to the Declaration of Sara B. Tomezsko offered in support of Google's Motion for Summary Judgment (ECF 143) ("Tomezsko Decl.") (submitted as Exhibit A hereto);

- Portions of the deposition transcript of Tariq Shaukat, filed as Exhibit 3 to the Tomezsko Decl. (submitted as Exhibit B hereto);

- Portions of the hiring packet for Evren Eryurek, filed as Exhibit 11 to the Tomezsko Decl. (submitted as Exhibit C hereto);

- Portions of the hiring packet for Jonathan Donaldson, filed as Exhibit 13 to the Tomezsko Decl. (submitted as Exhibit D hereto);

- Email correspondence concerning employee compensation, filed as Exhibit 20 to the Tomezsko Decl. (submitted as Exhibit E hereto);

- Portions of Plaintiff's year-end 2017 performance review, filed as Exhibit 21 to the Tomezsko Decl. (submitted as Exhibit F hereto);

- Portions of Plaintiff's mid-year 2018 performance review, filed as Exhibit 22 to the Tomezsko Decl. (submitted as Exhibit G hereto);

- Portions of Plaintiff's year-end 2019 performance review, filed as Exhibit 23 to the Tomezsko Decl. (submitted as Exhibit H hereto);

- Portions of Plaintiff's year-end 2020 performance review, filed as Exhibit 24 to the Tomezsko Decl. (submitted as Exhibit I hereto);

- Portions of email correspondence identifying clients and business strategies, filed as Exhibit 25 to the Tomezsko Decl. (submitted as Exhibit J hereto);

- Portions of email correspondence identifying what defendant believes to be Plaintiff's personal cell phone number, filed as Exhibit 34 to the Tomezsko Decl. (submitted as Exhibit K hereto);

- Portions of email correspondence identifying candidates who applied for positions at Google, filed as Exhibit 35 to the Tomezsko Decl. (submitted as Exhibit L hereto);

- Portions of email correspondence identifying clients, filed as Exhibit 38 to the Tomezsko Decl. (submitted as Exhibit M hereto);

- Portions of email correspondence identifying candidates who applied for positions at Google filed as Exhibit 40 to the Tomezsko Decl. (submitted as Exhibit N hereto);

- The declaration of Google compensation analyst Chris Humez filed in support of Google's Motion for Summary Judgment (submitted as Exhibit O hereto);

- Portions of the declaration of Will Grannis filed in support of Google's Motion for Summary Judgment (submitted as Exhibit P hereto);

- Software Engineering job ladder filed as Exhibit 1 to the Declaration of Kevin Lucas offered in support of Google's Motion for Summary Judgment ("Lucas Decl.") (submitted as Exhibit Q hereto);

- Tech Manager job ladder filed as Exhibit 2 to the Lucas Decl. (submitted as Exhibit R hereto);

- Application Engineering job ladder filed as Exhibit 3 to the Lucas Decl. (submitted as Exhibit S hereto);

- Product Manager job ladder filed as Exhibit 4 to the Lucas Decl. (submitted as Exhibit T hereto).

## II.     LEGAL ARGUMENT

As set forth in the accompanying declarations of Brian Ong ("Ong Decl."), Kevin Lucas ("Lucas Decl."), and Frank Wagner ("Wagner Decl."), the information Google seeks to retain under seal reveals: (1) non-public, confidential and sensitive business information concerning Google's operations, business strategies, and personnel processes, the disclosure of which would result in competitive harm; (2) Google's compensation processes and compensation information for innocent third-parties, the disclosure of which would result in competitive harm to Google and unwarranted invasion of privacy for those third parties; (3) private and personal information about its former and current employees, the disclosure of which would result an unwarranted invasion of privacy; and (4) identifying information for candidates who applied for positions at Google, the disclosure of which would result in unwarranted invasion of privacy.

### A.     Legal Standard.

To retain a document under seal, a party must show that good cause exists to shield the document from public view. *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-CV-00594 (MPS), 2019 WL 3716512, at *1 (D. Conn. Aug. 7, 2019); *accord Tropical Sails Corp. v. Yext, Inc.*, No 14 Civ. 7582, 2016 WL 1451548, at *1 (S.D.N.Y. Apr. 12, 2016) ("The proponent of the protective order bears the burden of demonstrating good cause for closure.") (citation omitted).  Courts must first ascertain whether the document in question is a "judicial document," which is a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal citation omitted). If the document is a judicial document, a common law presumption of access attaches.  Here, Google acknowledges that at least portions of the Confidential Documents are "judicial documents" for the limited purpose of resolving its dispositive motion.

Even in the case of judicial documents, however, courts must still examine the ***strength*** of

the presumption of access, based on the weight accorded to the document and the importance of the decision to be made, as "[t]he public's right to access of judicial records, while presumed, is not unlimited." *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791 HB, 2003 WL 21511851, at *2 (S.D.N.Y. July 2, 2003) (internal citation omitted), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004).

Documents should be sealed if "countervailing factors" demand confidentiality. *Lugosch*, 435 F.3d at 120. Where the public's qualified right to access certain documents is implicated, the court must determine if "higher values" allow for sealing. *Id.* Such "higher values" may include, for instance, a party's "interest in protecting confidential business information [that] outweighs the qualified First Amendment presumption of public access." *Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x. 615, 617 (2d Cir. 2009) (affirming district court's holding where "disclosure could cause [party] significant competitive disadvantage.") (citation omitted).

An entity's interest in protecting proprietary or sensitive business information outweighs the public's interest in accessing such materials, and serves as good cause supporting a motion to seal. *See, e.g.*, *Tropical Sails Corp.*, 2016 WL 1451548, at *4 (granting motion to seal "documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" as higher values overcoming the presumption of public access under the qualified First Amendment right to access test because company would suffer competitive harm if made publicly available); *Tomassini v. FCA US LLC*, No. 3:14-cv-1226 (MAD/DEP), 2017 WL 9400672, at *4 (N.D.N.Y. Jan. 6, 2017) (noting that "higher values" may include "[a] business's sensitive information that could harm a litigant's competitive standing"); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630,

649–50 (S.D.N.Y. 2011) (granting motion to seal certain exhibits to reply declaration "contain[ing] highly proprietary material" concerning defendant's business because "the privacy interests of the defendants outweigh the presumption of public access").

This is particularly true where disclosure may result in competitive or financial harm, as is the case here. *Standard Inv. Chartered, Inc*, 347 F. App'x at 617 (affirming district court finding that party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access," where disclosure of the information would subject the party to "financial harm") (citation omitted); *New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (holding that documents that "contain non-public strategies and financial information constitute 'confidential commercial information' under Federal Rule 26(c)(1)(g), particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors").

Likewise, courts regularly protect from disclosure personal information contained within judicial documents. *Estate of Jackson v. Cty. of Suffolk*, No. 2:12-CV-1455, 2019 WL 3253063, at *8 (E.D.N.Y. July 19, 2019) (unpublished) (ordering redaction of portion of summary judgment record "contain[ing] sensitive, personal information about parties and nonparties.") (citing *Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (2d Cir. 2019) (redacting summary judgment record "to protect personally identifying information such as personal phone numbers [and] contact lists")); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (finding that redactions of current and former employees' "sensitive personal information," "including home addresses, biographical information, telephone numbers and compensation" in summary judgment record overcame right of public access). Similarly, if disclosure of information will compromise a third-party's privacy interests, courts have considered this factor when deciding whether to retain

information under seal. *United States Sec. & Exchange Comm'n v. Ahmed*, No. 3:15-cv-675 (JBA), 2018 WL 4266079, at *2 (D. Conn. Sept. 6, 2018) (granting request to seal personal financial and familial information, personal contact information, and information regarding the location and value of personal and real property); *accord United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) (on motion to retain documents under seal, stating that "privacy interests of innocent third parties" should weigh heavily in court's decision of whether to hold information confidential) (citation omitted).  Such protection is available even where, as here, an employer's compensation decisions are at issue. *See, e.g., Rogers v. Bank of N.Y. Mellon*, 2017 U.S. Dist. LEXIS 152130, at *2 n.1 (S.D.N.Y. Sep. 19, 2017) (permitting the redaction of confidential salary information in summary judgment record on pay discrimination claims); *Andreu v. Hewlett-Packard Co.*, No. 15-23270-CIV-MORE, 2016 U.S. Dist. LEXIS 59970, at *33 (S.D. Fla. Apr. 28, 2016) (granting motion to redact "charts containing salary and other information about [plaintiff's alleged comparators]..." in summary judgment record on equal pay claim).

**B.    Good Cause Exists to Retain Under Seal Information About Google's Clients and Business Initiatives.**

Exhibits A, B, F, G, H, I, J, M, P hereto identify Google current and potential customers, clients, strategic business initiatives, and other sensitive, commercial information. Google takes steps to prevent the disclosure of this information and resulting competitive harm to the company. Identification of Google's Cloud customers and clients is generally not disseminated outside of Google without permission from the customer or client. (Lucas Decl., ¶ 3.) For example, if Google Cloud organizes panel discussions with customers, the company seeks written agreement from the customer to record the conversation if it will disclose details about the relationship with Google. (*Id.*)

Google also takes steps to preserve the confidential nature of its strategies for growing its

Cloud business. (*Id.*, ¶ 5.) For example, lists of Google Cloud's top priority clients are not disseminated outside of Google. (*Id.*) Projects or products on which Googlers are working to advance Cloud's business objectives, key relationships Google employees are working to build in furtherance of those objections, and strategies for cultivating business are not widely disclosed outside the Company, especially during initial planning or exploratory phases of those products, products or initiatives. (*Id.*)

Disclosure of this information in a public filing would put Google at a competitive disadvantage in the highly competitive cloud marketplace. (*Id.*, ¶ 6.) Google's Cloud product competes with only a few other offerings from a small number of competitors in the industry. (*Id.*) Disclosure of the specific clients the Cloud business is targeting, the types of businesses or entities with which it is seeking to build relationships, the individuals at those companies who are in contact with Google Cloud's executives (former or otherwise), and the initiatives on which its employees are working would, among other things, provide those competitors with insights into Google's commercial strategies for attracting business and remaining competitive in the marketplace. (*Id.*)

C.      **Good Cause Exists to Retain The Identify of Candidates Seeking Executive Positions At Google And The Executive Recruiting Process Under Seal.**

Exhibits A, L, and N contain identifying information for individuals under consideration for several executive-level roles within the Google Cloud organization. Google takes steps to preserve the confidential nature of the recruiting and hiring process for executive-level candidates in the United States. Google does not disclose the names of individuals in consideration for executive-level roles outside of a group of employees with a need to know this information, which generally includes the recruiters assigned to staff the position for which the candidates are being considered, the hiring manager, and others (*e.g.*, interviewers, schedulers) directly involved in the

hiring process. (Ong Decl., ¶ 4.) Recruiters for leadership positions are expected to limit access to documents detailing who is under consideration for an executive-level role. (*Id.*, ¶ 4.) Information about those candidates in gHire and Thrive, Google's systems for storing data relevant to executive recruitment, is not widely accessible within Google. (*Id.*, ¶ 5.)

Disclosure of a candidates' name and identity would constitute an unwarranted invasion of the affected individual's right to privacy and would result in undue harm. (*Id.*, ¶ 6.) Typically, these individuals have not disclosed to their current employer (or, in the case of a Google employee seeking another executive-level position within Google, their current manager) that they are seeking another role or exploring alternative career opportunities. (*Id.*) Disclosure of their names as part of the recruiting process, especially if Google declines to extend an offer, could result in harm to a candidate's career or professional opportunities with their current employer or manager. (*Id.*)

Disclosure of candidates' names in the public record could also result in harm to Google. (*Id.*, ¶ 7.) Google's ability to attract top talent is dependent, at least in part, on the confidential nature of the recruiting process. (*Id.*) External candidates applying for senior Google roles who may be concerned about the optics of exploring opportunities outside their current employer or role must be able to rely on the confidential nature of the process to feel comfortable participating in it in the first instance. (*Id.*) Even the threat of disclosure of candidates' names in a public filing could discourage highly sought-after executives from considering a role with Google. (*Id.*)

### D.    Good Cause Exists to Retain Terms of Google's Compensation Processes and Individual Compensation of Innocent Third-Parties' Employment Under Seal.

Exhibits C, E, and O hereto contain confidential information about Google's compensation processes and compensation earned or offered to present and former Google employees. Google designs its compensation programs and policies to be highly-competitive in the global marketplace

across the various industries in which Google operates. (Wagner Decl., ¶ 5.) As a result, Google treats information about its compensation programs and policies and any trainings related thereto, as highly confidential and proprietary. (*Id.*) The ways in which Google compensates its competitive, top-level global talent (and thus, recruits and retains its talent) is of great interest to Google's competitors. Google spans many industries, and that leads to competitive interest in their compensation, recruitment, and performance management programs from companies as diverse as a small start-up in California to multinational companies operating around the globe. (*Id.*, ¶ 6.) Any information about how Google recruits and retains talent through its compensation systems, or evaluates employees through leveling and performance management work, would be of great interest to Google's competitors, and could be leveraged against Google to their advantage for the same talent. (*Id.*) It would be damaging to Google if these documents got into the hands of its competitors. (*Id.*)

In designing any written materials regarding compensation, *e.g.*, training materials, written policies, and/or FAQs or other explainers, Google assumes that they will be kept confidential and not published publicly. (*Id.*, ¶ 7.) It takes steps to ensure they are maintained that way. (*Id.*) Descriptions of compensation, philosophy and approach are generally available to only certain employees on internal confidential Google sites. (*Id.*) If a document regarding compensation processes is shared beyond the internal websites, the documents are typically provided only to certain groups and bear the specific restricted audience and confidentiality warnings. (*Id.*) Training presentations regarding compensation philosophy and programming typically bear footer warnings that the information is "Google Confidential and Proprietary," "Proprietary and Confidential," "Confidential – Do Not Forward," or something to that effect. (*Id.*)

To be clear, Google does not discourage employees from discussing their own compensation, either with their peers or outside Google. (*Id.*, ¶ 8.) But Google does differentiate between individual compensation information, which employees are free to share if they so choose, and information about Google's compensation programs and strategies, which are important to protect in the highlight competitive technology industry in which Google operates. (*Id.*). The former can be redacted upon a showing of good cause in light of the privacy concerns that would arise if individual compensation information is widely disclosed without an individual's consent. *Cf. Rogers*, 2017 U.S. Dist. LEXIS 152130, at *2 n.1 (permitting the redaction of confidential salary information in summary judgment record on pay discrimination claims); *Andreu*, 2016 U.S. Dist. LEXIS 59970, at *33 (granting motion to redact "charts containing salary and other information about [plaintiff's alleged comparators]..." in summary judgment record on equal pay claim).

### E.    Good Cause Exists to Retain Information About Google's Job Ladders Under Seal.

Exhibits Q, R, S, and T hereto consistent of job ladder and job family documents for various roles at Google. Various organizations within Google maintain these ladders or leveling guides to describe the expanding breadth of responsibility, scope, and impact as one's level increases within a job ladder or collection of job ladders.  (Lucas Decl., ¶ 12.)  The specificity of the requirements at each level will vary based on the number of job ladders or roles to which the leveling guideline applies.  (*Id.*)  Googlers can consider these documents (among many other things) as a general guide when determining an employee's level of seniority within a job ladder or when evaluating an employee's performance against general expectations for employees at that level of seniority in that particular role.  (*Id.*)

Google considers these leveling guidelines and job ladders to be proprietary in nature,

and does not disclose them outside the Company.  (*Id.*)  Public disclosure of this information

would result in competitive harm, as other companies may seek to model aspects of their

employee hiring or people processes on Google's internal practices.  (*Id.*)  The considerable

time, effort, and resources Google has expended to maintain and update its leveling guidelines

and job ladders to reflect changes in the Company, its workforce, and the needs of the business

would be lost if the fruits of its labor were publicly disclosed.  (*Id.*)

     **F.**     **Good Cause Exists to Retain Personal Information Concerning Google's Current and Former Employees Under Seal.**

Exhibit B hereto references the age of one of the deponents, an innocent third-party to

this action. Exhibit D hereto contains references to an applicant's personal circumstances

concerning his education, disclosed to Google during the hiring process in confidence. Exhibit K

hereto contains what Google believes to be Plaintiff's personal cellphone number.  This

information is personal to Google's former and current employees, and disclosure would result in

an unwarranted invasion of their privacy.

## III.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court issue an order

permitting it to file under seal documents or portions thereof identified in this memorandum.

Should the Court determine that documents submitted fully under seal should not be filed as

such, Google respectfully requests that the Court grant Google leave to submit an application to

file specific portions of those documents under seal for the Court's consideration.

Dated:  Jersey City, New Jersey
      November 2, 2021           PAUL HASTINGS LLP

                                   _____

                           By:    Kenneth W. Gage
                               Sara Tomezsko

200 Park Avenue
New York, NY  10166
Tel:  (212) 318-6000
Fax:  (212) 319-4090
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant*
GOOGLE LLC

## <u>APPENDIX</u>

Pursuant to this Court's Individual Rules and Procedures for Civil Cases, Rule I.D.3, Google hereby identifies the following parties and counsel of record who should have access to the sealed documents:

- Plaintiff Ulku Rowe

- Cara Greene, Outten & Golden LLP

- Maya Jumper, Outten & Golden LLP

- Shira Gelfand, Outten & Golden LLP

- Google LLC

- Kenneth W. Gage, Paul Hastings LLP

- Sara B. Tomezsko, Paul Hastings LLP

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this November 2, 2021, I caused a true and exact copy of the foregoing DEFENDANT GOOGLE LLC'S MOTION TO RETAIN DOCUMENTS UNDER SEAL and all supporting documents to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Jersey City, New Jersey
      November 2, 2021

                                                       Sara B. Tomezsko