**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULKU ROWE, | No. 1:19-cv-08655 (LGS)(GWG) |
| Plaintiff, | |
| -against- | |
| GOOGLE LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO RETAIN DOCUMENTS UNDER SEAL**

## TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ................................................................................... 1

    A.    The Parties' Protective Order and Pre-Filing Confidentiality Review ................. 1

    B.    The Documents At Issue ............................................................................... 3

II.    LEGAL ARGUMENT ...................................................................................... 6

    A.    Legal Standard .............................................................................................. 7

    B.    Good Cause Exists to Retain Confidential Compensation Policies and Processes & Individual Compensation Information of Innocent Third-Parties Under Seal ........................................................................................ 10

    C.    Good Cause Exists to Retain Information about Confidential Client Relationships Under Seal ............................................................................... 13

    D.    Good Cause Exists to Retain Identifying Information of Candidates Seeking Employment At Google Under Seal ...................................................... 14

    E.    Good Cause Exists to Retain Personal and Confidential Personnel Information about Google's Current and Former Employees Under Seal .......... 15

    F.    Good Cause Exists to Retain Google's Job Ladders and Leveling Guides Under Seal .................................................................................................... 16

III.    CONCLUSION ............................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Andreu v. Hewlett-Packard Co.*,
   No. 15-23270-CIV-MORE, 2016 U.S. Dist. LEXIS 59970 (S.D. Fla. Apr. 28,
   2016) ....................................................................................................................10, 12

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   119 F. Supp. 3d 152 (S.D.N.Y. 2015) ...............................................................9, 12

*Gambale v. Deutsche Bank AG*,
   No. 02 Civ. 4791 HB, 2003 WL 21511851 (S.D.N.Y. July 2, 2003), *aff'd and
   remanded*, 377 F.3d 133 (2d Cir. 2004)..................................................................8

*GoSMiLE, Inc. v. Levine*,
   769 F. Supp. 2d 630 (S.D.N.Y. 2011) ....................................................................8

*Estate of Jackson v. Cty. of Suffolk*,
   No. 2:12-CV-1455, 2019 WL 3253063 (E.D.N.Y. July 19, 2019)
   (unpublished) ..........................................................................................................9

*Laura Laaman & Assocs., LLC v. Davis*,
   No. 3:16-CV-00594 (MPS), 2019 WL 3716512 (D. Conn. Aug. 7, 2019) .............7

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006).................................................................................7, 8

*New York v. Actavis, PLC*,
   No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) ...........................9

*Rogers v. Bank of N.Y. Mellon*,
   2017 U.S. Dist. LEXIS 152130 (S.D.N.Y. Sep. 19, 2017)...............................10, 12

*Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*,
   347 F. App'x. 615 (2d Cir. 2009) .......................................................................8, 9

*Tomassini v. FCA US LLC*,
   No. 3:14-cv-1226, 2017 WL 9400672 (N.D.N.Y. Jan. 6, 2017) ............................8

*Tropical Sails Corp. v. Yext, Inc.*,
   No 14 Civ. 7582, 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016).........................7, 8

*United States Sec. & Exchange Comm'n v. Ahmed*,
   No. 3:15-cv-675 (JBA), 2018 WL 4266079 (D. Conn. Sept. 6, 2018)....................9

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)..................................................................................10

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Stipulated Protective Order for the Treatment of Confidential Information dated February 4, 2020, (ECF 23) (the "Protective Order"), and the Court's Individual Rules and Procedures for Civil Cases, Rule I.D, defendant Google LLC hereby moves this Court for an order permitting it to retain under seal certain documents or portions thereof submitted in connection with Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment dated December 6, 2021, (ECF 152) ("Plaintiff's Motion"), as it contains: (1) Google's compensation processes and policies, and compensation information for innocent third-parties, the disclosure of which would result in competitive harm to Google and an unwarranted invasion of privacy for those third parties; (2) names of Google's clients and/or potential clients, the disclosure of which would result in competitive harm to Google and potentially harm those commercial relationships; (3) identifying information for candidates who applied for positions at Google, the disclosure of which would result in unwarranted invasion of privacy; (4) confidential personal or personnel information about its former and current employees, the disclosure of which would result in an unwarranted invasion of privacy; and (5) confidential job ladders or leveling guides, the disclosure of which would result in competitive harm.

## I.   STATEMENT OF FACTS

### A.  The Parties' Protective Order and Pre-Filing Confidentiality Review

On February 4, 2020, the Court so-ordered the Protective Order in this case. (ECF 23.) In relevant part, the Protective Order requires a party who intends to file materials designated as Confidential or Attorney's Eyes Only in connection with a dispositive motion to provide a minimum of ten (10) business days' notice to the designating party of its intent to file the document, or reasonable notice under the circumstances. (*Id.*, § 13(c).) The purpose of the notice

is to allow the parties to cooperate in good faith to determine whether to waive confidentiality designations for filing, or to allow the designating party an opportunity to file a motion to retain the documents under seal pursuant to the Court's procedural rules. (*Id.*, §§ 13(b), (c).)

Google filed a summary judgment motion as to Plaintiff's remaining claims in this lawsuit on November 1, 2021. (ECF 137.) By agreement of the parties, the deadline for Plaintiff's opposition to that motion and cross-motion for summary judgment was December 6, 2021. (Declaration of Sara B. Tomezsko ("Tomezsko Decl."), ¶ 2.) In other words, Plaintiff had a full month to identify the exhibits she wished to file in support of Plaintiff's Motion. On November 19, 2021, Plaintiff requested an extension until November 29, 2021, five business days prior to the filing deadline, to identify confidential documents she intended to file. (*Id.*, ¶ 3.) Google granted that extension. (*Id.*)

On November 29, 2021, Plaintiff sent Google a list of 130 document excerpts and select portions of deposition transcripts, and requested confirmation that Google would retain the confidentiality designations of those items for purposes of Plaintiff's Motion. (*Id.*, ¶ 4.) The following day, on November 30, 2021, Plaintiff identified 37 additional document excerpts and portions of deposition transcripts for Google's review, raising the total number of items for review to 167. (*Id.*, ¶ 5.) Google responded on December 2, 2021, with its position as to each of the document excerpts and deposition transcripts on Plaintiff's list, in some cases waiving the original confidentiality designation, in others maintaining it, and in the remaining instances specifying limited redactions necessary to retain the certain information under seal pending Google's motion to seal. (*Id.*, ¶ 6.)

Much of this exercise proved to be a needless expense of Google's time and effort when, on December 6, 2021, Plaintiff filed her anticipated motion around midnight. (ECF 152–160.)

Plaintiff filed fewer than 100 exhibits, far less than the 167 she requested Google review pre-filing. (ECF 160.) A considerable number of the filed exhibits were not among those identified for Google's earlier review. (Tomezsko Decl., ¶ 8.) In addition, Plaintiff disregarded Google's waiver of confidentiality for certain documents, including Exhs. 27 and 46 to the Declaration of Maya S. Jumper (the "Jumper Decl."), and filed them under seal anyway, requiring Google to address them here.[1] (*Id.*, ¶ 9.)  She also publicly filed at least one document that Google expressly requested she maintain under seal, and a number of other documents not disclosed to Google pre-filing that had been marked confidential during the course of discovery, and which Plaintiff represented would be kept under seal pending Google's sealing motion.  (*Id.*, ¶¶ 10–11.)  Google promptly alerted Plaintiff of those errors and requested she take immediate action to comply with the Protective Order and remove them from public view pending this motion. (*Id.*, ¶ 11.)

Google acknowledges that Plaintiff eventually took steps to ensure that certain publicly-filed documents were later placed under seal pending this motion, but that entire exercise should not have been necessary. Situations like the one described above are precisely what the parties intended to avoid when they negotiated a Protective Order with terms requiring pre-filing designation of potential exhibits.

### B.  The Documents At Issue

Plaintiff's submission of documents provisionally under seal or in redacted format, even after Plaintiff attempted to correct the docket, is still simultaneously over- and under-inclusive. Specifically, Google is not asserting confidentiality with respect to the following provisionally sealed or redacted documents submitted in connection with Plaintiff's Motion: Jumper Decl., Exhs.

---

[1] On December 7, 2021, Google again informed Plaintiff that it had waived confidentiality for Jumper Decl. Exhs. 27 and 46 in writing. Those documents continue to remain under seal, even after Plaintiff made certain corrections to the docket. (ECF 169-4, 169-6.)

13 (ECF 160-13), 14 (ECF 160-14), 15 (ECF 160-15), 16 (ECF 160-16), 19 (ECF 160-19), 20 (ECF 160-20), 21 (ECF 160-21), 23 (ECF 160-23), 26 (ECF 160-26), 27 (ECF 160-27), 35 (ECF 160-35), 40 (ECF 160-40), 46 (ECF 160-46), 48 (ECF 160-48), 54 (ECF 160-54), 62 (ECF 160-62), 65 (ECF 160-65), 68 (ECF 160-68), 74 (ECF 160-74), 81 (ECF 160-81), 83 (ECF 160-83), 86 (ECF 160-86).[2,3]

Google now moves for an order retaining under seal the following documents or portions thereof (the "Confidential Documents") submitted in connection with Plaintiff's Motion for the reasons set forth herein:

- Limited information redacted from Plaintiff's Memorandum of Law in support of Plaintiff's Motion (ECF 153), identified in Tomezsko Decl., Exh. A;

- Limited information redacted from Plaintiff's Response to Google's Rule 56.1 Statement In Support of Google's Motion for Summary Judgment (ECF 154), identified in Tomezsko Decl., Exh. B;

- Limited information redacted from Plaintiff's Affirmative Rule 56.1 Statement in Support of Plaintiff's Motion (ECF 155), identified in Tomezsko Decl., Exh. C;

- Limited information redacted from the Declaration of Cara E. Greene (ECF 156), identified in Tomezsko Decl., Exh. D;

- Jumper Decl., Exh. 1 (ECF 160-1, corrected and ref-filed as ECF 169) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. E;

---

[2] In her correspondence to the Court dated December 6, 2021 (ECF 161), Plaintiff represented that Exhs. 28 and 29 had been submitted under seal. They have been filed on the public docket, (ECF 160-28, 160-29), and Google does not object to their contents being publicly filed.
[3] For any document which Google waives confidentiality as to the pages identified by Plaintiff in connection with Plaintiff's Motion, Google reserves the right to assert confidentiality over other portions of the documents later identified, if any.

- Jumper Decl., Exh. 2 (ECF 160-2);

- Jumper Decl., Exh. 3 (ECF 160-3);

- Jumper Decl., Exh. 4 (ECF 160-4, corrected and re-filed as ECF 169-1) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. F;

- Jumper Decl., Exh. 6 (ECF 160-6);

- Jumper Decl., Exh. 8 (ECF 160-8);

- Limited information redacted from Jumper Decl., Exh. 9 (ECF 160-9);

- Jumper Decl., Exh. 10 (ECF 160-10, corrected and re-filed as ECF 169-2) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. G;

- Jumper Decl., Exh. 18 (ECF 160-18, corrected and re-filed as ECF 169-3) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. H;

- Jumper Decl., Exh. 22 (ECF 160-22);

- Jumper Decl., Exh. 25 (ECF 160-25) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. I;

- Limited information redacted from Jumper Decl., Exh. 30 (ECF 160-30);

- Jumper Decl., Exh. 34 (ECF 160-34) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. J;

- Jumper Decl., Exh. 42 (ECF 160-42) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. K;

- Jumper Decl., Exh. 50 (ECF 160-50) – a version identifying limited portions

Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. L;

- Jumper Decl., Exh. 53 (ECF 160-53);

- Limited information redacted from Jumper Decl., Exh. 56 (ECF 160-56);

- Limited information redacted from Jumper Decl., Exh. 57 (ECF 160-57);

- Jumper Decl., Exh. 59 (ECF 160-59) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. M;

- Jumper Decl., Exh. 60 (ECF 160-60);

- Jumper Decl., Exh. 61 (ECF 160-61) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. N;

- Limited information redacted from Jumper Decl., Exh. 67 (ECF 160-67);

- Jumper Decl., Exh. 69 (ECF 160-69);

- Limited information redacted from Jumper Decl., Exh. 71 (ECF 160-71, corrected and re-filed as ECF 169-7);

- Jumper Decl., Exh. 79 (ECF 160-79) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. O;

- Jumper Decl., Exh. 90 (ECF 160-90) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. P;

- Limited information redacted from Jumper Decl., Exh. 93 (ECF 160-93); and

- Jumper Decl., Exh. 95 (ECF 160-95) – a version identifying limited portions Google seeks to maintain under seal is submitted as Tomezsko Decl., Exh. Q.

## II.   LEGAL ARGUMENT

As set forth in the accompanying declarations of Brian Ong ("Ong Decl."), Kevin Lucas ("Lucas Decl."), Bernita Jamison ("Jamison Decl."), and Frank Wagner ("Wagner Decl."), the

information Google seeks to retain under seal reveals: (1) Google's compensation policies and processes, and compensation information for innocent third-parties, the disclosure of which would result in competitive harm to Google and unwarranted invasion of privacy for those third parties; (2) names of Google's clients and/or potential clients, the disclosure of which would result in competitive harm to Google and potentially harm those commercial relationships; (3) identifying information for candidates who applied for positions at Google, the disclosure of which would result in unwarranted invasion of privacy; (4) confidential personal or personnel information about its former and current employees, the disclosure of which would result in an unwarranted invasion of privacy; and (5) confidential job ladders or leveling guides, the disclosure of which would result in competitive harm.

### A.   Legal Standard

To retain a document under seal, a party must show that good cause exists to shield the document from public view. *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-CV-00594 (MPS), 2019 WL 3716512, at *1 (D. Conn. Aug. 7, 2019); *accord Tropical Sails Corp. v. Yext, Inc.*, No 14 Civ. 7582, 2016 WL 1451548, at *1 (S.D.N.Y. Apr. 12, 2016) ("The proponent of the protective order bears the burden of demonstrating good cause for closure.") (citation omitted).  Courts must first ascertain whether the document in question is a "judicial document," which is a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal citation omitted). If the document is a judicial document, a common law presumption of access attaches.  Here, Google acknowledges that at least portions of many of the Confidential Documents are "judicial documents" for the limited purpose of resolving the pending dispositive motions.

Even in the case of judicial documents, however, courts must still examine the ***strength*** of the presumption of access, based on the weight accorded to the document and the importance of

the decision to be made, as "[t]he public's right to access of judicial records, while presumed, is not unlimited." *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791 HB, 2003 WL 21511851, at *2 (S.D.N.Y. July 2, 2003) (internal citation omitted), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004).

Documents should be sealed if "countervailing factors" demand confidentiality. *Lugosch*, 435 F.3d at 120. Where the public's qualified right to access certain documents is implicated, the court must determine if "higher values" allow for sealing. *Id.* Such "higher values" may include, for instance, a party's "interest in protecting confidential business information [that] outweighs the qualified First Amendment presumption of public access." *Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x. 615, 617 (2d Cir. 2009) (affirming district court's holding where "disclosure could cause [party] significant competitive disadvantage.") (citation omitted).

An entity's interest in protecting proprietary or sensitive business information outweighs the public's interest in accessing such materials, and serves as good cause supporting a motion to seal. *See, e.g.*, *Tropical Sails Corp.*, 2016 WL 1451548, at *4 (granting motion to seal "documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" as higher values overcoming the presumption of public access under the qualified First Amendment right to access test because company would suffer competitive harm if made publicly available); *Tomassini v. FCA US LLC*, No. 3:14-cv-1226 (MAD/DEP), 2017 WL 9400672, at *4 (N.D.N.Y. Jan. 6, 2017) (noting that "higher values" may include "[a] business's sensitive information that could harm a litigant's competitive standing"); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (granting motion to seal certain exhibits to reply declaration "contain[ing]

highly proprietary material" concerning defendant's business because "the privacy interests of the defendants outweigh the presumption of public access").

This is particularly true where disclosure may result in competitive or financial harm. *Standard Inv. Chartered, Inc*, 347 F. App'x at 617 (affirming district court finding that party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access," where disclosure of the information would subject the party to "financial harm") (citation omitted); *New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (holding that documents that "contain non-public strategies and financial information constitute 'confidential commercial information' under Federal Rule 26(c)(1)(g), particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors").

Likewise, courts regularly protect from disclosure personal information contained within judicial documents. *Estate of Jackson v. Cty. of Suffolk*, No. 2:12-CV-1455, 2019 WL 3253063, at *8 (E.D.N.Y. July 19, 2019) (unpublished) (ordering redaction of portion of summary judgment record "contain[ing] sensitive, personal information about parties and nonparties.") (citing *Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (2d Cir. 2019) (redacting summary judgment record "to protect personally identifying information such as personal phone numbers [and] contact lists")); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (finding that redactions of current and former employees' "sensitive personal information," "including home addresses, biographical information, telephone numbers and compensation" in summary judgment record overcame right of public access). Similarly, if disclosure of information will compromise a third-party's privacy interests, courts have considered this factor when deciding whether to retain information under seal. *United States Sec. & Exchange Comm'n v. Ahmed*, No. 3:15-cv-675 (JBA),

2018 WL 4266079, at *2 (D. Conn. Sept. 6, 2018) (granting request to seal personal financial and familial information, personal contact information, and information regarding the location and value of personal and real property); *accord United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) (on motion to retain documents under seal, stating that "privacy interests of innocent third parties" should weigh heavily in court's decision of whether to hold information confidential) (citation omitted).

Such protection is available even where, as here, an employer's compensation decisions are at issue. *See, e.g., Rogers v. Bank of N.Y. Mellon*, 2017 U.S. Dist. LEXIS 152130, at *2 n.1 (S.D.N.Y. Sep. 19, 2017) (permitting the redaction of confidential salary information in summary judgment record on pay discrimination claims); *Andreu v. Hewlett-Packard Co.*, No. 15-23270-CIV-MORE, 2016 U.S. Dist. LEXIS 59970, at *33 (S.D. Fla. Apr. 28, 2016) (granting motion to redact "charts containing salary and other information about [plaintiff's alleged comparators]..." in summary judgment record on equal pay claim).

## B.   Good Cause Exists to Retain Confidential Compensation Policies and Processes & Individual Compensation Information of Innocent Third-Parties Under Seal.

Paragraphs 181, 182, 189, and 190 of Plaintiff's Response to Google's Rule 56.1 Statement contain information about Google's confidential compensation processes and policies that require sealing. Similar information can be found in Jumper Decl., Exhs. 4, 22, and 53.  Google designs its compensation programs and policies to be highly-competitive in the global marketplace across the various industries in which Google operates. (Wagner Decl., ¶ 5.) As a result, Google treats information about its compensation programs and policies and any trainings related thereto, as highly confidential and proprietary. (*Id.*)

In designing any written materials regarding compensation, *e.g.*, training materials, written policies, and/or FAQs or other explainers, Google assumes that they will be kept confidential and

not published publicly. (*Id.*, ¶ 7.) It takes steps to ensure they are maintained that way. (*Id.*) Descriptions of compensation philosophy and approach are generally available to only certain employees on internal confidential Google sites. (*Id.*) Indeed, Jumper Decl., Exh. 53 contains an express disclaimer that its content is "confidential and restricted to managers and People Partners/People Consultants," meaning that it is not even available to everyone inside the company. More general information about compensation available to the wider Google audience does not bear such a disclaimer, and Google is not seeking to keep that information confidential here. (*See, e.g.*, Jumper Decl., Exh. 52.) As Human Resources Director Kevin Lucas explains in Jumper Decl., Exh. 4, compensation guidelines like those found at Jumper Decl., Exh. 22 are closely guarded by the compensation team at Google. (Jumper Decl., Exh. 4 at 139:22 – 140:2.)

The ways in which Google compensates its competitive, top-level global talent (and thus, recruits and retains its talent) is of great interest to Google's competitors who may seek to attract the same caliber of candidates away from Google and to their competing business. (Wagner Decl., ¶ 6.) For that reason, it would be damaging to Google if documents or information about how Google recruits and retains talent through its compensation systems got into the hands of its competitors, which range from small start-ups in California to multinational companies operating around the globe. (*Id.*) Information about Google's compensation programs and strategies, which are important to protect in the highly competitive technology industry in which Google operates, should remain under seal to protect Google's competitive interests. (Wagner Decl., ¶ 8; *see also* Declaration of Will Grannis in Support of Google's Summary Judgment Motion (ECF 142), ¶ 3 (noting that the market for cloud services in which Plaintiff and her alleged competitors work is "intensely competitive").)

Individual compensation information for third-parties to this lawsuit—none of whom have

consented to have their compensation information made public—is located at paragraphs 83 and 333 of Plaintiff's Response to Google's Rule 56.1 Statement; page 25 of the Memorandum of Law in support of Plaintiff's Motion; paragraphs 75, 79, 80, 82, 83, 85, 89, 90, 92, 93, 95, 96, 99, 100, 102, 103, 105, 106, 108, 109 of Plaintiff's Rule 56.1 Statement in support of Plaintiff's Motion; paragraphs 3, 4, 5, 6, 7, and 8 of the Declaration of Cara E. Greene; Jumper Decl., Exhs. 10 and 34; and lines 64:14 and 64:25 of Jumper Decl., Exh. 42. Plaintiff will no doubt insist that because she has chosen to disclose ***her own*** compensation and has alleged an extraordinarily broad population of Director-level employees at Google to be her comparators, that she has a right to disclose the details of ***their*** compensation, whether they consent or not.  To be clear, Google does not discourage employees from discussing their own compensation, either with their peers or outside Google. (Wagner Decl., ¶ 8.) But unless or until those individuals consent to the disclosure, Plaintiff has no right to usurp that choice and make a decision that impacts their privacy interest in this personal information. *Accord Dodona I, LLC*, 119 F. Supp. 3d at 156 ("sensitive personal information" can include "compensation" and redaction from summary judgment record was appropriate); *cf. Rogers*, 2017 U.S. Dist. LEXIS 152130, at *2 n.1 (permitting the redaction of confidential salary information in summary judgment record on pay discrimination claims)[4]; *Andreu*, 2016 U.S. Dist. LEXIS 59970, at *33 (granting motion to redact "charts containing salary and other information about [plaintiff's alleged comparators]..." in summary judgment record on equal pay claim).

---

[4] In opposition to a still-pending motion to seal on the same topic, Plaintiff argued that an earlier opinion in *Rogers*, No. 09 Civ. 8551, 2016 WL 4362204 (S.D.N.Y. Aug. 15, 2016), revealed that the extent of the redaction it permitted was to replace the names of plaintiff's comparators with pseudonyms rather than redacting the compensation information itself. (ECF 150 at p. 9.) Such an approach is unworkable here, given that Plaintiff has repeatedly identified her alleged comparators by name. Any effort to redact or anonymize the names of competitors will be futile, given that their identities can easily be deduced from Plaintiff's many references to them in the public record.

### C.  Good Cause Exists to Retain Information about Confidential Client Relationships Under Seal.

Paragraph 227 of Plaintiff's Response to Google's 56.1 Statement, Jumper Decl. Exhs. 25, 30, 60, 61, 67, and 71, and lines 149:22 – 150:4 of Jumper Decl., Exh. 42 all contain the names of clients and/or potential clients with whom Google Cloud seeks to develop business. Google takes steps to prevent the disclosure of this information and resulting competitive harm to the company. (Lucas Decl., ¶ 3.) Identification of Google's Cloud customers and clients is generally not disseminated outside of Google without permission from the customer or the client. (*Id.*) For example, if Google Cloud organizes panel discussions with customers, the company seeks written agreement from the customer to record the conversation if it will disclose details about the relationship with Google. (*Id.*)

Google also takes steps to preserve the confidential nature of its strategies for growing its Cloud business. (*Id.*, ¶ 5.) For example, lists of Google Cloud's top priority clients are not disseminated outside of Google. (*Id.*) Projects or products on which Googlers are working to advance Cloud's business objectives, and key relationships Google employees are working to build in furtherance of those objectives are not widely disclosed outside the Company. (*Id.*)

Disclosure of this information in a public filing would put Google at a competitive disadvantage in the highly competitive cloud marketplace. (*Id.*, ¶ 6.) Google's Cloud product competes with only a few other offerings from a small number of competitors in the industry. (*Id.*) Disclosure of the specific clients the Cloud business is targeting, the types of businesses or entities with which it is seeking to build relationships, the individuals at those companies who are in contact with Google Cloud's executives would, among other things, provide those competitors with insights into Google's commercial strategies for attracting business and remaining competitive in the marketplace. (*Id.*)

### D.   Good Cause Exists to Retain Identifying Information of Candidates Seeking Employment At Google Under Seal.

Paragraph 27 of Plaintiff's Response to Google's Rule 56.1 Statement, lines 123:15, 130:15, and 133:5 of Jumper Decl., Exh. 1, and Jumper Decl., Exhs. 8, 9, 25, 50, 56, 57, 79, 90, 93, and 96 all contain identifying information of candidates who applied to positions at Google. Certain of those exhibits, including Jumper Decl., Exhs. 8, 9, 25, 90, 93, and 96, contain information about candidates under consideration for positions *other than* those that Plaintiff has put at issue, and are therefore utterly irrelevant to the issues to be decided on the parties' competing motions for summary judgment.

Google takes steps to preserve the confidential nature of the recruiting and hiring process for executive-level candidates in the United States. Google does not disclose the names of individuals in consideration for executive-level roles outside of a group of employees with a need to know this information, which generally includes the recruiters assigned to staff the position for which the candidates are being considered, the hiring manager, and others (*e.g.*, interviewers, schedulers) directly involved in the hiring process. (Ong Decl., ¶ 4.) Recruiters for leadership positions are expected to limit access to documents detailing who is under consideration for an executive-level role. (*Id.*, ¶ 4.) Information about those candidates in gHire and Thrive, Google's systems for storing data relevant to executive recruitment, is not widely accessible within Google. (*Id.*, ¶ 5.)

Separately, disclosure of a candidates' name and identity would constitute an unwarranted invasion of the affected individual's right to privacy and would result in undue harm. (*Id.*, ¶ 6.) Typically, these individuals have not disclosed to their current employer (or, in the case of a Google employee seeking another position within Google, their current manager) that they are seeking another role or exploring alternative career opportunities. (*Id.*) Disclosure of their names

as part of the recruiting process, especially if Google declines to extend an offer, could result in harm to a candidate's career or professional opportunities with their current employer or manager. (*Id.*)

Disclosure of candidates' names in the public record could also result in harm to Google. (*Id.*, ¶ 7.) Google's ability to attract top talent is dependent, at least in part, on the confidential nature of the recruiting process. (*Id.*) External candidates applying for Google roles who may be concerned about the optics of exploring opportunities outside their current employer or role must be able to rely on the confidential nature of the process to feel comfortable participating in it in the first instance. (*Id.*) Even the threat of disclosure of candidates' names in a public filing could discourage highly sought-after employees from considering a role with Google. (*Id.*)

### E.  Good Cause Exists to Retain Personal and Confidential Personnel Information about Google's Current and Former Employees Under Seal.

Page 24 of Plaintiff's Memorandum of Law in support of Plaintiff's Motion, line 131:6 of Jumper Decl., Exh. 1, and Jumper Decl., Exh. 57 all reference an individual other than Plaintiff who allegedly sought guidance from Mr. Grannis about respectfully fighting for what she believes to be fair compensation. This individual has not chosen to assert a complaint of her own (nor has there been an allegation that this individual believes she has been unfairly compensated at Google), and disclosure of her private conversations with her supervisor on the public docket for Plaintiff's benefit would be a gross invasion of privacy. To the extent that the alleged comments could be construed as lodging a workplace concern, additional confidentiality measures put into place by Google's Human Resources and Employee Relations departments to maintain the confidentiality of that concern provide yet another layer of protection warranting that this individual's identify remain under seal. (*See generally* Jamison Decl., ¶ 3 (expounding on the critical importance of maintaining confidentiality of workplace concerns, to the extent possible, to ensure individuals

feel comfortable coming forward in the first instance).)

Jumper Decl., Exhs. 8 (recruiting and hiring information for a non-party), 59 (performance information about non-parties), 60 (same), 61 (same), and 95 (statement about comparative compensation of two non-parties) contain confidential personnel information of non-parties to this action in which those individuals have a privacy interest. To be sure, Google is not seeking to keep sealed the ***ultimate*** performance rating given to Plaintiff's alleged comparators (*see, e.g.*, Tomezsko Decl.. Exh. D attaching a modified redacted version of the Declaration of Cara E. Greene), as this information is concededly relevant to Plaintiff's claims and Google's defenses. But to the extent that these individuals are not even alleged to be Plaintiff's competitors (*i.e.*, individuals identified at Jumper Decl., Exhs. 8, 59, 60, and 95) the Court need not take judicial notice of the information in these documents as it pertains to them to decide the pending dispositive motions.

Plaintiff herself recognizes the importance of maintaining a modicum of privacy for third-parties, as is evident from her own filing. She has unilaterally redacted e-mail addresses from exhibits to the Jumper Declaration, and in Jumper Decl., Exh. 24, Plaintiff has redacted references to her 2016 travel plans (P000235), and she is a ***party*** to this dispute. Similar information for non-parties should therefore remain redacted or under seal to prevent an unwarranted invasion of privacy.

### F.   Good Cause Exists to Retain Google's Job Ladders and Leveling Guides Under Seal.

Jumper Decl., Exhs. 2, 3, 6, and 69 consistent of job ladder and job family documents for various roles at Google as well as an overall leveling guide for Engineering not specific to any job ladder. Various organizations within Google maintain these ladders or leveling guides to describe the expanding breadth of responsibility, scope, and impact as one's level increases

within a job ladder or collection of job ladders. (Lucas Decl., ¶ 12.) The specificity of the requirements at each level will vary based on the number of job ladders or roles to which the document applies. (*Id.*) Googlers can consider these documents (among many other things) as a general guide when determining an employee's level of seniority within a job ladder or when evaluating an employee's performance against general expectations for employees at that level of seniority in that particular role. (*Id.*)

Google considers these leveling guides and job ladders to be proprietary in nature, and does not disclose them outside the Company. (*Id.*; Wagner Decl., ¶ 5.) Public disclosure of this information would result in competitive harm, as other companies may seek to model aspects of their employee hiring or people processes on Google's internal practices. (Lucas Decl., ¶ 12.) The considerable time, effort, and resources Google has expended to maintain and update its leveling guides and job ladders to reflect changes in the Company, its workforce, and the needs of the business would be lost if the fruits of its labor were publicly disclosed. (*Id.*)

Further, Google's approach to leveling reflected in these documents reflect confidential Google priorities regarding products and emerging areas of focus, or new technologies. (Wagner Decl., ¶ 9.) Such documents and information can give competitors information beyond just how Google recruits and retains talent, but access to proprietary information about Google's future business plans. (*Id.*) As such, Google treats leveling guides like those referenced here as highly confidential and proprietary, like trade secrets. (*Id.*)

## III.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court issue an order permitting it to retain under seal documents or portions thereof identified in this memorandum. Should the Court determine that documents submitted fully under seal should not be filed as

such, Google respectfully requests that the Court grant Google leave to submit an application to file specific portions of those documents under seal for the Court's consideration.

Dated:  Jersey City, New Jersey
       December 10, 2021

PAUL HASTINGS LLP

By:     Kenneth W. Gage
        Sara Tomezsko

200 Park Avenue
New York, NY  10166
Tel:  (212) 318-6000
Fax:  (212) 319-4090
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant*
GOOGLE LLC

## <u>APPENDIX</u>

Pursuant to this Court's Individual Rules and Procedures for Civil Cases, Rule I.D.3, Google hereby identifies the following parties and counsel of record who should have access to the sealed documents:

- Plaintiff Ulku Rowe

- Cara Greene, Outten & Golden LLP

- Maya Jumper, Outten & Golden LLP

- Shira Gelfand, Outten & Golden LLP

- Google LLC

- Kenneth W. Gage, Paul Hastings LLP

- Sara B. Tomezsko, Paul Hastings LLP