UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>GOOGLE LLC,<br><br>　　　　　Defendant. | No. 1:19-cv-08655 (LGS)(GWG)<br><br>**DECLARATION OF KEVIN LUCAS IN SUPPORT OF MOTION TO RETAIN DOCUMENTS UNDER SEAL** |

I, KEVIN LUCAS, declare:

1. I am a Director, Human Resources for Defendant Google. I have personal knowledge of the facts set forth in this declaration, or know them to be true in my capacity as an employee for Google based on records that Google keeps in the regular course of business. I could and would competently testify to these facts under oath if called as a witness.

2. I have worked in Google's Human Resources organization since approximately July 2013, and have supported various groups within Google's Cloud organization since approximately February 2018. Currently, I support the business to manage their cyclical programs, onboard new leadership, maximize organizational effectiveness, develop talent, and other similar initiatives.

3. I am familiar with the steps Google takes to preserve the confidential nature of information about its Cloud clients and customers. Google's Cloud customers' and clients' identities are generally not disseminated outside of Google without permission from the customer or client. For example, for a panel discussion involving customers of Google Cloud I worked on, Google sought written agreement from the customers to record the panel sessions

1

because the discussion would include disclosures about the customer's relationship with the Company.

4. To protect these commercial relationships, Google almost never discloses contact information for individuals at the customer or client company, the substance of their communication with Cloud executives, and the cadence at which they communicate with Google without a compelling business justification for doing so.

5. I am also familiar with the steps Google takes to preserve the confidential nature of its strategies for growing its Cloud business. For example, lists of Google Cloud's top priority clients are not disseminated outside of Google. Projects or products on which Googlers are working to advance Cloud's business objectives, key relationships Google employees are working to build in furtherance of those objectives, and strategies for cultivating business are not widely disclosed outside the Company, especially during initial planning or exploratory phases of those projects, products, or initiatives.

6. Disclosure of this information in a public filing would put Google at a competitive disadvantage in the highly competitive cloud marketplace. Google's Cloud product competes with only a few other offerings from a small number of competitors in the industry. Disclosure of the specific clients the Cloud business is targeting, the types of businesses or entities with which it is seeking to build relationships, the individuals at those companies who are in contact with Google Cloud's executives (former or otherwise), and the initiatives on which its employees are working would, among other things, provide those competitors with insights into Google's commercial strategies for attracting business and remaining competitive in the marketplace.

7.      I am also familiar with the steps Google takes to preserve the confidential nature of its organizational structure and changes thereto for various areas within the Company. Google generally does not disseminate this information externally. Within the Company, unless or until the changes are actually implemented, information about potential organizational changes is restricted, usually to the managers whose organizations will be impacted, Human Resources, and (potentially) Google's legal department.

8.      Disclosure of this information in a public filing would put Google at a competitive disadvantage because it would provide its competitors with a blueprint of how to model parts of its organization and allocate resources in the same manner as Google. Google has expended considerable time, effort, and resources to organize its Cloud business in a manner to best achieve operational efficiency, and any competitive advantage gained through these efforts would be lost if disclosed to its competitors. Documents containing this information usually also contain the names and reporting structure for employees not a party to this lawsuit. Disclosure of their information and their place within Google's organizational structure would result in an unwarranted invasion of their personal privacy.

9.      Finally, I am also familiar with Google's talent management and people processes, which include performance evaluations, internal transfers, and "leveling" (i.e., the determination of someone's seniority within their particular "job ladder" or role).

10.     Google treats employees' performance evaluations as confidential information. Numerous individuals might provide input and feedback on an employee to inform the content of the performance review by either submitting peer feedback or participating in a calibration session to vet and confirm an employee's performance rating. But the review document itself—including the employee's overall rating and collected feedback—is generally restricted to the

employee's management chain, other managers within the organization, and Human Resources. Disclosure of this information in a public filing would result in an unwarranted invasion of the employee's privacy, and would also result in competitive harm to Google. Its processes for performance managing its employees, including the criteria on which they are evaluated, may provide competitors with insight into Google's internal processes established to ensure that its workforce remains one of the most competitive in the market. In addition, performance review documents often recite an employee's work performed during the review period, including projects on which he or she worked and client names or accounts. If disclosed, this information would result in commercial harm to Google for the same reasons indicated in paragraph 6 above.

   11. Google also considers information about an employee's internal transfer confidential. When a Googler initiates a transfer from one technical role or job ladder to another, there is generally a trial period during which the individual must demonstrate he or she has the requisite skills, experience, and knowledge to justify a change in role. As part of the process, the individual creates a transfer packet that outlines his or her credentials for the role, the artifacts or examples of past work that support the transfer request, and statements of manager support. Transfer packets are treated confidentially, and are generally shared only with the hiring managers/committee for the target job ladder and Human Resources. Public disclosure of this information would result not only in an unwarranted invasion of the individual's privacy, but also competitive harm to Google. Typically, evidence submitted to support the transfer request includes descriptions of projects or initiatives on which the individual worked and/or the names of customers on whose projects or initiatives the individual had a meaningful impact.

Competitors would be interested in—and Google harmed by disclosure of—this information for the reasons indicated in paragraph 6 above.

12. Finally, various organizations within Google maintain what is known as "leveling guidelines," or general criteria that describe the expanding breadth of responsibility, scope, and impact as one's level increases within a job ladder or collection of job ladders. The specificity of the requirements at each level will vary based on the number of job ladders to which the leveling guideline applies. Googlers can consider these documents (among many other things) as a general guide when determining an employee's level of seniority within a job ladder or when evaluating an employee's performance against general expectations for employees at that level of seniority. Google considers these leveling guidelines and ladders to be proprietary in nature, and does not disclose them outside the Company. Public disclosure of this information would result in competitive harm, as other companies may seek to model aspects of their employee hiring or people processes on Google's internal practices. The considerable time, effort, and resources Google has expended to maintain and update its leveling guidelines and ladders to reflect changes in the Company, its workforce, and the needs of the business would be lost if the fruits of its labor were publicly disclosed.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed on the 20 day of December, 2020 at Aptos, CA.



Kevin Lucas