**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ULKU ROWE,

                          Plaintiff,

        v.

GOOGLE LLC,

                   Defendant.

No. 19-cv-08655

**Oral Argument Requested**

**GOOGLE'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II. THERE IS NO GENUINE ISSUE TO BE TRIED ON PLAINTIFF'S NY EPL CLAIM ................................................................................................................ 1

    A.  Plaintiff Has Not Shown Director-Level Software Engineers, Product Managers, or Application Engineers Do Substantially Similar Work ..................... 2

    B.  Plaintiff and Scott Penberthy Did Not Perform Substantially Equal Work. ............ 8

    C.  Plaintiff and Breslow Did Not Perform Substantially Equal Work ........................ 9

    D.  Plaintiff Cannot Establish A *Prima Facie* Case With Respect to Nicholas Harteau. ............................................................................................................ 10

        i.  Plaintiff's 2017 Rate of Pay Was Higher Than Harteau's. ......................... 10

        ii.  Plaintiff and Harteau Were Not Performing Substantially Equal Work ................................................................................................... 11

III. GOOGLE HAS ASSERTED A BONA FIDE FACTOR OTHER THAN SEX AFFIRMATIVE DEFENSE .................................................................................. 13

    A.  Google Does Not Assert A Seniority-based or Merit-based Affirmative Defense as to Plaintiff's Alleged Comparators in New York ................................ 13

    B.  There Is No Genuine Dispute that Google Relied On A Bona Fide Factor Other Than Sex In Setting Compensation ........................................................... 13

        i.  Relative Cloud Experience and Level Determined Starting Pay ............... 13

        ii.  Plaintiff Has Not And Cannot Show Pretext to Rebut Google's Affirmative Defense ............................................................................... 17

        iii.  The Same Affirmative Defense Applies With Respect to Stuart Breslow and Scott Penberthy ................................................................. 20

IV. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT ON PLAINTIFF'S NYCHRL CLAIMS. ................................................................... 21

    A.  Google's Leveling and Compensation Decisions Were Based On Legitimate Nondiscriminatory Factors. ............................................................... 21

        i.  Plaintiff Has Not Been Treated Less Well Than the L9 Technical Directors On the Basis of Sex .................................................................. 22

        ii.  Plaintiff Has Not Been Treated Less Well On the Basis of Sex Than The L8 Technical Directors Who Perform Applied AI Work .................... 24

        iii.  Plaintiff Is Not Similarly Situated Director-level SWEs, AEs, and PMs ........................................................................................................ 25

        iv.  None of the Global Client Technical Leads or Global Client Leads Are Similarly Situated to Each Other ...................................................... 25

# TABLE OF CONTENTS
(continued)

|  | B. | Plaintiff Has Failed To Show that Any of Google's Decisions Were Motivated by Sex, Even In Part | 27 |
|  | C. | There Is No Evidence Of Pretext In the Record | 29 |
|  | D. | Plaintiff Was Not Treated Less Well Because of Sex In the GCTL Role | 29 |
|  | E. | Plaintiff Was Not Treated Unfairly During Her FSVL Candidacy | 30 |
|  | F. | There Is No Triable Issue on Plaintiff's Retaliation Claims | 31 |
| V. | CONCLUSION | | 35 |

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Birchmore v. Granville Cent. Sch. Dist.*,
   2021 WL 22606 (N.D.N.Y. Jan. 4, 2021) ................................................................. 3

*Boatright v. U.S. Bancorp*,
   2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020), *appeal docketed*, No. 20-4236 (2d
   Cir. Dec. 22, 2020) .............................................................................................*passim*

*Boatright v. U.S. Bancorp*,
   No. 20-4236 (2d Cir. Dec. 22, 2020) ...................................................................... 2

*Brinkley-Obu v. Hughes Training, Inc.*,
   36 F.3d 336 (4th Cir. 1994) ..................................................................................... 12

*Campbell v. Cellco P'ship*,
   860 F. Supp. 2d 284 (S.D.N.Y. 2012) ..................................................................... 31

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 26

*Chenette v. Kenneth Cole Prods., Inc.*,
   345 F. App'x 615 (2d Cir. 2009) ............................................................................ 34

*Chiaramonte v. Animal Med. Ctr.*,
   677 F. App'x 689 (2d Cir. 2017) ..................................................................... 9, 11, 12

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ......................................................... 2

*Collins v. Cohen Pontani Liberman & Pavane*,
   2008 WL 2971668 (S.D.N.Y. July 31, 2008) ........................................................ 28

*DeJesus v. Starr Tech. Risks Agency, Inc.*,
   2004 WL 2181403 (S.D.N.Y. Sept. 27, 2004) ....................................................... 20

*Drury v. Waterfront Media, Inc.*,
   2007 WL 737486 (S.D.N.Y. Mar. 8, 2007) ............................................................ 17

*EEOC v. Maryland Ins. Admin.*,
   879 F.3d 114 (4th Cir. 2018) .............................................................................. 12, 17

*EEOC v. Port Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014) ........................................................................... 6, 7, 12

*Eisenhauer v. Culinary Inst. of Am.*,
   2021 WL 5112625 (S.D.N.Y. Nov. 3, 2021) .................................................. 2, 16, 17

*Epstein v. Sec'y, U.S. Dep't of Treasury,*
   739 F.2d 274 (7th Cir. 1984) ......................................................................... 26

*Fenner v. News Corp.,*
   2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) (Schofield, J.) ...................... 24

*Fraser v. MTA Long Island R.R.,*
   295 F. Supp. 3d 230 (E.D.N.Y. 2018) ......................................................... 30

*Gambale v. Deutsche Bank AG,*
   2003 WL 21511851 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133
   (2d Cir. 2004) .............................................................................................. 28

*Garcia v. Barclays Capital, Inc.,*
   281 F. Supp. 3d 365 (S.D.N.Y. 2017) ..................................................... 1, 9

*Giannone v. Deutsche Bank Sec., Inc.,*
   2005 WL 3577134 (S.D.N.Y. Dec. 30, 2005) ............................................ 28

*Golsten-Green v. City of New York,*
   184 A.D.3d 24, 123 N.Y.S.3d 656 (1st Dep't 2020) .................................. 29

*Gorzynski v. JetBlue Airways Corp.,*
   596 F.3d 93 (2d Cir. 2010) ......................................................................... 27

*Graham v. Long Island R.R.,*
   230 F.3d 34 (2d Cir. 2000) ......................................................................... 31

*Hamilton v. City of New York,*
   2021 WL 4439974 (E.D.N.Y. Sept. 28, 2021) .......................................... 25

*Holt v. Dynaserv Indus., Inc.,*
   2016 WL 5108205 (S.D.N.Y. Sept. 19, 2016) ........................................... 33

*Holtz v. Rockefeller & Co., Inc.,*
   258 F.3d 62 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin.*
   *Servs., Inc.*, 557 U.S. 167 (2009) .................................................................. 4

*Husser v. N.Y.C. Dep't of Educ.,*
   137 F. Supp. 3d 253 (E.D.N.Y. 2015) ........................................................ 16

*Jimenez v. City of New York,*
   605 F. Supp. 2d 485 (S.D.N.Y. 2009) ........................................................ 33

*Kellman v. Metro. Transp. Auth.,*
   8 F. Supp. 3d 351 (S.D.N.Y. 2014) ............................................................ 29

*McDowell v. T-Mobile USA, Inc.*,
  2007 WL 2816194 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 F. App'x 531 (2d Cir.
  2009)........................................................................................................................25

*McGuinness v. Lincoln Hall*,
  263 F.3d 49 (2d Cir. 2001) .....................................................................................24

*Melman v. Montefiore Med. Ctr.*,
  98 A.D.3d 107, 946 N.Y.S.2d 27 (1st Dep't 2012)............................................21, 33

*Mickelson v. New York Life Ins. Co.*,
  460 F.3d 1304 (10th Cir. 2006)...............................................................................17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ....................................................................................22

*Miller v. City of New York*,
  2018 WL 2059841 (S.D.N.Y. May 1, 2018), *aff'd sub nom. Bloise v. City of
  New York*, 768 F. App'x 103 (2d Cir. 2019) ................................................22, 23, 24

*Nolley v. Swiss Reinsurance Am. Corp.*,
  857 F. Supp. 2d 441 (S.D.N.Y. 2012), *aff'd sub nom. Nolley v. Swiss Re Am.
  Holding Corp.*, 523 F. App'x 53 (2d Cir. 2013) .......................................................33

*Osborn v. Home Depot U.S.A., Inc.*,
  518 F. Supp. 2d 377 (D. Conn. 2007) ......................................................................16

*Ping Chow Wei v. Anthem Inc.*,
  2018 WL 5622571 (E.D.N.Y. Sept. 4, 2018)............................................................23

*Quartararo v. J. Kings Food Serv. Prof'ls, Inc.*,
  No. 17-CV-7390 (RRM), 2021 WL 1209716 (E.D.N.Y. Mar. 31, 2021).................33

*Rizo v. Yovino*,
  887 F.3d 453 (9th Cir. 2018) ...................................................................................17

*Shah v. Wilco Sys., Inc.*,
  27 A.D.3d 169, 806 N.Y.S.2d 553 (2005).................................................................23

*Shumway v. United Parcel Serv., Inc.*,
  118 F.3d 60 (2d Cir. 1997) .......................................................................................25

*Universal Calvary Church v. City of New York*,
  2000 WL 1745048 (S.D.N.Y. Nov. 28, 2000) ...........................................................4

*Walsh v. New York City Hous. Auth.*,
  828 F.3d 70 (2d Cir. 2016) .......................................................................................28

*William v. Morrison & Foerster LLP,*
  2021 WL 3012739 (N.D. Cal. Mar. 12, 2021) .......................................................... 23

*Williams v. New York City Hous. Auth.,*
  61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ..................................................... 22

*Zimmer v. Warner Bros. Pictures, Inc.,*
  2016 WL 9331304 (Sup. Ct., N.Y. Cnty. Dec. 23, 2016) (unpublished) ................... 33

**Other Authorities**

29 C.F.R. § 1620.17 ................................................................................................... 3

Fed. R. Civ. P., Rule 56(c)(1)(A) ............................................................................... 9

Local Rule 56.1(d) ...................................................................................................... 9

## I.  Introduction

Plaintiff's arguments are unsupported by facts. She selectively relies on some evidence, taken out of context, while completely ignoring other parts of the record. She relies on her subjective opinions of the value of her prior work experience and her contributions at Google. Critically, however, she concedes that an employee's level at Google relates to the scope and complexity of the job they are expected to perform. That concession alone fundamentally undermines her position because it corroborates Google's argument that it expected more from Level 9 employees than it did from Plaintiff as a Level 8 and, therefore, compensated them differently.

For the reasons set forth in Google's moving papers and herein, Google's motion for summary judgment should be granted and Plaintiff's motion for partial summary judgment should be denied.[1]

## II.  There Is No Genuine Issue To Be Tried On Plaintiff's NY EPL Claim

Plaintiff concedes it is her burden to show her alleged comparators perform equal or substantially similar work to establish even a *prima facie* case under the New York Equal Pay Law ("NY EPL"). (Pl.'s Opp.[2] at 11.) *See also Garcia v. Barclays Capital, Inc.*, 281 F. Supp. 3d 365, 385 (S.D.N.Y. 2017) (articulating burden shifting framework under both Equal Pay Act and NY EPL).

---

[1] References to the parties' Rule 56.1 Statements of Fact are indicated throughout the brief as follows:
- "Reply SMF __" refers to Google's Reply Rule 56.1 Statement of Undisputed Material Facts filed herewith, which contains Google's original Rule 56.1 Statement (ECF 139); Plaintiff's responses thereto (ECF 154); Google's replies; Plaintiff's Statement of Additional Material Facts submitted on December 6, 2021, and originally appended to the end of Google's original Rule 56.1 Statement (ECF 154); and Google's responses.
- "Pl.'s SMF __" refers to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts dated December 6, 2021, submitted in support of her Cross-Motion for Partial Summary Judgment (ECF 155).
- "Def.'s Counter. SMF" refers to Defendant's Counterstatement of Undisputed Material Facts appended to the end of Plaintiff's Rule 56.1 Statement of Undisputed Material Facts and filed herewith.

To the extent Google cites Plaintiff's Statement of Additional Material Facts, it refers to those numbered paragraphs in "Reply SMF __" without adopting any allegations, arguments, characterizations, or facts (express or implied) set forth in those paragraphs therein.

[2] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Google's Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment, dated December 6, 2021 (ECF 153.)

By her silence, Plaintiff also concedes that the Equal Pay Act's ("EPA") "substantially *equal* work" standard applies prior to the NY EPL's October 2019 amendments. (Def.'s Br. at 22.)[3] *See Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (failure to address issue raised by adversary in opposition amounts to concession or waiver of argument) (collecting cases); *see also Eisenhauer v. Culinary Inst. of Am.*, 2021 WL 5112625, at *2–3 (S.D.N.Y. Nov. 3, 2021) (where Plaintiff's EPA and NY EPL claims cover work pre-dating 2019 NY EPL amendment, analyzing claims together under applicable EPA standards). Plaintiff has failed to carry her burden under any standard. No reasonable juror could conclude Plaintiff and her alleged comparators are performing substantially equal or, after October 2019, substantially similar work.

### A. Plaintiff Has Not Shown Director-Level Software Engineers, Product Managers, or Application Engineers Do Substantially Similar Work

The Court can and should dismiss Plaintiff's NY EPL claims as to the Director-level Software Engineers ("SWEs"), Product Managers ("PMs"), and Application Engineers ("AEs"). "[T]wo positions may be so different such that no reasonable juror could conclude that they are substantially equal." *Eisenhauer*, 2021 WL 5112625, at *3; *see also Boatright v. U.S. Bancorp*, 2020 WL 7388661, at *12–13 (S.D.N.Y. Dec. 16, 2020) (granting summary judgment for employer on Plaintiff's EPA claim for Plaintiff's failure to prove her position was substantially equal during the relevant period), *appeal docketed*, No. 20-4236 (2d Cir. Dec. 22, 2020).[4] That is manifestly the case here, even under the "substantially similar" standard of the amended NY EPL.

Plaintiff concedes the vast majority of Director-level SWEs, PMs, and AEs manage other

---

[3] "Def.'s Br." refers to Google's Memorandum of Law In Support of its Motion for Summary Judgment filed on November 1, 2021. (ECF 138.) The EPA's substantially equal standard applies to Plaintiff's NY EPL claims as to Scott Penberthy (section II.B *infra*), Stuart Breslow (section II.C, *infra*), and Nicholas Harteau (section II.D *infra*). It also applies to any claims with respect to the Director-level SWEs, PMs and AEs in New York who held the positions at issue prior to the 2019 amendment to the NY EPL (section II.A, *infra*).

[4] Plaintiff filed a notice of appeal in *Boatright*, but the appeal specifically excludes the judgment entered on plaintiff's equal pay claims under the EPA. (*Boatright v. U.S. Bancorp*, No. 20-4236 (2d Cir. Dec. 22, 2020))

employees, a responsibility she never had. (Reply SMF 14, 15, 144, 152, 160.) People managers evaluate their employees' performance, (Reply SMF 217, 218, 219, 220, 221); they set compensation for direct reports, (Pl.'s SMF 114); and they supervise and direct the work of their subordinates. (Reply SMF 145, 152, 155, 158, 160.) Plaintiff never performed any of these responsibilities at Google. (Reply SMF 15, 16.) Her concessions are fatal to her NY EPL claim as to these comparators. *See Boatright*, 2020 WL 7388661, at *12 (granting summary judgment for employer on EPA claim; plaintiff failed to establish that she and her alleged comparator performed substantially equal work where alleged comparator had supervisory responsibilities and plaintiff did not) (citing 29 C.F.R. § 1620.17).

Plaintiff says this distinction should not matter and points to a sentence of deposition testimony, "I'm not aware of any compensation differences between people managers versus ICs."[5] (Pl.'s Opp. at 39.) She is wrong. Plaintiff must first prove the work performed required equal skill, effort, and responsibility before Google's explanations for any pay disparities become relevant, as she herself argues in her brief. (Pl.'s Opp. at 13). Because people managers have different responsibilities individual contributors do not have, Plaintiff cannot make this *prima facie* showing. *See Boatright*, 2020 WL 7388661, at *12. In any event, the Court should not consider this "evidence" submitted solely in response to Reply SMF 145 because she has failed to comply with the proper procedure outlined in Local Rule 56.1(b). *See id*. at *11 (outlining procedure); *Birchmore v. Granville Cent. Sch. Dist.*, 2021 WL 22606, at *1 (N.D.N.Y. Jan. 4, 2021) (declining to consider

---

[5] Plaintiff's "question" at the 30(b)(6) deposition was, "I'm trying to understand everything that may be implicated by someone having the designation of individual contributor versus manager." Google objected to the form of the question. The witness explained, "[I]t's a structural decision or a functional decision, right. . . . I can't say too much because when I think about it from a performance or promotion perspective you're still evaluated on the expectations of your—your role and ladder regardless of people manager versus IC's." (Declaration of Maya S. Jumper (ECF 160) ["Jumper Decl."], Exh. 4 at 122:19-123:23.)

facts asserted in response to defendant's motion not submitted in compliance with local procedure).[6]

There are plenty of other meaningful differences Plaintiff concedes, either by affirmatively admitting to them or failing to support her denials with citations to admissible evidence. "Local Rule 56.1 clearly states that the moving party's 56.1 statement 'will be deemed to be admitted unless controverted,'" *Universal Calvary Church v. City of New York*, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000), and requires that "each statement controverting any statement of material fact [] must be followed by citation to evidence which would be admissible." Local R. 56.1(d). Facts that are not contradicted by specific, admissible evidence are deemed admitted for purposes of summary judgment. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73–74 (2d Cir. 2001) (collecting cases), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Accordingly, the following remains undisputed:

- The core responsibility of a Director-level SWE is to write the code for Google's products, services and infrastructure, or (in the case of a people manager), review and approve code written by other engineers. (Reply SMF 140.) They create innovative algorithms, libraries or services that power Google's products and features. (Reply SMF 141.) They design software and hardware innovations used throughout parts of Google. (*Id.*) They work with data and signals impacting product quality, reliability, precision/recall, usage, revenue, *etc*. (*Id.*) They create development infrastructure to increase productivity, quality, and efficiency across Google. (*Id.*) They reduce Google's "technical debt" by merging or deprecating portions of Google's infrastructure. (*Id.*) They contribute to Product Requirement Documents defining what products the engineer or team will build and how they will build them. (Reply SMF 142.) After

---

[6] As noted in Google's Reply in Further Support of Google's Rule 56.1 Statement of Undisputed Material Facts filed herewith, Google takes the same position with respect to each of Plaintiff's responses that assert additional "facts" that fail to appear in a separate, concise statement of facts she contends there exist a genuine issue to be tried.

interviewing for a Director-level SWE position in 2015, Plaintiff did not receive an offer because nearly half of her interviewers rated her as a "weak hire" or "no hire," and there were concerns around her having the relevant knowledge to perform the role. (Def.'s Counter. SMF 153, 154, 155, 156, 157, 158, 159.)

- Director-level AEs work on Google's proprietary products built for internal use, or third-party products integrated into Google's systems. (Reply SMF 150.) They operate across the entire product lifecycle, from implementation through enhancement. (Reply SMF 149.) They own a portfolio of applications and are responsible for all aspects of developing and maintaining those applications. (*Id.*) Developing a go-to-market strategy is not integral to the role because their work focuses almost exclusively on applications internal to Google. (Reply SMF 151.)

- Director-level PMs develop Google's technology products from inception through development and deployment. (Reply SMF 155.) They develop multi-year roadmaps for the deployment of a specific product or products in their relevant area, and manage the process against that roadmap on a quarterly basis. (*Id.*)  Their success is partially measured by the ability of products to meet certain metrics specified at the start of the product roadmap, frequency of product adoption, user engagement, and user satisfaction. (Reply SMF 156.) They manage anywhere from a single product to a portfolio of half a dozen different products. (Reply SMF 157.) They set priorities for their product area, and allocate resources in annual planning, managing the allocation of resources against those priorities over the course of the year. (Reply SMF 158.) They have profit and loss responsibilities and must appropriately project revenue for their product area and deliver on those projections each quarter. (Reply SMF 159.)

Plaintiff has never performed any of the core responsibilities of Director-level SWEs, AEs, or PMs. She concedes she is not responsible for building or developing Google Cloud products or

managing teams that do. (Reply SMF 6.) She is not responsible for the roadmap or budget for any particular product. (*Id.*) She does not and has not contributed code to Google's products, services, or infrastructure. (Reply SMF 144.)

In response, Plaintiff asserts that the work of these other employees must be substantially similar because Google used the same Leadership, General Cognitive Ability ("CGA"), and Googliness rubrics when evaluating candidates for these positions. (Pl.'s Opp. at 22; Def.'s Counter. SMF 164.) This argument fails for two reasons.

First, Plaintiff cannot establish that Google uses the same Role-Related Knowledge ("RRK") rubrics to evaluate candidates across these roles. Google uses RRK rubrics to assess a candidate's knowledge and related experience against the requirements of a specific role. (Def.'s Counter. SMF 167, 168.) Each job family has its own unique RRK rubric because each role at Google requires unique role-related knowledge and skills. (*Id.*) Because Plaintiff cannot show the use of consistent RRKs across these divergent roles, she instead relies on the universal use of Leadership and Googliness rubrics to demonstrate common responsibilities, skills, and effort. (Pl.'s Opp. at 22.) She cannot rely on *those* rubrics to show she is performing similar work to her alleged comparators, because Google uses the same Leadership and Googliness rubrics to evaluate candidates for roles at L8 and above across most roles at the company, regardless of job content. (Def.'s Counter. SMF 165.) If that were sufficient to state a *prima facie* case, Plaintiff would be comparable to most Director-level employees in marketing, in legal, in sales, in operations, etc. That is clearly not the law, even under the amended NY EPL.

Second, comparability for purposes of equal pay claims turns on the actual work performed in the job and whether it requires substantially equal or similar responsibilities, skill, and effort, not the use of similar evaluative criteria. *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 257–58

(2d Cir. 2014). The fact that candidates are evaluated against the same general criteria merely shows that candidates are "subject to the same human resources policies," not that their jobs require substantially equally skill and effort. *Id.*

Plaintiff's additional argument that the Engineering-wide Leveling Guide "accurately reflects the skills and expectations across all Engineering roles" not only mischaracterizes the document, but is also insufficient to create a genuine issue of material fact. (Pl.'s Opp. at 22.) There is no evidence anyone consulted the 2020 Engineering-wide Leveling Guide when hiring Plaintiff or any of her alleged comparators. Even if managers consulted it for performance evaluations—a dubious assertion at best—that document explicitly does not apply to any particular job, job family, or job ladder, and instead directs users to consult the relevant job ladder for more detailed information. (Def.'s Counter. SMF 186.) Moreover, the guide says nothing about the *requirements* and *responsibilities* for any particular job. (Def.'s Counter. SMF 186, 187.) It provides general *expectations* across all Engineering roles at various levels. (*Id.*)[7] Even at the level of general expectations, the document clearly differentiates between L8 and L9 Engineering roles in terms of Knowledge and Experience, Complexity and Scope, Leadership and Influence, and Organizational Impact. (Def.'s Counter. SMF 187.)

Plaintiff's final argument, that employees sometimes transfer between jobs, fares no better. (Pl.'s Opp. at 22.) She admits employees must undergo a rigorous trial period to demonstrate they have the skill and domain knowledge to succeed in the new role. (Reply SMF 135.) The fact that some employees successfully demonstrate competency in a different role does not mean that the roles require substantially similar responsibility, skill and effort as a matter of law. If that were the

---

[7] Plaintiff is not seeking to compare herself to all Director-level Engineering employees at Google to whom the Engineering-wide Leveling Guideline might apply. (Pl.'s Oct. 21, 2021 Ltr. (ECF 134) at 2 n.1.)

case, there would be no need for the trial period in the first instance.[8]

Given the undisputed and material differences between Plaintiff's work and the work of Director-level SWEs, AEs, and PMs, the Court may dismiss her NY EPL claims as a matter of law. (*See* Def.'s Br. at 15 n.11 (collecting cases disposing of equal pay claims on summary judgement).)

**B. Plaintiff and Scott Penberthy Did Not Perform Substantially Equal Work.**

Scott Penberthy is the only L8 Technical Director in New York who earned more than Plaintiff, and he only worked in New York from December 2016 until November 2017 when he relocated to California. (Reply SMF 29.) Based upon the record, the Court can find as a matter of law he is not a proper comparator for two reasons.

First, Plaintiff should be estopped from making this argument. Plaintiff *expressly disavowed* Penberthy as a comparator at deposition because he was an L8 Technical Director and she only wants to compare herself to L9s. (Reply SMF 66.) *Cf. Boatright*, 2020 WL 7388661, at *12 n.2 (plaintiff precluded from identifying additional alleged comparator for first time in opposition to summary judgment).

Second, she cannot show that she and Penberthy performed substantially *equal* work. Penberthy does "specialized work in applied artificial intelligence ('Applied AI') and machine learning" in addition to performing other aspects of the Technical Director role. (Reply SMF 78.)[9] Plaintiff does not have these additional responsibilities. (Reply SMF 80.) They therefore do not

---

[8] Plaintiff concedes that each L9 alleged comparator who transferred to the PM or SWE job ladder was re-calibrated to L8 on their new job ladder post-transfer. (Reply SMF 134, 135, 136, 137.) Had Plaintiff successfully completed the same ladder transfer process, she would have been down-leveled as well, just like Nicholas Harteau, Ben Wilson, and Evren Eryurek. (*Id.*) If this Court concludes she is similarly situated to PMs and SWEs, it must account for that level adjustment. This is an additional, independent reason Plaintiff cannot show she is comparable to L9 SWEs or PMs, even if she can show Google should have hired her as an L9 Technical Director.

[9] In response to Def.'s SMF 78, Plaintiff asserts that Penberthy did not start working on Applied AI until 2019. (Reply SMF 78.) Plaintiff offers no citation to the record to support this bald assertion, because there is no such evidence. Indeed, the record demonstrates that Penberthy had Applied AI responsibilities as early as 2017—the year he worked in New York and falls within the scope of the NY EPL. (Reply SMF 78.)

perform work requiring substantially equal skill, effort, and responsibility as a matter of law. *See Boatright*, 2020 WL 7388661, at *12 (plaintiff failed to make out *prima facie* case under EPA where comparator performed additional responsibilities plaintiff did not, including supervisory responsibilities and role in developing strategy).

### C.  Plaintiff and Breslow Did Not Perform Substantially Equal Work[10]

Plaintiff has failed to address the arguments raised in Google's moving brief with respect to Breslow. By failing to adduce any evidence to the contrary, she does not dispute the scope of his role was broader than hers; Breslow worked with clients in multiple regulated industries, not just financial services. (Reply SMF 114.) *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d). While there is admittedly some overlap in general responsibilities between Plaintiff's role and Breslow's, her concession that there are meaningful differences in the scope of their roles is fatal to her NY EPL claim. *See Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691 (2d Cir. 2017) (summary order) (showing that positions share some common characteristics is insufficient to survive summary judgment if there are material differences in congruity of job content).

Plaintiff ignores Google's argument she is not comparable to Breslow from 2019 through the end of his employment because she alleges he assumed the Financial Services Vertical Lead ("FSVL") role *she was not given*. (Def.'s Br. at 18–19.) Indeed, she affirmatively asserts as of late 2018, Breslow's "position had greater responsibilities, prestige, and exposure than [his] prior role." (Reply SMF 116.) Plaintiff also asserts she began reporting to Breslow in 2019. (Reply SMF 113.) If the Court accepts those statements as true, Plaintiff will have defeated her own claim. "It is self-evident that a manager does not hold substantially the same position as the individuals [he] manages." *Garcia*, 281 F. Supp. 3d at 387.

---

[10] Plaintiff's NYCHRL claims as to Breslow fail for the same reasons articulated here.

Despite these concessions, Plaintiff still argues Breslow is a proper comparator relying again on the 2020 Engineering-wide Leveling Guide. (Reply SMF 279–282.) The document does not represent the requirements for any one job, job family, or job ladder, as explained above in section II.A, *supra*. Even if it accurately described the actual work Plaintiff and Breslow performed in their respective roles—which it does not—Breslow testified his role involved the knowledge and experience, complexity and scope, leadership and influence, and organizational impact of an L8 *and* L9 Engineering employee according to that guide. (Reply SMF 281.) Google expected more from him in each of these four areas.

### D. Plaintiff Cannot Establish A *Prima Facie* Case With Respect to Nicholas Harteau.

#### i. Plaintiff's 2017 Rate of Pay Was Higher Than Harteau's.

Plaintiff's compensation and that of her comparators was comprised of base salary, cash bonus and equity awards. (Reply SMF 69.) Considering all of these components, Plaintiff earned more than Harteau in 2017. She therefore cannot establish a *prima facie* claim for that year, using Harteau as her comparator.

Plaintiff worked for 42 weeks in 2017, given her March 17, 2017 start date. (Pl.'s SMF 17.) Plaintiff received a weekly salary of approximately $5,577, and for her work that partial year she received a cash bonus of $116,000 and a stock award valued at $60,000. (Pl.'s SMF 78, 84; Declaration of Cara E. Greene (ECF 156) ["Greene Decl."] at ¶ 2.) Therefore, her total weekly rate of compensation was $9,766. Harteau worked approximately 19.5 weeks in 2017, given his May 15, 2017 start date and leave of absence ending in mid-August 2017. (Pl.'s SMF 19, 76, 81.) He received a weekly salary of $███, and for his work that partial year he received a cash bonus of $███ but no equity award. (Pl.'s SMF 79, 82, Greene Decl., ¶ 3.) His total weekly rate of compensation in 2017 was $███, approximately ███ per week less than Plaintiff's.

### ii.   **Plaintiff and Harteau Were Not Performing Substantially Equal Work**

While Harteau earned more in 2018[11] than Plaintiff, she cannot establish that the two were performing substantially *equal* work during this period. She concedes that level "refers to the scope and complexity within a role and is defined by the knowledge, skills, and abilities that a Googler needs to perform well." (Reply SMF 12.) There is no dispute that Plaintiff was hired as an L8 Technical Director and Harteau as an L9. (Pl.'s SMF 17, 18, 19, 20.) By Plaintiff's own admission, therefore, Harteau's role had a greater scope and complexity, and required greater knowledge, skills, and abilities to perform the role well. The Court should dismiss Plaintiff's NY EPL claim as to Harteau on this basis alone. *See Chiaramonte*, 677 F. App'x at 691–93 (affirming summary judgment on EPA claim where male co-workers holding same title as plaintiff and sharing some common job responsibilities performed more complex work).

Level aside, the unrefuted evidence shows that Harteau made greater engineering contributions than Plaintiff. Plaintiff concedes that while in OCTO Harteau became deeply involved with Google's engineering teams to improve their monitoring and logging systems, and give clients greater confidence in Google Cloud's monitoring capabilities. (Reply SMF 89.) Plaintiff, in contrast, consistently fell short in the area of engineering impact. (Reply SMF 85.) The documents speak for themselves. In her 2017 review, an L6 Staff Software Engineer noted that Plaintiff should "provide more guidance to our strategic leaders, especially as we develop new products and technologies." (*Id*.) In her 2018 performance review, both Plaintiff and her supervisor, Will Grannis, identified

---

[11] The only time period for which Plaintiff can conceivably assert a claim as to Harteau is January 2018 to June 2018. Plaintiff alleges that as of June 2018, she transferred out of OCTO and became a Global Client Technical Lead ("GCTL") in Tariq Shaukat's organization. (Reply SMF 283, 284.) She testified her responsibilities and scope were limited as a GCTL, (Def.'s Counter. SMF 190), so she is precluded from arguing that the work she performed in that role was substantially equal to the work she performed in OCTO. In any event, she and Harteau were undeniably performing substantially different work after September 2018.  Plaintiff concedes (as does Harteau) as of that date, Harteau had transferred out of OCTO and began supervising a team of engineers in Stackdriver. (Reply SUMF 133.) He ceased to be a viable comparator as soon as his responsibilities included people management, for the reasons stated above in section II.A.

greater engineering impact as one thing Plaintiff could have done better that year. (Reply SMF 85, 86.) Even if two employees have the same title and share some common job responsibilities, their work is not substantially similar if one employee makes greater contributions than the other. *See Chiaramonte*, 677 F. App'x at 691-93) (granting summary judgment for employer under EPA where even though plaintiff and alleged comparators shared some common responsibilities, male colleagues performed more complex veterinary procedures). Plaintiff's claims should be dismissed.[12]

For the same reasons discussed above in section II.A, *supra*, the fact that Plaintiff and Harteau were "evaluated . . . using the same evaluation rubrics" does not suffice to show comparability as a matter of law. *See Port Auth. of N.Y. & N.J.*, 768 F.3d at 257–58. It is also not true. Plaintiff relies on the allegedly undisputed fact that the pre-existing job ladder Will Grannis borrowed to create the Technical Director role in OCTO "did not differentiate the job skills, effort or responsibilities required by Technical Directors at Levels 8 and 9." (Pl.s' SMF 33–34 and 36–38.) Not so. There is no entry for L9 on that job ladder for Plaintiff to compare to the L9 role. (Def.'s Counter. SMF 141, 142.) As Plaintiff's own exhibits show, Google noted the need to create an additional entry for L9 early in the hiring process after it recommended hiring Evren Eryurek as a L9 Technical Director. (Def.'s Counter. SMF 143.)

Plaintiff's assertion that she and Harteau were evaluated using the same *hiring* rubrics

---

[12] Plaintiff's out-of-Circuit authority does not compel a different result. The employer in *EEOC v. Maryland Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018) argued that plaintiff's male co-workers were not comparators for purposes of the EPA based *solely* on the fact that the employer had hired them at different levels of a salary scale. *Id.* at 119. That is not the case here, where the evidence demonstrates Harteau made more meaningful engineering-impact contributions than Plaintiff. Plaintiff also cites *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336 (4th Cir. 1994) to argue that she may compare herself to both predecessors and successors in the same role. (Pl.'s Opp. at 13.) She misconstrues Google's position. Google does not argue she is precluded from identifying Harteau as a comparator while both were in OCTO because he later held a different role. Of course she can, but she must still show that they performed substantially equal work, which she cannot do for the reasons stated above.

throughout their employment is similarly misplaced. (Pl.'s Opp. 12.) There is no evidence in the record that Google uses these rubrics outside the hiring process. (Pl.'s SMF 42–44.)

### III. Google Has Asserted A Bona Fide Factor Other Than Sex Affirmative Defense

#### A. Google Does Not Assert A Seniority-based or Merit-based Affirmative Defense as to Plaintiff's Alleged Comparators in New York

Google asserted its affirmative defenses with respect to any and all of Plaintiff's alleged comparators, and that population has shifted in scope over the course of this litigation. (Def.'s Br. at 10 n.9; Reply SMF 66.) Now that the universe has been narrowed for purposes of summary judgment, it is Google's position that as to Plaintiff and her alleged comparators in New York, any disparities in pay are attributable to their different jobs; even if they are comparable, the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

#### B. There Is No Genuine Dispute that Google Relied On A Bona Fide Factor Other Than Sex In Setting Compensation

##### i. Relative Cloud Experience and Level Determined Starting Pay

Google's decision to award Harteau a higher starting salary and target bonus was due not to sex but to his superior qualifications and greater experience with cloud migrations and the Google Cloud Platform ("GCP"). Of all the candidates for the L8 and L9 Technical Director roles, Harteau had the most experience migrating a business to the cloud with GCP. (Reply SMF 50, 51.) His hiring packet repeatedly references his unique background in migrating large companies to the cloud using the very product Google hired him to promote to other clients. (Reply SMF 2, 52, 53.) He spent his entire career at technology companies and had more experience in this industry than Plaintiff. (Def.'s

Counter. SMF 148–151.) As Brian Stevens, the Chief Technology Officer of Google Cloud stated in 2017 in support of his recommendation that Google hire Harteau as an L9 Technical Director:

> I strongly support Nick Harteau for hire as an L9 TSC in the Office of the CTO. One of the strongest packets I've seen. […] He is one of the few engineering leaders in industry that has deep, hand's on familiarity with GCP and is seen as a leader amongst his peers.

(Def.'s Counter. SMF 178.)

Plaintiff, in contrast, had less cloud experience before coming to Google, and less exposure to GCP. (Def.'s Counter. SMF 149.) Unlike Harteau, she had only started a cloud migration at JPMorgan approximately one year before she left to join Google. (Reply SMF 43.) Her relative inexperience was due in part to her background in financial services, an industry that she concedes was slower to adopt cloud technology than others. (Reply SMF 42.) This is precisely why she conceded she was "not a cloud expert" and why she acknowledges that a cloud expert in financial services is very different than a cloud expert at a cloud native company. (Reply SMF 44.) It is also precisely why Grannis recommended Google hire Plaintiff as an L8 and not an L9: her experience with cloud in financial services demonstrated to him that she could "make an immediate impact as an L-8." (Reply SMF 48.) His position is justifiable; her hiring packet repeatedly references her relative unfamiliarity with cloud given her limited experience outside financial services. (Reply SMF 45, 47.)

Their difference in levels does, in fact, explain any pay disparity. As Plaintiff concedes, base salary, target annual bonus, and guidelines for equity refresh grants are each informed by an employee's level. (Reply SMF 69.) Harteau's starting salary, annual bonus target, and future equity refresh grant guidelines were all higher than hers because he was hired as an L9 and she was hired as an L8. (Reply 191.)

Plaintiff offers nothing more than conclusory statements and evidence taken out of context

14

to argue otherwise. Google identified every single person involved in Plaintiff's and her alleged L9

comparators' leveling determinations (Pl.'s SUMF 64), contrary to her argument otherwise. (Pl.'s

Opp. at 16.) Lead recruiter Jennifer Burdis testified she made a pre-interview level of assessment of

candidates. (Def.'s Counter. SMF 160.) She also did not identify Diane Greene as the individual

who made the leveling decision, as Plaintiff well knows. (Pl.'s Opp. at 16.) Plaintiff's own exhibits

contain the relevant exchange:

> Q:  So who made the decision about what level a candidate for technical director would be hired at?
>
> A:  Many people through the process.
>
> Q:  Who are those?
>
> A:  The final decision would be the SVP to review and approve, but the checkpoints of deciding where a candidate would reside level-wise through the process would include the recruitment team, the interview panel, the hiring manager, and the two SVP reviewers.
>
> Q:  And who was the SVP in this -- in this, for the technical director position?
>
> A:  Diane Greene had access to Ulku's packet or Holtz and Sridhar. The two additional SVPs were Urs, U-R-S, Holtz and Sridhar. I can't recall his last name enough to be accurate. Sridhar, S-R-I-D-H-A-R. Sridhar.
>
> Q:  Who made the final decision with respect to Ms. Rowe's level?
>
> A:  The SVP I just listed.

(Reply SMF 23.)

The argument that Grannis could not recall what he considered when recommending

Plaintiff be hired as an L8 is a distraction. (Pl.'s Opp. at 16.) His answer that it was "hard to

recall four years ago" was in response to the question whether he also considered Plaintiff

for an L9 Technical Director role (and the fact that he did is undisputed). (Pl.'s SMF 56,

128.) When counsel put Plaintiff's hiring packet in front of the witness and asked what was

his basis for his leveling recommendation, his answer was clear:

> After reviewing this packet again and trying to, you know, work backwards in time, a couple of things stand out.
>
> On the -- on the pros, clear industry knowledge, ability to tie use cases which is a term for, you know, specific type of problem in engineering that needs to be solved and the ability to put that in context in the industry in which she was -- had the most experience, which was financial services; and strong communicator which would likely indicate strong communication skills and strong ability to convey complex ideas to customers.
>
> On the con side, some flags around depth of experience, around technical ability and no clear demonstrated large-scale migration to Cloud, although it started some preliminary activities at JPMorgan.
>
> So those were all factors I would have considered in the leveling recommendation.

(Def.'s Counter SMF 178.)

Courts routinely dismiss equal pay claims at the summary judgment stage where, as here, the employer demonstrates pay disparities are based on differences in experience, qualifications, and relevant background. *See, e.g.*, *Eisenhauer*, 2021 WL 5112625, at *9 (granting summary judgment for employer on EPA and NY EPL claim where comparator was offered higher starting salary due to more extensive professional experience; "cases support a finding that an employer may pay an employee a higher wage at the outset, with the promise to continue paying them a higher salary in the future, based on superior credentials and experience, in order to induce that employee to accept a position"); *Boatright*, 2020 WL 7388661, at *13 (granting summary judgment for employer on EPA claim; no genuine issue of fact existed that wage disparity was justified by non-pretextual factors other than sex where, *inter alia*, comparator "had previous experience building public finance businesses at major banks. Plaintiff did not;" and during relevant period comparator held a more senior position).[13]

---

[13] *See also Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 269 (E.D.N.Y. 2015) ("[A]n employer may properly decide to pay higher salaries to employees with greater experience, more advanced educational degrees, or objectively better credentials than their co-workers.") (citations omitted); *Osborn v. Home Depot U.S.A., Inc.*, 518 F. Supp. 2d 377,

Once again, Plaintiff's out-of-Circuit case law does not compel a different result. In both *Maryland Ins. Admin.*, 879 F.3d at 123 and *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006), the record contained no contemporaneous evidence showing that the decisions to award plaintiff's comparators their respective starting salaries were in fact made pursuant to their superior qualifications. Here, those involved in the hiring process contemporaneously recorded their reasons for recommending Google hire Plaintiff and Harteau at their respective levels. (Pl.'s SMF 57; Def.'s Counter. SMF 178.) *Rizo v. Yovino*, 887 F.3d 453 (9th Cir. 2018), cited only for a general proposition of law, does not address differing qualifications or experience amongst comparators at all. The issue there was whether employers could assert the affirmative defense based on prior salary history, which is not the case here. *Id.* at 460.

### ii.  Plaintiff Has Not And Cannot Show Pretext to Rebut Google's Affirmative Defense

"[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reasons was false, *and* that discrimination was the real reason." *Eisenhauer*, 2021 WL 5112625, at *4 (emphasis and alteration in original, citation omitted). Plaintiff description of Google's levelling justifications for Plaintiff and the alleged L9 comparators as "new" is surprising given the evidence uncovered in discovery. (Pl.'s Opp. at 27.)

The reasons for hiring Harteau and four other men as L9s based on their superior qualifications—and greater experience with cloud technology in particular—was well-documented *during their hiring processes*. The stated reason for recommending Harteau as an L9 is quoted above in section III.B.i, *supra*. As to the others:

---

385 (D. Conn. 2007) ("market forces, previous experience, education, and inducement to hire the best person for the job have been held to be legitimate factors justifying pay differentials under the EPA") (citations omitted); *Drury v, Waterfront Media, Inc.*, 2007 WL 737486, at *4 (S.D.N.Y. Mar. 8, 2007) (granting defendant's motion for summary judgment on EPA claim, and finding that "[s]alary matching and experience-based compensation are reasonable, gender-neutral business tactics, and therefore qualify as 'a factor other than sex.'") (citations omitted).

- Evren Eryurek's statement of support noted he was "currently the GE Healthcare Cloud CTO, and before that, lead the Transportation SW team at GE. Having led large scale SW development and cloud deployment teams of greater than 2000 engineers for one of the world's leaders in Healthcare and Transportation, Evren had a depth of experience, leadership track record, and bonafides that make him instantly credible with senior engineering leaders in those same industries." (Def.'s Counter. SMF 179.)

- Benjamin Wilson's statement of support noted, "Given his strong leadership track record as a CIO at Siemens, CTO at GE, and depth of first hand experience moving thousands of applications to the public cloud in Oil and Gas and Industrial verticals, I recommend we hire Ben as an L9." (Def.'s Counter. SMF 180.)

- Paul Strong's statement of support noted, "Based on his seniority at VMWare (top candidate for global CTO role), demonstrated strong history of Cloud thought leadership, name recognition in the market, and ability to engage effectively with the CxO of any large enterprise, I recommend Paul for hire at the L9 level." (Def.'s Counter. SMF 181.)

- Jonathan Donaldson's statement of support indicated that Grannis "reviewed the feedback for Jonathan and strongly endorse[d] his hire into the CTO Office as the L9 level." (Def.'s Counter. SMF 182.) That feedback included the following: "This candidate is among the most complete candidates I've interviewed for this role. He has a strong relevant technical background in virtualization, orchestration, and networking;" "I give Jonathan high marks on cloud RRK. His insights on vmware, openstack, container strategy and how intel silicon fits in were great." (*Id.*)

This feedback stands in stark contrast to the contents of Plaintiff's hiring packet. (Reply SMF 45, 46, 47.) Moreover, both Burdis (lead recruiter) and Grannis (hiring manager) testified at deposition

leveling recommendations are based on relevant experience or role-related knowledge demonstrated through the interview process. (Def.'s Counter. SMF 171, 172, 176.)

Plaintiff repeatedly argues leveling could not have been based on their relative backgrounds because Google's policies prohibit leveling recommendations based on "years of experience, education level, and previous job title or company," and because she has more advanced degrees and 0.2 years more years in the workforce than Harteau does. (Pl.'s SMF 126, 127.) This argument fails for a number of reasons.

First, her argument is based 2020 policies and all of these individuals were hired in 2016 and 2017. (Pl.'s SMF 119.)[14] Second, Plaintiff's focus on the quantity of experience misses the point; it was the quality and nature of those years of experience that set Harteau and others apart from Plaintiff. As the contemporaneous policy documents state, "[W]hile past experience can signal the candidate's level of RRK ('role-related knowledge') required for the role, total YOE [years of experience] should never be the determining factor for leveling." (Pl.'s SMF 120.) The evidence demonstrates that Google applied this principle when hiring L8 and L9 Technical Directors in OCTO in a gender-neutral fashion. If Google selectively applied this policy to male candidates, one would expect to see Scott Penberthy, who had more total years of experience than any other candidate for the Technical Director role in OCTO, hired as an L9. (Reply SMF 30.) Instead, he was hired as an L8. (Reply SMF 29.) As his hiring packet reflects, that recommendation was based on his strong performance in interviews, and his "willingness to learn about Google Cloud Platform." (Def.'s Counter. SMF 182a.) Despite his greater years of experience, Penberthy, like Plaintiff, lacked the familiarity and experience with cloud technology that set those hired at L9 apart.

---

[14] Documents dated close in time to the relevant hiring and leveling decisions indicate that Google did, in fact, consider relevant years of experience as one factor to determine level. (Def.'s Counter. SMF 169.)

Plaintiff's self-serving statement that she had the same experience and skills as the L9 Technical Directors is both belied by the evidence and irrelevant. She injects into the record new information about her background and qualifications conspicuously absent from the résumé she submitted to Google for the role. (*See, e.g.*, Reply SMF 170–173.) How she currently describes her credentials is immaterial to the extent they differ from the credentials she presented to Google during the hiring process, as reflected in the résumé she submitted and her hiring packet. *DeJesus v. Starr Tech. Risks Agency, Inc.*, 2004 WL 2181403, at *10 (S.D.N.Y. Sept. 27, 2004) ("[plaintiff's] personal belief that he is as qualified as the other employees who were paid more is not enough to create an issue of fact when the other employees admittedly had more relevant work . . . experience that plaintiff lacked."); *accord Boatright*, 2020 WL 7388661, at *19 (plaintiff's "quibbles with [comparator's] prior experience do not render [employer's] reasons pretextual;" record contained ample evidence from which employer could conclude that comparator's prior experience justified higher pay, including fact that he had prior experience opening offices for employers that Plaintiff did not).[15]

### iii. The Same Affirmative Defense Applies With Respect to Stuart Breslow and Scott Penberthy

To the extent this Court finds that Plaintiff has established her *prima facie* case as to Scott Penberthy and Stuart Breslow, it should still enter judgment in Google's favor because their higher

---

[15] Plaintiff similarly quibbles with Wilson's prior experience with Cloud technology by arguing that he did not complete a cloud migration prior before coming to Google, either. (Pl.'s Opp. at 29.) The passage from Wilson's deposition Plaintiff cites suggests otherwise:

> Q:   And at the time you were working for GE, was the technology Cloud-based?
> A:    No.
> Q:   In any of the roles that you held prior to Google, in any of those roles was the technology Cloud based?
> A:    So at GE, I brought GE to the Cloud. So we were not Cloud-based when we started; we were when we -- we were done.

(Pl.'s SMF 133.) In any event, Google plainly believed that Wilson had "first hand experience moving thousands of applications to the public cloud in Oil and Gas and Industrial verticals," which his why he was recommended as an L9 hire. (Def.'s Counter. SMF 180.)

pay was based on bona fide factors other than sex.

Plaintiff admits Penberthy's role involved additional Applied AI responsibilities she did not have. (Reply SMF 78, 80.) She also concedes that Penberthy had advanced degrees in Applied AI and Machine Learning she lacked, (Reply SMF 30), and that Applied AI and Penberthy's work with TensorFlow is "a critical area for Google." (Reply SMF 78.) Google was therefore justified in paying Penberthy more for this unique and critical work. *Accord Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 115–16, 946 N.Y.S.2d 27, 31–33 (1st Dep't 2012) (granting summary judgment on NYCHRL discriminatory pay claim where alleged comparator's skill set was unique and highly valuable).

As for Stuart Breslow, his work history and experience are not in dispute.[16] (Reply SMF 115.) In June 2018, he was hired specifically to advise senior executives in regulated industries who wanted to explore a partnership with Google Cloud. (Reply SMF 114.) Prior to Google, Breslow was a Chief Compliance Officer at Morgan Stanley and gained relevant experience through his 30+ years in consulting roles and the financial services industry. (*Id.*) According to Tariq Shaukat, his hiring manager, that is why he was hired for the Director, Solutions Consultant position. (Reply SMF 115.) Plaintiff has offered no evidence to suggest the decision was based on anything other than his credentials, and certainly nothing to suggest it was based on his sex.

## IV. There Is No Genuine Dispute Of Material Fact On Plaintiff's NYCHRL Claims.

### A. Google's Leveling and Compensation Decisions Were Based On Legitimate Nondiscriminatory Factors.

Plaintiff has failed to raise a genuine issue for trial on her New York City Human Rights Law ("NYCHRL") claim. She offers vague, conclusory and self-serving statements about herself

---

[16] To be sure, Plaintiff argues that Breslow was not qualified for the FSVL role, but his background and credentials reflected in Jumper Decl., Exh. 44 speak for themselves.

and men who earn more, but no evidence from which a jury could draw a reasonable inference that Google's leveling and pay decisions were based on sex. The law requires she show she was treated less well *because of* her sex, and that the treatment was *intentional*. *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27, 39 (1st Dep't 2009); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (describing intent requirement). The undisputed evidence, created contemporaneously with the decisions, shows she was not.

### i. Plaintiff Has Not Been Treated Less Well Than the L9 Technical Directors On the Basis of Sex

For the reasons explained above in sections III. B. i-ii, *supra*, Plaintiff has failed to show that she is similarly situated to the five men Google hired into the L9 Technical Director position. They had exceptional qualifications and greater relevant experience with cloud technology, *relative to the qualifications and experience of the majority of OCTO hires who, like Plaintiff, were L8 Technical Directors*. (Reply SMF 24.) If Plaintiff cannot show that she, too, had similarly exceptional qualifications and experience to support the higher level, her claim as to starting pay must also fail; she concedes that level impacts starting salary and annual bonus target. (Reply SMF 191.)

Plaintiff has not shown she was compensated less well than these L9 Technical Directors *on the basis of sex* through their employment, either. Plaintiff concedes that given their higher level, their roles entail greater scope and complexity, and require greater knowledge, skills, and abilities to perform well. (Reply SMF 12.) Each of those men also performed additional responsibilities and made significant contributions while they were in OCTO that make them distinguishable from Plaintiff and *men* who were L8 Technical Directors. (Reply SMF 78.) Google is entitled to compensate them accordingly. *See Miller v. City of New York*, 2018 WL 2059841, at *8 (S.D.N.Y. May 1, 2018) (plaintiffs were not similarly situated to male employees who performed the same work as they did but also performed additional responsibilities plaintiffs did not), *aff'd sub*

22

—

*nom. Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019)

Plaintiff submits a declaration stating that she made the same contributions as her alleged L9 comparators, in many instances parroting the exact language in Google's statement of undisputed material fact. (Reply SMF 86, 87, 88, 89, 90, 91.) She offers no independent evidence that she actually made those contributions or undertook the same specific responsibilities as her alleged L9 comparators, and asks this Court to simply take her at her word. This is insufficient to create a triable issue of fact at the summary judgment phase. *Ping Chow Wei v. Anthem Inc.*, 2018 WL 5622571, at *12 (E.D.N.Y. Sept. 4, 2018) (granting summary judgment for employer where plaintiff's "bald, self-serving declarations" was otherwise unsupported by the record).[17]

Plaintiff's supporting case law is unpersuasive and inapposite. The court in *Shah v. Wilco Sys., Inc.*, 27 A.D.3d 169, 177, 806 N.Y.S.2d 553, 559 (2005), did *not* hold that employees were similarly situated where "they held the same position," as Plaintiff claims. The quoted language recites defendant's *argument* as to the universe of proper comparators, but the court never addressed it because plaintiff otherwise failed to establish a *prima facie* case. *Id.* In *William v. Morrison & Foerster LLP*, 2021 WL 3012739, at *8 (N.D. Cal. Mar. 12, 2021), the Northern District of California concluded that two attorneys may be similarly situated where both had unique specialties, but also each made significant contributions in terms of high annual billings. That is not the case here, where the evidence shows that Plaintiff's comparators made more significant contributions to

---

[17] In the one instance in which Plaintiff supports her declaration by pointing to "evidence," it is wholly unpersuasive. She provides a link to a short promotional video on LinkedIn in a foreign language. (Reply SMF 90.) Plaintiff failed to identify this video in discovery, and Google objects to its introduction into evidence now. *See Miller*, 2018 WL 2059841, at *6 (plaintiffs' reliance on evidence not disclosed during discovery did not create issue of triable fact to defeat summary judgment on EPA claim; "Plaintiffs never disclosed this information during discovery, leaving the City with no opportunity to conduct a deposition or challenge the video clips"). In any event, it is offered to prove that she "works alongside Strong" on "an engineering initiative of massive scope and potentially industry-wide implications," but the video contains only the most general statements about how cloud can support the workplace of the future. (Reply SMF 90).

Google than she did.

Finally, the record in *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) is not at all similar to the record before this Court. The challenged action there was a decision about severance; plaintiff and her comparator were already performing work in comparable positions; their roles were eliminated within two days of each other; and one was offered more severance than the other. Regardless, the court affirmed dismissal of plaintiff's gender discrimination claim because defendant treated her the same as other similarly situated male employees, as is the case here.

### ii. Plaintiff Has Not Been Treated Less Well On the Basis of Sex Than The L8 Technical Directors Who Perform Applied AI Work

Plaintiff is paid better than nearly all of the men in the same job, L8 Technical Director, and that plainly shows that Google is not treating her differently because of her sex. She wants to ignore these facts and argues this does not prove she was paid fairly. (Pl.'s Opp. 21.) She is wrong. It is her burden to prove discrimination, and this Court has found that plaintiff's compensation relative to peers as a group is probative of discriminatory treatment (or lack thereof). *Fenner v. News Corp.*, 2013 WL 6244156, at *19 (S.D.N.Y. Dec. 2, 2013) (Schofield, J.) (granting summary judgment for employer on equal pay claims under federal, state and city law because plaintiff failed to show he was similarly situated to alleged comparators; noting "the record reflects that Fenner, the ninth highest paid reporter on the Metro Desk, was paid well above average for a reporter at the Post").

Plaintiff is also not similarly situated to any L8 Technical Director who works on Applied AI for the same reasons she is not comparable to Scott Penberthy under the NY EPL. (*See* section II.B, *supra*.) She does not have these special talents or responsibilities. Google is entitled to pay him more for his unique skills and work. *See Miller*, 2018 WL 2059841, at *7 (granting summary judgment for employer on disparate pay claim under both state and local law).

24

### iii. Plaintiff Is Not Similarly Situated Director-level SWEs, AEs, and PMs

Plaintiff's pay discrimination claims as to Director-level SWEs, AEs, and PMs fail under the NYCHRL for the same reason they are deficient under the NY EPL. (*See* section II.A, *supra*.) Additionally, the fact that all of these men also work for different supervisors and in different areas of Google Cloud further differentiates them from Plaintiff. (Reply SMF 146, 153, 161.) *Cf. Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (affirming summary judgment for employer under Title VII and finding no similarity where plaintiff and her comparators, *inter alia*, had different supervisors); *McDowell v. T-Mobile USA, Inc.*, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007) (granting summary judgment for employer on Title VII discrimination claims where plaintiff and alleged comparators reported to different supervisors; "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of funding them similarly situated") (citations omitted), *aff'd*, 307 F. App'x 531 (2d Cir. 2009).

### iv. None of the Global Client Technical Leads or Global Client Leads Are Similarly Situated to Each Other

Plaintiff has the burden to demonstrate her alleged comparators are similarly situated to her in all material respects to avoid summary judgment. *Hamilton v. City of New York*, 2021 WL 4439974, at *10 (E.D.N.Y. Sept. 28, 2021) (granting summary judgment for employer on NYCHRL disparate treatment claim; city law's "lower standard does not cure Plaintiff's failure to identify a similarly situated comparator"). The only Global Client Lead ("GCL") who earned more than Plaintiff is Anil Jain. (Reply SMF 163.) Plaintiff's claim that she and Jain are comparators is based on two things: (1) Jain's title as GCL and (2) the description of the CGL role. (Pl.'s Opp. at 22–23.)

Plaintiff offers no evidence whatsoever as to Jain's working conditions, his actual responsibilities, his qualifications, or his contributions to Google. Other than his title, the only

evidence in the record about Jain is the fact that he supervised others, (Reply SMF 164), which differentiates him from Plaintiff for the reasons set forth above. *See* section II.A, *supra*. Plaintiff cannot carry her burden to show they are substantially similar in all material respects on this meager record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (where nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted). *Cf. Epstein v. Sec'y, U.S. Dep't of Treasury*, 739 F.2d 274, 278 (7th Cir. 1984) (dismissing EPA case where plaintiff relied heavily on job descriptions for argument that two jobs involved equal work; plaintiff may not ask a court to "infer equal work from the defendant's failure to prove otherwise").[18]

After learning that she out-earned all of the GCTLs identified in discovery, Plaintiff shifted her strategy. She now argues that Wilson and Eryurek held the GCTL title, and that the role as all three performed it was "virtually identical" to their Technical Director role in OCTO. (Reply SMF 253.) Even if that were true for Wilson and Eryurek, Plaintiff testified at deposition that her focus on product and engineering, her client engagements, and thought leadership were all reduced while she was a GCTL. (Reply SMF 288; *see also* Pl.'s Opp. at 31.) If that is indeed the case, Google was justified in paying Wilson and Eryurek more for whatever brief period they were in that role[19] because their work was unchanged. Conversely, if Plaintiff's testimony is incorrect and all three of their roles remained as they were in OCTO, Google was justified in paying them differently for the reasons set forth above in section IV.A.i, *supra*.

---

[18] Plaintiff believes she has raised a material issue of fact by citing to a single document in which someone referred to Jain as her "peer." (Reply SMF 257.) This is irrelevant and immaterial. The majority of Plaintiff's performance reviews similarly identify L6 employees as Plaintiff's peers, but she is not arguing they are comparable on that basis. (*See, e.g.,* Jumper Decl., Exh. 28, 29, 30.)

[19] Eryurek was in this role for mere weeks before he started reporting to Sudhir Hasbe and performing the work of a Director-level Product Manager. (Reply SMF 136.)

### B. Plaintiff Has Failed To Show that Any of Google's Decisions Were Motivated by Sex, Even In Part

Plaintiff offers a host of reasons why the Court should infer bias from the record. None are persuasive or withstand scrutiny.

Plaintiff's reliance on *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 108 (2d Cir. 2010), an age discrimination case, is misplaced and assumes too much. While disparate treatment of co-workers may support a *prima facie* case of discrimination, the plaintiff must still show that her co-workers are *similarly situated* in the first instance. Plaintiff's representation that Google concluded she possessed more relevant experience than Harteau is simply false and she misstates the conclusions of Google's internal investigation. (Pl.'s Opp. 24.) Google's investigators concluded, "Overall we did not find evidence that the complainant had significantly more work experience at the time she was hired than her male peers hired within a year of her hire date." (Reply SMF 68.) Investigators also noted, "Tech versus non-Tech experience was the most heavily considered factor when gauging L8 versus L9 for similar years of work experience." (*Id.*)

The alleged "dearth" of female hires in OCTO similarly ignores the evidence. (Reply SMF 197.) Google hired Patricia Florissi as a Technical Director in OCTO in 2020, and was negotiating an offer with a female candidate for an L9 Technical Director role in Europe in 2018. (Reply SMF 196.) Plaintiff falsely claims that Google "stereotyped" this candidate for negotiating her pay, but the documents speak for themselves. (Pl.'s Opp. at 25.) No one involved in Plaintiff's hiring considered a woman negotiating pay a "turn off." Instead, people questioned this candidate's judgment in going over the hiring manager's head to get better leverage in compensation negotiations. (Reply SMF 194.) Plaintiff wrongly attributes the "not Googley" comment as well; no one involved in Plaintiff's hiring wrote those words. (*Id.*) Indeed, Will Grannis, Plaintiff's supervisor

and hiring manager, supported the candidate's compensation negotiations. (*Id.*)[20] These facts are a far cry from those in *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 77 (2d Cir. 2016), and *Gambale v. Deutsche Bank AG*, 2003 WL 21511851, at *2 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004), which both involved a complete absence of women in the roles at issue.

Plaintiff also misattributes an alleged statement to Grannis that all Technical Directors would be hired at L8. (Pl.'s Opp. at 26.) There is not a scintilla of evidence in the record that Grannis or anyone else said this. Plaintiff's only "evidence" of this comment is her telling other people some unidentified person made this statement. (Pl.'s SMF 59.) Plaintiff also claims that Human Resources falsely represented the process for getting to L9—"by doing great work"—but she does not suggest, let alone substantiate, how or why this is untrue. (Pl.'s Opp. at 26.) Plaintiff's supporting case law here is also off the mark. *Collins v. Cohen Pontani Liberman & Pavane*, 2008 WL 2971668, at *10 (S.D.N.Y. July 31, 2008), concerns whether defendant's proffered explanations were pretextual, not whether unproven and unsupported statements can establish a *prima facie* case. *Giannone v. Deutsche Bank Sec., Inc.*, 2005 WL 3577134, at *1–2 (S.D.N.Y. Dec. 30, 2005), in which the court denied a *motion in limine* to exclude evidence that Human Resources "warned [plaintiff] not to complain of gender discrimination," has no applicability here.

Next, Plaintiff takes the comment that she was "more junior" than other candidates interviewed wholly out of context. Given the dates, the comment was clearly directed at Plaintiff's seniority relative to the two candidates that interviewer had already met: Paul Strong and Evren Eryurek. (Reply SMF 45.) Both men had spent years as CTOs working on cloud technology in

---

[20] Grannis' open and supportive attitude towards women in the workplace is further evidenced by the very statements Plaintiff now attempts to use against Google: that women seek his advice and mentorship on "respectfully fighting for what they think is fair comp." (Reply SMF 195.) Plaintiff herself acknowledged that she does not believe Grannis treated her differently because of her sex, other than the fact that he participated in the decision. (Reply SMF 64.)

industries far more advanced in cloud adoption than financial services; Plaintiff, in contrast, had held herself out to Google as a Managing Director. (Reply SMF 26, 32; Pl.'s SMF 4.) There is nothing discriminatory or stereotypical about this remark given these facts, and it is nothing like the comment at issue in *Golsten-Green v. City of New York*, 184 A.D.3d 24, 43–44, 123 N.Y.S.3d 656, 670–71 (1st Dep't 2020) (supervisor's comment that he did not "like women on this job because they have babies" was actionable).

Lastly, Plaintiff's argument that Google's rationale for Plaintiff's leveling shifted fails for the same reasons discussed above in section III.B.ii, *supra*. The message to Plaintiff has been consistent throughout: her relative experience and qualifications compared to others justify the decision to hire her as an L8. (Def.'s Counter. SMF 173, 174, 175.) This is not an argument raised for the first time on summary judgment, as was the case in *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 380 (S.D.N.Y. 2014).

### C. There Is No Evidence Of Pretext In the Record

Google's stated reasons for hiring Plaintiff as an L8 are not pretextual, as explained above in section III.B.ii *supra*. She cannot show pretext by arguing that she "out-performed" the L9 Technical Directors, either. (Pl.'s Opp. at 30.) She concedes that the expectations for the L8 and L9 Technical Director roles were different and require different knowledge, skills, and abilities to succeed. (Reply SMF 12.) The evidence is clear that a rating for work performed at the scope and complexity of an L8 role is not equivalent or comparable to that same rating for work performed at an L9 scope and complexity. (Def.'s Counter. SMF 188.)

### D. Plaintiff Was Not Treated Less Well Because of Sex In the GCTL Role

Plaintiff has not shown she was excluded from meetings on the basis of sex. Her "evidence" suggesting otherwise is just rank speculation. Wilson and Eryurek did not observe Shaukat excluding

Plaintiff from meetings; they testified only that *she told them* she had been excluded from meetings. (Reply SMF 287.) Moreover, documents that *Plaintiff* put into the record demonstrate that: (1) she does not know who was in these meetings; (2) she does not know what these meetings were about; and (3) she does not believe she should have been invited to every meeting with Shaukat that had anything to do with financial services. (Reply SMF 100; Jumper Decl., Exh. 18 at 171:20–174:18.) There is no basis for her to conclude that her sex was a motivating factor for her alleged treatment. *Cf. Fraser v. MTA Long Island R.R.*, 295 F. Supp. 3d 230, 260 (E.D.N.Y. 2018) (rejecting similar argument that plaintiff was excluded from four to five meetings on basis of sex under Title VII and state law).

In any event, she fails to rebut Google's evidence showing that her male colleagues who transferred with her from OCTO were also left off those same staffing meetings and distributions lists. (Reply SMF 96.) She claims, with no evidentiary support whatsoever, that while *their* exclusion was the result of a technological glitch, *hers* was uniquely motivated by gender. (Reply SMF 96.) There is nothing in the record to support this. She also outright admits that she was invited to and enjoyed Shaukat's off-site meeting for his team. (Reply SMF 99.)

Plaintiff points to a single instance in which she and Shaukat failed to connect for a one-on-one meeting around June 6, 2018. (Reply 290.) Within *one week* of Shaukat rejecting Plaintiff's meeting invitation, Plaintiff and Shaukat met and Plaintiff wrote to him, "Thank you for the conversation yesterday, appreciate you taking the time to share your vision for the financial services vertical, and the approach for working with strategic customers." (Reply SMF 288.)

### E.  Plaintiff Was Not Treated Unfairly During Her FSVL Candidacy

Plaintiff cannot show that Shaukat denied her fair consideration for the FSVL role on the basis of her sex. She concedes that Shaukat's two finalist candidates were women and that she does

not know enough about their qualifications to say whether she was better qualified than they were. (Reply SMF 106.) Critically, she admits the search was paused in light of the leadership changes in November 2018. (Reply SMF 111.) She has not identified a single man who was treated better than she was during the hiring process while the search was still active. Instead, she offers an email showing the hiring manager praising other female candidates under consideration. (Reply SMF 301.)

Plaintiff misconstrues the probative value of this evidence by citing to *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). In *Graham*, the court rightly noted that favorable treatment of employees within the same protected class does not absolve a defendant from liability on a claim otherwise supported by the evidence. *Id.* Here, the record is devoid of any evidence that Shaukat was biased against Plaintiff because of sex, and the record shows that he spoke highly of two female candidates, one of whom he would have hired had the search not been paused. (Reply SMF 111, 301.) A hiring manager's preference for or selection of a member of the same protected class still *undermines* the allegation that he acted on the basis of sex. *See Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 299 (S.D.N.Y. 2012).

Finally, Plaintiff concedes that Breslow was asked to oversee some functions of the financial services vertical on an interim basis only. (Reply SMF 113.)  There is no evidence that Google ever hired anyone for the role. Her argument that she need not show she suffered a tangible adverse action, like denial of a promotion, misses the point. (Pl.'s Opp. at 33.) According to Plaintiff's own allegations and evidence, Shaukat had already determined by then that she was not the best candidate for the role. *See* section IV.F, *infra*. Anti-discrimination laws do not require him to re-visit this decision in light of the fact that the role itself had changed due to intervening events.

### F.  There Is No Triable Issue on Plaintiff's Retaliation Claims

Plaintiff argues that the timing of Shaukat's decision to reject her for the FSVL role raises

an inference of retaliatory intent. (Pl.'s Opp. 35.) Plaintiff's own chronology belies that conclusion.

Shaukat began the search for the FSVL role in spring of 2018. (Reply SMF 297.) At the time, Shaukat was not impressed with Plaintiff compared to the other candidates under consideration. (Reply SMF 301.) In June 2018, Plaintiff expressed interest in the FSVL role and Shaukat pledged to interview her. (Reply SMF 300.) In July 2018, he expressed, "I don't think she is likely right but I told her I would formally interview her for the role." (Reply SMF 301, 302.) In August 2018, four employees (not including Shaukat) interviewed Plaintiff. (Reply SMF 310.)

Shaukat received written feedback from one of those interviewers that Plaintiff was "not that strong on the business side when asking which pbs [problems] can large FSI [financial services industry] organisations solve with AI, AM and Cloud." (Reply SMF 317, 324.) As of September 1, 2018, the lead recruiter for the position wrote, "It doesn't sound like [Plaintiff] is viable for the VP role." (Reply SMF 313.)[21] In October 2018, Plaintiff raised concerns to Human Resources that her level assignment on hire was impeding her candidacy. Reply SMF 309.) She sent Shaukat a similar email in November 2018, which Shaukat forwarded to Human Resources, writing, "Would be good to have data on whether her point on being brought in at a lower level is true. . . I don't think it is good for her to have that perception if that is correct." (Reply SMF 320.)

Shortly thereafter, Google Cloud got a new CEO. (Reply SMF 109.) Shaukat paused the search for the FSVL role as a result. (Reply SMF 111.) He told the finalist for the job, a woman, that he would not fill the role until he understood the new CEO's strategy for the organization. (*Id*.) Plaintiff learned in December 2018, she would not get the role even if the search were re-opened.

---

[21] The timing of this decision is also supported by the full version of the recruiter's running notes of his weekly meetings with Shaukat about open roles in his organization. (Reply SMF 313.) Plaintiff selectively cites to the document to argue—incorrectly—that as of December 2018, Google was still chasing Plaintiff's interviewers for their feedback. (*Id.*) Earlier portions of the document show that as of late August 2018, Plaintiff had met with all four of her interviewers and it "[s]ounds like she is not viable for the role." (Reply SMF 105.) Google has submitted additional pages of this document on reply to correct the record.

(Reply SMF 112.) Shaukat then asked a current employee, Breslow, to cover some responsibilities on an interim basis until he had further direction from the CEO. (Reply SMF 113.) Plaintiff concedes that Breslow's assignment was interim. (*Id.*)

Plaintiff cannot establish the causation element of her *prima facie* claim on this record. *See Holt v. Dynaserv Indus., Inc.*, 2016 WL 5108205, at *11 (S.D.N.Y. Sept. 19, 2016) (NYCHRL retaliation claim requires causation); *Quartararo v. J. Kings Food Serv. Prof'ls, Inc.*, No. 17-CV-7390 (RRM), 2021 WL 1209716, at *14 (E.D.N.Y. Mar. 31, 2021) (causation required by NYLL). Even construing the facts in Plaintiff's favor, Shaukat determined Plaintiff was not a viable candidate *before* he was aware she engaged in protected activity.[22] *See Melman*, 98 A.D.3d at 129 ("[A]n employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct.") In any event, the leadership change and decision to pause hiring was an intervening event that severed any causal connection between Plaintiff's earlier complaints and her denial of the role. *See Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 462 (S.D.N.Y. 2012), *aff'd sub nom. Nolley v. Swiss Re Am. Holding Corp.*, 523 F. App'x 53 (2d Cir. 2013) (intervening events severed causal link between protected conduct and adverse action.)

Plaintiff's retaliation claim based on her decision to return to OCTO is similarly infirm for two reasons, one legal and one practical. First, Plaintiff ignores Defendant's case law on point. *Zimmer v. Warner Bros. Pictures, Inc.*, 2016 WL 9331304, at *7 (Sup. Ct., N.Y. Cnty. Dec. 23,

---

[22] Any attempt to impute knowledge of her November 2017 complaint to Shaukat cannot save her claim for two reasons. First, the temporal proximity between the complaint and spring of 2018 when Plaintiff first alleges Shaukat determined she was not a fit for the role is far too attenuated to support a claim. *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009). Second, the record does not support that inference. Shaukat clearly did not know Plaintiff had made an earlier complaint of discrimination. If he had, he would not have forwarded Plaintiff's November email to Human Resources, asking them to substantiate whether Plaintiff's concerns in the email were true. (Reply SMF 320.)

2016) (unpublished), is clear: allowing plaintiff to switch positions after raising a complaint cannot support a retaliation claim under the NYCHRL, even if plaintiff was unsatisfied with the employer's response to the complaint. Second, Plaintiff's claim that the move back to OCTO was retaliatory is factually inconsistent with her other allegations in this case. If, as she testified, her scope and responsibilities were reduced in the GCTL role, (Def.'s Counter. 190), her return to a position with greater scope and responsibility would have been a net gain. The fact that she would still need to coordinate work on financial services clients with Breslow had absolutely nothing to do with her complaints, as she concedes that the decision keep industry-specific work in Shaukat's organization occurred much earlier, in late 2017. (Reply SMF 92.)

Finally, her claim that she should have been promoted to a VP-level sales position in Kirsten Kliphouse's organization defies logic in light of her admissions that: (1) she lacked direct sales experience; and (2) the job description required the successful candidate to have proven success managing a team of sales employees, which Plaintiff never did. (Reply SMF 129.) Plaintiff cannot create a genuine issue of disputed fact by simply stating, without evidentiary support, that she believed she was qualified for the role. *Cf. Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009) (affirming denial of Title VII claims for failure to promote where plaintiff premised those claims only on conclusory statements and subjective belief that she was qualified to be promoted). She was not. (Reply SMF 129.)

Plaintiff now argues, for the first time, that Vardaman's January 2019 notes in the internal file that Plaintiff did not get the FSVL role because of "ego concerns" and she was "not Googley" after her late 2018 complaints reflect retaliatory animus. (Pl.'s Opp. 38.) Not so. There is no evidence that Vardaman knew of Plaintiff's complaints until January 2020 when Employee Relations interviewed him. (Reply SMF 347.) His testimony is pellucid on this issue. (*Id.*) He was also clear

34

that the reason for his note was Plaintiff's dismissive treatment towards him when they spoke about the FSVL role, which he considered "not Googley." (Reply SMF 348.)

## V. Conclusion

For the foregoing reasons, Google requests summary dismissal of Plaintiff's remaining claims, and that Plaintiff's motion for partial summary judgment be denied.

Dated:  Jersey City, New Jersey
       December 24, 2021            PAUL HASTINGS LLP

                                 By:    Kenneth W. Gage
                                      Sara Tomezsko

                                 200 Park Avenue
                                 New York, NY  10166
                                 Tel:  (212) 318-6000
                                 Fax:  (212) 319-4090
                                 kennethgage@paulhastings.com
                                 saratomezsko@paulhastings.com

                                 *Attorneys for Defendant*
                                 GOOGLE LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this December 24, 2021, I caused a true and exact copy of the foregoing DEFENDANT GOOGLE LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT, and all accompanying declarations and exhibits to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Jersey City, New Jersey
        December 24, 2021

_____
Sara B. Tomezsko

36