**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULKU ROWE,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civ. Action No. 19-cv-08655(LGS)(GWG) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER PARTIAL MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff Establishes Her Prima Facie Case Under the NY EPL ..... 1

1. Rowe and Harteau performed equal work ..... .1

2. Google paid Harteau more than Rowe ..... 4

B. Google Cannot Establish an Affirmative Defense ..... 6

1. There is no evidence by which Google can establish its affirmative defense ..... 7

2. Google's affirmative defense is pretextual, not job-related, and inconsistent with business necessity ..... 9

III. CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Aldrich v. Randolph Central School District*,
963 F.2d 520 (2d Cir. 1992)....9

*Belfi v. Prendergast*,
191 F.3d 129 (2d Cir. 1999)....6, 9

*Boatright v. U.S. Bancorp*,
18 Civ. 7293, 2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020)....9

*Brinkley-Obu v. Hughes Training, Inc.*,
36 F.3d 336 (4th Cir. 1994)....5

*Broadus v. O.K. Industries, Inc.*,
226 F.3d 937 (8th Cir. 2000)....5

*Chepak v. Metropolitan Hospital*,
555 Fed. Appx. 74 (2d. Cir. 2014)....5

*Chiaramonte v. Animal Medical Center*,
677 F. App'x 689 (2d Cir. 2017)....3

*Eisenhauer v. Culinary Institute of America*,
19 Civ. 10933, 2021 WL 5112625 (S.D.N.Y. Nov. 3, 2021)....9

*Glenn v. General Motors Corp.*,
841 F.2d 1567 (11th Cir. 1988)....7

*Husser v. New York Ciy Deptartment of Education*,
137 F. Supp. 3d 253 (E.D.N.Y. 2013)....2

*Jones v. Westside Urban Health Center, Inc.*,
760 F. Supp. 1575 (S.D. Ga. 1991)....10

*Knight v. G.W. Plastics, Inc.*,
903 F. Supp. 674 (D. Vt. 1995)....10

*Lavin-McEleney v. Marist College*,
239 F.3d 476 (2d Cir. 2001)....1, 2

*Rizo v. Yovino*,
950 F.3d 1217 (9th Cir. 2020)....8

*Talwar v. Staten Island University Hospital*,
610 F. App'x 28 (2d Cir. 2015)....1

*William v. Morrison & Foerster LLP*,
18 Civ. 02542, 2021 WL 3012739 (N.D. Cal. Mar. 12, 2021) ....................3, 4

**STATUTES**

N.Y. Labor Law § 194 ....................1, 9, 10

**OTHER AUTHORITIES**

29 CFR § 1620.13(b)(5) ....................5

Committee Report, N.Y. S.B. 5248 (June 15, 2019),
https://www.nysenate.gov/legislation/bills/2019/s5248/amendment/b?intent=s
upport ....................1

EEOC Compliance Manual (2000), § 10-IV.F.2 ....................8

## I. INTRODUCTION

Nothing in Google's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment (Def's Reply Br.") (ECF No. 197) changes the calculus with respect to Plaintiff's Cross-Motion – the undisputed facts establish Plaintiff's prima facie NY EPL case and Google is unable to establish an affirmative defense.

## II. ARGUMENT

### A. <u>Plaintiff Establishes Her Prima Facie Case Under the NY EPL.</u>

The undisputed material evidence establishes that Defendant Google LLC has violated and continues to violate the New York Equal Pay Law ("NY EPL"), N.Y. Labor Law Art. 6 § 194, by failing to pay Plaintiff Ulku Rowe equally to Nicholas Harteau for (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions. *See* N.Y. Labor Law § 194(1). Defendant's arguments to the contrary are unavailing.

#### 1. *Rowe and Harteau performed equal work.*

The undisputed evidence establishes that Rowe and Harteau were comparators under both NY EPL standards.[1] Google does not dispute the following key facts:

---

[1] The current iteration of the NY EPL, which applies to Rowe's claims arising after October 2019, mandates equal pay among employees who perform "substantially similar" work, not just "equal work." N.Y. Labor Law § 194; *see* Committee Report, N.Y. S.B. 5248 (June 15, 2019), available at https://www.nysenate.gov/legislation/bills/2019/s5248/amendment/b?intent=support (noting that the "'equal pay for equal work' standard . . . place[d] an excessive burden of proof on aggrieved employees" and the amendments would "lessen this burden"). Prior to Oct. 2019, NY EPL claims were evaluated under the same standard as federal EPA claims. *See Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 31 n.2 (2d Cir. 2015). Under that standard, a plaintiff "need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility." *Lavin-McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir. 2001) (internal quotations omitted).

- Rowe and Harteau both began working at Google as Technical Directors in the Office of the CTO within one month of each other. (Defendant's Response to Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Resp. 56.1") (ECF No. 186) at ¶¶ 17, 19.)

- Both worked in Google's New York office and reported to the same supervisor, Will Grannis. (*Id.* at ¶¶ 17, 19, 21.)

- The primary job responsibilities of both involved the three "pillars:" customer advancement, engineering, and evangelism. (*Id.* at ¶¶ 22-25, 47, 72.)

- Both were hired as individual contributors and did not have direct reports. (*Id.* at ¶ 27).

- The year they were hired, Google provided both with the same instructions, guidelines, and job family description (with the "L8+" entry) to complete their performance self-assessments. (*Id.* at ¶ 69.)

- Both consistently collaborated with each other, participated in meetings together, assisted each other with client engagements, and consistently filled in or substituted for each other on speaking engagements or client engagements. (*Id.* at ¶ 70.)

- Though Harteau himself believed Rowe was a Level 9, Google hired her at a Level 8 and paid her less than Harteau. (Harteau Decl. (ECF NO. 159) ¶ 11, Greene Decl. (ECF No. 156) ¶¶ 2-3.)

Rowe and Harteau had "the same supervisor," "similar responsibilities," and "devote[d] the same effort." *Husser v. N.Y.C. Dept. of Educ*, 137 F. Supp. 3d 253, 270 (E.D.N.Y. 2013). In other words, their jobs were "substantially equivalent." *Lavin-McEleney*, 239 F.3d at 480.

Google unavailingly argues that Rowe's and Harteau's roles differed, as Google's purported policy was to assign levels based on "the scope and complexity within a role and . . . the knowledge, skills and abilities that a Googler needs to perform well." Def's Reply Br. at 8. However, the undisputed facts show that there was no material difference between the Technical Director role at Levels 8 and 9. (*See* Resp. 56.1 at ¶ 34, 39.) The job ladder, which was applicable to both Rowe and Harteau, contained no separate entry for Levels 8 and 9 Technical

Directors and instead contained the same entry for general leadership at L8 and above. (*Id.* at ¶¶ 33, 36-37; Plaintiff's Opposition 56.1 Statement ("Opp. 56.1") (ECF No. 154) ¶ 10.)

Google tries to distinguish Harteau by alleging he performed "more complex work" or made "greater contributions." Def's Reply Brief at 7-8. This assertion is belied by the evidence in the record, which unequivocally establishes that Rowe and Harteau performed the same level of work and made substantially equal contributions; the testimony from Rowe, Harteau, and Grannis, as well as two other Level 9 Technical Directors, Evren Eryurek and Ben Wilson, speaks for itself. (*See* Harteau Decl. ¶ 9 ("While some Technical Directors had industry specific experience and focused on particular sectors and others were generalists, all Technical Directors performed the same sort of work…From a team perspective, Ms. Rowe, [other Level 9 Technical Directors], and I were all considered equals."); Resp. 56.1 ¶ 34 (Grannis testifying that he "hired [everyone] for the same role."); Jumper Decl. Ex. 18 (ECF 160-17) (Wilson testifying that Rowe's role was "same as mine, but for the financial services vertical."); *see also* Declaration of Cara E. Greene in Reply ("Greene Reply Decl."), Ex. 1, Eryurek Tr. 63:23-25 (Eryurek testifying that "we were all in the same role.").) Further, Defendant's reliance on *Chiaramonte v. Animal Medical Center,* 677 F. App'x 689 (2d Cir. 2017) is unpersuasive and factually distinguishable where, unlike here, "material differences in the congruity of job content" existed between the plaintiff and her male comparator, who shared a department head title but otherwise had "drastic differences in job content—that is, [ ] differences in specialties, patient loads, supervision, teaching, and research contributions." *Id.* at 691-92.

As Defendant admits, two individuals "may be similarly situated where both had unique specialties, but each also made significant contributions." Def's Reply Brief at 17, citing *William v. Morrison & Foerster LLP*, 18-cv-02542, 2021 WL 3012739 (N.D. Cal. Mar. 12, 2021)

(interpreting NY EPL). While Rowe and Harteau at times focused on different industries, their "actual work as Technical Directors was very similar. [They] both met and worked with Google customers, collaborated with Google engineering teams, and engaged in evangelism." (Harteau Decl. ¶ 10.) Even if Google could prove Harteau "made greater engineering contributions," which he himself denies, these contributions relate to his performance in the role and not the nature of the role itself. *See William,* 2021 WL 3012739 at *14 (the "rationale[]" defendant "offers for distinguishing [plaintiff's] comparator[] . . . goes to its…affirmative defense – not to whether the work they performed…was substantially the same.".) Rowe and Harteau's jobs were comparable in every way that matters.

**2. *Google paid Harteau more than Rowe.***

**2017:** Because Google cannot dispute record evidence of the pay disparity, it conducts a nonsensical calculation to assert Rowe's pay was higher than Harteau's in 2017, the year they both were hired. It is undisputed that Level 9 Technical Directors had greater earning potential based on Google's target compensation for each level. (Opp 56.1 ¶¶ 189-90.) At hire, Google offered Harteau an annual salary of $325,000.00, an annual bonus target of 40%, and a total equity award of 2500 restricted stock units. (Resp. 56.1 ¶ 75.) Google offered Plaintiff an annual salary of $290,000.00, an annual bonus target of 30%, and a total equity award of 2,500 restricted stock units. (*Id.* ¶ 74.) Google wrongly includes in its calculation amounts that it paid Rowe unrelated to her performance of the Technical Director role, including:

- replacement compensation for amounts (bonus and equity vesting) she forfeited upon leaving JPMorgan. (*Id.* ¶ 74, Opp. 56.1 ¶ 74, 83.)
- a $61,000 equity grant that Google paid individuals hired in Q1 2017 who had received an Exceeds Expectations rating. Harteau was ineligible to receive the equity grant based on his start date. (*Id.* ¶ 76.)

Finally, Google miscalculates the 2017 pay differential by failing to pro-rate Harteau's bonus. After starting at Google, Harteau took a 3.5 month leave and only worked for 4.5 months, and consequently, Google pro-rated his bonus for 2017. (Resp. 56.1 ¶¶ 81-82; *see also* Greene Reply Decl., Ex. 2, GOOG-ROWE-00019295 ("Bonus is prorated based on time worked.").) When applying accurate compensation calculations, Google clearly paid Harteau more.

**2018- Present:** The record shows, and Defendant admits, that Google paid Harteau more than Rowe from 2018 until 2020, when Harteau left Google. (Gelfand Decl. (ECF No. 157) ¶¶ 6-8; Greene Decl. ¶¶ 2-3.) It is irrelevant that Rowe briefly moved into the Global Client Technical Lead role in June 2018; Defendant admits that after the move, Rowe was to "continue the role [she was] doing" as a Technical Director. (Reply 56.1 ¶ 255.) While Defendant argues that Rowe is precluded from arguing the role was substantially equal given that her "responsibilities and scope" in the role were limited (Def's Reply at 8, n.10), any such limitation was the result of discrimination, and not intrinsic to the role. (Opp 56.1 ¶ 290).

While Harteau transferred into a different position in September 2018, he – as a predecessor in the role – continues as Rowe's comparator for the entirety of her employment. *See Chepak v. Metro. Hosp.*, 555 Fed. Appx. 74, 76 (2d. Cir. 2014) (reversing dismissal of equal pay claim where plaintiff established her prima facie case by alleging she performed the same job as her male predecessors for less pay); *see also Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994) ("A plaintiff may make her *prima facie* case by comparing her salary to that of her predecessor or successor"); *Broadus v. O.K. Indus., Inc.,* 226 F.3d 937, 942 (8th Cir. 2000) (considering non-immediate predecessor comparators); 29 CFR § 1620.13(b)(5) ("It is immaterial that a member of the higher paid sex ceased to be employed prior to the period covered by the applicable statute of limitations period for filing a timely suit under the EPA.").

Defendant attempts to detract from the uncontested facts and muddy the waters by asserting improper objections and misconstruing evidence in its 56.1 Opposition (ECF No. 186) and improper Reply 56.1.[2] Specifically, Defendant, whose explanation for the unequal pay has changed multiple times (*see* Pl. MOL p. 26), asserts new "facts" to justify the pay differential. (*See* Reply 56.1 ¶ 108, Def's Opp 56.1 ¶ 175 (adopting the position, for the first time, that "[t]ech versus non-Tech experience [was] the most heavily considered factor when gauging L8 versus L9 for similar years of work experience," an argument omitted from its Memorandum of Law in Support of its Motion for Summary Judgment (ECF No. 138) and its 56.1 Statement of Facts (ECF No. 139).) *See Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir. 1999) ("differing and inconsistent explanations from the [employer] raise questions of fact to rebut its alleged non-discriminatory reasons for the wage disparity.") Defendant also improperly attempts to manufacture disputes of fact by arguing certain evidence is "disputed to the extent" it is "inconsistent" with other evidence, without stating whether it is or is not inconsistent. (*See*, *e.g.*, Reply 56.1 ¶¶ 171-73, 179, 209, 222, Def's Opp 56.1 ¶¶ 3-11, 24, 56, 60, 126, 131-32.) Defendant also cannot create an issue of fact by arguing certain policies that Defendant produced were not in effect at the relevant time, when it has not cited any evidence demonstrating that those policies were *not* in effect. (*See*, *e.g.*, Def's Opp 56.1 ¶¶ 28, 49-52, 54, 62, 114, 119, 129.)

**B. <u>Google Cannot Establish an Affirmative Defense.</u>**

Google has abandoned its seniority and merit-based defenses, as the evidence speaks for itself on those fronts. Now, Google claims the pay disparity is attributable to "their different

[2] Plaintiff has sought to strike Google's Reply 56.1 Statement (ECF No. 195). Consistent with the relevant rules, Plaintiff has not filed such a reply. However, she respectfully requests leave to submit a reply to Defendant's Opposition to Plaintiff's Affirmative 56.1 Statement of Undisputed Material Facts (ECF No. 186), if the Court finds it proper.

jobs" or, if the Court finds they are comparable, a bona fide factor other than sex. Def's Reply Brief at 10. As discussed in section II.A.1, *supra*, there is no question of fact that Rowe and Harteau performed the same role. Thus, Google – unconvincingly considering the undisputed facts – attempts to justify its decision by arguing that the pay disparity is based on Harteau's alleged "superior qualifications and greater experience with cloud migrations and Google Cloud Platform ("GCP")". Def's Reply Brief at 10. This argument fails for two reasons: (i) there is no evidence Google can point to that this was the reason for the pay disparity, and (ii) any such defense is pretextual, not job-related, and inconsistent with a business necessity.

**1. *There is no evidence by which Google can establish its affirmative defense.***

As an initial matter, Defendant cites to no evidence in the record – nor can it – proving Google considered Harteau's "superior qualifications and greater experience with cloud migrations and Google Cloud Platform" when making leveling and pay decisions at hire. There is no writing articulating any such pay policy at Google, although the record contains other factors Google considers in determining level and pay. (Opp 56.1 ¶ 21, 181-86.) *See Glenn v. Gen. Motors Corp.,* 841 F.2d 1567, 1570 n.8 (11th Cir. 1988) ("absence of a writing in the context of other written policies provides independent support for its finding that the 'policy' was, in fact, an illegal practice."). Defendant cites to Mr. Stevens's statement of support for Mr. Harteau's hire as evidence of the leveling rationale, yet Mr. Stevens himself testified that he did not make the leveling decision and was only a "final reviewer." He could not recall what factors supported a hire at Level 9 as opposed to Level 8 Technical Director, nor did he ask, at the time, for documentation supporting the leveling recommendation. (Resp. 56.1 ¶¶ 66-68.)

Additionally, Google's manufactured narrative with respect to Rowe's alleged lack of cloud experience is unsupported by the record; there is no evidence that suggests it was even

considered when evaluating her pay and level. Grannis, in his statement of support, never mentions her cloud experience. (Opp 56.1 ¶ 48.) In fact, her interviewers noted in her hiring packet that she had a "long history in this space and should be very good and understanding what can move to Cloud easily and how to address a range of anxieties in the sector" and that "she has already been pushing her company to use the Cloud, well before it was viewed as a reasonable path." (*Id.* ¶ 45.) This is no surprise given that Rowe led the migration of risk systems to the cloud at JPMorgan, was an advocate for the public cloud, a member of JPMorgan's Cloud strategy council, and an advisor to the COO on the Company's cloud strategy. (*Id.* ¶ 41.) Defendant's burden requires it to prove "not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) (emphasis in original) (internal citations omitted). It cannot meet its burden.

That compensation and leveling were not dictated by cloud migration and GCP experience also is evidenced by how Google considered male employees' differing cloud experience. Google paid Ben Wilson more than Harteau, though Wilson had far less experience performing cloud migrations and had no experience with GCP prior to joining Google. (Opp 56.1 ¶ 38; Greene Decl. ¶¶ 3, 5; Greene Reply Decl., Ex. 3, Wilson Tr. 33:5-16.) Evren Eryurek, who Google leveled at 9, also had no experience with GCP prior to joining Google, and worked with AWS (as did Rowe), which was considered "the leader in the industry" at the time. (Greene Reply Decl., Ex. 1, Eryurek Tr. 38:6-23.) *See* EEOC Compliance Manual (2000), § 10-IV.F.2. ("the employer must establish that a gender-neutral factor, applied consistently, in fact explains the compensation disparity.") (emphasis added). Further, when investigating Rowe's complaint that she had been under-leveled at hire, the investigation focused on "years of experience" at hire

to determine whether Rowe's initial level was appropriate – noting that Rowe had more years of experience than Harteau – and did not consider any of the Technical Directors' cloud migration or GCP experience. (Opp 56.1 ¶ 68.)

Defendant's reliance on *Eisenhauer v. Culinary Institute of America* is inapposite, as the case further supports Plaintiff's position. In that case, the plaintiff's comparator exceeded her years of experience by fifteen years and, unlike the plaintiff, had earned a degree. 19 Civ. 10933, 2021 WL 5112625, *7 (S.D.N.Y. Nov. 3, 2021). Here, Rowe had more years of experience than Harteau and possessed a master's degree, whereas Harteau did not finish high school or attend university. (Opp 56.1 ¶¶ 50, 173, 214.) Similarly, Defendant's reliance on *Boatright v. U.S. Bancorp*, 18 Civ. 7293, 2020 WL 7388661, *12 (S.D.N.Y. Dec. 16, 2020) is misplaced as, unlike Rowe and Harteau, the plaintiff in that case did not perform the same role as her alleged comparator.

**2. *Google's affirmative defense is pretextual, not job-related, and inconsistent with business necessity.***

NY EPL requires that any bona fide factors used to establish an affirmative defense be job-related and consistent with business necessity and not be derived from a wage differential based on status within a protected class. N.Y. Labor Law § 194. To the extent Google considered cloud experience as a factor, it did so uniquely to Rowe, the only female Technical Director. *See* p. 8, *supra* (comparing Wilson and Harteau); *see also Belfi,* 191 F.3d at 139-40 (plaintiff may overcome the affirmative defense "by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination."); *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 526 (2d Cir. 1992) (affirmative defense may be countered by evidence showing that the reasons are a pretext). Considering its inconsistent application, Google cannot establish that its supposed rationale is job-related and consistent with business necessity and is

not derived from a wage differential based on status within a protected class. N.Y. Labor Law § 194.

Google also is unable to prove that its hiring rationale explains the year over year differential between Rowe and Harteau. Courts have denied use of this affirmative defense where "defendant has not adequately explained why salaries established [at hire], which may or may not have been discriminatorily established in the first instance, justify continued wage disparity once the plaintiff allegedly began her duties." *Knight v. G.W. Plastics, Inc.,* 903 F. Supp. 674, 678 (D. Vt. 1995); *Jones v. Westside Urban Health Ctr., Inc.*, 760 F. Supp. 1575, 1580 (S.D. Ga. 1991) ("Defendant[] ha[s] offered no explanation for clinging to a salary discrepancy when their underlying assumption has been proved, as plaintiff alleges, grossly incorrect.") Google could have reconsidered its leveling decision in subsequent years – an alternative employment practice that would serve the same business purpose and not produce such a differential – but chose not to do so. *See* N.Y. Labor Law § 194(3). Instead, Google perpetuated an unlawful pay disparity.

## III. CONCLUSION

For the foregoing reasons and those stated in ECF No. 152, Plaintiff requests that the Court grant her partial motion for summary judgment on her equal pay claim.

DATED: New York, New York
January 26, 2022

/s/ *Cara E. Greene*
OUTTEN & GOLDEN LLP
Cara E. Greene
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-206