UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

ULKU ROWE,                               :

                          Plaintiff,  :

                                   :          19 Civ. 8655 (LGS)

              -against-         :

                                   :      **OPINION AND ORDER**

GOOGLE LLC,                   :

                      Defendant.  :

                                   :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Ulku Rowe brings this action against her current employer, Defendant Google LLC, alleging sex-based discrimination and retaliation in violation of the New York Equal Pay Law ("NYEPL"), the New York Labor Law ("NYLL") §§ 194, 215 and the New York City Human Rights Law ("NYCHRL), N.Y.C. Admin. Code § 8-101.[1]  Google moves for summary judgment on all of Rowe's claims.  Rowe cross-moves for summary judgment on her NYEPL claim and one of Google's affirmative defenses to that claim.  For the reasons discussed below, the parties' motions are denied.

## I.    BACKGROUND

The background facts below are drawn from the parties' Rule 56.1 statements and other submissions on these motions.  The facts are either undisputed or based on evidence in the record drawing all reasonable inferences in favor of the non-moving party.

In 2016, Will Grannis and Brian Stevens, Chief Technology Officers ("CTO") of Google Cloud, established the Office of the CTO ("OCTO") within Google's Cloud organization. OCTO was designed to be a team of employees with CTO-like qualities ("Technical Directors")

---

[1] On August 23, 2021, Rowe voluntarily dismissed her Title VII and Equal Pay Claims based on the understanding that the Court would retain jurisdiction over Rowe's state and city law claims.

that would represent Google Cloud externally as the technical face of the organization and be the liaison between clients and Google's engineering teams.  As the hiring managers, Grannis and Stevens determined that the newly-created OCTO role was commensurate with a Level 8 or Level 9 on Google's salary scale.  Technical Directors were expected to assume three key "pillars" of responsibility:  customer advancement, engineering impact and evangelism or thought leadership.  Technical Directors initially were considered individual contributors -- although over time, some Technical Directors managed direct reports.  All Technical Directors in OCTO reported to Grannis.

Between March 2016 and March 2018, Google hired seventeen people to serve as Technical Directors, five of whom were hired as Level 9s.  In December 2016, Google extended an offer of employment to Rowe.  At the time, Rowe held a Bachelor of Science in Computer Engineering and a Master of Science in Computer Science and had more than twenty years of experience in the financial services industry, including as the Global Head and Chief Technical Officer ("CTO") of Credit Risk Technology at JPMorgan Chase.  On March 13, 2017, Rowe started as a Technical Director in Google's New York City office.  Rowe was hired as a Level 8 and was the only woman to serve as a Technical Director when she was hired.

The parties vigorously dispute how Google evaluated whether to hire candidates as a Level 8 or a Level 9.  The parties do not dispute that Google used the same job description and external job posting to hire and recruit all of the Technical Directors and evaluated all Technical Director candidates using the same interview questions and rubrics.  Rowe testified that she asked as part of her interview process whether she should be classified as a Level 8 or Level 9 and was told that all Technical Directors were being hired at a Level 8.  At the time of Rowe's hiring, Grannis wrote "[b]ased on the positive, consistent feedback from the panel, the criticality

of financial services as a vertical for Google Cloud, and the candidate's clear demonstration of

readiness to make an immediate impact as a L[evel] 8, I enthusiastically endorse the hire

recommendation."  Grannis could not recall whether he considered Rowe for hire at a Level 9.

In November 2017, Rowe complained to Human Resources that she believed she was under-

leveled at hire.  Once employed, Rowe had the same duties as the Level 9 Technical Directors

and received favorable performance reviews.

On June 25, 2018, as part of a larger reorganization, Google transferred Rowe and three

other employees from OCTO to report to Tariq Shaukat as Global Client Technical Leads

("GCTLs").  Each of the transferred employees had an "industry vertical focus."  Rowe's was

the financial services industry.  The transfer did not impact compensation or result in a change to

Rowe's job code or level.  Rowe testified that Shaukat treated her differently than her male

counterparts, including not inviting her to staff meetings in or around August 2018.

On June 13, 2018, Rowe expressed interest in a role on Shaukat's team as the head of the

Financial Services Industry Vertical (the "FSVL Role").  Rowe testified that Grannis, Stevens

and Jennifer Burdis -- a recruiter -- previously told Rowe that she would be the obvious person to

lead the Financial Services vertical based on her experience.  Although Shaukat told Rowe he

would formally interview her for the role, in June 2018, weeks into Rowe's new role on his team,

Shaukat wrote that Rowe was not "likely right . . . for the [FSVL] role."  Around the same time

in June 2018, Rowe spoke with Grannis regarding her concerns that she was not being fairly

considered for the promotion.

In August 2018, Rowe was interviewed by four men for the FSVL Role.  The parties

dispute whether Rowe received favorable reviews from the August 2018 interview.  Plaintiff

proffers evidence that "there was no negative feedback" from Rowe's interviewers; "[t]here was

only positive feedback on the technical side," and while one interviewer raised some questions

"on the business side," it was with the caveat that his interview with Rowe was only 30 minutes.

In August 2018, Shaukat decided that Rowe "was not going to be a finalist for the role,"

although he did not communicate the decision to Rowe.  Around the same time, Rowe emailed

the Google internal recruiters she had worked with, Melissa Lawrence and Kevin Lucas, to

inform them that she perceived that her under-leveling at hire was negatively impacting her

consideration for the FSVL Role.

In November 2018, Rowe emailed Shaukat and Diane Greene -- then CEO of Google

Cloud -- to raise concerns regarding her treatment during the interview process for the FSVL

Role, again reiterating her belief that her original under-leveling was impacting her candidacy.

Shaukat and Greene escalated her complaint to HR.  HR later responded that Rowe's leveling

process was not discriminatory.  On November 16, 2018, Greene announced she was leaving

Google.  Shaukat elected not to proceed with an offer to his preferred candidate for the FSVL

Role to allow him time to understand the new CEO's plans for Google Cloud.  In December

2018, Shaukat told Rowe he was pausing the search but that she was not a finalist given the

feedback he received about her candidacy during the interview process.

In January 2019, Shaukat selected Stuart Breslow -- someone who had not interviewed

for the FSVL Role -- as the interim head of financial services.  Around the same time, Stuart

Vardaman, the lead recruiter for the FSVL Role, entered applicant feedback into Google's

Thrive database stating that Rowe was rejected from the FSVL Role because she lacked

"Googleyness" and describing Rowe as "overly self-oriented" and recording that Rowe "was not

qualified for the role in addition to ego concerns."

On or about September 17, 2019, after Rowe filed this lawsuit, Google, through its

Employee Relations ("ER") team undertook an internal investigation of Rowe's claims, which

lasted from approximately October 2019 until April 2020.  On January 22 and 29, 2020, ER

interviewed Vardaman, who had led the recruitment process for the VP Financial Services

position.  Vardaman described Rowe in his ER interview as "abrasive," "cantankerous," and

"bristly," despite months earlier having described Rowe as a candidate with "executive poise,"

who was "confident (but not ego-driven)," and "forthright with a quick operating cadence."

In February 2020, Rowe learned of a Vice President - Financial Services Industry Lead

position from the Head of the North American Sales, Kristen Kliphouse.  Kliphouse instructed

Rowe to follow up with Vardaman, the recruiter for the position, in order to apply.  On February

25, 2020, Mr. Vardaman informed Rowe that she would not be considered for the VP Financial

Services Industry Lead position.

## II.    STANDARD

Summary judgment is proper where the record establishes that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021).  "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."  *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v.*

*Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

Courts must construe the evidence and draw all reasonable inferences in the non-moving

party's favor.  *Electra*, 987 F.3d at 248.  When evaluating cross-motions for summary judgment,

the Court reviews each party's motion on its own merits and draws all reasonable inferences

against the party whose motion is under consideration.  *Schwebel v. Crandall*, 967 F.3d 96, 102

(2d Cir. 2020).  When the movant properly supports its motion with evidentiary materials, the

opposing party must establish a genuine issue of fact by citing to particular parts of materials in

the record.  Fed. R. Civ. P. 56(c)(1)(A).

### III.   DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims.  Plaintiff cross-moves for

summary judgment on her NYEPL and one of Defendant's affirmative defenses.  For the reasons

discussed below, both motions are denied.

### A.   NYEPL Claim

To prevail on her NYEPL claim, Rowe must demonstrate that Google failed to pay her

equally to a man in the same geographic area for (a) equal work on a job the performance of

which requires equal skill, effort and responsibility, and which is performed under similar

working conditions, or (b) substantially similar work, when viewed as a composite of skill,

effort, and responsibility, and performed under similar working conditions.  *See* NYLL § 194(1);

*see also Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 31 n.2 (2d Cir. 2015) (summary

order) ("An equal pay claim under [NYLL] § 194 is analyzed under the same standards

applicable to the federal Equal Pay Act.").

#### 1.   Defendant's Motion

Google argues that Rowe's NYEPL claim fails as a matter of law because Rowe has

failed to identify comparators who perform "equal or substantially similar work" as Rowe,

arguing that certain of Rowe's comparators -- including GCTLs -- are inappropriate comparators

because those individuals served in roles that were "substantially different" from Rowe's.  *See*

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014).  Google also points out

that Rowe out-earned all of her GCTL colleagues in the New York office.

Google's argument fails because, even if Google is correct about these comparators, a

reasonable juror could find in favor of Rowe on the NYEPL claim based on the Level 9

Technical Directors being comparators.  Rowe has proffered evidence that she and a Level 9

Technical Director ("Comparator 1") were hired into the same job (the Technical Director role),

in the same office (New York City), within a few months of each other, based on the same

interview criteria.[2]  At the time of her hire, Rowe had a Master of Science in Computer Science

and more than twenty years of experience in the financial services industry.  Comparator 1 had

nineteen years of experience but did not finish high school or have a college degree.  Both Rowe

and Comparator 1 were interviewed by Grannis and evaluated by him using the same evaluation

rubrics, including their ability to meet the same job requirements and primary job responsibility

pillars.  Rowe also has proffered evidence from which a reasonable jury could find that, at the

time of their hiring, Grannis "hired [everyone] for the same role" and thus did not have a sense

of what distinguished Level 8 and 9 Technical Directors.

Google responds that, during Rowe and Comparator 1's overlap in OCTO, Comparator 1

performed substantially different work by collaborating closely with Google's engineering teams

and managing an engineering team building a Google Cloud product, something Rowe did not

do.  This argument is unpersuasive.  Plaintiff has proffered evidence -- including a sworn

---

[2] Because this Opinion and Order discusses personal information regarding compensation, Plaintiff's proposed comparators are referred to using pseudonyms.  *See United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.").  Defendants' motions to file under seal documents submitted in connection with the motions for summary judgment are addressed in a separate Order.

declaration from Comparator 1 -- to support her position that "all Technical Directors performed

the same sort of work . . . collaborated with and covered for each other across industry sectors

[and] . . . all operated at a senior-level and were self-directed.  From a team perspective, Ms.

Rowe [and five proposed comparators, including Comparator 1] were all considered equals."[3]

Given this evidence, a reasonable jury could find the roles substantially equivalent.  *See Lavin-*

*McEleney v. Marist Coll.*, 2239 F.3d 476, 480 (2d Cir. 2001) ("Whether two positions are

'substantially equivalent' for Equal Pay Act purposes is a question for the jury.").

    A reasonable jury could also find that Rowe was paid less than Comparator 1 for this

work.  Google does not dispute that Rowe was paid less than Comparator 1 between January

2018 and June 2018, but instead argues that Rowe's NYEPL claim fails as a matter of law for

2017 because Rowe was paid more than Comparator 1 that year.  Rowe responds that Google

improperly includes in its calculation of her 2017 salary two amounts unrelated to Rowe's

performance of the Technical Director role:  her "replacement compensation" for amounts Rowe

forfeited upon leaving JP Morgan and a $61,000 equity grant that Google paid to individuals

who -- like Rowe -- were hired in Q1 2017 and received an Exceeds Expectations rating.

Comparator 1 was ineligible to receive the equity grant based on his start date.  Rowe also argues

that Google miscalculates how to consider Comparator 1's 2017 compensation and bonus

because he took leave for three-and-one-half months and therefore worked for Google for only

four-and-one-half months that year.  Because "compensation" is not defined in the NYEPL, *see*

---

[3]  Comparator 1 departed OCTO in September 2018, but his change in position does not impact
his relevance as a comparator.  *See Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th
Cir. 1994) ("A plaintiff may make her *prima facie* case by comparing her salary to that of her
predecessor or successor."); 29 CFR § 1620.13(b)(5) ("It is immaterial that a member of the
higher paid sex ceased to be employed prior to the period covered by the applicable statute of
limitations period for filing a timely suit under the EPA.").

N.Y. Lab. Law § 190 (McKinney 2008), whether Rowe was paid more than Comparator 1 is a factual dispute that must be resolved in favor of Rowe as the non-moving party.

Drawing all inferences in favor of Rowe, a reasonable jury could find that Google failed to pay Rowe equally for her 2017 work.  Google does not dispute that Level 9 Technical Directors had greater earning potential based on Google's target compensation for each level and that, at the point of their hires in 2017, Google offered Comparator 1 an annual salary of $325,000.00, an annual bonus target of 40%, and a total equity award of 2,500 restricted stock units whereas Google offered Rowe an annual salary of $290,000.00, an annual bonus target of 30%, and a total equity award of 2,500 restricted stock units.  Based on their differing offer packages -- both extended in 2017 -- a reasonable jury could find that Rowe was paid less than Comparator 1 for this period.  Accordingly, Defendant's motion is denied as to the NYEPL claim.

> **2.      Plaintiff's Motion**

Rowe cross-moves for summary judgment on her NYEPL claim relying on Comparator 1 as a comparator.  But in evaluating Rowe's motion, all reasonable inferences must be drawn in favor of Google.  *See Liberty Lobby, Inc.*, 477 U.S. at 248; *Schwebel*, 967 F.3d at 102.  Plaintiff is not entitled to summary judgment on the NYEPL claim because Google has proffered evidence from which a reasonable jury could conclude that Comparator 1 is not an appropriate comparator because his role had a greater scope and complexity than Rowe's.  For example, Comparator 1 became deeply involved with Google's engineering teams to improve their monitoring and logging systems and give clients greater confidence in Google Cloud's monitoring capabilities.  *See Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691-93 (2d Cir. 2017) (summary order) (affirming grant of summary judgment on equal pay claim where

"better-paid male colleagues practiced in specialized areas of veterinarian medicine and performed complex procedures"). As discussed above, material disputes of fact also exist as to whether Rowe was paid more than Comparator 1 in 2017.

Rowe moves for summary judgment on Google's affirmative defense that a bona fide business-related factor other than gender caused the pay disparity. As discussed above, Google asserts that relative cloud experience and level determined starting pay, rather than Rowe's gender. Rowe responds that Google cannot establish this affirmative defense because no contemporaneous record evidence explains why she was hired as a Level 8 in 2017. But Google has proffered evidence from which a reasonable jury could find a non-pretextual reason for Google's leveling determination. For example, Burdis -- a recruiter -- testified that she made a pre-interview level assessment of candidates and that two Senior Vice Presidents approved the leveling recommendation. Grannis testified that, although it was "hard to recall four years ago," Grannis recommended Rowe as a Level 8 because:

> On the -- on the pros, clear industry knowledge, ability to tie use cases which is a term for, you know, specific type of problem in engineering that needs to be solved and the ability to put that in context in the industry in which she was -- had the most experience, which was financial services; and strong communicator which would likely indicate strong communication skills and strong ability to convey complex ideas to customers.

> On the con side, some flags around depth of experience, around technical ability and no clear demonstrated large-scale migration to Cloud, although it started some preliminary activities at JPMorgan.

Accordingly, Plaintiff's motion for summary judgment on the affirmative defense is denied.

**B.      NYCHRL Discrimination Claim**

Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to

discriminate against such person in compensation or in terms, conditions or privileges of

employment." N.Y.C. Admin. Code § 8-107(1)(a).  "To establish a gender discrimination claim

under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence

that she has been treated less well than other employees because of her gender.'" *Mihalik v.*

*Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  "Indeed, the

challenged conduct need not even be tangible (like hiring or firing)." *Id.* at 110 (internal

quotation marks omitted).

New York courts considering NYCHRL claims on summary judgment have adopted a

modified version of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).  *See Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 116-17 (1st

Dep't 2011); *accord Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 680 (2d Dep't

2019).  Under the *Bennett* framework, a plaintiff must first make a prima facie showing of

membership in a protected class and an adverse employment action under circumstances giving

rise to an inference of discrimination.  *See Bennett*, 936 N.Y.S. 2d at 118.  Plaintiff's burden to

show a prima facie case at the summary judgment stage is minimal.  *Id.*  Bennett notes that the

prima facie case stage may be unnecessary, particularly where the "defendant has moved for

summary judgment and has offered evidence . . . of one or more non-discriminatory motivations

for its actions." *Id.* at 120.  If a court does engage in the prima facie case inquiry, it should ask

only "whether the initial facts described by the plaintiff, if not otherwise explained, give rise to

the McDonnell Douglas inference of discrimination." *Id.* at 119, 124.

Following that minimal showing, the "burden of production" shifts to the defendant to

"put forward evidence of one or more non-discriminatory motivations for its actions." *Id*. at

124.  If the Defendant makes that showing, "the court should turn to the question of whether the

defendant has sufficiently met its initial burden as the moving party of showing that there is no

evidentiary route that could allow a jury to believe that discrimination played a role in the

challenged action." *Id.* at 120.  Summary judgment is appropriate only if "no jury could find

defendant liable under any of the evidentiary routes -- *McDonnell Douglas*, mixed motive,

'direct' evidence, or some combination thereof." *Id*. at 121, 124.  "If the plaintiff responds with

some evidence that at least one of the reasons proffered by defendant is false, misleading, or

incomplete, a host of determinations properly made only by a jury come into play, and thus such

evidence of pretext should in almost every case indicate to the court that a motion for summary

judgment must be denied." *Id*. at 124.  In essence, "[u]nder the NYCHRL, unlawful

discrimination must play 'no role' in an employment decision." *Lefort v. Kingsbrook Jewish

Med. Ctr.*, 164 N.Y.S.3d 183, 188 (2d Dep't 2022) (internal quotation marks omitted).

Rowe has put forward sufficient evidence to support a prima facie showing of

discrimination.  As discussed in the context of Rowe's NYEPL claim, Rowe has proffered

evidence that Google discriminated against Rowe by hiring her as a Level 8, paying her less than

similarly situated male comparators -- including Comparator 1.  Rowe also proffered evidence

that, following her transfer to the GCTL position in June 2018, Shaukat excluded Rowe from

staff meetings, email distribution lists and strategy setting meetings for the financial services

vertical, unlike her male colleagues.  This evidence is sufficient to meet the "minimal" showing

required of a prima facie case.  *Bennett*, 936 N.Y.S. 2d at 118-20; *see Gorzynski v. JetBlue

Airways Corp.*, 596 F.3d 93, 108 (2d Cir. 2010) (concluding employer's disparate treatment of

similarly situated co-workers was sufficient evidence of prima facie discrimination).

Google has proffered evidence of non-discriminatory reasons motivating its actions.  As

discussed in the context of her NYEPL claim, Google asserts that Rowe's relative experience

with cloud, not her sex, resulted in her hire as a Level 8.  Regarding her treatment in the GCTL

position, Google has proffered evidence that, in August 2018, Plaintiff informed Shaukat she was

not on his team meeting invitations, and Shaukat remedied that within the month.  Google also

asserts that Rowe was, in fact, invited to Shaukat's offsite meetings and wrote to Shaukat that

she enjoyed them.  *See Fenner v. News Corp.*, 2013 WL 6244156, at *19 (S.D.N.Y. Dec. 2,

2013) (finding no disparate treatment based on alleged exclusion from newsroom where

evidence demonstrated that requests for access were granted).  Google also asserts that Rowe's

sex had nothing to do with the decision not to hire her for the FSVL Role, relying on interview

evaluations suggesting that Rowe lacked strategic vision required for the role.  Google also

emphasizes that ultimately, it paused its search for the FSVL Role in late 2018, and thus the

position never materialized for any of her proposed comparators.

Summary judgment is denied with respect to the NYCHRL discrimination claim.  The

record does not establish, as a matter of law, that discrimination on the basis of Rowe's sex

played no role in Google's actions.  *See Mihalik*, 715 F.3d at 110 n.8; *Reed v. Nike, Inc.*, No. 17

Civ. 7575, 2019 WL 2327519, at *2 (S.D.N.Y. May 31, 2019).  As discussed in the context of

Rowe's NYEPL claim, Rowe has proffered evidence from which a reasonable jury could find

that Google discriminated against Rowe by paying her less than similarly situated male

comparators, including Comparator 1.  This evidence is sufficient to establish an inference of

bias.  *See Gorzynski*, 596 F.3d at 108 (concluding employer's disparate treatment of similarly

situated co-workers was sufficient evidence of prima facie discrimination).  Nor has Google

proven as a matter of law that its reason for the difference in pay was nondiscriminatory.  *See*

*supra* at 7-9.

Similarly, a reasonable jury could find that discrimination played some role in Shaukat's

excluding Rowe from staff meetings, email distribution lists and strategy setting meetings for the

financial services vertical.  Shaukat's role overseeing the FSVL Role hiring process -- which

started the same month -- permits an inference that Rowe was denied that role for discriminatory

reasons.  *See Mihalik*, 715 F.3d at 110 (under the NYCHRL, a plaintiff need only show, by a

preponderance of the evidence, that she was "treated less well than other employees because of

her" protected characteristics); *see also Albunio v. City of N.Y.*, 16 N.Y.3d 472, 476 (2011)

(being "shunned and excluded from meetings" by a supervisor constituted an adverse

employment action).  Accordingly, Defendant's motion for summary judgment is denied as to

Rowe's NYCHRL discrimination claim.

C.      **Retaliation Claims**

Section 8-107(7) of the NYCHRL makes it "an unlawful discriminatory practice . . . to

retaliate or discriminate in any manner against any person because such person has . . . opposed

any practice forbidden under this chapter."  N.Y.C. Admin. Code § 8-107(7).  To make out a

prima facie case of discrimination under the NYCHRL, "a plaintiff must show that (1) he or she

engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her

employer was aware that he or she participated in such activity, (3) his or her employer engaged

in conduct which was reasonably likely to deter a person from engaging in that protected

activity, and (4) there is a causal connection between the protected activity and the alleged

retaliatory conduct."  *Sanderson-Burgess*, 102 N.Y.S.3d at 681; *Mihalik*, 715 F.3d at 112 (citing

*Albunio v. City of New York*, 16 N.Y.3d 472, 479 (N.Y. 2011)) ("[T]o prevail on a retaliation

claim under the NYCHRL, the plaintiff must show that she took an action opposing her

employer's discrimination . . . and that, as a result, the employer engaged in conduct that was

reasonably likely to deter a person from engaging in such action.").[4]  This "assessment [should]

be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular

conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the

impact of retaliatory conduct."  *Id.*

Google does not dispute that Rowe has proffered sufficient evidence for the first three

elements of her prima facie case and challenges only whether Rowe has demonstrated a causal

connection between her complaints and any decisions concerning her employment.  Therefore,

Rowe has made the "minimal" showing required of a prima facie case.  *See Bennett*, 936 N.Y.S.

2d at 118.  Rowe has put forward evidence that, less than two months after she complained to

Shaukat and Greene about her concerns of inequitable treatment during the consideration process

for the FSVL role, Shaukat denied her the interim head of financial services role and selected a

less-qualified man.  Rowe also has proffered evidence of Shaukat removing her core

responsibilities related to the financial services industry.  The close temporal proximity between

her protected activities and these adverse actions is sufficient to demonstrate causation at the

prima facie stage of a retaliation claim.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d

72, 90 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected

activity followed closely in time by adverse employment action."); *Zann Kwan v. Andalex Grp.*

*LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (affirming temporal proximity between a protected

---

[4]  The parties agree that Rowe's NYLL retaliation claim is analyzed under a similar framework
as her NYCHRL retaliation claim.  *See Copantitla v. Fiskardo Estiatorio Inc.*, 788 F. Supp. 2d
253, 302 (S.D.N.Y. 2011) ("To establish a prima facie case under [the NYLL], the plaintiff must
adequately plead that while employed by the defendant, she made a complaint about the
employer's violation of the law and, as a result, was terminated or otherwise penalized,
discriminated against, or subjected to an adverse employment action." (internal quotation marks
omitted)); *Benzinger v. Lukoil Pan Americas, LLC*, 447 F.Supp.3d 99, 130 (S.D.N.Y. 2020)
(same).

activity and adverse action is sufficient to demonstrate causation at the prima facie stage of a

retaliation claim); *Hinton v. City Coll. of N.Y.*, No. 5 Civ. 8951, 2008 WL 591802, at \*25

(S.D.N.Y. Feb. 29, 2008)) ("[I]t cannot be doubted that a denial of promotion is the sort of

adverse action that could dissuade[ ] a reasonable worker from making or supporting a charge of

discrimination.").  The same is true for Rowe's assertion that Google refused to consider her for

the Vice President -- Financial Services Industry position beginning in January 2020, following

the filing of this action in September 2019.

Google has proffered non-retaliatory reasons for each of these actions.  According to

Google, although Rowe was not selected for the FSVL Role in November 2018, shortly after a

complaint regarding under-leveling at hire, the decision had no impact on her consideration for

the FSVL role because (1) Rowe was not the preferred candidate based on feedback and (2) the

search was later paused in light of changes in Google Cloud.  As to the Vice President --

Financial Services Industry position, Google proffers evidence that Rowe's lack of experience

managing a sales team -- not her protected activity -- motivated the decision.  *See Saji v. Nassau*

*Univ. Med. Ctr.*, 724 F. App'x 11, 14-15 (2d Cir. 2018) (summary order) (affirming grant of

summary judgment on retaliatory failure to hire claim when plaintiff was not qualified for the

relevant position).

Summary judgment is denied with respect to the NYCHRL retaliation claim because a

reasonable jury could conclude -- based on the close temporal proximity -- that there was a

connection between Rowe's protected activities, the decision not to hire her for the FSVL Role,

and the decision to not promote Rowe to interim head of financial services.  *See Vega*, 801 F.3d

at 90.  Drawing all inferences in Rowe's favor as the non-moving party, a jury also could confer

causal connection because Rowe has proffered evidence that "there was no negative feedback"

16

from Plaintiff's interviewers, "[t]here was only positive feedback on the technical side and there were questions and concerns on the nontechnical side, and . . . product management," that at least some of this feedback was requested from her interviewers less than three weeks *after* her November 2018 complaint of discrimination, and was in response to an email noting that Rowe "was" -- in other words, no longer -- a candidate for the FSVL Role.  To the extent that Google relies on the paused search to foreclose causal connection, this argument is unpersuasive because Shaukat told Rowe that she would not be considered for the FSVL Role *before* the search was paused.

A reasonable jury could also find that there was a causal connection between Rowe's filing of this action and Google's refusal to consider her for the Vice President -- Financial Services Industry position.  Rowe has identified emails showing that, on February 5, 2020, Rowe emailed Vardaman regarding her desire to be considered for the Vice President position and requested that Vardaman provide her with guidance on the next steps in the application process. Following additional outreach from Rowe, on February 25, 2020, Vardaman informed Rowe that Google was "looking for someone at a VP level scope and scale and with actual C level executive contacts" and she would not be considered for the role.  Vardaman never gave Rowe instructions for how to apply for the position, despite her requests for the information.  Based on the close temporal proximity between the filing of this action and these events, a reasonable jury could conclude that there was a connection between Rowe's protected activities and the denial of the role.  *See Vega*, 801 F.3d at 90.  Accordingly, Defendant's motion for summary judgment is denied as to the retaliation claims.

17

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is denied, and

Plaintiff's motion for partial summary judgment is denied.  Defendant's motion for oral

argument is denied as moot.

The Clerk of Court is respectfully directed to close the motion at Dkt. Nos. 137 and 152.

Dated:  September 26, 2022
      New York, New York

                                        LORNA G. SCHOFIELD
                                UNITED STATES DISTRICT JUDGE