**OUTTEN & GOLDEN LLP**
Cara E. Greene
Gregory S. Chiarello
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE,<br><br>     Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>     Defendant. | Case No. 1:19-cv-08655 (LGS) |

**MOTION TWO:
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE HEARSAY EVIDENCE CONCERNING PLAINTIFF'S CANDIDACY FOR THE FINANCIAL SERVICES VERTICAL LEAD ROLE**

In this action, Plaintiff alleges that Google denied her a promotion to the Financial Services Vertical Lead role ("FSVL") in violation of the New York City Human Rights Law ("NYCHRL"). Plaintiff hereby moves for an order *in limine* to exclude any evidence concerning oral feedback from panelists who interviewed Ms. Rowe, which was allegedly provided to Stuart Vardaman, the internal recruiter (who in turn allegedly provided it to Tariq Shaukat, the hiring manager and decision-maker), or to Mr. Shaukat directly. This evidence is untrustworthy hearsay for which no valid hearsay exception applies. Therefore, Plaintiff moves for an order precluding Defendant from introducing any such evidence at trial.

   **I.      Facts**

Google seeks to introduce for its truth alleged oral feedback from individuals who interviewed Ms. Rowe in connection with the FSVL role. On June 13, 2018, Ms. Rowe expressed interest in the role to Tariq Shaukat, her supervisor at the time and the hiring manager for the role. Although Mr. Shaukat told Ms. Rowe he planned to give her a fair shot, he later admitted that in June 2018, prior to Ms. Rowe's application for the VPFS role and just weeks into any formal professional interaction with her, he formed the opinion that Ms. Rowe was not "likely right . . . for the role." Mr. Shaukat nonetheless "allowed" Ms. Rowe to "continue" with the interview process and interview with Cloud's CEO, Diane Greene, as a "retention" exercise. (ECF No. 163 ¶ 101). In August 2018, four individuals (Sebastien Marotte, Jason Martin, Darryl Willis, and Vats Srivatsan) interviewed Ms. Rowe. However, they did not enter their feedback in Google's internal hiring software, gHire, despite near daily automated reminders and specific requests from Mr. Vardaman that they do so. (ECF No. 163 ¶¶ 310-13).

On August 31, 2018, just three days after Ms. Rowe raised concerns with HR about possible discrimination, Google determined that she was "not viable for the role," even though the candidate review process had not concluded and no formal feedback on Ms. Rowe's

1

candidacy had been provided or entered into gHire. (GOOG-ROWE-00017722, ECF No. 163 ¶ 325). Months later, Mr. Shaukat filled the role with a man, Stuart Breslow, who was not qualified and who had not gone through any formal interview process. (ECF No. 163 ¶¶ 328-29).

### A.     *Stuart Vardaman's Testimony about Interview Feedback is Hearsay*

Mr. Vardaman claims that Mr. Willis and Mr. Martin provided feedback to him via a direct message (ping): "I recall [] Darryl Willis feeling she wasn't quite ready for a VP role; and then Jason Martin sharing something along the lines that as a director, as an executive at Google, there should have been some additional impact from Ulku's activity." (Vardaman Tr. 80:7-12). He also claimed that Mr. Willis had told him (Mr. Vardaman) that Ms. Rowe was "junior for the VP role." (*Id.* at 82:1-7). Mr. Vardaman, however, denies sharing this information with Mr. Shaukat. (*Id.* at 82:24 to 83:4).

### B.     *Tariq Shaukat's Testimony about Interview Feedback is Hearsay*

Mr. Shaukat claims that feedback from interview panelists was the basis for his determination that Ms. Rowe was not qualified for the FSVL position. (Shaukat Tr. 161:14-23 ("once we received the negative feedback from those interviews on the business dimensions, then we started suspecting that she was not going to end up being the finalist for the role.")). However, the only feedback Mr. Shaukat claims to have directly received from the panelists came from a short email from Sebastien Marotte, in which he stated that he "found her very solid on the technical part," and while he had questions about Plaintiff's presentation "on the business side," it was provided with the caveat that his interview with Plaintiff "was only 30mn." (ECF No. 163 ¶ 324). Mr. Shaukat did not recall speaking with any of the panelists directly, but believed it was "possible" he spoke with Jason Martin. (Shaukat Tr. 148:15-149:16). All other feedback Mr. Shaukat allegedly received and considered was provided by Mr. Vardaman,

although Mr. Shaukat could not recall when Mr. Vardaman provided him with the feedback (*i.e.*, before or after his decision that Ms. Rowe would not receive the role) or how Mr. Vardaman had gathered the feedback. (Shaukat Tr. 149:17-151:24). The feedback Mr. Vardaman allegedly provided to Mr. Shaukat was that Mr. Marotte and/or Mr. Martin had told him that Ms. Rowe "had a hard time . . . articulating a vision for the financial services industry . . . the business needs that she felt the industry was facing that Google Cloud could help with," and could not lay out a product mandate for the vertical. (Shaukat 146:8-147:3; *see also* 150:4-152:21).

## II. Argument

Google seeks to counter the strong evidence that Mr. Shaukat's decision to exclude Ms. Rowe from consideration for the FSVL role was improperly motivated by introducing evidence of alleged hearsay conversations between Mr. Vardaman, Mr. Shaukat, and the interview panelists. Testimony (i) from Mr. Vardaman about conversations he allegedly had with interviewees, (ii) from Mr. Shaukat about Mr. Vardaman's conveyance of the alleged feedback, and (ii) from Mr. Shaukat, to the extent his testimony departs from his deposition testimony that he did not recall any specific conversations with the panelists, is inadmissible hearsay and should be stricken. *See* Fed. R. Evid. 802, 805. Alleged conversations between the panelists and Mr. Vardaman, and the communications between panelists and Mr. Shaukat, are being offered for their truth – that the panelists did not believe Ms. Rowe was qualified for the role and that Ms. Rowe was not qualified for the role. As discussed below, there is no permissible exception for these hearsay statements.

Further, interview feedback that was first provided to Mr. Vardaman and then passed on to Mr. Shaukat is double hearsay, for which *both* levels of hearsay must meet the exception. *See Hayden v Walmart Stores, Inc.*, 619 F App'x 22, 24 (2d Cir. 2015) (to be admissible, both

statements in double hearsay must be subject to exception). Both the underlying statements by the panelists and Mr. Vardaman's statements to Mr. Shaukat are hearsay being offered for their truth, and thus must be excluded. *See Robertson v All Am. Quality Foods, Inc.*, 246 F Supp 3d 1365, 1382 (N.D. Ga. 2017) (excluding as double hearsay a witness's testimony about what an individual told him about that individual's conversation with a third party).

To the extent that Google argues that the statements are not being offered for their truth, but rather to identify information Mr. Shaukat considered when making his decision ("effect on listener"), the argument is disingenuous. Google repeatedly claims that the feedback – for instance, that she was too junior and lacked a vision – was the reason she was not qualified and not selected for the position. Thus, it is impossible to separate the truth of the purported statement from Mr. Shaukat's consideration of the statement. Since Google would not be offering the evidence solely for its effect on the listener, the evidence inadmissible. *See U.S. v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (effect on listener exception exists where "'the significance of an offered statement *lies solely* in the fact that it was made [and] no issue is raised as to the truth of anything asserted.'") (*quoting* Fed. R. Evid. 801(c) and 801(c) advisory committee's note) (emphasis added); see also *United States v. Reed*, 908 F.3d 102 (5th Cir. 2018), cert. denied, 139 S. Ct. 2655 (2019) ("In light of the dual purposes for which a witness's statements could have been wielded[,]" there was no error in excluding them as hearsay; "the line was fuzzy as to whether defendant truly sought to admit the statements solely to prove their impact on him, the listener, or whether he in fact sought to admit them for their truth.")

Additionally, the state of mind exception to the rule against hearsay does not apply. Rule 803(3) "expressly excludes from the operation of the rule a statement of belief to prove the fact believed. . . . [T]he state-of-mind exception does not permit the witness to relate any of the

4

declarant's statement as to why he held the particular state of mind, or what he might have believed[.]" *United States v. Cohen*, 631 F2d 1223, 1225 (5th Cir. 1980). As the Advisory Committee's Notes to Fed. R. Evid. 803(3) explain, "[t]he exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."

Finally, there is no indicia of reliability for any of the statements being offered, as there is no evidence that the statements were actually made. *See United States v. Delvecchio*, 816 F.2d 859, 863 (2d Cir. 1987) (hearsay offered to establish intent of non-declarant not admissible without "independent evidence which connects the declarant's statement with the non-declarant's activities."). At deposition, Mr. Shaukat testified that he had a standing weekly meeting with Mr. Vardaman, during which time Mr. Vardaman would provide "a verbal summary of the feedback that was provided from the interviewers," which Mr. Vardaman also recorded in detailed notes. Yet, in Mr. Vardaman's thorough and extensive notes, there is no mention of this feedback or having provided it to Mr. Shaukat. Additionally, although each of Ms. Rowe's panelists was asked numerous times over many weeks to submit their feedback in gHire, they never did. That the alleged feedback came through informal channels, in contravention to Google's regular practice of having interviewees enter feedback in written form in the gHire portal, is further that basis. *See* Fed. R. Evid. 401, 403.

Accordingly, Plaintiff respectfully requests that the Court preclude Defendant from offering any evidence concerning oral feedback from Ms. Rowe's interview panelists.

DATED: New York, New York            Respectfully submitted,
November 21, 2022

/s/ *Cara E. Greene*
OUTTEN & GOLDEN LLP
Cara E. Greene
Gregory S. Chiarello
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060