**OUTTEN & GOLDEN LLP**
Cara E. Greene
Gregory S. Chiarello
Shira Z. Gelfand
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULKU ROWE, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-08655 (LGS) |
| GOOGLE LLC, | |
| Defendant. | |

### MOTION FOUR:
### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CONCERNING THE LEVEL 8 TECHNICAL DIRECTORS

In this action, Plaintiff Ulku Rowe alleges, in part, that Google violated the New York Equal Pay Law ("NY EPL") and the New York City Human Rights Law ("NYCHRL") by hiring Ms. Rowe at a lower level, L8, and paying her less than her male peers hired at L9. In defense of its discriminatory pay practices, Defendant intends to introduce evidence concerning the experience, qualifications, and consideration of male L8 Technical Directors to support its leveling of Ms. Rowe. Such evidence is irrelevant, confusing, and extraneous. The Court should preclude this evidence.[1]

## I. Facts

In December 2016, Google hired Ms. Rowe for the position of Technical Director in the Office of the Chief Technology Officer ("OCTO"). She was one of 17 Technical Directors Google hired over the course of 2016-2017. Google hired the Technical Directors at either L8 or L9; despite her credentials, training, background, and extensive experience, Google hired Ms. Rowe as an L8. Ms. Rowe's manager, William Grannis, told her that all individuals hired for Technical Director positions within OCTO were joining at L8. However, within the same time period it hired Ms. Rowe, Google hired five men as Technical Directors in OCTO at L9: Evren Eryurek, Benjamin Wilson, Jonathan Donaldson, Paul Strong, and Nicholas Harteau. As a result of its discriminatory hiring decision, Google paid Ms. Rowe hundreds of thousands of dollars a year less than her male counterparts for the same work.

## II. Argument

Under Federal Rules of Evidence Rule 402, evidence that is not relevant is not admissible. With respect to Plaintiff's NY EPL claims, Google must prove that it relied – at the

---

[1] Plaintiff excludes from her motion evidence of Google's internal investigations which relied on years of experience to justify its leveling decision with respect to Ms. Rowe.

1

time the decision was made – on a bona fide factor other than sex with respect to Plaintiff's leveling and pay. N.Y. Labor Law § 194; *see also Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) (Defendant's burden requires it to prove "not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." (emphasis in original) (internal citations omitted)).

Throughout Ms. Rowe's employment, multiple investigations, and this litigation, Google's rationale for why it leveled Ms. Rowe at an L8 while other male Technical Directors were leveled at a L9 has shifted. For example, when first investigating her claims of discrimination regarding her level, Google claimed that Ms. Rowe's "years of experience" suggested her initial level was appropriate (despite recognizing at least one male L9 Technical Director had less experience). (ECF No. 163 ¶ 68). Once deposition testimony and Google's own policy documents refuted this rationale, Google, in its summary judgment motion, then asserted that it hired the men at L9 and paid them more because of their "superior qualifications and greater experience with cloud migrations and Google Cloud Platform ('GCP')." (ECF No. 138). Putting aside that this defense is meritless and contradicted by the record in this matter, what is clear is that Google did not consider *the leveling decisions of other employees* when leveling Ms. Rowe and thus that it cannot be the reason for the leveling disparity.

The record is undisputed that Ms. Rowe was leveled independently of the leveling of any L8 directors. The hiring manager, Will Grannis, confirmed in his sworn deposition testimony that he did not consider any candidates against each other with respect to the levelling recommendation. (Grannis Tr. 71:17-24). This is consistent with Google's policy, which states that decision makers are not to "make leveling recommendations based on factors outside of interview process." (ECF No. 163 ¶ 108). Therefore, any evidence concerning the qualifications,

2

consideration, and leveling of L8 Technical Directors for the role is irrelevant to the NY EPL claim and should be excluded.

Just as evidence related to L8 men is irrelevant to Ms. Rowe's Equal Pay claims, it is likewise irrelevant to her NYCHRL discrimination claims. The fact that Google leveled some men at L8 does not nullify Ms. Rowe's discrimination claims because the relevant question under the NYCHL is whether Ms. Rowe was treated less well because of her gender, not whether Ms. Rowe was treated worse than all the other men in her department. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 48 (App. Div. 1st Dep't 2012) (the fact that defendant paid plaintiff more than *some* men does not nullify its discriminatory treatment); *cf. EEOC v. Md. Ins. Admin.*, 879 F.3d 114,121-22 (4th Cir. 2018) ("The fact that other male employees . . . performed substantially identical work but made less money than the claimants does not require us to reach a different conclusion.").

Further, the relevant comparator group for Ms. Rowe's discrimination claims are the L9 men who, like Ms. Rowe, had vertical or specialized knowledge.[2] Mr. Grannis hired Ms. Rowe as part of an effort to recruit candidates with significant experience in defined industries, such as financial services (Ms. Rowe), healthcare (Mr. Eryurek), energy (Mr. Wilson), and startups (Mr. Harteau).[3] (ECF No. 164 ¶ 26, ECF No. 159 ¶ 10). Other L9 Technical Directors had specialized

---

[2] Although at the beginning of litigation Ms. Rowe identified several L8 men in OCTO (in addition to several other job categories) as potential comparators, she has since limited, with Google's agreement, the universe of relevant comparators and no longer is claiming she is similarly situated to L8 men in OCTO.

[3] Separately, Mr. Grannis also hired individuals with a particularized focus in applied artificial intelligence and machine learning, such as Scott Penberthy, Massimo Mascaro, and Kawaljit Gandhi – all of whom are L8. While Ms. Rowe at her deposition testified that she believed certain L8 Technical Directors had "the same OCTO responsibilities" as she did, she further testified that her "[e]xperience and [] qualifications are in line with the level 9 men in OCTO." (Rowe Tr. 107:19-109:11). Whether or not Ms. Rowe was qualified for the role as *at least* a L8

knowledge, such as Paul Strong, who specialized in virtual machine building, and Jonathan Donaldson, who has special expertise in containers (packages of software that virtualize operating systems and enable them to run anywhere). (ECF No. 164 ¶¶ 32, 35).

Not surprisingly, then, the L9 Directors believed Ms. Rowe to be performing the same job as them. Mr. Harteau noted that although Ms. Rowe and his "work focused on different industries, [their] actual work as Technical Directors was very similar." (ECF No. 159 ¶ 10). Mr. Wilson identified Ms. Rowe's role as the same as his, except she was in the financial services vertical, and he considered her as his corollary with a different industry focus. (Wilson Tr. 91:21-25). Mr. Eryurek believed they "were all in the same role." (Eryurek Tr. 63:25).

Some months after Ms. Rowe was hired, Mr. Grannis decided to reorganize and group together the Technical Directors "who had demonstrated a high acumen of particular industry." (ECF No. 163 ¶ 343). He identified Ms. Rowe as someone to not only join the verticals group, but to be its manager. While Google noted at the time that the selection of Ms. Rowe to lead the verticals group would result in a level inversion, *i.e.* an L8 supervising an L9, Mr. Grannis and others believed that she was the best person for the role. (ECF No. 163 ¶ 205-08). As such, it is clear that the L9 Technical Directors are her appropriate comparators and the introduction of evidence unrelated to her comparators is irrelevant and improper.

In addition, introducing evidence that is irrelevant to the core questions the jury must answer – (1) did Google have a bona fide reason for making its decision <u>at the time</u> it made its leveling decision, and (2) did Google treat Ms. Rowe less well because of her gender – will only confuse the jury by suggesting that information that was not known and not considered by

---

is not at issue in this trial. The issue that the jury must consider is whether Google should have hired her at a L9.

Google at the time somehow matters. *See McKennon v. Nashville Banner Publ'g. Co.,* 513 U.S. 352, 359-60 (1995) ("The employer could not have been motivated by knowledge it did not have" and cannot claim it made the decision "for the non-discriminatory reason."); *see also* Fed. R. Evid. 403 (excluding even relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury"); *see also* Fed. R. Evid. 403 Advisory Committee's Note (evidence is excludable if it has "an undue tendency to suggest decision on an improper basis"). Because it does not have any relevance to the claims or defenses in this matter, and it will only confuse the jury, the Court should prohibit Google from introducing this evidence.

### III.   Conclusion

For the reasons discussed above, Plaintiff respectfully requests that the Court preclude Defendant from offering evidence concerning the experience, qualifications, and consideration of other L8 Technical Directors.

| | |
|---|---|
| DATED:   New York, New York<br>               November 21, 2022 | Respectfully submitted,<br><br>/s/ *Cara E. Greene*<br>OUTTEN & GOLDEN LLP<br>Cara E. Greene<br>Gregory S. Chiarello<br>Shira Z. Gelfand<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>Telephone: (212) 245-1000<br>Facsimile: (646) 509-2060 |