**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ULKU ROWE,<br><br>                    Plaintiff,<br><br>        v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | No. 19-cv-08655<br><br>**Oral Argument Requested** |

**GOOGLE'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. THERE IS NO GENUINE ISSUE TO BE TRIED ON PLAINTIFF'S NY EPL CLAIM ..................................................................................................... 1

    A.     Plaintiff and Director-Level Software Engineers, Product Managers, or Application Engineers Do Not Perform Substantially Similar Work ..................... 1

    B.     Plaintiff and Scott Penberthy Did Not Perform Substantially Equal Work ............. 5

    C.     Plaintiff and Breslow Did Not Perform Substantially Equal Work ........................ 6

    D.     Plaintiff Has No *Prima Facie* Case With Respect to Comparator1 .................. 7

        i.     Plaintiff's 2017 Rate of Pay Was Higher Than Comparator1 ........................... 7

        ii.     Plaintiff and Comp1 Were Not Performing Substantially Equal Work ...................................................................................................... 8

II. GOOGLE HAS A BONA FIDE FACTOR OTHER THAN SEX AFFIRMATIVE DEFENSE ................................................................................................................ 9

    A.     Google Does Not Assert A Seniority-based or Merit-based Affirmative Defense as to Plaintiff's Alleged Comparators in New York ................................... 9

    B.     There Is No Genuine Dispute that Google Relied On a Bona Fide Factor Other Than Sex In Setting Compensation .............................................................. 10

        i.     Relative Cloud Experience and Level Determined Starting Pay ............... 10

        ii.     Plaintiff Has Not and Cannot Show Pretext ................................................. 12

        iii.     The Same Affirmative Defense Applies With Respect to Stuart Breslow and Scott Penberthy ..................................................................... 14

III. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT ON PLAINTIFF'S NYCHRL CLAIMS ........................................................................................... 15

    A.     Sex Played No Part In Google's Leveling and Compensation Decisions .............. 15

        i.     Plaintiff Has Not Been Treated Less Well Than L9 Technical Directors On the Basis of Sex ................................................................ 16

        ii.     Plaintiff Has Not Been Treated Less Well On the Basis of Sex than the L8 Technical Directors Who Perform Applied AI Work ...................... 17

        iii.     None of the Global Client Technical Leads or Global Client Leads Are Similarly Situated to Each Other ............................................... 18

    B.     None of Google's Decisions Were Motivated by Sex, Even In Part ..................... 19

    C.     There Is No Evidence Of Pretext .......................................................................... 22

    D.     Plaintiff Was Not Treated Less Well Because of Sex in the GCTL Role ............. 22

    E.     Plaintiff Was Not Treated Differently Because of Sex During Her FSVL Candidacy ............................................................................................................. 23

**TABLE OF CONTENTS**
(continued)

**Page**

IV.    THERE IS NO TRIABLE ISSUE ON PLAINTIFF'S RETALIATION CLAIMS............24

V.    CONCLUSION .................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                 **Page(s)**

*Boatright v. U.S. Bancorp*,
  2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020), *appeal docketed*, No. 20-4236 (2d
  Cir. Dec. 22, 2020) ...................................................................................................*passim*

*Boatright v. U.S. Bancorp*,
  No. 20-4236 (2d Cir. Dec. 22, 2020)...................................................................... 2

*Brinkley-Obu v. Hughes Training, Inc.*,
  36 F.3d 336 (4th Cir. 1994)................................................................................... 9

*Campbell v. Cellco P'ship*,
  860 F. Supp. 2d 284 (S.D.N.Y. 2012) .................................................................. 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................... 18

*Chenette v. Kenneth Cole Prods., Inc.*,
  345 F. App'x 615 (2d Cir. 2009)........................................................................... 25

*Chiaramonte v. Animal Med. Ctr.*,
  677 F. App'x 689 (2d Cir. 2017)........................................................................ 6, 8

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ........................................................ 1

*Collins v. Cohen Pontani Liberman & Pavane*,
  2008 WL 2971668 (S.D.N.Y. July 31, 2008)......................................................... 21

*DeJesus v. Starr Tech. Risks Agency, Inc.*,
  2004 WL 2181403 (S.D.N.Y. Sept. 27, 2004) ...................................................... 14

*EEOC v. Maryland Ins. Admin.*,
  879 F.3d 114 (4th Cir. 2018)............................................................................ 9, 12

*EEOC v. Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014)............................................................................... 4, 9

*Eisenhauer v. Culinary Inst. of Am.*,
  2021 WL 5112625 (S.D.N.Y. Nov. 3, 2021) ................................................. 1, 11, 12

*Epstein v. Sec'y, U.S. Dep't of Treasury*,
  739 F.2d 274 (7th Cir. 1984)............................................................................... 19

*Fenner v. News Corp.*,
  2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) (Schofield, J.) .................................... 18

*Gambale v. Deutsche Bank AG*,
    2003 WL 21511851 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133
    (2d Cir. 2004) ............................................................................................................. 20

*Garcia v. Barclays Capital, Inc.*,
    281 F. Supp. 3d 365 (S.D.N.Y. 2017) ................................................................... 1, 7

*Giannone v. Deutsche Bank Sec., Inc.*,
    2005 WL 3577134 (S.D.N.Y. Dec. 30, 2005) .......................................................... 21

*Golsten-Green v. City of New York*,
    184 A.D.3d 24, 123 N.Y.S.3d 656 (1st Dep't 2020) ............................................... 21

*Gorzynski v. JetBlue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010) ..................................................................................... 19

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000) ..................................................................................... 23

*Hamilton v. City of New York*,
    2021 WL 4439974 (E.D.N.Y. Sept. 28, 2021) ....................................................... 18

*Jimenez v. City of New York*,
    605 F. Supp. 2d 485 (S.D.N.Y. 2009) .................................................................... 24

*Kellman v. Metro. Transp. Auth.*,
    8 F. Supp. 3d 351 (S.D.N.Y. 2014) ........................................................................ 21

*McDowell v. T-Mobile USA, Inc.*,
    2007 WL 2816194 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 F. App'x 531 (2d Cir.
    2009) .......................................................................................................................... 1

*McGuinness v. Lincoln Hall*,
    263 F.3d 49 (2d Cir. 2001) ..................................................................................... 17

*Melman v. Montefiore Med. Ctr.*,
    98 A.D.3d 107, 946 N.Y.S.2d 27 (1st Dep't 2012) ........................................... 15, 24

*Mickelson v. New York Life Ins. Co.*,
    460 F.3d 1304 (10th Cir. 2006) .............................................................................. 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ................................................................................... 15

*Miller v. City of New York*,
    2018 WL 2059841 (S.D.N.Y. May 1, 2018), *aff'd sub nom. Bloise v. City of
    New York*, 768 F. App'x 103 (2d Cir. 2019) ............................................... 16, 17, 18

*Nolley v. Swiss Reinsurance Am. Corp.*,
    857 F. Supp. 2d 441 (S.D.N.Y. 2012), *aff'd sub nom. Nolley v. Swiss Re Am.*
    *Holding Corp.*, 523 F. App'x 53 (2d Cir. 2013) ....................................................... 24

*Ping Chow Wei v. Anthem Inc.*,
    2018 WL 5622571 (E.D.N.Y. Sept. 4, 2018) ........................................................... 16

*Rizo v. Yovino*,
    887 F.3d 453 (9th Cir. 2018) .................................................................................... 12

*Shah v. Wilco Sys., Inc.*,
    27 A.D.3d 169, 806 N.Y.S.2d 553 (2005) ............................................................... 17

*Walsh v. New York City Hous. Auth.*,
    828 F.3d 70 (2d Cir. 2016) ...................................................................................... 20

*William v. Morrison & Foerster LLP*,
    2021 WL 3012739 (N.D. Cal. Mar. 12, 2021) ......................................................... 17

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ................................................... 15

*Zimmer v. Warner Bros. Pictures, Inc.*,
    2016 WL 9331304 (Sup. Ct., N.Y. Cnty. Dec. 23, 2016) (unpublished) .................. 24

# I. There Is No Genuine Issue To Be Tried On Plaintiff's NY EPL Claim

It is Plaintiff's burden to show her alleged comparators perform equal or substantially similar work to establish even a *prima facie* case under the New York Equal Pay Law ("NY EPL"). (Pl.'s Opp.[1] at 11.) *See also Garcia v. Barclays Capital, Inc.*, 281 F. Supp. 3d 365, 385 (S.D.N.Y. 2017). By her silence, Plaintiff also concedes that the Equal Pay Act's ("EPA") "substantially *equal* work" standard applies prior to the NY EPL's October 2019 amendments. (Def.'s Br. at 22.)[2] *See Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (failing to address argument in opposition concedes it); *see also Eisenhauer v. Culinary Inst. of Am.*, 2021 WL 5112625, at *2–3 (S.D.N.Y. Nov. 3, 2021) (Plaintiff's claims pre-2019 NY EPL amendment analyzed under federal standard). Plaintiff has failed to carry her burden under any standard.

## A. Plaintiff and Director-Level Software Engineers, Product Managers, or Application Engineers Do Not Perform Substantially Similar Work[3]

"[T]wo positions may be so different such that no reasonable juror could conclude that they are substantially equal." *Eisenhauer*, 2021 WL 5112625, at *3; *see also Boatright v. U.S. Bancorp*, 2020 WL 7388661, at *12–13 (S.D.N.Y. Dec. 16, 2020) (granting summary judgment for employer on Plaintiff's EPA claim for Plaintiff's failure to prove her position was substantially equal during

---

[1] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Google's Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment, dated December 6, 2021 (ECF 153.)

[2] "Def.'s Br." refers to Google's Memorandum of Law In Support of its Motion for Summary Judgment filed on November 1, 2021. (ECF 138.) The EPA's substantially equal standard applies to Plaintiff's NY EPL claims as to Scott Penberthy (section I.B *infra*), Stuart Breslow (section I.C, *infra*), Comparator1 (section I.D, *infra*), and the Director-level SWEs, PMs and AEs in New York who held those positions prior to October 2019 (section I.A, *infra*).

[3] Plaintiff's claim as to these comparators also fails under the NYCHRL for the same reasons articulated herein. Her NYCHRL discrimination claim as to the broader group of Director-level SWEs, AEs and PMs outside of New York fails for the additional reason that all of these men work for different supervisors and in different areas of Google Cloud than Plaintiff. (Reply SMF 146, 153, 161.) *Cf. McDowell v. T-Mobile USA, Inc.*, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007) (granting summary judgment for employer on Title VII discrimination claims; "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of funding them similarly situated") (citations omitted), *aff'd*, 307 F. App'x 531 (2d Cir. 2009).

the relevant period), *appeal docketed*, No. 20-4236 (2d Cir. Dec. 22, 2020).[4] That is manifestly the case here, even under the "substantially similar" standard of the amended NY EPL.

Plaintiff concedes the vast majority of Director-level SWEs, PMs, and AEs manage other employees, a responsibility she never had. (Reply SMF[5] 14, 15, 144, 152, 160.) People managers evaluate their employees' performance, (Reply SMF 217, 218, 219, 220, 221); they set compensation for direct reports, (Pl.'s SMF 114); and they supervise and direct the work of their subordinates. (Reply SMF 145, 152, 155, 158, 160.) Plaintiff never performed any of these responsibilities at Google. (Reply SMF 15, 16.) Her concessions are fatal to her NY EPL claim as to these comparators. *See Boatright*, 2020 WL 7388661, at *12 (plaintiff and male colleague not proper comparators under EPA where male colleague had supervisory responsibilities plaintiff did not).

Plaintiff says this distinction should not matter and points to a sentence of deposition testimony, "I'm not aware of any compensation differences between people managers versus ICs."[6] (Pl.'s Opp. at 39.) She is wrong, and must first prove the work performed required equal skill, effort, and responsibility before Google's explanations for any pay disparities become relevant. (*See* Pl.'s Opp. at 13.) Because people managers have different responsibilities individual contributors do not have, Plaintiff cannot make this *prima facie* showing. *See Boatright*, 2020 WL 7388661, at *12.

---

[4] Plaintiff filed a notice of appeal in *Boatright*, but the appeal specifically excludes the judgment entered on plaintiff's equal pay claims under the EPA. (*Boatright v. U.S. Bancorp*, No. 20-4236 (2d Cir. Dec. 22, 2020).)

[5] References to the parties' Rule 56.1 Statements of Fact are indicated throughout the brief as follows: "Reply SMF __" refers to Google's Reply Rule 56.1 Statement of Undisputed Material Facts filed on December 24, 2021 (ECF 185); "Pl.'s SMF __" refers to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts dated December 6, 2021, submitted in support of her Cross-Motion for Partial Summary Judgment (ECF 155). "Def.'s Counter. SMF" refers to Defendant's Counterstatement of Undisputed Material Facts in response to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts filed on December 24, 2021 (ECF 186).

[6] Plaintiff's "question" at the 30(b)(6) deposition was, "I'm trying to understand everything that may be implicated by someone having the designation of individual contributor versus manager." Google objected to the form of the question. The witness explained, "[I]t's a structural decision or a functional decision, right. . . . I can't say too much because when I think about it from a performance or promotion perspective you're still evaluated on the expectations of your—your role and ladder regardless of people manager versus IC's." (Declaration of Maya S. Jumper (ECF 160) ["Jumper Decl."], Exh. 4 at 122:19-123:23.)

There are plenty of other meaningful differences Plaintiff concedes, either by affirmatively admitting to them or failing to support her denials with citations to admissible evidence. Accordingly, the following remains undisputed:

- The core responsibility of a Director-level SWE is to write the code for Google's products, services and infrastructure, or review and approve code written by other engineers. (Reply SMF 140, 141.) They also create innovative algorithms, libraries or services that power Google's products and features; design software and hardware innovations; create and develop infrastructure to increase productivity, quality, and efficiency across Google; merge or deprecate portions of Google's infrastructure; and define what products engineering teams will build and how to build them. (Reply SMF 141, 142.) Plaintiff interviewed for a Director-level SWE position but did not receive an offer because of concerns she lacked the relevant knowledge for the position. (Def.'s Counter. SMF 153, 154, 155, 156, 157, 158, 159.)

- Director-level AEs work on Google's proprietary products built for internal use, or third-party products integrated into Google's systems. (Reply SMF 150.) They own a portfolio of applications and are responsible for all aspects of those applications across the entire product lifecycle, from implementation through enhancement. (Reply SMF 149.) Their work focuses almost exclusively on applications internal to Google. (Reply SMF 151.)

- Director-level PMs develop multi-year roadmaps for the deployment of a specific product or a portfolio of products from inception through deployment, and manage the process against that roadmap on a quarterly basis. (Reply SMF 155, 157.) Their success is partially measured by the ability of products to meet certain metrics specified at the start of the product roadmap, frequency of product adoption, user engagement, and user satisfaction. (Reply SMF 156.) They have profit and loss responsibilities; set priorities for their product area; allocate resources in annual

planning; and manage against those priorities over the year. (Reply SMF 158, 159.)

Plaintiff has never performed any of the core responsibilities of Director-level SWEs, AEs, or PMs. She is not responsible for building or developing Google Cloud products or managing teams that do. (Reply SMF 6.) She is not responsible for the roadmap or budget for any product. (*Id.*) She does not contribute code to Google's products, services, or infrastructure. (Reply SMF 144.) She does not even know what these individuals do on a day-to-day basis. (Reply SMF 138.)

In response, Plaintiff asserts that these other employees' work must be substantially similar because Google evaluated candidates using the same rubrics. (Pl.'s Opp. at 22; Def.'s Counter. SMF 164.) This argument fails for two reasons.

First, Google does not use the same Role-Related Knowledge ("RRK") rubrics to evaluate candidates across these roles. RRK rubrics measures a candidate's knowledge and related experience against the requirements of a specific role. (Def.'s Counter. SMF 167, 168.) Each job family has its own unique RRK rubric because each role at Google requires unique role-related knowledge and skills. (*Id.*) Plaintiff instead relies on the universal use of Leadership and Googliness rubrics to demonstrate common responsibilities, skills, and effort. (Pl.'s Opp. at 22.) Her reliance on *those* rubrics is misplaced because Google uses the same Leadership and Googliness rubrics to evaluate candidates for most roles at L8 and above regardless of job content. (Def.'s Counter. SMF 165.)

Second, comparability turns on the actual work performed and whether it requires substantially equal or similar responsibilities, skill, and effort, not the use of similar evaluative criteria. *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 257–58 (2d Cir. 2014). Common evaluative criteria merely shows that employees are "subject to the same human resources policies," not that their jobs require substantially equally skill and effort. *Id.*

Plaintiff's reliance on the 2020 Engineering-wide Leveling Guide also does not raise a

genuine issue of material fact. (Pl.'s Opp. at 22.) The guide says nothing about the *requirements* and *responsibilities* for any particular job; the document explicitly does not apply to any particular job, job family, or job ladder, and instead directs users to consult the relevant job ladder for more detailed information. (Def.'s Counter. SMF 186, 187.) There is no evidence anyone consulted the guide when hiring Plaintiff or any of her alleged comparators. Even if managers consulted it for performance evaluations—a dubious assertion at best—it provides general *expectations* across all Engineering roles at various levels and differentiates between L8 and L9 Engineering roles in terms of Knowledge and Experience, Complexity and Scope, Leadership and Influence, and Organizational Impact. (*Id.*)[7]

Plaintiff's final argument that employees sometimes transfer between jobs fares no better. (Pl.'s Opp. at 22.) She admits employees must first demonstrate they have the skill and domain knowledge to succeed in the new role by completing the rigorous ladder transfer process. (Reply SMF 135.) The fact that some employees successfully demonstrate competency in a different role does not mean that the roles themselves require substantially similar responsibility, skill and effort as a matter of law. If that were true, there would be no need for the trial period in the first instance.[8]

Given the undisputed and material differences between Plaintiff's work and the work of Director-level SWEs, AEs, and PMs, the Court may dismiss her NY EPL claims as a matter of law. (*See* Def.'s Br. at 15 n.11 (collecting cases disposing of equal pay claims on summary judgement).)

### B.   Plaintiff and Scott Penberthy Did Not Perform Substantially Equal Work

Scott Penberthy is the only L8 Technical Director in New York who earned more, and he

---

[7] Plaintiff is not seeking to compare herself to all Director-level Engineering employees at Google to whom the Engineering-wide Leveling Guideline might apply. (Pl.'s Oct. 21, 2021 Ltr. (ECF 134) at 2 n.1.)

[8] Plaintiff concedes that each L9 alleged comparator who transferred to the PM or SWE job ladder was re-calibrated to L8 on their new job ladder post-transfer. (Reply SMF 134, 135, 136, 137.) Had Plaintiff successfully completed the same ladder transfer process, she would have been down-leveled as well, just like Nicholas Harteau, Ben Wilson, and Evren Eryurek. (*Id.*) If this Court concludes she is similarly situated to PMs and SWEs, it must account for that level adjustment. This is an additional, independent reason Plaintiff cannot show she is comparable to L9 SWEs or PMs, even if she can show Google should have hired her as an L9 Technical Director.

only worked in New York from December 2016 until November 2017. (Reply SMF 29.) Plaintiff should be estopped from arguing he is her comparator. She *expressly abandoned* this argument in discovery after she discovered he is an L8, not an L9, Technical Director. (Reply SMF 66.) *Cf. Boatright*, 2020 WL 7388661, at *12 n.2 (plaintiff may not identify additional comparator for first time in opposition to summary judgment).

She also cannot show that she and Penberthy performed substantially *equal* work. Penberthy does "specialized work in applied artificial intelligence ('Applied AI') and machine learning" in addition to performing other aspects of the Technical Director role. (Reply SMF 78.) Plaintiff does not have these additional responsibilities. (Reply SMF 80.) They therefore do not perform work requiring substantially equal skill, effort, and responsibility as a matter of law. *See Boatright*, 2020 WL 7388661, at *12 (plaintiff failed to make out *prima facie* case under EPA where comparator performed additional responsibilities plaintiff did not).

### C.    Plaintiff and Breslow Did Not Perform Substantially Equal Work[9]

Plaintiff's opposition does not address Google's arguments with respect to Breslow. By introducing no evidence to the contrary, she concedes the scope of his role was broader than hers; Breslow worked with clients in multiple regulated industries, not just financial services. (Reply SMF 114.) Her concession that there are meaningful differences in the scope of their roles is fatal to her NY EPL claim. *See Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691 (2d Cir. 2017) (summary order) (showing that positions share some common characteristics is insufficient to survive summary judgment if there are material differences in congruity of job content).

Plaintiff cannot compare herself to Breslow from 2019 through the end of his employment because she alleges he assumed the Financial Services Vertical Lead ("FSVL") role *she was not*

---

[9] Plaintiff's NYCHRL claims as to Breslow fail for the same reasons articulated here.

6

*given*. (Def.'s Br. at 18–19.) She affirmatively asserts as of late 2018, Breslow's "position had greater responsibilities, prestige, and exposure than [his] prior role." (Reply SMF 116.) Plaintiff also asserts she began reporting to Breslow in 2019. (Reply SMF 113.) If that is true, Plaintiff will have defeated her own claim. "It is self-evident that a manager does not hold substantially the same position as the individuals [he] manages." *Garcia*, 281 F. Supp. 3d at 387.

Despite these concessions, Plaintiff still argues Breslow is a proper comparator relying again on the 2020 Engineering-wide Leveling Guide. (Reply SMF 279–282.) Even if it accurately described the actual work Plaintiff and Breslow performed in their respective roles—which it does not (*see* section I.A, *supra*)—Breslow testified his role involved the knowledge and experience, complexity and scope, leadership and influence, and organizational impact of an L8 like Plaintiff *and* an L9 employee according to that guide. (Reply SMF 281.) His job carried higher expectations.

**D.    Plaintiff Has No *Prima Facie* Case With Respect to Comparator1**

**i.    Plaintiff's 2017 Rate of Pay Was Higher Than Comparator1**

Plaintiff's compensation and that of her comparators was comprised of base salary, cash bonus and equity awards. (Reply SMF 69.) Considering all of these components, Plaintiff earned more than Comp1 in 2017. Plaintiff worked for 42 weeks in 2017, given her March 17, 2017 start date. (Pl.'s SMF 17.) Plaintiff's weekly salary was approximately $5,577, and for her work that partial year she received a cash bonus of $116,000 and a stock award valued at $60,000. (Pl.'s SMF 78, 84; Declaration of Cara E. Greene (ECF 156) ["Greene Decl."] at ¶ 2.) Therefore, her total weekly rate of compensation was $9,766. Comp1 worked approximately 19.5 weeks in 2017, given his May 15, 2017 start date and leave of absence through mid-August 2017. (Pl.'s SMF 19, 76, 81.) He received a weekly salary of $6,250, and for his work that partial year he received a cash bonus of $61,000 but no equity award. (Pl.'s SMF 79, 82, Greene Decl., ¶ 3.) His total weekly rate of compensation in 2017 was $9,378, approximately $400 per week less than Plaintiff's.

7

    ii.    **Plaintiff and** Comp1 **Were Not Performing Substantially Equal Work**

While Comp1 earned more in 2018[10] than Plaintiff, she cannot establish that they were performing substantially *equal* work during this period. Google hired Plaintiff as an L8 Technical Director and Comp1 as an L9. (Pl.'s SMF 17, 18, 19, 20.) She concedes that level "refers to the scope and complexity within a role and is defined by the knowledge, skills, and abilities that a Googler needs to perform well." (Reply SMF 12.) By her own admission, Comp1 role had a greater scope and complexity, and required greater knowledge, skills, and abilities to meet expectations. The Court should dismiss the claim on this basis alone. *See Chiaramonte*, 677 F. App'x at 691–93 (affirming summary judgment on EPA claim where male co-workers holding same title as plaintiff and sharing some common job responsibilities performed more complex work).

Level aside, the unrefuted evidence shows that Comp1 made greater engineering contributions than Plaintiff. While in OCTO Comp1 became deeply involved with Google's engineering teams to improve their monitoring and logging systems. (Reply SMF 89.) Plaintiff, in contrast, consistently fell short in the area of engineering impact. (Reply SMF 85.)[11] Even if two employees have the same title and share some common job responsibilities, their work is not substantially similar if one employee makes greater contributions than the other. *See Chiaramonte*, 677 F. App'x at 691-93) (granting summary judgment for employer under EPA where even though

---

[10] The only time period for which Plaintiff can conceivably assert a claim as to Comp1 is January 2018 to June 2018. Plaintiff alleges that as of June 2018, she transferred out of OCTO and became a Global Client Technical Lead ("GCTL") in Tariq Shaukat's organization. (Reply SMF 283, 284.) She testified her responsibilities and scope were limited as a GCTL, (Def.'s Counter. SMF 190), so she is precluded from arguing that her work in that role was substantially equal to the work she performed in OCTO. In any event, she and Comp1 were undeniably performing substantially *different* work after September 2018. Plaintiff concedes (as does Comp1 ) as of that date, Comp1 had transferred out of OCTO and began supervising a team of engineers in Stackdriver. (Reply SUMF 133.) He was not a viable comparator as soon as he assumed people management responsibilities, as explained above in section I.A.

[11] Plaintiff attempts to dispute her under-performance in the engineering impact responsibility of her role, but the documents speak for themselves. In her 2017 performance review, an L6 Software Engineer noted that Plaintiff should "provide more guidance to our strategic leaders, especially as we develop new products and technologies." (*Id.*) In her 2018 performance review, both Plaintiff and her supervisor, Will Grannis, identified greater engineering impact as one thing Plaintiff could have done better that year. (Reply SMF 85, 86.)

plaintiff and alleged comparators shared some common responsibilities, male colleagues performed more complex veterinary procedures).[12]

For the same reasons discussed above in section I.A, *supra*, the fact that Plaintiff and Comp1 were "evaluated . . . using the same evaluation rubrics" does not show comparability as a matter of law. *See Port Auth. of N.Y. & N.J.*, 768 F.3d at 257–58. It is also not true. Plaintiff argues the pre-existing job ladder Will Grannis borrowed to create the Technical Director role in OCTO "did not differentiate the job skills, effort or responsibilities required by Technical Directors at Levels 8 and 9." (Pl.s' SMF 33–34 and 36–38.) Not so. There is no entry for L9 on that job ladder for Plaintiff to compare to the L8 role. (Def.'s Counter. SMF 141, 142.) As Plaintiff's own exhibits show, Google noted the need for an additional entry for L9 in late 2016 after deciding to hire Evren Eryurek as a Technical Director at that higher level. (Def.'s Counter. SMF 143.)

Finally, Plaintiff's assertion that she and Comp1 were evaluated using the same *hiring* rubrics throughout their employment is similarly misplaced. (Pl.'s Opp. 12.) There is no evidence in the record that Google uses these rubrics outside the hiring process. (Pl.'s SMF 42–44.)

## II.  Google Has A Bona Fide Factor Other Than Sex Affirmative Defense

### A.  Google Does Not Assert A Seniority-based or Merit-based Affirmative Defense as to Plaintiff's Alleged Comparators in New York

The universe to whom Google's affirmative defenses apply has shifted in scope over the course of this litigation. (Def.'s Br. at 10 n.9; Reply SMF 66.) Now that it has been narrowed for

---

[12] Plaintiff's out-of-Circuit authority does not compel a different result. The employer in *EEOC v. Maryland Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018) argued that plaintiff's male co-workers were not comparators for purposes of the EPA based *solely* on the fact that the employer had hired them at different levels of a salary scale. *Id.* at 119. That is not the case here, where the evidence demonstrates Comp1 made more meaningful engineering-impact contributions than Plaintiff. Plaintiff also cites *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336 (4th Cir. 1994) to argue that she may compare herself to both predecessors and successors in the same role. (Pl.'s Opp. at 13.) In doing so, she misconstrues Google's position. Google does not argue she is precluded from identifying Comp1 as a comparator while both were in OCTO because he later held a different role. Of course she can, but she must still show that they performed substantially equal work, which she cannot do for the reasons stated above.

9

purposes of summary judgment, Google asserts that any disparities in pay between Plaintiff and her New York "comparators" *at issue in the present motions* are not solely the result of a seniority-based and/or merit-based system. Rather, they are attributable to their different jobs or, if the Court finds they are comparable, a bona fide factor other than sex. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

**B.    There Is No Genuine Dispute that Google Relied On a Bona Fide Factor Other Than Sex In Setting Compensation**

**i.    Relative Cloud Experience and Level Determined Starting Pay**

Google's decision to award Harteau a higher starting salary and target bonus was due not to sex but to his superior qualifications and greater experience with cloud migrations and the Google Cloud Platform ("GCP"). Of all the candidates for the L8 and L9 Technical Director roles, Harteau had the most experience performing cloud migrations with GCP. (Reply SMF 50, 51.) His hiring packet repeatedly references his unique background in migrating large companies to the cloud using the very product Google hired him to promote to other clients. (Reply SMF 2, 52, 53.) He spent his entire career at technology companies and had more experience in this industry than Plaintiff. (Def.'s Counter. SMF 148–151.) As Brian Stevens, the Chief Technology Officer of Google Cloud, stated in 2017 in support of his recommendation that Google hire Harteau as an L9 Technical Director:

> I strongly support Nick Harteau for hire as an L9 TSC in the Office of the CTO. One of the strongest packets I've seen. […] He is one of the few engineering leaders in industry that has deep, hand's [*sic*] on familiarity with GCP and is seen as a leader amongst his peers.

(Def.'s Counter. SMF 178.)

Plaintiff, in contrast, had less cloud experience before coming to Google and less exposure to GCP. (Def.'s Counter. SMF 149.) She had only started a cloud migration at JPMorgan approximately one year before she left to join Google. (Reply SMF 43.) Her relative inexperience was due in part to her background in financial services, an industry that she concedes was slower to

10

adopt cloud technology than others. (Reply SMF 42.) This is precisely why she conceded she was "not a cloud expert" and that a cloud expert in financial services is very different from a cloud expert at a cloud native company. (Reply SMF 44.) It is also precisely why Grannis recommended Google hire Plaintiff as an L8 and not an L9: her level of relevant experience demonstrated to him that she could "make an immediate impact as an L-8," and her hiring packet repeatedly references her relative inexperience with cloud given her background in financial services. (Reply SMF 45, 47, 48.)

These differences in level do, in fact, explain any pay disparity. As Plaintiff concedes, an employee's base salary, target annual bonus, and guidelines for equity refresh grants are each tied to level. (Reply SMF 69.) Harteau's starting salary, annual bonus target, and future equity refresh grant guidelines as an L9 were all higher than Plaintiff's as an L8. (Reply 191.) Courts routinely dismiss equal pay claims at the summary judgment stage where, as here, the employer demonstrates pay disparities are based on differences in experience, qualifications, and relevant background. *See, e.g.*, *Eisenhauer*, 2021 WL 5112625, at *9 (granting summary judgment for employer; starting salary due to more extensive professional experience) (collecting cases); *Boatright*, 2020 WL 7388661, at *13 (wage disparity justified by non-pretextual factors other than sex where, *inter alia*, comparator "had previous experience building public finance businesses at major banks. Plaintiff did not").

Plaintiff's arguments to the contrary are meritless. Google identified every single person involved in Plaintiff's and the L9 Technical Directors' leveling determination. (Def.'s Counter SMF 183.) Lead recruiter Jennifer Burdis testified she made a pre-interview level assessment of candidates, and did not Diane Greene as the individual who made the leveling decision. (Pl.'s Opp. at 16.) Plaintiff's own exhibits show that Ms. Burdis identified two *other* Senior Vice Presidents who approved the leveling recommendation. (Reply SMF 23.) Her final argument that Grannis could not recall what he considered when recommending Plaintiff be hired as an L8 is a distraction. (Pl.'s

Opp. at 16.) He stated it was "hard to recall four years ago" in response to a question about whether he considered Plaintiff for an L9 role (and there is no dispute he did). (Pl.'s SMF 56, 128.) His reasons for recommending Plaintiff be hired as an L8, however, were clear:

> On the -- on the pros, clear industry knowledge, ability to tie use cases which is a term for, you know, specific type of problem in engineering that needs to be solved and the ability to put that in context in the industry in which she was -- had the most experience, which was financial services; and strong communicator which would likely indicate strong communication skills and strong ability to convey complex ideas to customers.
>
> On the con side, some flags around depth of experience, around technical ability and no clear demonstrated large-scale migration to Cloud, although it started some preliminary activities at JPMorgan.

(Def.'s Counter SMF 178.)

Plaintiff's out-of-Circuit case law does not compel a different result. In both *Maryland Ins. Admin.*, 879 F.3d at 123 and *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006), there was no contemporaneous evidence showing that different starting salaries were in fact based on superior qualifications. Here, the reasons for recommending Google hire Plaintiff and Harteau at their respective levels are supported by contemporaneous documentation. (Pl.'s SMF 57; Def.'s Counter. SMF 178.) *Rizo v. Yovino*, 887 F.3d 453, 460 (9th Cir. 2018), cited only for a general proposition of law, does not address differing qualifications or experience but whether the affirmative defense may be based on prior salary history, which is not the case here.

### ii.    **Plaintiff Has Not and Cannot Show Pretext**

"[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reasons was false, *and* that discrimination was the real reason." *Eisenhauer*, 2021 WL 5112625, at *4 (emphasis and alteration in original, citation omitted). The reasons for hiring Harteau and four other men as L9s based on their superior qualifications—and greater experience with cloud technology in particular—was well-documented *during their hiring processes*. The stated reason for

12

recommending Harteau as an L9 is quoted above in section II.B.i, *supra*. As to the others, Grannis'

and Stevens' statements of support all reference the reasons they recommended hire at L9, whether

it was the fact that Eryurek "led large scale SW development and cloud deployment teams of greater

than 2000 engineers for one of the world's leaders in Healthcare and Transportation," or Wilson's

"strong leadership track record as a CIO at Siemens, CTO at GE, and depth of first hand experience

moving thousands of applications to the public cloud in Oil and Gas and Industrial verticals," or

Strong's "seniority at VMWare (top candidate for global CTO role), demonstrated strong history of

Cloud thought leadership, name recognition in the market, and ability to engage effectively with the

CxO of any large enterprise." (Def.'s Counter. SMF 179, 180, 181.) Moreover, both Burdis (lead

recruiter) and Grannis (hiring manager) testified at deposition that leveling recommendations are

based on relevant experience or role-related knowledge demonstrated through the interview process.

(Def.'s Counter. SMF 171, 172, 176.)

      Plaintiff repeatedly argues leveling could not have been based on their relative backgrounds

because Google's policies prohibit leveling recommendations based on "years of experience,

education level, and previous job title or company," and because she has more advanced degrees

and 0.2 years more years in the workforce than Harteau does. (Pl.'s SMF 126, 127.) This argument

fails for a number of reasons.

      First, her argument is based on 2020 policies and all of these individuals were hired in 2016

and 2017. (Pl.'s SMF 119.)[13] Second, Plaintiff's focus on the quantity of experience misses the point;

it was the quality and nature of those years of experience that set Harteau and others apart from

Plaintiff. As Google's policy documents state, "[W]hile past experience can signal the candidate's

level of RRK ('role-related knowledge') required for the role, total YOE [years of experience] should

---

[13] Documents dated close in time to the relevant hiring and leveling decisions indicate that Google did, in fact, consider relevant years of experience as one factor to determine level. (Def.'s Counter. SMF 169.)

never be *the determining factor* for leveling." (Pl.'s SMF 120 (emphasis supplied).)

Google applied this policy in a gender-neutral fashion. Scott Penberthy, who had more total years of experience than any other candidate for the Technical Director role in OCTO, was hired as an L8. (Reply SMF 29, 30 182.) As his hiring packet reflects, that recommendation was based on his strong performance in interviews, and his "willingness to learn about Google Cloud Platform." (Def.'s Counter. SMF 182a.) Penberthy, like Plaintiff, lacked the familiarity and experience with cloud technology the L9 men had.

Plaintiff argues that she had the same experience and skills as these L9 men by introducing new information about her background and qualifications conspicuously absent from the résumé she submitted to Google. (*See, e.g.*, Reply SMF 170–173.) Plaintiff's *post-hoc* description of her credentials are immaterial because they could not have formed the basis of any decision by Google. *See DeJesus v. Starr Tech. Risks Agency, Inc.*, 2004 WL 2181403, at *10 (S.D.N.Y. Sept. 27, 2004) ("[plaintiff's] personal belief that he is as qualified as the other employees who were paid more is not enough to create an issue of fact when the other employees admittedly had more relevant work . . . experience that plaintiff lacked"); *accord Boatright*, 2020 WL 7388661, at *19 (plaintiff's "quibbles with [comparator's] prior experience do not render [employer's] reasons pretextual;" record contained ample evidence from which employer could conclude that comparator's prior experience justified higher pay).[14]

### iii.    The Same Affirmative Defense Applies With Respect to Stuart Breslow and Scott Penberthy

To the extent this Court finds that Scott Penberthy and Stuart Breslow perform substantially

---

[14] Plaintiff similarly quibbles with Wilson's prior experience with Cloud technology by arguing that he did not complete a cloud migration before coming to Google, either. (Pl.'s Opp. at 29.) The passage from Wilson's deposition Plaintiff cites suggests otherwise. (Pl.'s SMF 133.) In any event, Google plainly believed that Wilson had "first hand experience moving thousands of applications to the public cloud in Oil and Gas and Industrial verticals," which is why he was recommended as an L9 hire. (Def.'s Counter. SMF 180.)

14

*equal* work to Plaintiff, it should still enter judgment in Google's favor because their higher pay was based on bona fide factors other than sex.

Penberthy's role involved additional Applied AI responsibilities Plaintiff did not have. (Reply SMF 78, 80.) Penberthy had advanced degrees in Applied AI and Machine Learning Plaintiff lacked, (Reply SMF 30), and Applied AI and Penberthy's work with TensorFlow is "a critical area for Google." (Reply SMF 78.) Google was therefore justified in paying Penberthy more for this unique and valuable work. *Accord Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 115–16, 946 N.Y.S.2d 27, 31–33 (1st Dep't 2012) (granting summary judgment on NYCHRL discriminatory pay claim where alleged comparator's skill set was unique and highly valuable).

As for Stuart Breslow, he was hired in June 2018 specifically to advise senior executives in *all* regulated industries who wanted to explore a partnership with Google Cloud. (Reply SMF 114.) Before that, Breslow was a Chief Compliance Officer at Morgan Stanley and gained 30+ years of relevant experience in consulting roles and the financial services industry. (*Id.*) According to Tariq Shaukat, that is why he was hired for the Director, Solutions Consultant position. (Reply SMF 115.) Plaintiff has offered no evidence to suggest the decision was based on anything other than his credentials, and certainly nothing to suggest it was based on his sex.

## III.    There Is No Genuine Dispute of Material Fact on Plaintiff's NYCHRL Claims

### A.    Sex Played No Part In Google's Leveling and Compensation Decisions

Plaintiff has failed to raise a genuine issue for trial on her New York City Human Rights Law ("NYCHRL") claim. She offers vague, conclusory and self-serving statements about herself and men who earn more, but no evidence from which a jury could draw a reasonable inference that Google's leveling and pay decisions were based on sex. The law requires she show she was treated less well *because of* her sex, and that the treatment was *intentional. See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27, 39 (1st Dep't 2009); *Mihalik v. Credit Agricole*

15

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (describing intent requirement). The undisputed evidence, created contemporaneously with the decisions, shows she was not.

> **i.    Plaintiff Has Not Been Treated Less Well Than L9 Technical Directors On the Basis of Sex**

For the reasons explained above in sections II.B.i-ii, *supra*, Plaintiff has failed to show that she is similarly situated to the five men Google hired into the L9 Technical Director position. They had exceptional qualifications and greater relevant experience with cloud technology, *relative to the qualifications and experience of the majority of OCTO hires who, like Plaintiff, were L8 Technical Directors*. (Reply SMF 24.) If Plaintiff cannot show that she, too, had similarly exceptional qualifications and experience to support the higher level, her claim as to starting pay must also fail because she concedes that level impacts starting salary and annual bonus target. (Reply SMF 191.)

Plaintiff was not compensated less well than these L9 Technical Directors *on the basis of sex* through their employment, either. Their higher-level roles have greater scope and complexity, and require greater knowledge, skills, and abilities to perform well. (Reply SMF 12.) Each performed additional responsibilities and made significant contributions that distinguish them from Plaintiff *and men* who were L8 Technical Directors. (Reply SMF 85–91.) Google is entitled to compensate them accordingly. *See Miller v. City of New York*, 2018 WL 2059841, at *8 (S.D.N.Y. May 1, 2018), *aff'd sub nom. Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019).

Plaintiff submits a declaration stating that she made the same contributions as her alleged L9 comparators, in many instances parroting the exact language in Google's statement of undisputed material facts. (Reply SMF 85–91.) She offers no independent evidence that she actually made those contributions or performed the same work as her alleged L9 comparators, and asks this Court to simply take her at her word. This is insufficient to create a triable issue of fact at the summary judgment phase. *See Ping Chow Wei v. Anthem Inc.*, 2018 WL 5622571, at *12 (E.D.N.Y. Sept. 4,

16

2018) (summary judgment for employer on NYCHRL discrimination claims where plaintiff's "bald, self-serving declarations" was otherwise unsupported by the record).[15]

Plaintiff's supporting case law is unpersuasive and inapposite. The court in *Shah v. Wilco Sys., Inc.*, 27 A.D.3d 169, 177, 806 N.Y.S.2d 553, 559 (2005), did not hold that employees were similarly situated where "they held the same position," as Plaintiff claims. The quoted language recites defendant's argument as to the universe of proper comparators, but the court never addressed it because plaintiff otherwise failed to establish a *prima facie* case. *Id.* In *William v. Morrison & Foerster LLP*, 2021 WL 3012739, at *8 (N.D. Cal. Mar. 12, 2021), the court concluded that two attorneys may be similarly situated where both had unique specialties, but each also made significant contributions in terms of high annual billings. That is not the case here, where Plaintiff's comparators made more significant contributions to Google than she did. (Reply SMF 85–91.)

Finally, the record in *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) is not at all similar to the record before this Court. There, plaintiff and her comparator were performing work in comparable positions; their roles were eliminated within two days of each other; and one was offered more severance than the other. Regardless, the court affirmed dismissal of plaintiff's gender discrimination claim because, like here, she received the same treatment as similarly-situated men.

> ### ii.     Plaintiff Has Not Been Treated Less Well On the Basis of Sex than the L8 Technical Directors Who Perform Applied AI Work

Plaintiff is paid better than nearly all of the men in her job code, and that plainly shows that Google is not treating her differently because of her sex. She wants to ignore these facts and argues

---

[15] In the one instance in which Plaintiff supports her declaration by pointing to "evidence," it is wholly unpersuasive. She provides a link to a short promotional video on LinkedIn in a foreign language. (Reply SMF 90.) Plaintiff failed to identify this video in discovery, and Google objects to its introduction into evidence now. *See Miller*, 2018 WL 2059841, at *6 (plaintiffs' reliance on evidence not disclosed during discovery did not create issue of triable fact to defeat summary judgment on EPA claim). Critically, it is offered to prove that she "works alongside Strong" on "an engineering initiative of massive scope and potentially industry-wide implications," but the video contains only the most general statements about how cloud can support the workplace of the future. (Reply SMF 90.)

this does not prove she was paid fairly. (Pl.'s Opp. 21.) She is wrong. It is her burden to prove discrimination, and this Court has considered a plaintiff's compensation relative to peers as a group as probative of discriminatory treatment (or lack thereof). *See Fenner v. News Corp.*, 2013 WL 6244156, at *19 (S.D.N.Y. Dec. 2, 2013) (Schofield, J.) (granting summary judgment for employer on equal pay claims under federal, state and city law; "the record reflects that Fenner, the ninth highest paid reporter on the Metro Desk, was paid well above average for a reporter at the Post").

Plaintiff is also not similarly situated to any L8 Technical Director who works on Applied AI for the same reasons she is not comparable to Scott Penberthy under the NY EPL. (*See* section I.B, *supra*.) She does not have these special skills or responsibilities, and Google is entitled to pay each of them more for their unique skills and work. *See Miller*, 2018 WL 2059841, at *7 (granting summary judgment for employer on disparate pay claim under both state and local law).

### iii.    None of the Global Client Technical Leads or Global Client Leads Are Similarly Situated to Each Other

Plaintiff has the burden to demonstrate her alleged comparators are similarly situated to her in all material respects. *Hamilton v. City of New York*, 2021 WL 4439974, at *10 (E.D.N.Y. Sept. 28, 2021) (city law's "lower standard does not cure Plaintiff's failure to identify a similarly situated comparator"). Plaintiff argues that she is comparable to the only Global Client Lead ("GCL") who earned more than she did, Anil Jain (Reply SMF 163), based on: (1) Jain's title as GCL and (2) the description of the CGL role. (Pl.'s Opp. at 22–23.)

Plaintiff offers no evidence whatsoever as to Jain's working conditions, his actual responsibilities, his qualifications, or his contributions to Google. Other than his title, the only evidence in the record about Jain is the fact that he supervised others, (Reply SMF 164), which makes him substantially *dissimilar* to Plaintiff. *See* section I.A, *supra*. Summary judgment is warranted based on Plaintiff's failure to sustain her evidentiary burden. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986) (summary judgment warranted where nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").[16]

Plaintiff now argues that Wilson and Eryurek held the GCTL title, and that the role as all three performed it was "virtually identical" to their Technical Director roles in OCTO. (Reply SMF 253.) Even if that were true for Wilson and Eryurek, Plaintiff testified that her focus on product and engineering, her client engagements, and thought leadership were all reduced while she was a GCTL. (Reply SMF 288; *see also* Pl.'s Opp. at 31.) If that is indeed the case, Google was justified in paying Wilson and Eryurek more for whatever brief period they were in that role[17] because their work was unchanged. Conversely, if Plaintiff's testimony is incorrect and all three of their roles remained as they were in OCTO, Google was justified in paying them differently for the reasons set forth below in section III.A.i, *infra*.

### B.  None of Google's Decisions Were Motivated by Sex, Even In Part

Plaintiff offers a host of reasons why the Court should infer bias from the record. None are persuasive or withstand scrutiny.

Plaintiff's reliance on *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 108 (2d Cir. 2010), an age discrimination case, is misplaced and assumes too much. While disparate treatment of co-workers may support a *prima facie* case of discrimination, the plaintiff must still show that her co-workers are *similarly situated* in the first instance. Her assertion that Google concluded she

---

[16] *Cf. Epstein v. Sec'y, U.S. Dep't of Treasury*, 739 F.2d 274, 278 (7th Cir. 1984) (dismissing EPA case where plaintiff relied heavily on job descriptions for argument that two jobs involved equal work; plaintiff may not ask a court to "infer equal work from the defendant's failure to prove otherwise"). Plaintiff believes she has raised a material issue of fact by citing to a single document in which someone referred to Jain as her "peer." (Reply SMF 257.) The majority of Plaintiff's performance reviews similarly identify L6 employees as Plaintiff's peers, but she is not arguing they are comparable on that basis. (*See, e.g.,* Jumper Decl., Exh. 28, 29, 30.)

[17] Eryurek was in this role for mere weeks before he started reporting to Sudhir Hasbe and performing the work of a Director-level Product Manager. (Reply SMF 136.)

possessed more relevant experience than Harteau is simply false. (Pl.'s Opp. 24.) Google's investigators concluded, "Overall we did not find evidence that the complainant had significantly more work experience at the time she was hired than her male peers hired within a year of her hire date." (Reply SMF 68.) Investigators also noted, "Tech versus non-Tech experience was the most heavily considered factor when gauging L8 versus L9 for similar years of work experience." (*Id.*)

The alleged "dearth" of female hires in OCTO similarly ignores the evidence. (Reply SMF 197.) Google hired Patricia Florissi as a Technical Director in OCTO in 2020, and was negotiating an offer with a female candidate for an L9 Technical Director role in Europe in 2018. (Reply SMF 196.) Plaintiff falsely claims that Google "stereotyped" this candidate for negotiating her pay, but the documents speak for themselves. (Pl.'s Opp. at 25.) No one involved in Plaintiff's hiring considered a woman negotiating pay a "turn off." Instead, people questioned this candidate's judgment in going over the hiring manager's head to get better leverage in compensation negotiations. (Reply SMF 194.) Plaintiff wrongly attributes the "not Googley" comment as well; no one involved in Plaintiff's hiring wrote those words. (*Id.*) Indeed, Will Grannis, Plaintiff's supervisor and hiring manager, supported the candidate's compensation negotiations. (*Id.*)[18] These facts are unlike those in *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 77 (2d Cir. 2016), and *Gambale v. Deutsche Bank AG*, 2003 WL 21511851, at *2 (S.D.N.Y. July 2, 2003), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004), where there was a complete absence of women in the roles at issue.

Plaintiff also misattributes an alleged statement to Grannis that all Technical Directors would be hired at L8. (Pl.'s Opp. at 26.) Plaintiff's only "evidence" of this comment is her telling other people some unidentified person made this statement. (Pl.'s SMF 59.) Plaintiff also claims that

---

[18] Grannis' open and supportive attitude towards women in the workplace is further evidenced by the very statements Plaintiff now attempts to use against Google: that women seek his advice and mentorship on "respectfully fighting for what they think is fair comp." (Reply SMF 195.) Plaintiff herself acknowledged that she does not believe Grannis treated her differently because of her sex, other than the fact that he participated in her leveling decision. (Reply SMF 64.)

Human Resources falsely represented the process for getting to L9—"by doing great work"—but she does not suggest, let alone substantiate, how or why this is untrue. (Pl.'s Opp. at 26.) Plaintiff's supporting case law here is also off the mark. *Collins v. Cohen Pontani Liberman & Pavane*, 2008 WL 2971668, at *10 (S.D.N.Y. July 31, 2008), concerns whether defendant's proffered explanations were pretextual, not whether unproven and unsupported statements can establish a *prima facie* case. *Giannone v. Deutsche Bank Sec., Inc.*, 2005 WL 3577134, at *1–2 (S.D.N.Y. Dec. 30, 2005), in which the court denied a *motion in limine* to exclude evidence that Human Resources "warned [plaintiff] not to complain of gender discrimination," has no applicability here.

Next, Plaintiff takes the comment that she was "more junior" than other candidates interviewed wholly out of context. Given the dates, the comment was clearly directed at Plaintiff's seniority relative to the two candidates that interviewer had already met: Paul Strong and Evren Eryurek. (Reply SMF 45.) Both men had spent years as CTOs working on cloud technology in industries far more advanced in cloud adoption than financial services; Plaintiff, in contrast, had held herself out to Google as a Managing Director. (Reply SMF 26, 32; Pl.'s SMF 4.) There is nothing discriminatory about this remark given these facts, and it is nothing like the comment at issue in *Golsten-Green v. City of New York*, 184 A.D.3d 24, 43–44, 123 N.Y.S.3d 656, 670–71 (1st Dep't 2020) (supervisor commented he did not "like women on this job because they have babies").

Lastly, Plaintiff's argument that Google's rationale for Plaintiff's leveling shifted fails for the same reasons discussed above in section II.B.ii, *supra*. The message to Plaintiff has been consistent: her relative experience and qualifications compared to others justify the decision to hire her as an L8. (Def.'s Counter. SMF 173, 174, 175.) This is not concocted for summary judgment, as was the case in *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 380 (S.D.N.Y. 2014).

C.      **There Is No Evidence Of Pretext**

Google's stated reasons for hiring Plaintiff as an L8 are not pretextual, as explained above in section II.B.ii *supra*. She cannot argue she "out-performed" the L9 Technical Directors to suggest pretext, either. (Pl.'s Opp. at 30.) The expectations for the L8 and L9 Technical Director roles were different and required different knowledge, skills, and abilities to succeed. (Reply SMF 12.) A rating for work performed at the scope and complexity of an L8 role is not equivalent or comparable to that same rating for work performed at an L9 scope and complexity. (Def.'s Counter. SMF 188.)

D.      **Plaintiff Was Not Treated Less Well Because of Sex in the GCTL Role**

Plaintiff's "evidence" suggesting she was excluded from meetings on the basis of sex is her own speculation. Wilson and Eryurek did not observe Shaukat excluding Plaintiff; they testified only that *she told them* she had been excluded from meetings. (Reply SMF 287.) Moreover, evidence that *Plaintiff* submitted demonstrates that: (1) she does not know who was in these meetings; (2) she does not know what these meetings were about; and (3) she does not believe Shaukat should have invited her to every meeting that had anything to do with financial services. (Reply SMF 100; Jumper Decl., Exh. 18 at 171:20–174:18.) There is no basis for her to conclude that her sex was a motivating factor for her alleged treatment.

In any event, she fails to rebut Google's evidence showing that her male colleagues who transferred with her from OCTO were also left off those same staffing meetings and distributions lists. (Reply SMF 96.) She claims that while *their* exclusion was the result of a technological glitch, *hers* was motivated by gender. (Reply SMF 96.) There is nothing in the record to support this.

Finally, Plaintiff points to a single instance in which she and Shaukat failed to connect for a one-on-one meeting around June 6, 2018. (Reply 290.) This is not actionable conduct; within the week, Plaintiff met Shaukat and thanked him for his time. (Reply SMF 288.)

E.   **Plaintiff Was Not Treated Differently Because of Sex During Her FSVL Candidacy**

Plaintiff cannot show that Shaukat denied her fair consideration for the FSVL role on the basis of her sex. Shaukat's two finalist candidates were women and Plaintiff is not competent to say whether she was the most qualified candidate. (Reply SMF 106.) Critically, she admits the search was paused in light of the leadership changes in November 2018, (Reply SMF 111), and she has not identified a single man who was treated better than she was while the search was still active.

Plaintiff misconstrues the probative value of this evidence by citing to *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). In *Graham*, the court rightly noted that favorable treatment of employees within the same protected class does not absolve a defendant from liability on a claim otherwise supported by the evidence. *Id.* Here, the record is devoid of any evidence that Shaukat was biased against Plaintiff because of sex; he would have hired a woman had the search not been paused. (Reply SMF 111, 301.) A hiring manager's preference for or selection of a member of the same protected class still *undermines* the allegation that he acted on the basis of that protected characteristic. *See Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 299 (S.D.N.Y. 2012).

Finally, there is no evidence that Google ever hired anyone for the role, and her argument that she need not show she suffered a tangible adverse action misses the point. (Pl.'s Opp. at 33.) According to Plaintiff's own allegations and evidence, Shaukat determined early on that she was not the best candidate for the FSVL role. *See* section IV, *infra*. That was not based on sex, as described herein. The fact that Breslow was asked to oversee some functions of the FSVL role on an interim basis only does not mean Plaintiff was treated differently. (Reply SMF 113.) Anti-discrimination laws do not require Shaukat to re-visit his assessment of Plaintiff's candidacy simply because the role itself had become temporary.

23

**IV.    There Is No Triable Issue on Plaintiff's Retaliation Claims**

Plaintiff argues that the timing of Shaukat's decision to reject her for the FSVL role raises an inference of retaliatory intent. (Pl.'s Opp. 35.) Plaintiff's own chronology belies that conclusion. She affirmatively alleges that Shaukat became aware of her concern she had been under-leveled on hire in November 2018, which (also according to Plaintiff) was *months after* he decided she was not right for the FSVL role. (Reply SMF 301, 302, 320.) She concedes that as of September 1, 2018, the lead recruiter for the position wrote, "It doesn't sound like [Plaintiff] is viable for the VP role," *before* Plaintiff alleges she engaged in protected activity. (Reply SMF 313.) Plaintiff cannot establish the causation element of her *prima facie* claim on this record. *See Melman*, 98 A.D.3d at 129 ("[C]ontinuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct.")[19]

Plaintiff's retaliation claim based on her decision to return to OCTO is similarly infirm and Plaintiff ignores Defendant's case law on point. *Zimmer v. Warner Bros. Pictures, Inc.*, 2016 WL 9331304, at *7 (Sup. Ct., N.Y. Cnty. Dec. 23, 2016) (unpublished) (allowing plaintiff to voluntarily switch positions after raising a complaint cannot support a retaliation claim under the NYCHRL, even if plaintiff was unsatisfied with the employer's response). Her argument that her return to OCTO was a "demotion" is factually inconsistent with her other allegations in this case. If her scope and responsibilities were reduced in the GCTL role, (Def.'s Counter. 190), her return to a position

---

[19] Any attempt to impute knowledge of her November 2017 complaint to Shaukat cannot save her claim for two reasons. First, the temporal proximity between that complaint and spring of 2018 when Plaintiff first alleges Shaukat determined she was not a fit for the role is far too attenuated to support a claim. *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009). Second, the record does not support that inference. Shaukat clearly did not know Plaintiff had made an earlier complaint of discrimination. If he had, he would not have forwarded Plaintiff's November email to Human Resources, asking them to substantiate whether Plaintiff's concerns in the email were true. (Reply SMF 320.) Separately, the decision to pause hiring for the role was an intervening event that severed any causal connection between Plaintiff's earlier complaints and her denial of the role. *See Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 462 (S.D.N.Y. 2012), *aff'd sub nom. Nolley v. Swiss Re Am. Holding Corp.*, 523 F. App'x 53 (2d Cir. 2013).

with greater scope and responsibility would have been a net gain. She was not stripped of her financial services focus because of her protected activity, either. She concedes that the decision to keep industry-specific work in Shaukat's organization occurred in late 2017. (Reply SMF 92.)

Finally, her claim that she should have been promoted to a VP-level sales position defies logic in light of her admissions that: (1) she lacked direct sales experience; and (2) the job description required the successful candidate to have proven success managing a team of sales employees, which Plaintiff never did. (Reply SMF 129.) Plaintiff cannot manufacture a genuine dispute by simply stating, without evidentiary support, that she believed she was qualified for the role. *Cf. Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009) (affirming denial of Title VII claims for failure to promote where plaintiff premised those claims only on conclusory statements and subjective belief that she was qualified to be promoted). She was not. (Reply SMF 129.)

Plaintiff now argues that Vardaman's January 2019 notes in the internal file that Plaintiff did not get the FSVL role because of "ego concerns" and she was "not Googley" after her late 2018 complaints reflect retaliatory animus. (Pl.'s Opp. 38.) Not so. Vardaman indisputably was unaware of Plaintiff's complaints until January 2020. (Reply SMF 347.) He was also clear that the reason for his note was Plaintiff's dismissive treatment towards him when they spoke about the FSVL role, which he considered "not Googley." (Reply SMF 348.)

## V.   Conclusion

For the foregoing reasons, Google requests summary dismissal of Plaintiff's remaining claims, and that Plaintiff's motion for partial summary judgment be denied.

Dated:  New York, New York
      January 5, 2022

                          PAUL HASTINGS LLP

                          By:    Kenneth W. Gage

25

Sara Tomezsko

200 Park Avenue
New York, NY  10166
Tel:  (212) 318-6000
Fax:  (212) 319-4090
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant*
GOOGLE LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this January 5, 2022, I caused a true and exact copy of the foregoing DEFENDANT GOOGLE LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT, originally filed on December 24, 2021, to be re-filed electronically pursuant to the Court's December 28, 2021 Order (ECF 194) and served by mail on anyone unable to accept electronic filing. Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
      January 5, 2022

Sara B. Tomezsko

27