## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,

|                    | Plaintiff, |
| --- | --- |
| v. | |
| GOOGLE LLC, | |
| | Defendant. |

No. 19-cv-08655

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS
PURSUANT TO LOCAL CIVIL
RULE 56.1**

Pursuant to Local Civil Rule 56.1, Defendant Google LLC ("Google" or "Defendant") hereby submits this response to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (ECF 155). To the extent that any facts are undisputed, such facts are undisputed only for purposes of the parties' pending motions for summary judgment. (ECF 137, 152.) Google also hereby submits Defendant's Counterstatement of Undisputed Material Facts in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgement (ECF 152).

Google does not admit, concede, stipulate, or agree to any express or implied fact, characterization, allegation, or argument in Plaintiff's Rule 56.1 statement, except as expressly stated and only for purposes of the parties' pending motions for summary judgment. Google has organized its responses in accordance with Plaintiff's Rule 56.1 Statement in order to facilitate this Court's review. Google's incorporation of Plaintiff's headings and subheadings, for example, does not signify that Google admits, concedes, stipulates, or agrees to any express or implied fact, characterization, allegation or argument in those headings or subheadings.

<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF</u>
<u>UNDISPUTED MATERIAL FACTS</u>

**I. Plaintiff Rowe's Background and Qualifications**

<u>Pl.'s SUMF 1</u>:

Plaintiff is a woman and member of a protected category. (Declaration of Ulku Rowe in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Rowe Decl.") ¶ 1.)

<u>Defendant's Response to Pl.'s SUMF 1</u>: **Undisputed** that Plaintiff is a woman and that sex

is a protected characteristic under the law.

<u>Pl.'s SUMF 2</u>:

Plaintiff resides in New York and is employed by Google in their New York office. (Rowe Decl. ¶ 1.)

<u>Defendant's Response to Pl.'s SUMF 2</u>: **Undisputed.**

<u>Pl.'s SUMF 3</u>:

Plaintiff holds a Master of Science ("MS") in Computer Science from the University of Illinois at Urbana-Champaign, where she was a Fulbright Scholar, and has a Bachelor of Science ("BS") degree in Computer Engineering from Bogazici University. (Declaration of Sara B. Tomezsko In Support of Google's Motion for Summary Judgment (ECF 143) ["Tomezsko Decl."], Ex. 15; Ex. 51, GOOG-ROWE-P-00004556.)

<u>Defendant's Response to Pl.'s SUMF 3</u>: **Undisputed** to the extent Plaintiff's 2021

description of her educational background is consistent with the résumé she submitted to

Google in connection with the Technical Director position, or the record

contemporaneously created during Plaintiff's recruiting and hiring process, both of which

speak for themselves. (Declaration of Sara B. Tomezsko (ECF 143) ["Tomezsko Decl."],

Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial**

because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 4:

Prior to joining Google, Plaintiff was a Managing Director at JPMorgan Chase, where she was the Global Head and Chief Technical Officer ("CTO") of Credit Risk Technology for JPMorgan from September 2012 to March 2017. (Tomezsko Decl., Ex. 15; Rowe Decl. ¶ 5; Ex. 51, GOOG-ROWE-P-00004556.)

Defendant's Response to Pl.'s SUMF 4: **Undisputed** to the extent Plaintiff's 2021 description of her role at JPMorgan is consistent with the résumé she submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 5:

In that role, Plaintiff led the migration of risk systems to the cloud, was responsible for the global technology platforms for managing JPMorgan's credit risk across all its lines of businesses, countries and asset classes, the world's largest financial services portfolio with $3.7 trillion in total assets and $129 billion revenue. (Rowe Decl. ¶ 7.)

Defendant's Response to Pl.'s SUMF 5: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google. Google **disputes** the financial figures reflected in Pl.'s SUMF 5, which are from JPMorgan's Second Quarter 2021 Earnings Release Financial Supplement, and therefore do not reflect the timeframe when Plaintiff worked at JPMorgan.(https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/investor-relations/documents/quarterly-earnings/2021/2nd-quarter/5a908201-875f-46ea-8a1a-ce85be1d b90e.pdf at pp. 5 (total assets) and 18 (investment banking revenue, gross).)

Pl.'s SUMF 6:

JPMorgan recruited Plaintiff as a "game-changer technology" leader to build the next-generation risk management systems for JPMorgan to enable them to scale up their business growth, ensure regulatory compliance and bring in technical innovation. (Rowe Decl. ¶ 8.)

Defendant's Response to Pl.'s SUMF 6: **Objects to and moves to strike** Pl.'s SUMF 6 as irrelevant and based upon hearsay. The reasons for JPMorgan's decision to hire Plaintiff have no bearing on the issues in this case and are inadmissible for that lack of relevance.

Alternatively, Pl.'s SUMF 6 is **disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 7:

While at JPMorgan, Plaintiff was an advocate for the public cloud, a member of JPMorgan's Cloud strategy council, and an advisor to the COO on the Company's cloud strategy. (Rowe Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 7: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 8:

Plaintiff was directly responsible for strategy, design, product management, engineering, testing, support, and day to day management of the entire technology platforms globally.

(Rowe Decl. ¶ 6; Ex. 51, GOOG-ROWE-P-00004556.)

<u>Defendant's Response to Pl.'s SUMF 8</u>: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 9:

From August 2009 to June 2012, Plaintiff was a Managing Director at Bank of America Merrill Lynch, where she was the Global Head of Market Risk Technology. (Rowe Decl. ¶ 11; Tomezsko Decl., Ex. 15; Ex. 51, GOOG-ROWE-P-00004556.)

<u>Defendant's Response to Pl.'s SUMF 9</u>: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 10:

In that role, Plaintiff was responsible for the global technology platforms, managing Bank of America's market risk across all its businesses, countries and asset classes –the world's second largest financial services portfolio with $2.5 trillion in total assets. She led a global, diverse team of 500+ engineers, product managers, business analysts, testers, support personnel across multiple locations in the US, Europe and Asia. (Rowe Decl. ¶ 12.)

<u>Defendant's Response to Pl.'s SUMF 10</u>: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are

any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google. Google **disputes** the financial figures reflected in Pl.'s SUMF 10, which are from Bank of America's 2019 Annual Report, and therefore do not reflect the timeframe when Plaintiff actually worked at Bank of America. (https://www.annualreports.com/HostedData/AnnualReportArchive/b/NYSE_BAC_2019.pdf, p. 8 (company's total assets did not approach $2.5 trillion until 2019).)

Pl.'s SUMF 11:

Before that, Plaintiff worked at UBS from January 1998 to August 2009, progressing in the ranks from Associate Director/ Developer to Director to Executive Director. Earlier in her career, she worked at Swiss Bank Corporation as an Associate Director/ Developer from June 1997 to June 1998. (Tomezsko Decl., Ex. 15.)

Defendant's Response to Pl.'s SUMF 11: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 12:

Plaintiff currently serves on the Board of Directors of the Fulbright Association, the Federal Reserve Bank of New York Fintech Advisory Group, and the University of Illinois at Urbana-Champaign College of Engineering Board of Visitors. (Ex. 51, GOOG-ROWE-P-00004556.)

Defendant's Response to Pl.'s SUMF 12: **Undisputed**, but Plaintiff's current board service is **immaterial** because it could not have formed a basis for any hiring or leveling decision by Google in 2016 or 2017.

**II. Technical Director, Office of the Chief Technology Officer ("OCTO") Position**

Pl.'s SUMF 13:

In 2016, Google created a Technical Director position within OCTO ("Technical Director"), with William Grannis as the Hiring Manager and Jennifer Burdis as the Lead Recruiter.  (Ex. 10, Deposition of Jennifer Burdis ("Burdis Tr.") 16:3-13.)

Defendant's Response to Pl.'s SUMF 13: **Undisputed.**

Pl.'s SUMF 14:

The newly-created Technical Director position was developed by Mr. Grannis.  (Ex. 1, Deposition of Will Grannis ("Grannis Tr.") 23:16-22.)

Defendant's Response to Pl.'s SUMF 14: **Undisputed**. Mr. Grannis' supervisor, Brian Stevens, was also involved in the creation of this new role. (Declaration of Will Grannis In Support of Google's Motion for Summary Judgment (ECF 142) ["Grannis Decl."], ¶ 4.)

Pl.'s SUMF 15:

In 2016 and 2017, the Technical Director position was scoped as a Level 8/9. (Ex. 1, Grannis Tr. 36:3-6.)

Defendant's Response to Pl.'s SUMF 15: **Undisputed** that as the role was originally conceived, incumbents could be hired at either level 8 ("L8") or level 9 ("L9"). To create the role, Mr. Grannis and Mr. Stevens took a pre-existing technical job family from another area of Google Cloud that allowed for a blend of customer-facing, customer-impact type work and put it into the engineering organization for the first time. (Declaration of Maya Jumper In Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross-Motion for Summary Judgment (ECF 160) ["Jumper Decl."], Exh. 1 at 24:16 – 25:20.)

Pl.'s SUMF 16:

In 2016 and 2017, hiring and recruiting decisions related to the Technical Director position were facilitated by Jennifer Burdis as the Lead Recruiter, among others. (Ex. 10, Burdis Tr.16:3-13.)

Defendant's Response to Pl.'s SUMF 16: **Undisputed.**

Pl.'s SUMF 17:

On March 13, 2017, Plaintiff started at Google as a Technical Director, Office of the CTO, Google Cloud Platform in Google's New York City office, after receiving an offer in December 2016. (Ex. 27, GOOG-ROWE-00017920.)

Defendant's Response to Pl.'s SUMF 17: **Undisputed** that on March 13, 2017, Plaintiff started at Google as an L8 Technical Director, Office of the CTO, Google Cloud Platform in Google's New York City office. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920.)

Pl.'s SUMF 18:

Google hired Plaintiff as a Level 8. (Tomezsko Decl., Ex. 15.)

Defendant's Response to Pl.'s SUMF 18: **Undisputed.**

Pl.'s SUMF 19:

On April 12, 2017, Nicholas Harteau started at Google as a Technical Director, Office of the CTO, Google Cloud Platform in Google's New York City Office. (Declaration of Nicholas Harteau (ECF 159) ["Harteau Decl."] ¶ 1; Ex. 34, GOOG-ROWE-00054161; Gelfand Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 19: **Undisputed** that on April 12, 2017, Nicholas Harteau started at Google as a L9 Technical Director, Office of the CTO, Google Cloud Platform in Google's New York City Office. (Harteau Decl., ¶ 1; Declaration of Kevin Lucas In Support of Google's Motion for Summary Judgment (ECF 141) ["Lucas Decl."], ¶ 27.)

Pl.'s SUMF 20:

Google hired Mr. Harteau as a Level 9. (Tomezsko Decl., Ex. 17; Harteau Decl. ¶ 1.)

Defendant's Response to Pl.'s SUMF 20: **Undisputed.**

Pl.'s SUMF 21:

During the period of September 2016 through July 2018, all individuals employed as Technical Directors at Levels 8 and 9, including Plaintiff and Mr. Harteau, reported to

William Grannis. (Harteau Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 21: **Undisputed** that from September 2016 until June

2018, all L8 and L9 Technical Directors in OCTO reported directly or indirectly to Will

Grannis. (Declaration of Will Grannis (ECF 142) ["Grannis Decl."], ¶ 14.) In or around

June 2018, Plaintiff and other Technical Directors who had previously reported to Mr.

Grannis left OCTO and started reporting to different managers. (Defendant's Rule 56.1

Statement of Undisputed Material Fact (ECF 139) ["Def.'s SUMF"] ¶¶ 93, 133, 136.)

Pl.'s SUMF 22:

The primary job responsibilities of the Technical Director position consist of three "pillars:" customer advancement, engineering, and evangelism. (Harteau Decl. ¶ 4; Ex. 1, Grannis Tr. 31:24-33:15, 50:2-17; Ex. 17, Deposition of Ben Wilson ("Wilson Tr.") 105:20-106:12.)

Defendant's Response to Pl.'s SUMF 22: **Undisputed** as to the pillars of customer

advancement and evangelism. Google **disputes** that the second pillar is engineering; rather,

as Plaintiff admits, it is "engineering impact," which required Technical Directors to guide

and advise Google engineers on how to build products that meet industry needs. (Def.'s

SUMF 4, 5.) Plaintiff admits that Technical Directors do not actually build products or

manage the teams that build Google's cloud offerings, nor are they responsible for the

roadmap or budget for any particular product (although Technical Directors who succeed

in the engineering impact pillar can and do make significant contributions to product

roadmaps). (Def.'s SUMF 6.) Those are software engineer and product manager

responsibilities found in other areas of Google Cloud. (*Id.*)

Pl.'s SUMF 23:

The first pillar, customer advancement, required Technical Directors to advance the progress of companies by facilitating their migration to Google's Cloud technology. (Ex. 1, Grannis Tr. 32:9-14.)

<u>Defendant's Response to Pl.'s SUMF 23</u>: **Undisputed.**

<u>Pl.'s SUMF 24</u>:

The second pillar, engineering, required Technical Directors to understand the technical aspects and issues relating to customers migration to the Cloud, and to work with the engineering teams to meet customer needs. (Ex. 1, Grannis Tr. 32:15-23.)

<u>Defendant's Response to Pl.'s SUMF 24</u>: **Disputed in part.** Pl.'s SUMF 24 is **undisputed**

to the extent it is consistent with Mr. Grannis' cited testimony about the engineering impact

pillar. As Mr. Grannis testified in relevant part, Technical Directors "take their knowledge

from the corporate world and what they obtain at Google and they're expected to show

impact on the product road map, and this can come in a variety of fashions. Most often this

means that they have championed a change that we need [to] make to what we're building

that it [*sic*] is accepted by the engineering, production leadership." (Jumper Decl., Exh. 1

at 32:15–23.) Google **disputes** the remainder of Pl.'s SUMF 24, which is not supported by

the citation to the record. Plaintiff has therefore failed to establish those portions as an

undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

<u>Pl.'s SUMF 25</u>:

The third pillar, evangelism, required speaking publicly and externally on Google Cloud's technology.  (Ex. 1, Grannis Tr. 32:24-33:7.)

<u>Defendant's Response to Pl.'s SUMF 25</u>: **Undisputed**.

<u>Pl.'s SUMF 26</u>:

With an eye towards "verticalizing", Mr. Grannis also identified candidates with significant experience in defined industries, such as banking, healthcare, retail, media, entertainment, and gaming during the interview process. As a result, all candidates, including Rowe, were considered to have significant "industry-depth experience in a particular industry" by Mr. Grannis at hire.  (Ex. 1, Grannis Tr. 55:4-14, 57:4-12.)

<u>Defendant's Response to Pl.'s SUMF 26</u>: **Disputed in part**, but **immaterial** because

Plaintiff admits the group for which Mr. Grannis was hiring, OCTO, never verticalized.

(Def.'s SUMF 92.) It is **undisputed** Mr. Grannis testified that industry experience would help candidates for the Technical Director role fulfill their customer advancement and evangelism pillar responsibilities, but he did not testify that all candidates were actually considered to have significant in-depth experience in a particular industry. (Jumper Decl., Exh. 1 at 57:4–58:16.) Google **disputes** the remainder of Pl.'s SUMF 26 as it is not supported by the citation to the record. Plaintiff has therefore failed to establish those portions as an undisputed material fact. *See* 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 27:

Google initially hired all of the Technical Directors as individual contributors who did not have direct reports. (Def's 56.1 ¶ 15; Harteau Decl. ¶ 5.)

Defendant's Response to Pl.'s SUMF 27: **Undisputed.**

Pl.'s SUMF 28:

Google utilizes rubrics and guidelines to outline the relative job responsibilities for respective roles within a job family. (Ex. 5, GOOG-ROWE-00052153, Ex. 69, P001584.)

Defendant's Response to Pl.'s SUMF 28: **Disputed in part**. It is **undisputed** that Google assesses candidates against structured rubrics during the interview process to ensure consistency and reduce bias when evaluating candidates. (*See, e.g.*, Jumper Decl., Exh. 5 at GOOG-ROWE-00052153.) There are four rubrics against which senior-level (L8+) candidates are assessed: Leadership, Googliness, General Cognitive Ability ("CGA"), and Role-Related Knowledge ("RRK"). (Supplemental Declaration of Sara B. Tomezsko In Support of Google's Opposition and Reply ["Tomezsko Supp. Decl."], ¶ 5, Exh. 1, at 133:3–8.) L8+ Leadership and Googliness rubrics are used consistently across Google, regardless of the candidate's role or job family. (*Id.*, 133:3 – 135:19; Declaration of Shira Gelfand In Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross-Motion for Summary Judgment (ECF 157) ["Gelfand Decl."]), ¶ 3.) The

content of an L8+ CGA rubric may vary by job family. (Tomezsko Supp. Decl., ¶ 5, Exh. 1 at 133:13–19.) RRK rubrics are unique to role within a job family and level. (*Id.*, 130:9–131:11, 135:14–19.) Google otherwise **disputes** the remainder of Pl.'s SUMF 29. The 2020 Engineering-Wide Leveling Guide Plaintiff cites in support of Pl.'s SUMF 28 is not specific to a particular job, job family or job ladder, and says so right on the first page. (Jumper Decl., Exh. 69 at P001584.) Jumper Decl., Exh. 5 is also a policy from 2020. (Jumper Decl., Exh. 5 at GOOG-ROWE-00052153.) Neither document could have been used in leveling decisions made with respect to either Plaintiff or Mr. Harteau. Jumper Decl., Exh. 5 also speaks only to rubrics used during the interview process, and there is no indication that those rubrics are used for any purpose beyond hiring. (*Id.*) Plaintiff has therefore failed to establish this portion of Pl.'s SUMF as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A), (B); Local Rule 56.1(d).

<u>Pl.'s SUMF 29:</u>

The Technical Director position sits within the Technical Solutions Consultant ("TSC") job family. (Ex. 1, Grannis Tr. 24:19-25:20.)

<u>Defendant's Response to Pl.'s SUMF 29</u>: **Undisputed**.

<u>Pl.'s SUMF 30:</u>

There is a separate Technical Solutions Consultants job family outside of OCTO that had less of an emphasis on engineering. (Ex. 1, Grannis Tr. 25:21-26:10.)

<u>Defendant's Response to Pl.'s SUMF 30</u>: **Undisputed**.

<u>Pl.'s SUMF 31:</u>

Mr. Grannis decided this other TSC job family was the closest fit to what he envisioned for the OCTO role and used it when creating the job description. (Ex. 1, Grannis Tr. 25:2-26:4.)

<u>Defendant's Response to Pl.'s SUMF 31</u>: **Undisputed.**

Pl.'s SUMF 32:

Mr. Grannis modified the job description to include emphasis on the three pillars. (Ex. 1, Grannis Tr. 34:14-35:9.)

Defendant's Response to Pl.'s SUMF 32: **Disputed**, but the dispute is **immaterial** because

the parties do not dispute the content of the job description used to hire Plaintiff. (Gelfand

Decl., ¶ 2.) To create the TSC job *family* as it existed in OCTO, Mr. Grannis took the pre-

existing TSC job *family* that allowed for a blend of customer-facing plus engineering-type

work, and brought it into Engineering for the first time. (Jumper Decl., Exh. 1 at 24:7–

25:16.) The job *family* as it exists in OCTO has a greater emphasis on engineering than the

job family as it exists elsewhere in Google. (*Id.*, 26:5–10.) The job *description* for the

Technical Director role in OCTO emphasizes the three pillars referenced above. (*Id.*,

34:22–35:9.)

Pl.'s SUMF 33:

At the time of Plaintiff and Mr. Harteau's hire until 2018, the TSC job family ladder that applied to OCTO did not differentiate the job skills, effort, or responsibilities required by Technical Directors at Levels 8 and 9.  (Ex. 1, Grannis Tr. 35:10-36:14.)

Defendant's Response to Pl.'s SUMF 33: **Disputed in part**. It is **undisputed** that the pre-

existing job ladder that Mr. Grannis borrowed from another area in Google to create the

concept of a Technical Director in OCTO did not include a separate entry for L9. Google

**disputes** that the L8 and L9 Technical Director roles in OCTO required the same job skills,

effort or responsibilities. Plaintiff concedes that level defines the differing "scope and

complexity within a role and is defined by the knowledge, skills, and abilities that a

Googler needs to perform well." (Def.'s SUMF 12.) Indeed, Google noted the need to

create a separate entry for L9 Technical Director early in the hiring process, upon hiring

Evren Eryurek and assessing his qualifications as consistent with an L9. (Jumper Decl.,

Exh. 14 at GOOG-ROWE-00061919.)

Pl.'s SUMF 34:

In the late 2016, early 2017 time period, when Plaintiff and Mr. Harteau were hired, Mr. Grannis did not have a sense of what distinguished a Level 8 and Level 9 Technical Director and "hired [everyone] for the same role." (Ex. 1, Grannis Tr. 62:19-63:8, 74:23-75:2.)

Defendant's Response to Pl.'s SUMF 34: **Disputed**. Mr. Grannis testified that he had "a little bit less of a sense" of what distinguished an L8 from an L9 Technical Director in OCTO in late 2016 and early 2017, but he did not testify that he had no sense of the differentiation. (Jumper Decl., Ex. 1 at 62:19 – 63:8.) Mr. Grannis also testified that while all of the early candidates hired into OCTO were "hired for the same role, technical directors solutions consultant," candidates were hired at different levels within the role. (*Id.*, 74:21–75:8.) Plaintiff concedes that level defines the differing "scope and complexity within a role and is defined by the knowledge, skills, and abilities that a Googler needs to perform well." (Def.'s SUMF 12.)

Pl.'s SUMF 35:

During the period of September 2016 through June 2018, Technical Directors at Levels 8 and 9 had the same general categorization of leadership responsibilities. (Ex. 1, Grannis Tr. 35:10-36:14.)

Defendant's Response to Pl.'s SUMF 35: **Disputed**. Mr. Grannis did not testify that Technical Directors at L8 and L9 had the same general leadership *responsibilities*; he testified that the pre-existing ladder document he used to create the Technical Director role in OCTO did not have separate entries for L8 and L9, but instead had a category for general leadership at L8 and above. (Jumper Decl., Ex. 1 at 35:10 – 36:2; *id.*, Ex. 6 at GOOG-ROWE-00017719.) Plaintiff concedes that job ladders are guidelines to identify general expectations and criteria for jobs within a job family as one progresses in seniority and

14

responsibility. (Def.'s SUMF 11.)

Pl.'s SUMF 36:

During the period of September 2016 through August 2018, the TSC job family ladder contained the same knowledge and experience requirements for all Technical Directors at Levels 8 and 9, including Plaintiff and Mr. Harteau. (Ex. 6, GOOG-ROWE-00017719.)

Defendant's Response to Pl.'s SUMF 36: **Disputed.** The TSC job ladder did not have

separate entries for L8 and L9, only contains knowledge and experience expectations for

an L8 Principal (or Director) Technical Solutions Consultant, and contains no content

whatsoever for L9. (Jumper Decl., Exh. 1 at 35:10 – 36:2; *id.*, Exh. 6 at GOOG-ROWE-

00017719.)

Pl.'s SUMF 37:

During the period of September 2016 through August 2018, the TSC job family ladder contained the same complexity and scope requirements for all Technical Directors at Levels 8 and 9, including Plaintiff and Mr. Harteau. (Ex. 6, GOOG-ROWE-00017719.)

Defendant's Response to Pl.'s SUMF 37: **Disputed**. The TSC job ladder did not have

separate entries for L8 and L9, only contains complexity and scope expectations for an L8

Principal (or Director) Technical Solutions Consultant, and contains no content whatsoever

for L9 . (Jumper Decl., Exh. 1 at 35:10 – 36:2; *id.*, Exh. 6 at GOOG-ROWE-00017719.)

Pl.'s SUMF 38:

During the period of September 2016 through August 2018, the TSC job family ladder contained the same scope and impact requirements for all Technical Directors at Levels 8 and 9, including Plaintiff and Mr. Harteau.  (Ex. 6, GOOG-ROWE-00017719.)

Defendant's Response to Pl.'s SUMF 38: **Disputed**. The TSC job ladder did not have

separate entries for L8 and L9, and contains no content whatsoever for L9 on that job

ladder. (Jumper Decl., Exh. 1 at 35:10 – 36:2; *id.*, Exh. 6 at GOOG-ROWE-00017719.)

Plaintiff has submitted no evidence regarding the scope and impact expectations for L8

candidates on the TSC job ladder. (*Id.*, Exh. 6 at GOOG-ROWE-00017719.) She has

therefore failed to establish Pl.'s SUMF 38 as an undisputed material fact. *See* Fed. R. Civ.

P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 39:

From the time the job description was created in 2016 through the present, Google used the same job description to facilitate the hiring and recruitment of all Technical Directors, including Plaintiff and Mr. Harteau. (Gelfand Decl. ¶ 7.)

Defendant's Response to Pl.'s SUMF 39: **Undisputed** that Google used the same job

description to facilitate the hiring and recruitment of all L8 and L9 Technical Directors in

OCTO from the time the roles were created in 2016 to the present. (Tomezsko Decl., Exh.

10; Gelfand Decl., ¶ 2.)

Pl.'s SUMF 40:

During the period of 2016 through the present, Google used the same external job posting to hire all Technical Directors, including Plaintiff and Mr. Harteau. (Gelfand Decl. ¶ 7.)

Defendant's Response to Pl.'s SUMF 40: **Undisputed** that Google used the same external

job posting to hire all L8 and L9 Technical Directors in OCTO from the time the roles were

created in 2016 to the present. (Tomezsko Decl., Exh. 10, Gelfand Decl., ¶ 2.)

Pl.'s SUMF 41:

During the period of 2016 through present, Google used the same interview rubrics to evaluate candidates for Technical Directors, including Plaintiff and Mr. Harteau (Gelfand Decl. ¶ 8.)

Defendant's Response to Pl.'s SUMF 41: **Undisputed** that Google used the same rubrics

for CGA, Googleyness, and Leadership to evaluate candidates for L8 and L9 Technical

Director roles in OCTO from the time the roles were created in 2016 to the present.

(Gelfand Decl., ¶ 3.)

Pl.'s SUMF 42:

During the period of 2016 through present, Google evaluated all Technical Directors, including Plaintiff and Mr. Harteau, against the same leadership rubrics. (Gelfand Decl. ¶

8.)

Defendant's Response to Pl.'s SUMF 42: **Undisputed** that Google used the same Leadership rubric to evaluate candidates for L8 and L9 Technical Director roles in OCTO from the time the roles were created in 2016 to the present. (Gelfand Decl., ¶ 2.) Google **disputes** Pl.'s SUMF 42 to the extent that it refers to evaluations post-hire, because Plaintiff has failed to introduce evidence supporting that interpretation of Pl.'s SUMF 42. Gelfand Decl. ¶ 8 does not refer to rubrics whatsoever, and Gelfand Decl. ¶ 2 (which does refer to rubrics) is limited to their application in the hiring process. Plaintiff has therefore failed to establish Pl.'s SUMF 42 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 43:

During the period of 2016 through present, Google evaluated all Technical Directors, including Plaintiff and Mr. Harteau, against the same "Googliness" rubrics. (Gelfand Decl. ¶ 8.)

Defendant's Response to Pl.'s SUMF 43: **Undisputed** that Google used the same Googleyness rubric to evaluate candidates for the L8 and L9 Technical Director roles in OCTO from the time the roles were created in 2016 to the present. (Gelfand Decl., ¶ 2.) Google **disputes** Pl.'s SUMF 43 to the extent that it refers to evaluations post-hire, because Plaintiff has failed to introduce evidence supporting that interpretation of Pl.'s SUMF 43. Gelfand Decl. ¶ 8 does not refer to rubrics whatsoever, and Gelfand Decl. ¶ 2 (which does refer to rubrics) is limited to their application in the hiring process. Plaintiff has therefore failed to establish Pl.'s SUMF 43 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 44:

During the period of 2016 through present, Google evaluated all Technical Directors,

including Plaintiff and Mr. Harteau, against the same general cognitive ability rubrics. (Gelfand Decl. ¶ 8.)

Defendant's Response to Pl.'s SUMF 44: **Undisputed** that Google used the same CGA rubric used to evaluate candidates for the L8 and L9 Technical Director roles in OCTO from the time the roles were created in 2016 to the present. (Gelfand Decl., ¶ 2.) Google **disputes** Pl.'s SUMF 44 to the extent that it refers to evaluations post-hire, because Plaintiff has failed to introduce evidence supporting that interpretation of Pl.'s SUMF 44. Gelfand Decl. ¶ 8 does not refer to rubrics whatsoever, and Gelfand Decl. ¶ 2 (which does refer to rubrics) is limited to their application in the hiring process. She has therefore failed to establish Pl.'s SUMF 43 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 45:

During the period of 2016 through present, Google used the same interview questions for all Technical Director candidates, including Plaintiff and Mr. Harteau. (Ex. 10, Burdis Tr. 52:13-16; Ex. 1, Grannis Tr. 49:4-24.)

Defendant's Response to Pl.'s SUMF 45: **Undisputed**. Google has a set of rubric-based interview questions that apply to all candidates for roles at L8 and above. (Jumper Decl., Exh. 1 at 49:13 – 24.)

Pl.'s SUMF 46:

Google hired 17 individuals into the Technical Director position between March 2016 and March 2018. Plaintiff was the only woman Google hired for the role. (Ex. 21, GOOG-ROWE-00058500.)

Defendant's Response to Pl.'s SUMF 46: **Undisputed** as to the number of individuals hired into the L8 and L9 Technical Director roles in OCTO *globally* between March 2016 and March 2018. (Ex. 21, GOOG-ROWE-00058500.) Google hired 13 L8 and L9 Technical Directors in OCTO in the United States during that period, hired individuals for the L7

18

Technical Director role during that time period, and hired another woman for the L8 Technical Director role in 2020. (Lucas Decl., ¶¶ 18, 19, 21, 23, 24, 25, 26, 27, 28, 31, 32, 34, 35, 37, 38, 39, 94.) Google was also negotiating an offer with a female candidate for an L9 Technical Director role in 2018, but that candidate ultimately did not accept the offer. (Tomezsko Supp. Decl., ¶ 8, Exh. 4 at GOOG-ROWE-00056475; *id.*, ¶ 9, Exh. 5, at GOOG-ROWE-00059393.)

Pl.'s SUMF 47:

> All Technical Directors hired in late 2016/early 2017, including Plaintiff and Mr. Harteau, were required to possess similar skill sets in order to "meet those three pillars." (Ex. 1, Grannis Tr. 50:18-51:10.)

Defendant's Response to Pl.'s SUMF 47: **Disputed in part**. It is **undisputed** that Pl.'s SUMF 47 accurately reflects that exchange from Mr. Grannis' deposition, but Google **disputes** Pl.'s SUMF 47 because it misrepresents the totality of Mr. Grannis' testimony. Mr. Grannis described his role in the interview process as ensuring that the candidate was qualified at the L8+ level based on their demonstrated experience. (Jumper Decl., Exh. 1 at 58:17 – 59:8.) Upon making this determination, he made a recommendation as to whether the candidate would be hired as an L8 or L9 Technical Director based on "[t]he degree to which they demonstrated experience, background, acumen across the core elements of the role, the role-related knowledge as well as the -- the three other categories; Googliness, CGA, and leadership." (*Id.* at 59:12 – 60:12.) The evidence cited in support of Pl.'s SUMF 47 does not suggest that those hired for the L8 Technical Director role in OCTO actually possessed similar skill sets to those hired for the L9 Technical Director role, and Google disputes that they did. (Def.'s SUMF 26, 27, 30, 31, 32, 35, 38, 41, 42, 43, 44, 45, 46, 47, 50, 51, 52, 55, 56, 57.)

Pl.'s SUMF 48:

>During the period of 2016 through 2018, in staff meetings for Technical Directors, there was no distinction made between Technical Directors at Levels 8 and 9. (Harteau Decl. ¶ 9.)

>Defendant's Response to Pl.'s SUMF 48: **Disputed**; Pl.'s SUMF 48 is unsupported by the record. There is no reference whatsoever to treatment of L8 and L9 Technical Directors in OCTO during staff meetings in the Harteau Declaration. She has therefore failed to establish Pl.'s SUMF 48 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d). Further, Mr. Harteau is not competent to testify to the treatment of or work performed by Technical Directors at any level prior to his employment with Google commencing in April 2017 and before he returned from his leave of absence in August 2017, (Harteau Decl., ¶¶ 1, 2), or after he stopped reporting to Will Grannis in September 2018. (*Id.*, ¶ 3.) Mr. Harteau is similarly not competent to testify as to Plaintiff's treatment relative to other L8 and L9 Technical Directors after June 2018, when Plaintiff and others transferred to the GAIP organization under Tariq Shaukat. (Lucas Decl., ¶¶ 18, 23, 39.) *See* Fed. R. Civ. P., Rule 56(c)(2), (4).

Pl.'s SUMF 49:

>Google's policy states that when a role is scoped at two levels, like the Technical Director role, interviewers must recommend a level based on the interview. (Ex. 48, GOOG-ROWE-00022669.)

>Defendant's Response to Pl.'s SUMF 49: **Disputed in part**. Pl.'s SUMF 49 is **undisputed** as to Google policy in 2019, (Jumper Decl., Exh. 48, GOOG-ROWE-00022670), but Google **disputes** that the policy submitted as Jumper Decl., Exh. 48 was in place when the leveling decision made with respect to Plaintiff occurred years prior. (Jumper Decl., Exh. 10 at 56:8–57:24 (Ms. Burdis testifying that the policy in question may not have been in place at the time she was recruiting for the Technical Director position, and counsel

acknowledging that fact).) Plaintiff has not submitted any evidence that interviewers were required to follow a similar policy in 2016 or 2017, and has therefore failed to establish Pl.'s SUMF 49 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 50:

When hiring for the Technical Director role, none of the interviewers provided a leveling recommendation for the candidates, including Plaintiff and Mr. Harteau. (Tomezsko Decl., Ex. 15, GOOG-ROWE-00019097.R; Tomezsko Decl., Ex. 17, GOOG-ROWE-00056318.R.)

Defendant's Response to Pl.'s SUMF 50: **Disputed in part.** It is **undisputed** that Google policy in 2019 required interviewers to provide leveling recommendations, (Jumper Decl., Exh. 48, GOOG-ROWE-00022670), but Google **disputes** that the policy submitted as Jumper Decl., Exh. 48 containing that requirement was in place when Google leveled Plaintiff upon hire. (Jumper Decl., Exh. 10 at 56:8–57:24 (Ms. Burdis testifying that the policy in question may not have been in place at the time she was recruiting for the Technical Director position, and counsel acknowledging that fact).) Plaintiff has not submitted any evidence that interviewers were required to follow a similar policy in 2016 or 2017, and has therefore failed to establish Pl.'s SUMF 50 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 51:

Google's policy states that the recruiter must also summarize the reason they chose the interview rubric and proposed level for each candidate in a leveling rationale. (Ex. 48, GOOG-ROWE-00022669.)

Defendant's Response to Pl.'s SUMF 51: **Disputed in part.** It is **undisputed** as to Google policy in 2019, (Jumper Decl., Exh. 48, GOOG-ROWE-00022670), but Google **disputes** that the policy submitted as Jumper Decl., Exh. 48 was in place when Plaintiff's interview

process occurred years prior. (Jumper Decl., Exh. 10 at 56:8 – 57:24 (Ms. Burdis testifying

that the policy in question may not have been in place at the time she was recruiting for the

Technical Director position, and counsel acknowledging that fact).) Plaintiff has not

submitted any evidence that interviewers were required to follow a similar policy in 2016

or 2017 and has therefore failed to establish Pl.'s SUMF 51 as an undisputed material fact.

*See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 52:

When hiring for the Technical Director role, Ms. Burdis, the recruiter did not provide a
leveling rationale with respect to the candidates, including Plaintiff and Mr. Harteau.
(Tomezsko Decl., Ex. 15, GOOG-ROWE-00019097.R, Tomezsko Decl., Ex. 17, GOOG-
ROWE-00056318.R, Ex. 10, Burdis Tr. 48:18-49:2.)

Defendant's Response to Pl.'s SUMF 52: **Disputed in part.** It is **undisputed** that Google

policy in 2019 required recruiters to provide a leveling rational, (Jumper Decl., Exh. 48,

GOOG-ROWE-00022670), but Google **disputes** that the policy submitted as Jumper

Decl., Exh. 48 was in place when Google leveled Plaintiff upon hire. (Jumper Decl., Exh.

10 at 56:8 – 57:24 (Ms. Burdis testifying that the policy in question may not have been in

place at the time she was recruiting for the Technical Director position, and counsel

acknowledging that fact).) Plaintiff has not submitted any evidence that interviewers were

required to follow a similar policy in 2016 or 2017, and has therefore failed to establish

Pl.'s SUMF 52 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local

Rule 56.1(d).

Pl.'s SUMF 53:

Ms. Burdis did not play any role in deciding what level a Technical Director would be hired
at. (Ex. 10, Burdis Tr. 55:15-17.)

Defendant's Response to Pl.'s SUMF 53: **Disputed**. As lead recruiter, Ms. Burdis did not

participate in the final leveling decision for any L8 or L9 Technical Director in OCTO, but

she testified that she did participate in the leveling process by, *inter alia*, making "a pre-interview initial assessment" as to the candidate's level. (Jumper Decl., Exh. 10 at 30:15 – 21.)

Pl.'s SUMF 54:

Google's policy states that the hiring manager should submit a statement of support to explain their position as to a candidate's proposed level. (Ex. 48, GOOG-ROWE-00022669-70.)

Defendant's Response to Pl.'s SUMF 54: **Disputed in part.** It is **undisputed** as to Google's policy in 2019, (Jumper Decl., Exh. 48 at GOOG-ROWE-000226670), but Google **disputes** that the policy submitted as Jumper Decl., Exh. 48 was in place during Plaintiff's hiring process years prior. (Jumper Decl., Exh. 10 at 56:8 – 57:24 (Ms. Burdis testifying that the policy in question may not have been in place at the time she was recruiting for the Technical Director position, and counsel acknowledging that fact).) Plaintiff has not submitted any evidence that interviewers were required to follow a similar policy in 2016 or 2017. Plaintiff has therefore failed to establish Pl.'s SUMF 52 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d). In any event, Pl.'s SUMF 54 is **immaterial** because hiring manager Will Grannis and Brian Stevens authored statements of support reflecting their leveling recommendations with respect to L8 and L9 Technical Directors in OCTO. (Grannis Decl., ¶¶ 11, 12; Def.'s SUMF 28, 33, 36, 39, 48, 53.)

Pl.'s SUMF 55:

When hiring for the Technical Director role, Mr. Grannis's statement of support for Plaintiff did not articulate why he supported Plaintiff's hire at a Level 8 and not a Level 9. (Tomezsko Decl., Exs. 15, 17.)

Defendant's Response to Pl.'s SUMF 55: **Disputed**. Mr. Grannis' statement of support states that his recommendation to hire Plaintiff as an L8 Technical Director in OCTO was

based on "the candidate's clear demonstration of readiness to make an immediate impact"

at that level. (Def.'s SUMF 48.)

Pl.'s SUMF 56:

> When asked at his deposition why he made such a recommendation, Mr. Grannis tried to "work backwards in time" to figure out what factors he would have considered, but testified that, it was "hard to recall four years ago. . . what I may have been considering or not." (Ex. 1, Grannis Tr. 68:20-70:22.)

> Defendant's Response to Pl.'s SUMF 56: **Disputed.** The portion of Mr. Grannis' testimony

to which Plaintiff cites refers to whether or not he could recall considering Plaintiff for the

L9 Technical Director role:

> Q:    Okay. Did you consider, at any point, a Level 9 for her?

> A:    Hard -- hard to recall four years ago what my -- you know -- what I may have been considering or not.

(Jumper Decl., Exh. 1 at 70:15–19.) Mr. Grannis otherwise testified about his basis for

recommending Google hire Plaintiff as an L8:

> Q:    So the question is, what was the basis for your recommendation that she be hired as a Level 8?

> A:    After reviewing this packet and again trying to, you know, work backwards in time, a couple of things stand out.

> On the -- on the pros, clear industry knowledge, ability to tie use cases which is a term for, you know, [a] specific type of problem in engineering that needs to be solved and the ability to put that in context in the industry in which she was -- had the most experience, which was financial services; and strong communicator which would likely indicate strong communication skills and strong ability to convey complex ideas to customers.

> On the con side, some flags around depth of experience, around technical ability and no clear demonstrated large-scale migration to Cloud, although, it started some preliminary activities at JPMorgan.

> So those were all factors I would have considered in the levelling recommendation.

(*Id.*, 68:20 – 69:16.) Pl.'s SUMF 56 is also **immaterial** to the extent that Mr. Grannis' 2020

recollection of events that occurred years prior is inconsistent with the record contemporaneously

created during Plaintiff's recruiting and hiring process, which speaks for itself. (Tomezsko Decl., Exh. 15.)

Pl.'s SUMF 57:

> In his statement of support for Plaintiff's hire, Mr. Grannis wrote "[b]ased on the positive, consistent feedback from the panel, the criticality of financial services as a vertical for Google Cloud, and the candidate's clear demonstration of readiness to make an immediate impact as a L-8, I enthusiastically endorse the hire recommendation." (Tomezsko Decl., Ex. 15.)

> Defendant's Response to Pl.'s SUMF 57: **Undisputed.**

Pl.'s SUMF 58:

> Aside from what in his statement of support, there was no other documentation as to why Mr. Grannis recommended Plaintiff as a Level 8. (Tomezsko Decl., Ex. 15, GOOG-ROWE-00019097.R)

> Defendant's Response to Pl.'s SUMF 58: **Undisputed**.

Pl.'s SUMF 59:

> Although Rowe asked as part of the interview process whether she should be a Level 9, Mr. Grannis told her that all Technical Directors were being hired at Level 8. (Tomezsko Decl., Ex. 18, P001586.)

> Defendant's Response to Pl.'s SUMF 59: **Disputed**. Plaintiff does not attribute any statement described in the cited document to Mr. Grannis or anyone else, (Tomezsko Decl., Exh. 18 at P001586), and Mr. Grannis does not recall having a leveling conversation with Plaintiff during the hiring process. (Jumper Decl., Exh. 1 at 74:9 – 75:24.) Plaintiff has therefore failed to establish Pl.'s SUMF 59 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 60:

> Mr. Grannis could not recall whether he considered Plaintiff for hire at a Level 9. (Ex. 1, Grannis Tr. 68:20-70:22.)

> Defendant's Response to Pl.'s SUMF 60: **Undisputed** as to Mr. Grannis' recollection in

2020, but **immaterial** to the extent that Mr. Grannis' 2020 recollection is inconsistent with the record contemporaneously created during Plaintiff's recruiting and hiring process in 2016 and 2017, which speaks for itself. (Tomezsko Decl., Exh. 15.)

Pl.'s SUMF 61:

Mr. Grannis's statement of support for Mr. Harteau included a leveling recommendation, but did not articulate why Mr. Grannis supported Mr. Harteau's hire at a Level 9 and not a Level 8. (Tomezsko Decl., Ex. 17.)

Defendant's Response to Pl.'s SUMF 61: **Disputed**. Mr. Stevens provided the statement of support for Mr. Harteau, not Mr. Grannis. (Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R.) Mr. Stevens' statement of support notes that Mr. Stevens recommended Google hire Mr. Harteau as an L9 Technical Director because his was "[o]ne of the strongest packets I've seen," and "[i]n all cases, I've found him to exhibit the ideals [*sic*] traits of a member of OCTO." (*Id.*)

Pl.'s SUMF 62:

Google's policy states that a recruiter must submit a candidate's packet to the Hiring Committee and "recommend a level for them to consider using signals from interviews." The leveling rationale must include why the recruiter is submitting the packet at the level they chose. (Ex. 48, GOOG-ROWE-00022669-70.)

Defendant's Response to Pl.'s SUMF 62: **Disputed in part.** It is **undisputed** as to Google policy in 2019, (Jumper Decl., Exh. 48, GOOG-ROWE-00022670), but Google **disputes** that the policy document submitted as Jumper Decl., Exh. 48 was in place when Plaintiff was hired years prior. (Jumper Decl., Exh. 10 at 56:8 – 57:24 (Ms. Burdis testifying that the policy in question may not have been in place at the time she was recruiting for the Technical Director position, and counsel acknowledging that fact).) Plaintiff has not submitted any evidence that interviewers were required to follow a similar policy in 2016 or 2017. Plaintiff has therefore failed to establish Pl.'s SUMF 62 as an undisputed material

fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 63:

When hiring for the Technical Director role, there was no hiring committee. (Ex. 10, Burdis Tr. 47:19-48:11.)

Defendant's Response to Pl.'s SUMF 63: **Undisputed** that there was no traditional hiring committee to review the leveling recommendations for candidates for the L8 and L9 Technical Director roles in OCTO. (Jumper Decl., Exh. 10 at 47:19 – 48:11.) Instead, two Senior Vice Presidents reviewed and approved the leveling recommendations. (Def.'s SUMF 23; Tomezsko Supp. Decl., ¶ 14, Exh. 10.)

Pl.'s SUMF 64:

Diane Greene, Senior Vice President, stated that she did not have any input into any Technical Director candidates' level upon hire. (Diane Greene Decl. ("D. Greene Decl.") ¶¶ 5-6, ECF 62-1.)

Defendant's Response to Pl.'s SUMF 64: **Undisputed** but **immaterial** because two other Senior Vice Presidents reviewed and approved the levelling recommendations for L8 and L9 Technical Directors in OCTO. (Def.'s SUMF 23; Tomezsko Supp. Decl., ¶ 14, Exh. 10.)

Pl.'s SUMF 65:

Mr. Grannis stated that he did not know who made the leveling decision with respect to the Technical Directors, but he did not make the leveling determination and only made a recommendation as to whether a candidate was qualified at the level being proposed. (Ex. 1, Grannis Tr. 58:17-19, 60:24-61:14.)

Defendant's Response to Pl.'s SUMF 65: **Undisputed.**

Pl.'s SUMF 66:

When hiring for the Technical Director role, Mr. Stevens was not aware of what factors supported a hire at a Level 9 as opposed to a Level 8. (Ex. 12, Stevens Tr. 61:10-63:21.)

Defendant's Response to Pl.'s SUMF 66: **Disputed**. In his 2020 deposition, Mr. Stevens

could not recall the details of the levelling attributes that supported hiring candidates as an L8 Technical Director in OCTO versus an L9 Technical Director, but he did not testify that he was unaware of those factors at the time those decisions were made. (Jumper Decl., Exh. 12 at 63:12 – 21.) Plaintiff has therefore failed to establish Pl.'s SUMF 66 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 67:

Mr. Stevens did not ask for any leveling documentation and did not know what Mr. Grannis or Human Resources considered when leveling the Technical Director candidates. (Ex. 12, Stevens Tr. 61:10-63:21.)

Defendant's Response to Pl.'s SUMF 67: **Disputed in part.  Undisputed** that Mr. Stevens did not recall asking for any leveling documentation. Defendant **disputes** the remainder of Pl.'s SUMF 67. In his 2020 deposition, Mr. Stevens could not recall what leveling attributes Mr. Grannis and Human Resources used at the time, but he did not testify that he was unaware of what Mr. Grannis or Human Resources considered at the time those recommendations were made. (Jumper Decl., Exh. 12 at 63:12 – 21.)

Pl.'s SUMF 68:

Mr. Stevens was only "indirectly" involved in the leveling process as he was Mr. Grannis' supervisor, and did not inquire as to whether the proper process had been followed with respect to leveling. (Ex. 12, Stevens Tr. 61:10-63:21.)

Defendant's Response to Pl.'s SUMF 68: **Undisputed** that Mr. Stevens did not "audit" the leveling process and had assumed, as someone only indirectly involved, that the process had been followed. (Jumper Decl., Exh. 12 at 62:16 – 63:6.)

Pl.'s SUMF 69:

In 2017, all Technical Directors, including Plaintiff and Mr. Harteau, were given the same instructions, guidelines, and job description to complete their performance self-assessments. (Ex. 55, GOOG-ROWE-00017356-57.)

Defendant's Response to Pl.'s SUMF 69: **Disputed in part.** It is **undisputed** that Melissa

Lawrence in Human Resources provided Plaintiff and other Technical Directors in OCTO (at various levels) the same general guidance on how to complete their performance self-assessments in 2017. (Jumper Decl., Exh. 55 at GOOG-ROWE-00017357 ("Write a self-assessment focusing on key accomplishments and speaking to one thing you do well and one thing that you could do to have more impact. Solicit 305 peers to give you input. Trying to create a 360 view of your work with the peers that you select.").) It is **undisputed** that Ms. Lawrence provided Plaintiff and others with a leveling guideline for "generic Engineering," a 2020 version of which differentiates the expectations of engineering employees at L8 and L9 in terms of Knowledge and Experience, Complexity and Scope, Leadership and Influence, and Organizational Impact. (*Id.*, at GOOG-ROWE-00017356; Jumper Decl., Exh. 69 at P001584 – 85.) The 2020 Engineering-wide Leveling Guide is not specific to a particular job, job family, or job ladder, and states this explicitly on the first page. (Jumper Decl., Exh. 69 at P001584.) Google **disputes** that she provided Plaintiff and others with a "job description." The document clearly shows that she provided them with a "job family description," (Jumper Decl., Exh. 55 at GOOG-ROWE-00017356) and Plaintiff concedes that a job family is broader and more general than a particular job within that family. (Def.'s SUMF 11.)

Pl.'s SUMF 70:

> During the period of 2016 through 2018, Technical Directors, including Plaintiff and Mr. Harteau, consistently collaborated with each other, participated in meetings together, assisted each other with client engagements, and consistently filled in or substituted for each other on speaking engagements or client engagements. (Harteau Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 70: **Undisputed** for the brief period of time for which Mr. Harteau is competent to testify. Mr. Harteau is not competent to testify to work performed by Technical Directors at any level prior to his employment with Google

commencing in April 2017 or before he returned from a leave of absence in August 2017, (Harteau Decl., ¶¶ 1, 2), or after he stopped reporting to Will Grannis in September 2018. (*Id.*, ¶ 3.) Mr. Harteau is similarly not competent to testify to the work Plaintiff and others performed after June 2018, when they transferred to the GAIP organization under Tariq Shaukat. (Lucas Decl., ¶ 18.) Plaintiff has therefore failed to establish Pl.'s SUMF 70 as an undisputed material fact for 2016 through 2018. *See* Fed. R. Civ. P., Rule 56(c)(2), (4); Local Rule 56.1(d).

Pl.'s SUMF 71:

Technical Directors considered each other to be peers and understood all Technical Directors to be performing the same role. (Harteau Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 71: **Undisputed** as to Mr. Harteau's personal belief, which is all he is competent to speak to, but **immaterial** because comparability for purposes of the claims at issue turns on whether Plaintiff and Mr. Harteau performed equal or substantially similar work, not Mr. Harteau's personal beliefs. Plaintiff has therefore failed to establish Pl.'s SUMF 71 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A), (c)(2), (c)(4); Local Rule 56.1(d).

Pl.'s SUMF 72:

All Technical Directors met with Google customers, collaborated with Google engineering teams, and engaged in evangelism. (Harteau Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 72: **Undisputed** that all L8 and L9 Technical Directors in OCTO were required to perform these three main pillars of responsibility for their roles, although the extent to which any individual Technical Director performed the work required of those three pillars varied from person to person. (*Compare* Grannis Decl., ¶¶ 30 – 40 *with* Tomezsko Decl., ¶ 3, Exh. 2 at 31:5–21, 183:19–185:3 (noting Plaintiff consistently underperformed on the engineering impact pillar of the role).)

Pl.'s SUMF 73:

>While working as Technical Directors in New York, Plaintiff and Mr. Harteau's job duties have been performed under similar working conditions. (Gelfand Decl. ¶ 9.)

>Defendant's Response to Pl.'s SUMF 73: **Undisputed**.

## III. Compensation

Pl.'s SUMF 74:

>In connection with its hiring of Plaintiff as a Technical Director, Google offered Plaintiff an annual salary of $290,000.00, an annual bonus target of 30%, and a total equity award of 2,500 restricted stock units. (Greene Decl. ¶ 2; Ex. 27, GOOG-ROWE-00017920-22.)

>Defendant's Response to Pl.'s SUMF 74: **Disputed in part.** It is **undisputed** that Google offered Plaintiff an annual starting salary of $290,000 and annual bonus target of 30% of her base salary, the ultimate amount to be determined at Google's sole discretion based on Plaintiff's performance and the performance of the company. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920.) Google **disputes** that it offered Plaintiff an equity award as compensation for work performed in connection with her hiring, or any guaranteed amount of equity in the form of future equity refresh grants. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920.) Google offered Plaintiff two one-time new-hire equity awards, one for 2,200 restricted units and another worth $550,000. (Declaration of Chris Humez In Support of Google's Motion for Summary Judgment (ECF 149-15) ["Humez Decl."], ¶¶ 44, 45.) Google also offered Plaintiff a one-time sign-on bonus worth $250,000. (*Id.*)

Pl.'s SUMF 75:

>In connection with its hiring of Mr. Comp1 as a Technical Director, Google offered Mr. Comp1 an annual salary of $325,000.00, an annual bonus target of 40%, and a total equity award of 62.)

>Defendant's Response to Pl.'s SUMF 75: **Disputed in part.** It is **undisputed** that Google offered Mr. Comp1 an annual starting salary of $325,000 and annual bonus target of 40%

of his base salary, the ultimate amount to be determined at Google's sole discretion based on Mr. █Comp1█ performance and the performance of the company. (Jumper Decl., Exh. 34 at GOOG-ROWE-00054161.) Google **disputes** that it offered Mr. █Comp1█ an equity award as compensation for work performed in connection with his hiring, or any guaranteed amount of equity in the form of future equity refresh grants. (Jumper Decl., Exh. 34 at GOOG-ROWE-00054161.) Google offered Mr. █Comp1█ a one-time new-hire equity award of 2,500 restricted units. (Humez Decl., ¶¶ 44, 45.)

Pl.'s SUMF 76:

In the 2017 Q3 review, Google did not give Mr. █Comp1█ a performance rating because he "was on leave for 3.5 months, so not enough data to support a rating." (█Comp1█ Decl. ¶ 2; Ex. 62, GOOG-ROWE-00053811.R.)

Defendant's Response to Pl.'s SUMF 76: **Undisputed.**

Pl.'s SUMF 77:

In the 2017 Q3 review, Google gave Plaintiff a performance rating of "exceeds expectations." (Greene Decl. ¶ 9.)

Defendant's Response to Pl.'s SUMF 77: **Undisputed** that in Q3 2017, Google rated Plaintiff's performance of the L8 Technical Director role in OCTO as "exceeds expectations."

Pl.'s SUMF 78:

In 2017, Google paid Plaintiff an annual salary of $290,000. (Greene Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 78: **Undisputed**.

Pl.'s SUMF 79:

In 2017, Google paid Mr. █Comp1█ an annual salary of $325,000. (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 79: **Undisputed.**

Pl.'s SUMF 80:

In 2017, Google paid Plaintiff $35,000 less in annual salary than Mr. Comp1. (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 80: **Undisputed**.

Pl.'s SUMF 81:

After accounting for his 3.5 months of leave, Mr. Comp1 only worked at Google for 4.5 months in 2017. (Comp1 Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 81: **Undisputed**.

Pl.'s SUMF 82:

In 2017, Google paid Mr. Comp1 a pro-rated performance bonus of $61,000.00. (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 82: **Undisputed** that Google paid Mr. Comp1 a

performance bonus of $61,000 for work performed in 2017. (Humez Decl., ¶ 41.)

Pl.'s SUMF 83:

Mr. Comp1's annualized performance bonus for 2017 was approximately $162,666. (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 83: **Disputed.** Mr. Comp1's bonus for 2017 was

$61,000.00. (Humez Decl., ¶ 41.) His bonus was not "annualized" by Google, and it was

not guaranteed even if he had worked at Google for the full 12 months of 2017. (Jumper

Decl., Exh. 34 at GOOG-ROWE-00054161.)

Pl.'s SUMF 84:

In 2017, Google paid Plaintiff a performance bonus of $116,000.00. (Greene Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 84: **Undisputed** that Google paid Plaintiff a bonus

of $116,000 for work performed in 2017.

Pl.'s SUMF 85:

In 2017, Google paid Plaintiff a performance bonus that was $46,666 less than Mr.

`Comp1` annualized bonus. (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 85: **Disputed.** Mr. `Comp1` bonus for work performed in 2017 was less than Plaintiff's bonus for work performed that year, and Google did not annualize Mr. `Comp1` bonus. (Humez Decl., ¶¶ 24, 41.)

Pl.'s SUMF 86:

In the 2018 Q3 review, Google gave Plaintiff a performance rating of "exceeds expectations." (Greene Decl. ¶ 9; Ex. 29, GOOG-ROWE-00017889-90.)

Defendant's Response to Pl.'s SUMF 86: **Undisputed** that in Q3 of 2018, Google rated Plaintiff's work performed in the L8 Technical Director role in OCTO as "exceeds expectations."

Pl.'s SUMF 87:

In the 2018 Q3 review, Google gave Mr. `Comp1` a performance rating of "consistently meets expectations." (Greene Decl. ¶ 10.)

Defendant's Response to Pl.'s SUMF 87: **Undisputed** that in Q3 of 2018, Google rated Mr. `Comp1`s work performed in the L9 Technical Director role in OCTO as "consistently meets expectations." (Greene Decl., ¶ 10.)

Pl.'s SUMF 88:

In 2018, Google paid Plaintiff an annual salary of $295,000.00. (Greene Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 88: **Undisputed**.

Pl.'s SUMF 89:

In 2018, Google paid Mr. `Comp1` an annual salary of $334,000.00 (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 89: **Undisputed.**

Pl.'s SUMF 90:

In 2018, Google paid Plaintiff $39,000 less in annual salary than Mr. `Comp1`. (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 90: **Undisputed**.

Pl.'s SUMF 91:

    In 2018, Google paid Plaintiff a performance bonus of $125,000.00. (Greene Decl. ¶ 2.)

    Defendant's Response to Pl.'s SUMF 91: **Undisputed** that Google paid Plaintiff a bonus of $125,000 for work performed in 2018. (Humez Decl., ¶ 24.)

Pl.'s SUMF 92:

    In 2018, Google paid Mr. Comp1 a performance bonus of **$143,000.00.** (Greene Decl. ¶ 3.)

    Defendant's Response to Pl.'s SUMF 92: **Undisputed** that Google paid Mr. Comp1 a bonus of **$143,000** for work performed in 2018. (Humez Decl., ¶ 41.)

Pl.'s SUMF 93:

    In 2018, Google paid Plaintiff a performance bonus that was **$18,000** less than Mr. Comp1 s. (Greene Decl. ¶¶ 2-3.)

    Defendant's Response to Pl.'s SUMF 93: **Undisputed**.

Pl.'s SUMF 94:

    In 2018, Google awarded Plaintiff an equity refresh of $318,000.00. (Greene Decl. ¶ 2.)

    Defendant's Response to Pl.'s SUMF 94: **Undisputed** that Google awarded Plaintiff an equity refresh grant worth $318,000 for work performed in 2018. (Humez Decl., ¶ 24.)

Pl.'s SUMF 95:

    In 2018, Google awarded Mr. Comp1 an equity refresh of **$500,000.00.** (Greene Decl. ¶ 3.)

    Defendant's Response to Pl.'s SUMF 95: **Undisputed** that Google awarded Mr. Comp1 an equity refresh grant worth **$500,000** for work performed in 2018. (Humez Decl., ¶ 41.)

Pl.'s SUMF 96:

    In 2018, Google awarded Plaintiff $182,000 less in equity than Mr. Comp1. (Greene Decl. ¶¶ 2-3.)

    Defendant's Response to Pl.'s SUMF 96: **Undisputed**.

Pl.'s SUMF 97:

> In the 2019 Q3 review, both Plaintiff and Mr. [Comp1] received a rating of "exceeds expectations." (Greene Decl. ¶¶ 9-10.)

> Defendant's Response to Pl.'s SUMF 97: **Undisputed** that in Q3 2019, Google rated Plaintiff's work performance in the L8 Technical Director role in OCTO and Mr. [Comp1]'s work performance in the L9 Technical Director role as "exceeds expectations." (Greene Decl., ¶¶ 9 – 10.)

Pl.'s SUMF 98:

> In 2019, Google paid Plaintiff an annual salary of $310,000.00. (Greene Decl. ¶ 2.)

> Defendant's Response to Pl.'s SUMF 98: **Undisputed**.

Pl.'s SUMF 99:

> In 2019, Google paid Mr. [Comp1] an annual salary of **$348,000.00.** (Greene Decl. ¶ 3.)

> Defendant's Response to Pl.'s SUMF 99: **Undisputed**.

Pl.'s SUMF 100:

> In 2019, Google paid Plaintiff $38,000 less in annual salary than Mr. [Comp1]. (Greene Decl. ¶¶ 2-3.)

> Defendant's Response to Pl.'s SUMF 100: **Undisputed**.

Pl.'s SUMF 101:

> In 2019, Google paid Plaintiff a performance bonus of $125,000.00. (Greene Decl. ¶ 2.)

> Defendant's Response to Pl.'s SUMF 101: **Undisputed** that Google paid Plaintiff a bonus of $125,000 for work performed in 2019. (Humez Decl., ¶ 24.)

Pl.'s SUMF 102:

> In 2019, Google paid Mr. [Comp1] a performance bonus of **$182,000.00.** (Greene Decl. ¶ 3.)

> Defendant's Response to Pl.'s SUMF 102: **Undisputed** that Google paid Mr. [Comp1] a bonus of **$182,000** for work performed in 2019. (Humez Decl., ¶ 41.)

Pl.'s SUMF 103:

In 2019, Google paid Plaintiff a performance bonus that was $57,000 less than Mr. Comp1 's. (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 103: **Undisputed**.

Pl.'s SUMF 104:

In 2019, Google awarded Plaintiff, an equity refresh of $318,000.00. (Greene Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 104: **Undisputed** that Google awarded Plaintiff an equity refresh grant worth $318,000 for work performed in 2019. (Humez Decl., ¶ 24.)

Pl.'s SUMF 105:

In 2019, Google awarded Mr. Comp1 an equity refresh of $620,000.00.  (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 105: **Undisputed** that Google awarded Mr. Comp1 an equity refresh grant worth $620,000 for work performed in 2019. (Humez Decl., ¶ 41.)

Pl.'s SUMF 106:

In 2019, Google awarded Plaintiff $302,000 less in equity than Mr. Comp1 (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 106: **Undisputed**.

Pl.'s SUMF 107:

In 2020, Google paid Plaintiff an annual salary of $324,000.00. (Greene Decl. ¶ 2.)

Defendant's Response to Pl.'s SUMF 107: **Undisputed**.

Pl.'s SUMF 108:

In 2020, Google paid Mr. Comp1 an annual salary of $370,000.00. (Greene Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 108: **Undisputed**.

Pl.'s SUMF 109:

In 2020, Google paid Ms. Google $46,000 less in annual salary than Mr. Comp1 . (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 109: **Undisputed** to the extent that "Ms. Google" refers to Plaintiff.

Pl.'s SUMF 110:

Mr. ▮Comp1▮ left Google in May 2020 and did not receive a performance bonus or equity refresh award for that year. (▮Comp1▮ Decl. ¶ 3.)

Defendant's Response to Pl.'s SUMF 110: **Undisputed**.

**IV. Google's Affirmative Defenses**

**A.  Google Does Not Maintain a Bona Fide Seniority Based System.**

Pl.'s SUMF 111:

Google does not utilize a seniority system that rewards employees according to the length of their employment. (Ex. 70, GOOG-ROWE-00034048.)

Defendant's Response to Pl.'s SUMF 111: **Disputed**, because the document cited, Google's 2020 "Compensation philosophy" policy provides no evidentiary support for Pl.'s SUMF 111, which is merely counsel's argument. Plaintiff has therefore failed to establish Pl.'s SUMF 111 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d). When Google asserted its affirmative defenses, it did so as to any and all of Plaintiff's alleged comparators, which have since been narrowed for purposes of the parties' motions for summary judgment. (Google's Answer and Aff. Defenses to Pl.'s Second Amended Compl., ECF 111, at p. 33.) Now that the universe has been narrowed for purposes of summary judgment, it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses

are not at issue, and this aspect of Plaintiff's motion is moot.  Google reserves the right to assert all other affirmative defenses available as to those and other alleged comparators.

**B.    Google Does Not Maintain a Bona Fide Merit-Based Compensation System.**

Pl.'s SUMF 112:

Google's compensation structure for Technical Directors was and is comprised of three components: annual salary, performance bonus, and equity awards. (Rowe Decl. ¶ 12; Ex. 52, GOOG-ROWE-00029597-8.)

Defendant's Response to Pl.'s SUMF 112: **Undisputed** as to Google's compensation structure for the L8 and L9 Technical Director roles in OCTO. (Humez Decl., ¶ 10.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 113:

Specific compensation amounts for Technical Directors, including initial salary and target bonus percentage, was and is set at time of hire and based on assigned job code and job level. (Ex. 52, GOOG-ROWE-00029597-8.)

Defendant's Response to Pl.'s SUMF 113: **Undisputed** that assigned job code and job level are among the factors that determine initial salary and target bonus percentage as to the L8 and L9 Technical Director roles, and that initial salary and target bonus are set at time of hire. (Humez Decl., ¶ 5.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay

disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 114:

> Google's policy is that subsequent compensation increases are determined by an employee's "perf ratings, pay for your role, level and location" as well as "manager discretion- adjusting pay relative to peers, trajectory, retaining critical talent, and more." (Ex. 70, GOOG-ROWE-00034048.)

Defendant's Response to Pl.'s SUMF 114: **Disputed in part.** It is **undisputed** that Pl.'s SUMF 114 reflects Google's policy in 2020, (Jumper Decl., Exh. 70, at GOOG-ROWE-00034048), but Google **disputes** that the policy submitted as Jumper Decl., Exh. 70 covers the entire time period for which Plaintiff was employed. In any event, it is **undisputed** that performance ratings, pay relative to the market, level, and location inform modeled recommendation for compensation increases during the annual compensation process.

(Humez Decl., ¶¶ 10 – 13.) Managers also have the discretion to adjust the modeled recommendations for each of their direct reports at the beginning of each annual compensation cycle within their discretionary budget and taking into account factors for which an algorithm cannot account such as pay relative to peers, performance trajectory, or the need to retain critical talent. (*Id.*, ¶ 14.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those

affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 115:

In 2018, Plaintiff outperformed Mr. Harteau and received an "Exceeds Expectations" rating, while Mr. Harteau received a "Consistently Meets Expectations" rating. (Greene Decl. ¶¶ 9-10.)

Defendant's Response to Pl.'s SUMF 115: **Disputed**; Pl.'s SUMF 115 is controverted by the record and Plaintiff's own admissions. Plaintiff concedes that "a level refers to the scope and complexity within a role and is defined by the knowledge, skills, and abilities that a Googler needs to perform well." (Def.'s SUMF 12.) Plaintiff and Mr. Harteau were assigned different levels, so Google expected that Mr. Harteau's role would require greater scope and complexity. (*Id.*; Pl.'s SUMF 18, 20, *supra*.) Because of that distinction, a rating for work performed at an L8 scope and complexity is not equivalent or comparable to the same performance rating for work performed at a higher L9 scope and complexity. (Tomezsko Supp. Decl., ¶ 5, Exh. 1 at 166:23–167:24.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 116:

In 2018, Mr. Harteau's salary, bonus, and equity award exceeded Plaintiff's. (Greene Decl ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 116: **U**ndisputed, but **immaterial** as Plaintiff and Mr. Harteau were performing the Technical Director role at different levels, (Pl.'s SUMF

18, 20, *supra*; Def.'s SUMF 12); Plaintiff was performing the work of a Global Client Technical Lead for part of 2018, (Lucas Decl., ¶ 18); and for part of 2018, Mr. Harteau was performing work in connection with this eventual ladder transfer to the Software Engineering job ladder. (Lucas Decl., ¶ 27, Def.'s SUMF 134-135.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 117:

In 2019, Plaintiff and Mr. Harteau both received performance ratings of "exceeds expectations." (Greene Decl. ¶¶ 9-10; Ex. 71, GOOG-ROWE-00017919.)

Defendant's Response to Pl.'s SUMF 117: **Undisputed** that in Q3 2019, Google rated Plaintiff's work performance in the L8 Technical Director role in OCTO and Mr. Harteau's work performance during his trial period for the ladder transfer to the Software Engineering job ladder as "exceeds expectations." (Greene Decl., ¶¶ 9, 10; Lucas Decl., ¶ 27; Def.'s SUMF 134-135.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at

issue, and this aspect of Plaintiff's motion is moot.

Pl.'s SUMF 118:

In 2019, Mr. Harteau's salary, bonus, and equity refresh exceeded Plaintiff's. (Greene Decl. ¶¶ 2-3.)

Defendant's Response to Pl.'s SUMF 118: **Undisputed**, but **immaterial** as Plaintiff had resumed her role as L8 Technical Director in OCTO as of April 2019, (Lucas Decl., ¶ 18), and Mr. Harteau was performing work in connection with his ladder transfer to the Software Engineering job ladder. (Lucas Decl., ¶ 27, Def.'s SUMF 134-135.) It is **immaterial** because it is Google's position that any disparities in pay between Plaintiff and her alleged comparators in New York are based on the fact that they perform different roles and even if they are comparable, that the pay disparity is the result of a bona fide factor other than sex. Google does not assert that any pay disparities as to the alleged comparators *at issue in the present motions* are solely the result of a seniority-based and/or merit-based system. Therefore, those affirmative defenses are not at issue, and this aspect of Plaintiff's motion is moot.

**C.   Google Did Not Use Any Bona Fide Factor Other Than Sex In Determining Plaintiff's and Mr. Harteau's Compensation.**

Pl.'s SUMF 119:

Google's compensation policies provide that decision makers are not to "make leveling recommendations based on factors outside of interview process, such as years of experience, education level, and previous job title or company." (Ex. 11, GOOG-ROWE-00053464.)

Defendant's Response to Pl.'s SUMF 119: **Disputed in part.** It is **undisputed** as to Google policy in 2020, (Jumper Decl., Exh. 11, GOOG-ROWE-00053464), but Google **disputes** that the policy document submitted as Jumper Decl., Exh. 11 was in place when the leveling decision was made with respect to Plaintiff years prior. Plaintiff has not submitted any

evidence that those involved in her leveling process were required to follow a similar policy in 2016 or 2017 and has therefore failed to establish Pl.'s SUMF 119 as an undisputed material fact. *See* Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 120:

Google's policies provide that past years of experience should never be used as the determining factor when assigned job level. (Ex. 72, GOOG-ROWE-00053761.) ("[W]hile past experience can signal the candidate's level of RRK ("role-related knowledge") required for the role, total [years of experience] should never be the determining factor for leveling. A candidate's level should be selected based primarily on the scope of the role, but also take the candidate's strengths—as demonstrated throughout the hiring process—into consideration.")

Defendant's Response to Pl.'s SUMF 120: **Disputed in part.** It is **undisputed** as to the contents of Google's Candidate Leveling Resources FAQs. Other contemporaneous documents suggest that relevant years of experience could be a *factor* in level assignments. (Tomezsko Supp. Decl., ¶ 15, Exh. 11 at GOOG-ROWE-00053763.)

Pl.'s SUMF 121:

Google does not maintain any directive or policy that compensation or leveling decisions for the Technical Director position be made based on a candidate's specific years of experience or seniority. (Ex. 4, Lucas Tr. 126:18-25.)

Defendant's Response to Pl.'s SUMF 121: **Undisputed** that Google does not maintain any directive or policy that compensation or leveling decisions for the L8 and L9 Technical Director roles in OCTO be made based on a candidate's specific years of experience or seniority. (Jumper Decl., Exh. 4, at 126:18 – 25.)

Pl.'s SUMF 122:

The external job posting used in connection with hiring and recruiting for the Technical Director position did not specify a level of seniority or years of experience required for the role, at either Level 8 or Level 9. (Tomezsko Decl., Ex. 44.)

Defendant's Response to Pl.'s SUMF 122: **Undisputed** that the external job posting used in connection with hiring and recruiting L8 and L9 Technical Directors in OCTO did not

specify a level of seniority or years of experience required for those roles. (Tomezsko Decl., Exh. 10.)

Pl.'s SUMF 123:

> The hiring manager for the Technical Director position, Mr. Grannis, was not provided with any sort of metrics that equated years of experience to a particular job level or job code. (Ex. 1, Grannis Tr. 72:16-20.)

> Defendant's Response to Pl.'s SUMF 123: **Undisputed**.

Pl.'s SUMF 124:

> The lead recruiter for the Technical Director role, Jennifer Burdis, considered boundaries between years of experience as "not concrete" and did not ascribe any meaningful difference to candidates with 19 to 20 years of experience, 19 to 21 years of experience, or 23 to 25 years of experience. (Exhibit 10, Burdis Tr. 30:7-14, 44:6-46:6.)

> Defendant's Response to Pl.'s SUMF 124: **Disputed**. Ms. Burdis testified that Google

policy did not prescribe certain levels for candidates with various years of experience:

> Q:    Okay, and so did Google prescribe any meaningful difference between someone with 15 years of experience versus someone with 17 years of experience in terms of leveling?

> A:    No.

(Jumper Decl., Exh. 10 at 45:11 – 16; *see also id.*, 45:17 – 46:6.) She then testified that years of

experience is "one factor" considered in leveling decisions. (*Id.*, 46:21 – 47:3.)

Pl.'s SUMF 125:

> As outlined in Google's own investigation findings related to Plaintiff's leveling complaint, Mr. Harteau was hired into the position at a Level 9 with less years of experience than Plaintiff. (Ex. 21, GOOG-ROWE-00058500.)

> Defendant's Response to Pl.'s SUMF 125: **Disputed**. Google's conclusion was, "Overall

we did not find evidence that the complainant had significantly more work experience at

the time she was hired than her male peers hired within a year of her hire date." (Jumper

Decl., Exh. 21.) With respect to Mr. Harteau, the investigation summary noted, "1 Male

was hired into an L9 role with 18.9 years of experience, *about the same as* – or 0.2 years less than – the complainant." (*Id.* (emphasis supplied).) Employee Relations' notes also indicate that "Tech versus non-Tech experience was the most heavily considered factor when gauging L8 versus L9 for similar years of work experience," that they considered her "years *and type* of work experience," and that in their review they did not find that you had comparable work experience to L9 Technical Directors In OCTO; "their leveling was consistent with backgrounds and experience expected with being hired as L9." (Jumper Decl., Exh. 40 at GOOG-ROWE-00018015.)

Pl.'s SUMF 126:

> Upon hire, Plaintiff had 22 years of experience, including two years during which she was pursuing an MS degree in computer science and working for a bank in Turkey in a technical role and as a Research Assistant for Caterpillar, Inc. (Rowe Decl. ¶ 4, Tomezsko Decl., Ex. 15.)

> Defendant's Response to Pl.'s SUMF 126: **Disputed** to the extent it is inconsistent with the résumé Plaintiff submitted to Google in connection with the Technical Director position, or the record contemporaneously created during Plaintiff's recruiting and hiring process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent there are any discrepancies, such discrepancies are **immaterial** because they could not have formed the basis for any decision by Google.

Pl.'s SUMF 127:

> Mr. Harteau only had nineteen years of experience and did not have any educational degrees. (Ex. 21, GOOG-ROWE-00058500.)

> Defendant's Response to Pl.'s SUMF 127: **Undisputed**.

Pl.'s SUMF 128:

> At her interview, Plaintiff was considered for the Technical Director role at both Levels 8 and 9. (Ex. 10, Burdis Tr. 42:22-43:18.)

Defendant's Response to Pl.'s SUMF 128: **Undisputed**.

Pl.'s SUMF 129:

Google directs that "candidates are leveled at hire based on their relevant experience and the skills they demonstrate during the interview process for a given role." (Ex. 11, GOOG-ROWE-00053464.)

Defendant's Response to Pl.'s SUMF 129: **Undisputed** as to Google policy in 2020, (Jumper Decl., Exh. 11 at GOOG-ROWE-00053464), but **immaterial** as any leveling decision made with respect to Plaintiff occurred years prior and Plaintiff has not submitted any evidence that this policy was in place in 2016 or 2017. In any event, Ms. Burdis testified that how a candidate performs during interviews informed the leveling recommendations for candidates for L8 and L9 Technical Director roles in OCTO, along with number of years of experience, relevant work experience, and previous roles that demonstrate the candidate's knowledge of a particular industry. (Tomezsko Decl., Exh. 6 at 53:23–54:9, 95:3–13.) Mr. Grannis also testified that his leveling recommendations were based on "[t]he degree to which they demonstrated experience, background, acumen, across the core elements of the role, the role-related knowledge as well as the -- the three other categories, Googliness, CGA, and leadership." (Jumper Decl., Exh. 1 at 60:5 – 12.)

Pl.'s SUMF 130:

Google explicitly instructs that leveling decisions regarding all roles, including the Technical Director, not take into consideration previous experience or job titles. (Ex. 11, GOOG-ROWE-00053464.)

Defendant's Response to Pl.'s SUMF 130: **Disputed**. Google's policy in 2020 expressly acknowledges that "a candidate's past employers, roles, and degree programs" are given "limited weight" when making leveling recommendations. (Jumper Decl., Exh. 11 at GOOG-ROWE-00053464.) Other policies Plaintiff submitted indicate that Google does not *rely exclusively* on company names or job titles to understand a candidate's capabilities,

but Google does take prior relevant experience into consideration. (Tomezsko Supp. Decl.,

¶ 15, Exh. 11 at GOOG-ROWE-00053763.)

Pl.'s SUMF 131:

Prior to joining Google, Plaintiff served as a CTO at JPMorgan, which involved navigating and integrating relevant Cloud technologies, as well as leading the team responsible for AWS cloud migration at JPMorgan. (Rowe Decl. ¶ 6; Ex. 51, GOOG-ROWE-P-00004556.)

Defendant's Response to Pl.'s SUMF 131: **Disputed** to the extent it is inconsistent with

the résumé Plaintiff submitted to Google in connection with the Technical Director

position, or the record contemporaneously created during Plaintiff's recruiting and hiring

process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) To the extent

there are any discrepancies, such discrepancies are **immaterial** because they could not have

formed the basis for any decision by Google. Similarly, Jumper Decl., Exh. 51 is a

document created in 2020 and therefore could not have formed the basis for any decision

by Google. (Tomezsko Supp. Decl., ¶¶ 3 – 4.)

Pl.'s SUMF 132:

Google knew of Plaintiff's previous CTO experience. (Ex. 51, GOOG-ROWE-P-00004556.)

Defendant's Response to Pl.'s SUMF 132: **Disputed** to the extent it is inconsistent with

the résumé Plaintiff submitted to Google in connection with the Technical Director

position, or the record contemporaneously created during Plaintiff's recruiting and hiring

process, both of which speak for themselves. (Tomezsko Decl., Exh. 15.) Jumper Decl.,

Exh. 51 is a document created in 2020. (Tomezsko Supp. Decl., ¶¶ 3 – 4.) How anyone

described Plaintiff's prior work experience in 2020 is **immaterial** because that description

could not have formed the basis for any decision to hire Plaintiff as an L8 in 2017. Plaintiff

has therefore failed to establish Pl.'s SUMF 132 as an undisputed material fact. *See* Fed.

R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 133:

Another Technical Director, Benjamin Wilson, worked at two companies prior to his employment at Google – neither of which jobs were cloud technology-based roles – and he worked on migrating both to the cloud. (Ex. 17, Wilson Tr. 30:24-31:8.)

Defendant's Response to Pl.'s SUMF 133: **Disputed in part**. It is **undisputed** that prior to

Google, L9 Technical Director Benjamin Wilson worked at GE Oil & Gas and P2 Energy

Solutions, and that he had migrated both of those businesses to the cloud. (Jumper Decl.,

Exh. 17 at 30:24 – 31:8; Tomezsko Decl., Exh. 14 at GOOG-ROWE-00062214.)

Defendant **disputes** Plaintiff's characterization of Mr. Wilson's role at GE Oil & Gas,

where he was CTO – GE Cloud Leader, as something other than a cloud technology-based

role. (Tomezsko Decl., Exh. 14 at GOOG-ROWE-00062214). The cited documents

provide no evidentiary support for this portion of Pl.'s SUMF 133, and therefore Plaintiff

has failed to establish this portion of Pl.'s SUMF 133 as an undisputed material fact. *See*

Fed. R. Civ. P., Rule 56(c)(1)(A); Local Rule 56.1(d).

Pl.'s SUMF 134:

At hire, Plaintiff's interviewers noted that she possessed expertise in cloud technology within the financial services industry. (Ex. 19, GOOG-ROWE-00019104.R, 113, 115; Tomezsko Decl., Ex. 15, GOOG-ROWE-00019097.R.)

Defendant's Response to Pl.'s SUMF 134: **U**ndisputed to the extent that Pl.'s SUMF 134

is consistent with the interviewers' notes at Jumper Decl., Exh. 19 and Tomezsko Decl.,

Exh. 15. To the extent there are discrepancies, the documents speak for themselves.

Pl.'s SUMF 135:

One interviewer noted that Plaintiff possessed "long history in this space and should be very good and understanding what can move to Cloud easily and how to address a range of anxieties in this sector." (Ex. 19, GOOG-ROWE-00019104.R, 113, 115; Tomezsko Decl., Ex. 15, GOOG-ROWE-00019097.R.)

**Defendant's Response to Pl.'s SUMF 135**: **Undisputed** to the extent that Pl.'s SUMF 135

is consistent with the interviewers' notes at Jumper Decl., Exh. 19 and Tomezsko Decl.,

Exh. 15. To the extent there are discrepancies, the documents speak for themselves.

Pl.'s SUMF 136:

Another interviewer noted that Plaintiff "demonstrated an in-depth knowledge of public
cloud" and that "had a great command of the challenges financial firms face in adopting
any cloud solution, both from a personnel standpoint as well as nuts and bolts technical
challenges." (Ex. 19, GOOG-ROWE-00019104.R, 113, 115; Tomezsko Decl., Ex. 15,
GOOG-ROWE-00019097.R.)

**Defendant's Response to Pl.'s SUMF 136**: **Undisputed** to the extent that Pl.'s SUMF 136

is consistent with the interviewers' notes at Jumper Decl., Exh. 19 and Tomezsko Decl.,

Exh. 15. To the extent there are discrepancies, the documents speak for themselves.

Pl.'s SUMF 137:

Plaintiff's manager, Will Grannis, acknowledged her cloud technology acumen within the
financial services industry as relevant for the Technical Director role in OCTO. (Ex. 19,
GOOG-ROWE-00019104.R, 113, 115; Tomezsko Decl., Ex. 15, GOOG-ROWE-
00019097.R.) ("Moving applications to the cloud right now and so has very relevant and
timely experience within a finsrv enterprise adopting public cloud.")

**Defendant's Response to Pl.'s SUMF 137**: **Undisputed** to the extent that Pl.'s SUMF 137

is consistent with the interviewers' notes at Jumper Decl., Exh. 19 and Tomezsko Decl.,

Exh. 15. To the extent there are discrepancies, the documents speak for themselves.

## **DEFENDANT'S COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant hereby incorporates its Rule 56.1 Statement of Undisputed Material Facts In

Support of Its Motion for Summary Judgment (ECF 139.) To the extent additional facts are

required to address issues raised in Plaintiff's Cross-Motion for Partial Summary Judgment, those

facts are asserted below.

### *Grannis Builds the OCTO Team and Most Candidates Are Hired at L8*

138.    Will Grannis' supervisor, Brian Stevens, was also involved in the creation of the

new Technical Director role in OCTO in 2016. (Grannis Decl., ¶ 4.)

139.    To create the new role of Technical Director in OCTO, Will Grannis and Brian Stevens took a pre-existing technical job family from another area of Google Cloud that allowed for a blend of customer-facing, customer-impact type work and put it into the engineering organization for the first time. (Jumper Decl., Exh. 1 at 24:16 – 25:20.)

140.    The job *family* as it exists in OCTO has a greater emphasis on engineering than the job family as it exists elsewhere in Google. (Jumper Decl., Exh. 1 at 26:5 – 10.)

141.    The pre-existing family that Mr. Grannis borrowed from another area in Google to create the concept of a Technical Director in OCTO was organized into a job ladder that did not include an entry for L9. (Jumper Decl., Exh. 6.)

142.    The job ladder for the TSC job family that existed in 2016 and 2017 provides no information whatsoever about the qualifications, skills, experience, scope, impact, or contributions expected of an L9 employee in that job family. (Jumper Decl., Exh. 6.)

143.    Google contemplated creating a separate L9 entry for the job ladder when it made its first Technical Director hire in OCTO, Evren Eryurek, and assess him as an L9. (Tomezsko Decl., Exh. 14 at GOOG-ROWE-00061919.)

144.    Mr. Grannis hired candidates into the role of Technical Director, OCTO at different levels. (Jumper Decl., Exh. 1 at 74:21–75:8.)

145.    Google hired 13 Technical Directors at L8 and L9 in the United States between March 2016 and March 2018, hired individuals at L7 for the Technical Director position during that time period, and hired another woman for the Technical Director role in 2020. (Lucas Decl., ¶¶ 18, 19, 21, 23, 24, 25, 26, 27, 28, 31, 32, 34, 35, 37, 38, 39, 94.)

146.    Google was also negotiating an offer with a female candidate for an L9 Technical Director role in 2018, but that candidate ultimately did not accept the offer. (Tomezsko Supp.

Decl., ¶ 8, Exh. 4 at GOOG-ROWE-00056475; *id.*, ¶ 9, Exh. 5, at GOOG-ROWE-00059393.)

### *Plaintiff and Mr. Harteau's Relative Qualifications*

147.    Prior to joining Google, Mr. Harteau had worked on migrating Spotify to the Google Cloud Platform and worked directly with Google employees on that effort. (Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R; Grannis Decl., ¶ 36.)

148.    Before he worked at Google, Mr. Harteau worked at several technology companies, including Spotify, a Google client. (Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R.)

149.    Plaintiff had less experience with the Google Cloud Platform than Mr. Harteau before coming to Google. (Tomezsko Decl., Exh. 1 at 89:14 – 90:3, 94:5-12, 210:3-9; Tomezsko Decl., Exh. 15 at GOOG-ROWE-00019155.R-16.R; Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R, 21.R–22.R; Declaration of Ulku Rowe in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment (ECF 158) ["Rowe Decl."], ¶ 10.)

150.    Before she worked at Google, Plaintiff had no experience migrating companies to the cloud with Google Cloud Platform. (Tomezsko Decl., Exh. 1 at 89:14-90:3, 94:5-12, 210:3-9; Rowe Decl., ¶ 10.)

151.    Before she worked at Google, Plaintiff had never worked for a technology company. (Tomezsko Decl., Exh. 15 at GOOG-ROWE-00019097.R; GOOG-ROWE-00019100.R – GOOG-ROWE-00019101.R.)

152.    Jumper Decl., Exh. 51 is a document created in 2020 and therefore could not have formed the basis for any decision by Google. (Tomezsko Supp. Decl., ¶¶ 3 – 4.)

153.    In 2016, Plaintiff interviewed for a Director-level Software Engineering role. (Rowe Decl., ¶ 15.)

154.    Google did not extend Plaintiff an offer for that Director-level Software

Engineering role. (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00056272.)

155.    One of Plaintiff's interviewers for the Director-level Software Engineering role noted he was "nervous that she hasn't been pushed lately to have the technical depth we need from an eng director in storage though I'm optimistic that she's not hopeless on that front." (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00019118.R.)  That individual was Larry Greenfield, one of Plaintiff's alleged Director-level Software Engineering comparators. (*Id.*; Lucas Decl., ¶¶ 15, 16, 49.)

156.    Another of Plaintiff's interviewers for the Director-level Software Engineering role assessed Plaintiff as a "weak hire" and noted concerns that "there will be a significant challenge in [Plaintiff] coming in as a leader for this organization at the top." (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00019123.R.)

157.    Another of Plaintiff's interviewers for the Director-level Software Engineering role assessed Plaintiff as a "weak-to-moderate no hire" and noted that "her ideas are clearly steeped in large corporate culture; possibly unlearnable. Also: although I focused on management, I generally expect to get a moderately strong signal on technical topics from my leadership questions; I didn't, which is a concern." (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00019125.R.)

158.    Another of Plaintiff's interviewers for the Director-level Software Engineering role assessed Plaintiff as a "weak no hire" and noted "concerns about her cultural fit and technical expertise." (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00019127.R.) That individual was Carter Page, one of Plaintiff's alleged Director-level Software Engineer comparators. (*Id.*; Lucas Decl., ¶¶ 15, 16, 59.)

159.    Another of Plaintiff's interviewers for the Director-level Software Engineering role noted, "If we are looking for a deep technical person setting direction here Urku [*sic*] is not the person." (Tomezsko Supp. Decl., ¶ 12, Exh. 8 at GOOG-ROWE-00019131.R.)

*Candidate Leveling*

160.    As lead recruiter, Ms. Burdis did not participate in the final leveling decision for any L8 or L9 Technical Director in OCTO, but she did participate in the leveling process by, *inter alia*, making "a pre-interview initial assessment" as to the candidate's level. (Jumper Decl., Exh. 10 at 30:15 – 21.)

161.    Mr. Grannis' role in the interview process was to ensure candidates were qualified at the L8+ level based on their demonstrated experience. (Jumper Decl., Exh. 1 at 58:17 – 59:8.)

162.    Upon making this determination, Mr. Grannis made a recommendation as to whether the candidate would be hired as an L8 or L9 Technical Director based on "[t]he degree to which they demonstrated experience, background, acumen across the core elements of the role, the role-related knowledge as well as the -- the three other categories; Googliness, CGA, and leadership." (*Id.* at 59:12 – 60:12.)

163.    Google assesses candidates against structured rubrics during the interview process to ensure consistency and reduce bias when evaluating candidates. (Jumper Decl., Exh. 5 at GOOG-ROWE-00052153.)

164.    There are four rubrics against which candidates for senior-level (L8+) roles are assessed: Leadership, Googliness, General Cognitive Ability ("CGA"), and Role-Related Knowledge ("RRK"). (Tomezsko Supp. Decl., ¶ 5, Exh. 1, at 133:3–8.)

165.    L8+ Leadership and Googliness rubrics are used consistently across Google, regardless of the candidate's role or job family. (Tomezsko Supp. Decl., ¶ 5, Exh. 1, at 133:3 – 135:19; Gelfand Decl., ¶ 3.)

166.    The content of an L8+ CGA rubric may vary by job family. (Tomezsko Supp. Decl., ¶ 5, Exh. 1 at 133:13–19.)

167.    RRK rubrics are unique to role within a job family and level. (Tomezsko Supp.

Decl., ¶ 5, Exh. 1, at 130:9–131:11, 135:14–19.)

168.   The number of years of a candidate's relevant industry experience can inform that candidate's level of role-related knowledge, or RRK, required for the role. (Jumper Decl., Ex. 72, GOOG-ROWE-00053761.)

169.   Google's policies in effect in 2017 indicate years of relevant experience can be a factor in determining level at hire. (Tomezsko Supp. Decl., ¶ 15, Exh. 11 at GOOG-ROWE-00053763.)

170.   Google has a set of rubric-based interview questions that apply to all candidates for roles at L8 and above. (Jumper Decl., Exh. 1 at 49:13 – 24.)

171.   According to Lead Recruiter for the L8 and L9 Technical Director roles in OCTO, Jennifer Burdis, how a candidate performs during interviews informed the leveling recommendations for candidates for L8 and L9 Technical Director roles in OCTO, along with number of years of experience, relevant work experience, and previous roles that demonstrate the candidate's knowledge of a particular industry. (Tomezsko Decl., Exh. 6 at 53:23 – 54:9, 95:3 – 13.)

172.   Mr. Grannis' levelling recommendations were based on "[t]he degree to which they demonstrated experience, background, acumen, across the core elements of the role, the role-related knowledge as well as the -- the three other categories, Googliness, CGA, and leadership." (Jumper Decl., Exh. 1 at 60:5 – 12.)

173.   .In response to Plaintiff's complaint that she had been underleveled on hire, Google's Employee Relations investigators concluded, "Overall we did not find evidence that the complainant had significantly more work experience at the time she was hired than her male peers hired within a year of her hire date." (Jumper Decl., Exh. 21.)

174.   With respect to Mr. Harteau, the investigation summary noted, "1 Male was hired

into an L9 role with 18.9 years of experience, *about the same as* – or 0.2 years less than – the complainant." (Jumper Decl., Exh. 21(emphasis supplied).)

175.    Employee Relations' notes also indicate that "Tech versus non-Tech experience was the most heavily considered factor when gauging L8 versus L9 for similar years of work experience," that they considered her "years *and type* of work experience," and that in their review they did not find that you had comparable work experience to L9 Technical Directors In OCTO; "their leveling was consistent with backgrounds and experience expected with being hired as L9." (Jumper Decl., Exh. 21.)

### *Google's Bona Fide Factor Other Than Sex Defense*

176.    Factors that Mr. Grannis considered for recommending Google hired Plaintiff for the L8 Technical Director role in OCTO included: "clear industry knowledge," ability to put use cases in context for the financial services industry, strong communication skills and ability to convey complex ideas to customers, but also "flags around depth of experience, around technical ability," and "no clear demonstrated large-scale migration to Cloud." (Jumper Decl., Exh. 1 at 68:20 – 69:16.)

177.    Mr. Stevens provided the statement of support for Mr. Harteau, not Mr. Grannis. (Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R.)

178.    In support of his recommendation to hire Nick Harteau as an L9 Technical Director in OCTO, Brian Stevens wrote, "I strongly support Nick Harteau for hire as an L9 TSC in the Office of the CTO. One of the strongest packets I've seen. […] He is one of the few engineering leaders in industry that has deep, hands-on familiarity with GCP and is seen as a leader amongst his peers." (Tomezsko Decl., Exh. 17 at GOOG-ROWE-00056318.R.)

179.    In support of his recommendation to hire Evren Eryurek as an L9 Technical Director in OCTO, Will Grannis wrote, that Mr. Eryurek was "currently the GE Healthcare Cloud

CTO, and before that, lead the Transportation SW team at GE. Having led large scale SW development and cloud deployment teams of greater than 2000 engineers for one of the world's leaders in Healthcare and Transportation, Evren had a depth of experience, leadership track record, and bonafides that make him instantly credible with senior engineering leaders in those same industries." (Tomezsko Decl., Exh. 11 at GOOG-ROWE-00061920.)

180.    In support of his recommendation to hire Benjamin Wilson as an L9 Technical Director in OCTO, Will Grannis wrote, "Given his strong leadership track record as a CIO at Siemens, CTO at GE, and depth of first-hand experience moving thousands of applications to the public cloud in Oil and Gas and Industrial verticals, I recommend we hire Ben as an L9." (Tomezsko Decl., Exh. 14 at GOOG-ROWE-00062214.)

181.    In support of his recommendation to hire Paul Strong as an L9 Technical Director in OCTO, Will Grannis wrote, "Based on his seniority at VMWare (top candidate for global CTO role), demonstrated strong history of Cloud thought leadership, name recognition in the market, and ability to engage effectively with the CxO of any large enterprise, I recommend Paul for hire at the L9 level." (Tomezsko Decl., Exh. 12 at GOOG-ROWE-00061880.)

182.    In support of his recommendation to hire Jonathan Donaldson as an L9 Technical Director in OCTO, Will Grannis "reviewed the feedback for Jonathan and strongly endorsed his hire into the CTO Office as the L9 level." (Tomezsko Decl., Exh. 13 at GOOG-ROWE-00063078.) That feedback included the following: "This candidate is among the most complete candidates I've interviewed for this role. He has a strong relevant technical background in virtualization, orchestration, and networking," (Tomezsko Supp. Decl., ¶ 16, Exh. 12 at GOOG-ROWE-00063096), "I give Jonathan high marks on cloud RRK. His insights on VMware, OpenStack, container strategy and how Intel silicon fits in were great." (*Id.*, at GOOG-ROWE-00063093.)

182(a). In his recommendation to hire Scott Penberthy as an L8 Technical Director, Will

Grannis noted his strong performance in interviews, and his "willingness to learn about Google Cloud Platform." (Tomezsko Decl., ¶ 17, Exh. 13 at GOOG-ROWE-00063516.)

183.    Two Senior Vice Presidents reviewed and approved the leveling recommendations for L8 and L9 Technical Directors in OCTO. (Def.'s SUMF 23; Tomezsko Supp. Decl., ¶ 14, Exh. 10.)

184.    Mr. Grannis does not recall having a leveling conversation with Plaintiff during the hiring process. (Jumper Decl., Exh. 1 at 74:9 – 75:24.)

*Work Performance and Responsibilities*

185.    The extent to which any individual Technical Director in OCTO performed the work associated with the three pillars of responsibility for L8 and L9 roles varied from person to person. (Grannis Decl., ¶¶ 30 – 40; Tomezsko Decl., Exh. 2 at 31:5–21, 183:19–185:3 (noting Plaintiff consistently underperformed on the engineering impact pillar of the role).)

186.    The 2020 Engineering-Wide Leveling Guide is not specific to a particular job, job family, or job ladder, and states this explicitly on the first page. (Jumper Decl., Exh. 69 at P001584.)

187.    The Engineering-Wide Leveling Guide differentiates between expectations for L8 and L9 engineering employees in terms of Knowledge and Experience, Complexity and Scope, Leadership and Influence, and Organizational Impact. (Jumper Decl., Exh. 69 at P001584 – 85.)

188.    A performance rating for work performance at an L8 scope and complexity is not equivalent or comparable to the same performance rating for work performed at an L9 scope and complexity, as there are different performance expectations. (Tomezsko Supp. Decl., ¶ 5, Exh. 1 at 166:23 – 167:24.)

*Plaintiff's and Mr. Harteau's Employment History At Google*

189.    In June 2018, Plaintiff began reporting to Tariq Shaukat in a Global Client

Technical Lead Role. (Lucas Decl., ¶ 18.)

190.    Plaintiff's focus on product and engineering, her client engagements, and thought leadership were all limited or reduced from what they were in OCTO while she was a Global Client Technical Lead reporting to Tariq Shaukat. (Jumper Decl., Exh. 18 at 247:13 – 21.)

191.    Effective September 4, 2018, Mr. Harteau transferred to the Ops Management organization reporting to Eyal Manor. (Lucas Decl., ¶ 27.)

192.    When Mr. Harteau left OCTO, he began focusing exclusively on managing a product team working on Stackdriver, a cloud computing system providing performance and diagnostics data to public cloud users. (Grannis Decl., ¶ 36; Lucas Decl., ¶ 27.)

193.    Mr. Harteau completed a job ladder transfer to a Director-level Software Engineering role effective February 6, 2020. (Lucas Decl., ¶ 27.)

194.    Mr. Harteau had been a people manager since 2018. (Lucas Decl., ¶ 27.)

### *Compensation at Google*

195.    The amount of any Google employee's annual bonus depends on that employee's performance and the performance of the company. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920.)

196.    The amount of a Google employee's annual bonus is determined at Google's sole discretion. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920.)

197.    The equity Mr. Harteau and Plaintiff received in connection with their offers of employment were one-time new hire equity grants.

198.    Neither Mr. Harteau nor Plaintiff were contractually guaranteed any future equity awards, nor were they guaranteed equity refresh awards of a specific amount. (Jumper Decl., Exh. 27 at GOOG-ROWE-00017920; *id.*, Exh. 34 at GOOG-ROWE-00054161; Humez Decl., ¶ 44.)

DATED:   Jersey City, New Jersey
         December 24, 2021

Respectfully submitted,

_____
PAUL HASTINGS LLP
Kenneth W. Gage
Sara B. Tomezsko
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for Defendant*
GOOGLE LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this December 24, 2021, I caused a true and

exact copy of the foregoing DEFENDANT GOOGLE LLC'S RESPONSE TO PLAINTIFF'S

STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 to be filed

electronically and served by mail on anyone unable to accept electronic filing. Notice and

copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice

of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Jersey City, New Jersey
     December 24, 2021

                                       Sara B. Tomezsko