UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,

                Plaintiff,                Case No. 1:19-cv-08655-LGS

      v.

GOOGLE LLC,

                Defendant.

**OPPOSITION TO MOTION ONE:
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
CONCERNING DEFENDANT'S CONSIDERATION OF OTHER
CANDIDATES FOR FINANCIAL SERVICES VERTICAL LEAD ROLE**

I.     INTRODUCTION

Plaintiff Ulku Rowe alleges that "[w]hen [she] learned that two, less qualified, external finalists were being considered" for the Financial Services Vertical Lead role ("FSVL Role") in Tariq Shaukat's organization, she insisted that she, too, be considered. (ECF 108 ¶ 36.) She alleges that Google then "failed to meaningfully consider" her for the job, (*id*. ¶ 35), and ultimately "selected a less-qualified man" who was already working in Shaukat's organization. (*Id*. ¶ 41). She claims this was because of her gender or protected conduct. (*Id*. ¶¶ 33-47). Google denies her allegations.

The evidence will show: (a) Rowe was considered for the FSVL Role, including through multiple interviews; (b) Shaukat did not consider Rowe to be a strong candidate during 2018, in part because of his knowledge regarding other female candidates whom he considered to be better qualified, one of whom he had known for ten years and another of whom was already a vice president at Google; (c) Shaukat paused this search at the end of 2018 due to a change in the Chief Executive Officer at Google Cloud; and (d) in early 2019 Shaukat asked another director-level employee already on his team to lead the effort to develop business in the financial services sector.

In her motion *in limine*, (ECF 238), Rowe argues that evidence concerning Google's consideration of other candidates for the FSVL Role should be excluded. Evidence concerning Google's consideration of other candidates, including specifically Shaukat's knowledge of, and opinions concerning, the qualifications of other candidates relative to Rowe is directly relevant to whether he was motivated by lawful or unlawful reasons when he reached the conclusion that Rowe was not right for the FSVL Role. Rowe's motion *in limine* therefore should be denied.

II.    FACTUAL BACKGROUND

In or about March 2018, Google began actively searching for candidates for the FSVL Role. (ECF 185 ¶ 297). Shaukat was the hiring manager for the position. (*Id*. ¶ 298). He considered

1

both internal and external candidates. (*Id*. ¶ 102). On May 8, 2018, Brian Stevens suggested to his peer, Shaukat, that he consider Rowe for the FSVL Role. (*Id*. ¶ 302). Shaukat responded that he had discussed the role with Rowe already, but "wasn't blown away *vs. some of the folks I've been talking to in this space*." (*Id*.) (emphasis added). At the time, Shaukat was also considering certain external female candidates for the role, and spoke highly of them. (*Id*. ¶ 301).

On June 13, 2018, Rowe expressed her interest in formally applying for the FSVL Role. (ECF 160-66). Shaukat responded that he was "committing . . . to have you get a fair shot at the Vertical Lead role, with the same process and consideration as external candidates," and informed Rowe that he "personally believe[d] in having 2 or 3 finalists for these roles before putting people through the final decision process, and we're still settling on the externals . . . once that is done, we will kick off the process for you as well (as you of course don't need to go through the initial assessment phases)." (ECF No. 185 ¶ 299).

In or around August 2018, Rowe was interviewed for the FSVL Role by four panelists. (*Id*. ¶ 104). Based on feedback from these panelists, Shaukat concluded that Rowe was not a good fit for the FSVL Role. (*Id*. ¶ 105). Stuart Vardaman, the internal recruiter for the role, observed that "[i]t doesn't sound like [Rowe] is viable" for the FSVL Role. (*Id*. ¶ 105).

On November 7, 2018, Rowe complained to Shaukat and the then-CEO of Google Cloud, Diane Greene, that her alleged under-leveling at hire—which Rowe ascribes to her gender—was adversely affecting her candidacy for the FSVL Role. (*Id*. ¶ 320). As of November 2018, though, Shaukat's two preferred candidates for the FSVL Role were both female. (*Id*. ¶ 106).

On November 16, 2018, Greene announced that she was leaving the company. (*Id*. ¶ 109). Greene's departure caused Shaukat to pause the search for the FSVL Role. (*Id*. ¶ 111). In early 2019, because some of Google's clients were still interested in certain of Google Cloud's products and services for the financial services industry, Shaukat limited the scope of the FSVL Role to

2

those specific initiatives and asked one of his direct reports, Stuart Breslow, to oversee them only on an interim basis. (*Id*. ¶ 113). Because Shaukat intended for Breslow's appointment to be only interim, Breslow was not interviewed for the role. (*Id*. ¶ 329). Breslow held the role until July 2020, when he was separated from Google as part of a Google Cloud reorganization. (*Id*. ¶ 117).

### III.    ARGUMENT

#### A.    Evidence concerning the qualifications of other candidates is relevant to determining Shaukat's motivation for declining to offer the position to Rowe.

Rowe claims that Shaukat should have chosen her instead of Breslow for the FSVL Role, because in her view, Breslow's qualifications were so inferior to hers that she should have rightfully been appointed to the position. (ECF 108 ¶¶ 41 and 43). But this, in itself, is an admission that the qualifications of the candidates for the FSVL Role are directly relevant to this dispute.

These candidates include not just Breslow, but the external female candidates who Shaukat preferred to Rowe. If Shaukat's preferred candidates indeed had superior qualifications, it has a "tendency to make [it] less probable" that Shaukat did not select Rowe either because of her gender or protected conduct. FED. R. EVID. 401. This is "of consequence in determining" whether Shaukat's actions were unlawfully motivated. *Id*. The evidence is therefore relevant and should be included at trial. *See Kunik v. N.Y.C. Dep't of Educ.*, 436 F. Supp. 3d 684, 698 (S.D.N.Y. 2020) (plaintiff failed to raise inference of discrimination where proffered evidence did "not give a full picture of each comparator's qualifications"), *aff'd*, 842 F. App'x 668 (2d Cir. 2021).

Moreover, "[b]eing passed over for a member of the same protected class tends to make an inference of discrimination on the basis of membership in that class implausible." *Baez v. New York*, 56 F. Supp. 3d 456, 468 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 116 (2d Cir. 2015). Here, too, Rowe was "passed over" for the FSVL Role in favor of Shaukat's preferred candidates, both of whom were "member[s] of the same protected class" as Rowe. *Id*. The jury must determine

3

whether this fact "make[s] an inference of discrimination on the basis of membership in that class [plausible or] implausible." *Id*.

The fact that circumstances led Shaukat to ultimately appoint Breslow to the FSVL Role on an interim basis is just as relevant, as it completes the factual picture. And because the parties dispute whether Breslow's appointment was of an interim or permanent nature, (*see* ECF 185 ¶ 113), this is by definition a jury question. Plaintiff's *assumption* that Shaukat intended Breslow's appointment to be permanent displaces the jury's role in making that determination.[1]

### B. Evidence concerning other candidates is relevant to determining whether Shaukat failed to consider Rowe for the position because of her gender.

Rowe claims that from the very beginning of Google's search for the FSVL Role, Shaukat "failed to meaningfully consider [her] for the position." (ECF No. 108 ¶ 35). But in May 2018, shortly after the search had begun, Shaukat expressed that while he had discussed the FSVL Role with Rowe and considered her for it, he "wasn't blown away" by her "vs. some of the folks I've been talking to in this space." (ECF 185 ¶ 302). Shaukat instead preferred a number of external female candidates for the role, and spoke highly of them. (*Id*. ¶ 301). Shaukat eventually narrowed the field to two female candidates, one internal and one external. (*Id*. ¶¶ 102, 106).

This evidence has a "tendency to make [it] more probable" that Shaukat *did* consider Rowe for the FSVL Role, but preferred other female candidates, based on their qualifications. FED. R. EVID. 401. This evidence is "of consequence in determining" whether Shaukat failed to consider

---

[1] None of Plaintiff's cited authorities stand for the proposition that this evidence is irrelevant. Plaintiff's cited authorities uniformly hold that this evidence is germane to the issues a jury must resolve: *Graham v. L.I.R.R.*, 230 F.3d 34, 44 (2d Cir. 2000) (evidence of employer's treatment of other members of the same protected class "serves only to create a question of fact"); *Hampton v. Diageo N. Am., Inc.*, No. 04-346, 2008 WL 350630 (D. Conn. Feb. 7, 2008) (denying summary judgment because employer's failure to comport with stated job requirements supported an inference of discrimination that the jury must resolve); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) ("the employer *should be able to present* some objective evidence as to its probable decision in the absence of an impermissible motive") (emphasis added). Plaintiff also relies on *Agron v. Trs. of Columbia Univ.*, which is entirely inapposite. No. 88-6294, 1997 WL 746456, at *4 (S.D.N.Y. Dec. 2, 1997) (excluding damages expert's testimony regarding university's admission decision and failure to accommodate the plaintiff, because it was "irrelevant to a determination of damages").

4

Rowe for the FSVL Role because of her gender, which is precisely what Rowe alleges. (ECF No. 108 ¶ 35). This evidence is therefore relevant and should be included at trial.

    **C.**    **Evidence concerning other candidates is relevant to determining whether Shaukat concluded that he preferred other candidates to Rowe prior to his awareness of her protected activity.**

A retaliation claim fails where there is no causal connection between the protected activity and the adverse employment action. Naturally, there is no causal connection between protected activity and an adverse employment action where, as here, the former occurs *after* the latter. *See, e.g.*, *Areu v. Fox News Network, LLC*, No. 20-8678, 2021 WL 4124226, at *15 n.7 (S.D.N.Y. Sept. 9, 2021) (dismissing retaliation claim where plaintiff-news show personality did not engage in protected conduct until after her employer began to phase her out of the network's popular shows).

Here, too, the fact that Shaukat expressed a preference for the external female candidates and already had doubts about Rowe's fit for the FSVL role as early as May 2018 has a "tendency to make [it] less probable" that Shaukat's decision not to offer Rowe the position *six months later* in November 2018 was retaliation for her protected conduct. FED. R. EVID. 401. This is "of consequence in determining" whether Google retaliated against Rowe for engaging in protected conduct. *Id*. This evidence is therefore relevant and should be included at trial.

Dated: December 5, 2022                            PAUL HASTINGS LLP
        New York, New York

                                                     Kenneth W. Gage
                                                     Sara B. Tomezsko
                                                     200 Park Avenue
                                                     New York, NY 10166
                                                     (212) 318-6000
                                                     kennethgage@paulhastings.com
                                                     saratomezsko@paulhastings.com

                                                     *Attorneys for Defendant Google LLC*