UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,

                Plaintiff,                Case No. 1:19-cv-08655-LGS

      v.

GOOGLE LLC,

                Defendant.

**OPPOSITION TO MOTION THREE:**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***
**TO EXCLUDE EVIDENCE CONCERNING YOLANDE PIAZZA OR DEFENDANT'S**
**CONSIDERATION OR SELECTION OF CANDIDATES FOR THE VICE PRESIDENT**
**FINANCIAL SERVICES-SALES ROLE**

I.   **INTRODUCTION**

Rowe's motion *in limine* (ECF 242) seeks to exclude evidence that is highly relevant to a retaliation claim first asserted in her Second Amended Complaint, filed on February 12, 2021. There is no basis to exclude this evidence and Rowe's motion should be denied.

II.  **FACTUAL BACKGROUND**

The following was adduced in discovery before Rowe belatedly filed her Second Amended Complaint in February 2021, over Google's objection. Rowe arranged a networking meeting over coffee with Kirsten Kliphouse, Google Cloud's Head of North American Sales in February 2020. (ECF 185 ¶ 130.) In the course of the discussion, Rowe learned that Kliphouse was recruiting for a vice president-level sales role on her team, focused on financial services ("VP Sales Role"). (*Id.* ¶ 126.) Rowe testified that she discussed her background with Kliphouse in that meeting, specifically her "expertise in technology," and "expertise in financial services and [her] industry networking credibility." (Rowe Tr. 344:18–345:8.)

The focus of Kliphouse's search was "primarily [for] an external candidate." (Vardaman Tr. 142:15-20.) When Rowe met with Kliphouse, Google already had a number of candidates under consideration, including an individual "running all of IBM's financial services business globally," and an individual "running all the Accenture financial services practice globally." (*Id.* 141:3-6, 147:9-17.) Kliphouse's preferred candidate at the time, however, was Yolande Piazza. (*Id.* 140:14–141:6.) Piazza was listed as one of *American Banker*'s most powerful women in 2019; she reported directly to Jane Frasier, Citigroup's CEO and was considered a "titan" in the financial services industry. (*Id.* 135:15-18, 146:15-23.) Kliphouse viewed favorably "the scope and scale" of Piazza's work at Citigroup, and "the breadth of the other financial services organizations with whom she had C-level senior executive relationships . . . relative to the other candidates" that Google already "had in play." (146:15–147:8.)

During their meeting, Rowe told Kliphouse that she was interested in the VP Sales Role. (ECF 185 ¶ 126.) Kliphouse told Rowe to contact the recruiter. (*Id*.) She did, and the recruiter, Stuart Vardaman, sent her the job description, which states that the successful candidate would lead a sales team in Kliphouse's organization and manage that team to meet or exceed a sales quota. (*Id*. ¶¶ 127-128.) "Proven success managing a sales/business development organization to meet and exceed revenue goals" was one of the qualifications for the position. (*Id*.) Rowe had never managed a sales team, and her primary responsibilities at Google are not in sales. (*Id*. ¶ 129.)

Vardaman discussed Rowe's interest in the VP Sales Role and reviewed Rowe's information with Kliphouse in February 2020 in "comparison to candidates we had in play at the time." (Vardaman Tr. 144:22–145:14.)[1] Rowe was not interviewed because Kliphouse was "looking for someone at a VP level scope and scale and with actual C level executive contacts," such as Piazza. (*Id*. 137:25–138:3-7.) Vardaman informed Rowe later that month that Google would not be moving forward with her candidacy on this basis. (*Id*.) Google hired Piazza for the VP Sales Role months later. (ECF 185 ¶ 131.)

### III. PLAINTIFF'S BELATED AMENDMENTS TO HER COMPLAINT

In an October 13, 2020 email, Rowe's counsel informally requested documents regarding "those who applied, interviewed, and were ultimately selected" for the VP Sales Role. None of the pending discovery requests sought these documents and the First Amended Complaint did not include claims relating to the VP Sales Role. Google responded that it was happy to discuss during an upcoming meet and confer, but did not consider the information relevant because Rowe had

---

[1] Q:   Prior to the conversation though in reaching the determination that she would not be considered for the role, tell me everything you did to assess what her qualifications for the role were.
A:   Yeah. It was her comparison to candidates we had in play at the time, as I recall.
Q:   And what information did you use to make that comparison?
A:   Review of information with – with Kirsten.
Q:   What information?
A:   As a matter of practice it would have included publicly-available like a LinkedIn profile, for example.

2

testified the week prior that she did not apply for the role, and there was no claim related to this position in Rowe's complaint. Rowe then deposed Vardaman on November 17, 2022, and questioned him extensively about Rowe's interest in the VP Sales Role, Piazza's background, and his conversations with Kliphouse. (ECF 73 at p.1.)

On December 3, 2020, counsel for the parties met and conferred regarding discovery. Rowe stated her intent to seek leave to amend her complaint to add a retaliation claim for Google's alleged failure to consider her for the VP Sales Role. The parties agreed to defer discovery related to the VP Sales Role until the court ruled on Rowe's anticipated motion for leave to amend her complaint, which Rowe filed on December 16, 2020. (ECF 76.) Rowe's motion was granted, over Google's opposition, on February 3, 2021. (ECF 105.) Rowe filed her Second Amended Complaint on February 12, 2021. (ECF 108.)

On November 8, 2022, after this Court ruled on those summary judgment motions (ECF 219), Google requested Rowe confirm "the complete list of individuals whose pay and other information" Rowe would offer into evidence at trial regarding her alleged damages in response to Rowe's request that Google supplement its discovery. The next day, Rowe confirmed the list of individuals and specifically requested information regarding Piazza, among others. Google promptly produced responsive documents on November 10 and 17, 2022, some of which are at issue on her motion *in limine*.

IV.   **ARGUMENT**

    A.   **Evidence concerning other candidates for the VP Sales Role is relevant to Rowe's ability to prove her retaliation claim.**

Under the NYCHRL, an employer "is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives." *Sabater v. Montefiore Med. Ctr.*, No. 17-7135, 2020 WL 1673916, at *5 (S.D.N.Y. Apr. 6, 2020) (citation omitted). It follows, then, that if

Kliphouse preferred Piazza (or other candidates) for the VP Sales Role based on their qualifications, this would have a "tendency to make [it] less probable" that Google declined to offer the VP Sales Role to Rowe because of her protected conduct. FED. R. EVID. 401. This is "of consequence in determining" whether Google's actions had retaliatory motives. *Id*. This evidence is therefore relevant and should be allowed into evidence. *See, e.g.*, *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 529 (S.D.N.Y. 2009) (plaintiff failed to raise inference of retaliatory motive under NYCRL because, *inter alia*, he "failed to prove that his credentials were 'so superior' to those of the persons selected for these three positions").

None of Plaintiff's cited authorities suggests otherwise. In *Gethers v. McDonald*, No. 15-0177, 2017 WL 1628403, at *2 (D. Conn. May 1, 2017), and in *Nanty v. Barrows Co.*, 660 F.2d 1327, 1332 (9th Cir. 1981), *overruled on other grounds by O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996), evidence was excluded because it was not known to the employer at the time the plaintiff was rejected for the position at issue. Here, Kliphouse was well-aware of Piazza's qualifications and those of the other external candidates who already were under consideration at the time she decided not to move forward with Rowe as a candidate. In *Jindal v. N.Y. State Off. of Mental Health*, 728 F. Supp. 1072, 1078 (S.D.N.Y. 1990), upon which Rowe also relies, the court merely held that an employer's "*post hoc* comparison" did not preclude liability. Google did not make any *post hoc* comparisons against Rowe; it made a real-time comparison in February 2020 as Vardaman clearly testified at his deposition. Moreover, the *Jindal* court conceded that evidence of a *post-hoc* comparison "is relevant" to plaintiff's "remedy." *Id*. at 1078 n.7.[2]

---

[2] Rowe's remaining authorities are similarly unavailing. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) ("the employer *should be able to present* some objective evidence as to its probable decision in the absence of an impermissible motive") (emphasis added); *Harris v. Niagara Mohawk Power Corp.*, No. 95-788, 1998 WL 865566, (N.D.N.Y. Dec. 7, 1998) (observing, unremarkably, that regardless of an employee's qualifications, she is entitled to

**B.     Google promptly produced the documents at issue and any delay is harmless.**

The evidence related to Piazza and other candidates for the VP Sales Role pertain to Rowe's retaliation claim, first asserted in her Second Amended Complaint in February 2021. Rowe first followed up on her informal discovery request after the Court ruled on the cross-motions for summary judgment in November 2022, seeking information to compare her compensation to Piazza's. Google promptly responded with its production. As shown above, Rowe was well aware of Piazza and other candidates, from the Vardaman deposition taken on November 17, 2020, and Rowe's own deposition on October 14, 2020.

Even assuming that Google's production was untimely (and it was not), Rowe fails to explain how she has been prejudiced by the production of documents. *See Sirois v. USAA Casualty Ins. Co.*, No. 16-1172, 2019 WL 235326, at *2 (D. Conn. Jan. 16, 2019) (declining to exclude evidence where "the trial date is still nearly five months away"). The authority on which Rowe relies for preclusion of this evidence is not persuasive: *Patterson v. Balsamico* was an extreme case, in which the court properly excluded testimony from four surprise witnesses that the plaintiff identified only ten days before trial. 440 F.3d 104, 118 (2d Cir. 2006). Further, the documents produced are consistent with testimony that Rowe elicited from Vardaman in November 2020, and therefore any delay in their production is harmless.

Dated: December 5, 2022                                       PAUL HASTINGS LLP

                                                                                  /s/ _____
Kenneth W. Gage
Sara B. Tomezsko
200 Park Avenue
New York, NY 10166
(212) 318-6000

---

a discrimination-free hiring process, which Google does not dispute); *Agron v. Trs. of Columbia Univ.*, No. 88-6294, 1997 WL 746456, at *4 (S.D.N.Y. Dec. 2, 1997) (excluding damages expert's testimony regarding defendant's actions because it was "irrelevant to a determination of damages").

5

kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant Google LLC*