UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,                                                        Case No. 1:19-cv-08655-LGS

                Plaintiff,

      v.

GOOGLE LLC,

                Defendant.

**OPPOSITION TO MOTION FOUR:
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING
<u>LEVEL 8 TECHNICAL DIRECTORS</u>**

## I.      INTRODUCTION

Rowe's motion *in limine* (ECF 244) seeks to exclude relevant comparator evidence regarding male Google employees hired into the same job title and job level as Rowe. There is no basis to exclude this evidence and Rowe's motion should be denied.

## II.     FACTUAL BACKGROUND

Google assigns each employee a "job level" at hire. (ECF 141 ¶ 8.) Job levels range from L1 (entry level) to L9 (the highest director-level position before Vice President). (*Id.*) Google determines each employee's level based on an array of factors, including skills, experience, education, and interview performance. (ECF 185 ¶¶ 21-22.) After hire, employees may self-nominate, or be nominated by a supervisor, for a promotion from one level to the next based on the employee's contributions and impact over time. (GOOG-ROWE-00019996).

Job level reflects the scope and complexity of work performed in the role, the expertise and experience necessary for the role, and impact of the role on the organization. (ECF 141 ¶ 8.) Each of these grows as level increases. (*Id.*) The potential to earn greater compensation generally increases from one level to the next, as employees are expected to demonstrate greater independence and mastery of their subject matter, tackle more complex problems, and demonstrate increased impact on the organization. (*Id.*)

Starting in October 2016, Google hired Technical Directors into Google Cloud's Office of the Chief Technology Office ("OCTO"). (ECF 185 ¶¶ 1, 25.) Will Grannis, the hiring manager, made leveling recommendations for each successful candidate based on the candidate's "performance and their interviews and their ability to do the job." (*Id.* ¶ 23; Grannis Tr. 71:17-24.) Technical Directors were hired at L8 and L9. (ECF 185 ¶¶ 24, 25, 31, 34, 37, 49.)

Most of the Technical Directors, including Rowe, were hired as L8s. (*Id.* ¶ 24.) These included, for example, Eric Schenk, who had over 23 years of experience working at technology

companies like Electronic Arts, where he was the CTO of EATech, (*id*. ¶ 54-56); Mark Kropf, who had a technology background and a competing offer for a Managing Director role at a large financial institution, just like Rowe, (*id*. ¶ 57); and Scott Penberthy, who had two advanced degrees in computer science and over 31 years of experience, including as Managing Director, Technology at PwC, and 18 years at IBM. (*Id*. ¶¶ 29-30.)

Five were hired as L9s. (*Id*. ¶¶ 24, 25, 31, 34, 37, 49.) All five had either worked at cloud computing companies, been directly involved in building commercial cloud products, or led efforts to complete successful large-scale cloud migrations. (*Id*. ¶¶ 25-27, 31-39, 49-53.) Rowe had not. (*Id*. ¶ 42-44.) Testimony at trial will demonstrate that, as a result, work performed by L9s is different than the work Rowe performed in her L8 role.

## III.    ARGUMENT

### A.    Evidence concerning male L8 Technical Directors is relevant to Rowe's NYCHRL discrimination claim.

"Under the NYCHRL's simplified inquiry," Rowe must "show that [Google] treated her less well than other similarly situated employees, at least in part for discriminatory reasons," by hiring her at L8 rather than L9. *Leftridge v. N.Y.C. Dep't of Educ.*, No. 17-7027, 2020 WL 1503665, at *12 (S.D.N.Y. Mar. 30, 2020) (quotation marks and citation omitted). But if Google hired male Technical Directors at L8, and the jury could reasonably determine that those candidates were similarly qualified to Rowe, it has a "tendency to make [it] more probable" that Rowe's level was *not* set for discriminatory reasons. FED. R. EVID. 401. This is "of consequence in determining" whether Google discriminated against Rowe because of gender; in other words, whether she was treated "less well" than similarly situated men, or whether she and men with similar qualifications were treated equally and all were hired as L8s for similar, legitimate business reasons. *Id*.

Indeed, a NYCHRL discrimination claim fails where the evidence shows that the employer

treated the plaintiff no differently than similarly situated employees outside of her protected class. In *Livingston v. City of New York*, for example, the court granted summary judgment on a NYCHRL discrimination claim, where the employer treated the plaintiff's request for a religious accommodation no differently than it treated another employee's request for a non-religious accommodation. 563 F. Supp. 3d 201, 242 (S.D.N.Y. 2021). Google therefore is entitled to introduce evidence that it treated Rowe no differently than similarly qualified male Technical Directors it also hired at L8.

Rowe argues that her comparators are L9 employees, because of their allegedly shared "vertical or specialized knowledge." (Pl. Mem. at 3). First, she is factually wrong. Google hired both men and women at L8 because of "vertical or specialized knowledge;" Schenk, for example, was hired because of his experience in the gaming vertical. Second, her argument does not make Google's evidence irrelevant. "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Guzman v. News Corp.*, No. 09-9323, 2013 WL 5807058, at *17 (S.D.N.Y. Oct. 28, 2018) (denying summary judgment on NYCHRL discrimination claim because, *inter alia*, "[t]he issue whether [plaintiff] and Ms. Conklin were similarly situated must be resolved by a jury") (Schofield, J.). Here, a jury could reasonably conclude that Rowe is more similar to L8 Technical Directors and therefore gender was not a factor in the leveling decision.

Rowe's cited authorities do not support exclusion of the L8 Technical Director evidence. Her reliance on the dissent in *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 137 (1st Dep't 2012) (Acosta, J., dissenting) is misplaced. The dissenting justice merely observed that an employer cannot escape liability by treating some employees outside of the plaintiff's protected class worse than the plaintiff, which is not the purpose for which Google intends to introduce this evidence. Similarly, the Fourth Circuit in *E.E.O.C. v. Maryland Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018), held only that there were genuine issues of fact for trial on the Equal Pay Act claim.

Neither court held that evidence regarding lower-paid male employees was irrelevant at trial on either the plaintiff's *prima facie* case or the defendant's affirmative defense.

> **B.** **Evidence concerning male L8 Technical Directors is relevant to Rowe's New York Section 194 claim.**

Under the New York Labor Law, Rowe must prove that she was paid less than men performing equal or substantially similar work (depending upon the time period). Even if she proves that, Google may avoid liability by proving that differences in compensation are based on a permissible reason, "such as education, training, or experience." N.Y. LAB. LAW § 194. Evidence concerning male L8 Technical Directors is relevant to both of these questions.

The jury will have to evaluate the work Rowe performed and determine whether it is more (or less) like work performed by L9 Technical Directors. Evidence of work performed by L8 Technical Directors who were similarly (or lower) paid than Rowe will have a "tendency to make [it] less probable" she was compensated fairly for her work and contributions. FED. R. EVID. 401.

Furthermore, there is no dispute that compensation at Google is at least in part dependent upon level. Google based its leveling decisions for all of the Technical Directors in OCTO on their education, training, and experience. These factors are precisely what a job level is intended to reflect. (ECF No. ¶¶ 21-22.) Google is entitled, then, to present evidence that the male Technical Directors hired at L8 had education, training, and experience more similar to Rowe than to the male Technical Directors hired at L9. This evidence has a "tendency to make [it] more probable" that Google based its leveling decisions on these permissible factors. FED. R. EVID. 401. In both cases, evidence concerning L8 Technical Directors is "of consequence in determining" whether Google violated the New York Labor Law. *Id*.

Rowe's argument that Google "did not consider the leveling decisions of other employees when leveling Ms. Rowe" (Pl. Mem. at 2) does not make sense. By this logic, *no* comparator evidence would be relevant to her New York Labor Law claim, and this approach contradicts the

4

plain language of the statute. Moreover, Rowe is wrong: Grannis testified that he appropriately based his leveling recommendations on his view of the candidates' qualifications and interview performance. (Grannis Tr. 71:17-24.) Indeed, Rowe's hiring packet – the document memorializing her interview feedback and leveling recommendation – expressly identifies two other Technical Directors (Evren Eryurek, an L9, and Scott Penberthy, an L8) as points of comparison, and her interview feedback even describes her interview performance vis-à-vis other candidates. (GOOG-ROWE-00056914.) Rowe's motion fails to account for this contemporaneously recorded evidence.

C.     **Evidence concerning male L8 Technical Directors will not confuse the jury.**

Rowe cites no authority for her argument that L8 comparator evidence will confuse a jury. To the contrary, it is more confusing without it because its exclusion suggests that Google hired only six Technical Directors, five men at L9 and only Rowe at L8. Evidence of the male L8 Technical Directors will provide clarifying context regarding: (1) whether Google treated Rowe differently than L9 Technical Directors because of gender for the NYCHRL claim; (2) whether Rowe performed equal work to L8 or L9 Technical Directors in New York; and (3) whether Rowe's education, training, and experience are more similar to L8 or L9 Technical Directors.

Rowe's sole cited authority, *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 363 (1995), deals with after-acquired evidence. The evidence at issue is not after-acquired, but reflects decisions contemporaneously made and recorded when Google determined Rowe's level and pay.

Dated: December 5, 2022
     New York, New York

PAUL HASTINGS LLP

_____
Kenneth W. Gage
Sara B. Tomezsko
200 Park Avenue
New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com
saratomezsko@paulhastings.com

*Attorneys for Defendant Google LLC*

5