

1(212) 318-6046
kennethgage@paulhastings.com

January 6, 2023

**VIA ECF**
Hon. Lorna G. Schofield
U.S. District Court, S.D.N.Y.

Re:   *Ulku Rowe v. Google LLC*, Case No. 1:19-cv-08655-LGS

Dear Judge Schofield:

We represent Google LLC ("Google") in this matter. We write in response to Plaintiff Ulku Rowe's December 23, 2022 letter-motion *in limine*, (ECF No. 289), which seeks to exclude from trial the testimony of David Rensin. Rowe's letter-motion should be denied.

Rensin's testimony is directly relevant because it will assist the jury in deciding *why* Google hired Rowe as a Level 8 ("L8") Technical Director, instead of a Level 9 ("L9") Technical Director. She alleges that it was because of her gender, in violation of the New York City Human Rights Law. Google claims (and the evidence will show) that it was because of a good faith assessment of her prior experience and other qualifications against the expectations for an L8 Technical Director. Rowe's prior experience and other qualifications did not suggest to Google that she could perform against the expectations for an L9 Technical Director. The decision had nothing to do with her gender.

Both parties have relied on the Technical Solutions Consultant job ladder (the "TSC Job Ladder") throughout this litigation to argue their respective positions. Google has identified the TSC Job Ladder as a trial exhibit without objection. Rensin is one of two individuals at Google responsible for approving the document's content, which is specifically noted on its face. Rowe has known this since Google produced the TSC Job Ladder in January 2020, and identified Rensin as someone with knowledge in its initial disclosures. Moreover, Rensin interviewed Rowe and seven of the male candidates eventually hired as L8 and L9 Technical Directors in Google Cloud's Office of the Chief Technology Officer ("OCTO"), including Rowe's alleged comparators. Rensin's testimony regarding each of those candidates' skills, qualifications, and ability to perform against the expectations of the role at each level—set forth in a job ladder that he approved—is directly relevant to this dispute. Moreover, Rowe's statement that "[n]one of [the decision-makers] stated that they spoke to Mr. Rensin . . . in making their leveling determination" is misleading and unsupported by her citations to the record. (ECF 289 at 2.)[1] She did not depose half of the decision-makers listed in her letter, and she never asked those she did depose any questions about Mr. Rensin, whatsoever.

Rowe's argument that Rensin's testimony is irrelevant or cumulative fails to persuade, and she does not credibly suggest that it will confuse the jury. To the contrary, Rensin's testimony will help the jury understand the legitimate business reasons why Google hired Rowe as an L8 instead of an L9.

**I.   Factual Background**

On January 7, 2022, Google's written responses to the Initial Discovery Protocols for Employment Cases Alleging Adverse Action identified Rensin as someone with knowledge of the facts concerning the parties'

---

[1] *See* Grannis Tr. 68:20-25 ("Q: So the question is, what was the basis for your recommendation that she be hired as a Level 8? A: After reviewing this packet and again trying to, you know, work backwards in time, a couple of things stand out."); *id.* 71:17-24 ("Q: With respect to the hiring of the techni – technical directors in late 2016/early 2017, were you considering any of the candidates against each other with respect to levelling recommendations? A: No, it was – I was comparing each individual to their performance and their interviews and their ability to do the job.").



claims or defenses. Google produced the TSC Job Ladder on January 7, 2020. (GOOG-ROWE-00017717.) It includes the L8 Technical Director position in OCTO, and sets forth Google's expectations for the position into which it hired Rowe and the other L8 Technical Directors, including the knowledge and experience required for the role, its complexity and scope, and its organizational impact. (*Id*.) Google has designated this job ladder among its proposed trial exhibits. (ECF 285 at D63.) Rowe has not objected to its introduction at trial, on grounds of relevance, jury confusion, or otherwise. (*Id*.) The TSC Job Ladder lists Rensin as one of two individuals required to approve its content. (*Id*.) Google designated Rensin as a trial witness, specifically to testify about this job ladder. (ECF 285 at 10.)

The record also reflects that Rensin interviewed Rowe and seven of the individuals hired as L8 and L9 Technical Directors within one year of Rowe. (GOOG-ROWE-00018039.R; 18067.R; 18179.R; 18253.R; 18329.R; 18409.R; and 19109.R.) The interview feedback captured in Google's gHire application indicates that Rensin interviewed and rated these candidates as "L8+ Hires, Level 8-9." (GOOG-ROWE-19110.R.) Will Grannis, the hiring manager for the Technical Director position, testified that performance in interviews was a key consideration when recommending a level for the candidates, including Rowe. (Grannis Tr. 59:20-60:12; 65:16-20; 71:17-24.)

Both parties have repeatedly relied on the TSC Job Ladder to argue their respective positions. Rowe cited it during discovery to argue for production of additional job ladders no longer at issue, stating that "[j]ob ladders show, within a position, the progression to higher levels of pay, skill, responsibilities or authority…" (ECF 52 at 4.) She relied on it throughout her summary judgment briefing to argue that the TSC Job Ladder fails to identify a functional difference between an L8 and L9 Technical Director in OCTO. (ECF 153 at 5; *see also* ECF 206 at 2-3 (arguing that "the undisputed facts show that there was no material difference between the Technical Director role at Levels 8 and 9," and citing to the job ladder). Whether she makes these arguments at trial remains to be seen, but Google certainly should not be precluded from offering Rensin's testimony about the TSC Job Ladder and what it represents.

**II.     Rensin's testimony is relevant to Rowe's NYCHRL and NYLL § 194 claims.**

This Court has identified two of the core questions the jury must decide: (1) whether gender played a role in the decision to hire Rowe at L8 in violation of the NYCHRL, and (2) whether Rowe's alleged under-leveling contributed to an unlawful and unjustified pay disparity between Rowe and male employees performing equal work in violation of NYLL § 194. (Opinion and Order at ECF No. 219.) Rowe claims that, based on her qualifications, Google should have hired her at L9. (*Id*.) Google claims that it hired her at L8 because of a good faith assessment of her qualifications against the expectations for an L8 Technical Director (*not because of her gender*). (*Id*.) The qualifications for, and Google's expectations of, an L8 versus an L9 Technical Director are central to resolving Rowe's NYCHRL claims. *See* Fed. R. Evid. 401.

The TSC Job Ladder is directly relevant to this issue, because it reflects the increasing expectations at various levels of the Technical Director position. The jury should hear about the creation and approval of this document. Rensin is the only trial witness either party has designated to testify about it. (ECF 285 at 10.) As one of two individuals whose approval was required to finalize the job ladder, Rensin is perfectly suited for the designation. He will explain to the jury the differences between the expectations for the L8 and L9 roles—the very distinction Rowe challenges in this lawsuit.

Rensin's testimony about the TSC Job Ladder is also relevant to Rowe's claim that she and Nic Harteau, an L9 Technical Director in New York, were performing equal work. (ECF 153 at 11-14.) Rowe has conceded that job level refers to "the scope and complexity within a role and is defined by the knowledge, skills, and abilities that a Googler needs to perform well." (ECF 154, Pl.'s Resp. to ¶ 12.) The jury should hear directly from Rensin what knowledge, skills, and abilities are required at L8 versus L9, and how the scope and complexity of the role changes as one progresses in level. This information will provide critical



context to the jury, who must evaluate whether Rowe has proved by a preponderance of the evidence that she and Harteau performed "equal work on a job the performance of which requires equal skill, effort, and responsibility, and which is performed under similar working conditions." N.Y. Lab. L. § 194(1)(a).

Google has not designated Rensin as the leveling "decision-maker," as Rowe's letter suggests. The record is clear that no one person "owns" the leveling decision for a candidate. Rather, the leveling decisions at issue (for Rowe and other Technical Directors hired into OCTO) were calibrated assessments relying on input from several interviewers, and based on many factors, including a candidate's performance in the interview process against the then-existing expectations for L8 and L9 directors at Google. (Grannis Tr. 59:20-60:12; 65:16-20; 71:17-24; Burdis Tr., 53:23–54:9.) Rowe conceded at summary judgment that interview performance informs a leveling recommendation. (ECF 154, Pl.'s Resp. to ¶ 22.) Therefore, the fact that Rensin was not a "final" decision maker as to Rowe's level is irrelevant.[2]

Rensin was an owner of the TSC Job Ladder. He interviewed not only Rowe but also many of Rowe's alleged male comparators at L8 and L9. His feedback was indisputably considered in the challenged leveling determination. His assessment of what differentiates an L9 from an L8 is therefore uniquely relevant.

### III. Rensin's testimony will not confuse the jury or result in prejudice to Rowe.

Rowe herself has put the difference in expectations for the L8 and L9 directors at issue. Rensin's testimony about this topic will not confuse the jury. Rather, it will *inform* the jury on one of the central disputes.

The cases she cites for excluding evidence upon which decision-makers did not rely at the time of the decision are inapposite. Rensin's testimony about the then-existing differences between the expectations of L8 and L9 directors will provide critical context for the jury to understand how the experience and other qualifications of some hires fit then-existing expectations for level 9, and others (including Rowe) fit then-existing expectations for level 8. Rensin can explain to lay-jurors the written feedback he provided for Rowe and other hires at the time they were interviewed, which the hiring manager testified he considered when recommending a level during the hiring process.

No doubt, Rensin's testimony will support Google's defense that it did not hire Rowe as an L8 Technical Director because of her sex. To that extent, his testimony will prejudice her ability to succeed at trial. Rowe has not, however, articulated how Rensin's testimony will result in "unfair prejudice," which is the standard under Rule 403 of the Federal Rules of Evidence. Rowe has known about Rensin's involvement since the day she interviewed with him in 2016, and Google has been forthcoming about his role in the process since the start of discovery. She has repeatedly conceded the relevance of the TSC Job Ladder in this case, and cannot retreat from this position now solely to gain a tactical advantage at trial.

Respectfully submitted,

Kenneth W. Gage
PAUL HASTINGS LLP

---

[2] Rowe misstates Google's position with respect to the "decision-makers" for the leveling determination. (ECF 289 at 2.) She cites Google's response to her statement that "Google is unable to identify who made the leveling decision with respect to the Technical Directors, as Mr. Grannis, Mr. Stevens, Ms. Burdis, and Diane Greene . . . all deny direct responsibility for the decision." (ECF 153 at 5.) Google did not "admit" anything; instead, it explained that Rowe's list of alleged decision-makers excluded two Senior Vice Presidents that she herself alleged approved the leveling recommendations for Technical Directors in OCTO. (ECF 197 at 11 (citing ECF 186 at ¶ 183).)