**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ULKU ROWE,

               Plaintiff,

    v.

GOOGLE LLC,

               Defendant.

Civ. Action No. 19-cv-08655(JRR)(JXW)

**PLAINTIFF'S PRE-TRIAL MEMORANDUM OF LAW**

I.      **PRELIMINARY STATEMENT**

Pursuant to Rule 7.B.ii. of Your Honor's Individual Rules, Plaintiff respectfully submits this pretrial memorandum of law to provide the Court with the legal standards for the claims being tried, important evidentiary considerations, and related case law. In this case, Plaintiff Ulku Rowe alleges that Defendant Google violated the New York Equal Pay Law, N.Y. Lab. L. § 194 ("NY EPL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL") by: a) hiring her at a lower level and paying her less than her male peers; b) denying her additional earned compensation; c) denying her a promotion for which she was qualified, and (d) demoting her and denying her a second another promotion for which she was qualified. The Court's decisions regarding evidence and jury instructions should follow the substantive law, as set forth below.

II.     **LEGAL CLAIMS AND STANDARDS**

Plaintiff brings claims for sex-based pay discrimination under the NY EPL, gender discrimination under the NYCHRL, and retaliation under both the NY EPL and the NYCHRL.

A.      **Pay Discrimination under the NY EPL.**

To prevail under the NY EPL, Plaintiff must prove by a preponderance of the evidence that Google failed to pay her equally to a man in the same geographic area for (a) equal work on job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions. N.Y. Lab. L. § 194(1). The roles need not be identical, but rather "'substantially equal' in skill, effort, and responsibility." *Lavin-Mceleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001), quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995).

The jury in this matter must determine whether the roles performed by Plaintiff and Nicholas Harteau and Stuart Breslow are "substantially equivalent" and whether Google paid Plaintiff less for this work. *See Rowe v. Google LLC,* No. 19 Civ. 8655, 2022 U.S. Dist. LEXIS 173540, *9-11 (S.D.N.Y. Sept. 26, 2022). Under the applicable standard of the NY EPL, Ms. Rowe "need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility." *Lavin-McEleney*, 239 F.3d at 480 (internal quotations omitted). It is the jury's role to "decide if there is a significant enough difference in responsibility to make the jobs unequal." *Id.* (internal citation omitted). In doing so, the jury must make "a comparison of the jobs in question" and not "a comparison of the individuals who hold the jobs." *William v. Morrison & Foerster LLP*, No. 18 Civ. 2542, 2021 U.S. Dist. LEXIS 141869, *49 (N.D. Cal. Mar. 8, 2021) (interpreting the NY EPL). The jury must further consider "actual job performance requirements, rather than job classifications or titles." *Id.* (internal citations omitted). Whether Mr. Harteau or Mr. Breslow "had more experience, worked in in-demand specialties, or significant books of business" is not relevant with respect to liability, it only pertains to Defendant's "affirmative defense – not to whether the work they performed in their roles was substantially the same." *Id.* at 51. The jury need not find that Google intended to pay her less on the basis of her gender, or even that her gender played any role in the decision to pay her less. *Lavin-McEleney,*239 F.3d at 483.

Where a plaintiff has satisfactorily established her prima facie case, the burden shifts to the employer to show that the payment was made pursuant to a differential based on: (i) "a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (a bona fide factor other than sex, such as education, training, or experience." N.Y. Lab. L. § 194 (effective Oct. 8, 2019). Such factor:

shall not be based upon or derived from a differential in compensation based on status within one or more protected class or classes and (B) shall be job-related with respect to the position in question and shall be consistent with business necessity. Such exception under this paragraph shall not apply when the employee demonstrates (1) that an employer uses a particular employment practice that causes a disparate impact on the basis of status within one or more protected class or classes, (2) that an alternative employment practice exists that would serve the same business purpose and not produce such differential, and (3) that the employer has refused to adopt such alternative practice.

*Id.* "The burden of establishing one of the four affirmative defenses is 'a heavy one,' because the statutory exemptions are 'narrowly construed.'" *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d at 143 (2d Cir. 2000) (citations omitted). Defendant's burden requires it to prove "not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) (emphasis in original). In other words, the defense cannot be an after-the-fact creation, but rather must have been the reason at the time the decision was made.

In evaluating Google's proffered affirmative defense, the jury must determine whether Google paid Ms. Rowe less based on a bona fide factor other than gender, and that the factor was both job-related and justified by business necessity. N.Y. Labor Law § 194(1). To meet the burden of establishing business necessity, Google must prove by a preponderance of credible evidence that the factor considered reflects a genuine business need and has a demonstrable relationship to the job in question or the successful performance of that job. *Id.* Further, Google's affirmative defense must explain why its hiring rationale explains the year over year pay differential. *See Knight v. G.W. Plastics, Inc.,* 903 F. Supp. 674, 678 (D. Vt. 1995) (affirmative defense must explain "why salaries established [at hire], which may or may not have been discriminatorily established in the first instance, justify continued wage disparity once the plaintiff allegedly began her duties."). The jury also should consider whether Defendant has had

4

"differing and inconsistent explanations." *See Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir. 1999).

   **B.      Gender Discrimination under the NYCHRL.**

   The NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). As an initial matter, "all aspects of the [NYC]HRL must be interpreted so as to accomplish the uniquely broad and remedial purposes of the law." *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 35 (1st Dep't 2011) (citations omitted). The NYCHRL's "uniquely broad and remedial" purposes "go beyond those of counterpart state or federal civil rights laws." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009*)*. The NYCHRL is to be construed "with the aim of making it the most progressive in the nation." *Poolt v. Brooks*, No. 09 Civ. 110024, 38 Misc. 3d 1216(A), at *7 (N.Y. Sup. Ct. Jan. 18, 2013).

   To prevail on a gender discrimination claim under the NYCHRL, a plaintiff need only show "by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). *"*Indeed, the challenged conduct need not even be tangible (like hiring or firing)." *Id.* at 110 (internal quotation marks omitted). If the plaintiff proves by a preponderance of the evidence that she has been treated less well at least in part because of her gender – in other words, that employer has discrimination – the jury may only find for the defendant if it finds that "unlawful discrimination   . . . play[ed] 'no role' in an employment decision." *Id.*

In determining whether Plaintiff has been treated "less well," at least in part, on the basis of her gender, *see Mihalik*, 715 F.3d at 102, the jury can consider Google's treatment of Plaintiff, even if it is not tangible, like hiring, firing, or denial of promotion. *Id.* at 114. Thus, while evidence of discriminatory intent could include Google's under-leveling her at hire as compared to men, paying her less than similarly situated male employees, and denying her promotions, it could also include:

- her exclusion her from staff meetings, email distribution lists, and strategy setting meetings. *See Albunio v. City of New York,* 16 N.Y.3d 472, 476 (2011) (being "shunned and excluded from meetings" by a supervisor constituted an adverse employment action);

- the fact that Ms. Rowe was the only woman out of 17 Level 8 and 9 Technical Directors. *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 77 (2d Cir. 2016) (evidence of the dearth of female hires is relevant evidence of discriminatory motive); *see also Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, 2003 U.S. Dist. LEXIS 11180, at *6 (S.D.N.Y. July 2, 2003) (evidence of the lack of women in management positions supported inference of discrimination);

- whether the language or conduct of Google managers reveals a bias against women or preference for men. *Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 670 (1st Dep't 2020) ("a single comment being made in circumstances where that comment would, for example, signal views about the role of women in the workplace" constitute actionable harm under the City Human Rights Law.");

- whether Google's explanations for its actions were credible or whether they are contradicted by fact or changed over time. *See Collins v. Cohen Pontani Lieberman & Pavane*, No. 04 Civ. 8983, 2008 U.S. Dist. LEXIS 58047, at *51-54 (S.D.N.Y. July 31, 2008); *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 380 (S.D.N.Y. 2014).

If the jury finds that the evidence supports that Google treated her less well, at least in part because she was a woman, Google is liable unless "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Mihalik*, 715 F. 3d at 111.

C.      **Retaliation under the NYCHRL and NY EPL.**

Under the NYCHRL, it is "an unlawful discriminatory practice . . . to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). To prevail on retaliation claims under the NYCHRL, "a plaintiff must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" *Mihalik*, 715 F.3d at 112 (internal citations omitted). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *William*, 2021 WL 3012739, at *12. Thus, the jury may conclude that "based on the close temporal proximity – [] there was a connection between Rowe's protected activities, the decision not to hire her for the FSVL Role, and the decision to not promote Rowe to interim head of financial services." *Rowe*, 2022 U.S. Dist. LEXIS 173540 at *23. Temporal proximity is not the only means of establishing a retaliation

7

claim; direct evidence of retaliatory bias also may support a retaliation claim, *see, e.g., White v. Dep't of Corr. Servs.,* 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011), and may evidence that the defendant's stated reason for the action is pretextual. *Id.* at 391.

Retaliation claims under the NY EPL are "analyzed under a similar framework as her NYCHRL retaliation claim" *Rowe*, 2022 U.S. Dist. LEXIS 173540 at *21 n.4; quoting *Copantitla v. Fiskardo Estiatorio Inc.,* 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011) ("To establish a prima facie case under [the NYLL], the plaintiff must adequately plead that while employed by the defendant, she made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." (internal quotation marks omitted)).  Here, the task of the jury is to determine first, whether "Shaukat denied her the interim head of financial services role and selected a less-qualified man" and "remov[ed] her core responsibilities related to the financial services industry" in retaliation for her protected complaints. 2022 U.S. Dist. LEXIS 173540, at *21-22. Second, the jury must determine whether "there was a causal connection between Rowe's filing of this action and Google's refusal to consider her for the Vice President -- Financial Services Industry position." *Id.* at *24.

In considering Plaintiff's retaliation claims, the jury must determine whether Ms. Rowe had "a good-faith, reasonable belief that she was opposing an unlawful employment practice," *LeRoy v. Delta Air Lines*, No. 21 Civ. 267, 2022 U.S. App. LEXIS 29352, *2 (2d Cir. Oct. 21, 2022), and that, "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik,* 715 F.3d at 112. When considering whether Plaintiff made a protected complaint, "there are no magic words that must be used when

complaining" about the alleged discrimination to satisfy this requirement." *Chen-Oster v. Goldman, Sachs & Co.,* 293 F.R.D. 557, 563 (S.D.N.Y. 2013).

Here, the jury must determine whether retaliation played any role in Google's decision to end her consideration for the head of financial services position, denying her the head of financial services position, removing her core responsibilities related to the financial services industry, and refusing to consider her for the position of Vice President of Financial Services, Sales in 2020. *See Mihalik,* 715 F.3d at 117. In making this determination, the jury may consider a number of factors, including "evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely in time by the adverse action or by other circumstantial evidence." *White*, 814 F.Supp. 2d at 391. The jury can also consider whether "defendants' proffered reasons for the adverse actions were merely pretextual." *Id.*

## III.   CONCLUSION

Plaintiff respectfully submits the above memorandum and hopes it serves as a useful supplement to the parties' past briefing and in the Court's consideration of the pending Proposed Jury Charge.

Dated: July 14, 2023
      New York, NY

                                        */s/ Cara E. Greene*
                                        Cara E. Greene
                                        Gregory S. Chiarello
                                        Shira Z. Gelfand
                                        OUTTEN & GOLDEN LLP
                                        685 Third Avenue, 25th Floor
                                        New York, NY 10017