

Advocates for Workplace Fairness

October 12, 2023

**Via ECF:**
The Honorable Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Ulku Rowe v. Google LLC*, Case No. 19-cv-08655

Dear Judge Rearden:

      We represent Plaintiff Ulku Rowe in the above-referenced matter. Plaintiff respectfully requests that the Court deny Defendant's attempts to exclude the following relevant and probative evidence with respect to the leveling and treatment of Jennifer Bennett, the only other woman considered for or hired in the role of Technical Director, OCTO:

    Witnesses
1. Ulku Rowe (P)
2. Will Grannis (P
3. Jennifer Burdis (P)
4. Nic Harteau (P)
5. Ben Wilson (P)
6. Brian Stevens (D)
7. Melissa Lawrence (D)
8. Patricia Florissi (D)

    Exhibits
1. P8
2. P9
3. P10
4. P12
5. P17
6. P57
7. P87
8. P152
9. D88
10. D90

**New York**  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
**San Francisco**  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
**Washington DC**  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

Hon. Jennifer H. Rearden
October 12, 2023
Page 2

### I. Evidence of Ms. Bennett's Leveling is Admissible to Show Discriminatory Bias

Evidence of the discriminatory treatment of other women who were similarly situated to Plaintiff is relevant and admissible to showing bias. Will Grannis hired Ms. Bennett and Ms. Rowe as the only two female hires in OCTO's initial hiring cohort. Although Google disputes Ms. Rowe's definition of the initial hiring group, expanding the hiring timeframe does not help Google's position – it did not hire another Director level female Technical Director in OCTO until 2020. Like Ms. Rowe, Ms. Bennet had concerns about her compensation (*see* Exhibit P17). Even more critically, Ms. Bennett was interviewed for a Level 8 Technical Director position, but Mr. Grannis down-leveled her to Level 7 at CTO Brian Steven's direction, even though she was a "very experienced leader with strong interview results." (*See* Plaintiff's Ex. 152.) However, other L8 and L9 Technical Directors, including Mr. Wilson and Mr. Harteau, understood her to be one of their peers at Level 8 or 9, and Ms. Lawrence included her in the Technical Director group to whom she sent documents to prepare for performance reviews. (Plaintiff's Exhibit 008.)

"It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind" the adverse action against the member of group. *Zubulake v. UBS Warburg*, LLC, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005) (citing *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995), and *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 194, n.8. ("evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination."); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973) ("Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his

prior term of employment; petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice with respect to minority employment.")

Allegations of discrimination against "other members of the protected class 'provide relevant background evidence' by shedding light on Defendant's motivation and thus bolster [plaintiff's] claim that she was treated adversely due to her [protected characteristic]." *Miller v. Dep't of Educ. of N.Y.*, No. 17 Civ. 594, 2018 U.S. Dist. LEXIS 48472, at *8-9 (S.D.N.Y. Mar. 23, 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015)). The fact that Plaintiff and Ms. Bennett share "the same supervisor further bolsters the inference of a causal nexus" between the protected class and their adverse treatment. *Id.*; *see also Schneider v. Regency Heights of Windham, LLC*, No. 14 Civ. 217, 2016 U.S. Dist. LEXIS 173410, 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016) ("There are a number of factors that courts should consider when determining the admissibility of 'me too' evidence [of discrimination], including . . . whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct.") (quoting *Murray v. Miron*, No. 11 Civ. 629, 2015 U.S. Dist. LEXIS 135311, 2015 WL 5840170, at *4 (D. Conn. Oct. 5, 2015)). Plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for [the adverse action] were in fact a coverup for a . . . discriminatory decision." *McDonnell Douglas Corp.*, 411 U.S. at 805.

The probative value of this relevant evidence outweighs any prejudice Defendant may assert, and it is Defendant's burden to establish that there is undue prejudice that weighs in favor of its exclusion under FRE 403. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." *See Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000).

## II. Defendant is Not Prejudiced by the Inclusion of P152 on Plaintiff's Exhibit List

In light of the above background, Exhibit P152 (Ms. Bennett's gHire packet) is plainly relevant. Plaintiff's addition of Exhibit 152 on October 6, 2022, has not prejudiced Defendant. For one, Defendant has always known about Ms. Bennett's hiring packet; it produced it in discovery. It also has had ample time to adjust for the introduction of the exhibit since this trial started. The Second Circuit has cautioned that a pretrial order is not a legal "'strait-jacket' binding the parties and court to an unwavering course at trial.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir. 2003) (quoting *Napolitano v. Compania Sud Americana de Vapores*, 421 F.2d 382, 386 (2d Cir. 1970)). "District courts have considerable discretion in the management of trials, and this necessarily 'includes a certain amount of latitude to deviate from the terms of [a] pretrial order.'" *Id.* (quoting *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994)).

## III. Defendant's Claim that Google's Treatment of other Woman is a "New Theory" is Unsupported

Defendant has claimed that the introduction of evidence of Ms. Bennett's leveling and treatment evidence is a "new theory." Evidence related to Jennifer Bennett is not a new theory of liability; rather, it is evidence to which Plaintiff will point in establishing discriminatory bias.[1] While Plaintiff is not required to identify every possible piece of evidence at summary judgment, in this case, Plaintiff introduced evidence and raised arguments alerting Google to the relevance of Jennifer Bennett's treatment to Plaintiff's discrimination claims. For example, Plaintiff argued, "In the context of compensation negotiations, Rowe's supervisor, William Grannis,

---

[1] Moreover, courts have determined that there is "no case law prohibiting a party in a civil case from changing its theory after the evidence has been presented." *Crockett v. City of N.Y.*, No. 11 Civ. 4378, 2017 U.S. Dist. LEXIS 62049, at *55 (E.D.N.Y. Apr. 21, 2017).

reported to Melissa Lawrence that 'every woman who came to Google/octo (Jen, Ulku)' felt they had to 'fight[] for fair comp' and felt 'they didn't fight hard enough for themselves' for equal compensation," (ECF No. 162, p. 24), and cited to what Plaintiff subsequently marked as Plaintiff's Exhibit 17. (*See* Plf's Opp. 56.1 at ¶ 195 (ECF No. 163)). Defendant cannot credibly claim surprise that Ms. Rowe seeks to examine Google's treatment of the only other woman in her hiring cohort as compared to Google's treatment of men within that same cohort.

In addition, Defendant had all of Plaintiff's proposed evidence well in advance of trial (most of which Defendant produced in discovery, including exhibit 152). *See*, *e.g.*, *Bowman v. Moore*, No. 17 Civ. 0255, 2020 U.S. Dist. LEXIS 192585, at *11-12 (N.D. Ala. Sep. 30, 2020) (Court admitted evidence supporting a purported new theory where the party's "contentions regarding purported new theories ignore the evidence he obtained from the depositions of Defendants and their witnesses" which demonstrate that he "had ample notice before trial and during the early stages of the trial to undermine" the purported new theories).

\*   \*   \*

Accordingly, Plaintiff respectfully requests that she be permitted to admit evidence of Ms. Bennett's leveling and treatment.

Respectfully submitted,

/s/ Cara E. Greene
Cara E. Greene
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
*Counsel for the Plaintiff*

c: All Parties via ECF