# Exhibit 2

1   Q.  Hiring packet.  Okay.  And --
2           MS. TOMEZSKO:  Oh, may I move for the admission of
3   this document as well, your Honor, D-79.
4           THE COURT:  Plaintiff?
5           MS. GREENE:  No objections.
6           THE COURT:  Admitted into evidence.
7           (Defendant's Exhibit 79 received in evidence)
8           MS. TOMEZSKO:  Thank you.
9   Q.  Mr. Vardaman, did you discuss with Kirsten Kliphouse the
10  candidates for the vice president financial services sales
11  position?
12  A.  In discussing, my job was to help her understand which
13  candidates were in process, walk through backgrounds at a high
14  level, and ultimately defer to who she'd like to move forward
15  in the process.
16          MS. TOMEZSKO:  We could take this document down.  And
17  I'd like to publish a document only to the witness, please.
18  Defendant's 77.
19  Q.  Mr. Vardaman, do you see the document here?
20  A.  I do.
21  Q.  Without reading from the document, do you recognize it?
22  A.  Well, it looks like a status report.
23  Q.  Did you create these?
24  A.  Yes.
25  Q.  For what purpose did you create this document?

1  A.   To keep track of the searches -- of the search and its --
2  and its updates on an ongoing basis.
3  Q.   Did you create them in preparation for any meetings or
4  discussions with Ms. Kliphouse about the position?
5  A.   Typically, yes.  The way that it manifested for
6  Ms. Kliphouse in particular is our meetings, she would
7  sometimes just call me.  She's like, Hey, I'll call you this
8  week.  And so it was on me to, on a daily basis, if I had
9  updated information, to kind of keep this running so that if I
10 got a call from her, I could provide her the most relevant
11 information, updated information.
12 Q.   Does this document reflect the notes that you made in
13 preparation for those meetings with Ms. Kliphouse?
14 A.   Yes, these would be the high-level distilled notes.
15 Q.   And does it at all reflect the -- any of your notes of the
16 conversations that you actually had with Ms. Kliphouse when you
17 would update her on the role?
18 A.   I don't -- I don't see it here.
19 Q.   Would it help if we should scroll through?
20 A.   Possibly.
21          MS. TOMEZSKO:  Can you go to the next page.
22 Q.   In practice, would these documents reflect the discussion
23 of the -- about the role that you had with Ms. Kliphouse?
24          MS. GREENE:  Objection.
25          THE COURT:  Can you restate that please.

1              MS. TOMEZSKO:  Sure.
2     Q.  Was it your practice to record in these types of documents
3     the substance of your conversations with Ms. Kliphouse during
4     those discussions?
5     A.  I certainly could have.  I do not see the separate column
6     where I actually have those notes listed out for -- during the
7     meeting itself.
8     Q.  If I understand you correctly, this is a document created
9     specifically in preparation for your discussions with
10    Ms. Kliphouse, and it is your notes and impressions that you
11    see reflected here?
12    A.  I think that's accurate, yes, ma'am.
13    Q.  And if you could place in time when these notes were
14    created in relation to your discussions with Ms. Kliphouse.
15    A.  Can I read from it now?
16             THE COURT:  Not out loud.
17    Q.  Not out loud.
18    A.  I tried to provide the date that I had last updated it.
19    And with the intention that I could receive a phone call from
20    Kirsten either at our standing time or not on an *ad hoc* basis.
21             MS. TOMEZSKO:  We could take that document down.  I
22    just want to ask some general questions, if we may.
23    Q.  Did you, in fact, discuss Ms. Rowe with Ms. Kliphouse
24    during any of your meetings with her concerning the VP
25    financial services sales role?