**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ULKU ROWE, | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-08655 (JHR) |
| GOOGLE LLC, | **<u>Oral Argument Requested</u>** |
| Defendant. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS</u>

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    OVERVIEW OF THE LITIGATION ............................................................. 2

III.   THE COURT SHOULD AWARD PLAINTIFF'S REQUEST FOR FEES ...................... 7

    A.    Plaintiff Is the Prevailing Party.............................................................. 9

    B.    The Court Should Award Plaintiff's Counsel's Lodestar .................................... 10

        i.    Plaintiff's Counsel's hours are reasonable................................................. 11

        ii.   Plaintiff's Counsel is entitled to all hours expended ................................ 14

    C.    The Court Should Award Plaintiff's Counsel's Its Customary Hourly Rates. ..... 16

        i.    The NYCHRL requires courts to award the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when factoring hourly rates into a fee award..................... 17

        ii.   The Johnson Factors also support awarding Plaintiff's Counsel its full lodestar ...................................................................................... 19

            1.    The time and labor required, the time limitations imposed by the circumstances, and the contingent nature of the case support awarding Plaintiff's Counsel's rates. (Factors 1, 6 and 7) ................................................................................... 19

            2.    Ms. Rowe required skilled and experienced counsel to negotiate and litigate her claims (Factors 2, 3, 9, and 11) ........... 20

            3.    Courts have awarded attorneys of comparable skill and experience litigating comparable cases comparable rates ........... 21

            4.    The amount involved and the results obtained support Plaintiff's Counsel's rates. ......................................................... 22

III.   THE COURT SHOULD AWARD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF REASONABLE COSTS........................................................................... 23

IV.   CONCLUSION................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                         **PAGE(S)**

*Abrahamson v. Bd. of Educ.*,
    374 F.3d 66 (2d Cir. 2014)..................................................................................................9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
    522 F.3d 182 (2d Cir. 2007)............................................................................................19

*Chen-Oster v. Goldman Sachs, Inc.*,
    No. 10 Civ. 6950 (S.D.N.Y. Nov. 7, 2023) ...................................................................21

*Cit Bank, N.A. v. Zisman*,
    No. 17 Civ. 2126, 2023 U.S. Dist. LEXIS 50802 (E.D.N.Y. Mar. 23, 2023) .........................13

*Cooper v. Upstairs, Downstairs of New York, Inc.*,
    No. 18 Civ. 6426, 2021 U.S. Dist. LEXIS 59679 (S.D.N.Y. Mar. 29, 2021)...........................9

*Echevarria v. Insight Med., P.C.*,
    102 F. Supp. 3d 511 (S.D.N.Y. 2015)............................................................................15

*Farbotko v. Clinton Cnty.*,
    433 F.3d 204 (2d Cir. 2005)............................................................................................17

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)............................................................................................11

*Gonzalez v. Pritzker*,
    No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) ................20, 21

*Grant v. Lockett*,
    No. 15 Civ. 445, 2019 U.S. Dist. LEXIS 70702 (N.D.N.Y. Apr. 26, 2019) ...........................16

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992)..........................................................................................9, 11

*Haggan v. Google LLC*,
    N.Y. Sup. Ct., No. 518739/2022....................................................................................20

*Heng Chan v. Sung Yue Tung Corp.*,
    03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883 (S.D.N.Y. May 4, 2007)................................20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...................................................................................................9, 22

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)........................................................................23, 24

*Johnson v. City of New York*,
  No. 16 Civ. 6426, 2023 U.S. Dist. LEXIS 22582 (E.D.N.Y. Feb. 8, 2023) .............................9

*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005) ...........................................................................................14

*Kingdomware Techs., Inc. v. United States*,
  579 U.S. 162 (2016) ........................................................................................................17

*LeBlanc- Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ...........................................................................................23

*Lilly v. City of New York*,
  934 F.3d 222 (2d Cir. 2019) ...........................................................................................17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ........................................................................................8, 23

*Millea v. Metro-N. R.R.*,
  658 F.3d 154 (2d Cir. 2011) ...........................................................................................10

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ........................................................................................11

*Norman v. Hous. Auth. of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ......................................................................................11

*Perez v. Westchester Cnty. Dep't of Corr.*,
  587 F.3d 143 (2d Cir. 2009) ...........................................................................................11

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
  818 F.2d 278 (2d Cir. 1987) ...........................................................................................24

*Rozell v. Ross-Holst*,
  576 F. Supp. 2d 527 (S.D.N.Y. 2008) .............................................................................24

*Sanderson-Burgess v. City of New York*,
  102 N.Y.S.3d 678 (2d Dep't 2019) .................................................................................12

*Siracuse v. Program for the Dev. of Human Potential*,
  No. 07 Civ. 2205, 2012 U.S. Dist. LEXIS 73456 (E.D.N.Y. Apr. 30, 2012) ....................7, 8

*Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*,
  71 F.3d 1053 (2d Cir. 1995) ...........................................................................................16

*Williams v. Metro-North R.R.*,
  No. 17 Civ. 3847, 2018 U.S. Dist. LEXIS 109422 (S.D.N.Y. June 28, 2018) ...................22

*Williams v. New York City Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ............................................................................. *passim*

*Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*,
   599 F. Supp. 509 (S.D.N.Y. 1984)........................................................................13

*Wilson v. Nomura Sec. Int'l, Inc.*,
   361 F.3d 86 (2d Cir. 2004)....................................................................................14

**STATUTES**

N.Y.C. Admin. Code 8-107(7)..............................................................................15

N.Y.C. Admin. Code §§ 8-130-(a) ........................................................................8

N.Y.C. Admin. Code § 8-502 ........................................................................ *passim*

N.Y. Labor Law Art. 6 § 194 .................................................................................15

N.Y. Labor Law Art. 6 § 215 .................................................................................15

**OTHER AUTHORITIES**

*Google Ends Forced Arbitration After Employee Protest*, Wired (Feb. 21, 2019),
   https://www.wired.com/story/google-ends-forced-arbitration-after-employee-
   protest/..................................................................................................................1

Paul Hastings, American Law Journal,
   https://www.law.com/americanlawyer/law-firm-profile/?id=232&name=Paul-
   Hastings (last visited Nov. 21, 2023)....................................................................19

Shari Seidman Diamond Jessica M. Salerno, *Reasons for the Disappearing Jury
   Trial: Perspectives from Attorneys and Judges*, 81 Louisiana L. Rev. 120
   (2020)....................................................................................................................21

*This Exec Is Forcing Google Into Its First Trial Over Sexist Pay Discrimination*,
   Wired (Oct. 2, 2023), https://www.wired.com/story/exec-google-trial-sexist-
   pay-discrimination/).................................................................................................1

*This Woman Exec Beat Google in Court And Hopes Others Follow*, Wired (Oct.
   24, 2023), https://www.wired.com/story/this-woman-exec-beat-google-in-
   court-and-hopes-others-follow/.............................................................................22

U.S. Bureau of Labor Statistics CPI Inflation Calculator,
   https://www.bls.gov/data/inflation_calculator.htm...............................................22

# I.     PRELIMINARY STATEMENT

Following a successful jury trial in which she prevailed on all her claims under the New York City Human Rights Law ("NYCHRL"), and her retaliation claim under the New York Labor Law,[1] Plaintiff Ulku Rowe moves this Court for an award of attorneys' fees as the prevailing party in the litigation. Ms. Rowe's trial victory represents not just a personal win, but a vindication of the efforts of the tens of thousands of Google employees who walked off the job in 2018 in protest of the company's forced arbitration policy, which had long kept allegations of discrimination and retaliation behind closed doors.[2] Ms. Rowe's case is the first publicly-filed lawsuit against Google to go to trial since it was forced to abandon its policy of forced arbitration.[3] The trial offered a rare glimpse into Google's secretive hiring and pay practices, and the jury's award of $1.15 million in compensatory and punitive damages to Ms. Rowe has sent a strong message to Google and other tech companies that juries will not tolerate discrimination and retaliation.

Ms. Rowe now seeks an award of attorneys' fees and costs to compensate her for five years of hard-fought and successful work. This Court should award Ms. Rowe a fully compensatory fee both to compensate her Counsel for their work and to promote NYCHRL's "broad, remedial" purpose, which includes "'meld[ing] the broadest vision of social justice with the strongest law enforcement deterrent.'" *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 68 (1st Dep't 2009) (quoting Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the*

---

[1] Ms. Rowe did not prevail on her New York Labor Law ("NYLL") pay claim at trial, but that claim overlaps entirely with Ms. Rowe's NYCHRL claims. *See* Section II.b.i, *infra*.

[2] Ex. 9 (Nitasha Tiku, *Google Ends Forced Arbitration After Employee Protest*, Wired, (Feb. 21, 2019), https://www.wired.com/story/google-ends-forced-arbitration-after-employee-protest/.)

[3] Ex. 10 (Caitlin Harrington, *This Exec Is Forcing Google Into Its First Trial Over Sexist Pay Discrimination*, Wired, (Oct. 2, 2023), https://www.wired.com/story/exec-google-trial-sexist-pay-discrimination/)).

1

*Restored New York City Human Rights Law*, 33 Ford. Urb. L. J. 101, 104 (2006) [hereinafter "*A Return to Eyes on the Prize*"]).

## II. OVERVIEW OF THE LITIGATION

This case began in 2018, when Ms. Rowe first consulted with counsel regarding her claims. In 2019, she formally retained Outten & Golden LLP ("O&G" or "Plaintiff's Counsel") as her counsel, and O&G contacted Google, pre-suit, about her discrimination, equal pay, and retaliation claims. (Declaration of Cara E. Greene in Support of Motion for Attorney's Fees ("Greene Decl.") ¶¶ 16-17). Google declined to counter Ms. Rowe's settlement demand, and accordingly, she filed her complaint on September 17, 2019. (*See id.* ¶¶ 17-18; ECF No. 1). Early in the litigation, the parties were required to mediate pursuant to the Second Amended Standing Administrative Order M-10-468, of the Southern District Court of New York. ECF No. 20. During a mediation held on March 10, 2020, Ms. Rowe reiterated her initial demand, but Google did not make a settlement offer and mediation failed. (Greene Decl. ¶ 22; *see* February 13, 2020, Minute Entry).

As document discovery unfolded, Plaintiff's Counsel was forced to engage in extensive motion practice to obtain necessary discovery from Google, which, consistent with its desire to keep its discriminatory and retaliatory practices secret, was loathe to produce information. (*See* Greene Decl. ¶¶ 23-24). Between March 2020 and February 2021, Plaintiff's Counsel was required to file four motions to compel discovery and attend three discovery conferences. (*See* ECF Nos. 21, 40, 52, and 79). Google ultimately produced over 40,000 pages of discovery, which Plaintiff's Counsel reviewed. (Greene Decl. ¶ 25).

Because this case involved several alleged discriminatory and retaliatory actions and actors, and six male comparators, deposition discovery was extensive.  Between October 2020

and January 2021, Plaintiff's Counsel deposed eight fact witnesses and three 30(b)(6) corporate

witnesses, and Defendant deposed Ms. Rowe twice. (*Id.* ¶ 26).[4] These depositions were

conducted during the first year of the coronavirus pandemic, when it was at its height in New

York City. (*Id.* ¶ 27). Because Plaintiff's Counsel's office was closed in accordance with the

Governor's order, Plaintiff's Counsel had to conduct all the discovery and depositions remotely,

without any on-site technical support from the court-reporting company or Plaintiff's Counsel's

in-house IT department. (*Id.*). While remote depositions have become increasingly common over

the past three years and remote technology has advanced considerably since the beginning of the

pandemic, in October 2020 taking remote depositions on this scale was unchartered territory and

Plaintiff's Counsel was required to spend additional time preparing for and conducting

depositions. (*Id.*).

In December 2020, after depositions were completed, Google raised the possibility of

settlement. (Greene Decl. ¶ 28). Even though she had incurred significant fees in litigation, Ms.

Rowe reiterated her initial demand, but, again, Google did not make a settlement offer. (*Id.*).

In the meantime, while litigation was ongoing, Google rejected Ms. Rowe's application

for a promotion to Vice President of Financial Services - Sales, which Ms. Rowe alleged was

retaliatory. (*Id.* ¶ 29). Google opposed Ms. Rowe's application to file a Second Amended

Complaint including these allegations, even though she clearly met the lenient standard for

amending her complaint. (*Id.*; *see* ECF Nos. 75-78, 91, 95, and 105). Plaintiff's Counsel was

forced to expend resources briefing this issue and arguing it before Magistrate Judge Gorenstein,

and Ms. Rowe ultimately prevailed at trial on the claim. (Greene Decl. ¶ 29).

---

[4] All of these depositions were introduced into evidence, used for impeachment during trial, or
provided important context for understanding Ms. Rowe's claims. (*Id.* ¶ 26.)

Following the close of discovery, in April 2021, the Parties indicated their intent to cross-file for summary judgment. (ECF Nos. 112, 113). In June 2021, Magistrate Judge Nathaniel Fox was designated, and Judge Schofield referred the Parties to a settlement conference before him on July 29, 2021, which failed. (ECF Nos. 120-21, 123-24, 127.) Between November 2, 2021, and January 26, 2022, the Parties briefed their cross-motions for summary judgment and accompanying motions to seal. (*See* ECF Nos. 137-210). On September 26, 2022, Judge Schofield denied both Parties' motions for summary judgment. ECF No. 219.

Shortly thereafter, Plaintiff's Counsel began the extensive work of preparing for trial. On October 14, 2022, the Court ordered the case placed on the trial-ready calendar; with the jury trial to begin on January 9, 2023, or the first available date thereafter. (ECF No. 225). The Court also ordered the Parties to either engage in a settlement conference before a magistrate judge or attend private mediation. ECF No. 221. The Parties chose to participate in private mediation before Carol Wittenberg. (Greene Decl. ¶ 34). During November 2022, in anticipation of a January 2023 trial date, Plaintiff's Counsel set a schedule for expert discovery (ECF No. 230), served her expert report, filed five motions *in limine*, and was forced to oppose Defendant's unsuccessful letter motion to take *de bene esse* depositions for three witnesses and the related motion to seal. (ECF Nos. 248, 262, 265-269, 280). In addition, on November 23, 2022, Plaintiff's Counsel was required to remove redactions and re-file her entire summary judgment briefing in response to the Court's September 26, 2022, order denying, in part, Defendant's motions to seal. (ECF Nos. 220, 249-253; Greene Decl. ¶ 35).

A month before trial was to begin, on December 5, 2022, the Parties filed the Joint Proposed Voir Dire, Joint Proposed Jury Verdict Form, the Joint Pre-Trial Order, and their

oppositions to motions *in limine*. (ECF Nos. 270-279). Then, two days later, on December 7, 2022, the Court adjourned the trial until April 17, 2023. (ECF No. 281).

On January 26, 2023, the case was reassigned from Judge Schofield to this Court. At a February 10, 2023, status conference, the Court adjourned the April 17, 2023, trial date, and referred the Parties to a settlement conference with Magistrate Judge Jennifer E. Willis on March 28, 2023. (ECF No. 297). Ms. Rowe and Plaintiff's Counsel prepared for and attended the settlement conference, which failed. (Greene Decl. ¶ 36). The Parties then submitted a joint letter with proposed trial dates for an anticipated ten-day trial. (ECF No. 298).

On June 28, 2023, the Court Ordered the trial to commence on August 14, 2023, and set the Final Pretrial Conference for July 31, 2023. (ECF No. 300). Plaintiff's Counsel began trial preparations, including drafting direct and cross examination outlines, preparing a third-party witness, finalizing the order and list of exhibits to be used at trial and preparing the exhibits for use at trial, preparing demonstratives, drafting her opening and closing statements, preparing for arguments on exhibit and witness objections, designating deposition testimony for unavailable witnesses, and drafting her Pre-Trial Memorandum of Law. (Greene Decl. ¶ 37). On July 14, 2023, the Parties filed an Amended Pretrial Order and Plaintiff filed her Pre-Trial Memorandum of Law. (ECF No. 304-05). Then, during a July 24, 2023, teleconference, three weeks before the scheduled commencement of the trial, the Court Adjourned the trial from August 14, 2023, to October 4, 2023. (ECF No. 307). The Parties understood that the adjournment to October 4, 2023, was to ensure that they would have sufficient time to present their case, and consequently planned their presentation of their respective cases to be completed within ten days. (Greene Decl. ¶ 38).

After a brief pause, Plaintiff's Counsel again began preparing for trial, including by conducting mock jury exercises and by retaining a jury consultant. (Greene Decl. ¶¶ 38-39). The Parties also filed the Second Amended Proposed Pretrial Order, (ECF 310), in advance of the final Pretrial Conference on September 21, 2023. Following the conference, the Court ordered the Parties to file a joint letter related to a dispute regarding Defendant's belated identification of a witness, Patricia Florissi, which the Parties did on September 22, 2023. (*See* September 21, 2023 Minute Entry and ECF No. 314). Then, on September 25, 2023, less than two weeks before the start of trial, the Court allotted each party twelve hours to present their case. (ECF No. 325; Greene Decl. ¶ 40). As a result of the twelve-hour limitation, Plaintiff's Counsel had to rework her trial strategy to limit the number of witnesses she called, condense the testimony of remaining witnesses, redesignate deposition testimony, and modify the anticipated order of presentation of evidence to establish the elements of her claims and meet her burden of proof. *Id.* The Court also ordered Defendant to make Ms. Florissi available for a three-hour deposition in the seven-day window before trial, (ECF No. 315), which Plaintiff's Counsel took on October 2, 2023. (Greene Decl. ¶ 41). On October 6, 2023, the Parties filed the Third Amended Joint Pre-Trial Order and Plaintiff's Counsel renewed its objection to the testimony of Ms. Florissi. (ECF Nos. 326, 327). Plaintiff also requested an additional hour of trial time in light of a witness's sudden availability to attend trial in person. (ECF No. 328).

The trial commenced on October 10 and Plaintiff's Counsel presented Ms. Rowe's case in five days and within the time allotted by the Court. (Greene Decl. ¶ 43). The jury deliberated for approximately six hours, and on October 20, returned a verdict in Ms. Rowe's favor on both of her NYCHRL claims and her NYLL retaliation claim, awarding her $150,000 in compensatory damages and $1 million in punitive damages. (ECF No. 342).

Throughout the litigation, Plaintiff's Counsel prosecuted Ms. Rowe's case leanly, with a core team of just three attorneys at any one time. (Greene Decl. ¶ 44). During each phase of the case, each attorney played a distinct and critical role. (*Id.*). Throughout the entire case, Cara Greene was the responsible partner, supervising other attorneys and making key decisions about the litigation. (*Id.*) During discovery and summary judgment, associates Shira Gelfand and Maya Jumper performed extensive work under Ms. Greene's supervision, including researching and drafting letters and motions, drafting and responding to discovery requests, and reviewing over 40,000 documents. (*Id.*) Following Ms. Jumper's departure from the Firm and the Court's summary judgement decision, Gregory Chiarello, another partner, joined the trial team, and he and Ms. Greene divided the work of preparing pre-trial submissions, drafting and delivering opening and closing statements, and preparing and examining witnesses. (*Id.* ¶ 44). During trial, Ms. Gelfand drafted five letters to the Court regarding evidentiary issues (ECF Nos. 331, 333, 336, 337, and 338), prepared witness examination outlines and demonstratives, conducted the live readings of two unavailable witnesses, and researched and drafted memoranda regarding evidentiary issues that arose during trial. (Greene Decl. ¶ 43). During the pre-trial and trial phases of the cases, additional attorneys performed discrete tasks, such as assisting with the pre-trial filings and a mock jury project. (*Id.* ¶ 44). Plaintiff's Counsel's litigation operations department provided critical support throughout the litigation and at trial. (*Id.* ¶¶ 46-47).

## III.     THE COURT SHOULD AWARD PLAINTIFF'S REQUEST FOR FEES

Ms. Rowe, as a prevailing plaintiff, now moves for an award for an attorney's fees pursuant to the NYCHRL's fee-shifting provision. N.Y.C. Admin. Code § 8-502(g). "Like the NYCHRL generally, the fees provision is to be construed liberally. . . in order to accomplish the statute's uniquely broad and remedial purpose." *Siracuse v. Program for the Dev. of Human*

*Potential*, No. 07 Civ. 2205, 2012 U.S. Dist. LEXIS 73456, at *49 (E.D.N.Y. Apr. 30, 2012)

(quoting *Williams*); *accord Williams.*, 61 A.D.3d at 66 ("[The NYCHRL] explicitly requires an

independent liberal construction analysis in all circumstances, even where state and federal civil

rights laws have comparable language."); N.Y.C. Admin. Code §§ 8-130-(a) ("The provisions of

this title shall be construed liberally for the accomplishment of the uniquely broad and remedial

purposes thereof, regardless of whether federal or New York state civil and human rights laws,

including those laws with provisions worded comparably to provisions of this title, have been so

construed."); § 8-130(c) (explicitly incorporating the majority opinion in *Williams*). In

determining Plaintiff's Counsel's reasonable attorney fee, this Court may look to federal caselaw

interpreting analogous state and federal laws "only to the extent that the counterpart provisions

are viewed as a floor below which the City's Human Rights Law cannot fall, rather than a ceiling

above which the local law cannot rise" and "only to the extent that those state- or federal-law

decisions may provide guidance as to the uniquely broad and remedial provisions of the local

law.'" *Williams*, 61 A.D.3d. at 66-67 (quoting the Restoration Act of 2005); *see also Mihalik v.

Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (explaining that the

Restoration Act of 2005 "created a 'one-way ratchet,' by which interpretations of state and

federal civil rights statutes can serve only as a floor below which the City's Human Rights law

cannot fall" (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 270 (2d Cir. 2009)).

Thus, in determining the fee award, this Court must not simply follow federal case law

applicable to other fee-shifting statutes, but instead must liberally construe aspects of the

NYCHRL's fee-shifting provision that are "textually distinct from its state and federal

counterparts" and those that are "similar or identical" to federal anti-discrimination laws to

advance the NYCHRL's policy goal of  advancing "the interests of enforcement over the claimed

needs of covered entities in ways materially different from those incorporated into state and federal law." *Williams*, 61 A.D. 3d at 67-68 (quoting *A Return to Eyes on the Prize*, at 288.))

A.   __Plaintiff Is the Prevailing Party__.

By virtue of obtaining a successful jury verdict, Ms. Rowe is a prevailing party under the NYCHRL. *See Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 78-79 (2d Cir. 2014) ("[I]t is well-settled that a plaintiff prevails when actual relief on the merits of a claim *materially* alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff . . . At a minimum, this modification occurs when a plaintiff obtains an enforceable judgment on the merits[.]'" (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (emphasis added)). That a plaintiff may not have prevailed on all her claims has no impact on her status as a prevailing party.[5] *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); *see also Cooper v. Upstairs, Downstairs of New York, Inc.*, No. 18 Civ. 6426, 2021 U.S. Dist. LEXIS 59679, at *8 (S.D.N.Y. Mar. 29, 2021) (lack of success on all claims does not impact status as prevailing party). Consistent with its broad remedial purpose, the NYCHRL explicitly provides that a plaintiff whose litigation "acted as a catalyst" to effect voluntary change is a prevailing party, *see* N.Y.C. Admin. Code § 8-502(g), and explicitly provides that an individual can bring claims for nominal damages, N.Y.C. Admin. Code § 8-

---

[5] Similarly,  that Plaintiff's fee request exceeds her damages award is of no import. *See, e.g.*,"[t]he fee award need not be proportionate to the damages award." *Johnson v. City of New York*, No. 16 Civ. 6426, 2023 U.S. Dist. LEXIS 22582, at *10 (E.D.N.Y. Feb. 8, 2023) (citing *Grant* , 973 F.2d at101-02 ); *accord Grant*, 973 F.2d at 102 ("Proportionality is contrary to our national policy of encouraging the eradication of every type of . . . discrimination.").

502(h)(2). Here, where Plaintiff obtained a significant monetary judgment on three of her four claims, there is no question that she is prevailing party.

**B.**     **The Court Should Award Plaintiff's Counsel's Lodestar.**

The Court should award Plaintiff's Counsel's requested lodestar because it represents a reasonable number of hours billed at "the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County." N.Y.C. Admin. Code § 8-502(g). Federal caselaw construing fee-shifting statutes recognizes that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R.*, 658 F.3d 154, 166 (2d Cir. 2011). With respect to the reasonable number of hours, this Court can look to caselaw interpreting analogous federal statutes only "to the extent that those state- or federal-law decisions may provide guidance as to the uniquely broad and remedial provisions of the local law," *Williams*, 61 A.D.3d. at 66-67, keeping in mind the NYCHRL's policy goals of prioritizing "the interests of enforcement over the claimed needs of covered entities." *Williams*, 61 A.D.3d, at 68. With respect to the hourly rate, the NYCHRL includes "textually distinct" language not included in analogous federal law: it provides that "the court **shall apply** the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award." N.Y.C. Admin. Code § 8-502(g) (emphasis added). Thus, whether the Court considers the hourly rate to be reasonable – a factor relevant to a fee application under federal law – is irrelevant to the consideration of a fee award under the NYCHRL. Instead, when calculating the appropriate lodestar, this Court must determine "the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County" and award Plaintiff's Counsel those hourly rates.

10

i.       *Plaintiff's Counsel's hours are reasonable.*

The Court should award Plaintiff's Counsel its requested hours, all of which were

reasonably necessary to the successful prosecution of this case. Though number of hours

reasonably expended is a "factual issue whose resolution is committed to the discretion of the

district court," *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009), "[b]y

and large, the court should defer to the winning lawyer's professional judgment as to how much

time he was required to spend on the case," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112

(9th Cir. 2008). "The relevant issue . . . is not whether hindsight vindicates an attorney's time

expenditures, but whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see

also Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1301 (11th Cir. 1988) (holding that

"the measure of reasonable hours is determined by the profession's judgment of the time that

may be consciably billed and not the least time in which it might theoretically have been

done"). If the Court does conclude that any hours for which compensation is sought should not

be awarded, it must "state its reasons for excluding those hours as specifically as possible."

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (internal quotation omitted).

The Court should award all of Plaintiff's requested hours because they were all

reasonably incurred. In an exercise of billing judgment, counsel has reviewed every time record

and deducted all time that was deemed, in retrospect, to have been excessive or duplicative.

Greene Decl. ¶ 48. In addition, Counsel removed all time entries billed by any timekeeper who

billed less than ten hours to the matter. *Id.* ¶ 49. Further, Plaintiff's Counsel zeroed out the

hourly rate for all time (7.7 hours) spent on media and press, removing an additional $5,462.50

from the lodestar. (Greene Decl. ¶ 50). In total, Plaintiff's Counsel removed 132.9 hours, or a

total of $55,808. *Id.* ¶ 51. Thus, Plaintiff's Counsel is seeking reimbursement for 8,972.9 hours, amounting to an adjusted lodestar of $4,458,313.75, for time spent on this matter from inception through trial. *Id.* ¶ 52; (Ex. 1).

The total number of hours sought is reasonable given the circumstances of the case, which extended over five years and entailed more than 340 docket entries. First, the facts of this case were complex and required Plaintiff's Counsel to engage in extensive discovery and to present a complex set of facts at trial. Because (i) the statute of limitations in this case extended back to the start of Plaintiff's hire, (ii) the standard for discrimination under the NYCHRL is whether an individual was treated "less well" because of her sex, *Williams*, 61 A.D.3d at 78, and (iii) the NYCHRL retaliation standard is whether an employer's response to an employee's protected activity would be "reasonably likely to deter a person from engaging in that protected activity," *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 681 (2d Dep't 2019), Ms. Rowe's entire six-and-a-half year employment relationship with Google, and Google's entire corporate culture, was relevant to her claims. To put forth her case at trial, Plaintiff's Counsel developed evidence to prove multiple instances of discrimination, protected complaints, and retaliation, including: (1) her initial discriminatory under-leveling as a Technical Director; (2) Ms. Rowe's 2018 protected complaints to HR about her under-leveling; (3) discriminatory treatment by Tariq Shaukat when Ms. Rowe served as a Global Client Technical Lead; (4) Google's discriminatory and retaliatory failure to promote Ms. Rowe to the Vice President of Financial Services ("FSVL" role); (5) Ms. Rowe's protected complaints in the form of filing an EEOC charge and this lawsuit ; (6) Google's retaliation against Ms. Rowe for her complaints about the under-leveling and failure to promote; and (7) Google's retaliation against Ms. Rowe for her commencement of this lawsuit, including its failure to consider her for the Vice President,

12

Financial Services - Sales ("VPFS-Sales" ) position. Significant evidence was stored electronically, and Plaintiff's Counsel, including O&G's eDiscovery Counsel, Daniel Stromberg, spent significant time negotiating with Google an ESI protocol and an agreement on how the Parties would search for information. (*Id.* ¶ 23). Under Mr. Stromberg's supervision, O&G's eDiscovery litigation operations team collected and produced 714 documents in native format, including metadata in compliance with the Parties' ESI Protocol, and Plaintiff's Counsel reviewed over 40,000 documents Google produced. *Id.* ¶¶ 23-25.

Throughout the litigation, Plaintiff's Counsel made every effort to prosecute the case efficiently. At any one time, the case was staffed by no more than a core team of three attorneys, each of whom played a distinct role. *See supra* Section I. Under these circumstances, the time billed by each attorney is compensable. *See*, *e.g.*, *Cit Bank, N.A. v. Zisman*, No. 17 Civ. 2126, 2023 U.S. Dist. LEXIS 50802, at *16 (E.D.N.Y. Mar. 23, 2023) (finding it reasonable for multiple attorneys to work together on a matter where responsibility was divided based on "the nature of the work involved" with the "aim of minimizing legal fees"); *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) (holding that participation of multiple attorneys is reasonable where "division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings" and noting that "[m]ultiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law" (citations omitted)). In addition, several factors entirely outside of Plaintiff's Counsel's control caused Plaintiff's Counsel to expend additional hours litigating this matter. As described in Section I, Plaintiff's Counsel necessarily incurred additional time due to the coinciding onsets of the coronavirus pandemic and discovery, as the Parties were required to find new ways to undertake traditional discovery. Also, as described in Section I, the Court, *sua*

*sponte*, adjourned trial three times, and a fourth time in October due to the unavailability of two Google witnesses. As a result, the Parties submitted a total of four Joint Pretrial Orders, and each time trial was adjourned Plaintiff's Counsel was required to pause efforts and then ramp up again for trial. In addition, Plaintiff's Counsel expended additional time when this case was reassigned from Judge Schofield to this Court, including by conforming the Joint Pretrial Order to this Court's preference and attending additional conferences with this Court. In addition, , the Court also ordered Plaintiff to attend four settlement conferences and/or mediations. Further, as described in Section I, Plaintiff's Counsel was forced to expend additional resources in response to Google's aggressive litigation of the case. The number of hours expended was reasonable in light of all these extenuating circumstances.

### ii.  *Plaintiff's Counsel is entitled to all hours expended.*

Plaintiff's Counsel is also entitled to fees for hours expended on all her legal claims, including her NYLL equal pay claim, because her unsuccessful NYLL equal pay claim overlapped entirely with her successful NYLL retaliation claim and her NYCHRL claims. Where a plaintiff prevails on some claims alleged but not others, so long as the suit as a whole involved a "common core of facts" and involved "related legal theories," all the time spent on the case must be compensated. *See Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005) (quoting *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983)).

Courts have repeatedly found hours spent on ultimately unsuccessful discrimination claims to be compensable in cases like this one, where the instances of alleged discrimination were the subject of the complaints involved in the retaliation claims. *See, e.g.*, *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90-91 (2d Cir. 2004) ("[W]hen a plaintiff fails to prove one of two overlapping claims – e.g., a discriminatory discharge – but prevails on the other – e.g.,

14

retaliation for complaining of discrimination – the plaintiff may recover fees for all the legal work.") (citation omitted); *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 520 (S.D.N.Y. 2015) (holding that "Plaintiff's harassment and retaliation claims were inextricably intertwined" and awarding hours spent on unsuccessful harassment claims). While the jury ultimately did not find that Google violated the NYLL's equal pay provisions, the jury did find that Google retaliated against Plaintiff because of her complaints about equal pay and discrimination and returned favorable verdicts on both her NYLL and NYCHRL retaliation claims. Because the factual basis of Plaintiff's NYLL equal pay claim was a necessary element of her NYLL retaliation and NYCHRL retaliation claims, *see* N.Y.C. Admin. Code 8-107(7); N.Y. Labor Law §§ 194, 215, the claims are inextricably intertwined such that hours spent on the NYLL equal pay claims are compensable.

In addition, Plaintiff's NYLL equal pay claim is intertwined with her NYCHRL discrimination claims. In particular, Google's leveling decision was central to both her NYCHRL discrimination and NYLL equal pay claims. Ms. Rowe alleged that Google's under-leveling was discriminatory in that her she was hired at Level 8 rather than Level 9 at least in part because of her gender, SAC ¶¶ 22-32, and that her initial under-levelling contributed to her discriminatorily not being considered for the FSVL role. SAC ¶ 36. Plaintiff also alleged that this same initial under-leveling decision caused a pay disparity between her and comparator Nicholas Harteau, giving rise to a claim under the NYLL.[6] SAC ¶ 28. Further, Google raised the initial leveling decision as an affirmative defense to Plaintiff's NYLL equal pay claim, *see* ECF No. 111

---

[6] Google argued that Plaintiff was not paid less than Nicolaus Harteau – a necessary component of an EPL claim – and the jury subsequently found that Plaintiff failed to establish back pay. Critically, and contrary to what Google might assert, the jury did not find that Plaintiff was leveled correctly. Instead, the jury found that Plaintiff prevailed on her discrimination claim, which was based on, among other things, being levelled lower than her male comparators.

(Answer to Second Amended Complaint) (Fourth Separate and Affirmative Defense). Because these claims are factually intertwined, all of Plaintiff's Counsel's expended time is compensable.

Time spent in connection with this fee application and post-trial briefing seeking injunctive relief is also compensable and should be awarded. *See Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995); *Grant v. Lockett*, No. 15 Civ. 445, 2019 U.S. Dist. LEXIS 70702, at *4 (N.D.N.Y. Apr. 26, 2019) ("Parties may be compensated for attorneys' fees incurred in post-trial motion practice." (citation omitted)). Counsel has expended additional time on this fee application and on her post-trial brief seeking equitable relief, and will submit time entries detailing the time spent together with her reply brief. (Greene Decl. ¶ 53).

**C.**     <u>**The Court Should Award Plaintiff's Counsel's Its Customary Hourly Rates.**</u>

Plaintiff's Counsel seeks the below hourly rates, which, as detailed below, are the actual hourly rates that Plaintiff's Counsel routinely charges fee-paying clients, including for arbitration hearings handled on an entirely hourly basis. (Greene Decl. ¶ 61).

| Name | Position | Grad Year | Rate |
|------|----------|-----------|------|
| Susan E. Huhta | Partner | 1994 | $850.00 |
| Cara E. Greene | Partner | 2005 | $950.00 |
| Gregory S. Chiarello | Partner | 2006 | $800.00 |
| Daniel Stromberg | Partner | 2007 | $875.00 |
| Tara K. Quaglione | Contract Attorney | 2007 | $450.00 |
| Lauren B. McGlothlin | Associate | 2014 | $450.00 |
| Maya S. Jumper | Associate | 2015 | $475.00 |
| Lindsay M. Goldbrum | Associate | 2017 | $450.00 |
| Eliana J. Theodorou | Associate | 2018 | $425.00 |
| Jennifer Davidson | Associate | 2018 | $425.00 |
| Shira Gelfand | Associate | 2018 | $425.00 |
| Amanda T. Chan | Associate | 2020 | $375.00 |

Plaintiff also seeks the following hourly rates for members of Plaintiff's Counsel's Litigations Operations Department: $350/hour for senior administrators with supervisory responsibilities; $325/hour for litigation operations and law clerks; and $150/hour for the Office Services Clerk.

> ### i.    *The NYCHRL requires courts to award the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when factoring hourly rates into a fee award.*

The NYCHRL requires this Court to award Plaintiff's Counsel her current, customary hourly rates. *See Farbotko v. Clinton Cnty.*, 433 F.3d 204, 210 n.11 (2d Cir. 2005) ("[T]he rates used by the [district] court to calculate the lodestar amount should be current rather than historic hourly rate."). The NYCHRL limits courts' discretion to set an attorney's hourly rate. Through "textually distinct" language introduced through 2016 amendments to the NYCHRL, the law mandates that "the court **shall** apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award." N.Y.C. Admin. Code § 8-502(g) (formerly § 8-502(f) (Subd. g amended L.L. 36/2016 § 2, eff. Mar. 28, 2016) (emphasis added)); *see Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty."). Contrary to federal case law that gives courts "considerable discretion" to determine a "*reasonable* hourly rate," *see*, *e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 225, 232 (2d Cir. 2019) (emphasis added), the NYCHRL instructs courts to answer an empirical question: What *are* the hourly rates charged by attorneys of similar skill and experience litigating similar cases in New York County? The NYCHRL does not permit courts to engage in a subjective reasonableness inquiry separate from the objective inquiry into what hourly rates are actually charged.

17

Plaintiff's Counsel has submitted ample evidence that its customary fees are consistent with the hourly rates charged by attorneys of similar skill and experience litigating similar cases in New York County. Plaintiff's Counsel, Outten & Golden LLP, is a national law firm with more than 50 attorneys, with its primary office in New York City. (Greene Decl. ¶ 2). O&G's practice focuses on representing employees in a wide variety of employment issues, including claims of individual and class-wide discrimination and harassment, as well as retaliation, wage & hour, and contract claims. (Greene Decl. ¶ 4). Plaintiff's Counsel has provided ample evidence that individual clients routinely pay O&G's hourly rates. (Greene Decl. ¶ 64-66). Over the past two years alone, both Ms. Greene and Mr. Chiarello have been engaged by more than 50 clients each on an hourly basis at their full hourly rates. (Greene Decl. ¶ 65). The hourly work that O&G – and Ms. Greene, Mr. Chiarello, Ms. Gelfand – routinely performs is not limited to non-litigation work (*e.g.* advice and counsel, negotiations, or severance and contract review), but also includes agency filings and arbitration/litigation. (Greene Decl. ¶ 66).

In addition, Plaintiff's Counsel has supplied evidence that O&G's rates are in line with or less than the rates of similarly skilled and experienced attorneys who handle complex, high-profile employment matters in New York County. (Exs. 5-8). For example, in his supporting affidavit, David Sanford, chairman of Sanford, Heisler, Sharp ("SHS") states that his firm charges its hourly clients rates between $1,100-$1,400 for partners. (Ex. 7, ¶ 13). These rates are higher than the rates O&G seeks here. (Greene Decl. ¶¶ 61, 63). In addition, SHS charges $600/hour for mid-level 2018 graduates associates like Ms. Gelfand, and $500/hour for 2022 graduates. (Ex. 7 ¶ 13). Similarly, Rachel Geman, a partner in the New York office of Lieff, Cabraser, Heimann & Berstein states that her hourly rate is $1,080/hour, and that her firm charges $615 for 2017 graduates, and $470 for 2022 associates. (Ex. 8, ¶¶ 9, 11). O&G's rates

18

are thus well within the range of rates charged by attorneys of similar skill litigating similar cases in New York County.

> ii.      *The Johnson Factors also support awarding Plaintiff's Counsel its full lodestar.*

As explained in Section II.c.i, the NYCHRL limits the Court's discretion in setting Plaintiff's Counsel's hourly rate. Even if the Court were to consider the factors[7] that federal courts consider when determining the reasonable hourly rate under analogous federal antidiscrimination statutes (which it should not), those factors support awarding Plaintiff's requested hourly rates.

> 1.      *The time and labor required, the time limitations imposed by the circumstances, and the contingent nature of the case support awarding Plaintiff's Counsel's rates. (Factors 1, 6 and 7).*

As described in Section I, prosecuting this case was time and resource intensive, particularly in light of several factors outside of Plaintiff's Counsel's control. Google was represented by Paul Hastings, a top-ranked, corporate law firm that employs approximately 1,000 attorneys across 19 global offices.[8] Ms. Rowe required highly-qualified, experienced attorneys, like those at O&G, to have a fair chance at winning this case. Only a handful of

---

[7] In the Second Circuit, courts setting a reasonable hourly rate consider the so-called *Johnson* factors, which are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n. 3 (2d Cir. 2007).

[8] Paul Hastings, American Law Journal, https://www.law.com/americanlawyer/law-firm-profile/?id=232&name=Paul-Hastings (last visited Nov. 21, 2023) (noting that Paul Hastings employs 1,070 attorneys and is the 31st highest grossing law firm in the world).

plaintiff-side firms have the resources to litigate against a firm like Paul Hastings, and, as described in the affidavits of David Sanford and Rachel Geman, those firms charge rates comparable to O&G's rates. (*See* Ex. 7-8). Thus, Outten & Golden's resources were crucial to the success prosecution of this case on a contingency basis, and their hourly rates should be awarded. *See Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277, *12 (S.D.N.Y. Sept. 20, 2016). ("Outten & Golden's resources played a significant role in Plaintiffs' counsel's ability to pursue this litigation without compensation over the past six years."); *Heng Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883, *8-9 (S.D.N.Y. May 4, 2007) ("It is appropriate to award a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case.").

2.    ***Ms. Rowe required skilled and experienced counsel to negotiate and litigate her claims (Factors 2, 3, 9, and 11).***

Ms. Rowe is a highly-qualified and highly-compensated professional who came to Google with over twenty years of experience as a technology executive at some of the largest banks in the financial services industry. *See* SAC, ¶¶ 15-17. To effectively prosecute her case, Ms. Rowe required counsel with experience negotiating and litigating on behalf of senior executives against companies of Google's caliber. O&G has significant experience representing executives in the financial services and technology industry, and against Google in particular. (Greene Decl. ¶ 67); *see e.g.*, *Haggan v. Google LLC*, N.Y. Sup. Ct., No. 518739/2022 (gender and race class discrimination class action on behalf of 8,200 women and non-white workers). O&G's familiarity with Google and other technology companies' compensation, hiring, and promotion practices was crucial to O&G's ability to effectively prosecute this case. (*Id.* ¶ 68). Though Ms. Rowe was clearly committed to fighting Google's discriminatory practices to the end, she first retained O&G to explore a negotiated resolution of her claims. *See* Section I, *supra*

(discussing pre-suit negotiations). It was reasonable for Ms. Rowe to retain O&G because of O&G's experience and credibility with attorneys representing companies like, and including, Google.

Because Ms. Rowe was committed to taking her case to trial if a resolution could not be reached, it also was critical that she retain experienced **trial** attorneys. Due to the disappearance of jury trials, the number of attorneys who are both trial attorneys and experienced in employment law is exceedingly small. According to a recent study, "The number of jury trials has dropped so dramatically in recent years in both federal and state courts that the jury trial is an exceptional rather than a commonplace outcome. Although civil case filings in federal courts, where the data are most reliable, have increased fourfold since the early 1960s, the percentage of civil cases disposed of by jury trial decreased from approximately 5.5% in 1962 to 1.2% by 2002 and to 0.8% by 2013." Shari Seidman Diamond Jessica M. Salerno, *Reasons for the Disappearing Jury Trial: Perspectives from Attorneys and Judges*, 81 Louisiana L. Rev. 120 (2020). It was reasonable for Ms. Rowe to select O&G and Ms. Greene for their extensive trial experience.

### 3.    *Courts have awarded attorneys of comparable skill and experience litigating comparable cases comparable rates.*

Courts across the country and in this district have consistently awarded O&G's customary hourly rates. *See*, *e.g.*, *Chen-Oster v. Goldman Sachs, Inc.*, No. 10 Civ. 6950 (S.D.N.Y. Nov. 7, 2023), ECF No. 1467, ¶¶ 24-25 (order approving O&G's fee schedule where hourly rates included rate of $950/hour for Ms. Greene and $525/hour for Ms. Jumper); *Gonzalez v. Pritzker*, 2016 U.S. Dist. LEXIS 131277, *12-13 (S.D.N.Y. 2016) (awarding requested $8 million+ attorney fee that constituted approximately 90% of lodestar where lodestar was based on O&G's customary fee schedule); (Greene Decl. ¶ 69). In addition, adjusting for inflation,

21

O&G's current hourly rates are in line with the rates approved in *Williams v. Metro-North R.R.*, No. 17 Civ. 3847, 2018 U.S. Dist. LEXIS 109422, at *23 (S.D.N.Y. June 28, 2018): $800/hour for senior partners, or $976.78 adjusted to today's dollars; and $425 for senior associates, or $518.91 adjusted to today's dollars.[9]

### 4.    *The amount involved and the results obtained support Plaintiff's Counsel's rates.*

Plaintiff's Counsel's highly-successful result strongly supports awarding a fully-compensatory hourly rate. Ms. Rowe succeeded on both her claims for discrimination and retaliation under the NYCHRL, and her retaliation claim under the NYLL. Ms. Rowe's victory is important not just for her, but for women and workers across Google and the technology industry writ large.[10] Ms. Rowe's suit was the first lawsuit filed after Google was forced to abandon its policy of forced arbitration following mass protests by tens of thousands of Google employees in 2018. Her lawsuit was the first employment case against Google to go to trial since Google abandoned forced arbitration, and her victory sends a message to other victims of discrimination and retaliation that they can hold Google publicly accountable for its wrongdoing. Fully compensating Plaintiff's Counsel for their fees will ensure that other workers subjected to discrimination can similarly obtain counsel to help them vindicate their rights, fulfilling the public policy goals of the NYCHRL and other civil rights statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("[C]ivil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. . . . . If private

---

[9] Adjustments were made using the U.S. Bureau of Labor Statistics CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.
[10] Ex. 11 (Caitlin Harrington, *This Woman Exec Beat Google in Court – And Hopes Others Follow*, Wired (Oct. 24, 2023), https://www.wired.com/story/this-woman-exec-beat-google-in-court-and-hopes-others-follow/).

citizens are to be able to assert their civil rights, and if those who violate the Nation's

fundamental laws are not to proceed with impunity, then citizens must recover what it costs them

to vindicate these rights in court.").

Penalizing Plaintiff for partial victory by reducing her requested fees would be contrary

to the NYCHRL's policy in favor of promoting "the strongest law enforcement deterrent.'"

*Williams*, 61 A.D.3d, at 68. The NYCHRL seeks to prevent discrimination from playing any role

in employment decisions, regardless of the extent of the damages caused. *See Mihalik*, 715 F.3d

at 110 n.8 (an employer is entitled to summary judgment under the NYCHRL only where "the

record establishes as a matter of law that 'discrimination play[ed] no role' in its actions" (quoting

*Williams*, 61 A.D.3d at 78 n.27)). The lack of a back pay award is also no basis to deny Plaintiff

her attorneys' fees. Indeed, the NYCHRL explicitly provides that a plaintiff can bring a claim

solely for nominal damages, and is a prevailing party for purposes of the statute. *See* N.Y.C.

Admin. Code § 8-502(h)(2) ("A person is aggrieved even if that person's only injury is the

deprivation of a right granted or protected by chapters 1 or 6 of this title."). Thus, the Court must

not reduce Plaintiff's requested rates on account of partial success.

### III. THE COURT SHOULD AWARD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF REASONABLE COSTS

Plaintiff's Counsel requests reimbursement of costs in the amount of $178,084.86 to be

paid by Defendant. (Exs. 2-3); N.Y. Admin. Code § 8-502(g); *see also LeBlanc- Sternberg v.*

*Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (abuse of discretion not to award plaintiff reasonable

out-of-pocket costs). "Attorneys may be compensated for reasonable out-of-pocket expenses

incurred and customarily charged to their clients, as long as they were 'incidental and necessary

to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.

Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

      Here, Plaintiff's Counsel's out-of-pocket expenses were necessary to the representation. (Greene Decl. ¶ 70). O&G routinely bills hourly individual clients in New York for each of these types of costs – and Ms. Rowe is responsible for these costs under her retention agreement with O&G. (*Id.*); *see Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (prevailing plaintiff entitled to "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 547 (S.D.N.Y. 2008) (noting legal research expenses recoverable where O&G regularly charges paying clients). Plaintiff is entitled to seek interest on those costs. *Rozell*, 576 F. Supp. 2d at 548.

## IV.    CONCLUSION

      For the foregoing reasons, the Court should approve Plaintiff's request for fees in the amount of $4,458,313.75 and reimbursement of costs in the amount of $178,084.86.

Dated: November 22, 2023          Respectfully submitted,
New York, New York            By: */s/ Cara E. Greene*
                          Cara E. Greene
                          Gregory S. Chiarello
                          Shira Z. Gelfand
                          Outten & Golden LLP
                          685 Third Avenue, 25th Floor
                          New York, NY 10017
                          Telephone: (212) 245-1000
                          ceg@outtengolden.com
                          gchiarello@outtengolden.com
                          sgelfand@outtengolden.com

                          *Attorneys for Plaintiff*