**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULKU ROWE,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | **Case No. 1:19-cv-08655 (JHR)** |

## <u>DECLARATION OF CARA E. GREENE IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS</u>

I, Cara E. Greene, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a partner at Outten & Golden LLP ("O&G"), and lead counsel for Plaintiff Ulku Rowe in the above-captioned matter. I make this declaration in support of Plaintiff's Motions for Attorneys' Fees and Costs, pursuant to the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-503(g). I am familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents identified.

**<u>O&G's Background and Experience</u>**

2.      With more than 50 attorneys and offices in New York City, Washington, D.C., and San Francisco, Outten & Golden LLP ("O&G") is one of the largest law firms exclusively dedicated to the representation of employees and their interests. Over the past 25 years, O&G attorneys have zealously advanced the concept of workplace fairness – protecting employees from economic injustice and unlawful practices, upholding their civil rights, and leveling the balance of power between employees and formidable business interests.

3.      O&G has been consistently recognized as a leader in the industry. Among other recognitions, Chambers USA has ranked O&G in "band one" for "Plaintiffs Labor & Employment Law" each year since 2014. In 2023, Best Lawyers ranked O&G as National Tier 1 in the categories of Litigation - Labor & Employment, and Mass Tort Litigation / Class Actions – Plaintiffs. O&G was selected as a national "Employment Practice Group of the Year" by Law360 for five consecutive years, and is the only firm dedicated solely to representing employees to ever be included on the list. In 2023, 44 of the firm's attorneys were recognized by Super Lawyers, an independent listing of attorneys who have achieved a high level of peer recognition and professional achievement.

4.      O&G's practice is focused on representing employees on a wide variety of complex employment issues, including claims of individual and class-wide discrimination and harassment, as well as retaliation, wage & hour and contract claims, and my entire practice has been devoted to representing employees and partners in their workplace matters.

5.      Prior to joining O&G in August 2005, I received my B.A. from Gordon College in 2000 and my J.D. from Fordham University School of Law in 2005. I worked as a paralegal at O&G from 2003-2005 and joined O&G as an attorney following my admission to the New York Bar. I was elevated to partner effective January 1, 2013.

6.      My practice focuses exclusively on representing employees, classes of employees, partners, and executives in employment and work-related matters, including discrimination, retaliation, and equal pay matters. I have litigated/arbitrated ten cases to conclusion, and have litigated and arbitrated many dozens of cases that resolved prior to trial or hearing, including

against companies in the financial services and technology industries.[1] I am a frequent speaker, writer, and commentator on discrimination, equal pay, retaliation, and other employment-related matters. I am a contributor to the forthcoming ABA/Bloomberg Law: 7th Edition *Employment Discrimination Law*.

7.　　I have represented employees in employment class actions against companies like Goldman Sachs, Bank of America, Gristede's Supermarkets, Washington Mutual, GEICO Insurance Company, Google, Amazon, and HSBC. I have litigated and arbitrated many individual matters against large financial institutions, I was co-lead counsel in the matter *Chen-Oster v. Goldman Sachs Co.*, 10-Civ-6950 (S.D.N.Y.), which settled on the eve of trial in May 2023 after almost thirteen years of litigation, and which was finally approved by Judge Analise Torres on November 7, 2023. The *Chen-Oster* case was brought on behalf of a class of approximately 2,800 women and alleged class discrimination claims, including under the New York City Human Rights Law. The $215 million settlement is the largest pre-trial sex bias settlement of all time. I am also co-lead counsel in the equal pay/employment discrimination class action *Haggan v. Google*, N.Y. Sup. Ct., No. 518739/2022, which is currently pending in New York State Supreme Court, Kings County, and in the equal pay/employment discrimination class action *Wilmuth et al v. Amazon.com, Inc.*., No. 2:23-cv-01774, which is currently pending in the United States District Court, Western District of Washington.

---

[1] The number of attorneys who are both trial attorneys and experienced in employment law is exceedingly small.  According to a recent study, "The number of jury trials has dropped so dramatically in recent years in both federal and state courts that the jury trial is an exceptional rather than a commonplace outcome. Although civil case filings in federal courts, where the data are most reliable, have increased fourfold since the early 1960s, the percentage of civil cases disposed of by jury trial decreased from approximately 5.5% in 1962 to 1.2% by 2002 and to 0.8% by 2013." Shari Seidman Diamond Jessica M. Salerno, *Reasons for the Disappearing Jury Trial: Perspectives from Attorneys and Judges*, 81 Louisiana L. Rev. 120 (2020).

8.      I have been named a Super Lawyer (Metro New York) for 2013-2023 and was recognized by Super Lawyers as a Rising Star in 2012. From 2018-2023, I have been named one of the Lawdragon 500 Leading Plaintiff Employment Lawyers and was profiled by Lawdragon in May 2023 for my work representing employees. *See* Meghan Hemingway, *Cara Greene Is Fighting For Equal Pay*, Lawdragon (May 11, 2023), https://www.lawdragon.com/lawyer-limelights/2023-05-11-cara-greene-is-fighting-for-equal-pay. In addition, I have been recognized by Legal 500 as a Legal Leader in Labor and Employment Law Disputes and by Best Lawyers for Labor and Employment Litigation 2013-2023. In October 2023, I was selected by Law360 as one of six 2023 MVPs in the field of Labor and Employment. I am a former chair of the New York State Bar Association's Labor and Employment Law Section, a former Co-Chair of the American Bar Association's Labor and Employment Law Section Ethics and Professional Responsibility Committee, and an active member of the National Employment Lawyers Association and its New York affiliate.

9.      The core attorney team for this litigation consisted of myself, Gregory S. Chiarello, Shira Z. Gelfand and Maya S. Jumper.

10.     Gregory S. Chiarello has been with O&G since August 2014 and was elevated to Partner in January 2018. Prior to joining O&G, he represented employees in discrimination, retaliation, wage & hour, and contract matters for five years as an associate attorney at Vladeck, Waldman, Elias & Engelhard, P.C. (now Vladeck, Raskin & Clark). He received his B.A. with highest honors from Rutgers University in 2001, and his J.D. from Brooklyn Law School in 2006. He began his career representing indigent defendants on appeal as a public defender in New York.

11.     Since 2009, Mr. Chiarello's work has focused exclusively on representing employees in workplace matters, including discrimination, retaliation, and equal pay matters. A considerable portion of Mr. Chiarello's matters address gender-based discrimination in some form. He has litigated/arbitrated five cases to conclusion; all of his jury trials have involved gender discrimination and/or equal pay violations, and related retaliation claims. Mr. Chiarello has perfected and argued appeals in New York State and federal appeals courts on key issues of employment law, and has litigated and arbitrated dozens of cases that have resolved prior to trial or hearing. He is a frequent speaker on discrimination and retaliation and other employment-related matters. Mr. Chiarello was a co-author and editor to *Zero Tolerance: Best Practices for Combating Sex-Based Harassment in the Legal Profession*, published in 2018 by the ABA's Commission on Women in the Profession.

12.     Mr. Chiarello has been named a Super Lawyer (Metro New York) for 2020-2023 and was recognized by Super Lawyers as a Rising Star from 2017-2019. He was named one of the Lawdragon 500 Leading Plaintiff Employment Lawyers 2020-2021 and 500 Leading Civil Rights & Plaintiff Employment Lawyers in 2023. He has been recognized by Best Lawyers for Labor and Employment Litigation 2022 to present. Mr. Chiarello has worked on this matter from September 2022 through the present.

13.     Shira Z. Gelfand is an Associate at O&G and a member of the Individual Practice Group. Prior to joining the firm, Ms. Gelfand worked as an associate in employment practices coverage, where she advised insurers regarding liabilities and underwriting considerations related to discrimination, harassment, retaliation, wrongful termination, and wage and hour claims. Ms. Gelfand received her B.A. from Binghamton University cum laude in 2014 and her J.D. from Benjamin N. Cardozo School of Law in 2018 where she was a Public Service Scholar.

Ms. Gelfand was recognized in 2023 as a Super Lawyers: Rising Star. Ms. Gelfand has worked on this matter from August 2019 through the present.

14.     Maya S. Jumper was an Associate at O&G from September 2018 to December 2021 in the firm's Class Action Practice Group, where she worked on *Haggan v. Google LLC*, N.Y. Sup. Ct., No. 518739/2022. Prior to joining O&G in September 2018, Ms. Jumper served as law clerk to the Hon. Damon J. Keith on the U.S. Court of Appeals for the Sixth Circuit, the Hon. Deborah A. Robinson on the U.S. District Court for the District of Columbia, and the Hon. Eric T. Washington, former chief judge of the District of Columbia Court of Appeals. Prior to serving as a judicial law clerk, Ms. Jumper received her J.D. from American University Washington College of Law in 2015, magna cum laude and Order of the Coif, and her B.A. from the University of North Carolina at Chapel Hill. Ms. Jumper worked on this matter from March 2020 through December 2021.

15.     Many additional attorneys and staff at O&G have performed discrete work on this matter over its long history. Their brief bios are set forth in **Exhibit 4**.

**<u>Pre-Litigation</u>**

16.     Plaintiff Ulku Rowe first consulted with O&G in August 2018 regarding her discrimination, equal pay and retaliation claims, and she subsequently retained O&G in January 2019.

17.     During the pre-litigation phase of this case, O&G gathered information from Ms. Rowe about her claims and damages through an initial consultation and follow-up calls and correspondence, drafted a demand letter outlining from Ms. Rowe's claims; and sent the demand letter to Defendant to put it on notice of the claims and attempt to resolve them without resort to litigation. O&G calculated Ms. Rowe's damages and conveyed a pre-suit demand to Defendant.

To facilitate negotiations, O&G drafted and negotiated a tolling agreement, and engaged in several phone calls with opposing counsel to attempt to resolve Ms. Rowe's claims. Defendant declined to counter Ms. Rowe's settlement demand.

18.     After Defendant declined to counter Ms. Rowe's pre-suit settlement demand, Ms. Rowe began to prepare to file her lawsuit. Plaintiff's Counsel presented Ms. Rowe's case to O&G's litigation committee, which provided strategic input on how to present the claims. Plaintiff's Counsel then drafted the complaint raising claims under the Equal Pay of Act of 1963, 29 U.S.C. § 206(d), the New York Pay Law, N.Y. Lab. L. Art. 6 § 194, and the New York City Human Rights Law, NYC Admin. Code §§ 8-101 *et seq.*, and drafted and filed a charge with the Equal Employment Opportunity Commission ("EEOC") to exhaust Ms. Rowe's Title VII claims. Plaintiff's Counsel filed Ms. Rowe's complaint on September 17, 2019.

19.     Pre-suit work was performed by me and one of two associates: Lauren B. McGlothlin, and after Ms. McGlothlin left O&G in July 2019, Shira Gelfand. We were assisted by O&G's law clerks with legal research and drafting the complaint. Work was divided to minimize duplication of efforts and to ensure that research and drafting work was being handled by lower-billing law clerks and associates.

20.     During the pre-suit phase of the litigation, including drafting and filing the complaint, O&G billed approximately 140 hours and incurred approximately $75,000 in fees.

**Discovery**

21.     Following the filing of the complaint, O&G requested and received a Notice of
Right to Sue from the EEOC and prepared and filed an amended complaint raising Ms. Rowe's
Title VII claims.[2] Counsel then prepared for and attended the Rule 26(f) conference.

22.     Early in the litigation, the Parties were required to mediate pursuant to the Second
Amended Standing Administrative Order M-10-468, of the Southern District Court of New
York. During a mediation held on March 10, 2020, before Michael Koblenz, Esq., Ms. Rowe
reiterated her initial demand, but Google did not make a settlement offer and mediation failed.

23.     Plaintiff propounded discovery requests on Defendant to obtain document
discovery, and answered discovery requests propounded by Defendant. The Parties negotiated a
confidentiality order and, with assistance from O&G's eDiscovery Counsel, Daniel Stromberg,
an ESI protocol to govern discovery of electronically-stored information. Through several
telephone conferences and correspondence, the Parties negotiated ESI custodians and search
terms to guide Defendant's document gathering. Mr. Stromberg and his team utilized advanced
tools to collect and process native ESI, and then delivered document load file production
deliverables with extracted text and metadata, pursuant to the ESI protocol the Parties had
negotiated.

24.     In March 2020, another associate Maya Jumper, joined the litigation team to assist
with the significant time-intensive work required by discovery.  Ms. Jumper drafted motions to
compel, deficiency letters, and handled several meet-and-confer conferences with opposing
counsel.

---

[2] Following the conclusion of discovery, Plaintiff dismissed her parallel federal claims to
streamline the case for trial, after Judge Schofield indicated that she would retain jurisdiction of
the case if Plaintiff did so.

25.     Google ultimately produced over 40,000 pages of discovery, which Ms. Gelfand reviewed.

26.     Between October 2020 and January 2021, Plaintiff's Counsel deposed eight witnesses and three 30(b)(6) corporate witnesses, and Defendant deposed Plaintiff twice. All of these depositions were introduced into evidence, used for impeachment during trial, or provided important context for understanding Plaintiff's claims.

27.     These depositions were conducted during the first year of the coronavirus pandemic, when it was at its height in New York City. Because Plaintiff's Counsel's office was closed in accordance with the Governor's order, Plaintiff's Counsel had to conduct all the discovery and depositions remotely, without any on-site technical support from the court-reporting company or Plaintiff's Counsel's in-house IT department. While remote depositions have become increasingly common over the past three years and remote technology has advanced considerably since the beginning of the pandemic, in October 2020 taking remote depositions on this scale was unchartered territory and Plaintiff's Counsel was required to spend additional time preparing for and conducting depositions.

28.     In December 2020, after depositions were completed, Google raised the possibility of settlement. Even though she had expended significant fees in litigation, Ms. Rowe reiterated her initial demand, but, again, Google did not make a settlement offer.

29.     In the meantime, while litigation was ongoing, Google rejected Plaintiff's application for a promotion to Vice President of Financial Services - Sales, which Plaintiff alleged was retaliatory. Google opposed Ms. Rowe's application to file a Second Amended Complaint raising these allegations even though Plaintiff clearly met the lenient standard for

amending her complaint. Plaintiff was forced to expend resources briefing this issue and arguing it before Magistrate Judge Gorenstein, and she ultimately prevailed at trial on the claim.

30.     During the discovery phase of the litigation, O&G billed approximately 2900 hours and incurred approximately $1,385,000 in fees.

**Summary Judgment**

31.     Summary judgment briefing was extensive. Google moved for summary judgment on all claims, while Plaintiff moved for summary judgment on a more limited set of claims. Google's opening 56.1 statement contained 169 paragraphs of allegations and included 44 exhibits. Plaintiff's opening 56.1 statement contained 137 paragraphs of allegations and included 100 exhibits.

32.     During the summary judgment phase of the case, Ms. Gelfand primarily worked on drafting Plaintiff's 56.1 statement and responding to Google's 56.1 statement, while Ms. Jumper primarily worked on drafting the legal argument sections of the briefs.

33.     During the summary judgment phase of the litigation, O&G billed approximately 1,500 hours and incurred approximately $715,000 in fees.

**Pre-Trial**

34.     Pursuant to the Court's October 14, 2022 order (ECF No. 225), the Parties chose to engage in private mediation before Carol Wittenberg. While preparing for an anticipated January 2023 trial date, Plaintiff and Plaintiff's counsel prepared for and attended a full-day mediation before Ms. Wittenberg. Plaintiff's Counsel prepared a written mediation statement, prepared Plaintiff for the mediation, and attended the mediation with Plaintiff on November 4, 2022. The mediation ultimately failed.

35.     During November 2022, in anticipation of a January 2023 trial date, Plaintiff's counsel set a schedule for expert discovery (ECF No. 230), served her expert report, filed five motions *in limine*, and was forced to oppose Defendant's unsuccessful letter motion to take *de bene esse* depositions for three witnesses and the accompanying motion to seal. (ECF Nos. 248, 262, 265-269, 280). In addition, on November 23, 2022, Plaintiff was required to remove redactions and re-file her entire summary judgment briefing in light of the Court's September 26, 2022 order denying, in part, Defendant's motion to seal. ECF Nos. 220, 249-253.

36.     After this case was reassigned to this Court, Plaintiff prepared for and attended a court-ordered settlement conference before Magistrate Judge Jennifer E. Willis on March 28, 2023, which failed. Plaintiff expended additional time when this case was reassigned, including by conforming the Joint Pretrial Order to this Court's preference and attending additional conferences with this Court.

37.     After the Court ordered trial to commence on August 14, Plaintiff's Counsel began trial preparations, including drafting direct and cross examination outlines, preparing a third-party witness, finalizing her exhibit list and preparing exhibits for use at trial, preparing demonstratives, drafting her opening and closing statements, preparing for arguments on exhibit and witness objections, and designating deposition testimony for unavailable witnesses.

38.     After the Court adjourned trial from August 14, 2023, to October 4, 2023, Plaintiff briefly paused trial preparation. Consequently, Plaintiff and Plaintiff's Counsel were required to schedule additional witness preparation sessions in order to keep Plaintiff's recollection fresh for trial. The Parties had understood that the adjournment to October 4, 2023 was to ensure that they would have sufficient time to present their case, and consequently planned their presentation of their respective cases to be completed within ten days.

39.     On September 15, 2023, Plaintiff's Counsel conducted a mock jury exercise. Susan Huhta, an experienced trial attorney at O&G who Plaintiff had never met, conducted the mock-cross examination of Plaintiff. Other O&G attorneys and paralegals who had not worked on the case provided feedback as mock jurors. That same month, Plaintiff's Counsel retained and worked with a jury consultant who provided feedback on Plaintiff's opening statement and jury selection strategy.

40.     On September 25, 2023, the Court notified the Parties that they would each have twelve hours to present their respective cases. As a result of the twelve-hour limitation, Plaintiff had to rework her trial strategy to limit the number of witnesses she called, condense the testimony of remaining witnesses, redesignate deposition testimony, and modify her anticipated order of presentation to establish the elements of her claims and meet her burden of proof.

41.     On October 2, 2023, during the week before trial, Plaintiff's Counsel deposed an additional Defense witness, Patricia Florissi, whom Defendant had recently identified as a trial witness.

42.     During the pre-trial phase of the litigation, O&G billed approximately 3,700 hours and incurred approximately $1,895,000 in fees.

**Trial**

43.     The trial commenced on October 10 and Plaintiff presented her case in five days and within the time allotted by the Court.  I conducted the direct examinations of Tariq Shaukat, Kevin Lucas, Stuart Vardaman, Will Grannis, and Nora Ostrofe; conducted the cross examinations of Melissa Lawrence, Kristen Kliphouse, Brian Stevens, Patricia Florissi, and Chris Humez; and delivered closing arguments. Gregory Chiarello delivered the opening statement; conducted the direct examinations of Ulku Rowe, Stuart Breslow, Nicholas Harteau,

Ashley Tessier and April Beaupain; and conducted the cross examination of Krista Callaghan. Shira Gelfand prepared a third-party witness for trial testimony, drafted five letters to the Court regarding evidentiary issues during trial (ECF Nos. 331, 333, 336, 337, and 338), prepared witness examination outlines and demonstratives, conducted the live readings of two unavailable witnesses, and researched and drafted memoranda regarding evidentiary issues that arose during trial. Vincent Yang, the principal trial paralegal, organized and displayed exhibits and deposition testimony for impeachment. Associate Amanda Chan helped research and draft the jury charge.

44.     Throughout the litigation, Plaintiff prosecuted her case leanly, with a core team of just three attorneys at any one time. During each phase of the case, each attorney played a distinct and critical role. Throughout the entire case, I was the responsible partner, supervising other attorneys and making key decisions about the litigation. During discovery and summary judgment, associates Shira Gelfand and Maya Jumper performed extensive work under my supervision, including researching and drafting letters and motions, drafting and responding to discovery requests, and reviewing over 40,000 documents. Following Ms. Jumper's departure from the Firm and the Court's summary judgement decision, Gregory Chiarello, another partner, joined the trial team, and he and I divided the work of preparing pre-trial submissions, drafting and delivering opening and closing statements, and preparing and examining witnesses. During the pre-trial and trial phases of the cases, additional attorneys performed discrete tasks, such as assisting with the pre-trial filings and a mock jury project. Lindsay Goldbrum, a senior associate, assisted during the pretrial and trial phases by conducting research, participating in trial strategy discussions, drafting letter motions to the court, preparing the Plaintiff for testimony, and reviewing and annotating trial transcripts.

45.     During the trial phase of the litigation, O&G billed approximately 700 hours and incurred approximately $390,000 in fees.

**Counsel's Litigation Support Team**

46.     Throughout the discovery, summary judgment, and pre-trial phases of the litigation, Counsel's litigation operations team provided critical support by managing the ingestion of Defendant's document production and the production of Plaintiff's documents, coordinating depositions, finalizing and filing court submissions, and preparing documents for attorney review.

47.     During trial, the Litigation Operations department compiled and organized multiple volumes of documents for attorney review, assisted in the drafting of the Joint Exhibit List, prepared copies of exhibits and transcripts for the Court's use and for use during trial, drafted and issued trial subpoenas, assisted in the preparation and filing of the pre-trial memorandum of law, and prepared the trial supplies in preparation for trial. Throughout the trial, the Litigation Operations team provided various on-site and in-office support including: tracking exhibits, printing binders, handling trial technology, managing schedules, finding record evidence, preparing and filing letter motions to the court, and assisting in the preparation of closing arguments. Robert Rivera, the Litigation Operations manager, supervised the paralegals and coordinated the various trial tasks needed to be completed daily. In addition, Vincent Yang handled the day-to-day trial technology required for presenting exhibits.

**Counsel's Request for Attorneys' Fees: The Time and Costs Expended by Plaintiff's Counsel on This Case Were Reasonable and Should be Compensated**

48.     In an exercise of billing judgment, Plaintiff's Counsel has reviewed every time record and deducted all time that was deemed, in retrospect, to have been excessive or duplicative.

49.     In addition, Plaintiff's Counsel removed all time entries billed by any timekeeper who billed, in total, less than ten hours to the matter.

50.     Further, Plaintiff's Counsel zeroed out the hourly rate for all time (7.7 hours) spent on media and press, removing an additional $5,462.50 from the lodestar.

51.     In total, Counsel removed 132.9hours, or a total of $55,808.

52.     Thus, Counsel is seeking reimbursement for 8,972.9 hours, amounting to an adjusted lodestar of $4,458,313.75.

53.     Counsel has expended additional time on this fee application and on her post-trial brief seeking equitable relief, and will submit time entries detailing the time spent together with her reply brief.

54.     **Exhibit 1** contains detailed time entries. These hours were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

55.     According to O&G's policy, a partner or senior counsel must oversee all litigations in which the firm is involved.

56.     All attorneys, paralegals, and law clerks at O&G are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. Time is kept one of two ways at O&G. It is either typed into a computer program directly by the timekeeper, or the timekeeper maintains a handwritten log of the daily time, which is then typed into the computer timekeeping program by either the timekeeper or a staff assistant. In both situations, the timekeeper indicates the date and amount of time spent on a task to one-tenth of an hour, describes the work that was performed during the specified time period, and identifies the case to which the time should be charged.

57.     Time is recorded in one of two ways (1) litigation operations team members enter each task as a separate entry, such that there are multiple entries per day. Where there are multiple entries for a day that have the same description, it is the result of the task being performed more than once in the day. For instance, if a litigation operations team member had three phone calls with a vendor, there are three separate entries reflecting "phone call with vendor." (2) Attorneys complete one entry per day, and note the amount of time spent on each task within that entry.

58.     Plaintiff's counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work. Tasks were reasonably divided among attorneys to avoid replicating work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity, such that the attorneys with higher billing rates billed time only where necessary. In addition, Plaintiff's Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well as de minimis time billed by attorneys and staff who had little participation in the actions, was removed (for example, O&G proactively removed any attorneys or support staff who worked less than ten hours on this matter).

59.     To manage time and case tasks most efficiently, throughout the case I held a weekly "case management" conference with the core team of attorneys. During these conferences, I delegated tasks to members of the case team, received updates from members of the team on the status case-related tasks that they were assigned, and answered questions and made strategic decisions about the tasks they were performing. Holding weekly case management conferences promoted efficient billing by giving junior members of the team a set time to discuss strategic questions requiring partner input, and by ensuring that work was being

performed efficiently by the lowest biller possible. Details relating to the substance of individual case management conferences are intentionally omitted from Counsel's detailed time to the extent the details reflect attorney work product.

60.     In addition, throughout the course of the litigation, the core attorney team held a weekly phone call with Plaintiff to update her on the status of the litigation and obtain her input regarding case strategy. The subject of these conversations are intentionally omitted from Counsel's detailed time records because such details would reflect attorney-client privileged communications.

**O&G's Work Should Be Reimbursed at Requested Rates**

61.     O&G's seeks reimbursement for the work performed by the following attorneys at the following hourly rates:

| Name | Position | Grad Year | Rate |
|---|---|---|---|
| Susan E. Huhta | Partner | 1994 | $850.00 |
| Cara E. Greene | Partner | 2005 | $950.00 |
| Gregory S. Chiarello | Partner | 2006 | $800.00 |
| Daniel Stromberg | Partner | 2007 | $875.00 |
| Tara K. Quaglione | Contract Attorney | 2007 | $450.00 |
| Lauren B. McGlothlin | Associate | 2014 | $450.00 |
| Maya S. Jumper | Associate | 2015 | $475.00 |
| Lindsay M. Goldbrum | Associate | 2017 | $450.00 |
| Eliana J. Theodorou | Associate | 2018 | $425.00 |
| Jennifer Davidson | Associate | 2018 | $425.00 |
| Shira Gelfand | Associate | 2018 | $425.00 |
| Amanda T. Chan | Associate | 2020 | $375.00 |

62.     These rates and the work performed by these attorneys was reasonable and necessary to the prosecution of this case and should be approved.

63.     O&G seeks reimbursement for the work performed by the following support staff at the following hourly rates: (1) $350 hour for Robert S. Rivera, Litigations Operations

Manager; Tracee A. Manettas, Litigations Operations Administrator; Jennifer LaMarch, Managing Clerk; Naomi Campusano, e-Discovery Specialist; Michaela Dougherty; Senior Paralegal; Sara Olson, Senior Paralegal; Abigail L. Robinson, Senior Paralegal – Trial Specialist; (2) $325/hour for the following Paralegals: Christopher C. Alter; Anna Bostwick; Brian D. Kouassi; Sylvie Rohrbaugh; Vincent Yang; Makaria S. Yami; and Napoleon Zapata; (3) $325/hour for law clerks; and (4) $150/hour for Hector Jacome, Office Services Clerk.

64.     O&G's hourly rates range from $650-$1500/partner, $350-$550/ associate, and $325-350/hour for litigation operations. O&G routinely and customarily charges these rates to paying clients.

65.     Over the past two years alone, I have been engaged by more than 50 clients on an hourly basis at my full hourly rate, including for arbitration. *See* **Exhibit 5.** Likewise, Gregory Chiarello has been retained on an hourly basis more than 50 times over the last two years. *See* **Exhibit 6.**

66.     The hourly work O&G performs is not limited to non-litigation work (*e.g.* advice and counsel representations, negotiations, or severance and contract review), but also includes agency filings and arbitration/litigation. Mr. Chiarello, Ms. Gelfand, myself, and other O&G attorneys with similar experience routinely perform this type of work on an hourly basis.

67.     O&G has significant experience representing executives, and has particular experience representing executives in the financial services and technology industries, including at Google.

68.     O&G's familiarity with Google and other companies' compensation, hiring, and promotion practices was crucial to O&G's ability to effectively prosecute this case.

69.     Courts across the country and in this district have consistently approved O&G's customary hourly rates. *See, e.g.*, *Chen-Oster v. Goldman Sachs, Inc.*, No. 10 Civ. 6950 (S.D.N.Y. Nov. 7, 2023), ECF No. 1467, ¶¶ 24-25 (order approving request for attorney's fees, where hourly rates included rate of $950/hour for Ms. Greene and $525/hour for Ms. Jumper); *Zamora v. Lyft, Inc.*, No. 16 Civ. 02558, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (approving rates up to $850/hour); *Gonzalez v. Pritzker*, 2016 U.S. Dist. LEXIS 131277, *12-13 (S.D.N.Y. 2016) (awarding requested $8 million+ attorney fee that constituted approximately 90% of lodestar, where lodestar was based on O&G's customary fee schedule); *Slaughter v. Sykes Enters.*, Inc., No. 17 Civ. 2038, 2019 WL 529512, at *8-9 (D. Colo. Feb 11, 2019) (approving hourly rates); *Brown v. Frontpoint Security Solutions, LLC*, No. 17 Civ. 14845 (Cir. Court of Fairfax Cnty. Va. Dec. 8, 2017) (approving settlement, including O&G's attorneys' fees); *Williams v. Metro-N. R.R. Co.*, No. 17 Civ. 3847, 2018 WL 3370678, at *5, *8 (S.D.N.Y. June 28, 2018) (awarding O&G attorneys' requested fees and noting, "Plaintiff's counsel are of the highest quality with special expertise in the law of employment discrimination"), *report and recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 10, 2018); *Ansoumana v. Gristede's Operating Corp.*, No. 00 Civ. 253, 2004 WL 504319, at *3 (S.D.N.Y. Jan. 7, 2004) (approving requested O&G billing rates, with some modification, and noting, "[O&G attorneys] showed themselves to be expert in the subject matters of these cases, zealous in pursuit of their clients' litigation objectives, persuasive and reliable in relation to adversary counsel and the court, and altogether deserving of the rate they request.").

**Counsel's Litigation Costs**

70.     Counsel's un-reimbursed fees and expenses were necessary to the representation. O&G routinely bills hourly individual clients for each of these types of costs, and Ms. Rowe is responsible for these costs under her retention agreement with O&G.

71.     These expenses include costs related to computerized legal research, courier services, court fees, court reporting services for depositions, document management software, expert fees, FedEx costs, a jury consultant, meals, mediation fees, postage, printing costs, subpoena fees, office supplies necessary for preparing binders, travel in the form of late-night taxis home and taxi fare between the Court and Plaintiff's office during trial, and trial software.

72.     A chart summarizing O&G's litigation costs is attached as **Exhibit 2**.

73.     A chart detailing O&G's litigation costs is attached as **Exhibit 3.** This chart was prepared by O&G's accounting department. O&G's accounting department calculates printing costs by requiring the entry of a billing code for each print job. Printing jobs are charged at 15 cents per page. O&G's accounting department maintains receipts and invoices for all other costs sought. O&G maintains a corporate account with Uber, and receives a monthly bill for Uber travel. O&G attorneys and staff using the corporate account enter the associated matter number so that accounting can attribute travel to particular matters. O&G attorneys and staff may also incur taxi expenses on their own and submit receipts for reimbursement; both scenarios are reflected in the detailed cost exhibit.

74.     O&G retained the following experts who provided the following services related to the prosecution of this matter: JS Held LLC – plaintiff's economic expert, and David Perrott & Associates – Plaintiff's jury consultant. In addition, Plaintiff compensated two voice actors, Albert Pero and Joshua Brandenburg, for their time associated with reading deposition

transcripts into the record.

**Exhibits**

75.     Attached as **Exhibit 1** are compiled contemporaneous time records maintained by each attorney, paralegal, and support staff of O&G for whom we are requesting fees for this work on this matter through October 27, 2023.

76.     Attached as **Exhibit 2** is a summary of out-of-pocket expenses incurred by O&G.

77.     Attached as **Exhibit 3** are detailed entries maintained by O&G's accounting department showing the individual expenses incurred in connection with the prosecution of this matter.

78.     Attached as **Exhibit 4** is a true and correct copy of biographical information for the O&G attorneys and support staff who worked on this matter.

79.     Attached as **Exhibit 5** are true and correct redacted client retainer agreements from 2022 and 2023, which are examples of clients retaining me at my regularly hourly rate to perform work on their behalf.

80.     Attached as **Exhibit 6** are true and correct redacted client retainer agreements from 2022 and 2023, which are examples of clients retaining Gregory Chiarello at his regularly hourly rate to perform work on their behalf.

81.     Attached as **Exhibit 7** is the affidavit of David Sanford.

82.     Attached as **Exhibit 8** is the affidavit of Rachel Geman.

83.     Attached as **Exhibit 9** is a copy of the article: Nitasha Tiku, *Google Ends Forced Arbitration After Employee Protest*, Wired, (Feb. 21, 2019).

84.     Attached as **Exhibit 10** is a copy of the article: Caitlin Harrington, *This Exec Is Forcing Google Into Its First Trial Over Sexist Pay Discrimination*, Wired, (Oct. 2, 2023).

85.     Attached as **Exhibit 11** is a copy of the article: Caitlin Harrington, *This Woman Exec Beat Google in Court – And Hopes Others Follow*, Wired (Oct. 24, 2023).

\*       \*       \*

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in New York, New York on November 22, 2023.

*/s/ Cara E. Greene*
                  Cara E. Greene