**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ULKU ROWE, | |
| Plaintiff, | Civil Action No. 19-cv-08655 (JHR) |
| v. | |
| GOOGLE LLC, | **Oral Argument Requested** |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR INSTATEMENT,
PERMANENT INJUNCTION, AND OTHER POST JUDGMENT RELIEF**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

ARGUMENT .................................................................................................................. 3

    I.    Plaintiff is Entitled to be Made Whole for the Damage Caused by Google's Discrimination and Retaliation, and Instatement is the Preferred Remedy ........... 3

        A.    Instatement to Level 9 is Appropriate and Necessary to Make Plaintiff Whole ...................................................................................................... 7

        B.    Instatement to the VPFS-Sales Position or a Similar Role is Appropriate and Necessary to Make Ms. Rowe Whole .................................................. 9

            1.    Plaintiff's Entitlement to Make Whole Relief Outweighs any Countervailing Concerns Google May Raise ............................... 11

            2.    In Lieu of Reinstatement to the VPFS-Sales Position, the Court Should Award Plaintiff Front Pay ................................................. 12

    II.    Declaratory Relief and a Permanent Injunction is Necessary Here, Given that Ms. Rowe Remains Employment and Google Has Engaged in a Pattern of Retaliation ................................................................................................... 14

    III.    Plaintiff is Entitled to a Gross-up to Compensate for Adverse Tax Consequences ................................................................................................. 19

    IV.    Plaintiff is Statutorily Entitled to Pre- and Post-Judgment Interest ..................... 20

        A.    Pre-Judgment Interest ............................................................................ 20

        B.    Post-Judgment Interest ........................................................................... 22

CONCLUSION ............................................................................................................. 22

**<u>TABLE OF AUTHORITIES</u>**

**CASES**                                                                            **PAGE(S)**

*Albemarle Paper Co. v. Moody*,
 422 U.S. 405 (1975)...................................................................................6, 16

*Allen v. Autauga Cnty. Bd. of Educ.*,
 685 F.2d 1302 (11th Cir. 1982) .................................................................5

*Antoine v. Brooklyn Maids 26, Inc.*,
 489 F. Supp. 3d 68 (E.D.N.Y. 2020) .......................................................13

*Beame v. DeLeon*,
 87 N.Y.2d 289 (N.Y. App. Div.1995) ........................................................4

*Brock v. Casey Truck Sales*, *Inc.*,
 839 F.2d 872 (2d Cir. 1988)........................................................................6

*Brooks v. Travelers Ins. Co.*,
 297 F.3d 167, 170 (2d Cir. 2002)...............................................................5

*Brown v. Trs. of Bos. Univ.*,
 891 F.2d 337 (1st Cir. 1989).......................................................................7

*Bullen v. Chaffinch*,
 336 F. Supp. 2d 357, 359 (D. Del. 2004)...................................................5

*Burlington N. & Santa Fe Ry. v. White*,
 548 U.S. 53 (2006).....................................................................................17

*Chauca v Abraham*,
 30 NY3d 325 (2017) ............................................................................8, 21

*Chen-Oster v. Goldman*,
 251 F. Supp. 3d 579 (S.D.N.Y. 2017).................................................5, 12

*Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*,
 No. 09 Civ. 5251, 2014 U.S. Dist. LEXIS 103748 (E.D.N.Y. July 29, 2014) .........................6

*Cox v. Anjin LLC*,
 No. 19 Civ. 4315, 2020 U.S. Dist. LEXIS 132652 (S.D.N.Y. July 24, 2020).......................22

*DeCurtis v. Upward Bound Int'l, Inc.*,
 No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001 (S.D.N.Y. Sep. 27, 2011) .......................13

*EEOC v. Local 638*,
 565 F.2d 31 (2d Cir. 1977).......................................................................16

*EEOC v. United Health Programs of Am.*,
   350 F. Supp. 3d 199 ..................................................................................18

*Emamian v. Rockefeller Univ.*,
   2023 U.S. Dist. LEXIS 72623 (S.D.N.Y. Apr. 26, 2023).........................................22

*Epter v. N.Y.C. Transit Auth.*,
   216 F. Supp. 2d 131 (E.D.N.Y. 2002) ...............................................................7

*Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt.*,
   No. 18 Civ. 1564, 2023 U.S. Dist. LEXIS 175084 (S.D.N.Y. Sep. 29, 2023) ........................4

*Firefighters Local Union No. 1784 v. Stotts*,
   467 U.S. 561 (1984).................................................................................6

*Franks v. Bowman Transp. Co.*,
   424 U.S. 747 (1976)..............................................................................6, 16

*Gibson v. Am. Broad. Cos.*,
   892 F.2d 1128 (2d Cir. 1989)........................................................................16

*Gilbert v Hotline Delivery*,
   No. 00 Civ. 160, 2001 US Dist. LEXIS 9876 (S.D.N.Y. July 10, 2001)................................20

*Greenbaum v. Svenska Handelsbanken*,
   979 F. Supp. 973 (S.D.N.Y. 1997)....................................................................11

*Gulino v Bd. of Educ. of the City Sch. Dist. of NY*,
   No. 96 Civ. 8414, 2016 US Dist. LEXIS 102216 (S.D.N.Y. Aug. 3, 2016) .............................19

*Gunby v. Pa. Elec. Co.*,
   840 F.2d 1108 (3d Cir. 1988).....................................................................7, 12

*Indyk v. Habib Bank Ltd.*,
   694 F.2d 54 (2d Cir. 1982)...........................................................................3

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005).................................................................................16

*James v. Norton*,
   176 F. Supp. 2d 385 (E.D. Pa. 2001) .................................................................5

*Jones v. Charter Commcns. LLC*,
   No. 18 Civ. 5953, 2019 U.S. Dist. LEXIS 67914 (E.D.N.Y. Apr. 18, 2019)...........................13

*Julian v. City of Hous.*,
   314 F.3d 721 (5th Cir. 2002) .....................................................................5, 13

iv

*Lewis v. Am. Sugar Refining, Inc.*,
  No. 14 Civ.02302, 2018 U.S. Dist. LEXIS 139223 (S.D.N.Y. Aug. 15, 2018) ....................18

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)...........................................................................................8, 16

*NLRB v. Thalbo Corp.*,
  171 F.3d 102 (2d Cir. 1999)...........................................................................................9, 16

*Otero v. Colligan*,
  No. 99 Civ. 2378, 2006 U.S. Dist. LEXIS 29991 (D. Conn. May 17, 2006) ............................5

*Padilla v. Metro-N. Commuter R.R.*,
  92 F.3d 117 (2d Cir. 1996)...........................................................................................13, 14

*Perez v. Progenics Pharms., Inc.*,
  204 F. Supp. 3d 528 (S.D.N.Y. 2016) ..............................................................................14

*Picinich v. UPS*,
  No. 01 Civ. 01868, 2005 U.S. Dist. LEXIS 38212 (N.D.N.Y. Dec. 23, 2005),
  *aff'd in part, vacated in part*, 236 F. App'x 663 (2d Cir. 2007)..............................................21

*Reiter v. MTA N.Y.C. Transit Auth.*,
  457 F.3d 224 (2d Cir. 2006)...........................................................................................5, 9

*Roach v. Morse*,
  440 F.3d 53 (2d Cir. 2006)...............................................................................................17

*Robinson v. Blank*,
  No. 11 Civ. 2480, 2013 U.S. Dist. LEXIS 71471 (S.D.N.Y. May 20, 2013).........................12

*Robinson v. Instructional Sys.*,
  80 F. Supp. 2d 203 (S.D.N.Y. 2000)..................................................................................21

*Sayigh v. Pier 59 Studios, L.P.*,
  No. 11 Civ. 1453, 2015 U.S. Dist. LEXIS 27139 (S.D.N.Y. Mar. 5, 2015).........................22

*Serricchio v. Wachovia Sec. LLC*,
  658 F.3d 169 (2d Cir. 2011)...............................................................................................5

*Shea v. Icelandair*,
  925 F. Supp. 1014 (S.D.N.Y. 1996)..................................................................................12

*Short v. Manhattan Apartments, Inc.*,
  916 F. Supp. 2d 375 (S.D.N.Y. 2012)................................................................................15

*Shorter v. Hartford Fin. Servs. Grp., Inc.*,
  No. 03 Civ 0149, 2005 U.S. Dist. LEXIS 19902 (D. Conn. May 31, 2005) .........................13

v

*Simmons v. N. Y. City Transit Auth.*,
  No. 02 Civ. 1575, 2008 U.S. Dist. LEXIS 59086 (E.D.N.Y. July 30, 2008) ........................22

*Squires v. Bonser*,
  54 F.3d 168 (3d Cir. 1995)..................................................................................................12

*Thomas v. iStar Fin., Inc.*,
  629 F.3d 276 (2d Cir. 2010)................................................................................................21

*Vera v. Alstom Power, Inc.*,
  189 F. Supp. 3d 360 (D. Conn. 2016).................................................................................6

*Whittlesey v. Union Carbide Corp.*,
  742 F.2d 724 (2d Cir. 1984)........................................................................................11, 14

*Wickham Contr. Co. v Local Union No. 3, Intl. Bhd. of Elec. Workers*,
  955 F.2d 831 (2d Cir. 1992)................................................................................................20

*Williams v. N. Y. C. Hous. Auth.*,
  872 N.Y.S.2d 27 (N.Y. App. Div. 2009) ..............................................................................4

*Wilson v. Phoenix House*,
  42 Misc. 3d 677 (N.Y. Sup. Ct. 2013) ...............................................................................15

*Wilson v. Phoenix House*,
  978 N.Y.S.2d 748 (N.Y. Sup. Ct. 2013) ...............................................................................4

**STATUTES**

26 U.S.C. § 104..........................................................................................................................19

N.Y.C. Admin. Code § 8-101 ....................................................................................................15

N.Y.C. Admin Code § 8-120(a)...................................................................................................4

N.Y.C. Admin. Code § 8-130(c)..................................................................................................4

N.Y.C. Admin Code. § 8-502(a).............................................................................................4, 15

N.Y. C.P.L.R. § 5001 .................................................................................................................21

N.Y. C.P.L.R. § 5002 .................................................................................................................22

N.Y. C.P.L.R. § 5004 ........................................................................................................1, 21, 22

N.Y. Lab. Law § 215 ..........................................................................................................3, 10, 13

**OTHER AUTHORITIES**

Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights*, 33 Fordham Urb. L.J. 255 (2006) ..............................................4, 10

How to Calculate Post Judgment Interest,
https://www.nysd.uscourts.gov/forms/how-calculate-post-judgment-interest
(last visited Nov. 21, 2023) .....................................................................................................22

Internal Revenue Service, IRS Provides Tax Inflation Adjustments For Tax Year
2023, https://www.irs.gov/newsroom/irs-provides-tax-inflation-adjustments-
for-tax-year-2023 (last visited Nov. 21, 2023) ......................................................................20

Internal Revenue Service, Tax Implications of Settlements and Judgments,
https://www.irs.gov/government-entities/tax-implications-of-settlements-and-
judgments#:~:text=Damages%20received%20for%20non%2Dphysical,subjec
t%20to%20Federal%20employment%20taxes (last visited Nov. 21, 2023) ..........................19

## PRELIMINARY STATEMENT

Plaintiff Ulku Rowe ("Ms. Rowe" or "Plaintiff"), having prevailed against Google LLC ("Google") on her claims of gender discrimination under the New York City Human Rights Law ("NYCHRL"), and retaliation under the NYCHRL and the New York Labor Law ("NYLL"), moves the Court pursuant to Fed. R. Civ. P. 57, 59, and the powers inherent to this Court for statutory and equitable relief pleaded in her Second Amended Complaint ("SAC"), ECF No. 108, as follows:

(1) an order instating Plaintiff to Level 9 (SAC, Prayer for Relief (C), (D));

(2) an order instating Plaintiff to the 2020 Vice President, Financial Services – Sales position, or front pay in lieu of instatement (*id.,* Prayer for Relief (C), (D), (E));

(3) a declaration that Google's actions violated the NYLL and NYCHRL, and a permanent injunction barring Google from further violations of the NYLL and the NYCHRL against Plaintiff (*id.*, Prayer for Relief (A), (B));

(4) an order directing Google to provide such monetary amounts necessary to offset tax consequences to Plaintiff caused by the jury's award of compensatory and punitive damages (*id.*, Prayer for Relief (H)); and

(5) pre- and post-judgment interest (*id.*, Prayer for Relief (I); N.Y. C.P.L.R. 5004(a)).

## FACTUAL BACKGROUND

In October 2023, over seven days of trial, the Court and the jury heard evidence of Google's discrimination against Ms. Rowe, spanning the entirety of her nearly seven years with the Company, including hiring her as a Level 8 while hiring comparable men at a Level 9. The

Court and jury also heard evidence of how Google retaliated against Ms. Rowe after she raised protected complaints, including by denying her the Vice President Financial Services – Sales ("VPFS-Sales") role in 2020. Ultimately, the jury found that Google had both discriminated and retaliated against Ms. Rowe in violation of the NYCHRL and NYLL.

At trial, Ms. Rowe produced substantial evidence of gender-based discrimination with respect to Google's leveling decisions. Ms. Rowe offered, and the jury accepted, evidence that Google under-leveled her as a Level 8, that it leveled similarly-situated men at Level 9, and that gender was the basis for Google's differential treatment of her, including that five Level 9 men were similarly situated at hire, performed comparable work, and received favorable treatment. (*See*, *e.g.*, Plaintiff's ("Pl.") Exhibits ("Ex.") 11, 57, 88, 108, 116, 118, 119, 120, 121; Trial Transcript ("Tr.") 123:1-139:5, 142:1-144:2, 320:22-321:1, 938:10-13, 941:14-942:2, 981:12-17, 985:24-986:1, 990:24-991:5, 1003:10-1004:7, 1013:19-1014:1).[1]

In addition, Will Grannis, Ms. Rowe's manager, described her as having Level 10 potential (Pl. Ex. 113, Trial Tr. 807:6-8), being the logical choice to lead the Financial Services vertical, even though it would have meant that Level 9 men reported to a Level 8 woman (Trial Tr. 781:8-20), and the best-suited person to manage the existing industry leads within OCTO (Pl. Ex. 7, Trial Tr. 782:8-784:7). From this evidence the jury correctly concluded that Google discriminated against Ms. Rowe at least in part because of gender.

Ms. Rowe also offered, and the jury accepted, evidence that her complaints of under-leveling and unequal pay were a motivating factor in Google's decision not to consider her for

---

[1] "Pl. Ex." and "Def. Ex." refer, respectively, to Plaintiff's and Defendant's trial exhibits, copies of which were previously provided to the Court. Plaintiff can provide additional courtesy copies of any exhibit cited in this brief at the request of the Court. Citations to the trial transcript are attached as Exhibit A to the Declaration of Gregory S. Chiarello.

the VPFS-Sales role in 2020. (*See, e.g.,* Pl. Exs. 108, 111; Trial Tr. 577:1-9, 580:8-581:10,

590:8-593:11, 1267:12-20). Notably, retaliation was the only legal theory Ms. Rowe posited for

Google's denial of the VPFS-Sales position. (10/10/23 Voir Dire Trial Tr. 7:13-18). The

evidence established that Stuart Vardaman, the Google recruiter for the VPFS-Sales position,

retaliated against Ms. Rowe by refusing to consider her for the position after she filed the

complaint in this action. (*See, e.g.*, Def. Exs. 74, 76, 77, 78; Trial Tr. 595:20-599:14, 683:25-

684:9, 685:6-10, 692:7-9, 1267:12-20).

On October 20, 2023, after almost six hours of deliberations, the jury returned a verdict in

favor of Plaintiff, checking "Yes" on the Verdict Form that Ms. Rowe had established by a

preponderance of the evidence her claims that Google had: (a) treated her less well, at least in

part, on account of her gender (Question #4), (b) retaliated against her in violation of the New

York City Human Rights Law (Question #5), and (c) retaliated against her in violation of the

New York Equal Pay Law (Question #6). (Verdict Form (Court Ex. 8, ECF No. 340)). Ms. Rowe

now seeks equitable and injunctive relief from the Court in order to be made whole for the harm

caused to her by Google's unlawful discrimination and retaliation.

## **ARGUMENT**

I.   **Plaintiff is Entitled to be Made Whole for the Damage Caused by Google's Discrimination and Retaliation, and Instatement is the Preferred Remedy.[2]**

The NYLL provides for broad equitable remedies, granting courts jurisdiction to "order

all appropriate relief" including injunctive relief and to order "rehiring or reinstatement of the

employee" with seniority, "or an award of front pay in lieu of reinstatement." N.Y. Lab. Law §

215(2)(a). Similarly, the NYCHRL's expansive employee protections, guided by the statute's

---

[2] The grant of equitable relief is a determination solely for the trial court. *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982).

well-recognized "uniquely broad and remedial purposes," extend to the application of make-whole remedies as well. *Williams v. N. Y. C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009) (the NYCHRL's "uniquely broad and remedial purposes . . . go beyond those of counterpart State or federal civil rights laws"). The Court must therefore independently and liberally consider Ms. Rowe's motion in light of the NYCHRL's purposes, which include "'meld[ing] the broadest vision of social justice with the strongest law enforcement deterrent.'" *Id.* at 32 (quoting Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law*, 33 Fordham Urb. L. J. 255, 258 (2006)); *see also* N.Y.C. Admin. Code § 8-130(c) (explicitly incorporating the majority opinion in *Williams*); *Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt.*, No. 18 Civ. 1564, 2023 U.S. Dist. LEXIS 175084, at *44-45 (S.D.N.Y. Sep. 29, 2023) (NYCHRL's remedial purposes "go beyond those of counterpoint State or federal civil rights laws.") (quoting *Williams*, 872 N.Y.S.2d at 31)).

The NYCHRL expressly provides for equitable and injunctive relief, like that Plaintiff seeks here. *See* N.Y.C. Admin Code. § 8-502(a) (aggrieved plaintiffs may seek compensatory and punitive damages, as well as "injunctive relief and such other remedies as may be appropriate"); *see also Wilson v. Phoenix House*, 978 N.Y.S.2d 748, 770 (N.Y. Sup. Ct. 2013) ("Clearly, injunctive relief is available under the City's Human Rights Law."). In empowering the City Commission on Human Rights to order the "hiring, reinstatement or upgrading of employees" and the award of "front pay" upon a finding of discriminatory treatment, the NYCHRL further highlights the availability of these and other forms of equitable relief. *See* N.Y.C. Admin Code § 8-120(a); *Beame v. DeLeon*, 87 N.Y.2d 289, 296 (N.Y. App. Div.1995) (orders of "hiring, reinstatement or upgrading of employees" are among the remedies available under NYCHRL) (quoting N.Y.C. Admin. Code § 8-120(a)).

Such remedies are well-recognized in employment cases, even outside of the context of the NYCHRL and NYLL. Indeed, instatement to a position wrongfully denied (or reinstatement to a position wrongfully terminated) is "the preferred remedy to compensate an aggrieved party for loss of future earnings as a result of illegal, adverse employment actions." *Otero v. Colligan*, No. 99 Civ. 2378, 2006 U.S. Dist. LEXIS 29991, at \*49 n.11 (D. Conn. May 17, 2006) (quoting *Bullen v. Chaffinch*, 336 F. Supp. 2d 357, 359 (D. Del. 2004); *see also id.* (treating instatement, "[t]he equitable remedy of ordering promotion to a position illegally denied," and reinstatement alike) (quoting *Bullen v. Chaffinch*, 336 F. Supp. 2d at 358)); *James v. Norton*, 176 F. Supp. 2d 385, 392 (E.D. Pa. 2001) (recognizing instatement is a "preferred remedy to avoid future lost earnings" because "a plaintiff who is denied a position because of discrimination loses not only income but other benefits less easy to quantify"); *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 193 (2d Cir. 2011) ("[O]ur Circuit favors reinstatement as a remedy in employment cases generally."); *Chen-Oster v. Goldman*, 251 F. Supp. 3d 579, 590-92 (S.D.N.Y. 2017) (Title VII and NYCHRL claims; noting Second Circuit has "long expressed its 'overarching preference in employment discrimination cases for reinstatement'") (citation omitted); *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 230 (2d Cir. 2006) (Second Circuit and others have "repeatedly emphasized the importance of equitable relief in employment cases") (citing *Brooks v. Travelers Ins. Co.*, 297 F.3d 167, 170 (2d Cir. 2002) (under Title VII reinstatement has been interpreted as the first choice); *see also Allen v. Autauga Cnty. Bd. of Educ.*, 685 F.2d 1302, 1305 (11th Cir. 1982) (reinstatement required "except in extraordinary cases")); *Julian v. City of Hous.*, 314 F.3d 721, 728-29 (5th Cir. 2002) ("In a failure to promote case, the preferred remedy is *instatement* to an illegally denied position") (emphasis in original).

The rationale for this clear policy preference is well-established. A key purpose of anti-discrimination laws is "to make persons whole for injuries suffered on account of unlawful employment discrimination," *i.e.*, to "secur[e] complete justice," including by placing the employee "as near as may be, in the situation [s]he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975) (citations and internal quotation marks omitted). Therefore, as the Supreme Court has instructed, courts should use "wide discretion" to "exercise[e] their equitable powers to fashion **the most complete relief possible**" in employment discrimination cases, which requires not only "the elimination" of "unlawful practice[]s" but also "that persons aggrieved . . . be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 582 n.15 (1984) (emphasis added, citations and internal quotation marks omitted).

As a result, courts regularly grant instatement or reinstatement in order to make a plaintiff whole following a finding of discriminatory or retaliatory treatment. *See*, *e.g.*, *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 758, 771 (1976) (denial of seniority status previously withheld based on racial discrimination is permissible only for reasons that "would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."); *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 881 (2d Cir. 1988)("[O]rdinarily the full measure of relief, including reinstatement, is the appropriate remedy under [the FLSA]"); *Vera v. Alstom Power, Inc.,* 189 F. Supp. 3d 360, 392 (D. Conn. 2016) (ordering reinstatement to "former or an equivalent position, with the salary that [plaintiff] would have had . . . with the same benefits, seniority, rights, and privileges that she would have had"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251,

6

2014 U.S. Dist. LEXIS 103748, at *15 (E.D.N.Y. July 29, 2014) (salary upon reinstatement should include raises of which plaintiff was deprived); *Epter v. N.Y.C. Transit Auth.*, 216 F. Supp. 2d 131, 135 (E.D.N.Y. 2002) ("[R]einstatement with retroactive seniority is usually necessary to make the plaintiff whole"); *see also Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1110-11 (3d Cir. 1988) (vacating denial of post-judgment equitable relief and remanding for further findings as to what type of relief (including instatement to promotion at a similar salary and grade level) would be appropriate where Title VII verdict in plaintiff's favor "required a 'make whole' remedy"); *Brown v. Trs. of Bos. Univ.,* 891 F.2d 337, 340, 361 (1st Cir. 1989) (affirming reinstatement of professor with tenure, where university had denied tenure due to discrimination).

As the court held in *Brown*, once a finding of unlawful discrimination has been made, "the [employer's] prerogative to make . . . decisions must be subordinated to the goals embodied in [the applicable anti-discrimination law]." *Brown*, 891 F.2d at 359-60.

## A.   Instatement to Level 9 is Appropriate and Necessary to Make Plaintiff Whole.

The Court should grant Ms. Rowe the equitable remedy of instatement to Level 9. Such relief is well-supported by the jury verdict, which found Google liable for gender discrimination. Ms. Rowe's primary theory of discrimination was that Google's decision to level Ms. Rowe as a Level 8 while leveling five comparable men as Level 9 was based, at least in part, on her gender. Ms. Rowe's original internal complaints raised precisely this issue. (*See* Plaintiff's Exs. 42, 54 (stating concerns of under-leveling at hire, as compared to men)).

While Ms. Rowe did make other allegations of discrimination (namely, that Tariq Shaukat treated her less well and promoted Stuart Breslow instead of her to the interim Financial Services Vertical Lead ("FSVL") position), the Court may reasonably infer that the jury's

finding of gender discrimination applies to all allegations, or at a minimum to the leveling

allegation. This is especially so in light of the jury's verdict and compensatory and punitive

damages award. The jury, after being correctly instructed on the standard for damages, awarded

substantial compensatory and punitive damages to Ms. Rowe – $1.15 million in total – strongly

suggesting that the verdict was based, at least in part, on the jury's finding that Google had

discriminatorily under-leveled Ms. Rowe at hire, and that Google knew about the problem, but

never fixed it. (*See* Jury Charge, Tr. 1455:20-23 ("Punitive damages are intended to protect the

community and to be an expression of the jury's indignation at a defendant's misconduct"));

*Chauca v Abraham*, 30 NY3d 325, 331 (2017) (punitive damages "may only be awarded for

exceptional misconduct which transgresses mere negligence") (quotation omitted). That the jury

did not award Ms. Rowe economic damages in no way contradicts that the jury's discrimination

verdict was premised on Ms. Rowe's leveling claims – in leveling her lower than comparable

men, Google treated Ms. Rowe less well *even if* no economic damages flowed from that leveling

decision.[3] *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir.

2013) ("the NYCHRL does not require either materially adverse employment actions or severe

and pervasive conduct . . . ," but rather, "focuses on unequal treatment based on gender --

regardless of whether the conduct is 'tangible' (like hiring or firing)….").

     Instatement to Level 9 is necessary to make Ms. Rowe whole, especially going forward,

as it is plainly meaningful to be a Level 9 employee at Google. The jury heard evidence at trial

---

[3] The jury's decision not to hold Google liable for NYLL equal pay violations or award back pay
damages has no impact on the equitable relief Ms. Rowe now seeks. The reasonable inference
from the verdict is that the jury found discrimination and retaliation but not an equal pay
violation or the need for back pay because it accepted Google's evidence and arguments that Ms.
Rowe earned equal or more pay than her Level 9 male peers. (*See generally* Tr. 1148-1159,
1402-07; Defendant's Demonstrative A).

that part of Tariq Shaukat's reasoning for not considering Ms. Rowe for the interim Financial

Services Vertical Lead role was that it would have meant she, an L8, would have been

supervising an L9 (Breslow). *See* Pl. Ex. 108 at 7 (it "made life easier not having an L8 in

control of an L9"). Google's own witnesses testified that Level 8 employees are almost never

considered for Level 10 positions. (Trial Tr. 774:23-775:21). Without a correction to her level,

Ms. Rowe will remain at a perpetual disadvantage for all future roles she seeks. Moreover, there

are direct future financial consequences to Ms. Rowe, as the upper range of earning potential for

both base compensation and bonus is greater for Level 9 employees. (*Id.* 773:14-774:22). Under

these circumstances, courts have a "responsibility . . . to fashion equitable relief to make the

claimant whole," including through instatement. *Reiter*, 457 F.3d at 230 (quoting *NLRB v.

Thalbo Corp.*, 171 F.3d 102, 110 (2d Cir. 1999).

Accordingly, based on the jury's finding of gender discrimination, Ms. Rowe should be

instated to the level she would have held absent Google's discrimination: Level 9.

**B.     Instatement to the VPFS-Sales Position or a Similar Role is Appropriate and Necessary to Make Ms. Rowe Whole.**

The jury's verdict that Google retaliated against Ms. Rowe under the NYLL requires she

be instated to the VPFS-Sales position at the VP level (10) and compensation.[4] Namely, the

jury's verdict of retaliation in violation of the NYLL was necessarily premised on Google's

denial of the VPFS-Sales role to Ms. Rowe. Ms. Rowe did not raise an equal pay complaint until

2019, when she filed the Complaint in this case; Ms. Rowe's internal complaints focused

exclusively on leveling as relates to her gender and her consideration for the FSVL position.

(*Compare* Plaintiff's Exs. 42, 54 *with* Complaint (ECF No. 1)). Accordingly, the jury's verdict

---

[4] If the Court orders instatement to the VPFS-Sales role at Level 10, then Plaintiff's request to instatement at Level 9 is moot.

that Google retaliated against Ms. Rowe in violation of the NYLL is necessarily premised on Google's failure to consider Ms. Rowe for the VPFS-Sales position – the only adverse action subsequent to her equal pay complaints.

In addition, Ms. Rowe need not show she was more qualified than the person who ultimately received the position in order to obtain the relief she now seeks. Google unlawfully failed to consider Ms. Rowe for the VPFS-Sales position in retaliation for her protected complaints, and it cannot now avoid making Ms. Rowe whole for that retaliation by speculating that someone else would have received the position even if she had been considered. The NYCHRL intentionally omits the so-called "Same Decision" defense for employers – that no damages may be sustained where the employer would have reached the same hiring conclusion regardless of whether discrimination is found. "Rather than excluding damages in disparate impact cases and in mixed motive cases, as the Civil Rights Act of 1991 did in connection with Title VII cases, the City Human Rights Law contains no such exclusion." Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights*, 33 Fordham Urb. L.J. 255, 285.  This is a critical difference between Title VII and NYCHRL, and the exclusion of a "Same Decision" defense reinforces "the fundamental policy of the law the idea that discrimination must 'play no role.'" *Id.*[5] Thus, the verdict of retaliation under NYLL alone warrants Ms. Rowe's instatement to the VPFS-Sales role. N.Y. Lab. Law § 215 (where "entity in violation is an employer, [proper relief includes] ordering rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement," in addition to monetary damages).

---

[5] Plaintiff maintains that Judge Schofield's *In Limine* ruling permitting evidence of Yolande Piazza's qualifications was error.

In any event, Ms. Rowe was and is well-qualified for the VPFS-Sales role, or an appropriately similar position within Google. Ms. Rowe has a Bachelor of Science in Computer Science, a Master of Science in Computer Engineering, and nearly 30 years of experience in the financial services industry, including as the Global Head and Chief Technical Officer ("CTO") of Credit Risk Technology at JPMorgan Chase. She has nearly seven years of experience at Google in OCTO as a Technical Director, a role with considerable overlap with the VPFS-Sales role. (*Compare* Pl. Ex. 3 *with* Def. Ex. 75). The trial evidence demonstrated that Ms. Rowe has extensive knowledge of and contacts in the Financial Services industry and sales-related experience through her role in OCTO working to convince financial services companies to use Google's Cloud services.[6] (Trial Tr. 188:25-191:15.)

1. **Plaintiff's Entitlement to Make Whole Relief Outweighs any Countervailing Concerns Google May Raise**

There are only a few reasons for denying a plaintiff the preferred remedy of instatement, the primary reason being where there is "too much animosity between the parties for such relief to be appropriate." *Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973, 987 (S.D.N.Y. 1997) (citing *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (reinstatement may not be possible where "the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation."). Here, however, Ms. Rowe remains employed by Google and there is no evidence of animosity between the parties that would prevent Ms. Rowe from holding the VPFS-Sales position. If anything, instatement would

---

[6] To the extent Google tries to argue that Plaintiff is not qualified for a VP-level position, Plaintiff's qualifications are comparable, if not superior, to those held by the current VPFS-Sales, Yolande Piazza, who had limited sales and no cloud experience prior to joining Google. *See* Tr. 678:5-679:14; *see also* Tr. 193:5-194:21.

11

reduce animosity, as the VPFS-Sales role has a different reporting line than her current position in OCTO.

Displacement also does not warrant denial of instatement or reinstatement where the equities tip in a plaintiff's favor, as they do here. *See Shea v. Icelandair*, 925 F. Supp. 1014, 1031-32 (S.D.N.Y. 1996) (reinstatement may be appropriate even when it would effectively displace another employee where the equities weigh in favor of reinstatement). Even if the VPFS-Sales position remains filled, Ms. Rowe could be placed in another position with a similar level, salary, and rank. *See, e.g.*, *Robinson v. Blank*, No. 11 Civ. 2480, 2013 U.S. Dist. LEXIS 71471, at *13 (S.D.N.Y. May 20, 2013) (courts may order "the reinstatement of employees in different positions for which they are qualified where their original position was eliminated or to positions in different geographic locations") (internal citations omitted). Alternatively, Ms. Rowe's level and compensation could be adjusted to that of a VP until an equivalent VP position becomes available. *See Gunby*, 840 F.2d at 1123-24 ("alternative remedies" may include the promotion to a "grade level 20 position and a raise in salary equal to that of a grade level 20 position until . . . a grade level position for which he is qualified becomes available.") Because Ms. Rowe is entitled to make-whole relief and because instatement supports "make-whole relief and deterrence in a way which money damages cannot," the Court should grant Ms. Rowe's motion. *Chen-Oster*, 251 F. Supp. 3d at 590 (quoting *Squires v. Bonser*, 54 F.3d 168, 172-73 (3d Cir. 1995)).

### 2.    In lieu of Reinstatement to the VPFS-Sales Position, the Court Should Award Plaintiff Front Pay.

To the extent the Court finds that instatement to the VPFS-Sales position is infeasible, it should order front pay to compensate Ms. Rowe for future lost earnings resulting from Google's discriminatory and retaliatory denial of the VPFS-Sales position. Infeasibility does not absolve

12

Google from its obligation to make Ms. Rowe whole. Rather, it necessitates payment of front pay in lieu of instatement as a way of "effectuat[ing] the purposes of anti-discrimination law." *DeCurtis v. Upward Bound Int'l, Inc.,* No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001, at *10 (S.D.N.Y. Sep. 27, 2011) (citing *Padilla v. Metro-N. Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996) (Front pay serves a "necessary role" in making victims whole where reinstatement is not possible and where plaintiff has "no reasonable prospect of obtaining comparable alternative employment."); *Julian v. City of Houston,* 314 F.3d 721, 728 (5th Cir. 2002) (finding that if instatement is not feasible because a position no longer exists or because of the animosity between the parties, an award of front pay as compensation for future lost wages may be appropriate); *Shorter v. Hartford Fin. Servs. Grp., Inc.,* No. 03 Civ 0149, 2005 U.S. Dist. LEXIS 19902, at *7 (D. Conn. May 31, 2005) (awarding front pay in lieu of reinstatement (where reinstatement was infeasible due to animosity and relocation of parties) following plaintiff's post-judgment motion for equitable relief). Courts have discretion to award front wages to prevailing plaintiffs under the NYCHRL and NYLL, as under federal law. *See Antoine v. Brooklyn Maids 26, Inc.,* 489 F. Supp. 3d 68, 95-96 (E.D.N.Y. 2020) (front pay available under NYCHRL, NYSHRL and Title VII); *Jones v. Charter Commcns. LLC,* No. 18 Civ. 5953, 2019 U.S. Dist. LEXIS 67914, at *7-8 (E.D.N.Y. Apr. 18, 2019) (under NYCHRL and NYSHRL, an "award of front pay is within a court's discretion" and is appropriate when reinstatement is not a suitable remedy); *see also* N.Y. Lab. Law § 215 (2)(a) (providing for "an award of front pay in lieu of reinstatement.").

Here, to the extent the Court declines to order instatement to promotion, front pay is required to compensate Ms. Rowe for the ongoing harm she will continue to suffer post-judgment. In the seven years that Ms. Rowe has worked for Google, Google has, on at least two

occasions, passed her over for promotion in violation of the law. There is little reason to believe that Google, who continues to deny liability and opposes any relief to Ms. Rowe, will voluntarily promote her in the years ahead. Thus, the only means by which Ms. Rowe can be made whole is a front pay award through at least age 62 (her earliest retirement age), in the amount of $14,667,742, which is the differential between what Ms. Rowe is expected to earn on annual basis going forward, and what she would earn as a Vice President in the VPFS-Sales role or an equivalent position. (*See* Declaration of Nora Ostrofe ("Ostrofe Dec."), Ex. B (Schedule 1.0)).

The jury's consideration of back pay, and its award of compensatory and punitive damages, reflect distinct forms of relief, none of which equates to or eclipses the need for front pay where instatement is otherwise unfeasible. *See Perez v. Progenics Pharms., Inc.,* 204 F. Supp. 3d 528, 551 (S.D.N.Y. 2016) (rejecting argument that jury's verdict already compensated plaintiff where there was "no discussion of front pay" in verdict form). As the Second Circuit has held, the "[d]enial of reinstatement" in situations where reinstatement is infeasible, "without an award of reasonable, offsetting compensation, would leave the plaintiff irreparably harmed in the future," and "would permit the defendant's liability for its unlawful action to end at the time of judgment." *Whittlesey*, 742 F.2d at 728. As in *Whittlesey,* here a "reasonable monetary award of front pay is necessary" in order to "prevent this injustice" and make Ms. Rowe whole in the absence of an instatement to promotion. *See Padilla,* 92 F3d at 126 (ordering more than 20 years of front pay, to age 67, as "necessary to provide whole relief" to victim of employment discrimination).

## II.   <u>Declaratory Relief and a Permanent Injunction is Necessary Here, Given that Ms. Rowe Remains Employment and Google Has Engaged in a Pattern of Retaliation.</u>

Separate and in addition to any other relief granted by the Court, Ms. Rowe is entitled to a declaration by the Court and permanent injunction enjoining Google from future acts of

14

discrimination and retaliation against her. The NYCHRL expressly provides that individuals

aggrieved by an unlawful discriminatory practice under § 8-107 may pursue, in addition to

monetary damages, "injunctive relief and such other remedies as may be appropriate." N.Y.C.

Admin Code § 8-502(a). As one New York court explained:

> [I]n the case of the [NYCHRL], the City's legislative body has enacted a
> law which anticipates the vigilant enforcement of rights thereunder and
> explicitly states that "any person claiming to be aggrieved by an unlawful
> discriminatory practice as defined in chapter one of this title [§ 8- 107]"
> shall have a cause of action in any court of competent jurisdiction for
> injunctive relief…

*Wilson v. Phoenix House*, 42 Misc. 3d 677, 708 (N.Y. Sup. Ct. 2013) (citing § 8-502(a)).

The NYCHRL broadly provides for injunctive relief "crafted to prevent future violations and

remove lingering effects of past discrimination." *Short v. Manhattan Apartments, Inc.*, 916 F.

Supp. 2d 375, 402 (S.D.N.Y. 2012). Ms. Rowe need not establish a pattern of conduct to warrant

an injunction; "even one instance of discrimination can be sufficient." *Id.* at 402-403 (adopting

injunction requiring defendants to follow the law and to implement formal anti-discrimination

policies and training); *see also Wilson*, 42 Misc. 3d at 706-708 (discussing the injunctive relief

provisions of the NYCHRL and indicating that there is no requirement of "injury in fact" or

"irreparable injury" to obtain an injunction against unlawful discriminatory practices).

Injunctive relief advances the NYCHRL's strong purpose to "eliminate and prevent

discrimination from playing any role in actions relating to employment" and to root out

"prejudice, intolerance, bigotry, discrimination, sexual harassment and bias-related violence or

harassment" in any form. N.Y.C. Admin. Code § 8-101; *Wilson*, 42 Misc. 3d at 707 (Section 8-

502's injunctive relief provision "was intended to give enhanced protection against

discrimination and reflects the broad policy behind the local law to discourage discrimination.")

(citation omitted). Enjoining retaliatory acts is critical to these ends. In general, it is essential for

15

courts to employ a full array of remedies against retaliation; unless employees who report

discrimination are assured of adequate protection from retaliation, the NYCHRL's promise of

securing equal opportunity and eliminating discrimination would "unravel." *Cf. Jackson v.*

*Birmingham Bd. of Educ.*, 544 U.S. 167, 180-81 (2005) ("if retaliation were not prohibited, Title

IX's enforcement scheme would unravel").

Title VII case law is also instructive on this point.[7] The District Court "has not merely the

power but the duty to render a decree which will so far as possible eliminate the discriminatory

effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v.*

*Moody*, 422 U.S. 405, 418 (1975); *see NLRB v. Thalbo Corp.*, 171 F.3d 102, 110 (2d Cir. 1999)

(holding that, upon a finding of employment discrimination, "the responsibility of a court . . . is

to fashion equitable relief to make the claimant whole."); *EEOC v. Local 638*, 565 F.2d 31, 34

(2d Cir. 1977) (affirming a district court's order of equitable relief under Title VII, and stating

that "[h]aving found a violation of the Act, the district court was not only within its power but

under an obligation to fashion a remedy for the violation.").

Under these principles, a declaration that Google has violated the NYLL and NYCHRL

along with a permanent injunction enjoining further violations must be issued. "To obtain

a permanent injunction, a plaintiff must succeed on the merits and show the absence of an

---

[7] Under the NYCHRL's "one-way ratchet" rules, interpretations of Title VII and corresponding State law serve "as a floor below which the [NYCHRL] cannot fall." *Mihalik*, 715 F.3d at 109 (citations omitted). Consequently, interpretations and applications of Title VII, through which Congress "aimed to give courts broad discretion, in the exercise of their equitable powers, to fashion the most complete relief possible for victims of discrimination," *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1133 (2d Cir. 1989), are relevant – but only as a floor. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976) (observing that Congress "intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible . . . federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution" and to address the "consequences and effects of the unlawful employment practice.").

adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse*, 440

F.3d 53, 56 (2d Cir. 2006) (internal quotation marks omitted). Ms. Rowe meets this standard. As

she prevailed on her gender discrimination and retaliation claims, she satisfies the first element.

As to the second and third elements, the trial evidence establishes that Ms. Rowe does not

have an adequate remedy at law and has a high likelihood of irreparable harm, as Google's

actions have made clear the possibility of a lawsuit and trial is not sufficient to deter its

retaliation against Ms. Rowe.[8]

Rather, the trial evidence supports a conclusion that Google chose to ignore the law and

punish Ms. Rowe for asking to be treated fairly. Over the course of the seven-day trial, the jury

heard evidence that Ms. Rowe was denied three positions – the Financial Services Vertical Lead

role, the VPFS-Sales role, and the Director, OCTO (East Coast) role[9] – following her complaints

of discrimination. (*See* Pl. Exs. 11, 42, 45, 54, 108, 111; Trial Tr. 195:13-22.) The jury also

heard evidence of Ms. Rowe's repeated efforts to correct her leveling through meetings with her

supervisors, Human Resources, and Employee Relations, which were met with increasing

---

[8] Indeed, even a jury verdict has not dissuaded Google from engaging in retaliation; Google has repeatedly and publicly denied any wrongdoing, stating: "We disagree with the jury's finding that Ms. Rowe was discriminated against on account of her gender or that she was retaliated against for raising concerns about her pay, level, and gender." *See*, *e.g.*, https://www.wired.com/story/this-woman-exec-beat-google-in-court-and-hopes-others-follow/; https://news.bloomberglaw.com/litigation/google-must-pay-female-executive-1-million-for-gender-bias; https://www.shrm.org/resourcesandtools/legal-and-compliance/employment-law/pages/google-sex-discrimination-case.aspx#:~:text=%22We%20disagree%20with%20the%20jury's,clear%20policy%2C%22%20Mencini%20said; https://www.businessinsider.com/google-loses-gender-bias-trial-ulku-rowe-2023-10. Google's public disavowals of a jury verdict in favor of a current employee are retaliatory, as they have the effect of chilling future complaints and will "dissuade a reasonable employee from raising a concern about a possible violation or engaging in other related protected activity." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 60 (2006).

[9] Plaintiff testified about being denied this position but did not plead it as a separate cause of action.

hostility and an ever-changing list of excuses, even long after Ms. Rowe commenced this lawsuit in 2019. Relatedly, the jury's award of punitive damages reflects a determination by the jury that Google "knew of the offending employee's discriminatory conduct, and acquiesced in it and failed to take immediate and appropriate corrective action." (*See* Jury Charge, Tr. 1456:14-22).

In addition, after years of positive performance and receiving Exceeds Expectations ratings, Ms. Rowe's current supervisor, after consultation with Google's lawyers, has begun criticizing her performance, making the possibility of promotion even more remote. (*See*, *e.g.,* Trial Tr. 1305:19-1306:13). All the while, Level 8 Technical Directors such as Jennifer Bennett and Scott Penberthy – who did not lodge discrimination complaints – have seen their careers advance, including through promotion to Level 9. (Trial Tr. 197:9-10). Google therefore has shown a clear willingness to violate the law when it serves its interest.

The requested relief will cause no burden to Google, but will provide Ms. Rowe with necessary protection in the form of additional incentive for Google to follow the law: in addition to any potential retaliation claim available to Ms. Rowe should Google retaliate, further illegal actions against Ms. Rowe in violation of a permanent injunction would place Google in contempt of court and subject it to additional civil penalties, the possibility of which may aide in the deterrence of further retaliation against Ms. Rowe.

Courts have granted similar requests for injunctive relief where, as here, "there is evidence of widespread and continuous retaliation or harassment that indicates that the threat of future bad acts is high." *Lewis v. Am. Sugar Refining, Inc.*, No. 14 Civ. 02302, 2018 U.S. Dist. LEXIS 139223 at *7 (S.D.N.Y. Aug. 15, 2018); *see also EEOC v. United Health Programs of Am.*, 350 F. Supp. 3d 199, 213 (granting injunctive relief where the "evidence at trial established that the nature of defendants' past conduct, which was widespread and longstanding, support[ed]

a finding that violations [were] likely to reoccur"). A permanent injunction therefore is warranted.

**III.      Plaintiff is Entitled to a Gross-up to Compensate for Adverse Tax Consequences**

Ms. Rowe is entitled to a gross-up on her damages to offset tax consequences not contemplated by the jury when making its damages award.  The Court instructed the jury that, "if you make any award of damages, such award is not subject to federal income taxes and you should not consider such taxes in determining the amount of damages, if any." (Trial Tr. 1451:25-1452:2). However, Ms. Rowe's compensatory and punitive damages awards are not excludable from gross income, and thus are subject to federal income tax obligations. 26 U.S.C. § 104; *see* Internal Revenue Service*, Tax Implications of Settlements and Judgments,* https://www.irs.gov/government-entities/tax-implications-of-settlements-and-judgments#:~:text=Damages%20received%20for%20non%2Dphysical,subject%20to%20Federal%20employment%20taxes (last visited Nov. 21, 2023) ("Discrimination suits for age, race, gender, religion, or disability can generate compensatory, contractual and punitive awards, none of which are excludible under IRC Section104(a)(2).")

The Court retains broad discretion to amend the judgment to offset tax consequences Ms. Rowe may face. *Gulino v Bd. of Educ. of the City Sch. Dist. of NY*, No. No. 96 Civ. 8414, 2016 US Dist. LEXIS 102216, at *10 (S.D.N.Y. Aug. 3, 2016) ("a tax gross-up is appropriate when necessary to make a claimant whole"). As a matter of fairness and equity, because the jury operated with the understanding that Ms. Rowe would not be taxed on the damages it awarded, the Court should modify both the compensatory and punitive damages awards to account for the federal taxes Ms. Rowe must pay on those awards.

19

For the 2023 tax year, Ms. Rowe will be taxed at the highest federal tax rate, 37%.[10] Accordingly, Ms. Rowe's compensatory damages award of $150,000 should be grossed up to $238,095.24, and her $1,000,000 punitive damages award grossed up to $1,587,301.59 to offset federal tax consequences and provide her the amounts of damages the jury intended when making its award.

## IV.   Plaintiff is Statutorily Entitled to Pre- and Post-Judgment Interest

### A.   Pre-Judgment Interest

Ms. Rowe is entitled to an award of pre-judgment interest on her compensatory damages award, in the amount of $89,210.96. "Courts may award prejudgment interest with respect to compensatory damages in the interests of fairness and full compensation to the plaintiff." *Gilbert v Hotline Delivery*, No. 00 Civ. 160, 2001 US Dist. LEXIS 9876, at *12 (S.D.N.Y. July 10, 2001). The Second Circuit has identified four factors for district courts to consider: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contr. Co. v Local Union No. 3, Intl. Bhd. of Elec. Workers*, 955 F.2d 831, 833-834 (2d Cir. 1992).

Ms. Rowe's mental anguish satisfies the *Wickam* considerations. Despite repeated efforts from Plaintiff and her counsel, Google refused to engage in a good faith effort to resolve this matter at any point in its near seven-year history. Ms. Rowe described at trial how her experience

---

[10] *See* Internal Revenue Service, IRS Provides Tax Inflation Adjustments For Tax Year 2023, https://www.irs.gov/newsroom/irs-provides-tax-inflation-adjustments-for-tax-year-2023 (last visited Nov. 21, 2023) ("For tax year 2023, the top tax rate remains 37% for individual single taxpayers with incomes greater than $578,125 ($693,750 for married couples filing jointly."). Ms. Rowe's regular income already places her in the highest income bracket, meaning that all damages in this case will be taxed at 37%.

has caused her significant emotional distress resulting from being ostracized by others and resulting in a loss of self-confidence. (Trial Tr. 197:14-199:7). Moreover, Ms. Rowe remains employed at Google and must now live through the fallout of working for an employer against whom she proved discrimination and retaliation. Her emotional distress, therefore, did not end with this trial and will likely continue for as long as she remains employed. Such circumstances warrant an award of prejudgment interest on her compensatory damages award. *See Picinich v. UPS*, No. 01 Civ. 01868, 2005 U.S. Dist. LEXIS 38212, at *88-89 (N.D.N.Y. Dec. 23, 2005), *aff'd in part, vacated in part*, 236 F. App'x 663 (2d Cir. 2007) (awarding prejudgment interest on compensatory damages as required by "interests of fairness and full compensation"); *Robinson v. Instructional Sys.*, 80 F. Supp. 2d 203, 207 (S.D.N.Y. 2000), *superseded by statute on other ground as recognized by Chauca v. Abraham*, 89 N.E.3d 475, 477 (N.Y. 2017) (awarding prejudgment interest on mental anguish and collecting cases where prejudgment interest was awarded on compensatory damages under Title VII and ADA).

Further, prejudgment interest should be calculated at the New York statutory rate of 9%, from the earliest date of harm to Ms. Rowe (her date of hire, March 13, 2017). N.Y. C.P.L.R. §§ 5001, 5004; *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 n.2 (2d Cir. 2010) ("where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate."). Accordingly, the Court should award prejudgment interest in the amount of $89,210.96.[11]

---

[11] This amount reflects the New York statutory interest rate of 9% for full years 2018-2022; 294 days in 2017 (from March 13, 2017 to December 31, 2017), and 293 days in 2023 (January 1, 2023 to October 20, 2023).

B.	**Post-Judgment Interest**

Ms. Rowe also is entitled under New York law to "post-judgment interest on all sums awarded, attorneys' fees and costs." *Cox v. Anjin LLC*, No. 19 Civ. 4315, 2020 U.S. Dist. LEXIS 132652, at *26 (S.D.N.Y. July 24, 2020); *see also Emamian v. Rockefeller Univ.*, 2023 U.S. Dist. LEXIS 72623, at *73 (S.D.N.Y. Apr. 26, 2023) (awarding post-judgment interest); *Simmons v. N. Y. City Transit Auth.*, No. 02 Civ. 1575, 2008 U.S. Dist. LEXIS 59086, at *2-3 (E.D.N.Y. July 30, 2008) ("Under New York law, '[i]nterest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment . . .'") (citing N.Y. C.P.L.R. § 5002); *Sayigh v. Pier 59 Studios, L.P.*, No. 11 Civ. 1453, 2015 U.S. Dist. LEXIS 27139, at *36 (S.D.N.Y. Mar. 5, 2015) (post-award interest is mandatory under New York law).

Because Ms. Rowe's only claims were city and state law claims, interest should be calculated at the New York statutory 9% interest rate using the method approved for the Southern District of New York. *See* N.Y. C.P.L.R. §§ 5002, 5004; How to Calculate Post Judgment Interest, https://www.nysd.uscourts.gov/forms/how-calculate-post-judgment-interest (last visited Nov. 21, 2023).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff requests that the Court (1) instate Plaintiff to Level 9, (2) instate Plaintiff to the VPFS-Sales or an equivalent position, or if instatement is infeasible, award front pay damages, (3) declare Google to have violated the NYLL and NYCHRL and enjoin it from future discrimination and retaliation against Plaintiff, (4) award monetary relief to offset tax consequences to Plaintiff, and (5) award pre- and post-judgment interest as requested.

22

DATE:     November 22, 2023
          New York, New York

                                        Respectfully submitted,

                                        /s/ Gregory S. Chiarello
                                        OUTTEN & GOLDEN LLP
                                        Cara E. Greene
                                        Gregory S. Chiarello
                                        Shira Z. Gelfand
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000
                                        Facsimile: (646) 509-2060

                                        *Attorneys for Plaintiff*