**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ULKU ROWE,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Civil Action No. 19-cv-08655 (JHR)<br><br>**<u>Oral Argument Requested</u>** |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
GOOGLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

# **TABLE OF CONTENTS**

I.     Preliminary Statement ............................................................................................ 1

II.    Background ............................................................................................................. 1

       A.     The Trial ...................................................................................................... 1

       B.     Google's Original Failed Motion for Judgment as a Matter of Law ...................... 2

III.   Legal Standard ...................................................................................................... 3

IV.    Argument ............................................................................................................... 5

       A.     The Jury's Finding of Discrimination Pursuant to the NYCHRL Was Well-
              Supported by Evidence ............................................................................... 5

              a.     Rowe's Discriminatory Leveling at Hire ...................................... 5

              b.     Differential Treatment by Mr. Shaukat ...................................... 10

              c.     Denial of Promotion to FSVL Role ............................................ 11

       B.     The Jury's Finding of Retaliation Pursuant to the NYCHRL and NYLL Was
              Well-Supported by Evidence ..................................................................... 13

              a.     FSVL role .................................................................................. 14

              b.     VP-FS Sales Role ...................................................................... 17

       C.     The Verdict Was Not Inconsistent ............................................................ 20

V.     Conclusion .......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **PAGE(S)**

*Albunio v. City of New York*,
   16 N.Y.3d 472 (2011) ..................................................................................................11

*Bennett v. Health Management Systems*,
   92 A.D.3d 29 (App. Div. 2011) .....................................................................................9

*Collins v. Cohen Pontani Lieberman & Pavane*,
   No. 04 Civ. 8983, 2008 U.S. Dist. LEXIS 58047 (S.D.N.Y. July 31, 2008)............................9

*Equal Employment Opportunity Commission v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013).......................................................................10

*Golston-Green v. City of New York*,
   123 N.Y.S.3d 656 (1st Dep't 2020) ...............................................................................8

*Gorzynski, v. JetBlue Airways Corp.*,
   596 F.3d 99 (2d Cir. 2010)...........................................................................................12

*King v. Verdone*,
   No. 97 Civ. 01487, 1999 U.S. Dist. LEXIS 22528 (D. Conn. Sept. 30, 1999) .................9, 10

*Lambert v. Genesee Hospital*,
   10 F.3d 46 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994) .................................4

*Leblanc-Sternberg v. Fletcher*,
   67 F.3d 412 (2d Cir. 1995)...........................................................................................21

*Lore v. City of Syracuse*,
   670 F.3d 127 (2d Cir. 2012)...........................................................................................9

*McCardle v. Haddad*,
   131 F.3d 43 (2d Cir. 1997)...............................................................................4, 13, 19

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
   715 F.3d 102 (2d Cir. 2013)........................................................................................20

*Okeke v. New York & Presbyterian Hospital*,
   275 F. Supp. 3d 470 (S.D.N.Y. 2017).....................................................................3, 4, 13

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)..............................4, 9, 19

*Smith v. Lightning Bolt Productions, Inc.*,
   861 F.2d 363 (2d Cir. 1988).........................................................................................4

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001).........................................................................................12, 13, 21

*In re Vivendi Universal, S.A. Securities Litigation*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)...............................................................................7

*White v. Department of Correctional Services*,
    814 F. Supp. 2d 374 (S.D.N.Y. 2011)..........................................................................17, 19

*William v. Morrison & Foerster LLP*,
    No. 18 Civ. 2542, 2021 U.S. Dist. LEXIS 141869 (N.D. Cal. Mar. 8, 2021) ........................17

*Yngwie Malmsteen v. Berdon, LLP*,
    595 F. Supp. 2d 299 (S.D.N.Y. 2009)................................................................................10

**RULES**

Federal Rules of Civil Procedure Rule 50(b)..............................................................................3, 4

## I.     Preliminary Statement

On October 20, 2023, after seven days of trial and having been completely and fairly charged on the law, the jury found by a preponderance of the evidence that Defendant Google discriminated against Ms. Rowe pursuant to the New York City Human Rights Law ("NYCHRL") and retaliated against her pursuant to the NYCHRL and the New York Labor Law ("NYLL"). The verdict was fully supported by substantial evidence presented in this case through eighteen witnesses and ninety-five exhibits. In denying Defendant's original motion for judgment as a matter of law, the Court held that "on the record that has developed, there is sufficient evidence on which a jury could return a plaintiff's verdict." (Trial Transcript "Trial Tr." 1126:7-9).[1] Based on the evidence presented at trial, the jury did just that. Defendant's evidence and arguments were presented to and rejected by the jury, who made proper determinations leading to a finding of liability. Now, Defendant's renewed motion fails to articulate any additional bases to support its assertion that there is no evidence to support a judgment for Ms. Rowe. Therefore, the Court should deny this renewed motion in its entirety and the verdict should be upheld.

## II.    Background

### A.     The Trial

Over four years after Ms. Rowe filed her lawsuit, trial commenced in this matter on October 10, 2023. Plaintiff presented her case in five days within the time allotted by the Court (ECF Nos. 325, 363). Defendant presented its case in two days and the jury deliberated and reached a verdict on October 20, 2023. Fifteen witnesses testified live at trial (Ulku Rowe, Tariq Shaukat, Kevin Lucas, Stuart Vardaman, Stuart Breslow, Will Grannis, Nicholas Harteau, April

---

[1] Citations to the trial transcript are attached as Exhibit A to the Declaration of Cara E. Greene.

Beaupain, Nora Ostrofe, Chris Humez, Krista Callaghan, Brian Stevens, Melissa Lawrence, Patricia Florissi, and Kristen Kliphouse). Three unavailable witnesses testified via deposition (Ben Wilson, Evren Eryurek, and Jennifer Burdis). Ninety-five (95) exhibits were admitted into evidence between both parties.

### B.  Google's Original Failed Motion for Judgment as a Matter of Law

After Plaintiff rested her case, Defendant moved the Court for a judgment as a matter of law on all of Plaintiff's claims. With respect to Plaintiff's discrimination claim, Defendant claimed that there was no evidence that gender played a role in her leveling or consideration for the FSVL role. (Trial Tr. 1098:10-11. Defendant did not assert any other bases for its motion on Plaintiff's discrimination claim. As for Plaintiff's retaliation claims, Defendant argued that in making her complaint, Plaintiff was required to have a "subjectively and objectively reasonable belief that there was illegal conduct going on." 13-16). Defendant claimed Plaintiff did not meet this standard because in her discussions with Google's investigator, she did not raise gender as a role in her leveling. (Trial Tr. 1096:20-24). Defendant also claimed that there was no evidence in the record that Ms. Rowe's protected activity was a factor in any of the challenged decisions. (Trial Tr. 1097:1-4). Specifically, Defendant stated that there was undisputed evidence that "Ms. Kliphouse made the decision not to consider Ms. Rowe further after she had spent time with her over coffee" and that "she already had a preferred candidate" for the role. (Trial Tr. 1097:15-24).

The Court denied Defendant's motion in its entirety, holding that "on the record that has developed, there is sufficient evidence on which a jury could return a plaintiff's verdict." (Trial Tr. 1125:24-1126:10). With respect to Plaintiff's discrimination claim, the court held that "there was evidence from which the jury could find that Ms. Rowe "was similarly situated to Mr. Harteau among other male L9 colleagues but was treated less well, including because of her

pay." (Trial Tr. 1127:16-19). With respect to Plaintiff's retaliation claim, the court found that "a jury could find that Google retaliated against Ms. Rowe." Specifically, with respect to the FSVL role, this court pointed out that a "among other things, on August 28, 2018, Ms. Rowe made a complaint to Melissa Lawrence expressing concern that men had been leveled at Level 9, specifically noting that "I was told that everyone hired for the role was being hired at a Level 8. I later learned that my male peers were hired at Level 9," and this is reflected in PX 42. Then just days later, Mr. Vardaman wrote in an internal report 'sounds like she,' meaning Ms. Rowe, 'is not viable for the role.'" (Trial Tr. 1126:23-1127:6, referencing Pl. Ex. 69).

With respect to the VP- FS Sales role, this court noted that "a jury might find noteworthy the temporal proximity between Ms. Rowe's complaint and the alleged retaliatory action. Ms. Rowe filed her complaint in this court in September 2019, and several months later, in February 2020, Ms. Piazza was hired for the sales role. Furthermore, the fact that it was Mr. Vardaman acting as the internal recruiter for both this position and the earlier FSVL role is a link that the jury might choose to credit." (Trial Tr. 1127:7-15).

## III.   Legal Standard

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to renew its motion for judgment as a matter of law after the jury has returned its verdict. Fed. R. Civ. P. 50(b). "A Rule 50 motion [for Judgment as a Matter of Law] may only be granted 'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Okeke v. New York & Presbyterian Hosp.*, 275 F. Supp. 3d 470, 474 (S.D.N.Y. 2017) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011).

3

"In assessing the sufficiency of evidence to support a jury verdict, [the Court] must view the record in the light most favorable to the opposing party, assuming all reasonable inferences were drawn and all credibility disputes resolved in its *favor.*" *id.*, quoting *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004) (emphasis in original); *see also* Trial Tr. 1125:17-22 ("in resolving a Rule 50 motion, all evidence is to be construed in the light most favorable to the plaintiff as the nonmoving party, and all reasonable inferences shall be drawn in favor of the plaintiff as the nonmoving party."). In resolving the Motion, "[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988) (internal quotations and citations omitted). Instead, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097 (2000).

When renewing a motion for a judgment as a matter of law, "[t]he Post trial motion is limited to those grounds that were 'specifically raised in the prior motion for [JMOL]'; the movant is not permitted to add new grounds after trial." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (quoting *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993))*; see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53-54 (2d Cir. 1993) ("the specificity requirement is obligatory"), cert. denied, 511 U.S. 1052 (1994); 2006 Rule 50 Advisory Committee Notes ("Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion.") As this court made clear when denying Defendant's initial Rule 50 motion, any post-verdict motion would allow for "fleshed out arguments," not new arguments. (Trial Tr. 1128:14-15).

4

IV.     **Argument**

A.     **The Jury's Finding of Discrimination Pursuant to the NYCHRL Was Well-Supported by Evidence.**

The Court instructed the jury that Ms. Rowe's claim for discrimination was based on Google's alleged "under-leveling her at hire, paying her less than comparable men, refusing to consider her for the role of financial services vertical lead, and generally treating her less well because of her gender." (Trial Tr. 1438:12-17). The jury was charged with the proper standard under the NYCHRL, and instructed that:

> In determining whether Google discriminated against Ms. Rowe because of her gender, you may consider a variety of factors, including whether the language or conduct of Google managers reveals a bias against women or preference for men; whether Google treated Ms. Rowe less well than similarly situated men; whether Google's explanations for its actions were credible or whether they are contradicted by fact or changed over time; or whether any of Google's witnesses were untruthful either at trial or when speaking to Ms. Rowe.

(Trial Tr. 1445:3-12). Plaintiff offered ample evidence of the numerous ways Google discriminated against her and the jury returned a verdict for Plaintiff on her NYCHRL discrimination claim. (ECF No. 340 at I.B.3).

a.     *Rowe's Discriminatory Leveling at Hire.*

The jury heard from at least seven witnesses regarding Ms. Rowe and her male comparators' initial hire and leveling. Ms. Rowe testified that she, one other woman, and seven other men were hired in late 2016 to early 2017 for the Technical Director role and that she was told that all the Technical Directors were coming in at a Level 8, which she later learned was not true. (Trial Tr. 122:4-11, 134:8-13). The jury saw exhibits demonstrating that each of the Technical Directors were interviewed using the same interview rubrics and asked the same interview questions, which Mr. Grannis confirmed in his testimony. (Pl. Ex. 93, Trial Tr. 733:21-

734:3). Mr. Grannis testified that these individuals were all hired for the same role. (Trial Tr. 734:23-25) (Q. Now, each of those nine were all hired for the same role; correct? A. The technical director role, yeah.") Once in the role, the Technical Directors reported to the same manager, Will Grannis, and were evaluated against the same criteria. (Pl. Ex. 8; Trial Tr. 730:3-5). While Mr. Grannis testified as to his after-the-fact determination of why Ms. Rowe was leveled at an 8 while her male peers were leveled at a 9, there was no contemporaneous evidence in the hiring packets explaining the decision to assign them different levels. (Pl. Exs. 116-121).

Three of Ms. Rowe's male comparators testified that despite being Level 9s and Ms. Rowe being an L8, they all performed the same work. (*See, e.g.*, Harteau, Trial Tr. 941:16-17) ("We were doing the same sort of work in the same sort of circumstances."); (Wilson, Trial Tr. 986:1) (identifying Ms. Rowe's role as the "same as mine but for the financial vertical."); (Eryurek, Trial Tr. 1009:3-4) ("Q. So [Ms. Rowe] was in the same role that you were in? A. Yes. We were all in the same role."). While in the role, Ms. Rowe outperformed her male peers, consistently receiving "exceeds expectations" ratings in her performance reviews- unlike the Level 9 men- who were held to the same standard. (Pl. Exs. 123-128).

Google claims that the only evidence Plaintiff offered to support the assertion she had been improperly leveled was "her own subjective opinion." (Defendant's Memorandum of Law in Support of its Renewed Judgment as a Matter of Law "Def. Br." at 5). However, Plaintiff offered evidence demonstrating that she was equally or more qualified than the Level 9 men. Specifically, the hiring packets showed that men were hired as a Level 9 despite not having advanced degrees, not having managed large teams, and coming from industries less important than financial services (Pl. Ex. 118). One candidate's packet noted that "that "for an L8, however, I was hoping or more presence and overall gravitas during the interview…he's not as

strong as the other candidates I've interviewed for this role." Google then hired him at a Level 9. (Pl. Ex. 120). By contrast, Mr. Grannis described Ms. Rowe as having had "rapidly demonstrated L10+ potential" (Pl. Ex. 113) and decided she would lead a cohort of Technical Directors who targeted specific industries, which would have resulted in an "inversion" of a Level 8 supervising Level 9's like Mr. Eryurek and Mr. Wilson. However, Mr. Grannis and others believed she was "the best person for the role." (Pl. Ex. 7).

Google argues that "evidence regarding the leveling decision was uncontradicted and unimpeached," (Def. Br. at 4), yet Mr. Grannis's purportedly crystal-clear memory of the leveling decision seven years later is unsupported by any contemporaneous record about the decision. As an initial matter, the fact that Mr. Grannis is now the CTO at Google Cloud can allow a jury to disregard his testimony entirely. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 536 (S.D.N.Y. 2011) ("a jury is not required to believe the testimony of interested witnesses."). Further, Mr. Grannis's trial testimony regarding the differentiating factors between a level 8 and 9 technical director also contradicted what he told Employee Relations in 2020. At that time, Mr. Grannis admitted he didn't have a "super strong sense" of what distinguished a Level 8 from a Level 9 (Pl. Ex. 108). In addition, Google pointed to the Engineering-Wide Leveling Guide to explain differences between Levels 8 and 9, though that guide was from 2020 – three years after the decision was made. (Def. Ex. 38) Further, the expectations for Level 9 on that document were actually consistent with the Level 8 expectations on the Technical Director ladder (*Compare* Def. Ex. 38 and 63). Mr. Grannis also testified that at the time Ms. Rowe and her male peers were interviewing at Google, OCTO had not adopted an engineering leveling guide or job ladder. (Trial Tr. 736:21-23). When hiring the first eight or

nine Technical Directors, Google was "still figuring [] out" what the difference was between a Level 8 and Level 9." (Trial Tr. 744:3-6).

The jury also saw how comments in Ms. Rowe's G-Hire packet signaled gender bias. Specifically, interviewers characterized Ms. Rowe's experience as "more junior" and questioned "whether [Ms. Rowe] is senior enough" when compared to other Level 9 Technical Directors they interviewed, despite the fact that Ms. Rowe possessed equal or more years of experience than some of the other men interviewed and hired by Google as Level 9. (Pl. Exs. 119, 118); *see Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 670 (1st Dep't 2020) (a single comment "being made in circumstances where that comment would, for example, signal views about the role of women in the workplace" constitute actionable harm under the City Human Rights Law.").

Plaintiff also presented evidence demonstrating how Google's rationale for why Ms. Rowe was leveled at an 8 while other male Technical Directors were leveled at a 9 has shifted throughout multiple investigations and the trial. For example, Google first relied on "years of experience" to determine that her initial level was appropriate, despite recognizing that at least one male Level 9 Technical Director had less experience. (Pl. Ex. 88). Additionally, multiple witnesses, such as Tariq Shaukat, Will Grannis, Evren Eryurek, and Brian Stevens, testified at trial that Google did not consider years of experience in leveling. (Trial Tr. 304:8-14, 318:3-320:10, 743:25-744:2, 1017:15-18, 1204:3-5). Kevin Lucas, the same individual who did this analysis, admitted at trial that nobody told him to consider years of experience to explain the leveling decision, and he did not do anything to ascertain whether years of experience was actually a factor used at the time to determine whether someone would come in as a Level 8 or 9. (Trial Tr. 534:16-25). When ER began investigating Ms. Rowe's complaint, Ms. Beaupain told

her that "[t]ech versus non-Tech experience was the most heavily considered factor when gauging L8 versus L9 for similar years of work experience." (Pl. Ex. 89). However, there was no evidence that "tech experience" was the differentiating factor for the leveling, and no other witness testified as such. Moreover, Plaintiff spent her entire career in "tech" roles. Once Google could not uphold that rationale, it turned to "cloud experience," which Plaintiff also disputed. (Trial Tr. 75:2-76:18). The fact that Google's explanations for its actions have shifted over time, are contradictory, and are not credible are another reason by which the jury was able to find discrimination. *See Collins v. Cohen Pontani Lieberman & Pavane*, No. 04 Civ. 8983, 2008 U.S. Dist. LEXIS 58047, at *51-54 (S.D.N.Y. July 31, 2008); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination"); *Bennett v. Health Mgmt. Sys.,* Inc.*,* 92 A.D.3d 29, 41 (App. Div. 2011) ("a jury is entitled to infer from the evidence of falsity that the cover-up was a cover-up of discrimination").

The jury also heard conflicting evidence from decision-makers at Ms. Rowe's hire as to whether a leveling guide or job ladder differentiating expectations for Level 8 and 9 technical directors existed for the role. *Compare* Grannis, Trial Tr. 736:21 (Q. OCTO had not adopted an engineering leveling guide or job ladder for itself at that point in time; correct? A. Correct.") *and* Stevens, Trial Tr. 1226:7-16 (Q. But you weren't reviewing that against any sort of leveling guide; correct? A. I believe we had a leveling guide for that."). The jury was entitled to make a credibility determination based on Google's untruthful witnesses, and that verdict should not be overturned. *See Lore v. City of Syracus*e, 670 F.3d 127, 149-50 (2d Cir. 2012) (A jury's "assessments of witness credibility and its choices between competing factual inferences are not to be second-guessed"); *King v. Verdone*, No. 97 Civ. 01487, 1999 U.S. Dist. LEXIS 22528, *5

(D. Conn. Sept. 30, 1999) ("That the jury chose to believe [one party] in the face of the contradicting testimony of the [other] is not grounds for judgment as a matter of law.").

Google argues that Plaintiff herself "admitted" to ER that "other than the gender differences among the Technical Directors, 'she couldn't think of anything that indicated [her level] was based on gender,'" (Def. Br. at 5), however, Plaintiff did raise to ER that "[m]en that came in around the same time as [her] we[re] L9s" including those who had the "[s]ame experience and education in financial services in technology" and that she was "[n]ot aware of any females brought in as an L9." (Pl. Ex. 57). Therefore, any argument that Plaintiff's complaints were not rooted in gender are belied by the evidence. Additionally, Plaintiff testified that when she complained early on, she felt that "bringing up gender is a risky topic" and that she was just "focused on getting the issues sorted, resolved, and I wanted to just move on." Trial Tr. 145:9-11. In any event, the jury properly considered "the totality of the circumstances" because "the overall context in which [the challenged conduct occurs] cannot be ignored*." EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 835-36 (S.D.N.Y. 2013) (citing *Mihalik*, 715 F.3d 102, 109, 113 (2d Cir. 2013)).

### b.   *Differential Treatment by Mr. Shaukat*

Defendant claims in its brief that Ms. Rowe failed to prove her claim that Mr. Shaukat excluded her from meetings, off-sites, email distribution lists, and client meetings. However, this argument was not raised in Defendant's original Rule 50 motion, and thus should be disregarded. A Rule 50(b) motion "'is limited to those grounds that were specifically raised in [a] prior [Rule 50(a) motion]; the movant is not permitted to add new grounds after trial.'" *Yngwie Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 303 (S.D.N.Y. 2009) (quoting *Galdieri- Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998)).

In any event, Plaintiff offered evidence showing that she tried to schedule one-on-one meetings with Mr. Shaukat numerous times between June and September 2018, to no avail. (Trial Tr. 151:7-14). Ms. Rowe was also excluded from team meetings, customer meetings, and strategy meetings. (*Id.*, 151:22-152:1). Such differential treatment allowed the jury to conclude Ms. Rowe had been discriminated against. *See Albunio v. City of New York*, 16 N.Y.3d 472, 476 (2011) (being "shunned and excluded from meetings" by a supervisor constituted an adverse employment action). By contrast, Mr. Shaukat met with Mr. Breslow on a "frequent" basis. (Trial Tr. 705:25-706:6). They had a standing call every week or every other week. (Trial Tr. 706:7-9). Mr. Shaukat was "always accessible" to Mr. Breslow. (Trial Tr. 706:21-22). They also would spend time together socially, meeting for breakfast, lunch, and dinner. (Trial Tr. 707:13-17).

### c.    Denial of Promotion to FSVL Role

Mr. Shaukat was also the hiring manager for the FSVL Role, the role that Ms. Rowe was told she would be the "obvious person" for when she was hired. (Trial Tr. 78:18-25). Mr. Shaukat met with Ms. Rowe in June 2018 and despite knowing nothing about her background, determined that she was not "likely right" for the role. (Pl. Ex. 150). Google claims that Shaukat had "legitimate reservations" about Ms. Rowe's candidacy, in part based on whether she "had access to the C-level executives." (Def. Br. at 7), yet Mr. Shaukat himself disputed this at trial. (*See* Trial Tr. 486:13-16) (Q. And you, I think, testified yesterday that you didn't actually know the nature or extent of Ms. Rowe's C-level relationships, correct? A. Correct.").

 In fact, Brian Stevens advocated for Ms. Rowe's candidacy for the FSVL role, telling Mr. Shaukat that Ms. Rowe had "great respect from the C-suite level" at the banks (Pl. Ex. 16). Ms. Rowe went through the interview process anyway, though described for the jury that the

interviews "didn't feel right." (Trial Tr. 160:9) Ms. Rowe's feeling was bolstered by the fact that her interviewers never submitted any feedback, despite receiving daily reminder pings for over a month (Pl. Exs. 46-49).

After Diane Greene, Google Cloud's CEO, announced she was leaving, Ms. Shaukat said he was pausing the search for the role, but told Ms. Rowe that even if the search opened back up, she would not be considered. (Pl. Ex. 67). However, Mr. Shaukat still filled the role – selecting Stuart Breslow, who was not a candidate, did not interview for the role, and had only been at Google for six months. (Trial Tr. 710:7-23). *See Gorzynski*, *v. JetBlue Airways Corp*., 596 F.3d at 99, 108-09 (2d Cir. 2010) (preferential treatment of individuals outside plaintiff's protected class "is both prima facie evidence of discrimination . . . and evidence that the reasons given by [defendant] . . . were pretextual.").

The jury also was able to make a credibility determination after hearing Google's untruthful witnesses, Mr. Shaukat and Mr. Vardaman. Specifically, the jury heard conflicting testimony from Mr. Shaukat, who requested at trial to "explain[] the different versions" of the story regarding when he decided to place Mr. Breslow in the role, and whether it was before or after Ms. Rowe made her protected complaint and when Mr. Shaukat told her she would not be selected. *Compare* Trial Tr. 362:4-18, Shaukat Direct Examination ("Q. You actually had decided to put Mr. Breslow in that position in October/early November; correct? A. That is false. Q. Well, you made the decision to put Mr. Breslow in before you communicated it to Ms. Rowe that she was not getting the position; correct? A. That is false, as I just stated.") *and* Trial Tr. 489:20-490:3 ("As we established, I think, yesterday, I had started considering putting in Stuart in October/November of that year, and then I officially announced it in January subsequent to that, yeah."). Clearly, Mr. Shaukat's "testimony was in tension with itself, and the jury was not

12

required to believe the part of it that was favorable to [him]." *Tolbert v. Queens College*, 242 F.3d 58, 72 (2d Cir. 2001) (reversing district court's grant of judgment as a matter of law).

Mr. Shaukat's and Mr. Vardaman's testimony also conflicted regarding alleged feedback they received from Ms. Rowe's interviewers. While Mr. Shaukat testified that "Stuart [Vardaman] did debrief me on the feedback" from Ms. Rowe's interviewers, Mr. Vardaman testified that he did not document or share any feedback he received with Mr. Shaukat. (Trial Tr. 340:22-341:2; 578:2-13). In any event, in Defendant's original motion for judgment as a matter of law, it argued that "[Mr. Shaukat's] opinion was the reason she didn't get the job." Trial Tr. 1095:11-12. Therefore, Defendant's newfound argument that Ms. Rowe did not get the FSVL role due to negative feedback from her interviews, *see* Def Br. at 7, should not be considered by the court. *See McCardle*, 131 F.3d 43 at 51 (renewed motion is "limited to those grounds that were specifically raised in the prior motion for [JMOL]'; the movant is not permitted to add new grounds after trial.") (quotation omitted).

Accordingly, Defendant has failed to prove that there is a "complete absence of evidence supporting" the jury's conclusion that Google's conduct was "motivated at least in part by [gender] - which is the extremely lenient standard for establishing a claim of discrimination under NYCHRL." *Okeke v. New York & Presbyterian Hosp.*, 275 F. Supp. 3d 470, 474 (S.D.N.Y. 2017) (denying Defendant's motion for judgment as a matter of law).

### B. The Jury's Finding of Retaliation Pursuant to the NYCHRL and NYLL Was Well-Supported by Evidence.

Plaintiff's claims for retaliation under the NYCHRL was premised on Google's denial of promotions to the FSVL and VP-FS Sales Role, while the NYLL was premised on Google's failure to select Plaintiff for the VP-FS Sales Role, as Google admits. (*See* Def. Br. at 10). Therefore, a jury verdict for Plaintiff on the retaliation claims makes clear that the jury agreed

these decisions were retaliatory. The jury was charged with the proper standard for retaliation, and instructed that in order to find for Plaintiff on her retaliation claim on both the NYCHRL and NYLL, it must find the following elements:

> *First*, Ms. Rowe engaged in a protected activity. *Second*, her employer, Google, was aware of the protected activity. *Third*, Google engaged in what is commonly referred to as an adverse action, that is, conduct that could be reasonably expected to chill or deter someone from engaging in protected activity. And *fourth*, there is a causal connection between the protected activity and the adverse action; that is, the complaints that were made were, at least in part, the reason why the adverse employment action took place.

Trial Tr. 1447:15-1448:5 (emphasis added).

This verdict was well-supported by the evidence, which demonstrated that her complaints of under-leveling and equal pay were at least one factor in Google's decision not to consider for, or promote her into, these roles.

    a.    *FSVL role*

The first two elements are easily met. The jury heard about, and saw, Ms. Rowe's August 28, 2018 protected complaint to HR employees Melissa Lawrence and Kevin Lucas regarding her consideration for the FSVL role. (Pl. Ex. 42). Specifically, Ms. Rowe raised that she perceived that her under-leveling at hire was negatively impacting her consideration for the FSVL role. (*Id.*). The jury then saw Mr. Lucas's conclusory investigation[2] comparing Ms. Rowe's experience and qualifications to the Level 9 Technical Directors, which noted that Ms. Rowe had similar, if not equal, experience and qualifications to the Level 9 Technical Directors,

---

[2] Notably, under Google's policies, it is Employee Relations, not Human Resources, who investigates complaints of discrimination. (Trial Tr. 1021:5-8). However, Google did not undertake a full investigation until more than a year later, <u>after</u> Ms. Rowe filed her lawsuit, and when it did so, it failed to speak with any of Plaintiff's comparators to consider the comparability of their jobs. (Pl. Ex. 108).

specifically that "1 Male [Mr. Harteau] was hired into an L9 role with 18.9 years of experience, about the same as - or 0.2 years less than- the complainant." (Pl. Ex. 88). Mr. Lucas testified at trial that his analysis did not follow any established investigative process at Google. (Trial Tr. 539:10-13). In any event, the analysis was not shared with Ms. Rowe.

As for the third element, the jury was instructed that "Plaintiff must prove by a preponderance of the evidence is that Google engaged in an adverse action, that is, conduct that would be reasonably likely to deter a person from engaging in protected activity." Trial Tr. 1449:10-13. The jury was further told to "keep in mind your sense of workplace realities and the fact that the chilling effect of particular conduct depends on the context. The totality of the circumstances must be considered because the overall context in which the challenged conduct occurs cannot be ignored." Also, the challenged conduct need not be "severe or pervasive, because the challenged conduct's severity and pervasiveness are only relevant to the issue of damages, not liability." *Id.*, 1449:23-1450:1.

Plaintiff easily satisfied the third element as Google decided to deny her the promotion to the FSVL role after she raised protected complaints. Specifically, the jury saw how only three days after Ms. Rowe's protected complaint, Mr. Vardaman wrote in his weekly update that – despite not having documented interview feedback from Ms. Rowe's four interviewers  –  "it doesn't sound like she is viable for the VP role." (Pl. Ex. 69). For months after, however, Google continued to let Ms. Rowe believe she was still being fairly considered. On November 7, 2018, having had no updates about the role, Ms. Rowe emailed Mr. Shaukat and Diane Greene to raise concerns regarding her treatment during the FSVL interview process – highlighting that she (unlike other candidates) had not been interviewed by Ms. Greene, and her belief that her original under-leveling was impacting her candidacy. (Pl. Ex. 54). Mr. Shaukat forwarded her

email to Ms. Lawrence in HR, who, rather than investigate the matter, stated that they had already "looked into it" and stood by Google's original leveling decisions. (Pl. Ex. 55). Then on November 26, Mr. Shaukat asked Mr. Lucas, "how do we message to Ulku that she's not getting the role." (Pl. Ex. 62). One day later on November 27, Mr. Vardaman sent another email to Ms. Rowe's interviewers, requesting feedback and stating that Ms. Rowe "was" a candidate for the role. (Pl. Ex. 64). In a December 2018 meeting, Mr. Shaukat told Ms. Rowe he was pausing his search for the role, but that she was not a finalist given the feedback he received about her candidacy during the interview process – though Mr. Vardaman never actually shared any feedback with Mr. Shaukat. (Trial Tr. 578:2-13).

Then in January 2019, Mr. Shaukat hand-selected Mr. Breslow to fill the role without requiring Mr. Breslow to undertake a single interview. (Trial Tr. 710:7-23). That same month, Mr. Vardaman unilaterally entered data into Google's applicant feedback database, Thrive, indicating that Ms. Rowe was rejected from the FSVL position because she lacked "Googleyness," and further describing Ms. Rowe as "overly self-oriented" and recorded that she "was not qualified for the role in addition to ego concerns." (Pl. Ex. 111). Not only did Ms. Rowe's interviews not provide this feedback, it was also markedly different from his previous August 2018 assessment of her – before she complained – as a candidate with "executive poise," who was "confident (but not ego-driven)," and "forthright with a quick operating cadence." (Pl. Ex. 37).

As for the final element, Plaintiff was easily able to establish a causal connection between her complaints and the denial of the promotion. In order to establish a causal connection between the complaint and the denial of promotion, Plaintiff "can use indirect or circumstantial evidence or she can introduce direct evidence of retaliatory motive." Jury Charge

at 21-23 (ECF No. 343). Causal connection "may be established through circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *William v. Morrison & Foerster LLP*, No. 18 Civ. 2542, 2021 U.S. Dist. LEXIS 141869, at *42 (N.D. Cal. Mar. 8, 2021) (quotation omitted); *see also White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (jury may consider "evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely in time by the adverse action or by other circumstantial evidence."). The jury can also consider whether "defendants' proffered reasons for the adverse actions were merely pretextual." *Id.* at 391. The short temporal proximity between Ms. Rowe's complaints and Google's failure to promote her easily satisfied the fourth element of the analysis. (*See* Trial Tr. 1450:6-8) (Plaintiff was required to prove "that the adverse action or actions taken by Google was or were taken at least in part because of Ms. Rowe's protected activity."). The jury rightfully concluded, based on the evidence presented, that a causal connection existed between Ms. Rowe's complaints and the denial of the promotion to the FSVL role.

        *b.*    *VP-FS Sales Role*

Similarly, Plaintiff offered, and the jury accepted, evidence that satisfied each element of her retaliation claim for the denial of promotion to the VP-FS Sales Role. The first two elements are undisputed. Google's awareness of Ms. Rowe's September 17, 2019 filed lawsuit was a stipulation of undisputed fact between the parties. (*See* Trial Tr. 1055:24-1056:4) ("Members of the jury, this is a stipulation of uncontested fact that the parties have handed to me. That means that it is a fact on which the parties have agreed. As of September 19, 2019, Google Cloud's

senior leadership was aware of plaintiff's filed complaint and the allegations contained therein."); (*see also* Def. Br. at 24) (only disputing "the third and fourth elements" of the retaliation claim).

As for the third and fourth elements, the jury heard about how Mr. Vardaman was interviewed by Employee Relations in connection with Ms. Rowe's lawsuit on January 22 and 29, 2020. In those meetings, he described Ms. Rowe as "abrasive," "cantankerous," "bristly," which were in stark contrast to how he described her prior to her complaints. (Pl. Ex. 108). On February 4, Ms. Rowe had coffee with Kristen Kliphouse, then-Head of North America Sales, and learned about the VP-FS Sales role. (Trial Tr. 186:9-12). Ms. Rowe followed up with Mr. Vardaman three times in order to apply, to no avail. (Pl. Ex. 106). Mr. Vardaman then met with Ms. Rowe on or about February 28, and told her she would not be getting the role. (Trial Tr. 192:3-5). Google was unable to explain why exactly it refused to consider her for the role. Specifically, the jury heard firsthand from Mr. Vardaman, who contradicted himself numerous times on this. For example, during his trial testimony, Mr. Vardaman claimed he and Ms. Kliphouse "spen[t] time talking about [Ms. Rowe's] background," yet at his deposition, he claimed he did not know or discuss Ms. Rowe's background. (Trial Tr. 572:9-574:16). He also claimed at trial for the first time that Ms. Kliphouse told him not to consider Ms. Rowe because she wanted to focus on another candidate, which he did not ttestify to at his deposition (which was taken in the same year the promotion was sought). (Trial Tr. 596:22-597:4).

Defendant argues that the jury could not have reached a verdict on this claim because of a comparison between Ms. Rowe and Ms. Piazza, who Defendant claims was "the most qualified candidate." (Def. Br. at 11). First, the Court should not consider this argument as Defendant failed to raise this in its initial motion for judgment as a matter of law, only arguing that Ms. Piazza – who at that time had not yet gone through the full interview process  – was the

18

"preferred candidate." (Def. Ex. 79); See *McCardle,* 131 F.3d at 51 (stating that "the movant [for

JMOL] may not add new grounds after trial"). In addition, the testimony made clear that no-one

actually undertook a comparison between Ms. Rowe and Ms. Piazza. Ms. Kliphouse testified that

the only interaction she had with Ms. Rowe was at their 45-minute coffee meet-and-greet. (Trial

Tr. 1264:14-17) At the time of that meeting, Ms. Kliphouse was generally aware of Ms. Rowe's

claims against Google. (Trial Tr. 1262:11-19). When meeting with Mr. Vardaman regarding

candidates for the VP-FSS role, the only information Ms. Kliphouse had would have been

"whatever was on her submitted materials." (Trial Tr. 1265:19-23). However, Mr. Vardaman

failed to respond to Ms. Rowe's repeated requests to apply for the role, so she had not been able

to submit any materials. (Pl. Ex. 106). Mr. Vardaman further testified that he did not do anything

to ascertain Ms. Rowe's qualifications for the role, did not share any information about her

qualifications, and did not set up an interview. (Trial Tr. 596:8-16, 685:5-10); *see also White,*

814 F.Supp. 2d at 391 (jury may consider whether "defendants' proffered reasons for the adverse

actions were merely pretextual.")

Even assuming *arguendo* that there had been a comparison between Ms. Piazza's and

Ms. Rowe's qualifications, the jury was entitled to believe evidence that Ms. Rowe was more

qualified for the role. *See Reeves*, 530 U.S. at 151 (the "jury is not required to believe" evidence

favorable toward one party). Plaintiff offered evidence that Ms. Piazza spent her entire career at

one financial institution, had no advanced degrees, had no sales experience and no cloud

experience. (Def. Ex. 79). By contrast, Ms. Rowe offered evidence that she was already at

Google, worked across multiple financial institutions in her career, and had more industry

recognition. (Trial Tr. 192:23-194:21). Therefore, the jury acted well within its right to disregard

Defendant's pretextual reason for denying Ms. Rowe the promotion by concluding that

retaliation was "a factor that made a difference or played a part in a decision" even if it was not

"the sole consideration or even the most important consideration motivating the adverse action or

actions." (Trial Tr. 1450:17-23).

### C.      The Verdict Was Not Inconsistent.

Google argues that because the jury determined Google discriminated against Ms. Rowe

but failed to award her backpay, and because the jury found for Google on her NY EPL pay

claim, that the reasonable conclusion is that Ms. Rowe failed to prove she was under-leveled at

hire. Google is wrong. Google presented, and the jury accepted, Google's own evidence and

argument that Ms. Rowe was the second highest paid technical director, and that her pay "was

higher than four of the level 9s" and "a whole bunch of Level 8s." (Trial Tr. 1404:5-12).

Therefore, the jury reasonably could have concluded that Ms. Rowe was improperly leveled, yet

not paid less than the male technical directors. Such a finding is not inconsistent, and therefore

should not be overturned. The jury may find discrimination even if "the challenged conduct [is

not] tangible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir.

2013) (quotation omitted). Plaintiff satisfied her minimal burden to show "she has been treated

less well at least in part '*because* of her gender.'" *Id.* (quotation omitted) (emphasis in original).

Similarly, Defendant argues that because the jury determined Google retaliated against

Ms. Rowe but failed to award her backpay, no judgment may be predicated on that claim. (Def.

Br. at 3). However, Google presented evidence that had Ms. Rowe been promoted into the role,

she would have stayed at her current level and pay, at least initially. (Pl. Ex. 26); (*See also* Trial

Tr. 1247:1-6) (Melissa Lawrence testifying that "Ulku wanted to be considered for a VP role . . .

So when I'm saying I want to flag that if you were selected for this role, that's the role that I was

referring to, and then I went to say you would do it at your current level.") It also heard

20

testimony about Google's practice of increasing level once an employee is in the position. (See, e.g. Pl. Ex. 13) (Melissa Lawrence explaining that level can be increased when employee "seek[s] promotion"). On that basis the jury could have concluded that Ms. Rowe would have received the position if not for Google's retaliation, but she initially would perform the role at her current level and compensation. In any event, the fact that the jury failed to award backpay is immaterial to its finding of discrimination. *See Tolbert*, 242 F.3d at 74 ("Even if the plaintiff fails to persuade the jury that the proven violation caused [her] an injury that is compensable, the defendant who committed the violation is not entitled to judgment as a matter of law.")

## V.     Conclusion

In effect, Defendant improperly requests that this court "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Leblanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995) (quotation and citations omitted). This is improper. For the foregoing reasons, the Court should deny Defendant's renewed motion for judgment as a matter of law.

Dated: December 13, 2023
New York, New York

Respectfully submitted,
By: */s/ Cara E. Greene*
Cara E. Greene
Gregory S. Chiarello
Shira Z. Gelfand
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
ceg@outtengolden.com
gchiarello@outtengolden.com
sgelfand@outtengolden.com

*Attorneys for Plaintiff*