UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,                                          Case No. 1:19-cv-08655-JHR

                          Plaintiff,               ORAL ARGUMENT REQUESTED

            v.

GOOGLE LLC,

                          Defendant.

---

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR INSTATEMENT,
PERMANENT INJUNCTION, AND OTHER POST-JUDGMENT RELIEF**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  THE COURT SHOULD DENY ROWE'S INSTATEMENT/FRONT PAY
     REQUEST .................................................................................................... 2

     A.   The Seventh Amendment Precludes the Relief Rowe Seeks. ................. 2

     B.   The Evidence at Trial Does Not Support an Equitable Award of
          Instatement or Front Pay. ..................................................................... 6

          1.   Rowe failed to prove by a preponderance of the evidence that
               Google leveled her because she is a woman. .............................. 7

          2.   Rowe failed to prove by a preponderance of the evidence that
               Google denied her the Vice President Financial Services Sales role
               for unlawful reasons .................................................................. 10

          3.   The verdict on the NYLL retaliation claim does not support
               instatement or front pay. .......................................................... 11

          4.   Instatement to the VP-FSS Role and front pay would be improper,
               in any event. ............................................................................. 12

III. THE COURT SHOULD DENY ROWE'S REQUEST FOR DECLARATORY
     OR INJUNCTIVE RELIEF. ........................................................................ 13

IV.  ROWE IS NOT ENTITLED TO A TAX GROSS-UP. ................................... 16

V.   ROWE IS NOT ENTITLED TO PRE-JUDGMENT INTEREST, OR POST-
     JUDGMENT INTEREST AT A 9% RATE. ................................................. 17

     A.   Rowe Is Not Entitled to Pre-Judgment Interest. ................................. 17

     B.   Rowe Is Not Entitled to Post-Judgment Interest at a 9% Interest Rate. ............. 18

VI.  CONCLUSION ........................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Allen v. Koenigsmann*,
   No. 19-cv-8173(LAP), 2023 WL 6292648 (S.D.N.Y. Sept. 27, 2023) ...................................15

*Cappiello v. ICD Publ'ns, Inc.*,
   720 F.3d 109 (2d Cir. 2013)..................................................................................................19

*Charles Schwab & Co., Inc. v. Retrophin, Inc.*,
   No. 14-cv-4294(ER), 2015 WL 5729498 (S.D.N.Y. Sept. 30, 2015)......................................14

*Chenette v. Kenneth Cole Prods., Inc.*,
   345 F. App'x 615 (2d Cir. 2009) .............................................................................................9

*Chukwueze v. NYCERS*,
   No. 10-cv-8133(JMF), 2013 WL 5878174 (S.D.N.Y. Nov. 1, 2013).....................................16

*Cutlass Prods., Inc. v. Bregman*,
   682 F.2d 323 (2d Cir. 1982).....................................................................................................4

*Dawson v. Bumble & Bumble*,
   398 F.3d 211 (2d Cir. 2005), *overruled on other grounds by Zarda v. Altitude*
   *Express, Inc.*, 883 F.3d 100 (2d Cir. 2018)................................................................................9

*Guardsmark, Inc. v. Pinkerton's Inc.*,
   739 F. Supp. 173 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 845 (2d Cir. 1990) .................................6

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
   No. 96-cv-8414, 2016 WL 11485633 (S.D.N.Y. June 13, 2016) ...........................................16

*Holt v. KMI-Continental, Inc.*,
   95 F.3d 123 (2d Cir. 1996)....................................................................................................10

*Honadle v. Univ. of Vermont & State Agric. Coll.*,
   56 F. Supp. 2d 419 (D. Vt. 1999).............................................................................................7

*Khurana v. JMP USA, Inc.*,
   No. 14-cv-4448(SIL), 2017 WL 1251102 (E.D.N.Y. Apr. 5, 2017) .....................................18

*Koch v. Rodenstock*,
   No. 06-cv-6586(BSJ)(DF), 2012 WL 5844187 (S.D.N.Y. May 9, 2012),
   *report & recommendation adopted*, 2012 WL 5845455 (S.D.N.Y. Nov. 19,
   2012) ......................................................................................................................................14

*McGuire v. Russell Miller, Inc.*,
   1 F.3d 1306 (2d Cir. 1993)....................................................................................................11

*MSC Mediterranean Shipping Co. S.A. v. Airlift Marine Servs. PVT Ltd.*,
    579 F. Supp. 3d 484 (S.D.N.Y. 2022), *aff'd sub nom.*, *MSC Mediterranean
    Shipping Co. S.A. v. Airlift (U.S.A.), Inc.*, No. 22-406, 2023 WL 4485387 (2d
    Cir. July 12, 2023) ................................................................................................6

*Najnin v. Dollar Mountain, Inc.*,
    No. 14-cv-5758, 2015 WL 6125436 (S.D.N.Y. Sept. 25, 2015) ............................18

*Padilla v. Metro-North Commuter R.R.*,
    92 F.3d 117 (2d Cir. 1996)...................................................................................13

*Patel v. City of New York*,
    No. 12-cv-6312(LAP), 2016 WL 6820943 (S.D.N.Y. Sept. 29, 2016), *aff'd*,
    699 F. App'x 67 (2d Cir. 2017) .............................................................................6

*Perez v. Progenics Pharms., Inc.*,
    204 F. Supp. 3d 528 (S.D.N.Y. 2016)...................................................................13

*Ravina v. Columbia Univ.*,
    No. 16-cv-2137(RA), 2019 WL 1450449 (S.D.N.Y. Mar. 31, 2019)....................15

*Romano v. Howarth*,
    998 F.2d 101 (2d Cir. 1993)..............................................................................4, 11

*Stanbro v. Palou*,
    Nos. 20-cv-1591(KMK), 19-cv-10857(KMK), 2023 WL 2058610 (S.D.N.Y.
    Feb. 16, 2023) ......................................................................................................17

*Sulkowska v. City of New York*,
    170 F. Supp. 2d 359 (S.D.N.Y. 2001)...................................................................17

*Tse v. New York Univ.*,
    No. 10-cv-7207(DAB), 2016 WL 10907062 (S.D.N.Y. Aug. 29, 2016) ..........12, 16

*Walker v. Schult*,
    45 F.4th 598 (2d Cir. 2022) ...................................................................................2

*Wat Bey v. City of New York*,
    Nos. 99-cv-3873(AJN), 01-cv-9406(AJN), 2013 WL 12082743 (S.D.N.Y.
    Sept. 4, 2013), *aff'd sub nom. Rivera v. City of New York*, 594 F. App'x 2 (2d
    Cir. 2014) ...................................................................................................... *passim*

*Whittlesey v. Union Carbide*,
    742 F.2d 724 (2d Cir. 1984)..................................................................................13

*Zakre v. Norddeutsche Landesbank Girozentrale*,
    541 F. Supp. 2d 555 (S.D.N.Y. 2008), *aff'd*, 344 F. App'x 628 (2d Cir. 2009)....................12

**Statutes**

28 U.S.C. § 1961(a) .................................................................................................................18

**Other Authorities**

U.S. Const. amend. VII ............................................................................................................2

## I.     INTRODUCTION

Google LLC ("Google") submits this Memorandum of Law in opposition to Ulku Rowe's Motion for Instatement, Permanent Injunction, and Other Post-Judgment Relief. (ECF No. 364.)

Ulku Rowe ("Rowe") had a full and fair opportunity to prove her claims by a preponderance of the evidence to a jury. She failed to prove most of them, and she was awarded $150,000 plus punitive damages instead of the over $14.2 million plus punitive damages she sought. Dissatisfied with the jury's verdict, Rowe now asks this Court to give her *more*, without demonstrating that she is entitled to more. The relief she seeks is unwarranted for a multitude of reasons. Specifically:

- Ordering Rowe's "instatement" to the higher paying Level 9 ("L9") role and to a higher-paying vice president role would be inconsistent with the jury's findings and therefore violate the Seventh Amendment; in any event, such an order would be unsupported by the evidence at trial.

- There is no cognizable danger of unlawful action in the future, and Rowe's request is redundant of Google's existing legal obligations.

- Rowe has proffered no evidence of past tax filings, her current tax situation, or expert evidence on tax options available to her, nor is it even clear she will be subject to any additional tax liability because of a lump sum award.

- Where, as here, a plaintiff recovers only non-economic damages, an award of prejudgment interest on those damages is inappropriate.

- Any judgment in Rowe's favor is a federal court judgment, to which a federal interest rate on post-judgment interest applies.

For the reasons set forth above and in more detail below, this Court should deny Rowe's Motion for Instatement, Permanent Injunction, and Other Post-Judgment Relief. (ECF No. 364.)

## II. THE COURT SHOULD DENY ROWE'S INSTATEMENT/FRONT PAY REQUEST.

Rowe's requests for "instatement" to higher paying roles at Google (or, alternatively, an award of front pay) are thinly veiled attempts to obtain from the Court what she failed to prove to the jury. Rowe chose to have the facts of her case tried to (and determined by) a jury. She opposed Google's request for a specific jury finding on her discriminatory leveling claim under the New York City Human Rights Law ("NYCHRL"), insisting instead on a verdict that asked whether "on at least one occasion" Google treated her less well because of her gender. Unhappy with the outcome Rowe now asks this Court improperly to reexamine the jury's factual findings and assume that, because the jury found at least *one* instance of discrimination, Google discriminated against her in *all* aspects of her employment. In doing so, Rowe ignores the clear import of the verdict, as well as substantial evidence presented at trial. She cannot now attempt to leverage the special verdict form to her advantage, against the weight of the evidence.

Therefore, the Court should deny Rowe's request for instatement or front pay.

### A. The Seventh Amendment Precludes the Relief Rowe Seeks.

The Seventh Amendment to the U.S. Constitution provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States . . . ." U.S. CONST. amend. VII. Therefore, when a jury has "found certain facts, but not others, established," those findings preclude the court from deciding the same fact issues differently. *Walker v. Schult*, 45 F.4th 598, 611 (2d Cir. 2022) (court cannot find facts contradicting "findings that were implicit in the jury's verdict"); *see also Wat Bey v. City of New York*, Nos. 99-cv-3873(AJN), 01-cv-9406(AJN), 2013 WL 12082743, at *5 (S.D.N.Y. Sept. 4, 2013) (in granting post-trial relief, courts are "not

permitted to find as a fact a proposition that is contrary to a finding made by the jury"), *aff'd sub*

*nom. Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014). That is precisely what Rowe asks

this Court to do, without any legal support to authorize this extraordinary relief. Tellingly, none of

the authorities that she cites involves an award for equitable relief where the jury has already

rejected the factual premise required to support the request.

      The central thesis of Rowe's lawsuit and her internal complaints that preceded it is that

Google unlawfully deprived her of greater pay because she was a L8 Technical Director. The

undisputed evidence showed that L9 Technical Directors were eligible for larger bonus and equity

compensation. (Trial Tr. 62:19–22; 1160:13–1162:12.) From start to finish, Rowe urged the jury

to compensate her with pay for the allegedly unlawful leveling decision. In opening statements,

her counsel told the jury, "when you compare . . . the actual annual compensation . . . between the

Level 9 men and Ms. Rowe, you'll see that they earn much more than she did." (Trial Tr. at 47:3–

6.) When asked to "give the jury a sense of an order of magnitude in the difference [in

compensation] between a Level 8 and a Level 9" employee, Rowe testified that it was "hundreds

of thousands of dollars." (*Id*. at 143:17–21.) Rowe's economic damages expert, Nora Ostrofe,

assigned a specific dollar amount, testifying that Rowe lost $1,968,853 because she was a L8 and

not a L9. (*Id*. at 1074:6–9.) Her counsel drove the point home in closing argument: "make no

mistake, Ms. Rowe was paid less than her male comparators . . . Level 8s have a lower salary range

and a lower bonus target . . . Level 8s receive less equity. And that was Ms. Rowe's experience."

(*Id*. at 1374:4–9.)

      Rowe's failure to prove Google set her level because she is a woman is implicit in the

verdict. As described in Section II.A. of the Memorandum of Law in Support of Google LLC's

Renewed Motion For Judgment as a Matter of Law (ECF No. 369), the jury already decided that

Rowe failed to establish those key factual allegations of her Second Amended Complaint. The jury found she *did not* prove a violation of the New York Labor Law ("NYLL") and *did not* prove that she was entitled to any pay under either the NYLL or the NYCHRL. Read together,[1] the Court's jury instructions and the verdict form (both approved by Rowe) make clear that the jury explicitly found she failed to prove that she was paid less because she is a woman, and that she failed to prove that she was denied higher paying positions *either* because she is a woman or because of her protected activity. (ECF No. 369 at 3–11.) It is inconceivable that the jury found that Google set Rowe's level because of her gender *and not award her any pay* for the nearly seven years she remained and was paid as an L8. .

Rowe speculates in a footnote that the jury must have concluded that she "earned equal or more pay than her L9 male peers" and that, she suggests, is why she lost her pay claim. (ECF No. 365 at 8 n.3.) Not only does that defy logic, but there is no evidence that Rowe regularly earned equal or more pay than her L9 male peers. Rowe cites evidence that reflects only that she occasionally out-earned particular L9 employees, which was consistent with Google's argument that the performance standards for L9 are higher and being a L9 employee does not *necessarily mean* higher pay. As described above, her expert calculated the alleged difference over time, (*Id.* at 1070:15–19), which was the basis for Rowe's very specific request that the jury award her back pay on her leveling claim.

Further, Rowe described her emotional distress at the close of her direct testimony, and even she did not clearly connect this to her leveling, ascribing it instead to the existence of this lawsuit. (*Id.* at 197:13–198:22.) The jury only awarded her half the emotional distress damages

---

[1] *See Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993) ("special interrogatories must be read 'in conjunction with the district court's charge'") (quoting *Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 327 (2d Cir. 1982)).

she requested, in any case. It is difficult to imagine how the jury could simultaneously find that Rowe's alleged under-leveling affected her "emotional well-being" and required punitive damages sufficient to make "an example" of Google, (Trial Tr. 1377:19–1378:3), but nevertheless had no economic impact.

In a contortionist interpretation of the verdict, Rowe speculates that the jury concluded she was under-leveled because she is a woman. Specifically, she relies on the jury's finding that "*on at least one occasion* [Google] treated her less well, at least in part, because of her gender," and award of emotional distress damages. (ECF No. 340.) But Rowe alleged that Google treated her less well because of her gender on many occasions, (ECF No. 108 ¶¶ 34, 41–42, 46, 54–61), not just in setting her level at hire, and explicitly and directly connected economic damages to some of those but not others. Rowe points to nothing in the record to suggest that the jury awarded her non-economic damages because Google treated her less well because of her gender *on all occasions*.

To the contrary, Rowe twice opposed Google's effort to obtain from the jury a verdict that identified on which occasions Google discriminated against her on the basis of her gender, including setting her level upon hire. Google's proposed verdict form requested such a finding. (ECF No. 271). Before the Court instructed the jury, Google again requested revisions to the verdict form to request such a finding. (Trial Tr. 1129:2–15.) Rowe again objected. The Court should not permit Rowe to exploit the generalized nature of the NYCHRL question on the special verdict form.

The logical conclusion from the Court's instructions and the jury's back pay finding is that Rowe failed to prove that Google set her level because she is a woman. That finding precludes this Court from reaching the opposite conclusion and awarding Rowe the relief she now seeks. *See*

*Wat Bey*, 2013 WL 12082743, at *5. In sum, the Seventh Amendment precludes the instatement and front pay that Rowe requests.

**B.     The Evidence at Trial Does Not Support an Equitable Award of Instatement or Front Pay.**

If the jury's verdict were not a Constitutional barrier (which it is), Rowe has a further obstacle to her request for instatement and front pay. As with any claim for relief in a civil case, Rowe has "the burden of proving the elements of [her] claim by a preponderance of the evidence." *MSC Mediterranean Shipping Co. S.A. v. Airlift Marine Servs. PVT Ltd.*, 579 F. Supp. 3d 484, 488 (S.D.N.Y. 2022), *aff'd sub nom.*, *MSC Mediterranean Shipping Co. S.A. v. Airlift (U.S.A.), Inc.*, No. 22-406, 2023 WL 4485387 (2d Cir. July 12, 2023).[2] It is no different here, simply because Rowe seeks equitable relief from the Court after a trial. *See Guardsmark, Inc. v. Pinkerton's Inc.*, 739 F. Supp. 173, 174 (S.D.N.Y. 1990) (after a "permanent injunction hearing," court "weigh[ed] all of the evidence" and found that the movant "has not proven by a fair preponderance of the credible evidence that [non-movant] has violated the law"), *aff'd*, 923 F.2d 845 (2d Cir. 1990).

It is also well-established that this Court's "role is limited to 'preventing unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.'" *Patel v. City of New York*, No. 12-cv-6312(LAP), 2016 WL 6820943, at *7 (S.D.N.Y. Sept. 29, 2016) (citation omitted), *aff'd*, 699 F. App'x 67 (2d Cir. 2017). Without any evidence of unlawful bias (gender or retaliatory), Rowe asks this Court impermissibly to second-guess Google's business judgment, and reach a different outcome despite the overwhelming evidence to the contrary. Her motion scarcely marshals any evidence, because the record is clear: she has not

---

[2] Rowe oddly observes that the NYCHRL does not permit "same decision" defense. (ECF No. 365 at 10.) That was never an issue in the case. The Court did not instruct the jury on the "same decision" defense, and Google is not asserting that affirmative defense here. The question now is whether *Rowe has proved* that Google denied her the positions to which she seeks instatement for unlawful reasons, and the jury already concluded she did not.

proved by a preponderance of the evidence that Google set her level because she is a woman, or that Google denied her the Vice President-Financial Services Sales ("VP-FSS") Role because of her alleged protected activity.

Instatement is also conceptually different from reinstatement. An employee is presumably qualified for a role they previously held; reinstatement to that role, therefore, does not require any assessment of the employee's qualifications. Instatement, on the other hand, places the employee in an entirely new role; an assessment of the employee's qualifications for the new role is unavoidable. For this reason, instatement is a rare remedy. *See Honadle v. Univ. of Vermont & State Agric. Coll.*, 56 F. Supp. 2d 419, 424 (D. Vt. 1999) (denying request for equitable relief of plaintiff's instatement to tenured position, where granting request "would inappropriately involve the Court in [the University of Vermont's] tenure decisions"). Unsurprisingly, despite the remedial purposes of the statutes at issue, Rowe has not identified a single authority granting a request for the equitable relief of instatement under either statute. (ECF No. 365 at 3–11.) This Court should decline Rowe's invitation to be the first.

> 1.     *Rowe failed to prove by a preponderance of the evidence that Google leveled her because she is a woman.*

The credible evidence overwhelmingly demonstrates that Google had legitimate non-discriminatory reasons for not making Rowe a L9 Technical Director. William Grannis testified that "[a]t L9, someone's a world class expert in a topic . . . for example, an L9 might figure out a completely different way to do [cloud] storage." (Trial Tr. 839:19–840:3.) "We would expect someone coming in at L9," Grannis continued, "to be a pace-setter for the organization[.]" (*Id.* at 845:6–7.) "A Level 8," conversely, has not "created or done these things of distinction yet . . . they wouldn't be recognized as a world class expert." (*Id.* at 840:9–15.) Google's Engineering-Wide

Leveling Guide memorialized these differences. (D38.) The hiring packets for the L9 Technical Directors were consistent with this. (D23–D25; D27–D28; Trial Tr. 859:17–866:11.)

Given these expectations, a comparison of Rowe's hiring packet with those of the L9 Technical Directors illustrates why ordering Rowe's instatement to L9 is inappropriate. Rowe "didn't come off as the most technical of the candidates"; it was "unclear whether she's a trusted advisor to the CxO"; one interviewer was not "blown away." (P119 at GOOG-ROWE-00019105.R, 00019112.R, 00019114.R.) Rowe herself admitted in August 2016 during the hiring process that she was "not a cloud expert . . . ." (D47.) Grannis agreed, testifying that Rowe "wasn't a world recognized expert," and that he "wouldn't have known about her as a candidate if it wasn't for recruiting letting us know" about her. (Trial Tr. 855:1–3.) Rowe's experience and qualifications were much more in line with other L8 Technical Directors, such as Scott Penberthy. (*Id*. at 851:5–852:2.)

Rowe's work since her hire further confirms that Google appropriately made her an L8 and that the Court would be second-guessing Google's business judgment to order Rowe instated to L9. In fact, according to Grannis, while she reported to him, Rowe performed at *or below* the expectations of an L8 Technical Director. (*Id*. at 869:5–7.) For example, Rowe did not make the significant engineering contributions in OCTO that Google expected even of L8 Technical Directors. (*Id*. at 870:12–871:1.) L9 Technical Directors, on the other hand, did make significant engineering contributions in OCTO. (*Id*. at 871:7–11.) Rowe also needed to strengthen her impact in product strategy. (*Id*. at 868:25–869:7.) According to Grannis, instead of focusing on making a tangible impact in these areas, Rowe preferred the customer-facing aspects of her job. (*Id*. at 870:19–23.)

Rowe admits this. "In my first two years," she testified, "I think I traveled [to] 15 countries, went to 30 cities, just giving keynotes in various parts of the world . . . ." (*Id*. at 131:17–19.) Rowe was also a "regular speaker" at "invitation-only events for just the C-suite customers," "spoke very regularly at industry events, financial services industry events," and "spoke a lot at [Google's] customers' events." (*Id*. at 131:21–132:13.) In short, Rowe "was traveling extensively," at the expense of her engineering and product strategy responsibilities. (*Id*. at 138:21.)

Patricia Florissi, Rowe's current supervisor, echoed Rowe's productivity struggles. In a November 2022 support check-in, Florissi told Rowe that she "expected more at that point . . . ." (*Id*. at 1284:19–21.) For example, "there were no artifacts, no documents, no running notes that expressed [Rowe's] contributions on the climate risk analytics." (*Id*. at 1285:4–6.) The "documents that existed didn't have [Rowe's] name as a reviewer, as a contributor, [or] as an author." (*Id*. at 1285:6–8.) Florissi also "expected [Rowe] to attend more of the team meetings," which she was not doing "as often as the other team members." (*Id*. at 1285:9–13.) In a June, 2023 check-in, Rowe again failed to meet Florissi's expectations "to have additional artifacts, additional documents, additional thought leadership, additional running notes by meeting with other Googlers" regarding an artificial intelligence project. (*Id*. at 1294:16–1295:14.)

The only evidence Rowe presented at trial to the contrary was the gender of these differently qualified male employees, and her own subjective opinion of her qualifications relative to theirs. That is plainly insufficient to meet her burden of proof by a preponderance of the evidence. *See Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009) ("a plaintiff's 'merely subjective assessment' of her own qualifications" for a position "cannot defeat evidence that other individuals were more qualified") (citation omitted); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 224 (2d Cir. 2005) ("merely subjective assessment of [plaintiff's] chances

for promotion does not create an issue of fact as to whether Bumble & Bumble's failure to promote [plaintiff] was motivated by discriminatory intent."), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129–30 (2d Cir. 1996) (in response to evidence showing experience of others, plaintiff "attempts to show pretext by asserting her personal belief that she was the most qualified person for the various positions[,]" which is insufficient to avoid summary judgment).

> 2.    *Rowe failed to prove by a preponderance of the evidence that Google denied her the Vice President Financial Services Sales role for unlawful reasons.*

The credible evidence also overwhelmingly demonstrates that Google had legitimate non-retaliatory reasons for not selecting Rowe for the VP-FSS Role. Rowe did not impress Kirsten Kliphouse as someone that could fulfill the VP-FSS Role. (Trial Tr. at 1261:23–1262:1.) In fact, despite Rowe's self-assessment as an authority in the industry who "spoke very regularly at . . . financial services industry events," (*id*. at 132:2–8), Kliphouse had never heard of Rowe before Grannis asked her to meet with Rowe as a favor to him. (*Id*. at 1260:15–22, 1266:23–1267:4.)

Kliphouse's impression of Rowe was fully justified. Per the job description, Google designed the VP-FSS Role for someone with "previous, demonstrable success leading sizeable technology sales teams that serve the financial services industry . . . ." (D75.) Among the necessary qualifications were "[p]roven success managing a sales/business development organization to meet and exceed revenue goals." (*Id*.) Rowe admitted at trial, though, that she had none of these qualifications: "Q: [Y]ou've never managed a sales team at all; is that right? A: Correct." (Trial Tr. 270:8–10.) "Q: . . . [and] you didn't demonstrate proven success managing a sales business development organization to meet revenue goals, is that an accurate statement? A: Correct." (*Id*. at 270:17–20.)

Conversely, Kliphouse considered Piazza, the successful candidate and current occupant of the role, "a very seasoned [and] very senior leader who had been in the industry of financial services for a long time." (*Id*. at 1258:18–23.) Piazza was "well versed in management, in leadership, in technology, being at the executive table and being able to make very senior decisions within the financial services." (*Id*. at 1258:23–1259:1.) She was also "qualified as . . . [a] financial services expert given her roles [and] her background within Citi[bank]." (*Id*. at 1259:1–3.) Just three days after Kliphouse met with Rowe for a coffee in February 2020, she rated Piazza a "strong hire" for the VP-FSS Role. (D79.)

> 3.      *The verdict on the NYLL retaliation claim does not support instatement or front pay.*

The verdict on Rowe's NYLL retaliation claim does not, as she argues, (ECF No. 365 at 9), mean that she proved by a preponderance of the evidence that Google denied her the VP-FSS Role for unlawful reasons. Interpreting the verdict that way creates an inconsistency that the Court must avoid. Instead, the Court must interpret the verdict consistent with the jury instructions, *see Romano*, 998 F.2d at 104, and adopt a view that is consistent with the evidence. *See McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1311 (2d Cir. 1993) ("The court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, . . . and if there is a way to view a case that makes the jury's answers . . . consistent with one another, the court must resolve the answers that way . . . .") (internal citations omitted).

As described in Section II.A., the verdict clearly shows that Rowe did not prove by a preponderance of the evidence that Google denied her the higher-paying VP-FSS Role for retaliatory reasons, because the jury awarded no back pay. A quick review of the jury instructions on the retaliation claim and on back pay supports this view for two principal reasons:

- First, in describing back pay to the jury, this Court explained it "consists of . . . salary . . . and other forms of compensation and benefits that Ms. Rowe *would have received if not for Google's unlawful conduct, if that is what you find*." (Trial Tr. 1452:6–10 (emphasis added).) Therefore, the award of no back pay means that Rowe failed to prove that Rowe would have received the higher paying job "if not for" unlawful retaliatory conduct. *Id.*

- Second, this Court did not limit its description of protected activity under the NYLL to the filing of Rowe's lawsuit, (*id.* at 1447:9–14, 1448:8–24), and did not limit the scope of potential retaliatory adverse actions to the denial of the VP-FSS Role. (*Id.* at 1449:10– 1450:5.) Therefore, the verdict in Rowe's favor on the NYLL retaliation claim without an award of back pay likely relates to any number of the perceived slights Rowe claims occurred following her internal complaints.

        *4.    Instatement to the VP-FSS Role and front pay would be improper, in any event.*

Rowe's placement in the VP-FSS Role would displace Piazza, who still occupies that position. *See Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp. 2d 555, 570 (S.D.N.Y. 2008) (denying reinstatement because, *inter alia*, it "would displace an innocent third party"), *aff'd*, 344 F. App'x 628 (2d Cir. 2009). Moreover, Rowe has not presented any evidence of the availability of a similar, open position. *See Tse v. New York Univ.*, No. 10-cv-7207(DAB), 2016 WL 10907062, at *36 (S.D.N.Y. Aug. 29, 2016) (denying request for reinstatement where plaintiff "presented no evidence" of "the availability of similar positions").

Nor is Rowe entitled to front pay, or a salary increase pending the availability of a VP-level role. "The purpose of 'front pay' is to make the victim of unlawful discrimination whole," *Wat Bey*, 2013 WL 12082743, at *27 (citation omitted), and the jury has *already* determined that Rowe *did not* prove that she would have been entitled to additional pay "if not for" unlawful

conduct. Further, front pay and temporary salary increases are *alternative* remedies, where instatement or reinstatement is legally required but practically unfeasible. *Id*. at \*28 (declining to reinstate plaintiff in part because it was not "feasible"). They are unavailable where, as here, the plaintiff *has not proved her entitled to instatement in the first place*.

Once again, Rowe's authorities are inapposite. In *Whittlesey v. Union Carbide*, the Second Circuit held, unremarkably, that "front pay is, in limited circumstances, an appropriate remedy under the ADEA." 742 F.2d 724, 729 (2d Cir. 1984). Google does not dispute this, but *Whittlesey*'s relevance to Rowe's gender-based lawsuit is elusive.

In *Perez v. Progenics Pharms., Inc.*, 204 F. Supp. 3d 528, 546 (S.D.N.Y. 2016), and *Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117 (2d Cir. 1996), unlike here, the juries expressly found that the plaintiffs had been unlawfully terminated and demoted in retaliation for protected activity. The issue in both cases was whether the "manifest hostility" and "animosity" between the parties (something that does not exist here (ECF No. 365 at 11) made reinstatement unfeasible. *Perez*, 204 F. Supp. 3d at 550; *Padilla*, 92 F.3d at 121. On appeal, the Second Circuit in *Padilla* affirmed that a front pay award of 20 years was appropriate, "[i]n view of the unique circumstances of this case," because the plaintiff had only a high school education and was "very unlikely . . . to find alternative employment at [his former] salary." 92 F.3d at 126. Rowe, though, is not a train dispatcher with a high school education. She remains gainfully employed at Google earning almost $1 million annually, has an advanced degree in computer science, (Trial Tr. at 66:11–14), and is a Fulbright Scholar. (*Id*. at 66:21–22). The concerns present in *Padilla* are notably absent here.

## III.   THE COURT SHOULD DENY ROWE'S REQUEST FOR DECLARATORY OR INJUNCTIVE RELIEF.

Rowe's request for declaratory and injunctive relief is also unsupported. The jury clearly rejected her most significant claims—finding that she *did not prove* that Google engaged in pay

discrimination and *did not prove* that Google denied her higher paying positions because she is a woman or because of any protected activity. Therefore, the Court should reject her claim for declaratory and injunctive relief, too.

### A.     Rowe Is Not Entitled to Declaratory Relief.

A declaratory judgment "should not be rendered unless it will serve some useful purpose." *Charles Schwab & Co., Inc. v. Retrophin, Inc.*, No. 14-cv-4294(ER), 2015 WL 5729498, at *15 (S.D.N.Y. Sept. 30, 2015). It must "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations." *Id*. Courts must therefore "exercise their discretion to award such relief 'judicially and with care.'" *Id*.

Here, Rowe does not even articulate what she wants this Court to declare. *See id.* at *14 (plaintiffs "ma[d]e no effort to clarify the purpose of their requests for declaratory relief"). As in *Charles Schwab & Co., Inc.*, Rowe "assert[s] only that [she] 'should be permitted to seek all available remedies under each applicable theory of recovery.'" *Id*. For this reason alone, this Court should deny her request.

Even assuming that Rowe asks this Court to "declare" the substance of her allegations that Google discriminated and/or retaliated against her, such a declaration would be inconsistent with the jury's verdict and it serves no practical purpose. *See Koch v. Rodenstock*, No. 06-cv-6586(BSJ)(DF), 2012 WL 5844187, at *13 (S.D.N.Y. May 9, 2012) (denying request to "'declare' the substance of [plaintiff's] fraud allegation," because it would not "clarify the legal rights or obligations of the parties," and would merely be "duplicative of [plaintiff's] claim"), *report & recommendation adopted*, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012). The parties' legal relationship is hardly uncertain; nor does it require a judicial declaration. Although she has not performed work for Google since July 2023, Rowe remains gainfully employed, in the same role

14

that she has had throughout this litigation, earning substantial compensation. For this reason, too, the Court should deny her request for declaratory relief.

> ### B.    Rowe Is Not Entitled to Injunctive Relief.

"A party seeking an injunction bears the burden of proving that the 'relief is needed' because 'there exists some cognizable danger of recurrent violations.'" *Wat Bey*, 2013 WL 12082743, at *30. Rowe cannot satisfy this burden.

The only claims on which Rowe may have prevailed were: (1) Shaukat allegedly excluding Rowe from meetings, email distribution lists, and team off-sites; (2) Shaukat allegedly compelling Rowe to move back to OCTO in March 2019; and/or (3) alleged unfair treatment by Shaukat, Vardaman, and Kliphouse during her candidacy for the Financial Services Vertical Lead ("FSVL") Role and VP-FSS Role.[3] Even assuming *arguendo* these claims had merit,[4] they carry no risk of recurrent violations, because none of them still work at Google. *See Ravina v. Columbia Univ.*, No. 16-cv-2137(RA), 2019 WL 1450449, at *17 (S.D.N.Y. Mar. 31, 2019) (denying request for injunctive relief under the NYCHRL where plaintiff and alleged wrongdoer "no longer work together").

Nor is there any broader risk of retaliation against Rowe. The only evidence Rowe can muster of alleged post-verdict retaliation is Google's simple denial of any wrongdoing in the press. (ECF No. 365 at 17 n.8.) This, too, is insufficient to warrant injunctive relief. *See Wat Bey*, 2013 WL 12082743, at *31 (denying request for injunctive relief where plaintiff "only identified a single

---

[3] To the extent Rowe claimed at trial that Google denied her the Director, OCTO (East Coast) role, any related request for injunctive relief is inappropriate, as she admits she did not plead this in her lawsuit. (ECF No. 365 at 17 n.9); *see Allen v. Koenigsmann*, No. 19-cv-8173(LAP), 2023 WL 6292648, at *1 (S.D.N.Y. Sept. 27, 2023) ("It is 'inappropriate for the court to grant a request for injunctive relief that is unrelated to the claims . . . in the complaint'") (citation omitted).

[4] As set forth in Google's renewed motion for judgment as a matter of law (ECF No. 368), the jury's findings in Rowe's favor are unsupported by the evidence.

potentially similar incident that has occurred since the underlying events"). Indeed, as this Court is aware, Rowe has been on voluntary paid leave from Google since June 2023 (Trial Tr. 1299:5–6; 1297:2–4), with no diminution in title, responsibilities, or compensation.

Her request for injunctive relief is also redundant of the law. Specifically, she asks that Google refrain from "further violations" of the NYLL and NYCHRL. (ECF No. 365 at 16.) For this reason, too, her request should be denied. *See Wat Bey*, 2013 WL 12082743, at *31 (denying request to "enjoin Defendants from discriminating against employees because of their Islamic religion," because that conduct was "already prohibited by law"); *Chukwueze v. NYCERS*, No. 10-cv-8133(JMF), 2013 WL 5878174, at *2 (S.D.N.Y. Nov. 1, 2013) (injunction enjoining defendant from retaliating against plaintiff was unnecessary, "because retaliation is already prohibited by law").

## IV.     ROWE IS NOT ENTITLED TO A TAX GROSS-UP.

As Rowe's own cited authority reflects, a tax gross-up on a damages award is inappropriate where, as here, Rowe offers no "evidence of [her] past tax filings and current tax situation," or "expert evidence on the tax options" available to her. *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-cv-8414, 2016 WL 11485633, at *16 (S.D.N.Y. June 13, 2016). In *Tse v. New York Univ.*, for example, the court denied a request for a tax gross-up on a damages award where the plaintiff did "not put forth sufficient evidence for the Court to determine her expected increased tax liability." 2016 WL 10907062, at *36. In *Tse*, as here, the plaintiff merely "set forth the rates of taxation for different income brackets," information that "was not admitted at trial." *Id*. Moreover, it is not clear that Rowe "will, indeed, be subject to additional tax liability due to [her] lump sum payment," because her damages award of $1.15 million "is not significantly higher" than her 2023 total compensation of $940,667. (*See* P134); *Tse*, 2016 WL 10907062, at *36 (under these circumstances, a tax gross-up "is not necessary to make Plaintiff whole").

16

The Court therefore should deny Rowe's request for a tax gross-up because it is wholly unsupported in law or in the record.

## V. ROWE IS NOT ENTITLED TO PRE-JUDGMENT INTEREST, OR POST-JUDGMENT INTEREST AT A 9% RATE.

Rowe's request for interest, pre- and post-judgment, misses the mark and ignores the law. Therefore, the Court should deny these requests too.

### A. Rowe Is Not Entitled to Pre-Judgment Interest.

Whether to award pre-judgment interest is "ordinarily left to the discretion" of the court. *Stanbro v. Palou*, Nos. 20-cv-1591(KMK), 19-cv-10857(KMK), 2023 WL 2058610, at *2 (S.D.N.Y. Feb. 16, 2023). Where, as here, the plaintiff recovers emotional distress damages, but no economic damages, an award of pre-judgment interest is inappropriate. Even the *Wickham* factors, on which Rowe relies in her motion, support this conclusion.

In *Sulkowska v. City of New York*, for example, the court declined to award pre-judgment interest under *Wickham*, because the plaintiff's "award of compensatory damages . . . was based exclusively on 'the emotional injuries that plaintiff sustained . . . .'" 170 F. Supp. 2d 359, 371 (S.D.N.Y. 2001). "Plaintiff sustained no economic injury as a result of defendants' actions," the court continued. *Id.* "[S]he was not, for instance, deprived of money that she would otherwise have earned but for defendants' wrongdoing, as in an employment termination case." *Id.* "Under such circumstances, an award of prejudgment interest would not be compensatory, but punitive, which is an improper purpose." *Id.* at 371–72; *see also Stanbro*, 2023 WL 2058610, at *2 (declining to award pre-judgment interest under *Wickham*, where plaintiff had not suffered any "lost wages," and the damages for his pain and suffering were "intended to fully compensate [him] for those respective injuries . . . an award of prejudgment interest under these circumstances would be punitive rather than compensatory") (citation omitted).

Nevertheless, if this Court decides in its discretion to grant Rowe pre-judgment interest (and it should not), it must compute that interest "from a 'single reasonable intermediate date' between the dates on which the plaintiff started and stopped incurring the damages." *Najnin v. Dollar Mountain, Inc.*, No. 14-cv-5758, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015) (articulating the appropriate approach "[w]here the plaintiff's damages were incurred at various times") (citation omitted). Of the claims on which Rowe may have prevailed, her alleged damages began on June 1, 2018, when she began reporting to Shaukat. (Trial Tr. 148:15–23). Assuming, as Rowe testified, that her emotional distress continues through the present (*Id*. at 197:13–198:22), if this Court decides to grant pre-judgment interest (which it should not), it must compute that interest beginning on February 3, 2021—the midpoint between June 1, 2018 and Rowe's October 11, 2023 testimony regarding her emotional distress. In fact, assuming Rowe's emotional distress did not suddenly stop on the date of her trial testimony, this Court may reasonably use the midpoint between June 1, 2018 and the date it decides this motion as the start date for pre-judgment interest.

### B.  Rowe Is Not Entitled to Post-Judgment Interest at a 9% Interest Rate.

Google does not dispute that Rowe is entitled to post-judgment interest, which is mandatory for "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). However, New York State's 9% interest rate does not apply. Although this Court has exercised supplemental jurisdiction over Rowe's state and city law claims, Rowe's judgment is still a federal one. *See Khurana v. JMP USA, Inc.*, No. 14-cv-4448(SIL), 2017 WL 1251102, at *17 (E.D.N.Y. Apr. 5, 2017) ("although the Court has exercised supplemental jurisdiction over [plaintiff's] state-law claims [under the NYLL], any judgment awarded would, nevertheless, constitute a federal judgment"). Thus, this Court may only "award[] post-judgment interest at the

statutorily prescribed federal rate."[5] *Id*.; *see also Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) ("By its plain terms," § 1961's "language applies to '*any* money judgment in a civil case recovered in a district court'") (emphasis in original) (citation omitted).

## VI.   CONCLUSION

For the foregoing reasons, this Court should deny Rowe's motion for post-judgment relief.

Dated: New York, New York
           December 13, 2023

PAUL HASTINGS LLP

Kenneth W. Gage
Sara B. Tomezsko
Kaveh Dabashi
200 Park Avenue
New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com
saratomezsko@paulhastings.com
kavehdabashi@paulhastings.com

*Counsel for Defendant Google LLC*

---

[5] Currently, the applicable federal interest rate is 5.33%. The Federal Reserve publishes the applicable rate weekly at https://www.federalreserve.gov/releases/h15/.