UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,                                          Case No. 1:19-cv-08655-JHR

                    Plaintiff,                ORAL ARGUMENT REQUESTED

      v.

GOOGLE LLC,

                  Defendant.


**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD............................................................................................ 2

III.    ARGUMENT ......................................................................................................... 4

       A.      Rowe's Attorneys' Fees Must Be Reduced to Reflect Her Limited
             Success. .......................................................................................................... 4

             1.      The Jury Found for Google on Rowe's Principal Claims.......................... 4

             2.      Rowe's Attorneys' Fees Award Must Be Reduced Given Her
                 Limited Recovery.................................................................................. 6

             3.      Rowe Cannot Recover Attorneys' Fees for Work Performed on
                 Her Pay Claims. ................................................................................... 8

       B.      Rowe Cannot Recover Attorneys' Fees for Matters Unreasonably,
             Unsuccessfully, or Untimely Pursued.................................................... 10

             1.      Rowe Unreasonably Pursued Hundreds of Comparators in
                 Discovery, and Presented Only Six at Trial........................................... 11

              2.      Rowe Unsuccessfully Pursued an Apex Deposition of Google
                 Cloud's Chief Executive Officer. ........................................................... 13

              3.      Rowe Should Not Recover for Work Spent on Disputes of Her
                 Own Creation Leading up to and During Trial. ...................................... 14

       C.      Rowe Cannot Recover for Inefficient Use of Attorney Time............................ 16

       D.      Rowe's Time Entries Include Work that Is Not Compensable in This Case....... 19

       E.      Rowe Cannot Recover Attorneys' Fees on Her Post-Trial Motions................... 22

       F.      Rowe's Costs Are Excessive. ........................................................................... 23

IV.     CONCLUSION.................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*Ansoumana v. Gristedes Operating Corp.*,
   No. 00-cv-253, 2004 WL 504319 (S.D.N.Y. Jan. 7, 2004), *aff'd* 139 F. App'x
   318 (2d Cir. 2005)........................................................................................................17

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008).........................................................................................3

*Bd. of Trustees of Laborers Pension Fund of Loc. Union No. 186 v. Casale
   Constr. Servs., Inc.*,
   No. 18-cv-00583, 2018 WL 6047825 (N.D.N.Y. Nov. 19, 2018)..........................23

*Cajero Torres v. Sushi Sushi Holdings Inc.*,
   No. 19-cv-2532, 2022 WL 2788655 (S.D.N.Y. July 15, 2022)........................2, 3, 7

*Casmento v. Volmar Constr., Inc.*,
   No. 20-cv-944, 2022 WL 17666390 (S.D.N.Y. Dec. 14, 2022) .......................3, 4, 9

*Charles v. Seinfeld*,
   No. 18-cv-1196, 2022 WL 889162 (S.D.N.Y Mar. 25, 2022)..........................23, 24

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,
   No. 07-cv-6304, 2021 WL 1222159 (S.D.N.Y. Mar. 31, 2021)...............................7

*Cooper v. Upstairs, Downstairs of N.Y., Inc.*,
   No. 18-cv-6426, 2021 WL 1172477 (S.D.N.Y. Mar. 29, 2021).......................3, 5, 6

*Echevarria v. Insight Med., P.C.*,
   102 F. Supp. 3d 511 (S.D.N.Y. 2015)........................................................................10

*United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr.
   Corp.*,
   95 F.3d 153 (2d Cir. 1996).........................................................................................23

*Farrar v. Hobby*,
   506 U.S. 103 (1992)......................................................................................................3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)....................................................................................................10

*Hernandez v. Boucherie LLC*,
   No. 18-cv-7887, 2019 WL 3765750 (S.D.N.Y. Aug. 8, 2019)...............................20

*Kassim v. City of Schenectady*,
   415 F.3d 246 (2d Cir. 2005).........................................................................................9

*Makinen v. City of New York*,
No. 11-cv-07535, 2016 WL 1451543 (S.D.N.Y. Apr. 12, 2016) ...........................................24

*Murray v. UBS Secs., LLC*,
No. 14-cv-927, 2020 WL 7384722 (S.D.N.Y. Dec. 16, 2020) ...............................................3, 6

*Nnebe v. Daus*,
Nos. 06-cv-4991 and 17-cv-7119, 2022 WL 612967 (S.D.N.Y. Mar. 1, 2022) .....................22

*Pappas v. Watson Wyatt & Co.*,
No. 3:04CV304, 2008 WL 45385 (D. Conn. Jan. 2, 2008) ....................................................24

*Pelayo v. Platinum Limousine Servs.*,
No. 15-cv-23, 2016 WL 5402185 (D. Haw. Sept. 27, 2016), *aff'd*, 804 F.
App'x 522 (9th Cir. 2020) ......................................................................................................20

*Pugh v. Meric*,
No. 18-cv-3556, 2019 WL 3936748 (S.D.N.Y. Aug. 20, 2019)................................................6

*Quaratino v. Tiffany & Co.*,
166 F.3d 422 (2d Cir. 1999).......................................................................................................3

*Ravina v. Columbia Univ.*,
No. 16-cv-2137, 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020)...................................4, 8, 9, 23

*Reiter v. Met. Transp. Auth. of State of N.Y.*,
No. 01-cv-2762, 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007) ............................................17

*Robinson v. City of New York*,
No. 05-cv-9545, 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009) ............................................22

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008)............................................................................. *passim*

*Sayigh v. Pier 59 Studios, L.P.*,
No. 11-cv-1453, 2015 WL 997692 (S.D.N.Y. Mar. 5, 2015)..................................................22

*Williams v. Metro-North R.R. Co.*,
No. 17-cv-3847, 2018 WL 3370678 (S.D.N.Y. June 28, 2018), *report &
recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 10, 2018) ..................16, 19, 20

*Wilson v. Nomura Secs. Int'l, Inc.*,
361 F.3d 86 (2d Cir. 2004)......................................................................................................10

**Statutes**

N.Y. Lab. Law § 198 ...................................................................................................................2

**Other Authorities**

Caitlin Harrington, *This Exec Is Forcing Google Into Its First Trial Over Sexist*
  *Pay Discrimination*, WIRED (Oct. 2, 2023),
  https://www.wired.com/story/exec-google-trial-sexist-pay-discrimination/. .......................1, 4

N.Y.C. Admin. Code § 8-502(g).....................................................................................................2

## I.     INTRODUCTION

Plaintiff Ulku Rowe spent nearly 9,000 hours litigating this single-plaintiff case. On its face, the number of hours billed is unreasonable and excessive by any measure. Indeed, Outten & Golden LLP ("O+G") spent 43% more hours litigating this case than Google's defense counsel. Further, many of the challenged entries are for billing practices for which courts in this jurisdiction reduced O+G's fees in prior cases. Rowe's application for fees must be reduced here for inefficient use of attorney time for routine litigation tasks; substantial fees for matters unreasonably, unsuccessfully, or untimely pursued; and tasks that are simply not compensable.

After reducing Rowe's fee award for those reasons, the Court must further reduce it for her limited success. Before trial, Rowe and her attorneys styled this case as one primarily about pay equity, claiming that "Rowe's case highlights a pernicious form of pay discrimination common in tech."[1] Despite Rowe's characterizations, this was a straightforward, single-plaintiff pay discrimination and retaliation case. It presented no novel issues of law. Her marquee claims were for compensation and higher-paying positions unlawfully denied (the "Pay Claims"), for which she hoped to recover over $14 million in back pay and liquidated damages, plus an unspecified amount of punitive damages. At trial, she failed to obtain almost any of this relief.

Instead, the jury awarded Rowe *no* back pay, $150,000 in emotional distress damages (*half* of what she requested), and $1 million in punitive damages currently subject to a motion for remittitur. Rowe's application for $4.5 million in fees, for nearly 9,000 hours worked, would be grossly unreasonable even if she had prevailed on all of her claims.[2] It is beyond the pale, however,

---

[1] Quote from Rowe's counsel, Cara E. Greene. Caitlin Harrington, *This Exec Is Forcing Google Into Its First Trial Over Sexist Pay Discrimination*, WIRED (Oct. 2, 2023), https://www.wired.com/story/exec-google-trial-sexist-pay-discrimination/.

[2] By comparison, throughout the entire matter, Rowe's legal team worked approximately 43% more hours than Google's defense team, which worked approximately 6,200 hours on the case.

1

given what little she proved at trial, that (a) she was excluded from some unspecified emails and meetings; (b) she involuntarily returned to the Office of the Chief Technology Officer ("OCTO"), a department she admits she did not want to leave, headed by a supervisor who Rowe testified supported her; or (c) she was not treated as well as she would have preferred when she expressed interest in the Financial Services Vertical Lead ("FSVL") and Vice President-Financial Services Sales ("VP-FSS") Roles, the denial of which resulted in no economic harm. Rowe may technically be a prevailing party, but she by no means achieved the lofty result she sought.

For these reasons, this Court should reduce Rowe's application for fees by 80% in total, and reduce her excessive costs commensurately.

## II.    LEGAL STANDARD

The New York City Human Rights Law ("NYCHRL") and New York Labor Law ("NYLL") authorize recovery by a prevailing party of reasonable attorneys' fees and costs. *See* N.Y.C. Admin. Code § 8-502(g); N.Y. Lab. Law § 198. District courts "enjoy broad discretion when setting a fee award, but they must clearly and concisely state reasons supporting the award." *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19-cv-2532, 2022 WL 2788655, at *6 (S.D.N.Y. July 15, 2022). The "presumptively reasonable" approach to calculating a fee award is (1) determining the reasonable hourly rate for each attorney;[3] (2) determining the number of hours *reasonably* expended; (3) multiplying the two to calculate a presumptively reasonable fee; and (4) making any appropriate adjustments to arrive at the final award. *Id.*

---

(Declaration of S. Tomezsko ("Tomezsko Decl.") ¶ 5.) Rowe's legal team worked approximately 70% more hours during the Pre-Trial and Trial phases of the case (4,400 hours) than Google's defense team. (*See* Greene Decl. ¶¶ 42, 45; Tomezsko Decl., ¶ 7.)

[3] Solely for purposes of this motion, Google does not dispute that O+G's current hourly rates are reasonable.

Adjustments include those "based on equitable factors such as the degree of success obtained by the prevailing party." *Id*. Both "[t]he Supreme Court and the Second Circuit have made clear that a court retains discretion to reduce a fees award to account for limited success." *Murray v. UBS Secs., LLC*, No. 14-cv-927, 2020 WL 7384722, at *26 (S.D.N.Y. Dec. 16, 2020). In fact, "the degree of success obtained" is "the most critical factor" in determining a fee award. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). In measuring a party's degree of success, "[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors . . . . " *Id*. (citation omitted). "[T]his comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." *Id*. (citing *Farrar v. Hobby*, 506 U.S. 103, 114–15 (1992)). In addition, if the Court determines that any amounts claimed are unreasonable, unnecessary, or unrecoverable, it should reduce the amount of fees awarded. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Ordinarily, "[t]he burden is on Plaintiff to maintain billing time records in a manner that will enable a review[ing] court to identify distinct claims." *Casmento v. Volmar Constr., Inc.*, No. 20-cv-944, 2022 WL 17666390, at *7 (S.D.N.Y. Dec. 14, 2022) (citation omitted). But where, as here, the billing records largely "do not specify how much of [the] work relates to plaintiff's failed claims," this Court "is not obligated to undertake a line-by-line review of [the] extensive fee application." *Cooper v. Upstairs, Downstairs of N.Y., Inc.*, No. 18-cv-6426, 2021 WL 1172477, at *6 (S.D.N.Y. Mar. 29, 2021) (citation omitted). Rather, "it may use a percentage deduction as a practical means of trimming fat." *Id*.; *see also Casmento*, 2022 WL 17666390, at *7 ("When the time spent on the successful claims is not readily ascertainable from counsel's billing records, an across-the-board percentage reduction is appropriate").

A party cannot recover attorneys' fees for unsuccessful claims that are "based on different facts and legal theories" than the surviving claims. *Ravina v. Columbia Univ.*, No. 16-cv-2137, 2020 WL 1080780, at *10 (S.D.N.Y. Mar. 6, 2020) (citation omitted). But even "[w]here the claims involve a common core of facts or are based on related legal theories, the court focuses on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Casmento*, 2022 WL 17666390, at *3.

## III.  ARGUMENT

### A.  Rowe's Attorneys' Fees Must Be Reduced to Reflect Her Limited Success.

#### 1.  *The Jury Found for Google on Rowe's Principal Claims.*

Rowe's Pay Claims were the nucleus of this dispute. In several articles published before and during the trial, Rowe and her counsel described this lawsuit as a reckoning of Google's "pay practices."[4] At trial, Rowe's attorneys told the jury that first and foremost, "[t]his case is about Ulku Rowe . . . who Google paid less than men who were performing the exact same job as her," "undervalued . . . when she applied for" the FSVL Role, and "retaliated against . . . by denying her promotion" to the VP-FSS Role. (Trial Tr. 39:11–25.) "[T]his is a case about unequal pay," they reiterated later. (*Id.* at 47:7.) "Of course," her counsel continued, "it is about the consequences to Ms. Rowe, the millions of dollars in lost compensation," too. (*Id.* at 57:25–58:2.) At Rowe's insistence, the NYLL pay equity claim appeared first on the special verdict form. (*Id.* at 1129:17–1131:9.)

Billing records illustrate, anecdotally, the substantial focus and effort expended in furtherance of her failed Pay Claims. In discovery, for example, O+G moved to compel and analyzed voluminous records for hundreds of alleged Level 8 and Level 9 comparators in 14

---

[4] Harrington, *This Exec is Forcing Google Into Its First Trial Over Sexist Pay Discrimination*, WIRED, *supra* n.1.

different job codes across the United States.[5] (*See* ECF No. 79 at 2 & n.2; ECF No. 84 at 2.) O+G prepared for and deposed two 30(b)(6) witnesses about the level, pay, and promotion practices relevant to these positions, and three of her alleged comparators for her Pay Claims (Benjamin Wilson, Evren Eryurek, and Stuart Breslow). Following discovery, O+G moved unsuccessfully for summary judgment on Rowe's NYLL pay equity claim as to comparator Nicholas Harteau, and on Google's statutory affirmative defenses. (ECF No. 152.) All of this work totaled hundreds of hours. (Tomezsko Decl., ¶ 6.) Post-summary judgment through trial, Rowe devoted approximately 35 additional hours to her equal pay claim as to alleged comparator Nicholas Harteau. This work included serving him with a subpoena for the trial, preparing an outline of his trial examination, and meeting with Mr. Harteau and his counsel in advance of trial. (*Id.*, ¶ 10, Exh. 3.)

None of the work described above relates to the limited claims on which Rowe prevailed. The jury properly found that Rowe failed to prove that Google (a) paid Rowe less than men performing substantially equal work under the NYLL; (b) paid Rowe less because of her gender under the NYCHRL; and (c) denied Rowe any positions that would have resulted in greater compensation because of her gender or protected conduct, under both the NYLL and the NYCHRL. (ECF No. 340; Trial Tr. 1452:6–18.) Ultimately, Rowe prevailed only on her *non*-Pay Claims, because she proved that she was "on at least one occasion" treated less well or retaliated

---

[5] Exhibit 1 to the Tomezsko Declaration identifies specific time entries to illustrate counsel's focus during discovery and motion practice on Rowe's Pay Claims. It is not meant to be an exhaustive, line-by-line audit of time entries specific to the Pay Claims, an impossible task given certain descriptions such as "Review case documents" (CEG, 1.5 hours on 08/11/2020), "Review documents for production, review and edit initial disclosures" (CEG, 2.8 hours on 01/06/2020), "Review documents for Rowe cross examination preparation," (GSC, 1.2 hours on 10/05/2023), "Review documents in preparation for exhibit list," (CEG, 3.0 hours on 12/02/2022), and "Doc review and depo prep." (MSJ, 3.7 hours on 10/19/2020). *See Cooper*, 2021 WL 1172477, at *6.

against over the course of her entire seven year employment with Google. (ECF No. 340.) The jury's award is therefore intended to make Rowe whole for the remaining conduct alleged in her Second Amended Complaint, that: (a) she was excluded from some emails and meetings (ECF No. 108 ¶ 34); (b) she involuntarily returned to OCTO in March 2019, a department she admits she did not want to leave, (*id*. ¶ 46); or (c) Shaukat and Vardaman did not treat her as well as she would have preferred during her candidacies for the FSVL and VP-FSS Roles. (*Id*. at ¶¶ 41–42, 54–61.)[6] Rowe suffered no economic harm as a result of this conduct, and recovered none of the substantial back pay to which she and her expert claimed she was entitled.

> 2.  *Rowe's Attorneys' Fees Award Must Be Reduced Given Her Limited Recovery.*

In assessing Rowe's degree of success, this Court is "obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Cooper*, 2021 WL 1172477, at \*6 (reducing attorneys' fee award where plaintiff "recovered only a fraction of the damages he sought"); *see also Pugh v. Meric*, No. 18-cv-3556, 2019 WL 3936748, at \*3–4 (S.D.N.Y. Aug. 20, 2019) (reducing by 90% the attorneys' fees award where plaintiff recovered only "a quarter of the damages he sought").[7] Here, the "enormous disparities between . . . what was sought by" Rowe, "what was obtained by" Rowe, and "what is now being sought by [her] counsel" weighs heavily in favor of a reduced fee award. *Murray*, 2020 WL 7384722, at \*27

---

[6] As set forth in Google's renewed motion for judgment as a matter of law (ECF No. 368), the jury's findings in Rowe's favor on these secondary claims are unsupported by the evidence.

[7] Google does not dispute that "a statutory fee award need not be proportional to the amount of damages recovered." *Murray*, 2020 WL 7384722, at \*26. In other words, there is no "correct" mathematical ratio between a damages award and an attorneys' fee award. This is conceptually separate, though, from this Court's obligation to "give primary consideration to the amount of damages awarded as compared to the amount sought" in determining a party's degree of success. *Cooper*, 2021 WL 1172477, at \*6.

(reducing by 30% attorneys' fee award where plaintiff sought $14 million in damages but recovered only $653,600).

Rowe's own economic damages expert, Dr. Nora Ostrofe, testified that Rowe was entitled to (a) $1,968,853 on her NYLL equal pay claim, (Trial Tr. 1074:6–9); (b) $678,507 for Google's alleged failure to promote her to the FSVL Role, (*id.* at 1075:18–20); and (c) $5,735,276 for Google's alleged failure to promote her to the VP-FSS Role. (*Id*. at 1076:11–14.) Rowe sought treble damages under the NYLL, bringing her total claimed economic damages to $14,289,195. In addition, Rowe sought $300,000 in emotional distress damages, and uncapped punitive damages under the NYCHRL sufficient to make a public "example" of a multi-billion dollar technology company. (*Id*. at 1377:19–1378:3.) The jury, though, awarded her *no* economic damages, *half* her claimed emotional distress damages, and $1 million in punitive damages currently subject to remittitur. (ECF No. 340; *see also* Google's Motion for Remittitur of Punitive Damages (ECF No. 370.))

The Court could quantify the level of Rowe's success (or lack thereof) in multiple ways. For example, Rowe recovered roughly 8% of her claimed damages; or she spent approximately $4 for every $1 the jury awarded her *before* Google's post-trial motion for remittitur of the punitive damages award; or her failure to recover back pay and liquidated damages reflects her loss on the Pay Claims at the heart of her case. Either way, Rowe "fell far, far short of establishing [her] goals" in this lawsuit, namely, proving that Google discriminated against her in pay and denial of higher-paying positions. *Cajero Torres*, 2022 WL 2788655, at *15. For this reason alone, her attorneys' fees award "must be subject to a weighty reduction . . . ." *Id*. (reducing by 96% attorneys' fees award where plaintiffs' success was "uncommonly limited," measured "by their own sweeping claims and audacious demands"); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v.*

*Village of Pomona*, No. 07-cv-6304, 2021 WL 1222159, at *16 (S.D.N.Y. Mar. 31, 2021) (reducing by 50% attorneys' fees award where plaintiffs failed to achieve the primary relief they sought).

>   3.   *Rowe Cannot Recover Attorneys' Fees for Work Performed on Her Pay Claims.*

Rowe cannot recover attorneys' fees for her failed Pay Claims, because a party cannot recover attorneys' fees for unsuccessful claims that are "based on different facts and legal theories" than the surviving claims. *Ravina*, 2020 WL 1080780, at *10. Rowe has consistently emphasized the factual and legal differences among her claims throughout this litigation.[8] Because she now wishes to recover attorneys' fees, Rowe argues for the first time that *all* of her claims share common facts and legal theories. (ECF No. 362 at 14.) She is wrong.

Rowe's Pay Claims posed three questions for the jury: whether Google (a) paid Rowe less than men performing equal work; (b) paid Rowe less or denied her higher-paying positions because of her gender; and (c) denied Rowe higher-paying positions because of her protected complaints. Evidence relative to those claims includes Google's leveling and compensation policies and processes; Rowe's qualifications relative to other Level 8 and the handful of Level 9 Technical Directors in OCTO; the hiring process for the Technical Director role in OCTO; the work performed by Rowe and her alleged male comparators; and the reasons for preferring other

---

[8] *See*, *e.g.*, ECF No. 28 at 1 (in letter-motion to compel discovery, stating, "[i]n connection with her New York Equal Pay Law claims, Plaintiff is entitled to discovery on men who performed equal work requiring equal skill, effort and responsibility, and performed under similar working conditions . . . while under the New York City Human Rights Law, Plaintiff is entitled to discovery related to a broader group: men who were treated more favorably than Plaintiff in the terms and conditions of employment"); ECF No. 125 at 4:17–20 (arguing in court conference that "with respect to the equal pay claims, we think that those are claims that could be resolved entirely [on summary judgment], since there is no issue of intent that's required, or no demonstration of intent or bias that's required"); Trial Tr. 1129:17–22 (arguing that Rowe's NYCHRL claim should not be first on the special verdict form *specifically because* it would confuse the jury on Rowe's NYLL pay equity claim, which has a different legal standard).

candidates for the two higher-paying positions (all of whom were women). Rowe presented a substantial amount of evidence at trial in support of these claims, including testimony from three witnesses involved in her initial hiring and leveling (Will Grannis, Jennifer Burdis, and Brian Stevens); four alleged comparators (Benjamin Wilson, Evren Eryurek, Nicholas Harteau, and Stuart Breslow); and an economic damages expert.

The legal theories and evidence supporting Rowe's unsuccessful Pay Claims have nothing to do with Rowe's non-Pay Claims, which asked the jury to decide whether: (a) Shaukat excluded Rowe from meetings, email distribution lists, and team off-sites; (b) Shaukat pushed Rowe back into OCTO in March 2019; or (c) Rowe was unfairly treated by Shaukat and Vardaman during her candidacies for the FSVL and/or VP-FSS Roles, the denial of which resulted in no economic harm to Rowe. None of the testimony and evidence presented at trial regarding the work Rowe performed, that performed by her alleged male comparators, or her initial hiring and leveling are germane to these claims.

Even if this Court were to accept that Rowe's Pay Claims and non-Pay Claims shared some common facts and legal theories (which they do not), a "significant reduction" of the attorneys' fee award is still required. *Ravina*, 2020 WL 1080780, at *4 (implementing "significant reduction" of attorneys' fees where plaintiff's relief "was just a fraction of what she initially sought"). This is because "[w]here the claims involve a common core of facts or are based on related legal theories, the court focuses on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Casmento*, 2022 WL 17666390, at *3. Here, O+G spent almost *9,000 hours across four years* to recover relatively insignificant relief.

Rowe's authorities to the contrary are inapposite. In *Kassim v. City of Schenectady*, the Second Circuit merely rejected the appellant's plainly incorrect argument that "the district court

lacked authority to reduce his attorney's fee[s] by reason of his limited success." 415 F.3d 246, 256 (2d Cir. 2005). Similarly, in *Hensley v. Eckerhart*, the Supreme Court vacated an attorneys' fee award reimbursing the plaintiff for his unsuccessful claims, taking the "opportunity to clarify the proper relationship of the results obtained to an award of attorney's fees." 461 U.S. 424, 432 (1983). In *Wilson v. Nomura Secs. Int'l, Inc.*, the sole issue presented was whether the plaintiff could "recover attorneys' fees twice—once through the Offer [of Judgment], which included fees for the Title VII claim, and a second time by awarding fees on the NYCHRL claim." 361 F.3d 86, 89 (2d Cir. 2004). Moreover, unlike here, the parties in *Wilson* agreed that the plaintiff's NYCHRL claim "was coextensive with and indivisible from the Title VII" claim. *Id*. In *Echevarria v. Insight Med., P.C.*, the court held that a plaintiff's NYCHRL harassment and retaliation claims were sufficiently intertwined for an unreduced award, where her manager "subject[ed] her to sexual harassment at her workplace and terminat[ed] her employment when she complained about the harassment." 102 F. Supp. 3d 511, 514 (S.D.N.Y. 2015). *Echevarria* has no bearing on a failed NYLL pay equity claim, and its relationship, if any, to a successful NYCHRL or NYLL retaliation claim.

Accordingly, Rowe's attorneys' fees petition should be substantially reduced to account for her limited success at trial, as well as the jury's verdict for Google on the NYLL claim and request for back wages.

**B.    Rowe Cannot Recover Attorneys' Fees for Matters Unreasonably, Unsuccessfully, or Untimely Pursued.**

Rowe cannot recover attorneys' fees for "time spent pursuing claims or taking positions that were unreasonable, unsuccessful, or untimely." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008). O+G's record in this regard is far from pristine. In *Rozell*, for example, the court held that "several of the tasks" performed by O+G "were unjustified," including tasks arising from

O+G's "uncooperativeness [which] caused the parties to expend unnecessary effort . . . ." *Id.* at 538–39. Here, too, a significant amount of work was performed on broad discovery to pursue pay equity theories that were ultimately abandoned, unsuccessful motions, and unnecessary letter-writing campaigns leading up to and during the trial.

       *1.*     *Rowe Unreasonably Pursued Hundreds of Comparators in Discovery, and Presented Only Six at Trial.*

Rowe unreasonably pursued discovery into potential comparators for her Pay Claims far broader than the universe she presented at trial. Rowe's original complaint identified only the Level 9 Technical Directors in OCTO and Stuart Breslow as potential comparators, the same six comparators to whom she unsuccessfully compared herself at trial. (ECF No. 1 at ¶¶ 27, 42.) During discovery, however, Rowe sought production of compensation and performance information, hiring packets, and job descriptions for hundreds of potential comparators in unrelated roles.

Rowe's initial requests for documents sought, *inter alia*, all documents constituting the qualifications, responsibilities, duties, compensation, performance appraisals, and equity awards for all "Level 8, 9, and 10 employees within Google Cloud in the United States," "[d]ocuments sufficient to show the name, gender, age, compensation, position, title, level, reporting line, location, and qualifications for Level 8, 9, and 10 employees within Google Cloud in the United States," and "[d]ocuments describing the duties or responsibilities for Directors within Google Cloud in New York." (Tomezsko Decl., ¶ 11, Exh. 4, Requests Nos. 5, 6, 14.) Rowe's requests covered hundreds of potential comparators on the theory that all of them were similarly situated to or performed substantially equal or similar work to Rowe. (ECF No. 28 at 1–2; ECF No. 30 at 2.)

Rowe moved the Court three times for an order directing Google to produce discovery related to these alleged comparators. (ECF Nos. 28, 52, 79.) In May 2020, in response to Rowe's

first letter motion to compel, the Court directed the parties to conduct 30(b)(6) depositions to narrow the universe of potential comparators from the 54 Level 8 and Level 9 job codes responsive to her initial requests. (ECF No. 41 at 11:17–24.) In August 2020, Google produced job description information for all job openings for 14 agreed-upon job codes of the original 54. (ECF No. 55 at 4.) Less than 48 hours before the first 30(b)(6) witness was scheduled to testify about these job codes, Rowe unilaterally declared Google's production incomplete, postponed the depositions, and sought Court intervention. (ECF No. 52.) The Court rightly ordered the parties to satisfy their meet and confer obligations, and directed Rowe to consider issues of burden and proportionality "in deciding whether and how to reach agreement on a particular issue." (ECF No. 56.)

In December 2020, Rowe again moved to compel production of "compensation data, resumes, offer letters, gHire feedback, offer packets, gComp data, and performance reviews (in color)" to support her NYLL claims and to establish "whether she was 'paid less than non-members of her class for work requiring substantially the same responsibility.'" (ECF No. 79 at 2–3.) Among the approximately 300 alleged comparators were Product Managers, Application Engineers, Software Engineers, Global Client Leads, and Global Client Technical Leads. (ECF No. 84; ECF No. 109 at 11–17.) As Google explained in opposition, the newly-created Technical Director role Rowe held was unique in Google Cloud, and the law does not require employers to pay all employees within a single broad discipline like Engineering consistently. (ECF No. 84.) Rowe's pursuit of this discovery ignored obvious, material differences in the work she performed to these alleged comparators, whose roles required profit-and-loss management, oversight of a discrete product or product portfolio, actual coding or supervision of those writing code for Google's products, and production or maintenance of products exclusively internal to Google, among many others. (*Id.* at 5–6.)

In February 2021, the Court denied Rowe's request for production of documents for close to 300 employees in these 14 job codes, limiting her to 50 comparators of her choosing. (ECF No. 109.) Further, the Court expressed skepticism that Rowe could ultimately prove her work was comparable to that performed by the individuals whose information she sought. (*Id.*) The prediction proved true: as the parties were preparing the initial Joint Pretrial Order in November 2022, Rowe abandoned her equal pay claims as to all alleged comparators outside OCTO. (Tomezsko Decl., ¶ 16, Exh. 5.) At trial, she failed to prove that her work was comparable even to those within OCTO. Google estimates that Rowe spent over 340 hours in pursuit of this futile discovery. (Tomezsko Decl., ¶ 17, Exh. 6.)

2. *Rowe Unsuccessfully Pursued an Apex Deposition of Google Cloud's Chief Executive Officer.*

Rowe unsuccessfully pursued a deposition of Google Cloud's former Chief Executive Officer, despite learning she lacked unique knowledge of the conduct at issue. Greene left Google in late 2018 and, as Google explained, had little involvement in the challenged decisions other than leading the product area in which Rowe worked. (ECF No. 62.) Google objected during discovery to the deposition of this apex witness and former employee, and provided two declarations (one from Greene and one from Tariq Shaukat) stating the limits of Greene's relevant knowledge. (*Id.*) Google indicated it would move for a protective order if Rowe pursued the deposition of a witness who possessed no unique knowledge of the material facts. (*Id.*)

O+G nevertheless spent approximately 57.4 hours across four attorneys and one paralegal preparing for a deposition that would never occur; reviewing, adjusting, and serving a third-party subpoena (for a total of 7.1 hours, which is excessive and inefficient on its face); opposing Google's successful motion for a protective order; and attending oral argument on the motion. (Tomezsko Decl., ¶ 21, Exh. 7.) The Court ultimately precluded Greene's deposition for many of

13

the reasons stated in meet and confer conferences and in Google's motion, including the fact that Rowe had the opportunity to depose other fact witnesses about the topics she sought to explore with Ms. Greene, and the obvious limitations in Ms. Greene's knowledge reflected in her declaration. (ECF No. 98 at 20:25–21:15, 39:4–20, 42:20–43:11.) Her pursuit of this deposition was not reasonable under the circumstances, and, at the very least, she should not have undertaken extensive work to prepare for a deposition before knowing whether the Court would sustain Google's oft-repeated objection.

3.   *Rowe Should Not Recover for Work Spent on Disputes of Her Own Creation Leading up to and During Trial.*

As the parties approached trial, and during trial itself, Rowe's litigation tactics resulted in unnecessary letter writing campaigns and discovery efforts that Rowe should have pursued much earlier in the case if they had any merit.

**First**, Rowe fought mightily to exclude the deposition testimony of her current manager, Patricia Florissi. On September 22, 2023, Rowe objected to Defendant's designation *three months prior* of Florissi as a trial witness. (ECF No. 314.) On September 25, 2023, the Court denied the exclusion request, in part because "[a]s Plaintiff has been on notice for months of Ms. Florissi's potential inclusion at trial, Plaintiff cannot claim unfair, much less 'severe[],' prejudice from MS. Florissi's introduction as a witness." (ECF No. 315 at 8.)

On October 8, 2023, two days before trial, Rowe renewed her request to exclude Florissi's testimony, reiterating arguments this Court had previously rejected. (ECF No. 327.) In denying Rowe's request a second time, the Court noted the obvious relevance of Rowe's supervisor's testimony to her equal pay and gender discrimination claims, citing Rowe's own Second Amended Complaint and concessions in support. (ECF No. 335 at 1–2; *see also id.* at 2 ("In this light, the probative value of Ms. Florissi's testimony is strong.").)

14

***Second***, Rowe belatedly sought to introduce evidence concerning the leveling decision for another Technical Director in OCTO, Jen Bennett, which resulted in letter motion practice during the trial. (ECF Nos. 333 and 334.) As Google explained in its letter seeking exclusion of this irrelevant evidence, Rowe waited until the eve of trial to identify Bennett's hiring packet as an exhibit, despite having received it in discovery nearly two years prior. (ECF No. 334 at 2.) The Court agreed that Rowe's delay in identifying Bennett's leveling as a potential trial strategy was a basis to exclude the evidence: "To spring an evidently key part of plaintiff's case on defendant in the thick of trial would be unduly prejudicial. For this reason, courts will not countenance the eleventh-hour assertion of new key arguments and facts at trial." (Trial Tr. 647:12–16.)

***Third***, on October 17, 2023—well into the trial and *after* recruiter Stuart Vardaman had testified—Plaintiff demanded production of documents concerning his status reports for the VP-FSS role. (ECF No. 338, Exh. 4.) Google opposed the request in writing, detailing its belated nature and reminding the Court that Rowe was denied additional discovery into her retaliation claim asserted for the first time in her Second Amended Complaint. (ECF No. 338 at 5–6.) The Court rightly noted that Rowe knew these status reports existed for a full year, and "the temporal relationship between [the status reports], all of which were created between late January and February 21, 2020, and Ms. Rowe's and Mr. Vardaman's conversation in late February 2020, is not new information." (Trial Tr. 1146:19–1147:15.) "[T]he Court fails to see why plaintiff waited until trial to raise this issue, let alone why she delayed four days after Mr. Vardaman had testified," Your Honor noted when denying the application. (*Id.* at 1147:16-19.) Rowe should not recover for the work on her patently frivolous motion for document discovery during the trial.

All three letter-writing campaigns resulted in approximately 40 hours of work. (Tomezsko Decl., ¶ 23, Exh. 8.) Google notes that a portion of these time entries are estimates, given the

general nature of the descriptions for time worked during the trial. (*Id.*) Because these entries reflect "time spent pursuing claims or taking positions that were unreasonable, unsuccessful, or untimely," O+G should not be compensated for them. *See Rozell*, 576 F. Supp. 2d at 538-39 (denying O+G fees for "unjustified" work, including tasks arising from counsel's "uncooperativeness [which] caused the parties to expend unnecessary effort litigating minor issues").

### C.    Rowe Cannot Recover for Inefficient Use of Attorney Time

Nor can Rowe recover attorneys' fees where O+G's billing records reflect inefficient use of time. O+G's record in other cases is, again, concerning. In *Rozell*, for example, the court reduced O+G's hours on, *inter alia*, "conferences" and "preparing proposed jury instructions and a verdict form . . . despite the fact that [O+G] were experienced in employment discrimination cases and presumably would have had a substantial bank of sample jury charges to draw on." 576 F. Supp. 2d at 541. Similarly, in *Williams v. Metro-North R.R. Co.*, the court reduced O+G's "excessive" hours on, *inter alia*, addressing plaintiff's "request for a medical leave"; "internal O+G decision-making regarding whether to bring this case"; and drafting the Complaint. No. 17-cv-3847, 2018 WL 3370678, at *8–12 (S.D.N.Y. June 28, 2018), *report & recommendation adopted*, 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

Here, too, there are many instances of inefficient billing practices, resulting in an excessive number of hours spent on routine aspects of litigation, for example:

- Three attorneys (at times, two partners and one associate) attended mediations, court hearings, and depositions where only one or two would have sufficed, for a total of approximately 231 attorney hours. (Tomezsko Decl., ¶ 24, Exh. 9.) *See Williams*, 2018 WL 3370678, at *8–12 (noting that "no reasonable client would pay for more than one

partner and more than one associate to prepare for and attend a mediation");
*Ansoumana v. Gristedes Operating Corp.*, No. 00-cv-253, 2004 WL 504319, *3–4
(S.D.N.Y. Jan. 7, 2004), *aff'd* 139 F. App'x 318 (2d Cir. 2005) (reducing O+G's fees
due to overstaffing).

- O+G billed a staggering total of over 700 hours to preparing agendas for internal
  meetings, reviewing those agendas, and participating in inter-office conferences.
  (Tomezsko Decl., ¶ 25.) These figures do not account for the inter-office
  correspondence *on top* of these entries. (*Id.*) An inordinate amount of time was devoted
  to attorneys consulting with each other, and the fee application should be reduced
  accordingly. *See Rozell*, 576 F. Supp. 2d at 541 (reducing O+G's requested fees by
  15% in part because "more than 363 hours . . . were spent on [internal]
  conferences . . . .").

- O+G "billed approximately 1,500 hours and incurred approximately $715,000 in fees"
  during the summary judgment phase of this matter. (Greene Decl. ¶ 33.) That amount
  of time is plainly excessive under any standard. *See Reiter v. Met. Transp. Auth. of
  State of N.Y.*, No. 01-cv-2762, 2007 WL 2775144, at *11 n.7 (S.D.N.Y. Sept. 25, 2007)
  (reducing hours for summary judgment motion practice by more than half;
  "expenditure of more than 700 hours dedicated to summary judgment motion practice
  is extraordinary . . . Notably, courts in this jurisdiction have rejected fee requests
  relating to a single motion as 'excessive' based on much less time than what [plaintiff]
  has claimed") (collecting cases).[9]

---

[9] The time spent by Rowe's legal team on the cross-motions for summary judgment was nearly
240% the time spent by Google's defense team on those same motions. (Tomezsko Decl., ¶ 6.)

- O+G billed nearly 550 hours (equating to over $178,000 in fees) to preparing binders, both hard copy and electronic. (Tomezsko Decl., ¶ 26, Exh. 11.)  These figures do not include entries reflecting correspondence about binder preparation, but are limited to entries where the timekeepers were performing clerical work including assembling documents for binders, updating binders, reviewing binders for discrepancies, preparing tabs or spines for binders, alphabetizing binders, shipping or moving binders, "QCing" binders, or printing documents to include in binders. (*Id.*)

- O+G staffed an "eDiscovery" partner, Daniel Stromberg, who billed $875/hour for more than 36 hours on tasks that could have been delegated to a more junior attorney or a discovery vendor, including but not limited to: "produce client document per SXG, pdf and email to SXTG for deposition"; "Advise SXG re: reporting of document metadata from Nuix"; "assess unproduced relevant client documents, thread emails, assess threads of produced documents, assemble potential production population, and advise MSJ"; and "Advise BDK re: Nuix bindering and printing deposition documents." (Tomezsko Decl., ¶ 27, Exh.12.) At times, the work Mr. Stromberg performed was in fact duplicative of that performed by associates. (*Id.*)

- O+G billed 291 hours towards reviewing deposition transcripts and creating "digests." This work was largely performed by a tenured attorney (class of 2008) who did not participate in any other aspect of the case, and whose rate for this work exceeded that of one of the principal associates staffed to the matter. (Greene Decl., Exh. 4, ¶ 3; Tomezsko Decl., ¶ 28, Exh. 13.)

- O+G spent approximately 242 hours preparing mediation statements, performing damages calculations in connection with those mediations or settlement conferences,

18

and attending the mediations or settlement conferences. (Tomezsko Decl., ¶ 29, Exh. 14.) Again, this is excessive given the facts of this case, the number of mediations, and the experience of counsel. *See Williams*, 2018 WL 3370678, at \*8–12 (reducing O+G's time spent preparing for mediation from 150 hours to 65 hours; "[t]his Court limits the length of pre-mediation statements precisely to avoid the amount of time expended on writing tasks … [and] in no way was the time spent necessary or even conceived as possible by this Court given the facts and law at issue"). This number of hours also seems imprudent if, as Rowe suggests, Google was so unwilling to participate in settlement negotiations. (*See* Greene Decl., ¶¶ 17, 22, 28.)

The examples provided above are representative only. The Court need not comb the 100+ single-spaced pages of time entries to determine that O+G inefficiently prosecuted this case and incurred fees that no reasonable client would pay. The application should be reduced by an appropriate percentage to account for these inefficiencies. *Rozell*, 576 F. Supp. 2d at 543 (reducing O+G's requested fees by 15% for inefficiencies in billing).

### D. Rowe's Time Entries Include Work that Is Not Compensable in This Case.

Rowe should not be compensated for time not "expended working on this lawsuit." *See Williams*, 2018 WL 3370678, at \*9. The Court should deny O+G's request to be compensated for the following non-compensable tasks:

- O+G billed 18.5 hours to drafting memoranda and presenting to an internal litigation committee, "which provided strategic input on how to present the claims." (Greene Decl., ¶ 18; Tomezsko Decl., ¶ 31, Exh. 15.) At least one court has previously struck all time O+G billed "for internal O+G decision-making regarding whether to bring this case," as it is "not time that typically would be recoverable from a fee-paying client." *Williams*, 2018 WL 3370678, at \*10.

19

- Five hours of time were billed to "clear conflicts," telephone calls about "potential conflicts," and multiple correspondences regarding "conflict waiver," well into late 2020. (Tomezsko Decl., ¶ 32, Exh. 16.) This is purely clerical work that should not be recoverable on an application for attorneys' fees. *See Hernandez v. Boucherie LLC*, No. 18-cv-7887, 2019 WL 3765750, at *6 (S.D.N.Y. Aug. 8, 2019); *Pelayo v. Platinum Limousine Servs.*, No. 15-cv-23, 2016 WL 5402185, at *6 (D. Haw. Sept. 27, 2016) (time spent on conflict waivers not compensable, even if necessary to the professional relationship), *aff'd*, 804 F. App'x 522 (9th Cir. 2020).

- Though O+G claims to have removed charges for time spent litigating this case in the press "[i]n an exercise of billing judgment," (Greene Decl., ¶¶ 48, 50), 8.1 hours of non-compensable time spent drafting an "Op Ed," "correspondence with reporter," telephone conferences "re press and litigation strategy," and other similar entries still appear. (Tomezsko Decl., ¶ 33, Exh. 17.)

- O+G included two entries for "correspondence re … client medical leave" and "correspondence with client re STD leave." (Tomezsko Decl., ¶ 34, Exh. 18.) O+G is well aware that this time is not compensable. *Williams*, 2018 WL 3370678, at *9 (O+G not entitled to compensation "at all" for certain tasks, including time spent "addressing Plaintiff's medical condition, request for a medical leave, and applications for short term and long term disability - again not tasks expended on this litigation").

Finally, there are a number of entries that appear unrelated to this matter entirely, and should not be passed onto Google. To illustrate:

- On March 25, 2020, Maya Jumper billed time to "Correspondence with LIM regarding notice proposal and welcome letter." (Tomezsko Decl., ¶ 35(a), Exh. 19.) Not only is

"LIM" not identified in Rowe's application as an attorney staffed to this case, this entry

is plainly germane to a class action for which discussions of notice and welcome letters

would be more appropriate. (*Id.*)

- On April 17, 2020, Ms. Jumper billed for a "Conference call with MB/co-counsel / KD
  regarding filing and arbitration filing." (*Id.*, ¶ 35(b).) No "co-counsel" for Rowe has
  appeared in this case, nor was there any "arbitration filing." (*Id.*)

- On June 1, 2020, Ms. Jumper billed for time spent "Review[ing] motion to stay;
  conduct[ing] legal research." (*Id.*, ¶ 35(c).) There were no motions to stay filed in this
  action, nor can Google conceive of an instance in which a motion to stay would have
  been appropriate. (*Id.*)

- On June 11, 2020, Ms. Jumper billed for "Correspondence with client (0.2); Proofread,
  cite check, and edit of mediation statement (1.2)." (*Id.*,¶ 35(d).) The only mediations in
  this matter occurred on March 10, 2020, July 29, 2021, November 4, 2022, and March
  28, 2023. (Greene Decl., ¶¶ 22, 34, 36; Tomezsko Decl., ¶ 29.) Therefore, this work is
  unrelated to the prosecution of this case.

- On June 13, 2022, Cara Greene billed over $1,000 to "Review findings of security
  expert, telephone call with same (0.5); correspondence with client and security expert
  re recent activity (0.4); coordinate scheduling of meeting with expert and analyst and
  correspondence with WNO re same (0.4)." (Tomezsko Decl., ¶ 35(e), Exh. 19.) By her
  own admission, a "security expert" is not among those hired to render services in this
  lawsuit. (Greene Decl., ¶ 74).

The inclusion of these entries in the fee application renders other entries suspect, particularly those

described in general terms for which it is impossible to assess the nature of the work performed.

21

In such cases, an across the board reduction is warranted. *See Nnebe v. Daus*, Nos. 06-cv-4991 and 17-cv-7119, 2022 WL 612967, at *6, *8 (S.D.N.Y. Mar. 1, 2022) (reducing fee petition by 15% where time records suggested entries were unreliable and contained "duplicative or mistaken time entries").

### E.   Rowe Cannot Recover Attorneys' Fees on Her Post-Trial Motions.

Google is not in a position to evaluate Rowe's time entries for her post-trial motions, because she intends to submit those in connection with her reply. (Greene Decl., ¶ 53.) If time spent on summary judgment practice is any indication, the application of post-trial motion fees will also be excessive. So as not to waive any opposition to that forthcoming fee application, Google briefly addresses Rowe's anticipated filing here, but pursuant to Rule 5(B) of Your Honor's Individual Rules, requests the opportunity to file a sur-reply in further support of these arguments.

An award of attorneys' fees for the fee application itself "is not automatic or mandatory." *Sayigh v. Pier 59 Studios, L.P.*, No. 11-cv-1453, 2015 WL 997692, at *11 (S.D.N.Y. Mar. 5, 2015). A so-called "fees on fees" award "is to be evaluated no differently from the costs of litigating the underlying case." *Id*. Thus, "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Id*. To the extent this Court denies or limits Rowe's motion for attorneys' fees, then, it should correspondingly deny or limit her fee award in connection with the motion itself.

Google does not dispute that as a general matter, a party may recover fees for a successful post-trial motion. But O+G's time entries for its post-trial motion practice will be subject to the same scrutiny as its pre-trial and trial expenditures for, *inter alia*, excessive hours. *See Robinson v. City of New York*, No. 05-cv-9545, 2009 WL 3109846, at *14 (S.D.N.Y. Sept. 29, 2009) (reducing fees award for post-trial motion for permanent injunction, because the claimed amount

was "grossly excessive . . . [g]iven that motions for injunctive relief are frequently made by civil rights law firms, and that plaintiffs are commanding hourly rates that assume a certain level of expertise in discrimination law").

###### F.   Rowe's Costs Are Excessive.

"The same doctrine that requires a reduction in fees due to lack of success applies equally to costs." *Ravina*, 2020 WL 1080780, at *16. Thus, because of Rowe's minimal success at trial, this Court should impose a similar across-the-board reduction on her awarded costs. *See id.* (reducing by 35% plaintiff's reimbursement of costs "for the same reasons it reduced [her] fee award"). At a minimum, the Court should decline the application for costs associated with Rowe's economic expert, whose multiple, lengthy  reports were never entered into evidence and whose calculations the jury rejected entirely when it awarded Rowe $0 in back pay (J.S. Held, $72,481.67). (*See* Greene Decl., Exh. 2.)

Certain of O+G's costs are also individually excessive. For example, O+G seeks reimbursement for $11,560.61 in "computerized research," including PACER and Westlaw charges. (*See id.*) "Computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (denying a request for computerized research costs separate from attorneys' fees). While courts in this Circuit have not consistently applied *Merritt Meridian*'s clear prohibition on the recovery of computerized research costs, more recent cases hold they are not compensable. *See*, *e.g.*, *Charles v. Seinfeld*, No. 18-cv-1196, 2022 WL 889162, at *8 (S.D.N.Y Mar. 25, 2022) ("The Court will not award costs for electronic research fees, which are already accounted in the attorneys' hourly rates and research time."); *Bd. of Trustees of Laborers Pension Fund of Loc.*

*Union No. 186 v. Casale Constr. Servs., Inc.*, No. 18-cv-00583, 2018 WL 6047825, at \*4–5 (N.D.N.Y. Nov. 19, 2018) (Westlaw charges are non-compensable overhead costs).

Similarly, $5,133.18 in meals is not recoverable. *Rozell*, 576 F. Supp. 2d at 547 (citing *Pappas v. Watson Wyatt & Co.*, No. 3:04CV304, 2008 WL 45385, at \*9 n.3 (D. Conn. Jan. 2, 2008)). None of the meals identified were attributable to out-of-town discovery, nor could they be, as all depositions in this matter were taken remotely. (*See* Greene Decl., ¶ 27 & Exh. 2.) Illustrating the excessive nature of these costs, Rowe's petition seeks reimbursement for approximately $150 for meals on October 10, 2023, for an attorney not identified as having performed worked on this case, Tammy Marzigliano. (*Id.*, Exh. 3.)

As well, travel costs totaling $12,244.56 should be reduced by half, consistent with well-established law in this jurisdiction. *See, e.g. Makinen v. City of New York*, No. 11-cv-07535, 2016 WL 1451543, at \*3 (S.D.N.Y. Apr. 12, 2016) ("Although it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent.") (collecting cases).

Finally, Rowe seeks over $1,000 in FedEx and courier charges. (*See* Greene Decl., Exh. 2.) Rowe's request for this amount is excessive because she "does not explain why a messenger and overnight mail was required rather than, for example, first class mail." *Seinfeld*, 2022 WL 889162, at \*8 (reducing courier and overnight mail costs by 50%). For example, it is unclear why Rowe incurred seven overnight delivery charges on November 26, 2020, totaling $390.63. (*Id.*, Exh. 3.) These costs should be reduced by at least half. *Id.*

## IV.      CONCLUSION

For the foregoing reasons, Google opposes Rowe's motion for attorneys' fees and costs,

and requests that this Court reduce the application for $4.5 million in fees and costs by 80%.

Google respectfully requests oral argument on this motion.

Dated: New York, New York
            December 13, 2023

PAUL HASTINGS LLP

_____
Kenneth W. Gage
Sara B. Tomezsko
Kaveh Dabashi
200 Park Avenue
New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com
saratomezsko@paulhastings.com
kavehdabashi@paulhastings.com

*Counsel for Defendant Google LLC*