cariefUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,                                                                                                  Case No. 1:19-cv-08655-JHR

                Plaintiff,

    v.

GOOGLE LLC,

                Defendant.

## DECLARATION OF SARA B. TOMEZSKO

I, Sara B. Tomezsko, declare as follows:

    1.    I am a partner at Paul Hastings LLP ("Paul Hastings"), counsel for Defendant Google LLC ("Google") in the above-captioned matter.

    2.    I submit this Declaration in support of Google's Opposition to Plaintiff Ulku Rowe's Motion for Attorneys' Fees and Costs. (ECF No. 362.)

    3.    This Declaration attaches as exhibits several excerpts from Outten & Golden LLP's ("O+G's") time entries submitted as Exhibit 1 to the Declaration of Cara E. Greene (ECF 363-1.) Where only a portion of the time in each entry is relevant to the topic for which it is cited, Paul Hastings has indicated the amount of time at issue in a separate column (highlighted in gray), to the extent O+G's time entries distinguish time spent on discrete tasks within a single billing entry. Any estimates of time necessitated by block billing or generally-worded time entries have been indicated by an asterisk. These excerpts are not intended to be an exhaustive accounting of O+G's fees; rather, they are intended as representative examples only.

1

**I.      O+G EXPENDED SUBSTANTIALLY MORE TIME ON THIS CASE THAN PAUL HASTINGS.**

4.      Rowe's counsel, Outten & Golden LLP ("O+G"), has applied for $4.5 million in fees for nearly 9,000 hours of time spent on this case, not including time worked preparing Rowe's post-trial motions for equitable relief and application for attorneys' fees and costs.

5.      Conversely, Paul Hastings' billing records[1] reflect that Google's legal team worked approximately 6,200 hours on this case defending against Rowe's claims, overbroad discovery requests, and motions. In other words, O+G worked approximately 43% more hours on this case than Paul Hastings.

6.      O+G worked approximately 1,500 hours during the summary judgment phase of this case. (Greene Decl., ¶ 33.) Paul Hastings, in contrast, worked approximately 632 hours during the summary judgment phase of this case. In other words, O+G worked approximately 240% more hours than Paul Hastings on summary judgment motion practice.

7.      On October 14, 2022, this Court scheduled trial to commence on January 9, 2023. (ECF No. 225.) Thus, Google began preparing for trial on October 14, 2022. From that date through the jury's verdict on October 20, 2023, Paul Hastings worked approximately 2,585 hours on pretrial- and trial-related tasks. O+G, conversely, worked a total of 4,400 hours on pretrial- and trial-related tasks. (Greene Decl., ¶¶ 42, 45.) O+G worked approximately 70% more hours than Paul Hastings during the pretrial and trial phases of this case.

---

[1] Paul Hastings' billing records are kept in the course of the firm's regularly conducted business activity. It is Paul Hastings' regular practice to create these billing records, which are made at or near the time of the work performed, by someone with personal knowledge.

## II. O+G EXPENDED SUBSTANTIAL TIME ON ROWE'S FAILED PAY CLAIMS.

8. Rowe's central claims in this dispute were for compensation and higher-paying positions unlawfully denied (the "Pay Claims").

9. O+G expended substantial time on Rowe's failed Pay Claims. Attached hereto as **Exhibit 1** is a collection of representative excerpts of O+G's billing records illustrating a focus during discovery and motion practice on Rowe's Pay Claims. These representative excerpts include:

   a. Preparing and filing letter-motions to the Court or Moving to compel and analyzing voluminous personnel, hiring, and compensation records, and job descriptions, for hundreds of alleged Level 8 and Level 9 comparators in 14 different job codes across the United States.

   b. Preparing for and deposing two 30(b)(6) witnesses about the level, pay, and promotion practices relevant to these positions, and three of Rowe's alleged comparators for her Pay Claims (Benjamin Wilson, Evren Eryurek, and Stuart Breslow). Google employee Adam Lief was deposed regarding Topics 1 and 2 as to the allegedly comparable Director-level Application Engineer positions. (*See* 30(b)(6) deposition notice attached hereto as **Exhibit 2**.) Witness Kevin Lucas served as the 30(b)(6) deponent for Topics 1 and 2 with respect to the allegedly comparable Technical Director, Director-level Software Engineer, and Director-level Product Manager positions. Mr. Lucas was also deposed regarding his personal knowledge and involvement in handling Rowe's internal complaint in August 2018; therefore, we have applied a 30% reduction to the estimation of number of hours worked preparing for and deposing Mr. Lucas to account for time

  spent specifically on the equal pay and comparators issues. Those entries have been marked with an asterisk.

 c. Following discovery, moving unsuccessfully for summary judgment on Rowe's New York Labor Law ("NYLL") pay equity claim as to comparator Nicholas Harteau, and on Google's statutory affirmative defenses. (ECF Nos. 152, 206.)

 d. Research and analysis regarding New York Labor Law § 194 or equal pay laws more generally.

 e. Entries referencing the pay equity class action *Ellis v. Google LLC*, which was then pending in California state court. (*See also* **Exhibit 2**, topic no. 4.)

10. Post-summary judgment through trial, Rowe devoted approximately 35 hours to her equal pay claim as to alleged comparator Nicholas Harteau. This work included serving him with a subpoena for the trial, preparing an outline of his trial examination, and meeting with Mr. Harteau and his counsel in advance of trial. Attached hereto as **Exhibit 3** is a collection of representative excerpts of O+G's billing records illustrating that time worked.

### III. ROWE CANNOT RECOVER FOR TIME SPENT ON MATTERS UNREASONABLY, UNSUCCESSFULLY, OR UNTIMELY PURSUED.

 **A.** **Rowe Unreasonably Pursued Hundreds of Comparators in Discovery, and Presented Only Six at Trial.**

11. Rowe unreasonably pursued hundreds of comparators in discovery, only to narrow them to six at trial. Attached hereto as **Exhibit 4** is a true and correct copy of Rowe's initial requests for documents seeking, *inter alia*, all documents constituting qualifications, responsibilities, duties, compensation, performance appraisals, and equity awards for all "Level 8, 9, and 10 employees within Google Cloud in the United States," "[d]ocuments sufficient to show the name, gender, age, compensation, position, title, level, reporting line, location, and qualifications for Level 8, 9, and 10 employees within Google Cloud in the United States," and

4

"[d]ocuments describing the duties or responsibilities for Directors within Google Cloud in New York." (*Id.*, Requests Nos. 5, 6, 14.)

12. Rowe filed a pre-motion letter to the Court on April 21, 2020, seeking production of, *inter alia*, alleged comparator information responsive to those Requests. (ECF No. 28). Google responded on April 27, 2020. (ECF No. 30.) The parties appeared before Hon. Lorna G. Schofield on May 14, 2020. (ECF No. 41.)

13. Rowe filed a second pre-motion letter on August 18, 2020, raising discovery disputes concerning alleged comparator discovery and ESI searches. (ECF No. 52.) Google responded on August 21, 2020, and noted that Rowe had not exhausted her meet and confer obligations with respect to the dispute over job descriptions relevant to the allegedly comparable roles. (ECF No. 55.) The Court's August 24, 2020, order directing the parties to exhaust meet and confer efforts is available at ECF No. 56.

14. Finally, Rowe filed a pre-motion letter seeking leave to move to compel production of "comparator evidence" on December 17, 2020. (ECF No. 79.) Google responded on December 23, 2020, (ECF No. 84), and Rowe filed a reply on January 15, 2021, in support of which she submitted a declaration. (ECF No. 97.) Oral argument on this motion and Rowe's motion for leave to amend to supplement her pleadings was held on February 3, 2021. (ECF No. 109.)

15. Following the discovery conference regarding alleged comparators before Hon. Gabriel W. Gorenstein on February 3, 2021, Rowe selected approximately 50 alleged comparators and Google produced hiring, compensation, and performance documentation for same. Google made an initial productions of relevant data on or around March 29, 2021. Google subsequently supplemented that production at Rowe's request.

16. As the parties were preparing the initial Joint Pretrial Order in November 2022, however, Rowe abandoned her equal pay claims as to all alleged comparators outside of the Office of the Chief Technology Officer ("OCTO"). Attached hereto as **Exhibit 5** is a true and correct copy of an email, dated November 8, 2022, confirming Rowe's narrowed list of alleged comparators.

17. Attached hereto as **Exhibit 6** are representative excerpts of O+G's billing records reflecting approximately 346 hours spent in pursuit of Rowe's overbroad comparator discovery. The time entries in this exhibit include those associated with Rowe's various letters and motions to Google and the Court regarding alleged comparator discovery and the 30(b)(6) depositions referenced in paragraph 9(b) above; and work performed after the February 3, 2021 conference before Hon. Gabriel Gorenstein to identify a subset of the alleged comparators. (*See* ECF No. 109.)

### B. Rowe Unsuccessfully Pursued an Apex Deposition of Google Cloud's Chief Executive Officer.

18. Rowe unsuccessfully pursued a deposition of Google Cloud's former Chief Executive Officer, Diane Greene, despite learning she lacked unique knowledge of the conduct at issue. (*See* ECF No. 98.)

19. Google objected during discovery to the deposition of this apex witness and former employee, and provided two declarations (one from Greene and one from Tariq Shaukat) stating the limits of Greene's relevant knowledge. (*See* ECF No. 62.) Google indicated it would move for a protective order if Rowe pursued the deposition of a witness who possessed no unique knowledge of the material facts. (*Id.*)

20. Google moved for a protective order and, in the alternative, a motion to quash on November 23, 2020. (ECF No. 62.) Rowe responded in opposition on December 1, 2020. (ECF

No. 65.) Google filed a reply on December 4, 2020. (ECF No. 66.) Oral argument before Judge Gorenstein took place on January 5, 2021. (ECF. No. 89.)

21.     Attached hereto as **Exhibit 7** are representative excerpts of O+G's billing records reflecting approximately 57.4 hours across four attorneys and a paralegal preparing for a deposition that would never occur; reviewing, adjusting, and serving a third-party subpoena (for a total of 7.1 hours); opposing Google's successful motion for a protective order; and attending oral argument on the motion.

        **C.**  **Rowe Should Not Recover for Work Spent on Disputes of Her Own Creation Leading up to and During Trial.**

22.     As the parties approached trial, and during trial itself, Rowe's litigation tactics resulted in unnecessary letter writing campaigns and discovery efforts that Rowe should have pursued much earlier in the case if they had any merit.

23.     Attached hereto as **Exhibit 8** are representative excerpts of O+G's billing records reflecting approximately 40 hours on: her unsuccessful letter-writing campaign seeking to exclude Patricia Florissi from trial; her pursuit of inadmissible evidence regarding the leveling decision for another OCTO Technical Director, Jen Bennett, resulting in letter-motion practice during the trial, (ECF Nos. 331, 332); and a motion for production of documents, during trial, concerning Stuart Vardaman's status reports for the Vice President-Financial Services Sales Role. (ECF No. 338.) Time entries are estimated (and minimal) where work performed on these specific motions and letters is noted in the billing entry, but the time has been block billed.

**IV.   ROWE CANNOT RECOVER FOR INEFFICIENT USE OF ATTORNEY TIME.**

24.     Attached hereto as **Exhibit 9** are representative excerpts of O+G's billing records reflecting the attendance of three attorneys (at times, two partners and one associate) at mediations, court hearings, and depositions where only one or two would have sufficed, for a total of

approximately 231 attorney hours. In the vast majority of these instances, only one partner and one associate (or two partners, after I was elevated to partner in February 2023) attended these same mediations, hearings, and depositions.

25. O+G's billing records reflecting hours spent preparing agendas for internal meetings; reviewing those agendas; and inter-office conferences (described variously as calls, meetings, or conferences) are voluminous. As such, we have not prepared a collection of representative excerpts for the Court's review (which would itself be dozens of pages long, given the number of entries reflecting internal telephone conferences, meetings, and calls). The frequency of these entries is evident from a cursory review of Exhibit 1 to the Declaration of Cara E. Greene. (ECF No. 363-1.) An in-depth review of these entries reveals that time spent on these tasks accounts for over 700 hours of time across all timekeepers. That number does not account for the inter-office correspondence *on top* of these entries.

26. Attached hereto as **Exhibit 11** are representative excerpts of O+G's billing records reflecting approximately 549 hours spent to preparing binders, both electronic and hard copy. These excerpts do not include the voluminous number of entries reflecting correspondence about binder preparation, but are limited to entries where the timekeepers were assembling documents for binders, updating binders, reviewing binders for discrepancies, preparing tabs or spines for binders, alphabetizing binders, shipping or moving binders, "QCing" binders, or printing documents to include in binders.

27. Attached hereto as **Exhibit 12** are representative excerpts of O+G's billing records reflecting O+G's staffing of an "eDiscovery" partner, Daniel Stromberg, who billed $875/hour for over 36 hours on tasks that could have been delegated to a more junior attorney or a discovery vendor, including but not limited to: "produce client document per SXG, pdf and email to SXTG

for deposition"; "Advise SXG re: reporting of document metadata from Nuix"; "assess unproduced relevant client documents, thread emails, assess threads of produced documents, assemble potential production population, and advise MSJ"; and "Advise BDK re: Nuix bindering and printing deposition documents." At times, the work Mr. Stromberg performed was duplicative of that performed by associates. Arguably duplicative associate time entries are interposed in the Exhibit, indicated by gray highlighting, and their values not counted towards the totals reflected at the bottom of the Exhibit.

28. Attached hereto as **Exhibit 13** are representative excerpts of O+G's billing records reflecting approximately 291 hours spent reviewing deposition transcripts and creating "digests," resulting in more than $131,000 in fees. This work was largely performed by a tenured attorney (class of 2008) who did not participate in any other aspect of the case, and whose rate for this work exceeded that of one of the principal associates staffed to the matter. (*See* Greene Decl., Exh. 4, ¶ 3.)

29. Attached hereto as **Exhibit 14** are representative excerpts of O+G's billing records reflecting approximately 242 hours spent preparing mediation statements, performing damages calculations in connection with those mediations or settlement conferences, and attending the mediations or settlement conferences. In addition to the mediations and settlement conferences referenced in Exhibit 1 to the Declaration of Cara E. Greene, the parties participated in a court-ordered settlement conference before Honorable Kevin N. Fox on July 29, 2021.

## V. ROWE'S TIME ENTRIES INCLUDE WORK THAT IS NOT COMPENSABLE.

30. Rowe should not be compensated for time not expended on this lawsuit.

31. Attached hereto as **Exhibit 15** are representative excerpts of O+G's billing records reflecting approximately 18.5 hours spent on drafting memoranda and presenting to an internal

litigation committee, "which provided strategic input on how to present the claims." (Greene Decl., ¶ 18.)

32. Attached hereto as **Exhibit 16** are representative excerpts of O+G's billing records reflecting approximately five (5) hours spent to "clear conflicts," telephone calls about "potential conflicts," and multiple correspondences regarding "conflict waiver," well into late 2020.

33. Attached hereto as **Exhibit 17** are representative excerpts of O+G's billing records reflecting approximately 8.1 hours of time spent drafting an "Op Ed," "correspondence with reporter," and telephone conferences "re press and litigation strategy" still appear, despite O+G's claim that it removed charges for time spent litigating this case in the press "[i]n an exercise of billing judgment," (Greene Decl., ¶¶ 48, 50.)

34. Attached hereto as **Exhibit 18** are representative excerpts of O+G's billing records reflecting "correspondence re … client medical leave" and "correspondence with client re STD leave."

35. Attached hereto as **Exhibit 19** are representative excerpts of O+G's billing records reflecting time spent on unrelated matters, including:

    a. On March 25, 2020, Maya Jumper billed time to "Correspondence with LIM regarding notice proposal and welcome letter." Not only is "LIM" not identified in Rowe's application as an attorney staffed to this case, (Green Decl., Exh. 4), this entry is plainly germane to a class action for which discussions of notice and welcome letters would be more appropriate.

    b. On April 17, 2020, Ms. Jumper billed for a "Conference call with MB/co-counsel / KD regarding filing and arbitration filing." No "co-counsel" for Rowe has appeared in this case, nor was there any "arbitration filing."

  c. On June 1, 2020, Ms. Jumper billed for time spent "Review[ing] motion to stay; conduct[ing] legal research." There were no motions to stay filed in this action.

  d. On June 11, 2020, Ms. Jumper billed for "Correspondence with client (0.2); Proofread, cite check, and edit of mediation statement (1.2)." The only mediations in this matter occurred on March 10, 2020; July 29, 2021; November 4, 2022; and March 28, 2023.

  e. On June 13, 2022, Cara Greene billed over $1,000 to "Review findings of security expert, telephone call with same (0.5); correspondence with client and security expert re recent activity (0.4); coordinate scheduling of meeting with expert and analyst and correspondence with WNO re same (0.4)."

## VI. OTHER EXHIBITS.

36. Attached hereto as **Exhibit 20** are true and correct copies of excerpts from the trial transcript, dated October 10–20, 2023.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: December 13, 2023

                 _____
                 Sara B. Tomezsko