UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ULKU ROWE,                                                Case No. 1:19-cv-08655-JHR

                              Plaintiff,                  ORAL ARGUMENT REQUESTED

            v.

GOOGLE LLC,

                              Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT GOOGLE LLC'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

    A.   Rowe Misunderstands the Law Governing Google's Motion. ............................... 1

    B.   The Court Cannot Enter Judgment for Rowe on Her Leveling, FSVL Role
        or VP-FSS Role Claims. ......................................................................................... 3

        1.   The Jury Rejected Rowe's Claims of Discriminatory Leveling at
            Hire ............................................................................................................. 4

        2.   The Jury Rejected Rowe's Claims that Google Denied Her the
            FSVL Role for Discriminatory or Retaliatory Reasons ............................. 7

        3.   The Jury Rejected Rowe's Claim that Google Denied Her the VP-
            FSS Role for Retaliatory Reasons ............................................................. 9

    C.   There Is No Basis in the Evidence for a Judgment Against Google Based
        Upon Alleged Differential Treatment by Mr. Shaukat. .......................................... 9

III.  CONCLUSION ............................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Bautista v. PR Gramercy Square Condo.*,
    642 F. Supp. 3d 411 (S.D.N.Y. 2022)....................................................................10

*Fox v. Starbucks Corp.*,
    No. 19-cv-4650(AJN), 2021 WL 4155029 (S.D.N.Y. Sept. 13, 2021), *aff'd*,
    2023 WL 407493 (2d Cir. Jan. 26, 2023) .................................................................9

*Harris v. N.Y.C. Dep't of Homeless Servs. Eligibility Investigation Unit*,
    No. 97-cv-432(SAS), 1998 WL 205334 (S.D.N.Y. Apr. 28, 1998) .......................10

*McGuire v. Russell Miller, Inc.*,
    1 F.3d 1306 (2d Cir. 1993)........................................................................................1

*Pearson v. Lynch*,
    No. 10-cv-5119(RJS), 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012)......................10

*Slifer v. CG Tech., L.P.*,
    No. 14-cv-9661, 2017 WL 3106438 (S.D.N.Y. June 13, 2017) ...............................3

*U.S. v. Bastian*,
    770 F.3d 212 (2d. Cir. 2014).....................................................................................3

*Walker v. Shult*,
    45 F.4th 598 (2d Cir. 2022) ......................................................................................2

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007).....................................................................................2

## I.    INTRODUCTION

Rowe's opposition to Google's Renewed Motion for Judgment as a Matter of Law (ECF No. 372) ignores that after initially reporting "a deadlock" (Trial Tr. 1489:6–9), the jury rendered a split verdict, which contained findings for her *and against her*. Nowhere does Rowe acknowledge the binding impact of the jury's factual findings against her. She insists the jury's findings are "fully supported by substantial evidence." (ECF No. 372 at 1.) As described in Google's Renewed Motion for Judgment as a Matter of Law (ECF No. 369 (the "Renewed Motion")), only a narrow set of claims can possibly form the basis for a judgment in her favor. Those, too, are unsupported in the evidence.

A decision on Google's Renewed Motion requires interpreting the verdict, understanding the facts the jury found, and determining whether the evidence supports *any* judgment for Rowe. The evidence at trial does not support a $1.15M judgment for Rowe on any allegations in the Second Amended Complaint. This Court should enter judgment in Google's favor.

## II.    ARGUMENT[1]

### A.    Rowe Misunderstands the Law Governing Google's Motion.

Rowe paints with too broad a brush, arguing incorrectly that the standard applicable to Google's Renewed Motion gives her every benefit of the doubt. She misconstrues Google's argument about the split verdict, and the Court's responsibility under the circumstances. She also unfairly tries to leverage her successful effort to avoid specific jury findings.

First, Google is not arguing the verdict is inconsistent. (ECF No. 372 at 20). Rather, as the Second Circuit explained in *McGuire v. Russell Miller, Inc.*, the Court "must search for a reasonable way to read the verdict as *expressing a coherent view of the case*" under the

---

[1] As before, Google is providing Your Honor with a courtesy copy of all trial exhibits and trial testimony excerpts cited herein, via electronic mail. The Court admitted all exhibits cited herein into evidence at trial. (*See* ECF No. 343-6.)

circumstances presented. 1 F.3d 1306, 1311 (2d Cir. 1993) (emphasis added) (citation omitted). The most coherent view is that Rowe failed to prove that any decision with economic consequences was unlawful.

Second, Rowe is not entitled to an assumption that "*all* reasonable inferences were drawn and *all* credibility disputes [were] resolved [by the jury] in [her] favor" under the circumstances. (ECF No. 372 at 4 (emphasis added).) Clearly, they were not. As reflected in the verdict form, many inferences and credibility disputes *were resolved in Google's favor*. Key among them are that Google did *not* (a) pay Rowe less than men performing equal work, (b) pay Rowe less or deny her any higher paid positions because of her gender, or (c) deny Rowe any higher paid positions because she engaged in protected conduct. These facts are established, and this Court cannot now draw inferences or resolve credibility disputes otherwise. *See Walker v. Shult*, 45 F.4th 598, 611, 618 (2d Cir. 2022) (court cannot find facts contradicting "findings that were implicit in the jury's verdict" (citation omitted)).

Finally, if Rowe intended to move this Court (as she ultimately did) for an order that Google make her an L9 Technical Director or otherwise promote her, "it was incumbent on [her] to have the jury decide" these specific questions. *Zellner v. Summerlin*, 494 F.3d 344, 373 (2d Cir. 2007) (if a party bearing the burden of proof intends to argue that particular facts were established at trial, she should propose special interrogatories to the jury). Not only did she fail to request such questions on the special verdict form, she opposed Google's efforts to have them asked. (ECF No. 271.) Therefore, under such circumstances the Court cannot provide the missing factual finding, if there was one (and there is not), "unless the inference … [is] one that the jury *would have been compelled to draw*." *Zellner*, 494 F.3d at 373 (emphasis added).[2] The evidence does not compel

---

[2] As argued in Google's Memorandum of Law in Opposition to Rowe's Motion for Instatement and Other Post-Judgment Relief (ECF No. 376 at 2–3), it would be violate the Seventh Amendment

any of the inferences Rowe urges on this Court.

Against all the evidence (and the verdict), Rowe claims the jury's affirmative answers to three questions asking if Google "*on at least one occasion*" discriminated and retaliated against her (ECF No. 340 at 2 (emphasis added)), means the jury found Google acted unlawfully on *all occasions*, including unlawfully denying her a higher level and a promotion. Rowe deliberately opposed a specific finding on allegations regarding leveling and promotion decisions, so she could ask the Court to make those factual findings after-the-fact. The Court should not give Rowe the benefit of any inferences regarding the evidence relevant to these decisions, when she affirmatively opposed specific findings in the special verdict form. (ECF No. 271; Trial Tr. 1128:24–1131:10; 1351:17–1352:1.) *See Slifer v. CG Tech., L.P.*, No. 14-cv-9661, 2017 WL 3106438, at *7 (S.D.N.Y. June 13, 2017) (party could not benefit from ambiguity in verdict sheet because that party specifically opposed an amendment that would have clarified the verdict; "the invited error doctrine seeks to avoid rewarding mistakes stemming from a [party's] own intelligent, deliberate course of conduct in pursuing [her claims]") (citing *U.S. v. Bastian*, 770 F.3d 212, 218 (2d. Cir. 2014).)

**B.  The Court Cannot Enter Judgment for Rowe on Her Leveling, FSVL Role or VP-FSS Role Claims.**

Rowe incorrectly argues there is evidence to support a finding that Google set her level at hire and denied her a promotion to the Financial Services Vertical Lead ("FSVL") Role because of gender, and that Google denied her promotions to the FSVL Role and the Vice President-Financial Services Sales ("VP-FSS") Role because she engaged in protected conduct. (ECF No. 372 at 5–10, 11–20.) The jury rejected those claims implicitly by denying her any back pay award. (ECF No. 340.)

---

for this Court to find that Google unlawfully set Rowe's level at hire or denied her promotions, against the implicit finding of the jury.

A review of this Court's jury instructions reveals that *if* Rowe had proved these things by a preponderance of the evidence, the jury would have awarded back pay. Back pay, the Court explained, is compensation "Rowe *would have received if not for Google's unlawful conduct, if that is what you find.*" (Trial Tr. 1452:9–10 (emphasis added).) The Court continued:

> [Rowe] asserts that because she is a woman, Google paid her less and denied her positions that would have entitled her to greater compensation, in violation of city law. She further asserts that because she made protected complaints, Google denied her positions that would have entitled her to greater compensation.

(*Id.* at 1452:13–18.) Rowe does not and cannot explain how she possibly proved discrimination or retaliation in the leveling or promotion decisions and not been awarded back pay. If that were not enough, the evidence plainly supports what is implied in the verdict.

### 1.    *The Jury Rejected Rowe's Claims of Discriminatory Leveling at Hire.*

The core of Rowe's case was that Google denied her pay because of an allegedly unlawful leveling decision at hire. (*See* ECF No. 376 at 2–5.) Rowe intertwined her presentation of the leveling claim with her claim that Google violated the New York Labor Law ("NYLL") by leveling Nicholas Harteau differently at hire, thereby giving him greater earning potential. (Trial Tr. 43:3–44:22; 47:8–11; 53:11–13). Harteau was one of the principal male comparators on which Rowe relied to argue discrimination at hire. (*Id.*) As well, Rowe's expert premised her calculation of back pay damages on a comparison to Harteau from the time Rowe was hired. (*Id.* at 1074:6–9.) Both her New York City Human Rights Law ("NYCHRL") claim for alleged under-leveling at hire and her NYLL claim revolved around the same comparators, and the same decision-makers. (*Id.* at 47:1–7.) The evidence clearly showed that Google tied her starting pay to the leveling determination made at the same time. (*Id.* at 1102:24–1105:23.)

Importantly, Rowe had the burden of proving that Google set her level because of her gender. The jury explicitly held that Rowe and Harteau were not performing substantially equal work. (ECF No. 340 at 1.) The jury's verdict for Google necessarily means that Google did not

4

pay her differently because of gender. (Trial Tr. 1438:8–11; 1440:3–1444:12.)[3] The jury's rejection of Rowe's claim for back pay necessarily means that Google's pay decisions, including the decision to set her pay at hire, were not discriminatory. (*Id*. at 1452:5–18.) It defies reason to argue she proved by a preponderance of the evidence that Google made one decision because of her gender when, *on the same evidence, involving the same decision makers, at the same point in time*, the jury explicitly found she *failed to prove* the other decision was because of her gender.

Further, Rowe points to no evidence that even remotely suggests gender bias by those involved in the leveling decision. The role of Technical Director in OCTO was a newly created role, and Grannis borrowed from existing frameworks for similar positions. (*Id*. at 730:24–731:16.) He testified that "[a]t L9, someone's a world class expert in a topic . . . for example, an L9 might figure out a completely different way to do [cloud] storage." (*Id*. at 839:19–840:3.) Harteau, for example, was widely known for leading the first enterprise migration of a global company, Spotify, *to Google Cloud*.[4] (*Id*. at 948:1–950:5.) "We would expect someone coming in at L9," Grannis continued, "to be a pace-setter for the organization[.]" (Id. 845:6–7.) "A Level 8," conversely, has not "created or done these things of distinction yet . . . they wouldn't be recognized as a world class expert." (*Id*. at 840:9–15.) Google's Engineering-Wide Leveling Guide formally memorialized these differences. (D38.) Grannis and Stevens both referred to this Guide at the time

---

[3] For the same reason, Rowe's citation to Eryurek's, Wilson's, and Harteau's testimony about "roles" and "work" *after* they were hired (ECF No. 372 at 6) cannot support an inference of gender bias in the *earlier* leveling decisions. Nor does the testimony compel the inference that Rowe performed L9 work. Wilson's and Eryurek's testimony encompassed other individuals who were not L9s. Wilson included Jeff Kember. (Trial Tr. 981:25–982:6.) According to Eryurek, "[T]echnical [D]irector was a title that just about everyone used in the team," regardless of the expertise they brought into OCTO. (*Id*. at 1016:23–1017:10.)

[4] Rowe persists in arguing that her education, experience managing large teams, and work in financial services somehow warranted an L9. (ECF No. 372 at 6.) But that is her business judgment, not proof of bias. Technical Directors were individual contributors (Trial Tr. 212:7–18), and people with the same or more advanced degrees than Rowe were hired at L8. (*Id*. at 732:4–5; 1273:10–1274:17; D44.)

they hired Rowe. (Trial Tr. 902:1–3; 988:19–989:10; 1226:7–16.)[5]

That Rowe's interviewers used the same interview questions and criteria for all candidates (ECF No. 372 at 5) suggests a *fair* process, not a gender-biased one. Rowe now points to objectively accurate comments as supposed evidence of bias: (1) Eric Brewer's (correct) observation that Rowe "is a bit more junior than the other candidates" (P119 at GOOG-ROWE-00019103.R)[6] and (2) Brian Stevens' similar observation that it was "unclear whether she is senior enough . . . ." (*Id.* at GOOG-ROWE-00019115.R). Brewer and Stevens recommended Rowe's hire. "I think she would be an excellent addition," Brewer wrote. (*Id.* at GOOG-ROWE-00019103.R.) Stevens echoed that Rowe's "strong blend" of skills "makes her a great add." (*Id.* at GOOG-ROWE-00019108.R.) Significantly, Will Grannis made the level recommendation, and his contemporaneous statement of support in Rowe's hiring packet explains that he based his leveling recommendation on her ability to make an "immediate impact as an L8" and the need for expertise in the financial services space. (*Id.* at GOOG-ROWE-00019097.R.) Rowe points to nothing suggesting he was biased; in fact, she admits that he supported her. (ECF No. 372 at 13–15; Trial Tr. 874:2–10.)

Google's reasons for not hiring Rowe at L9 have remained consistent. The interview feedback in Rowe's hiring packet reflects that Rowe was certainly worth hiring, but "didn't come off as the most technical of the candidates." (P119 at GOOG-ROWE-00019105.R.) Rowe herself admitted during the hiring process that she was "not a cloud expert" (D47), further supporting the decision not to hire her at L9. Grannis testified that Rowe "wasn't a world recognized expert," and

---

[5] The testimony that Rowe cites in her opposition (ECF No. 372 at 9) does not suggest inconsistency. Her counsel asked Grannis whether "*OCTO*" had adopted a guide "*for itself*", but asked Stevens whether they were "reviewing that against *any sort of leveling guide*." Rowe's own witnesses, Ben Wilson and Melissa Lawrence, testified that the leveling guide introduced at trial was "substantially the same" as the earlier version. (Trial Tr. 989:4–10; 1237:1–6.)

[6] Rowe's own Exhibit 88 bears this out, showing that that she was *at least* "a bit" more junior in experience than Strong, Eryurek, Donaldson and Wilson, four of the five L9s. (P88.)

that he "wouldn't have known about her as a candidate if it wasn't for recruiting letting us know" about her. (Trial Tr. 855:1–3.)  Critically, Grannis recommended hiring men at L8, too. (*Id.* at 850:24–852:1.)

Kevin Lucas's testimony changes nothing here. It is irrelevant that long after the leveling decision, someone not involved in the decision reviewed experience data (P88) collected in response to Rowe's internal complaint, and saw that those hired at L9 "had much more experience . . . ." (Trial Tr. 534:13–15; 553:15–23.) He was otherwise not involved in investigating her concerns of under-leveling at hire. (*Id.* at 555:7–14.) Lucas was not even in a position to say why she was not an L9, so his diligence is hardly proof of changing explanations.

Grannis' statement that Google was "still figuring [] out" the leveling differences among Technical Directors when first creating OCTO is unremarkable and even expected. (Trial Tr. 744:3–6.) Of course Grannis was "still figuring [] out" the differences among brand new job families in a brand new department. (*Id.*) Nothing in Grannis' testimony, though, reflects *gender bias*, which Rowe needed—but failed—to prove on her NYCHRL leveling claim.

### 2. *The Jury Rejected Rowe's Claims that Google Denied Her the FSVL Role for Discriminatory or Retaliatory Reasons.*

The verdict and the evidence also show that Google did not deny Rowe the FSVL Role for unlawful reasons. Rowe's economic damages expert told the jury that Rowe suffered $678,507 in back pay damages related to that position, by comparing her pay to Stuart Breslow's. (Trial Tr. 1074:16–20). This Court instructed the jury to award these amounts *if* Rowe proved that she "would have received" them if not for unlawful conduct. (*Id.* at 1452:9.) The jury did not award any economic damages to Rowe, so the jury necessarily found for Google on this claim, too.

Rowe again distorts the evidence to argue otherwise. Shaukat determined Rowe was not "likely right" for the FSVL Role after discussing it with her *twice* earlier that year. (P16; P21; P150.) Shaukat had no plans to consider any of the Technical Directors transferring into his

organization from OCTO (men included) for the vertical lead roles in his organization. (Trial Tr. 436:16–438:4; 979:14–981:8.) In fact, he gave Rowe an opportunity he *did not* afford the others— the chance to interview for the role and change his mind.

Shaukat had doubts about whether Rowe "had access to the C-level executives" the FSVL Role required. (*Id*. at 343:4–8.) He did not disclaim these doubts at trial, as Rowe argues, but in fact reiterated them, testifying that his doubts about Rowe's C-level contacts were not assuaged by "one line from Brian Stevens suggesting" otherwise. (*Id*. at 486:21–25.) Shaukat had every reason to wonder whether she had the type of contacts that he knew from experience certain (female) external candidates he preferred *did have*. (*Id*. at 444:18–445:7.) Clearly, his skepticism was not gender-based, and his views remained consistent.

Rowe's testimony that the interviews "didn't feel right" also proves nothing, and it directly contradicts her own contemporaneous statement that she "had good conversations" with the interviewers. (P50.) Interviewers submitted feedback, although not all via the same channel; some gave it directly to Vardaman "via ping" instead of entering feedback into gHire. (Trial Tr. 653:16– 19.) The same was true for two other women, Clark and Layfield. (D70 and D71.) Rowe offered nothing at trial showing that the *medium* of the interview feedback, rather than its substance, had any effect whatsoever on her candidacy.

Google's reasons for denying Rowe the FSVL Role have been consistent. Shaukat did not think Rowe was the right fit for the role based on his own conversations with her (*see* P16; P21; P150), a view that was corroborated by interview feedback he received and considered as well. (Trial Tr. 344:4–7; 468:13–20; P149.)[7]

---

[7] Google's position that Shaukat's view of Rowe's candidacy for the FSVL Role was informed, in large part, by interview feedback is not "newfound," as Rowe mysteriously argues. (ECF No. 372 at 13.) Rowe knew this, at the very latest, in December 2022, when she tried unsuccessfully to exclude evidence of this interview feedback from trial. (ECF No. 240.) Google opposed Rowe's motion, arguing "Shaukat considered this feedback . . . in arriving at his decision" for the FSVL

3.      *The Jury Rejected Rowe's Claim that Google Denied Her the VP-FSS Role for Retaliatory Reasons.*

This Court instructed the jury that it should award Rowe back pay only if it found, *inter alia*, that "because she made protected complaints, Google denied her positions that would have entitled her to greater compensation." (Trial Tr. 1452:16–18.) Yolande Piazza's starting compensation was significantly higher than Rowe's total compensation has ever been. (*Compare* P141 *with* P134.) The jury necessarily found Google lawfully denied her the higher paying VP-FSS Role when it awarded no back pay.

Even if the jury did not find for Google on this claim (and it did), Rowe's NYLL retaliation claim fails because of lack of causation. The mere fact that Google stipulated to corporate knowledge of Rowe's September 2019 Complaint is insufficient to support her claim. "A plaintiff 'cannot rely on general corporate knowledge alone to satisfy the . . . "causal connection" prong' of [her] retaliation claim." *Fox v. Starbucks Corp.*, No. 19-cv-4650(AJN), 2021 WL 4155029, at *6 (S.D.N.Y. Sept. 13, 2021) (citation omitted), *aff'd*, 2023 WL 407493 (2d Cir. Jan. 26, 2023). Rather, Rowe "must show that *the particular decision maker* who took adverse action against [her] had knowledge of [her] protected activity." *Id*. (granting summary judgment on NYLL retaliation claim because plaintiff failed to raise "a genuine dispute of material fact as to the causal-connection element") (emphasis added). Kliphouse did not know about Rowe's lawsuit against Google at the time she decided to hire Piazza. (Trial Tr. 1262:11–24.)

**C.      There Is No Basis in the Evidence for a Judgment Against Google Based Upon Alleged Differential Treatment by Mr. Shaukat.**

Rowe did not provide a single specific example of Shaukat intentionally excluding her from a meeting, off-site, or email distribution list. (Trial Tr. 259:20–265:16.) Nor did she offer any

---

Role, so it is relevant. (ECF No. 274 at 1.) This Court agreed, and denied Rowe's motion *in limine*. (ECF No. 292.) The Court also did not afford Google a full opportunity to make its Rule 50(a) motion. (*See* ECF No. 369 at 20 n.7.)

evidence that Shaukat was responsible for these perceived exclusions, or if he was, that he excluded Rowe *because she is a woman*. *See Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (dismissing NYCHRL claim because plaintiff failed to allege "differential treatment based, at least in part, on his protected status").

Rowe offers only her own perception that Shaukat spent more time eating steak with Breslow than with her to argue there is a basis to support a judgment. As described above, by awarding no back pay, the jury clearly rejected the proposition that Shaukat treated Breslow better because of gender when appointing him the interim FSVL. Even if Rowe were correct that Breslow met him more often, that is not unlawful, particularly in the absence of any evidence that Shaukat otherwise harbored discriminatory animus against women. *See Pearson v. Lynch*, No. 10-cv-5119(RJS), 2012 WL 983546, at *9 (S.D.N.Y. Mar. 22, 2012) (granting summary judgment on NYCHRL gender discrimination claim, because "favoritism based on friendship or familiarity does not suggest discriminatory animus") (citing *Harris v. N.Y.C. Dep't of Homeless Servs. Eligibility Investigation Unit*, No. 97-cv-432(SAS), 1998 WL 205334 (S.D.N.Y. Apr. 28, 1998).) Thus, the jury's affirmative answers to the "on at least one occasion" questions are unsupported in the evidence.

## III.   CONCLUSION

For the foregoing reasons, and for those stated in its moving papers, Google respectfully requests judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on all claims in the Second Amended Complaint.

Dated: New York, New York
       December 20, 2023

PAUL HASTINGS LLP

Kenneth W. Gage
Sara B. Tomezsko
Kaveh Dabashi
200 Park Avenue
New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com
saratomezsko@paulhastings.com
kavehdabashi@paulhastings.com

*Counsel for Defendant Google LLC*