# Exhibit 4

```
NAJVROW1
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ULKU ROWE,

                Plaintiff,

          v.                            19 Civ. 8655 (JHR)

GOOGLE LLC,

                Defendant.              Trial
------------------------------x
                                        New York, N.Y.
                                        October 19, 2023
                                        8:57 a.m.
Before:

                HON. JENNIFER H. REARDEN,

                                        District Judge
                                         -and a jury-

                       APPEARANCES

OUTTEN & GOLDEN, LLP
     Attorneys for Plaintiff
BY:  CARA E. GREENE
     GREGORY S. CHIARELLO
     SHIRA Z. GELFAND

PAUL HASTINGS LLP
     Attorneys for Defendant
BY:  KENNETH W. GAGE
     SARA B. TOMEZSKO

Also Present:  Vincent Yang, Paralegal (Outten & Golden)
               Andrew Velazquez, Google Rep.
               Jean Gutierrez, Paralegal (Paul Hastings)

1   to see your agreement.
2            MR. GAGE:  Which document, your Honor?
3            THE COURT:  Weren't you about to put up a document?
4            MR. GAGE:  No.  I said I'm not going to put up a
5   document.  I'm not going to put up a document.
6            MS. GREENE:  Your Honor, I would have moved *in limine*
7   or before, having not had a representation from Mr. Gage that
8   we were not going to go there.
9            MR. GAGE:  Had you told me --
10           THE COURT:  The scope of where you weren't going to go
11  is what's important here.
12           MR. GAGE:  Absolutely.
13           MS. GREENE:  It's the leave.
14           MR. GAGE:  It's the medical leave.
15           MS. GREENE:  It's six weeks is also part of her
16  medical leave, whether it's the benefit period or not.
17           MR. GAGE:  I had no reason to know that and I still
18  have no reason to know that.
19           MS. GREENE:  But you know it because I'm telling you.
20           MR. GAGE:  I know she applied for medical leave.
21           MS. GREENE:  And so under the disability laws, under
22  Google's policies, the fact that the benefits started at a
23  certain point doesn't mean that the time before it also does
24  not --
25           MR. GAGE:  I don't want to waste the jury's time.  I

```
 1    will move on.
 2              (In open court)
 3    BY MR. GAGE:
 4    Q.  Ms. Florissi, I've got some different questions for you.
 5              In the entire time that you have been managing
 6    Ms. Rowe, have you expected anything of Ms. Rowe that is not
 7    expected of others on your team?
 8    A.  No, I have not.
 9    Q.  Ms. Florissi, have you in any way treated Ms. Rowe more
10    harshly because of this lawsuit?
11    A.  Not at all.  If anything, I have been very careful and very
12    understanding.
13              MR. GAGE:  No further questions, your Honor.
14    CROSS-EXAMINATION
15    BY MS. GREENE:
16    Q.  Hello, Ms. Florissi.
17    A.  Good afternoon.
18    Q.  I just have a few questions for you.
19              You first learned about this lawsuit in April 2022;
20    correct?
21    A.  Correct.
22    Q.  And sometime before the check-in meeting you had with
23    Ms. Rowe, you met with internal counsel at Google about her
24    case; correct?
25    A.  Not about her case, about the fact that I thought she
```

1    needed a support check-in.
2    Q.  And that was -- you had to handle it carefully because of
3    her case; correct?
4    A.  Correct.
5    Q.  And you made very -- you made sure to have careful
6    documentation because of Ms. Rowe's lawsuit; correct?
7    A.  Not only because of her lawsuit.  When you give a support
8    check-in, you have to collect information to make sure that all
9    the process is followed.
10   Q.  Now, prior to that support check-in meeting, you had never
11   told Ms. Rowe that you wanted the "artifacts"; correct?
12   A.  I never -- correct.  At the Level 8 technical director in
13   the office of the CTO is expected to produce artifacts.
14   Q.  Do you know whether Ms. Rowe wasn't producing artifacts or
15   was it just that you hadn't seen them?
16   A.  If she produced the artifacts, she never shared them with
17   me.
18   Q.  But prior to that check-in, you had never told her that you
19   wanted or expected her to share them with you; correct?
20   A.  I didn't think I have to; correct.
21   Q.  Now, the technical director role, you were asked about the
22   OKRs.  The OKRs have been set each year, but the technical
23   director position is still the technical director position;
24   correct?
25   A.  To the best of my understanding is a technical director

1  position to deliver against the OKRs.  Google has OKRs at every
2  level:  At the company level, at the business product areas
3  level, at the business level.  And they are set every year.  So
4  everybody within their role perform or execute, focus their
5  activities to deliver against those OKRs.
6  Q.  And technical directors are expected to be self-directed in
7  their role at the Level 8 and above; correct?
8  A.  Correct.
9  Q.  After you asked Ms. Rowe for artifacts, she provided them
10 to you; correct?
11 A.  She provided two artifacts.  One, which is the paper on the
12 trusted AI; and the other one in February with another OCTO
13 member also on the same topic.
14 Q.  Now, that trusted AI paper, do you recall how many pages
15 that was?
16 A.  Maybe around 30 pages or so, to the best of my recollection
17 here.
18 Q.  Right.  So 30 pages.  And that would have -- in order to be
19 able to write and produce a paper of 30 pages, it would have
20 required quite a bit of research, background, investigation;
21 correct?
22 A.  Correct.  However, the paper that was produced in February,
23 it was in partnership with another OCTO member that had already
24 been working on -- on the area as well.
25 Q.  And who was that other partner, that other OCTO director?